# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD J. TRUMP FOR
PRESIDENT, INC.; LAWRENCE
ROBERTS; and DAVID JOHN
HENRY;

               Plaintiffs,

      v.

KATHY BOOCKVAR, in her capacity
as Secretary of the Commonwealth of
Pennsylvania; ALLEGHENY
COUNTY BOARD OF ELECTIONS;
CENTRE COUNTY BOARD OF
ELECTIONS; CHESTER COUNTY
BOARD OF ELECTIONS;
DELAWARE COUNTY BOARD OF
ELECTIONS; MONTGOMERY
COUNTY BOARD OF ELECTIONS;
NORTHAMPTON COUNTY BOARD
OF ELECTIONS; and
PHILADELPHIA COUNTY BOARD
OF ELECTIONS;

               Defendants.

Civil Action

No.: 4:20-cv-02078-MWB

---

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE BY
NON-PARTIES NAACP—PENNSYLVANIA STATE CONFERENCE,
BLACK POLITICAL EMPOWERMENT PROJECT, COMMON CAUSE
PENNSYLVANIA, LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA,
JOHN AYENI, LUCIA GAJDA, STEPHANIE HIGGINS, MERIL LARA,
RICARDO MORALES, NATALIE PRICE, TIM STEVENS, AND TAYLOR
STOVER FOR LEAVE TO FILE A RESPONSIVE PLEADING ON THE
SAME SCHEDULE AS DEFENDANTS**

# TABLE OF CONTENTS

I.  **INTRODUCTION**......................................................................................... 1

II.  **FACTUAL BACKGROUND** ...................................................................... 3

   A. Plaintiffs Seek to Undo Pennsylvania's Efforts To Ensure That Mail-in Ballots Are Counted........................................................................ 3

   B. The Organizational Applicants Are Organizations That Promote the Interests of Voters. ............................................................................ 4

   **C.** **The Individual Applicants Are Voters With Particularized Interests.**............ 7

III. **APPLICANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.** ..................................................................................................... 10

   A. The Motion to Intervene Is Timely. .................................................... 11

   B. Applicants Have Sufficient Interests in This Litigation. ...................... 11

   C. Disposition of this Case May Impair Applicants' Interests. ................. 14

   D. The Interests of Existing Defendants May Diverge from Those of Applicants. ......................................................................................... 16

IV. **IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.** ................................................................ 18

V.  **THE COURT SHOULD GRANT APPLICANTS LEAVE TO FILE A RESPONSIVE PLEADING ON THE SAME SCHEDULE AS DEFENDANTS.** ...................................................................................... 20

VI. **CONCLUSION** ........................................................................................ 20

**Cases**

*Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*,
    278 F.R.D. 98 (M.D. Pa. 2011) ........................................................................17

*Amalgamated Transit Union, Local 1729 v. First Grp. Am. Inc.*,
    No. 2:15-CV-806, 2016 WL 520989 (W.D. Pa. Feb. 10, 2016) .......................21

*Applewhite v. Commonwealth*,
    2014 WL 184988 (Pa. Commw. Ct. Jan. 17, 2014) (Pennsylvania
    voter ID laws) ..................................................................................................5

*Brody By & Through Sugzdinis v. Spang*,
    957 F.2d 1108 (3d Cir. 1992) ...................................................................15, 19

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ..........................................................................15

*Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*,
    2017 WL 1376298 (W.D. Pa. Apr. 17, 2017) .................................................11

*Common Cause Ind. v. Lawson*,
    937 F.3d 944 (7th Cir. 2019) ..........................................................................14

*Commonwealth of Pa. v. President of United States of Am.*,
    888 F.3d 52 (3d Cir. 2018) .................................................................11, 12, 13

*Crawford v. Marion Cnty. Election Bd.*,
    472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008)................................14

*Donaldson v. United States*,
    400 U.S. 517 (1971)........................................................................................12

*Fla. State Conf. of N.A.A.C.P. v. Browning*,
    522 F.3d 1153 (11th Cir. 2008) .......................................................................14

*U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*,
    239 F.R.D. 404 (W.D. Pa. 2006) ....................................................................21

*Hoots v. Pennsylvania*,
   672 F.2d 1133 (3d Cir. 1982) ..............................................................17, 19

*Ind. State Conf. of NAACP v. Lawson*,
   326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd*, 937 F.3d 944 (7th
   Cir. 2019) ..............................................................................................16

*Issa v. Newsom*,
   No. 2:20-cv-01044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ..................14

*Kleissler v. U.S. Forest Serv.*,
   157 F.3d 964 (3d Cir. 1998) ..............................................................11, 18

*Kobach v U. S. Election Assistance Comm'n*,
   No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013)..................15, 17

*Kobach v. U.S. Election Assistance Comm'n*,
   No. 13-cv-4095- ..................................................................................17

*LaRoque v. Holder*,
   No. 1:10-cv-00561 (D. D. C. Aug. 25, 2010)................................................15

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
   659 F.3d 421 (5th Cir. 2011) ..............................................................12

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
   419 F.3d 216 (3d Cir. 2005) ..............................................................11

*Meek v. Metro. Dade County*,
   985 F.2d 1471 (11th Cir. 1993), *abrogated on other grounds by
   Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) ..................18

*Nat'l Wildlife Fed'n v. Ruckelshaus*,
   99 F.R.D. 558 (D.N.J. 1983)..............................................................19

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ..............................................................14

*Pierce v. Allegheny Cty. Bd. of Elections*,
   324 F. Supp. 2d 684 (W.D. Pa. 2003)..............................................................12

*Pub. Interest Legal Found., Inc. v. Winfrey*,
   No. 19-13638, 2020 WL 2781826 (E. D. Mich. May 28, 2020)..................15

*Seneca Res. Corp. v. Twp. of Highland, Elk Cty.*,
    863 F.3d 245 (3d Cir. 2017) ...............................................................16

*Texas v. United States*,
    798 F. 3d 1108 (D. C. Cir. 2015).......................................................15

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)..........................................................................17

*United States v. Alcan Aluminum, Inc.*,
    25 F.3d 1174 (3d Cir. 1994) .............................................................12

*United States v. Territory of V.I.*,
    748 F.3d 514 (3d Cir. 2014) .............................................................17

*Va. Voter's All., Inc. v. Leider*,
    No. 16-cv-394 (E.D. Va. June 17, 2016), ECF No. 25......................20

*Wallach v. Eaton Corp.*,
    837 F.3d 356 (3d Cir. 2016) .............................................................11

## Statutes

PUBLIC INTEREST LAW...........................................................................22

## Other Authorities

Federal Rule of Civil Procedure 24(a) ..............................................*passim*

Federal Rules of Civil Procedure Rule 24(b)....................................*passim*

The National Association for the Advancement of Colored People-Pennsylvania State Conference ("NAACP-PSC"), Black Political Empowerment Project ("B-PEP"), Common Cause Pennsylvania, and League of Women Voters of Pennsylvania ("the League") (together, the "organizational Applicants"), and Joseph Ayeni, Lucia Gajda, Stephanie Higgins, Meril Lara, Ricardo Morales, Natalie Price, Tim Stevens, and Taylor Stover (together, the "individual Applicants") (collectively, "Applicants"), submit this memorandum in support of their Motion to Intervene as Defendants as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, by permissive intervention pursuant to Rule 24(b).

## I.    INTRODUCTION

Plaintiffs have launched an all-out attack on voting by mail-in and absentee ballot.  They have done so, unapologetically, in the midst of a global pandemic.  The relief Plaintiffs seek from this Court is unprecedented, unsupported and unsupportable:  They want to stop Pennsylvania from certifying the results of the 2020 General Election.  If that fails, they seek (1) to prevent *all* mail-in and absentee ballots cast in up to seven counties, including Pennsylvania's two largest counties from being counted – a request for relief that, if granted, would result in over 2.6 million voters having their lawfully cast ballots discarded; *and* (2) to prevent ballots cast by qualified electors in the seven named counties from being counted if a voter was afforded an opportunity to cure a mail-in ballot.  This flagrant attempt to disenfranchise hundreds of thousands of Pennsylvania voters must be rejected.

Applicants are critical participants in these actions – as of now, they would be the only party in the case representing the interests of individual voters – and are well-situated to defend the right of all Pennsylvania voters to cast their ballots safely during this global pandemic. The individual Applicants are voters whose ballots will be thrown out if Plaintiffs obtain the relief they seek. The organizational Applicants are nonpartisan organizations representing the interests of their nearly 50,000 Pennsylvania members – many of whose votes would also be thrown out – and dedicated to eliminating barriers to voting and increasing civic engagement among their members and in traditionally disenfranchised communities.

Applicants are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) because (1) Applicants filed this motion without delay; Applicants have legally protectable interests in ensuring their lawfully cast ballots are counted; (3) the relief Plaintiffs seek would harm Applicants' interests; and (4) Applicants' interests go beyond those of the named Defendants, who have only a generalized public interest in applying Pennsylvania's election code.

Alternatively, Applicants should be permitted to intervene under Rule 24(b). Because Applicants seek leave to directly challenge Plaintiffs' attempt to discount otherwise valid ballots, their claims and defenses necessarily share common questions of law and fact with the main action, and Applicants' motion would neither delay nor prejudice the orderly adjudication of Plaintiffs' claims.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs Seek to Undo Pennsylvania's Efforts To Ensure That Mail-in Ballots Are Counted.

Plaintiffs seek an emergency order, declaration, or injunction prohibiting Defendants from certifying the results of the 2020 General Election. Comp. ¶ 15 and p. 84 (Request for Relief). In the alternative, they seek an emergency order, declaration, or injunction prohibiting Defendants from certifying any results from the General Election that included the tabulation of absentee and mail-in ballots "for which Plaintiffs' watchers were prevented from observing during the pre-canvass and canvass in the County Election Boards." *Id*. "In addition to the alternative requests for relief," Plaintiffs also seek an emergency order, declaration, or injunction prohibiting Defendants from certifying any results from the General Election that include the tabulation of absentee and mail-in ballots "which Defendants improperly permitted to be cured." *Id*. And although Plaintiffs do not include it in their final request for relief (*id.* at p. 84), Plaintiffs also raise issue with the tabulation of

> invalidly cast absentee and mail-in ballots which (i) lack a secrecy envelope, or contain on that envelope any text, mark, or symbol which reveals the elector's identity, political affiliation, or candidate preference, (ii) do not include on the outside envelope a completed declaration that is dated and signed by the elector, or (iii) are delivered in-person by third parties for non-disabled voters.

*Id.* at ¶ 15.

Plaintiffs' 243-paragraph Complaint makes a litany of allegations that purportedly support these requests for relief. Plaintiffs are wrong on the facts and the law, and Applicants seek to intervene in this action to protect the interests of individual voters whose fundamental right to vote is under attack and to provide the perspective of organizations whose mission is to facilitate full and fair participation in the electoral process. Applicants have at least as much of an interest in the outcome of this ligation as Defendants. But as voters who stand to be disenfranchised if Plaintiffs get their relief, the individual Applicants' interest is even greater. *See Pennsylvania Psychiatric Society v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 284 (3d Cir. 2002)

## B. The Organizational Applicants Are Organizations That Promote the Interests of Voters.

Applicants are nonpartisan organizations that represent nearly 50,000 Pennsylvania members, many of whom are now at risk of being unlawfully deprived of their right to vote. Their organizations are dedicated to eliminating barriers to voting and increasing civic engagement among their members and in traditionally disenfranchised communities. Applicants expend substantial resources on voter education and turnout efforts. For this election, Applicants' efforts have included providing accurate information to voters on how to cast mail-in and absentee ballots to ensure that voters have a full and fair opportunity to participate in spite of the unprecedented circumstance of the election taking place during a global pandemic.

The **NAACP-Pennsylvania State Conference** is a non-profit advocacy group for civil rights for Black Americans. Every election cycle, the NAACP-PSC engages in voter registration, education, and turnout efforts. Declaration of Kenneth L. Huston ¶¶ 6–8. The NAACP-PSC has been working to ensure that Black voters in Pennsylvania are educated on different voting methods, including mail-in and absentee voting, during the COVID-19 pandemic, and has conducted phone-banking to assist Pennsylvania voters, including those whose absentee ballots were rejected. *Id*. ¶¶ 9-10, 12. NAACP-PSC also has members, such as Philadelphia resident Mary Grice, who cured their rejected absentee ballot and are at risk of disenfranchisement if the Plaintiffs prevail in this case. *Id*. ¶¶ 13-14. It focuses on strategies, including litigation, to eliminate Black voter suppression in Pennsylvania. *Id*. ¶ 8; *see also Applewhite v. Commonwealth*, 2014 WL 184988 (Pa. Commw. Ct. Jan. 17, 2014).

The **Black Political Empowerment Project** (B-PEP) is a non-profit, non-partisan organization that has worked since 1986 to ensure that the Black community in Pittsburgh votes in every election. During every election cycle, B-PEP's work includes voter registration drives, get-out-the-vote activities, education outreach about the voting process, and election-protection work. B-PEP focuses these activities in predominantly Black American neighborhoods in Allegheny County, with some efforts in Westmoreland and Washington Counties. In preparation for the November 3 election, B-PEP's work has included educating voters about recent changes to Pennsylvania election procedures and informing its members and

members of the public about the signature requirement for the declarations accompanying mail-in ballots. *See* Declaration of Tim Stevens

**Common Cause Pennsylvania** is a non-profit political advocacy organization and a chapter of the national Common Cause organization. With approximately 36,000 members and supporters in Pennsylvania, Common Cause Pennsylvania works to encourage civic engagement and public participation in democracy, to ensure that public officials and public institutions are accountable to and reflective of all people, and to implement structural changes through the American democratic process. Common Cause Pennsylvania is non-partisan and uses grassroots mobilization, community education, coalition building, legislative advocacy, and litigation to build a democracy that is inclusive of all voters. Common Cause Pennsylvania works to ensure that voters in communities that vote at the lowest rates and use vote-by-mail at the lowest rates—which are also the communities that may be most unfamiliar with the technical instructions mail-in voting—can have their vote counted. *See* Declaration of Suzanne Almeida.

The **League of Women Voters of Pennsylvania** is a nonpartisan, statewide non-profit formed in August 1920, shortly after the Nineteenth Amendment granted women suffrage in November 1918. The League and its 2,273 members are dedicated to helping the people of Pennsylvania exercise their right to vote, as protected by the law. As part of its mission to educate and empower voters, the League promotes political responsibility and encourages the informed and active

participation in government and public policy issues. Through its education and advocacy efforts, the League works in the areas of voter registration, election protection, voter education, get-out-the vote efforts, and grassroots mobilization around voting rights. It works to ensure that voters are not disenfranchised by removing unnecessary barriers to full participation in the electoral process. The League has pursued legal action against Pennsylvania officials to achieve these goals. *See* Declaration of Terrie E. Griffin.

### C. The Individual Applicants Are Voters With Particularized Interests.

**Joseph Ayeni** is a seventy-seven year old African American voter whose ballot was rejected for failure to include a secrecy envelope. Declaration of Joseph Ayeni ¶¶ 3-6, 12. He was called on Election Day by election officials about this problem and cast a provisional ballot that day. *Id*. at ¶¶ 8-9.

**Lucia Gajda** is forty year old Northampton County voter who has underlying medical conditions, including an autoimmune disorder. Declaration of Lucia Gadja ¶¶ 3-6. She submitted her absentee ballot for the November 2020 election via an official dropbox, in order to avoid exposure to COVID-19, on or about October 10, 2020. Id. at ¶¶ 6-7. She recently checked the status of her ballot on the Pennsylvania ballot tracker website and it is marked as "vote recorded." Id. at ¶ 7. Ms. Gadja was exceedingly proud to cast her vote and would lose faith in our democracy if her vote

were not counted and she is robbed of her ability to express her views and hold elected officials accountable through no fault of her own.  Id. at ¶ 9.

**Stephanie Higgins** is a Philadelphia County voter who voted by mail.  Ms. Higgins is in the third trimester of a high-risk pregnancy, and she did not want to risk COVID exposure.  She used a drop box and her vote was received and recorded on October 23, 2020.

**Meril Lara** is a twenty-six year old Hispanic Philadelphia County voter who voted provisionally after receiving an email notification from election officials that her ballot was rejected for failure to include a secrecy envelope.  Declaration of Meril Lara ¶¶ 3-9.

**Ricardo Morales** is a forty-eight year old Hispanic Philadelphia County voter whose mail-in ballot was cancelled or rejected, likely due to a signature error. Declaration of Ricardo Morales ¶¶ 3-7. His full, Hispanic name has 4 names but he signed using the anglicized version, which has only two names.  Id. at 7.  SEIU texted him to let him know his ballot had been rejected on Election Day (he is a member of the American Federation of Musicians), so he voted provisionally.  Id. at 8-9.

**Natalie Price** is a seventy-three year old Montgomery County voter who votes in every election and who voted by mail-in ballot in order to avoid exposure to COVID-19, which she is at high risk for due to her age.  Declaration of Natalie Price ¶¶ 3-6.  Ms. Price received her mail-in ballot several weeks ago and returned

it right away, even making sure that a postal worker time-stamped it. Id. at ¶ 7. On November 1st and 2nd, Ms. Price received three calls from the Democratic Party informing her that her ballot had been rejected (though they weren't sure why). Id. at ¶ 8. The first site Ms. Price visited in Norristown to attempt to cure her ballot was drop-off only; she went to a second site where she learned that her ballot had been marked as defective because she did not hand-write her name and address on the ballot. Id. at ¶ 10. Ms. Price was not aware that she needed to hand-write her name and address in non-cursive print because that information was preprinted on the envelope and it seemed redundant to write it again. Id. at ¶ 11. Her ballot was signed, dated, and otherwise complied with all other ballot instructions. Id. at ¶ 12. Ms. Price would be devastated if her vote were thrown out, especially after she drove to a different town in the pouring rain to cure her ballot. Id. at ¶ 15.

**Tim Stevens** is a 75-year-old Black man and lifelong resident (minus 9 months in DC many years ago) of Allegheny County. He is the Chairman, Founder and CEO of Black Political Empowerment Project, B-PEP for short. As a long time civil rights leader in Pittsburgh, voting is very important to Mr. Stevens. He cannot recall the last time he missed an election. This year, concerns about contracting COVID-19 prompted him to vote by mail. Besides his age, which puts him at elevated risk of serious illness and death if he contracts the coronavirus, Mr. Stevens has seen reporting about how the disease disproportionately impacts Black people and people of color. For these reasons, he did not feel safe voting as he usually does

at a polling place.  Mr. Stevens drove his mail ballot to drop it off at the East Liberty post office several weeks before election day.  He confirmed online that his ballot was accepted.  Mr. Stevens does not want his vote nullified.

**Taylor Stover** is a twenty-six year old African American Philadelphia County voter whose ballot was rejected due to a problem with her signature.  Declaration of Taylor Stover ¶¶ 3-8.  She voted provisionally on Election Day because she says "[t]his is the most consequential election that I have experienced and I want my ballot to count."  Id. at ¶¶ 9-10.

## III.  APPLICANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Applicants satisfy the criteria to intervene as of right under Federal Rule of Civil Procedure 24(a).  Applicants have a right to intervene upon establishing: "(1) a timely application for leave to intervene, (2) a sufficient interest in the underlying litigation, (3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent [their] interests."  *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005).  Courts construe these factors to "favor[] intervention over subsequent collateral attacks."  *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998).  When these requirements are satisfied, intervention is mandatory.  *Id.* at 974; *see also Commonwealth of Pa. v. President of United States of Am.*, 888 F.3d 52, 60 (3d Cir. 2018).  The Applicants have satisfied these

requirements.

## A.    The Motion to Intervene Is Timely.

This motion, which is being filed the day after Plaintiffs initiated this action, is undoubtedly timely.  *See Wallach v. Eaton Corp.,* 837 F.3d 356, 371 (3d Cir. 2016).  Applicants' prompt intervention does not delay the advancement of this action or otherwise harm the parties.  *See Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, 2017 WL 1376298, at *5 (W.D. Pa. Apr. 17, 2017); *see also Mountain Top Condominium Ass'n*, 72 F.3d at 370.  Applicants' next-day motion to intervene is timely for purposes of Rule 24.

## B.    Applicants Have Sufficient Interests in This Litigation.

Applicants have a "sufficient" – *i.e.*, a "significantly protectable" – interest in the litigation.  *Donaldson v. United States*, 400 U.S. 517, 531 (1971).  Under Rule 24(a)(2), a protectable interest is a "cognizable legal interest" distinguished from "an interest of a general and indefinite character."  *Pennsylvania v. President of United States of Am.*, 888 F.3d at 58.  It is "recognize[d] as belonging to or being owned by the [proposed intervenor]."  *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 (3d Cir. 1994).

The interest of the individual Applicants and organizational members is simple:  Voters who cast mail-in or absentee ballots in the 2020 election, or who voted by provisional ballot or in person after receiving notice of a mail-in ballot error, have a significantly protectable interest in ensuring their ballots are counted.

*See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011) (finding a legally protectable interest where the intervenor sought to protect his right to vote); *see also Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 694–95 (W.D. Pa. 2003) ("The right of qualified electors to vote . . . is recognized as a fundamental right, . . . extend[ing] to all phases of the voting process, [and applying] equally to the initial allocation of the franchise as well as the manner of its exercise.").

Likewise, the organizational Applicants have an interest in protecting one of the core missions of their organizations – ensuring that their members, and all Pennsylvanians, are given a full and equal opportunity to exercise their fundamental right to vote – which they have dedicated considerable effort to advancing. *See Pennsylvania v. President of United States of Am.*, 888 F.3d at 58 (permitting a religious group to intervene based on its interest in preserving the religious exemption achieved through prior litigation efforts, where the religious organization was described as an "impetus for change").

Each of the organizational Applicants is committed to eliminating barriers to voting and increasing civic engagement, especially in communities that have been traditionally disenfranchised. In pursuit of that mission, each organization engages in robust voter registration, voter education, and get-out-the-vote activities, expending considerable resources towards ensuring that eligible voters in Pennsylvania can exercise their right to vote. Discarding ballots that have been

lawfully cast would undermine these organizations' voter-advocacy efforts by leading some voters to believe that voting is pointless because their ballots will not be counted, making it more expensive for the organizational Applicants to carry out their missions in the future. The threat of frustration of these core voter enfranchisement missions gives the organizational Applicants a significantly protectable interest in this litigation. *See, e.g.*, *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) ("[A] voting law can injure an organization enough to give it standing by compelling [it] to devote resources to combatting the effects of that law that are harmful to the organization's mission.").

The organizational Applicants also have an interest in ensuring that legally cast ballots are not discarded because it would force Applicants to divert resources from other organizational priorities to educate members and other voters of their rights and the severe restrictions on voting that Plaintiffs seek to impose. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017) (finding standing where an organization was required to dedicate additional resources to assisting voters navigate the polls); *Fla. State Conf. of N.A.A.C.P. v. Browning,* 522 F.3d 1153, 1164-65 (11th Cir. 2008); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020). If Plaintiffs were to obtain the relief they seek, the organizational Applicants would be forced to commit resources immediately to respond to questions from members and voters about the

status of their lawfully cast ballots in this election. In addition, the diversion of the organizational Applicants' resources would continue into future years, as they would need to dedicate larger portions of their staff and monetary resources toward ensuring that members' votes are not rejected. These efforts will come at the expense of other organizational priorities.

Finally, courts routinely find that public interest organizations, like the organizational Applicants, should be granted intervention in voting and other election-related cases, demonstrating the significantly protectable interests such organizations have in the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111 (D. C. Cir. 2015); *Pub. Interest Legal Found., Inc. v. Winfrey*, No. 19-13638, 2020 WL 2781826, at *2 (E. D. Mich. May 28, 2020); *Kobach v U. S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013); *LaRoque v. Holder*, No. 1:10-cv-00561 (D. D. C. Aug. 25, 2010). This case is no exception.

## C. Disposition of this Case May Impair Applicants' Interests.

Applicants also satisfy the third prong of the intervention analysis because the "disposition" of this action "'may' impair or impede their ability to protect their interests." Applicants need not show that their interests "will" be impaired by disposition of the ligation; only that they "may" be. *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). Indeed, the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making

potentially adverse decisions." *Id.* at 345; *see also Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992).

The individual Applicants, the organizational Applicants' members, and many other Pennsylvania voters are in jeopardy of being stripped of their fundamental right to vote. Applicants' rights thus undoubtedly stand to "be affected by a proposed remedy in this case." *See Seneca Res. Corp. v. Twp. of Highland, Elk Cty.*, 863 F.3d 245, 257 (3d Cir. 2017). The individual Applicants could have their lawfully cast ballots tossed out. The organizational Applicants are at risk of losing their ability to protect their interests and those of their members in voter participation. These concerns of voter disenfranchisement are amplified with respect to the underrepresented minority communities that the organizational Applicants serve. "Historically . . . throughout the country, voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson,* 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd*, 937 F.3d 944 (7th Cir. 2019). The organizational Applicants have worked to remedy those practices, in part, by ensuring that their registration, education, and get-out-the-vote efforts reach vulnerable or underserved minority communities. Thus, the organizational Applicants have significant interests in ensuring that Plaintiffs' proposed relief does not harm those communities.

**D.     The Interests of Existing Defendants May Diverge from Those of Applicants.**

Applicants also meet the "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests.  *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972); *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982).  "The possibility that the interests of the applicant and the parties may diverge need not be great," *Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98, 110 (M.D. Pa. 2011), and a proposed intervenor need only show that "although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper attention," *United States v. Territory of V.I.*, 748 F.3d 514, 519–20 (3d Cir. 2014).

Here, the interests of the organizational and individual Applicants are distinct and may diverge from those of the governmental Defendants.  *See Am. Farm Bureau Fed'n,* 278 F.R.D. at 110-11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders).  While the Defendants may have a generalized interest in upholding the law, they do not have a direct interest in protecting the validity of their own votes, as the individual Applicants and the organizational Applicants' members do, or in ensuring the broad voter access that is fundamental to the mission of the organizational Applicants.  *See Kobach v. U.S. Election Assistance Comm'n*, No.

13-cv-4095- EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (applicants who had shown their interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of the defendant Election Assistance Commission); *see also, e.g.*, *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007).

Moreover, there are a number of issues, positions, and claims that a governmental entity may not be willing to raise that are critical to public interest organizations like the organizational Applicants. Unlike Defendants, who are broadly responsible for the management of elections, the interests of Applicants are personal to these individuals and the organizations' members. Their right to vote – indeed, their right to have the votes they have already cast counted – is at risk. As the Third Circuit has recognized: "[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler*, 157 F.3d at 972.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION.

Even if the Court determines that Applicants are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. *See Donald J. Trump for President v. Boockvar, No. 2:20-cv-00966-NR (W.D. Pa. Aug. 3, 2020), ECF No. 309; Hoots*, 672 F.2d at 1136. A court may grant permissive intervention when the motion to intervene is timely and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The decision whether or not to do so is "highly discretionary." *Brody*, 957 F.2d at 1115.

Applicants easily satisfy the threshold requirements for permissive intervention here. Their motion is timely, and they seek to assert defenses that squarely address the factual and legal premise of Plaintiffs' claims, including but not limited to whether: (1) alleged noncompliance with Pennsylvania law regarding election observers requires throwing out hundreds of thousands of ballots that were lawfully cast; (2) a ballot that has a defect that is cured by the voter on or before Election Day must be thrown out.

Permissive intervention is especially appropriate where, as here, Applicants may meaningfully contribute to the proper development of the factual or legal issues in dispute. *See Nat'l Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J.

1983).  Applicants expect to present a perspective on key legal and factual issues that are different from the Defendants and the other parties in this case.

In particular, the individual Applicants and organizational Applicants' members are themselves the individual voters whose ballots Plaintiffs seek to discard.  Furthermore, the organizational Applicants will be able to present a unique perspective based on their deep experience educating, registering, and assisting voters in Pennsylvania counties and constituent communities.  Organizational Applicants, their affiliates in sister-states, and their counsel have litigated numerous voting rights cases and have experience analyzing claims such as those asserted here and the methodology behind them. *See, e.g.*, *Va. Voter's All., Inc. v. Leider*, No. 16-cv-394 (E.D. Va. June 17, 2016), ECF No. 25 (granting League of Women Voters of Virginia's motion to intervene in suit seeking to compel maintenance of voter registration list).  Applicants will draw on this national experience and their history representing populations most likely to be impacted by the relief Plaintiff seeks in framing their defense of this litigation.  The organizational Applicants also represent thousands of Pennsylvania voters who, along with individual Applicants, would be burdened if Plaintiffs are successful in this litigation.

Granting Applicants' Motion at this early stage of the case would not delay or prejudice the adjudication of the original parties' rights.  *See* Fed. R. Civ. P. 24(b).  By contrast, refusing to permit intervention would deprive Applicants of the chance to defend their significant and protectable interests in the litigation.

## V. THE COURT SHOULD GRANT APPLICANTS LEAVE TO FILE A RESPONSIVE PLEADING ON THE SAME SCHEDULE AS DEFENDANTS.

Applicants further move for leave to file a responsive pleading on the same date that the current Defendants file a pleading in response to the Complaint. This Court has discretion to grant this motion without the inclusion of a pleading where no prejudice will result to the other parties. *See, e.g.*, *Amalgamated Transit Union, Local 1729 v. First Grp. Am. Inc.*, No. 2:15-CV-806, 2016 WL 520989, at *1 (W.D. Pa. Feb. 10, 2016); U.*S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 411 (W.D. Pa. 2006). This motion is being filed at the very initial stages of the litigation and granting this motion will not delay or prejudice any party, as Defendants have filed no responsive pleading and this Memorandum provides sufficient notice of the basis for intervention and defenses Applicants will assert. For these reasons, the Applicants request leave to file a responsive pleading on the same schedule as Defendants.

## VI. CONCLUSION

For the reasons stated above, the Court should grant the Applicants' Motion to Intervene as of right, or in the alternative, for permissive intervention, and to file a responsive pleading on the same schedule as defendants.

Dated: November 10, 2020                    Respectfully submitted,

Witold J. Walczak (PA No. 62976)          */s/          Witold J. Walczak*
Marian K. Schneider (PA No. 50337)        Mary M. McKenzie (PA No. 47434)*

AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Telephone: (412) 681-7736
vwalczak@aclupa.org
mschneider@aclupa.org


Sophia Lin Lakin*
Adriel I. Cepeda Derieux*
Ihaab Syed*
Dale Ho*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
slakin@aclu.org
acepedaderieux@aclu.org
ISyed@aclu.org
dho@aclu.org


Sarah Brannon*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Telephone: (202) 210-7287
sbrannon@aclu.org

Benjamin D. Geffen (PA No. 310134)*
Claudia De Palma (PA No. 320136)
PUBLIC INTEREST LAW CENTER
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
Telephone: (215) 627-7100
mmckenzie@pubintlaw.org
bgeffen@pubintlaw.org
cdepalma@pubintlaw.org


Shankar Duraiswamy*
David M. Zionts*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
SDuraiswamy@cov.com
DZionts@cov.com


Rani Gupta*
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
RGupta@cov.com


Ezra Rosenberg*
Jon Greenbaum*
Kristen Clarke*
LAWYERS COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300
erosenberg@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
kclarke@lawyerscommittee.org


* *Pro hac vice* application forthcoming

*Counsel for Proposed Intervenor-Defendants, NAACP-PSC, Black Political Empowerment Project, Common Cause Pennsylvania, League of Women Voters of Pennsylvania; Joseph Ayeni, Lucia Gajda, Stephanie Higgins, Meril Lara, Ricardo Morales, Natalie Price, Tim Stevens, and Taylor Stover*

## CERTIFICATE OF WORD COUNT

I HEREBY CERTIFY on this 10th day of November that the above

memorandum contains fewer than 5000 words (4864).

/s/     *Witold J. Walczak*
Witold J. Walczak

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing memorandum of law in support of motion to intervene was filed electronically and served on Plaintiffs' counsel of record via the ECF system of the U.S. District Court for the Middle District of Pennsylvania; and via e-mail on counsel for defendants.

Dated: November 10, 2020

/s/    *Witold J. Walczak*
Witold J. Walczak