# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Donald J. Trump for President, Inc., Lawrence Roberts, and David John Henry,<br><br>    Plaintiffs,<br><br>v.<br><br>Kathy Boockvar, in her capacity as Secretary of the Commonwealth of Pennsylvania, Allegheny County Board of Elections, Centre County Board of Elections, Chester County Board of Elections, Delaware County Board of Elections, Montgomery County Board of Elections, Northampton County Board of Elections, and Philadelphia County Board of Elections,<br><br>    Defendants,<br><br>v.<br><br>DNC Services Corporation/Democratic National Committee,<br><br>    Proposed Intervenor-Defendant. | No. 4:20-cv-02078-MWB<br>(Judge Matthew W. Brann) |

**PROPOSED INTERVENOR-DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO INTERVENE**

## I.   INTRODUCTION

This Court has been asked to nullify the November General Election in Pennsylvania and ignore every single ballot cast in the Commonwealth—in excess of 6.75 million votes—for every single race on the ballot because Plaintiff Donald J. Trump for President, Inc. (the "Trump Campaign") is upset about his electoral defeat in Pennsylvania. This lawsuit is at least the Trump Campaign's eighth attempt to reverse his defeat at the ballot box through meritless post-election litigation. Every other court confronted with these efforts—including at least five in the Commonwealth—has rejected them. Though this latest lawsuit may seek the most dramatic remedy—casting aside millions of ballots—the Trump Campaign, joined by two voters who do not live in the counties that have been sued, once again fails to identify any cognizable injury under federal or state law. As Plaintiffs themselves note, "[e]very legal . . . vote should be counted[,]" and that is indeed what happened in Pennsylvania. Compl. ¶ 1.

Proposed Intervenor DNC Services Corporation/Democratic National Committee (the "DNC") has a significant and protectable interest in the outcome of this litigation. The DNC is a national committee, as that term is defined by and used in 52 U.S.C. § 30101, dedicated to electing local, state, and national candidates of the Democratic Party to public office throughout the United States. Among the DNC's members and constituents are eligible voters in Pennsylvania who have

submitted in-person, absentee, and mail-in ballots for the November General Election. Many—if not all—of these voters will be disenfranchised if Plaintiffs achieve the outcome they seek, which in turn, will harm the DNC's core mission and its candidates' chances for electoral success in Pennsylvania. Additionally, the DNC's interests are not adequately represented in this litigation because the Secretary of the Commonwealth, the Allegheny County Board of Elections, Centre County Board of Elections, Chester County Board of Elections, Delaware County Board of Elections, Montgomery County Board of Elections, Northampton County Board of Elections, and Philadelphia County Board of Elections (collectively, "Defendants") are state and local officials, whose interests are defined by their duty to administer elections—interests that are distinct from the DNC's interest in the protection of the franchise for its voters and its interest in the election of specific candidates.

For the reasons that follow, this Court should find that the DNC is entitled to intervene in this case as a matter of right under Rule 24(a)(2). In the alternative, the DNC should be granted permissive intervention pursuant to Rule 24(b).[1]

---

[1] The DNC will file its proposed motion to dismiss in accordance with the Court's Scheduling Order issued on November 10, 2020. ECF No. 35; *see* Fed. R. Civ. P. 24(c).

## II.     BACKGROUND

On the same day that Vice President Joseph R. Biden, Jr. was declared the winner of Pennsylvania's electoral votes, President Trump's personal attorney announced the Trump Campaign's intention to sue to invalidate hundreds of thousands of Pennsylvanians' votes based on demonstrably false allegations that Trump Campaign representatives were not permitted to observe the review and counting of absentee and mail-in ballots in Pennsylvania. This lawsuit followed two days later. Plaintiffs, the Trump Campaign and two individual voters, assert violations of the Fourteenth Amendment's Due Process Clause and Equal Protection Clause, the Electors and Elections Clauses, and 42 U.S.C. § 1983, alleging that some County Boards of Elections counted ballots without the presence of poll watchers; those who observed the counting of ballots were not permitted to scrutinize each individual absentee or mail-in ballot envelope; and voters who reside in the Defendant Counties were allegedly treated differently than qualified electors in other parts of the state. Compl. ¶¶ 159-243. These claims have no basis in law or fact.

Plaintiffs seek to invalidate ballots based on a non-existent right of Trump Campaign representatives to review individual absentee and mail-in ballots. The remedy sought is dramatic and extends to all ballots cast in Pennsylvania—upwards of 6.75 million votes—including those cast in-person. But just as in the recently-dismissed case, *Donald J. Trump for President, Inc. v. Philadelphia County*, No. 20-

05533 (E.D. Pa. Nov. 5, 2020), the Trump Campaign once again fails to identify any cognizable injury under federal or state law. There is still no constitutional right to poll watch, so the Trump Campaign is not injured by state law setting forth the parameters for authorized individuals to observe the review and counting of absentee and mail-in ballots. Moreover, such ballots *were* counted with poll watchers from the Trump Campaign present. And Plaintiffs' allegations regarding allegedly disparate treatment reflect nothing more than counties lawfully following the Secretary's guidance allowing eligible voters to cast provisional ballots if their "mail-in or absentee ballot was rejected for a reason unrelated to the voter's qualifications." Pa. Dep't of State, *Pennsylvania Provisional Voting Guidance*, (Oct. 21, 2020), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS_ProvisionalBallots_guidance_1.0.pdf. Plaintiffs' requested remedy—setting aside at least 6.75 million ballots, or in the alternative, "only" more than 680,000 ballots—not only violates state law, it obliterates the constitutional rights of voters and candidates and improperly inserts this Court into issues of state law and election administration minutia.

### III. ARGUMENT

**A.   The DNC is entitled to intervene as of right.**

The DNC qualifies for intervention as of right. Intervention as of right must be granted when (1) the motion to intervene is timely; (2) the proposed intervenors

possess an interest in the subject matter of the action; (3) denial of the motion to intervene would affect or impair the proposed intervenors' ability to protect their interests; and (4) the proposed intervenor's interests are not adequately represented by the existing parties to the lawsuit. Fed. R. Civ. P. 24(a)(2); *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987). The DNC satisfies each of these factors.

### 1. The motion to intervene is timely.

First, the motion to intervene is timely. The DNC sought intervention at the earliest possible stage of this action, and its intervention will neither delay the resolution of this matter nor prejudice any party. The Trump Campaign filed its complaint on November 9, the DNC participated in the telephonic status conference held on November 10, and this motion to intervene follows just one day later. No motions have been fully briefed—and thus no party can legitimately claim that intervention by the DNC would cause any prejudicial delay. Under these circumstances, the motion is timely. *See, e.g.*, *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005) (finding intervention timely where hearing schedule had been set but no hearing had yet been conducted).

### 2. The DNC has a significant protectible interest in the outcome of the litigation.

Second, the DNC has significant and cognizable interests in intervening in this case to ensure that Pennsylvania voters, including its members, constituents, and those who support its candidates, have their ballots counted. Proposed intervenors

"are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 951 (3d Cir. 2012). Here, the DNC, its candidates, and its members have a powerful interest in having ballots counted according to the procedures provided for under Pennsylvania law and having election results certified to include all valid ballots. In fact, the DNC's interest in opposing the relief sought is more concrete and acute than Plaintiffs' interest in bringing the litigation in the first instance: the DNC's members have the right to have their ballots counted.

Plaintiffs have asked this Court to discard more than 6.75 million ballots cast in Pennsylvania, or in the alternative, to discard all absentee and mail-in ballots the Trump Campaign has alleged it could not "meaningfully" review (somewhere between several hundred thousand ballots and a few million ballots). Compl. ¶¶ 4, 9. Putting aside the fact that there is no state or federal right to observe the review and counting of individual ballots *and* the fact that Trump Campaign poll watchers were present as absentee and mail-in votes were tabulated across Pennsylvania, should Plaintiffs be granted their requested relief, DNC-supported candidates would lose lawfully-executed votes, and DNC members would be disenfranchised. Similarly, Plaintiffs also seek to discard any ballots that were allegedly improperly cured, despite counties following the Secretary's guidance. Again, the DNC undoubtedly has a cognizable interest in protecting its candidates' and voters' rights

to have their votes counted—whether to protect candidates' electoral prospects or to protect individual voters' fundamental right to have their vote counted. *See Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964) ("There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have the ballot counted."); *cf. Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) (holding that Texas Democratic Party had direct standing based on "harm to its election prospects").

In related circumstances, courts have held that where proposed relief carries with it the prospect of disenfranchising the Democratic Party's members, the Democratic Party had a legally cognizable interest at stake. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008) (agreeing with the unanimous view of the Seventh Circuit that the Indiana Democratic Party had standing to challenge voter identification law that risked disenfranchising its members); *cf. NEOCH v. Husted*, 696 F.3d 580 (6th Cir. 2012) (Ohio Democratic Party allowed to intervene in case where challenged practice would lead to disenfranchisement of its voters).

### 3. Denial of the motion to intervene will impair the DNC's ability to protect its interests.

Third, denial of the motion to intervene will, as a practical matter, impair or impede the DNC's ability to protect these interests. Where a proposed intervenor has a protectible interest in the outcome of the litigation, courts have "little difficulty

concluding" that their interests will be impaired. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). When considering this factor, courts "look[] to the 'practical consequences' of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977); Advisory Comm. to Fed. R. Civ. P. 24 1966 Amendment ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene. . . ."). Intervention is warranted if the proposed remedy threatens to harm intervenors. *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 n.15 (3d Cir. 1994).

There can be no doubt that disposition of this matter has the potential to impair the DNC's ability to protect its interests. Plaintiffs seek to invalidate every ballot cast in Pennsylvania, or in the alternative selectively discard votes that heavily favor Vice President Joseph R. Biden, Jr. and other Democratic candidates on the ticket. All forms of relief sought will disenfranchise DNC's members, threaten DNC's candidates' electoral prospects, and significantly delay the resolution of the election. In similar circumstances, Courts have routinely granted political party committees' intervention where plaintiffs seek to make it harder to vote or harder to have that vote counted. *E.g. Parnell v. Allegheny Bd. of Elections*, No. 20-cv-01570 (W.D. Pa. Oct. 22, 2020), ECF No. 34 (granting intervention to Democratic

Congressional Campaign Committee (DCCC) in lawsuit regarding processing of ballots); *Paher v. Cegavske*, No. 20-cv-00243-MMD-WGC, 2020 WL 2042365, at *4 (D. Nev. Apr. 28, 2020) (granting DNC intervention in election case brought by conservative interest group); *see Donald J. Trump for President*, *Inc*., No. 20-cv-10753 (MAS) (ZNQ), 2020 WL 5229209, at *1 (D. N.J. Sept. 01, 2020) (granting DCCC intervention in lawsuit by Republican candidate and party entities); *Cook Cnty. Republican Party v. Pritzker*, No. 20-cv-4676 (N.D. Ill. Aug. 28, 2020), ECF No. 37 (granting DCCC intervention in lawsuit by Republican party entity); *Issa v. Newsom*, No. 20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting DCCC and California Democratic Party intervention in lawsuit by Republican congressional candidate); *Donald J. Trump for President v. Bullock*, No. 20-cv-66 (D. Mont. Sept. 08, 2020), ECF No. 35 (granting DCCC, DSCC, and Montana Democratic Party intervention in lawsuit by four Republican party entities); *cf. DCCC v. Ziriax*, No. 20-CV-211-JED-JFJ, 2020 WL 5569576, at *2 (N.D. Okla. Sept. 17, 2020), ECF No. 56 ("DCCC and the Democratic candidates it supports . . . have an interest in ensuring that Democratic voters in Oklahoma have an opportunity to express their will regarding Democratic Party candidates running for elections."). Here, the requested remedy and harm is extreme—Plaintiffs seek relief that would not just burden DNC's voters, but would completely disenfranchise them.

### 4. The DNC's interests are not adequately represented by Defendants.

Fourth, the DNC's interests are not adequately represented by Defendants. The burden to satisfy this factor is "minimal." *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995). Intervenors need not show that representation *will* be inadequate, only that it "'*may* be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added) (quoting 3B J. Moore, Fed. Prac. 24.09-1(4) (1969)). When one of the original parties to the suit is a government entity, whose positions "are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," the Third Circuit has found that "the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citing *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996)). The Secretary and County Boards of Elections' stake in this lawsuit is defined solely by their statutory duties to conduct elections and their responsibility to their constituents writ large. The DNC's interest, however, is ensuring the election of Vice President Joseph R. Biden, Jr. and other Democratic candidates on the ticket, and ensuring that as many of its voters' ballots are counted. Because government actors and political parties have sharply different interests and priorities, political actors have routinely

been permitted to intervene in actions where election officials are named as defendants. *Issa*, 2020 WL 3074351, at *3 ("While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures."); *see also Donald J. Trump for President, Inc. v. Murphy*, No. 320-CV-10753-MAS-ZNQ, 2020 WL 5229209, at *1 (D.N.J. Sept. 1, 2020); *Donald J. Trump for President, Inc v. Cegavkse*, No. 2:20-CV-1445 JCM (VCF), 2020 WL 5229116, at *1 (D. Nev. Aug. 21, 2020); *Paher*, 2020 WL 2042365, at *2.

**B.     The DNC is also entitled to permissive intervention.**

If the Court does not grant intervention as a matter of right, the DNC respectfully requests that the Court exercise its discretion to allow it to intervene under Rule 24(b). The Court has broad discretion to grant a motion for permissive intervention when the Court determines that: (1) the proposed intervenor's claim or defense and the main action have a question of law or fact in common, and (2) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1)(B) and (b)(3); *Spang*, 957 F.2d at 1115; *League of Women Voters of Va. v. Va. State Bd. of Elections*, No. 6:20- CV-00024,

2020 WL 2090678, at *5 (W.D. Va. Apr. 30, 2020). Even where courts find intervention as of right may be denied, permissive intervention might nonetheless be proper or warranted. *See Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982).

The DNC easily meets the requirements of permissive intervention. First, the DNC will inevitably raise common questions of law and fact, including whether Plaintiffs have standing, whether the Trump Campaign's supporters have a right to watch absentee ballot counting and canvassing, and whether hundreds of thousands (or even millions) of votes should be invalidated. Second, for the reasons set forth above, the motion to intervene is timely, and given the early stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. The DNC is prepared to proceed in accordance with the schedule this Court determines, and its intervention will only serve to contribute to the complete development of the factual and legal issues before the Court.

## IV.   CONCLUSION

For the reasons stated, the DNC is entitled to intervention as of right. In the alternative, it requests that the Court grant it permissive intervention.

Dated: November 11, 2020

Marc E. Elias*
Uzoma Nkwonta*
Lalitha D. Madduri*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
MElias@perkinscoie.com
UNkwonta@perkinscoie.com
LMadduri@perkinscoie.com
JGeise@perkinscoie.com

Respectfully submitted,

/s/ Clifford B. Levine

Clifford B. Levine (PA ID No. 33507)
Alex M. Lacey (PA ID No. 313538)
Kyle J. Semroc (PA ID No. 326107)
DENTONS COHEN & GRIGSBY P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Telephone: (412) 297-4998
Clifford.levine@dentons.com
Alex.lacey@dentons.com
Kyle.semroc@dentons.com

Seth P. Waxman*
Ari Holtzblatt*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Seth.Waxman@wilmerhale.com
Ari.Holtzblatt@wilmerhale.com

*Counsel for Proposed Intervenor*

*\*Motions for Special Admission Forthcoming*

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2020, I filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                               /s/ Clifford B. Levine
                                               Counsel for Proposed Intervenor