## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| _____ : | |
| DONALD J. TRUMP FOR PRESIDENT, : | |
| INC., ET AL. : | |
| Plaintiffs, : | |
| : | |
| : | |
| v. : | Civil No. 4:20-cv-02078-MWB |
| : | |
| KATHY BOOCKVAR, ET AL. : | |
| : | |
| : | |
| Defendant : | |
| _____ : | |

## PROPOSED OPPOSITION TO REQUEST FOR EMERGENCY INJUNCTIVE RELIEF

Intervener, Daniel A. Berger, (hereinafter "Mr. Berger") by and through his counsel, hereby responds in opposition to Plaintiffs' Request for Emergency Injunctive Relief and states as follows:

### INTRODUCTION

1.      The very first sentence of Plaintiffs' Verified Complaint is completely true – American citizens absolutely deserve fair elections. The remainder of its entire filing, however, is nothing more than a palpable sham and a profoundly egregious and disturbing effort to distort reality, pervert the legal process, and invite the federal judiciary to become unwitting participants in Plaintiffs' abusive, unlawful, and fraudulent scheme, as will be explained in more detail below.

### A Determination of What Votes Are Legal Or Illegal Is A Question Of State Law That Was Already Decided By The State Supreme Court And Therefore The Motion Should Be Denied

2.      First and foremost, to a large degree, Plaintiffs have already achieved some moderate degree of success in tricking the federal judiciary into becoming unwitting participants

in Plaintiffs' nationwide scam with their frivolous petition for a writ of certiorari to the Supreme

Court of the United States seeking a reversal of the decision of the Pennsylvania Supreme Court

in the matter of *Republican Party of Pennsylvania v. Kathy Boockvar, Secretary of Pennsylvania,*

*Et Al.*, when three justices of the high court erroneously concluded that "there is a strong

likelihood that the State Supreme Court decision violates the Federal Constitution... [and] [t]he

provisions... conferring on state legislatures, not state courts, the authority to make rules

governing federal elections." See Statement of Justice Alito on Denial of Motion to Expedite

Consideration of the Petition For Writ of Certiorrari 592 U.S. ____, *3 (2020).

3.      It is absolutely true that the federal constitution vested the authority to establish

procedures for holding federal elections with the state legislatures, however, the relevant

legislature for purposes of assessing federal constitutional validity is not the General Assembly

of 2020, but the Legislature of the Commonwealth of Pennsylvania that existed at the time of the

Constitution's adoption and ratification, which thereafter adopted resolutions providing for a

state constitutional convention adopting a "free and equal" election clause and further

establishing a state supreme court as a co-equal third branch of the Commonwealth's

government that would have authority to interpret legislation thereafter enacted for compliance

with the state's constitution.

4.      As set forth in the *Amicus Brief of Tom Ridge, et al.* that was filed on October 2,

2020:

> "The Applicants ignore the ample history showing the crucial role
> of the General Assembly in the approval of the Free and Equal
> Clause of the Pennsylvania Constitution. The Pennsylvania
> Constitution of 1790 was the first Pennsylvania Constitution to
> include a "free and equal" election clause. In 1789, the
> Pennsylvania General Assembly adopted resolutions providing for
> a state constitutional convention. Pa. Act of Sept. 15, 1789; Pa. Act
> of March 24, 1789. The ensuing Convention of 1790 adopted the

Pennsylvania Constitution of 1790 (the "1790 Constitution"). Article IX of the 1790 Constitution contained a Declaration of Rights. Section V of Article IX provided: "That elections shall be free and equal." Section XXVI of the Article IX (the "Inviolate Clause") provided that all of the rights in the Declaration "shall forever remain inviolate." See Exhibit 1.

5.      Subsequent acts of Pennsylvania's Legislature, the General Assembly, either considering or changing the state constitution in 1835, 1836, 1872, and 1967 had the effects of reaffirming the state constitution as the Supreme Law of the land, and, importantly, reaffirming the Pennsylvania Supreme Court's role in interpreting future legislation in light of private challenges to their constitutional validity.[1]

6.      Thus, the current Pennsylvania Constitution, the Constitution of 1968, which was adopted pursuant to another constitutional convention that was specifically convened **pursuant to the Pennsylvania Legislature**, PA. Act of Mar. 15, 1967, P.L. 2, No. 2 § 1 ("1967 Act"), available at https://www.legis.state.pa.us, "precluded both voters and the convention from narrowing the Declaration of Rights contained in Article I of the 1874 Constitution" and therefore any provisions of the instant legislation, Act 77, would still be subject to review, interpretation, and modification of the Pennsylvania Supreme Court, upon a finding of inconsistency with the "free and equal" elections clause. See Exhibit 1.

7.      Therefore, the decision of the State Supreme Court, in *Republican Party of Pennsylvania v. Kathy Boockvar, Secretary of Pennsylvania, et al.*, finding that portions of Act 77 **as applied to the facts of the case**, violated the state constitution, **was necessarily a derivative of Legislative acts** pursuant to a state's authority to "authorize other actors 'to

---

[1] In fact, the Legislature did not, on its own, consider or adopt changes, but instead passed various pieces of legislation to either hold a constitutional convention or approve a ballot measure to allow citizens to vote on whether to hold a constitutional convention.

[2] Plaintiff, Donald J. Trump For President, Inc. participated in the state case moving to intervene, and was ultimately

*supplement* the legislature's role.'" See Exhibit 1 (citing Arizona State Legislature v. Arizona Independent Redistricting Comm'n, 576 U.S. 787, 841 (emphasis in original)).

8.      Accordingly, a determination of what votes are legal and what votes are illegal, has already been rendered by the state's authority and thus, Plaintiffs' collateral attack on that determination by filing the instant request for injunctive relief is without merit and should be denied summarily for lack of subject matter jurisdiction pursuant to the Rooker-Feldman Doctrine that precludes United States District Courts from acting as *de facto* appeals courts to parties that lost in state courts.[2]

**Plaintiffs' Allegations Of Fraud Are Demonstrably False As To Mr. Berger And Therefore The Motion Should Be Denied**

9.      At the same time, Plaintiffs' vague attempts to slander the integrity of all mail-in ballots is also completely frivolous and a palpable sham:

10.      For example, at paragraph fourteen (14) of Plaintiffs verified complaint, Plaintiffs falsely assert that:

> "[N]early 2.65 million votes were cast through a 'mail-in' process that lacked all of the hallmarks of transparency and verifiability that were present for in-person voters... [such as] refus[ing] to require adequate verification of the voter's identity... [lacking a process to have] signatures checked against voter rolls... [and] permit[ting] the review and counting of mail-in ballots largely in secret with no monitoring." (ECF Doc No. 1)

11.      Thus, Plaintiffs' purportedly verified complaint, **attesting to the truth of the matters asserted therein**, asserts that: (i) mail-in ballots that were submitted such as that of Mr. Berger's did not require adequate verification of his identity; (ii) mail-in ballots that were submitted such as that of Mr. Berger's lacked an adequate process for checking signatures

---

[2] Plaintiff, Donald J. Trump For President, Inc. participated in the state case moving to intervene, and was ultimately permitted to file an *amicus brief* in the appeal then pending before the state supreme court, who maintained the same interest as the losing parties in that action.

against voter rolls; and (iii) mail-in ballots that were submitted such as that of Mr. Berger's were reviewed and counted in secret with no monitoring.

12.     However, each of the above factual allegations, is demonstrably false and tantamount to perjury, which likely gives rise to counterclaims which will be forth-coming, however, for the time being, and given the expediency with which a response is required, Mr. Berger will limit this response to demonstrating the falsity of those factual claims:

13.     With regards to the false claim that mail-in ballots were submitted without adequate identification of Mr. Berger's identity, Mr. Berger had to go through several processes designed to ensure that Mr. Berger was the individual requesting the mail-in ballot and submitting the same. Mr. Berger had to go through an online sign up process which required, among other things, that he enter his personally identifiable information that only he would know. Additionally, Mr. Berger had to utilize an email confirmation process that required he provide his email address and thereafter confirm with a link that was sent to his personal email account that he was the one the requesting a mail-in ballot. Additionally, Mr. Berger had to fill out an address for where the mail-in ballot would be sent to, which he did receive, and finally, Mr. Berger was also able to use credentials he received through email to check on the status of his mail-in ballot: he could see when it was being sent out, when it was received back by the Philadelphia County Board of Elections, and when it was thereafter processed.

14.     With regards to the false claim that mail-in ballots were submitted without a process for checking signatures against voter rolls, this claim is also patently false as the outside of the envelope of Mr. Berger's mail-in ballot contained a section that required that he date and sign the back of the envelope which could be used to check against his signature from voter rolls.

15.     Finally, with regards to the false claim that mail-in ballots were reviewed and counted in secret with no monitoring, mail-in ballots were counted at the Philadelphia Convention Center, and Plaintiffs' prior counsel, Jerome Marcus admitted in open court "there[] [was] a non-zero number of [poll watchers] in the room." Similarly, there were also cameras set up at the convention center and a live stream was broadcasted and available to any member of the public to watch. Accordingly, if, in fact, there was even a scintilla of truth to this claim that mail-in ballots were reviewed and counted "with no monitoring" it is only because Plaintiffs' poll watchers chose not to observe the counting via live stream and purposefully averted their eyes while "in the room" so that they could thereafter plausibly state that were not able to monitor the counting.

16.     Thus, in order for Mr. Berger's ballot to have been fraudulent, someone else would have had to have stolen Mr. Berger's mail and replaced it with a fake replica of a mail-in ballot with a made up voter identification number, filled out and completed his actual mail in ballot, forged his signature, monitored Mr. Berger to take note of when he deposited the replica mail-in ballot, and then simultaneously deposited the actual mail-in ballot with the correct voter id number, and then surreptitiously gained access to his email account to monitor and delete any email notifications about the replica mail-in ballot.

**Even If Plaintiffs' Claims As To Mr. Berger Were True, Plaintiffs Have Failed To Plead A Set Of Facts That Would Entitle Them To The Relief Sought And Therefore The Motion Should Be Denied**

17.     Additionally, to the extent that such a scheme would have, or could have, been performed on a widespread scale, with respect to 2.65 million voters that would warrant the extraordinary measure of preventing the certification of the vote based on those "fraudulent mail-in ballots," any alleged person, or persons, that could have performed this sort of feat over a

period of a few days must be part of the same team that helps Santa Clause fly around eating cookies and bringing presents to millions of people around the world in a single night – because the laws of physics and space-time simply don't allow for a conceivable way that such accusations could be possible, unless of course it is also part Plaintiffs' allegations that Defendants have discovered time travel.

18. Thus, even if this Court were to assume as true that Mr. Berger's vote was somehow fraudulently cast (which it wasn't and Mr. Berger fully intends to prove that it was not), President Elect Joe Biden still won Pennsylvania by a margin of approximately 49,000 votes, and, unless Plaintiffs are also alleging a conspiracy of several thousand people that descended on cities and townships across the state in a coordinated campaign to steal thousands of ballots, replace them with replicas, forge thousands of signatures, monitor thousands of people to see how and when they deposited their replica ballots, and then hack thousands of email addresses to erase any trace of their fraudulent activities, Plaintiffs' theory of the case is a factual impossibility, and the request should be denied.

19. Furthermore, where the Plaintiffs' claims, in fact, do not allege specific facts to support a plausible claim based on a conspiracy of thousands acting in concert to cast fraudulent mail-in ballots, Plaintiffs' request should be denied.

20. Additionally, to the extent that any amendment to the pleadings that would assert such a claim based on a conspiracy of thousands acting in concert to cast fraudulent mail-in ballots would still fail to meet the pleadings standard, as articulated in Bell Atlantic Corp. v. Twombly, which still requires that a pleading set forth sufficient facts to "nudge [] their claims across the line from conceivable to plausible," the motion should denied. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

WHEREFORE, Intervener, Daniel A. Berger, respectfully requests this Honorable Court Deny the Plaintiffs' request for emergency injunctive relief.

*Gordin & Berger, P.C.*

By:    /s/ Daniel A. Berger
DANIEL A. BERGER, ESQUIRE
Attorney ID Number 319631
GORDIN & BERGER, P.C.
1760 Market Street, Suite 608
Philadelphia, PA 19103
Telephone: (215) 564-2031
Facsimile: (215) 972-5390
dab@gordinandberger.com
Attorneys for Daniel A. Berger

Date: November 11, 2020

**<u>VERIFICATION</u>**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury I have reviewed the

foregoing Opposition to Request for Emergency Injunctive Relief and the factual allegations are

true and correct.

Date: November 11, 2020                   /s/ Daniel A. Berger
                                          DANIEL A. BERGER, ESQUIRE
                                          Attorney ID Number 319631
                                          GORDIN & BERGER, P.C.
                                          1760 Market Street, Suite 608
                                          Philadelphia, PA 19103
                                          Telephone: (215) 564-2031
                                          Facsimile: (215) 972-5390
                                          dab@gordinandberger.com

Nos. 20A53, 20A54

Iɴ ᴛʜᴇ

# 𝕾𝖚𝖕𝖗𝖊𝖒𝖊 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘

JOSEPH B. SCARNATI III, *et al.*,

*Applicants,*

*v.*

KATHY BOOCKVAR, SECRETARY
OF PENNSYLVANIA, *et al.,*

*Respondents.*

REPUBLICAN PARTY OF PENNSYLVANIA,

*Applicant,*

*v.*

KATHY BOOCKVAR, SECRETARY
OF PENNSYLVANIA, *et al.,*

*Respondents.*

Oɴ Aᴘᴘʟɪᴄᴀᴛɪᴏɴs ғᴏʀ Sᴛᴀʏ Pᴇɴᴅɪɴɢ Dɪsᴘᴏsɪᴛɪᴏɴ
ᴏғ ᴀ Pᴇᴛɪᴛɪᴏɴ ғᴏʀ ᴀ Wʀɪᴛ ᴏғ Cᴇʀᴛɪᴏʀᴀʀɪ

## MOTION FOR LEAVE TO FILE AND BRIEF OF TOM RIDGE, PETER KEISLER, CARTER PHILLIPS, STUART GERSON, CHRISTINE TODD WHITMAN, *ET AL.* AS *AMICI CURIAE* IN SUPPORT OF RESPONDENTS AND THEIR OPPOSITIONS TO A STAY

Nᴀɴᴄʏ A. Tᴇᴍᴘʟᴇ
Kᴀᴛᴛᴇɴ & Tᴇᴍᴘʟᴇ, LLP
209 South Lasalle Street
Chicago, IL 60604

Rɪᴄʜᴀʀᴅ D. Bᴇʀɴsᴛᴇɪɴ
*Counsel of Record*
1875 K Street, NW
Washington, DC 20006
(202) 303-1000
rbernsteinlaw@gmail.com

*Counsel for Amici Curiae*

October 2, 2020

298904

# EXHIBIT 1

## MOTION FOR LEAVE TO FILE[1]

*Amici* respectfully move for leave to file a short brief as *amici curiae* in support of Respondents and their oppositions to the emergency stay applications in these matters. The Applicants consent to, and the Respondents expected to oppose the stay applications do not object to, the filing of the enclosed *amici* brief in support of the opposition to Applicants' emergency stay applications.

*Amici* respectfully request that the Court consider the arguments herein and in the enclosed, short *amici* brief in opposition to Applicants' emergency stay applications in Nos. 20A53 and 20A54. If this Court considers the merits,[2] the attached *amici* brief would be helpful to the Court. The brief demonstrates that the Pennsylvania Supreme Court had the authority to rely on the Free and Equal Clause of the Pennsylvania Constitution because that Clause has been approved by Pennsylvania's General Assembly – its denominated Legislature – as well as by

---

[1] No counsel for any party authored the *amici* brief in whole or in part and no person or entity other than *amici* made a monetary contribution to its preparation or submission.

[2] The Seventh Circuit recently held that the Republican Party of Wisconsin and the legislature of Wisconsin did not have the necessary Article III standing to appeal an order extending the deadline for receipt of ballots postmarked by November 3, 2020. *See Democratic Nat'l Committee v. Bostelmann,* Nos. 20-2835, 20-2844, 2020 WL 5796311 (7th Cir. Sept. 29, 2020) (per curiam of Easterbrook, Rovner, St. Eve, JJ.) (relying on *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019)). This *amici* brief does not address whether Applicants have Article III standing to appeal to this Court, or any other non-merits basis to deny a stay.

EXHIBIT 1

Pennsylvania's elected constitutional convention and electorate. This satisfies both the majority opinion and the principal dissent in *Arizona State Legislature v. Arizona Independent Redistricting Comm'n,* 576 U.S. 787 (2015). Additionally, no federal statute has addressed how to resolve the factual issue of whether a vote was cast on election day – this year, November 3, 2020. Thus, federal statutes leave to each state whether to adopt, for that state only, a reasonable rebuttable presumption in deciding that factual issue.

I.      Statement of Movant's Interest.

*Amici* include lawyers and others who have worked in Republican administrations. *See* Appendix A. Reflecting their experience in supporting the rule of law, *amici* have an interest in seeing that judicial decisions about the forthcoming election are based on sound legal principles. Former Pennsylvania Governor Tom Ridge has an interest in supporting and defending Pennsylvania's Declaration of Rights. *Amici* speak only for themselves personally, and not for any entity or other person.

II.     Statement Regarding Brief Form and Timing.

Given the expedited briefing of the emergency stay applications, *amici* respectfully request leave to file the enclosed brief supporting Respondents and their opposition to Applicants' stay applications without 10 days' advance notice to the parties of intent to file. *See* Sup. Ct R. 37.2(a). The emergency applications for stay were filed on September 28, 2020. On September 29, 2020, this Court ordered a response by 3 p.m. on October 5, 2020. On September 28-30, 2020, counsel

EXHIBIT 1

for *amici* gave notice to all parties below of the intent to file an *amici* brief in opposition to the emergency applications for stays. The Applicants in No. 20A53 and 20A54 consented on September 30, 2020. Respondents Boockvar and the Pennsylvania Democratic Party replied that they did not object on September 29, 2020. The other parties below are 67 Pennsylvania county election boards. *Amici* do not expect those boards to file briefs concerning the stay applications. Six of these boards replied with consent, 46 replied that they did not object, and 15 did not reply before this motion was filed. The above justifies the request to file the enclosed *amici* brief supporting Respondents and their opposition to the stay applications without 10 days' advance notice to the parties of intent to file.

CONCLUSION

The Court should grant *amici curiae* leave to file the enclosed brief in support of Respondents and their oppositions to the stay applications.

Respectfully submitted,

*Of Counsel*                  RICHARD D. BERNSTEIN
NANCY A. TEMPLE          *Counsel of Record*
Katten & Temple, LLP    1875 K Street, N.W.
209 S. LaSalle Street    Washington, D.C. 20006-
Chicago, IL 60604          1238
                                    (202) 303-1000
                                    rbernsteinlaw@gmail.com

October 2, 2020            Counsel for *Amici Curiae*

# EXHIBIT 1

## TABLE OF CONTENTS

INTEREST OF *AMICI*.................................................1

INTRODUCTION AND
SUMMARY OF ARGUMENT....................................1

ARGUMENT...............................................................3

I.    IN 1967, THE PENNSYLVANIA GENERAL
ASSEMBLY APPROVED THE
DECLARATION OF RIGHTS, INCLUDING
THE FREE AND EQUAL CLAUSE, AS ITS
OWN...............................................................3

II.    BECAUSE PENNSYLVANIA'S GENERAL
ASSEMBLY AND ELECTORATE EACH
APPROVED PENNSYLVANIA'S
DECLARATION OF RIGHTS AS
PENNSYLVANIA'S SUPREME LAW, THE
FEDERAL CONSTITUTION'S
"LEGISLATURE" REQUIREMENT HAS
BEEN SATISFIED. .........................................5

A.    The General Assembly's Approval Of The
Declaration of Rights As Its Own Satisfies The
"Legislature"  Requirement..............................6

B.    Independently, The "Legislature" Requirement
Was Satisfied When Pennsylvania's Voters
Approved The Free And Equal Clause  ...........8

i

# EXHIBIT 1

C.      Pennsylvania May Legislate General
Standards For A Federal Election And
Delegate To Its Judiciary The Interpretation
And Enforcement Of Those Standards ............ 8

III.    NO FEDERAL STATUTE PRECLUDES A
STATE  FROM USING A REASONABLE
REBUTTABLE PRESUMPTION IN
DETERMINING THE FACTUAL ISSUE OF
WHETHER A VOTE WAS CAST BY
NOVEMBER 3, 2020. ..................................... 10

CONCLUSION ......................................................... 14

LIST OF *AMICI CURIAE* ........................................ 1a

ii

EXHIBIT 1

## TABLE OF AUTHORITIES

**Cases**                                                      **Pages**

*Arizona State Legislature v. Arizona Independent
Redistricting Comm'n,*
576 U.S. 787 (2015) .......................................... *passim*

*Bush v. Gore,*
531 U.S. 98 (2000)  ............................................8, 9, 12

*Bush v. Palm Beach County Canvassing Bd.,*
531 U.S. 70 (2000)  ......................................................9

*Democratic Nat'l Committee v. Bostelmann,*
Nos. 20-2835, 20-2844, 2020 WL 5796311
(7th Cir. Sept. 29, 2020) (per curiam)..........................1

*Hawke v. Smith (No. 1),*
253 U.S. 221 (1920)  ....................................................8

*McPherson v. Blacker,*
146 U.S. 1 (1892)  ..................................................9, 10

*Ohio ex rel. Davis v. Hildebrant,*
241 U.S. 565 (1916)  ................................................6, 7

*Smiley v. Holm,*
285 U.S. 355 (1932)  ................................................6, 7

*United States Postal Serv. Bd. of Governors v.
Aikens,*
460 U.S. 711 (1983) ..................................................12

iii

# EXHIBIT 1

*Virginia House of Delegates v. Bethune-Hill,*
139 S. Ct. 1945 (2019) ................................................. 1

*Whitman v. American Trucking Ass'ns, Inc.,*
531 U.S. 457 (2001) .................................................... 9

*Wilson v. Sellers,*
138 S. Ct. 1188 (2018) .............................................. 12

**Constitutional and Statutory Authorities        Pages**

U.S. Const., art. I, § 4 ...................................... *passim*

U.S. Const., art. II, § 1 .................................... *passim*

U.S. Const., art. III ............................................ 1, 2

U.S. Const., amend. XIV .......................................... 13

U.S. Const., amend. XXVI ......................................... 13

2 U.S.C. § 1a ...................................................... 11

2 U.S.C. § 7 ................................................. 2, 10, 11

2 U.S.C. § 9 ....................................................... 12

3 U.S.C. § 1 ................................................. 2, 10, 11

3 U.S.C. § 5 ....................................................... 12

3 U.S.C. § 6 ....................................................... 11

# EXHIBIT 1

Pa. Const. of 1790 (available at https://www.paconstitution.org/texts-of-the-constitution/) ............................................................3

Pa. Const. of 1790, art. IX, § V (available at https://www.paconstitution.org/texts-of-the-constitution/) ............................................................3

Pa. Const. of 1790, art. IX, § XXVI (available at https://www.paconstitution.org/texts-of-the-constitution/) ...................................................3, 4, 5, 7

Pa. Const. of 1838, art. IX, § V (available at https://www.paconstitution.org/texts-of-the-constitution/) ............................................................4

Pa. Const. of 1838, art. IX, § XXVI (available at https://www.paconstitution.org/texts-of-the-constitution/) ............................................................4

Pa. Const. of 1874 (available at https://www.paconstitution.org/texts-of-the-constitution/) ............................................................4

Pa. Const. of 1874, art. I, § 5 (available at https://www.paconstitution.org/texts-of-the-constitution/) ..................................................... *passim*

Pa. Const. of 1874, art. I, § 26 (available at https://www.paconstitution.org/texts-of-the-constitution/) ............................................................4

Pa. Const. of 1967 (available at https://www.paconstitution.org/texts-of-the-constitution/) ............................................................3

v

EXHIBIT 1

Pa. Const. of 1968 (available at
https://www.paconstitution.org/texts-of-the-
constitution/) ..................................................5

Pa. Act of Mar. 24, 1789 (available at
https://www.paconstitution.org/historical-
research/) ......................................................3

Pa. Act of Sept. 15, 1789 (available at
https://www.paconstitution.org/historical-
research/) ......................................................3

Pa. Act of Apr. 14, 1835 (available at
https://www.paconstitution.org/historical-
research/) ......................................................4

Pa. Act of Mar. 29, 1836 (available at
https://www.paconstitution.org/historical-
research/) ......................................................4

Pa. Act of Apr. 11, 1872, § 4 (available at
https://www.paconstitution.org/historical-
research/) ......................................................4

Pa. Act of Mar. 15, 1967, P.L. 2, No. 2, § 1
(available at https://www.legis.state.pa.us) ..........5, 7

Pa. Act of Mar. 15, 1967, P.L. 2, No. 2, § 7
(available at https://www.legis.state.pa.us) ..............5

# EXHIBIT 1

## INTEREST OF *AMICI*

*Amici* include lawyers and others who have worked in Republican administrations. *See* Appendix A.[1] Reflecting their experience in supporting the rule of law, *amici* have an interest in seeing that judicial decisions about the forthcoming election are based on sound legal principles. Former Pennsylvania Governor Tom Ridge has an interest in supporting and defending the Pennsylvania Declaration of Rights. *Amici* speak only for themselves personally, and not for any entity or other person.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Validated by applicable legal principles, a denial by this Court of a stay in this case by the broadest majority possible will benefit this Court, our country, and its precious tradition of the peaceful retention or transfer of power. To that end, if this Court considers the merits,[2] this brief shows that, in the narrow

---

[1] No counsel for any party authored the brief in whole or in part, and no person other than *amici* made a monetary contribution to its preparation or submission. Applicants and Respondents have consented to the filing of this brief.

[2] The Seventh Circuit recently held that the Republican Party of Wisconsin and the legislature of Wisconsin did not have the necessary Article III standing to appeal an order extending the deadline for receipt of ballots postmarked by November 3, 2020. *See Democratic Nat'l Committee v. Bostelmann,* Nos. 20-2835, 20-2844, 2020 WL 5796311 (7th Cir. Sept. 29, 2020) (per curiam of Easterbrook, Rovner, St. Eve, JJ.) (relying on *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019)). The enclosed *amici* brief does not address whether Applicants have

1

EXHIBIT 1

context presented, the merits arguments raised by applicants are wrong – and also not worthy of *certiorari* – under legal principles that cut across judicial philosophies.

First, the "Legislature" requirement in Article I, § 4 (the "Elections Clause"), and in Article II, § 1 (the "Electors Clause"), is satisfied under the reasoning of each of the majority opinion and the principal dissent in *Arizona State Legislature v. Arizona Independent Redistricting Comm'n,* 576 U.S. 787 (2015). The principal dissent is satisfied because the denominated Pennsylvania Legislature, the General Assembly, in a 1967 statute, approved the Pennsylvania Constitution's Declaration of Rights, including the Free and Equal Clause. *See* Parts I and II.A., *infra.* The majority opinion in *Arizona Redistricting* is additionally satisfied because, in 1873, the elected Pennsylvania Constitution Convention and the Pennsylvania electorate also approved the Free and Equal Clause. *See* Parts I and II.B., *infra.* The Applicants ignore the 1967 and the 1873 history.

Second, whether a vote was mailed by 8 p.m. on November 3, 2020, is a factual issue. Neither 2 U.S.C. § 7 nor 3 U.S.C. § 1 addresses how to resolve the factual issue of whether a vote was cast by election day. Consistent with the Elections Clause and the Electors Clause, Congress has left to each state how to resolve that factual issue. *See* Part III, *infra.* Accordingly, Pennsylvania's Supreme Court had

_____

Article III standing to appeal to this Court, or any other non-merits basis to deny a stay.

EXHIBIT 1

authority to adopt, and did adopt, a reasonable rebuttable presumption to assist in resolving that factual issue in that state. *Id.* Nothing in the decision of the Pennsylvania Supreme Court, especially its reliance on Pennsylvania law, requires any other state to adopt a similar or any rebuttable presumption. *Id.*

ARGUMENT

I. IN 1967, THE PENNSYLVANIA GENERAL ASSEMBLY APPROVED THE DECLARATION OF RIGHTS, INCLUDING THE FREE AND EQUAL CLAUSE, AS ITS OWN.

The Applicants ignore the ample history showing the crucial role of the General Assembly in the approval of the Free and Equal Clause of the Pennsylvania Constitution. The Pennsylvania Constitution of 1790 was the first Pennsylvania Constitution to include a "free and equal" election clause. In 1789, the Pennsylvania General Assembly adopted resolutions providing for a state constitutional convention. Pa. Act of Sept. 15, 1789; Pa. Act of March 24, 1789.[3] The ensuing Convention of 1790 adopted the Pennsylvania Constitution of 1790 (the "1790 Constitution").[4] Article IX of the 1790 Constitution contained a Declaration of Rights. Section V of Article IX provided: "That elections shall be free and equal." Section XXVI of the Article IX (the "Inviolate Clause") provided that all of the rights in

---

[3] The Pennsylvania statutes from 1789, 1835, 1836, and 1872 cited in Part I are available at https://www.paconstitution.org/historical-research/, a website of the Duquesne University School of Law.

[4] The texts of the Pennsylvania Constitutions are available at https://www.paconstitution.org/texts-of-the-constitution/.

3

EXHIBIT 1

the Declaration "shall forever remain inviolate."

In 1835, the General Assembly enacted a statute providing for an election to advise whether to have a constitutional convention. Pa. Act of Apr. 14, 1835. At that election, the voters supported a constitutional convention.  In 1836, the General Assembly enacted a statute providing for a convention, the election of delegates to that convention, and an election to adopt or reject the convention's proposed changes to the Constitution.  Pa. Act of Mar. 29, 1836.  The Convention of 1837 did not change the "free and equal" clause or the Inviolate Clause and those remained Sections V and XXVI of Article IX of the Pennsylvania Constitution of 1838.

In 1872, the General Assembly enacted a statute that provided for a constitutional convention, an election of delegates to that convention, and an election to adopt or reject the convention's changes to the Pennsylvania Constitution. Pa. Act of April 11, 1872 ("1872 Act"). Importantly, this *statute precluded* the ensuing 1873 Convention from narrowing the "declaration of rights." 1872 Act § 4.

The Pennsylvania Constitutional Convention of 1873 framed a revised Constitution (the "1874 Constitution") that the voters approved on December 16, 1873. Pa. Const. note.  The 1874 Constitution moved the Declaration of Rights to Article I. Section 5 of Article I (the "Free and Equal Clause") now read: "Elections shall be free and equal; and no power of, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." The Inviolate Clause became Section 26 of Article I.

4

EXHIBIT 1

The current Pennsylvania Constitution is the Constitution of 1968. Pa. Const. note. In 1967, the General Assembly enacted a statute authorizing an election to determine whether to have a constitutional convention but only "with limited powers." Pa. Act of Mar. 15, 1967, P.L. 2, No. 2 § 1 ("1967 Act"), available at https://www.legis.state.pa.us. Importantly, that *statute precluded* both voters and the convention from narrowing the Declaration of Rights contained in Article I of the 1874 Constitution. *Id.* §§ 1, 7. The voters authorized a convention. In compliance with the 1967 Act, the convention did not propose, and voters did not approve, any change to the Free and Equal Clause and merely renumbered the Inviolate Clause as Section 25 of Article I.

## II. BECAUSE PENNSYLVANIA'S GENERAL ASSEMBLY AND ELECTORATE EACH APPROVED PENNSYLVANIA'S DECLARATION OF RIGHTS AS PENNSYLVANIA'S SUPREME LAW, THE FEDERAL CONSTITUTION'S "LEGISLATURE" REQUIREMENT HAS BEEN SATISFIED.

Applicants contend that, concerning a federal election, a state supreme court may not rely, even in part, on its state's constitution to limit or modify, on an as-applied basis, a state statute because the state "Legislature" has not approved the state's constitution. Emergency Application for a Stay, No. 20A53, at 24 ("Scarnati Application"); Emergency Application for a Stay, No. 20A54, at 30 ("RPP Application"). That issue is not presented by this case. Under the reasoning of both the majority opinion and

5

EXHIBIT 1

the principal dissent in *Arizona Redistricting*, the Pennsylvania legislature has approved the Free and Equal Clause as the supreme law of Pennsylvania.

A.  The General Assembly's Approval Of The Declaration of Rights As Its Own Satisfies The "Legislature" Requirement.

*Arizona Redistricting* interpreted the meaning of "Legislature" in the Elections Clause. Applicants do not contend "Legislature" in the Electors Clause has a different meaning. *Cf.* 576 U.S. at 839 (Roberts, C.J., joined by Scalia, Thomas, and Alito, JJ., dissenting) (the two provisions have "considerable similarity").

*Arizona Redistricting*'s principal dissent explained that the federal Constitution's "Legislature" requirement is satisfied when the body denominated a state's legislature has a "role in the legislative process" that adopts the law governing the state's federal elections, 576 U.S. at 841. So long as the denominated legislature has a role, "the state legislature need not be exclusive." *Id.* at 841-42. Rather, a state may authorize other actors "to *supplement* the legislature's role." *Id.* at 841 (emphasis in original). For example, the "Legislature" requirement had been satisfied when a denominated legislature passed a law but, pursuant to the state constitution, the law was rejected by the voters or a governor's veto. *See id.* at 840-41 (discussing and approving *Ohio ex rel. Davis v. Hildebrant*, 241 U.S. 565 (1916), and *Smiley v. Holm*, 285 U.S. 355 (1932)).

Here, the denominated Pennsylvania legislature, the General Assembly, had a critical role in causing

6

EXHIBIT 1

the Free and Equal Clause to constitute Pennsylvania's currently applicable supreme election law. In the 1967 Act, the General Assembly had the *final* word by precluding the state's voters and constitutional convention from changing the Free and Equal Clause and the Inviolate Clause. *See* Part I, *supra.* The 1967 Act not only effectively approved the Free and Equal Clause and Inviolate Clause as the General Assembly's own, these approvals ensured that through the Inviolate Clause, the Free and Equal Clause took precedence over statutory election laws. In every sense that matters, the General Assembly in 1967 caused the Free and Equal Clause to remain inviolate law for all elections in Pennsylvania.

The General Assembly had a much greater role than any role of any denominated legislature in *Arizona Redistricting, Smiley,* and *Hildebrant*. The body denominated the Arizona legislature never approved the law being applied in *Arizona Redistricting*. That law, Proposition 106, was approved only by a voter referendum that had been authorized only by voters pursuant to the Arizona constitution. 576 U.S. at 795-97. In *Hildebrandt* and *Smiley*, the denominated legislature had a sufficient role even though the law it passed was rejected by the voters or the governor. The greater role here of the General Assembly in approving the Free and Equal Clause readily satisfies the federal Constitution.

7

EXHIBIT 1

B. Independently, The "Legislature" Requirement Was Satisfied When Pennsylvania's Voters Approved The Free And Equal Clause.

The majority opinion in *Arizona Redistricting* is binding precedent for proceedings in all lower state and federal courts. Applicants do *not* ask this Court to overrule that majority opinion.

*Arizona Redistricting* held that in adopting laws governing federal elections, voter approval satisfies the "Legislature" requirement in the Elections Clause. 576 U.S. at 814. The voters of Pennsylvania approved the Free and Equal Clause in ratifying the 1874 Constitution. Part I, *supra.* Moreover, the 1873 Convention that framed Pennsylvania's 1874 Constitution was also a legislature under the majority opinion in *Arizona Redistricting*. This is because the 1873 Convention was a body of elected *representatives* framing the supreme law of Pennsylvania. *See* Part I, *supra; cf.* 576 U.S. at 829 (Roberts, C.J., joined by Scalia, Thomas, and Alito, JJ., dissenting) ("'A legislature' is 'the representative body which ma[kes] the laws of the people.'") (brackets in original; quoting *Hawke* v. *Smith (No. 1)*, 253 U.S. 221, 227 (1920)).

C. Pennsylvania May Legislate General Standards For A Federal Election And Delegate To Its Judiciary The Interpretation And Enforcement Of Those Standards.

Under the concurrence in *Bush* v. *Gore* cited by the applicants, a state satisfies a "Legislature" requirement when its legislature approves the standards for a presidential election and "delegate[s]

8

EXHIBIT 1

the authority to run the election and to oversee election disputes" to state administrative officials "and to state . . . courts." *Bush* v. *Gore*, 531 U.S. 98, 113-14 (2000) (Rehnquist, C.J., concurring, joined by Scalia and Thomas, JJ.) (citations omitted). Here, under both the majority opinion and the principal dissent in *Arizona Redistricting*, the legislature in Pennsylvania has approved the standards in the Free and Equal Clause in Pennsylvania's Constitution, which naturally is interpreted and applied by Pennsylvania's courts. *See* Part II, A and B, *supra*. The Pennsylvania Supreme Court thus had authority to interpret and apply the properly approved Free and Equal Clause.

Nothing in the federal Constitution requires legislative promulgation of standards more specific than those in the Free and Equal Clause. Indeed, the standards in the Free and Equal Clause would easily pass muster under the non-delegation standards applicable to laws enacted by Congress. *See Whitman* v. *American Trucking Ass'ns, Inc.*, 531 U.S. 457, 472-76 (2001).

The dicta in *McPherson* v. *Blacker*, 146 U.S. 1 (1892), is completely inapposite. Most important, *McPherson's* dicta did not address a situation where, as here, a state's legislature had approved the pertinent state constitutional provision.[5] Moreover, *McPherson's* reference to the power of "the legislature

---

[5] Likewise, in *Bush v. Palm Beach County Canvassing Board*, 531 U.S. 70 (2000), which "decline[d] . . . to review the federal questions asserted to be present," *id.* at 78, no one argued that any part of the Florida constitution had been approved by the state's legislature.

9

EXHIBIT 1

exclusively to define the method," *id.* at 27, in no way suggests the legislature may override its own state's constitution. To the contrary, *McPherson* already had said, "[w]hat is forbidden or required to be done by a State is forbidden or required of the legislative power *under state constitutions as they exist.*" *Id.* at 25 (emphasis added).

III. NO FEDERAL STATUTE PRECLUDES A STATE FROM USING A REASONABLE REBUTTABLE PRESUMPTION IN DETERMINING THE FACTUAL ISSUE OF WHETHER A VOTE WAS CAST BY NOVEMBER 3, 2020.

Applicants contend that a state violates 2 U.S.C. § 7 and 3 U.S.C. § 1 if it authorizes voting after November 3, 2020. *E.g.,* Scarnati Application at 15; RPP Application at 20-21. Again, that issue is not presented here. This is because the Pennsylvania Supreme Court emphasized casting votes by mail must cease by 8 p.m. on November 3, 2020. Scarnati Application, Appendix A ("Op.") at 37 n.25. Thus, mail-in ballots postmarked on or after November 4, 2020, will not be counted. The Pennsylvania Supreme Court merely approved a rebuttable presumption to assist in deciding the factual issue of whether a vote received by November 6, 2020, in an envelope without a legible postmark was cast by being mailed on or before the November 3, 2020, deadline for voting.

To start, the Scarnati Applicants' suggestion that federal law is violated if state officials continue to "*count,*" after midnight on November 3, 2020, votes cast before that deadline, is insupportable. Scarnati

10

EXHIBIT 1

Application at 15-16. Indeed, the RPP Applicants abjure this argument. RPP Application at 22. When 130 million or more Americans vote, many timely-cast votes in many states, including many in-person votes, will be counted after midnight on election day, as has occurred for almost two centuries. And recounts, by definition, are conducted after election day. The statutes Congress has enacted about certifying congressional and presidential election results pointedly omit any provision requiring counting of timely-cast votes to be completed on election day. *See* 2 U.S.C. § 1a (not requiring any date for a governor to certify a Senator's election); 3 U.S.C. § 6 (providing only that a governor certify "as soon as practicable after . . . the *final* ascertainment") (emphasis added). Thus, with respect to timely-cast votes, federal statutes do not limit a state to counting these votes by election day.

Whether a ballot was *cast* by being mailed by November 3, 2020, is a factual issue. For over two centuries, state administrative officials and courts have decided factual issues concerning whether a ballot was cast legally in a federal election. Nothing in any federal statute – including 2 U.S.C. § 7 and 3 U.S.C. § 1 – disables a state's courts and administrative officials from using reasonable inferences and reasonable rebuttable presumptions in deciding such factual issues. Nor does any legislative history or case bar the use of such reasonable inferences or reasonable rebuttable presumptions.

Under both the Electors Clause and the Elections Clause, the power of the states over the "manner" of a federal election includes the authority to provide rules

11

EXHIBIT 1

and processes for deciding what is a "legal vote," for "counting the votes," for a "recount," and for resolving a "protest" or "contest." *Bush v. Gore,* 531 U.S. at 116-20 (Rehnquist, C.J., concurring, joined by Scalia and Thomas, JJ.). Congress has refrained from exercising any preemptive power under the Elections Clause or the Electors Clause to specify one, nationwide federal rule for determining whether a ballot was cast by November 3, 2020. *See* 2 U.S.C. § 9 (disqualifying votes for Representatives *only* if they are not cast by "written or printed ballot, or voting machine the use of which has been duly authorized by the State law"); 3 U.S.C. § 5 (one predicate for the safe harbor is when a state, before election day, provides its *own* rules to govern a "final determination of *any controversy or contest concerning*" which candidate won the state's presidential electoral votes) (emphasis added).

Because no federal statute sets a nationwide rule for how to resolve that factual issue, the Pennsylvania Supreme Court had authority to adopt a reasonable rebuttable presumption to assist in resolving that factual issue in its state. When courts or administrative officials decide factual issues pertinent to the application of statutes, they may use – and often do use – reasonable rebuttable presumptions. *See, e.g., Wilson v. Sellers,* 138 S. Ct. 1188, 1193-94 (2018) (adopting the rebuttable presumption for federal habeas cases that the last explained state decision was the rationale for an unexplained state-court decision); *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714-16 (1983) (establishment of *prima facie* case of discrimination under Title VII of the Civil Rights Act of 1964 creates rebuttable presumption to assist triers of fact in deciding the

12

EXHIBIT 1

factual issue of whether discrimination occurred).

For a ballot in an envelope without a legible postmark, based on the recommendation of the Pennsylvania Secretary of State, the Pennsylvania Supreme Court adopted a presumption, rebuttable by other evidence, that when a ballot is received by November 6, 2020, it was mailed by 8 p.m. on November 3, 2020. This presumption is reasonably supported by "the current USPS delivery standards, given the expected number of Pennsylvanians opting to use mail-in ballots during the [Covid-19] pandemic." Op., at 37. This rebuttable presumption is further supported by the common sense inference that voters will know and seek to comply with the widely-publicized November 3 deadline for mailing ballots.

Because the Elections Clause, the Electors Clause, and Congress allow each state to decide for itself how to resolve factual issues concerning when a vote was cast, nothing in the Pennsylvania Supreme Court's decision, based on Pennsylvania law, requires any other state to adopt a similar or any rebuttable presumption.  Nor does it conflict with decisions cited in the RPP Application at 34-35 decided under another state's law. By definition, under federalism, different states often follow different state law rules, especially on how to resolve factual issues.

Nor does this case raise any issue of whether the Fourteenth or Twenty-Sixth Amendments to the federal Constitution require an extension of any state's otherwise applicable deadline for the receipt of mail-in ballots. That distinguishes lower federal court cases cited in the RPP Application at 34-35.

13

EXHIBIT 1

CONCLUSION

For the foregoing reasons, the applications for stay should be denied.

Respectfully submitted,

*Of Counsel*                     RICHARD D. BERNSTEIN
NANCY A. TEMPLE        *Counsel of Record*
Katten & Temple, LLP    1875 K Street, N.W.
209 S. LaSalle Street       Washington, D.C. 20006-
1238
Chicago, IL 60604           (202) 303-1000
                                          rbernsteinlaw@gmail.com


October 2, 2020              Counsel for *Amici Curiae*

14

EXHIBIT 1

# APPENDIX A

# EXHIBIT 1

## LIST OF *AMICI CURIAE*

**Tom Ridge**, Governor of Pennsylvania, 1995-2001;
United States Secretary of Homeland Security, 2003-
2005; Assistant to the President for Homeland
Security, 2001-2003.

**Peter Keisler**, Acting Attorney General, 2007;
Assistant Attorney General for the Civil Division,
2003–2007; Principal Deputy Associate Attorney
General and Acting Associate Attorney General,
2002–2003; Assistant and Associate Counsel to the
President, 1986–1988.

**Carter Phillips**, Assistant to the Solicitor General,
1981–1984.

**Stuart M. Gerson**, Acting Attorney General, 1993;
Assistant Attorney General for the Civil Division,
1989–1993; Assistant United States Attorney for the
District of Columbia, 1972–1975.

**Christine Todd Whitman**, Administrator,
Environmental Protection Agency, 2001–2003;
Governor, New Jersey, 1994–2001.

**John Bellinger III**, Legal Adviser to the Department
of State, 2005-2009; Senior Associate Counsel to the
President and Legal Adviser to the National Security
Council, 2001-2005.

# EXHIBIT 1

**Edward Larson**, Counsel, Office of Educational Research and Improvement, United States Department of Education, 1986-1987; Associate Minority Counsel, Committee on Education and Labor, United States House of Representatives, 1983-1986.

**Connie Morella**, Representative of the Eighth Congressional District of Maryland in the United States House of Representatives, 1987-2003; Permanent Representative from the United States to the Organisation for Economic Co-operation and Development, 2003-2007.

**Alan Charles Raul**, Associate Counsel to the President, 1986-1988; General Counsel of the Office of Management and Budget, 1988-1989; General Counsel of the United States Department of Agriculture, 1989-1993; Vice Chairman of the Privacy and Civil Liberties Oversight Board, 2006-2008.

**Paul Rosenzweig**, Deputy Assistant Secretary for Policy, Department of Homeland Security, 2005-2009; Office of Independent Counsel, 1998-1999; United States Department of Justice, 1986-1991.

**Robert Shanks**, Deputy Assistant Attorney General, Office of Legal Counsel, 1981-1984.

**Stanley Twardy**, U.S. Attorney for the District of Connecticut, 1985–1991.

**Richard Bernstein**, Appointed by this Court to argue in *Cartmell v. Texas*, 529 U.S. 513, 515 (2000); *Montgomery v. Louisiana*, 136 S. Ct. 718, 725 (2016).

2a

EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| _____ : | |
| DONALD J. TRUMP FOR PRESIDENT, : | |
| INC., ET AL. : | |
| Plaintiff, : | |
| : | |
| : | |
| v. : | Civil No. 4:20-cv-02078-MWB |
| : | |
| KATHY BOOCKVAR, ET AL. : | |
| : | |
| : | |
| Defendants. : | |
| _____ : | |

**<u>CERTIFICATE OF SERVICE</u>**

I, Daniel A. Berger, Esquire, Attorney for Intervener, Daniel A. Berger, certify the

foregoing Motion to Intervene was filed this day via Court's ECF system and is available for

viewing and downloading by all counsel of record.


Date: November 11, 2020                    /s/ Daniel A. Berger                    
                                          DANIEL A. BERGER, ESQUIRE
                                          Attorney ID Number 319631
                                          GORDIN & BERGER, P.C.
                                          1760 Market Street, Suite 608
                                          Philadelphia, PA 19103
                                          Telephone: (215) 564-2031
                                          Facsimile: (215) 972-5390
                                          dab@gordinandberger.com
                                          Attorneys for Daniel A. Berger