## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | ) ) | No. 4:20-CV-02078 |
| Plaintiffs, | ) | |
| | ) | Hon. Matthew Brann |
| v. | ) | |
| | ) | |
| KATHY BOOCKVAR, *et al.*, | ) | |
| Defendants. | ) | |

## BRIEF OF *AMICI CURIAE* CHARLES W. DENT, JIM GREENWOOD, *ET AL.,* IN OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Amici* include former Congressmen Charles W. Dent and Jim Greenwood, lawyers and others who have worked in Republican federal administrations. *See* Appendix A.[1] Reflecting their experience in supporting the rule of law, *amici* have an interest in seeing that federalism and the Tenth Amendment prevail, especially in contentious election cases. *Amici* speak only for themselves personally, and not for any entity or other person.

---

[1] No counsel for any party authored the brief in whole or in part, and no person other than *amici* made a monetary contribution to its preparation or submission.

INTRODUCTION AND SUMMARY OF ARGUMENT

Under the Election and Electors Clauses, 3 U.S.C. § 5, principles of federalism, and the Tenth Amendment, one reason this Court should deny the injunctive relief sought by Plaintiffs is that Plaintiffs are asking this Court to interpret a state election law issue that is simultaneously pending before the Pennsylvania Supreme Court.

Counts I through III are premised on an alleged violation of the Pennsylvania Election Code with respect to "watchers and representatives." Compl. (Dkt. No. 1) ¶¶ 175-79, 185-90, 200-01 (the "Observation Counts"). However, the Pennsylvania Supreme Court is currently giving expedited consideration to the interpretation and application of precisely the same provisions of the Pennsylvania Election Code. *In re Canvassing Observation*, Nos. 425 EAL 2020, ¶¶ 1-2 (now 30 EAP 2020) (Pa. Sup. Ct. Nov. 9, 2020) (A copy is attached hereto as Exhibit 1) ("*Canvassing Observation*").[2] The lead plaintiff in this federal case is also the lead plaintiff in *Canvassing Observation*. Briefing to the

---

[2] One of the reasons *Canvassing Observation* is not moot is the claims brought in this federal case. *See* Initial Brief of Appellant The Philadelphia County Board of Elections, No. 30 EAP 2020, at 28-29 (filed Nov. 11, 2020) in *Canvassing Observation,* publicly available at http://www.pacourts.us/assets/files/setting-7742/file-10433.pdf?cb=9b2c6f.

Pennsylvania Supreme Court in *Canvassing Observation* will be complete on November 13, 2020. Thus, the Pennsylvania Supreme Court may well rule before the November 19, 2020 evidentiary hearing in this federal case.

Assuming that the Pennsylvania Supreme Court rules contrary to the position taken by Plaintiffs in this case, that should end most of this federal case. That is because the unprecedented relief requested in paragraphs i and ii of the prayer for relief in the Complaint in this federal case is predicated on prevailing on the Observation Counts. Compl., p. 84. The other claims and relief sought through Counts IV through VII in this federal case apparently could not impact nearly as many votes as the publicly reported lead in Pennsylvania of Joseph R. Biden of more than 53,000 votes. If the lead Plaintiff wishes to challenge a final ruling of the Pennsylvania Supreme Court in *Canvassing Observation*, it may file a petition for certiorari to the United States Supreme Court.

In all events, the so-called notice and cure issues raised in Counts IV through VII are already pending and likely to be decided soon by the Pennsylvania courts, including the Pennsylvania Supreme Court. *See Hamm v. Boockvar,* 600 MD 2020 (Pa. Commonwealth Ct., filed Nov. 3,

2020). We respectfully refer the Court to the abstention arguments concerning Counts IV to VII that Defendants in this case are expected to raise.

The Elections and the Electors Clauses, and 3 U.S.C. § 5, authorize what Pennsylvania's General Assembly indisputably has done: in federal elections, delegate the final adjudication of all disputes concerning election results to the Pennsylvania courts, and, ultimately, the Pennsylvania Supreme Court. So do federalism and the Tenth Amendment.

Moreover, adjudication by the Pennsylvania Supreme Court is essential because precedent shows that if the United States Supreme Court ever exercises its discretion to hear the challenges under the Elections and Electors Clauses, it would defer, at least to a considerable extent, to a final decision of Pennsylvania's Supreme Court interpreting Pennsylvania's election statutes. Likewise, if the United States Supreme Court chose to grant review, it would most likely require interpretation by the Pennsylvania Supreme Court of Pennsylvania election laws before addressing whether Pennsylvania's election laws, as so interpreted, violated the Fourteenth Amendment. Indeed, in *Bush v. Gore,* 531 U.S.

98 (2000) (per curiam), both the Fourteenth Amendment holding *and* the remedy were expressly premised on the rulings of the Florida Supreme Court interpreting Florida statutes. *See id.* at 105-06, 110-11. Plaintiffs' attempt to pursue this case in federal court, and thus attempt to bypass the Pennsylvania Supreme Court, puts the cart before the horse.

ARGUMENT

I.  UNDER THE ELECTIONS AND ELECTORS CLAUSES, 3 U.S.C. § 5, FEDERALISM, AND THE TENTH AMENDMENT, THE PROPER PROCEDURE IS FOR THE PENNSYLVANIA SUPREME COURT TO RESOLVE DISPUTES CONCERNING ELECTION RESULTS, SUBJECT TO DISCRETIONARY REVIEW IN THE UNITED STATES SUPREME COURT.

The Elections and Electors Clauses give the Pennsylvania General Assembly power over the "manner" of federal elections. This power includes the power to "delegate[] the authority to run the election and to oversee election disputes to the Secretary of State . . . and to state . . . courts." *Bush v. Gore,* 531 U.S. 98, 113-14 (2000) (Rehnquist, C.J., joined by Scalia and Thomas, JJ., concurring).

Likewise, 3 U.S.C. § 5 states that "when any State shall have provided," under pre-election law, for "*its* final determination of *any controversy* or contest concerning [presidential election results], by judicial or other methods or procedures," a state supreme court's decision

about state law is "conclusive." (Emphases added). This is confirmed by the legislative history of 3 U.S.C. § 5, in which sponsors repeatedly stated that the phrase "*its* final determination . . . by judicial or other methods or procedures" meant determination by "the State tribunal." 18 Cong. Rec. 52 (1885) (statement of Rep. Adams); 8 Cong. Rec. 70-71 (1878) (statement of Sen. Morgan); *see also, e.g.,* 17 Cong. Rec. 1020 (1886) (statement of Sen. Hoar) ("The bill provides that where the State has created a tribunal for determination of [presidential election controversies], the proceedings of *that tribunal* shall be conclusive . . . .") (emphasis added); *id.* at 867 (statement of Sen. Morgan) (3 U.S.C. § 5 "secure[s] to each State its full electoral power, to be expressed and exercised, as far as may be, under the Constitution, through its own laws *and through the final and conclusive judgment of its own tribunals.*") (Emphasis added).

The General Assembly designated the Pennsylvania Supreme Court, not federal district or circuit courts, to be Pennsylvania's final adjudicator of federal election disputes. Neither the word "manner" in the Elections and Electors Clauses nor "any controversy" in 3 U.S.C. § 5 permits any exception. When a text does not "include any exceptions to a

broad rule, courts apply the broad rule." *Bostock v. Clayton County,* 140 S. Ct. 1731, 1747 (2020).

Instead, the proper procedure is the one followed in both the majority per curiam opinion and the dissents in *Bush v. Gore,* 531 U.S. 98 (2000). That is, *after* a final state supreme court decision, a petition for certiorari can be filed in the United States Supreme Court, which can decide whether to review if the state election statutes as interpreted by the state supreme court violate a federal constitutional provision, such as the Fourteenth Amendment's Equal Protection Clause.

Moreover, a prior Pennsylvania Supreme Court decision is essential to any ultimate review of a petition for certiorari by the United States Supreme Court of the federal constitutional issues that Plaintiffs raise here. Start with the claims under the Elections and Electors Clauses. These claims are based entirely on interpretations of *state* statutes. But each of federalism and the Tenth Amendment protects all of a state's powers concerning federal as well as state elections. *See Shelby County v. Holder,* 570 U.S. 529, 543 (2013) (applying Tenth Amendment to both

federal and state elections).[3] This includes the power of state courts over the interpretation of state statutes.

The Tenth Amendment is short, clear, and vital: "The *powers* not delegated to the United States by the Constitution, nor prohibited by it to the states are reserved to the states respectively, or to the people." U.S. Const., amend. X (emphasis added). There is no exception to the Tenth Amendment for state powers to enact statutes when those powers are conferred on state legislatures by the federal Constitution. The state "powers" protected by the Tenth Amendment likewise include the judicial powers of state courts to interpret *all* state statutes.

Under each of federalism and the Tenth Amendment, with respect to the particular exercise of power, including judicial power, "[w]hen the federal Constitution is silent, authority resides in the states or the people." *Chiafolo v. Washington,* 140 S. Ct. 2316, 2333 (2020) (Thomas,

---

[3] The dissent in *Shelby County* did not argue that state law on the manner of federal elections falls outside the Tenth Amendment. Rather, the dissent argued that the particular doctrine of "equal sovereignty" between states under the Tenth Amendment was limited to "the admission of new States." 570 U.S. at 587-88 (citation omitted). Dicta in earlier cases, such as *Cook v. Gralike*, 531 U.S. 510 (2001), are inapposite. This is because in those cases, the state law in dispute bore "no relation to the 'manner' of elections." *Id.* at 523. Here, everyone agrees that the state law in dispute is about the manner of elections.

J., joined by Gorsuch, J. concurring); *see id.* at 2333-35.[4] There is nothing in the text of the Elections Clause or the Electors Clause that transfers the power of state courts to interpret state election statutes to federal district or circuit courts.

The text of the Tenth Amendment literally governs here. This is because the state court's judicial power to interpret a state's election statutes is neither a "power . . . delegated to the United States by the Constitution, nor prohibited by it to the states." U.S. Const., amend. X.

This approach is supported by *Smiley v. Holm,* 285 U.S. 355 (1932). *Smiley* did not conclude that the Elections Clause itself affirmatively authorized a governor's veto of a state statute applicable to federal elections. Rather, *Smiley* unanimously concluded "that there is *nothing* in article 1, section 4, which *precludes* a state from providing that legislative action in districting the state for congressional elections shall be subject to the veto power of the Governor *as in other cases of the exercise of the lawmaking power.*" 285 U.S. at 372-73 (emphases added). So too here. Nothing in the Elections Clause or the Electors Clause limits

---

[4] Justice Thomas has explained that here, "silence" means "where the Constitution does not speak expressly or by necessary implication." *Chiafolo,* 140 S. Ct. at 2334 (quotations and citations omitted).

the normal power of a state's supreme court to interpret all state statutes. *Cf. Spence v. ESAB Group, Inc.,* 623 F.3d 212, 216 (3d Cir. 2010) ("When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source.").

Any other approach would not only constitute a massive intrusion on federalism and the Tenth Amendment, it would encourage chaos in the lower federal courts. After *every* federal election day, in *every* state where the challengers of election results preferred a federal forum to the state supreme court, or disagreed with a state supreme court ruling, they would rush to the federal district and circuit courts asking them to bypass a pending or issued state supreme court decision based on the proposition that the Elections Clause and the Electors Clause somehow federalized the interpretation of state election statutes.[5] In 2020, these Plaintiffs are Republicans. If the federal courts permit their approach, in future elections, the Democrats would surely follow suit. Like Gresham's law, the bad would drive out the good.

---

[5] That rush would not be abated by limiting the federalization to cases where a state statute is asserted to have a plain meaning. Every litigant asserts that its interpretation of a statute is the plain meaning. And as illustrated recently in the majority and dissenting opinions in *Bostock v. Clayton County,* 140 S. Ct. 1731 (2020), even the most devoted textualist judges can disagree about the plain meaning of a statute.

This does not mean that every interpretation of an election statute by a final state supreme court decision is never subject to federal court review. Rather, if the United States Supreme Court grants certiorari, it can review whether the Due Process Clause was violated because a state supreme court's decision so contradicts prior, clearly established state law as to be "indefensible." *Metrish v. Lancaster,* 569 U.S. 351, 360 (2013) (quotations and citation omitted).

The concurrence in *Bush v. Gore* does not support Plaintiffs in this case. That concurrence was not a majority opinion. It was written 13 years before *Shelby County* applied the Tenth Amendment to federal elections, and it did not address the Tenth Amendment or *Smiley v. Holm.* In any event, it would permit *only* the United States Supreme Court, after granting certiorari, to review a state supreme court's *prior* final decision and *only* for whether that ruling had "impermissibly distorted [state statutes] beyond what a fair reading required." 531 U.S. at 115; *see id.* at 119 (using "[n]o reasonable person" standard). That is not remotely this case.[6]

---

[6] Likewise, the dissent to denial of a stay in *Moore v. Circosta,* _ S. Ct. _, 2020 WL 6305036 (Oct. 28, 2020) (Mem.) (Gorsuch, J., dissenting), is inapposite. Indeed, that was a pre-election case, and thus no procedural issue was raised under 3 U.S.C. § 5.

Finally, the majority opinion in *Bush v. Gore* shows that if the United States Supreme Court were asked to review the portions of Plaintiffs' challenges that rely on the Fourteenth Amendment, the United States Supreme Court again would benefit from a final decision by the Pennsylvania courts. After granting certiorari, 531 U.S. at 100, the merits ruling of the majority in *Bush v. Gore* reviewed whether the Florida Supreme Court's interpretation and application of Florida's election statutes in that case had violated the Equal Protection Clause. *See, e.g., id.* at 105 ("The recount mechanisms *implemented in response to the decisions of the Florida Supreme Court* do not satisfy the minimum requirement . . . .") (emphasis added); *id.* at 106 ("The state Supreme Court ratified this uneven treatment."); *id.* at 110 ("there is no recount procedure in place *under the State Supreme Court's order* that comports with minimum constitutional standards") (emphasis added). Even the reason for the United States Supreme Court's remedial ruling – that time had run out for a recount – was that "the Florida Supreme Court has said that the Florida legislature intended to obtain the safe harbor benefits of 3 U.S.C. § 5." *Id.* at 111. It is virtually certain that if the United States Supreme Court ever chooses to review any challenge concerning

Pennsylvania's election results, it would both want and require a prior decision by the Pennsylvania Supreme Court to review. *See McKesson v. Doe,* _ S. Ct. _, 2020 WL 6385692 (Nov. 2, 2020) (per curiam) (*sua sponte* requiring certification of two questions of state law to state supreme court "before addressing a [federal] constitutional issue").

## II. THERE IS NO EXCEPTION BECAUSE OF THE IMPORTANCE OF FEDERAL ELECTIONS.

Federal elections are undoubtedly important. But the Elections and Electors Clauses, 3 U.S.C. § 5, and the Tenth Amendment each state a broad rule without any exception based on importance. *See supra,* at 5-8.

Moreover, it is because federalism and the Tenth Amendment are vitally important to the protection of all of our liberties that *Shelby County* applied federalism and the Tenth Amendment to federal as well as state elections. *See* 570 U.S. at 543. Federalism and the Tenth Amendment "divide[] power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day." *New York v. United States,* 505 U.S. 144, 187 (1992). Consistent with federalism and the Tenth Amendment, Congress has left it to each state

to provide law and to adjudicate controversies concerning federal election results. Because such controversies will be addressed imminently by the Pennsylvania Supreme Court, this Court should reject Plaintiffs' requests to transfer that state power in this case to federal district and circuit courts.

CONCLUSION

This Court should deny the motion for injunctive relief and grant the motion to dismiss.

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By /s/ James P. DeAngelo
    James P. DeAngelo
    Pa. I.D. No. 62377
    100 Pine Street
    P. O. Box 1166
    Harrisburg, PA 17108-1166
    (717) 237-5470
    jdeangelo@mcneeslaw.com

*Of Counsel*
RICHARD D. BERNSTEIN (*pro hac vice* motion pending)
1875 K Street, N.W.
Washington, D.C. 20006-1238
(202) 303-1000
rbernsteinlaw@gmail.com

NANCY A. TEMPLE (*pro hac vice* motion pending)
Katten & Temple, LLP
209 S. LaSalle Street
Chicago, IL 60604
(312) 663-0800
ntemple@kattentemple.com

Counsel for *Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing document via the Court's electronic filing system and electronic mail to the following attorneys of record.

[See Attached Service List]

Dated:   November 12, 2020                    /s/ James P. DeAngelo
                                                      James P. DeAngelo

**SERVICE LIST:**

| | |
|---|---|
| Carolyn B. McGee<br>Ronald L. Hicks, Jr.<br>Porter Wright Morris & Arthur LLP<br>6 PPG Place, Third Fl.<br>Pittsburgh, PA 15222<br>cmcgee@porterwright.com<br>rhicks@porterwright.com<br><br>Linda Ann Kerns<br>Law Offices of Linda Ann Kerns, LLC<br>1420 Locust Street<br>Suite 200<br>Philadelphia, PA 19102<br>linda@lindakernslaw.com<br><br>*Attorneys for Donald J. Trump For President, Inc., Lawrence Roberts, and David John Henry* | Daniel T. Brier<br>Donna Walsh<br>John B. Dempsey<br>Myers Brier & Kelly, LLP<br>425 Spruce Street, Suite 200<br>Scranton, PA 18503<br>dbrier@mbklaw.com<br>dwalsh@mbklaw.com<br>jdempsey@mbklaw.com<br><br>Daniel T Donovan<br>Kirkland & Ellis LLP<br>1301 Pennsylvania Avenue, N.W.<br>Washington, DC 20004<br>daniel.donovan@kirkland.com<br><br>Nicole J. Boland<br>Karen Mascio Romano<br>Kelli Neary<br>Stephen Moniak<br>Pennsylvania Office of Attorney General<br>Stawberry Square, 15th Floor<br>Harrisburg, PA 17101<br>nboland@attorneygeneral.gov<br>kromano@attorneygeneral.gov<br>kneary@attorneygeneral.gov<br>smoniak@attorneygeneral.gov<br><br>*Attorneys for Kathy Boockvar* |

Mark A. Aronchick
Michele Hangley
Robery Wiygul
Christina Matthias
Hangley, Aronchick, Segal & Pudlin
1 Logan Square, 27th Floor
Philadelphia, PA 19103
maronchick@hangley.com
mhangley@hangley.com
raw@hangley.com
ccm@hangley.com


Andrew F. Szefi
Virginia Scott
Allegheny County Law Department
445 Fort Pitt Boulevard, Ste 300
Pittsburgh, PA 15219
andrew.szefi@alleghenycounty.us
virginia.scott@alleghenycounty.us

*Attorneys for Allegheny County Board of Elections, Montgomery County Board of Elections, and Philadelphia County Board of Elections*

Molly E Meacham
Babst, Calland, Clements and Zomnir, P.C.
603 Stanwix Street, Sixth Floor
Two Gateway Center
Pittsburgh, PA 15222
mmeacham@babstcalland.com

Elizabeth A. Dupuis
Babst Calland
330 Innovation Blvd., Suite 302
State College, PA 16803
bdupuis@babstcalland.com

*Attorneys for Centre County Board of Elections*

| | |
|---|---|
| Edward D. Rogers<br>Terrence M. Grugan<br>Timothy Katsiff<br>Ballard Spahr LLP<br>Elizabeth Wingfield<br>1735 Market Street, Ste 51st Floor<br>Philadelphia, PA 19103<br>rogerse@ballardspahr.com<br>grugant@ballardspahr.com<br>KatsiffT@ballardspahr.com<br>wingfielde@ballardspahr.com<br><br>*Attorneys for Delaware County Board of Elections* | Brian J. Taylor<br>King Spry Herman Freund & Faul LLC<br>One West Broad Street<br>Suite 700<br>Bethlehem, PA 18018<br>btaylor@kingspry.com<br><br>*Attorneys for Northampton County Board of Elections* |
| Witold J. Walczak<br>American Civil Liberties Union of PA<br>247 Ft. Pitt Blvd., 2d Fl.<br>Pittsburgh, PA 15222<br>vwalczak@aclupa.org<br><br>Jon Greenbaum<br>Lawyers' Committee for Civil Rights Under Law<br>1500 K Street NW, Ste 9th Floor<br>Washington, DC 20005<br>jgreenbaum@lawyerscommittee.org<br><br>*Attorneys for NAACP Pennsylvania State Conference, Common Cause Pennsylvania, League of Women Voters of Pennsylvania, Black Political Empowerment Project, Lucia Gajda, Stephanie Higgins, Meril Lara, Ricardo Morales, Natalie Price, Taylor Stover, Joseph Ayeni, and Tim Stevens* | Clifford B. Levine<br>Cohen & Grigsby, PC<br>625 Liberty Avenue<br>Pittsburgh, PA 15222-3152<br>412-297-4998<br>clevine@cohenlaw.com<br><br>*Attorneys for the Democratic National Committee* |