# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) ) CIVIL ACTION |
| v. | ) ) |
| KATHY BOOCKVAR, et al., | ) ) ) No. 20-CV-02078 |
| Defendants. | ) ) |

**BRIEF IN SUPPORT OF PLAINTIFFS' VERIFIED MOTION
<u>FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii
I.   BACKGROUND ............................................................................................ 5
II.  STANDARD OF REVIEW ............................................................................ 7
III. THE COURT SHOULD ENJOIN CERTIFICATION. ................................. 8
   A. PLAINTIFFS ARE LIKELY TO SUCCEED. .......................................... 9
      1. By violating the Election Code, Pennsylvania election officials violated the Electors Clause of Article II. ............................................................................... 9
      2. By encouraging different treatment of defective ballots, Pennsylvania election officials violated the Equal Protection Clause. .......................................... 11
   B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF. ................................................................................................ 13
   C. THE BALANCE OF HARMS FAVORS PLAINTIFFS. ....................... 13
   D. THE PUBLIC INTEREST IS FURTHERED BY ENTRY OF INJUNCTIVE RELIEF. 14
IV.  CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Bimbo Bakers USA, Inc. v. Botticella*,
  613 F.3d 102 (3d Cir. 2010) .................................................................................. 7

*Bush v. Gore*,
  531 U.S. 98 (2000) ........................................................................................ passim

*Bush v. Palm Beach Cty. Canvassing Bd.*,
  531 U.S. 70 (2000) ............................................................................................. 10

*Carson v. Simon*,
  No. 20-3139, 2020 WL 6335967 (8th Cir. Oct. 29, 2020) ....................... 1, 3, 8, 13

*Council of Alternative Political Parties v. Hooks*,
  121 F.3d 876 (3d Cir. 1997) ............................................................................... 14

*Fres-Co Sys. United States v. Hawkins*,
  2016 U.S. Dist. LEXIS 199343 (E.D. Pa. Aug. 26, 2016) ................................. 7, 8

*Gray v. Sanders*,
  372 U.S. 368 (1963) ........................................................................................... 12

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
  276 F.3d 160 (3d Cir. 2001) ................................................................................. 9

*Holland v. Rosen*,
  895 F.3d 272 (3d Cir. 2018) ................................................................................. 8

*Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*,
  582 F.3d 721 (7th Cir. 2009) ............................................................................. 14

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015) ................................................................................. 9

*INS v. Chadha*,
  462 U.S. 919, 943 (1983) ..................................................................................... 1

*McPherson v. Blacker*,
  146 U.S. 1 (1892) ............................................................................................... 10

*Moore v. Ogilvie*,
  394 U.S. 814 (1969) ........................................................................................... 14

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*,
  69 F. App'x 550 (3d Cir. 2003) ............................................................................ 8

*Pa. Democratic Party v. Boockvar*,
  238 A.3d 345 (Pa. 2020) ............................................................................ 2, 6, 11

*Pierce v. Allegheny Cty. Bd. of Elections*,
  324 F. Supp. 2d 684 (W.D. Pa. 2003) ........................................................... 13, 14

*Pileggi v. Aichele*,
  843 F. Supp. 2d 584 (E.D. Pa. 2012) ................................................................... 7

*Reilly v. City of Harrisburg*,
    858 F.3d (3d Cir. 2017) .................................................................................... 8, 14

*Singer Mgmt. Consultants, Inc. v. Milgram*,
    650 F.3d 223 (3d Cir. 2011) (en banc) ............................................................... 8, 9

*Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) ................................................................................................ 1

**Other Authorities**

25 Pa. Stat. Ann. § 3146.8(a) ...................................................................................... 5, 11

25 Pa. Stat. Ann. § 3146.8(b) ...................................................................................... 5, 11

25 Pa. Stat. Ann. § 3146.8(g)(1.1) ............................................................................... 5, 11

25 Pa. Stat. Ann. § 3146.8(g)(4)(ii) ..................................................................................... 6

25 Pa. Stat. Ann. § 3150.16 ......................................................................................... 5, 10

25 Pa. Stat. Ann. § 3150.17 ............................................................................................. 11

3 U.S.C. § 5 ........................................................................................................................ 5

Pam Fessler & Elena Moore, *More than 550,000 Primary Absentee Ballots Rejected in 2020, Far Outpacing 2016*, https://www.npr.org/2020/08/22/904693468/more-than-550-000-primary-absentee-ballots-rejected-in-2020-far-outpacing-2016 (Aug. 22, 2020) .................... 4

U.S. Const. art. II § 1, cl. 2 ............................................................................................ 3, 9

This case seeks a brief pause to allow Plaintiffs time to confirm their well-founded theory that Pennsylvania election officials counted tens of thousands of invalid votes. Plaintiffs recognize the gravity of this request given the politically charged national conversation and concerns over wading into state election procedures. In truth, this case does not turn on political judgments or discretionary choices by election officials. It turns on the familiar preliminary injunction standard and the federal Constitution. Deciding those questions may "involve the '[r]esolution of litigation challenging the constitutional authority of [state and county election officials],' but courts cannot avoid their responsibility merely 'because the issues have political implications.'" *Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012) (quoting *INS v. Chadha*, 462 U.S. 919 (1983)). Instead, "the Judiciary has a responsibility to decide cases properly before it, even those it would gladly avoid." *Id.* at 194 (internal quotation marks omitted). This is such a case.

The Constitution gives state legislatures the exclusive power to determine how states will appoint members of the electoral college. In Pennsylvania, electors are awarded to the winner of the state's popular vote. Accordingly, election officials must count every *lawful* ballot, while ensuring that every *unlawful* ballot is cast aside. *Carson v. Simon*, No. 20-3139, 2020 WL 6335967, at *7 (8th Cir. Oct. 29, 2020). What distinguishes a lawful ballot from an unlawful one flows from Pennsylvania law. *Bush v. Gore,* 531 U.S. 98, 104 (2000) (*per curiam*) ("When the state legislature vests the right to vote for President in its people, the right to vote *as the legislature has prescribed* is fundamental.") Election officials have no discretion to depart from the legislatures' directives, and they must apply the ballot security and integrity requirements *equally* throughout the Commonwealth.

Defendants have systematically failed to abide by these seminal principles of law. They (1) treated millions of mail-in voters differently depending on their geographic location, and

1

(2) counted untold thousands of ballots that unambiguously fail to meet the ballot-security requirements set forth by the Pennsylvania legislature. In addition, Defendants have purposefully excluded Plaintiffs from meaningfully observing significant portions of this election, hindering Plaintiffs' ability to independently quantify how many thousands of invalid ballots were counted. To redress these injuries, Plaintiffs request narrow and targeted relief: The Court should stay the certification process for a *short period of time* so the parties can expeditiously determine the full extent of the violations and whether they were sufficient to cast the election's outcome into doubt. Targeted discovery that answers *four simple questions* could be sufficient to resolve this dispute. *See* Plaintiffs' First Set of Interrogatories (Ex 10).

The Pennsylvania legislature recently amended its election procedures to allow citizens to vote in person or by mail. After careful deliberation, the legislature enumerated specific requirements for mail-in ballots, including (beyond the filled-out ballot), an inner secrecy envelope, a filled-out declaration, a signature, a date, and a complete address. Ballots that do not comply with these requirements are unlawful and must not be counted. The Pennsylvania Supreme Court so held before this election, rejecting the notion that these provisions were merely "directory" or that voters must be able to "cure" their ballots:

> To the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements . . . [developing a] procedure to alleviate that risk is one best suited for the Legislature. We express this agreement particularly in light of the open policy questions attendant to that decision, including what the precise contours of the procedure would be, how the concomitant burdens would be addressed, and how the procedure would impact the confidentiality and counting of ballots, all of which are best left to the legislative branch of Pennsylvania's government.

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020).

2

The Pennsylvania legislature is welcome to address any "open policy questions." The state's election officials are not. Nevertheless, various county election boards implemented *ultra vires* procedures to cure defective ballots. And even where ballots were not "cured," election boards flouted the requirements of the Election Code by counting ballots with no date, no signature, no address, or other deficiencies. These executive actions violate the Electors Clause of the Constitution, which requires that "Each State shall appoint, in such Manner as the *Legislature thereof* may direct, a Number of Electors . . . ." U.S. Const. art. II, § 1, cl. 2 (emphasis added). Such behavior by "an executive branch official to negate the duly-enacted election laws of a state as they pertain to a presidential election is toxic to the concepts of the rule of law and fair elections." *Carson*, No. 20-3139, 2020 WL 6335967, at *7. Unless they can be unwound or proven immaterial, these violations of the Election Code and the Constitution render the outcome of the Pennsylvania election too uncertain to be certified.

A second and independent constitutional violation supports granting relief in this case. Certain counties—notably those in areas with overwhelmingly Democratic residents—violated state law by examining ballots before Election Day, determining that they were defective, and contacting voters weeks before Election Day, while *other* counties were informed by the Secretary of State that they could engage in such efforts only on the day of the election, during pre-canvass. *See* Jonathan M. Marks Email (Nov. 2, 2020) (Ex 1). Notably, the formal guidance the Secretary of State issued on October 21 in no way authorized or suggested manipulation or analysis of mailed ballots prior to November 3 and in no way authorized or suggested communication with voters about the status of their mailed ballot prior to November 3. *See* Pennsylvania Provisional Voting Guidance (Oct. 21, 2020) (Ex 2).

As a result, a voter with a defective ballot in certain counties was likely to be told in advance to cast a provisional ballot, while similarly situated voters in other counties were not. Worse still, many of these same counties are now seeking to count mail ballots that other counties have rejected, including those ballots with envelopes that fail to comply with the most basic requirements of Pennsylvania law. Indeed, this disparate treatment had—and perhaps was intended to have—a partisan effect. Where "the standards for accepting or rejecting contested ballots might vary . . . from county to county," they offend the Equal Protection Clause. *Bush*, 531 U.S. at 106. These violations were not one-off decisions affecting a handful of ballots. Tens of thousands of votes, if not more, were cast invalidly, and those invalid votes were counted contrary to Pennsylvania law. The officials who made these decisions targeted mail-in ballots and urban counties, both of which maximize Democratic votes. They may well have done so out of a fear that rejecting unlawful ballots would hurt their preferred candidate, stoked by reporting done after the primary.[1] Regardless of motivation, election officials have no discretion to treat voters differently or to count invalid ballots.

Unless prevented from doing so, the Defendant Boards of Elections will certify to Defendant Kathy Boockvar, no later than November 23, 2020, results of an invalid and constitutionally infirm election process before this case can be heard on its merits. In turn, Secretary Boockvar will certify the Commonwealth-wide election results and Plaintiffs will be deprived not only of their constitutional rights but also of a meaningful remedy. Plaintiffs ask this Court for a very short stay to prevent this unjust outcome. Plaintiffs propose an expedited

---

[1] *See, e.g.*, Pam Fessler & Elena Moore, *More than 550,000 Primary Absentee Ballots Rejected in 2020, Far Outpacing 2016*, https://www.npr.org/2020/08/22/904693468/more-than-550-000-primary-absentee-ballots-rejected-in-2020-far-outpacing-2016 (Aug. 22, 2020) ("More than 37,000 primary ballots were also rejected in June in Pennsylvania, a state Trump won by just over 44,000 votes").

4

proceeding on the merits that will conclude before December 8, 2020.  December 8 is the statutory safe harbor date for appointing state electors.  Under 3 U.S.C. § 5, as long as Pennsylvania appoints its electors by that day, its slate "shall be conclusive, and shall govern in the counting of the electoral votes."  If Plaintiffs do not prevail, Defendants will not suffer any harm.  If Plaintiffs succeed, Defendants have no legitimate interest in certifying invalid election results.

**I.      BACKGROUND**

Pennsylvania law mandates that mail-in ballots meet detailed requirements.  *See* 25 Pa. Stat. Ann. § 3150.16.  These include putting each ballot in an inner secrecy envelope, which

> shall then be placed in the second [envelope], on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope.  Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

*Id*.  After officials receive the mail-in ballots, the law requires them to "safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections."  25 Pa. Stat. Ann. § 3146.8(a).  Election officials may "pre-canvass" ballots "no earlier than seven o'clock A.M. on election day," but "[n]o person observing, attending or participating in a pre-canvass meeting may disclose the results of any portion of any pre-canvass meeting prior to the close of the polls."  25 Pa. Stat. Ann. § 3146.8(g)(1.1).  As a precaution, "[w]atchers shall be permitted to be present when the envelopes containing official absentee ballots and mail-in ballots are *opened* and when such ballots are *counted* and recorded."  25 Pa. Stat. Ann. § 3146.8(b) (emphasis added). Working together, these provisions ensure that mail-in ballots are not manipulated, tampered with, or even inspected until election day; that no one can *open* or *count* ballots without a poll watcher present; and that even if someone pre-canvasses a ballot on election day, no one can be told "the results" of that pre-canvass until polls close.

5

Secretary Boockvar has long believed state officials should count more ballots than the law allows. For instance, on September 28, 2020, she issued guidance to the County Boards of Elections that mail-in and absentee ballots returned without inner secrecy envelopes should be counted. *See* Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures, 9/28/2020, Boockvar Dep. Ex. 11 (Ex 3). That guidance directly contradicted the mandatory language in Pennsylvania's Election Code, which is why the Pennsylvania Supreme Court struck it down. *See Pa. Democratic Party*, 238 A.3d 345 ("[T]he Legislature intended for the secrecy envelope provision to be mandatory.").[2]

But Secretary Boockvar was not deterred. Despite the clear commands of the Election Code, she and the other Defendants systematically disregarded key ballot integrity and security measures associated with mail-in votes. Specifically, the Philadelphia County Elections Board issued a "Cancelled Ballot Notification" providing that voters whose ballots were cancelled (including those "returned without a signature on the declaration envelope" or "determined to lack a secrecy envelope"), would receive notice *before* Election Day. Complaint ¶ 133 (Ex 4); Web Archive, Cancelled Ballot Notification Information, Philadelphia City Commissions (Nov 1, 2020) (Ex 11). This involved inspecting the ballots before Election Day, disclosing the results of that inspection before Election Day, and allowing voters to cure their defective ballot. Complaint ¶¶ 133–34 (Ex 4).

All of this was illegal and was done without allowing poll watchers access. The Defendant County Boards of Elections nonetheless permitted it. *Id.* ¶ 136. As the Complaint details, poll

---

[2] The law could not have been clearer on this point: "If any of the [secrecy] envelopes . . . contain any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference, the envelopes and the ballots contained therein **shall** be set aside and declared void." 25 Pa. Stat. Ann. § 3146.8(g)(4)(ii) (emphasis added).

6

watchers in Allegheny, Centre, Philadelphia, and Delaware Counties were not allowed to observe as ballots were reviewed for sufficiency, opened, counted, or recorded. Complaint ¶¶ 140–43, 150 (Ex 4). Sometimes, this was because no poll watchers were permitted at all. Other times poll watchers were permitted for only some periods, or were required to stand so far away that they could not tell which ballots were improperly counted. County boards have continued ignoring Pennsylvania law, and some have just days ago voted to count thousands of ballots with incomplete addresses, no signature, and other deficiencies. *See* Meeting of the Commissioners of Elections (Nov. 9, 2020) (Ex 5) (Philadelphia County voted to count many thousands with no date, street address, or printed name); Election Day Updates (Nov. 12, 2020) (Ex 6) (Allegheny County voted to count thousands of undated ballots) (Ex 7); In Re: Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election, ¶¶ 22–23 (Ex 7) (Bucks County voted to count ballots with no date and others with no printed name or address, a mismatched address, or other errors;).

## II. STANDARD OF REVIEW

A temporary restraining order "is a stay put, equitable remedy that has [as] its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation.'" *Fres-Co Sys. United States v. Hawkins*, 2016 U.S. Dist. LEXIS 199343, at *3, n.1 (E.D. Pa. Aug. 26, 2016) (internal quotations and citations omitted). The temporary restraining order standard mirrors the familiar test for a preliminary injunction. *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012). A movant must demonstrate "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakers USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).

A sufficient showing on the first two factors can suffice:

> As a court sitting in equity, the District Court's task was to weigh the four factors, but it was not incumbent on [movant] to prevail on all four factors, only on the overall need for an injunction. A sufficiently strong showing on either the likelihood of success or irreparable harm may justify an injunction, though a petitioner's showing on the other factors may be lacking.

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 F. App'x 550, 554 (3d Cir. 2003).

For the first factor, a "likelihood of success" means "a reasonable chance, or probability, of winning" but it "does not mean more likely than not." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc). The second factor requires Plaintiffs to show "that [they are] more likely than not to suffer irreparable harm in the absence of preliminary relief." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)). "[I]t is well-established that harm is irreparable when it cannot be adequately compensated in damages, either because of the nature of the right that is injured, or because there exists no certain pecuniary standards for the measurement of damages." *Fres-Co Sys. United States*, 2016 U.S. Dist. LEXIS 199343, at *3, n.1. In the election context, "'[t]he counting of votes that are of questionable legality . . . threaten[s] irreparable harm.'" *Carson*, No. 20-3139, 2020 WL 6335967, at *7 (quoting *Bush*, 531 U.S. at 104).

## III. THE COURT SHOULD ENJOIN CERTIFICATION.

Plaintiffs demonstrate all four elements for equitable relief. "When the state legislature vests the right to vote for President in its people, the right to vote *as the legislature has prescribed* is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter." *Bush*, 531 U.S. at 104 (emphasis added). The evidence here shows not only that the Defendants failed to administer the 2020 General Election in compliance with the manner prescribed by the legislature, but also that the Defendants violated Plaintiffs' equal protection rights. Unless Defendants are enjoined from certifying the results,

8

Plaintiffs will be left with no remedy because Pennsylvania's electoral votes for President and Vice President will be awarded to someone else.

### A. PLAINTIFFS ARE LIKELY TO SUCCEED.

To make out this first factor, "the plaintiff need only prove a *prima facie* case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). The Third Circuit has held that "a sufficient degree of success for a strong showing exists if there is a 'reasonable chance, or probability, of winning.'" *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir. 2015) (quoting *Singer*, 650 F.3d 223). Plaintiffs have made that showing based on the allegations in the Verified Complaint.

Plaintiffs have made a credible showing that Defendants' intentional actions jeopardized the rights of Pennsylvania's citizens to select their leaders under the process set out by its legislature. Defendants' conduct violated Plaintiffs' constitutional rights in at least two separate ways.

### 1. By violating the Election Code, Pennsylvania election officials violated the Electors Clause of Article II.

First, Defendants violated the Constitution by counting votes that were unlawful under the Pennsylvania Election Code. Article II of the Constitution provides that the rules for Presidential elections be established by each state "in such Manner as the Legislature thereof may direct." U.S. Const. art. II § 1, cl. 2. Where, as here, the legislature has enacted a specific election code, "the clearly expressed intent of the legislature must prevail." *Bush*, 531 U.S. at 120 (Rehnquist, C.J., concurring). If the constitutional text were not enough, a Supreme Court majority has explained that it would not defer to a state *court's* interpretation of an election code because a law "enacted by a state legislature applicable not only to elections to state offices, but also to the selection of Presidential electors" is a federal constitutional question "under Art. II, § 1, cl. 2, of the United

States Constitution." *Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70, 76 (2000).[3] The facts here are even stronger, since election officials disregarded the Pennsylvania Supreme Court *and* the Pennsylvania legislature.

Beginning with the enacted text, Pennsylvania law mandates that mail-in ballots meet detailed requirements. *See* 25 Pa. Stat. Ann. § 3150.16. These include a secrecy envelope, which

> shall then be placed in the second [envelope], on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

*Id.* These are not mere exhortations. Shall means shall, the requirements are mandatory, and ballots that fail to meet them should not be counted. There is every reason to believe the number of non-compliant ballots is in the tens of thousands. More than 37,000 mail-in ballots were rejected under these rules in the primary, which had far fewer voters. State officials have not clearly explained how many ballots were rejected in the general election, but it appears to be a far lower rejection rate. And as noted *supra*, Defendants have agreed to count thousands of invalid ballots under the plain and unambiguous text of the Election Code.

There is no question that Defendants have counted, and continue to count, thousands of invalid ballots. The only question is how many. Plaintiffs' motion seeks a short period to gather evidence about the magnitude of the violations. Secretary Boockvar issued guidance that election officials could "cure" defective ballots, even though no provision of law authorizes this practice, which the Pennsylvania Supreme Court found dispositive. *See Pa. Democratic Party*, 238 A.3d

---

[3] This view is not novel. *See McPherson v. Blacker*, 146 U.S. 1, 25 (1892) (explaining that "the words, 'in such manner as the legislature thereof may direct' … operat[e] as a limitation upon the state in respect of any attempt to circumscribe the legislative power").

at 345. For example, Philadelphia County informed mail-in or absentee voters that they had failed to include an inner secrecy envelope, and to do this, Philadelphia County had to inspect the mail-in ballots before election day—in plain violation of state law, *see* 25 P.S. § 3146.8(a) ("keep the ballots in sealed or locked containers")—and then had to tell someone the results of that inspection—violating another provision, *see* 25 Pa. Stat. Ann. § 3146.8(g)(1.1) (cannot "disclose the results of any portion of any pre-canvass meeting prior to the close of the polls").[4] *See* Complaint ¶¶ 132–34 (Ex 4). Each ballot that was "cured" by this method was triply unlawful, because advance-inspection is illegal, advance-disclosure is illegal, and curing itself is illegal. All such votes were unlawful to count.[5]

Certain counties further allowed ballots to be counted that had, for example, no date, no address, or no printed name. *See* Ex 5–7. Plaintiffs have sought the cooperation of Defendants and will seek the assistance of this Court if necessary in obtaining straightforward discovery on how many ballots were rejected, as well as simple cross-checks to determine how many compliant secrecy envelopes—which by law should be preserved[6]—exist to compare to the number of counted mail-in ballots.

      **2.**       **By encouraging different treatment of defective ballots, Pennsylvania election officials violated the Equal Protection Clause.**

---

[4] Defendants' actions may also have violated 25 Pa. Stat. Ann. § 3146.8(b), which allows watchers "to be present when the envelopes . . . are opened and when such ballots are counted and recorded." Weighing the ballots, holding them up to lights, or other methods to discern defects may trigger the requirement to allow watchers.

[5] Of course, there is nothing improper about not counting improperly cast votes. Only legal votes should be counted. *Cf. Bush*, 531 U.S. at 119 (Rehnquist, C.J., concurring) ("No reasonable person would call it 'an error in the vote tabulation,' FLA. STAT. § 102.166(5), or a 'rejection of legal votes,' FLA. STAT. § 102.168(3)(c), when electronic or electromechanical equipment performs precisely in the manner designed, and fails to count those ballots that are not marked in the manner that these voting instructions explicitly and prominently specify.").

[6] "All official mail-in ballots, files, applications for ballots and envelopes on which the executed declarations appear and all information and lists are designated and declared to be public records and shall be safely kept for a period of two years . . . ." 25 Pa. Stat. Ann. § 3150.17.

11

Counties have leeway to conduct elections somewhat differently from each other—no one doubts that. But no county can constitutionally apply different standards to determine which ballots were lawfully cast. Doing so violates the Equal Protection Clause by making ballots more likely to count only in certain counties. In Philadelphia County, for example, election officials examined ballots in advance of Election Day, identifying those that might be rejected. Complaint ¶¶ 132–35 (Ex 4). Many voters there who made small errors were told ahead of time to cast a provisional ballot on Election Day. *See, e.g.*, Hetak Decl. (Ex 15); Murray Decl (Ex 12). By contrast, most counties followed the Secretary of State's October 21 guidance and did not erect such an illegal voter "assistance" program.[7] *E.g.*, Chew Decl. (Ex 16); Leinbach Decl. (Ex 17).

Differences in curing is far from the only unlawful disparity. Some counties—but not all—counted ballots with no signatures, no dates, or an incomplete address. *Compare* Complaint ¶ 136 ("Defendant County Boards of Elections permitted" this); *with* ¶ 136 ("Lancaster, York, Westmoreland and Berks Counties . . . did not") (Ex 4). Some counties properly segregated ballots that were received after election day, while others improperly commingled them. Complaint ¶ 151 (Delaware County) (Ex 4). Which group a voter is in depended entirely on what county he or she voted in.

As the General Election was a Commonwealth-wide election, the voting process across the Commonwealth was required to be consistent and the voters treated similarly. *Gray v. Sanders*, 372 U.S. 368, 379 (1963). Accordingly, if "different standards have been employed in different counties across the Commonwealth of Pennsylvania to determine whether an absentee ballot

---

[7] On November 2 at 8:38pm Deputy Secretary Jonathan Marks sent a general email suggesting that such contacts occur "during the pre-canvass" (meaning on election day). Jonathan M. Marks Email (Nov. 2, 2020) (Ex 1). In no way did this email suggest it was legal to manipulate or tamper with mail-in ballots prior to election day to determine their validity and offer voters advice on provisional voting.

should be counted, that "disparate treatment implicates the equal protection clause because uniform standards will not be used statewide to discern the legality of a vote in a statewide election." *Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 699 (W.D. Pa. 2003). "Voters in [Philadelphia] County who take advantage of [D]efendant[s'] policy of" notice and cure "may be afforded greater voting strength than similarly-situated voters in [other counties]." *Id.*

Here, not only would lawfully cast votes be diluted, but the votes of residents of certain counties would be counted while votes of similarly situated residents in other counties would not. Defendant counties that offered an opportunity to cure deficient mail-in and absentee ballots, or otherwise counted unlawful ballots that other counties rejected, denied Pennsylvanian voters the equal protection of the laws.  There is no persuasive or legal basis for this disparate treatment. Plaintiffs have adequately demonstrated their likelihood of success.

### B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF.

The irreparable nature of the harm to the Plaintiffs is apparent. If the Pennsylvania vote count—including unlawful ballots—is certified, the votes will be awarded to Democratic Candidate Joseph Biden. Plainly, there is no adequate remedy at law if this occurs. *See Carson*, No. 20-3139, 2020 WL 6335967, at *7. If Plaintiffs could later prove that the election was invalid, unfair, unequally administered, and included the tabulation of unlawful mail-in ballots, their victory would be worse than Pyrrhic.

### C. THE BALANCE OF HARMS FAVORS PLAINTIFFS.

The balance of harms favors Plaintiffs. Plaintiffs seek a short stay, and in no events past December 8, to preserve the status quo while this case proceeds. Defendants will bear little harm so long as they certify by December 8, the federal safe-harbor date. If Defendants prevail by or before that date, the same electors will be appointed with ample time to vote in the Electoral

College. If Plaintiffs prevail, it can only be because Defendants had no legitimate interest in certifying a constitutionally flawed outcome. Either way, Defendants will not suffer harm from a slight delay. By contrast, Plaintiffs could lose their opportunity for meaningful relief entirely if the vote total is certified, since it is not clear what remedies would remain after that point. "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Reilly*, 858 F.3d at 179 (quoting *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). The low costs on Defendants and high potential harm to Plaintiffs make this a case with substantial "net harm an injunction can prevent."

### D.   THE PUBLIC INTEREST IS FURTHERED BY ENTRY OF INJUNCTIVE RELIEF.

The Third Circuit has recognized that the protection of the voting and associational rights of political parties, their candidates, and their potential supporters is an important right that meets the public interest test for injunctive relief. *See Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883-84 (3d Cir. 1997). Plaintiffs' challenge is important to all those who will vote in Pennsylvania's elections in the future. "[G]ranting the preliminary injunction is in the public interest. . . . [T]he United States Supreme Court has observed: '[t]he idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government.'" *Pierce*, 324 F. Supp. 2d at 707 (quoting *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969)). The votes of those in counties with looser Election Code enforcement "are no more important than those of any other voter" and "[b]ecause of the importance that each elector's vote count to the same extent as other electors in other counties, it is in the public interest to grant a limited preliminary injunction." *Id.*

## IV.     CONCLUSION

Extensive evidence exists that Defendants mis-administered the 2020 General Election in such a disastrous manner that they violated the Equal Protection Clause and structural guarantees of our Constitution.  Defendants seemingly went out of their way to avoid complying with the Pennsylvania legislature's election code. And Defendants blocked Plaintiffs' attempts to meaningfully observe and document their actions at almost every turn.  This maladministration reached the point of patent and fundamental unfairness and evidences an intentional attempt by Defendants to jeopardize both the ability of Pennsylvanians to select their leaders and the constitutional rights of Plaintiffs.  If this Court does not act to restrain Defendants from certifying the results of this maladministered election, Plaintiffs will be without a way to remedy the myriad and severe constitutional violations.

Respectfully submitted:

Dated: November 12, 2020

 /s/ *Linda A. Kerns*
Linda A. Kerns, Esquire
Law Offices of Linda A. Kerns, LLC
Attorney ID 84495
1420 Locust Street, Suite 200
Philadelphia, PA 19102
T: 215-731-1413
lak@lindakernslaw.com

*Counsel for all Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this 12th day of November, 2020, I filed a copy of the foregoing **BRIEF IN SUPPORT OF PLAINTIFFS' VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** which will serve all parties registered to receive same.

    */s/ Linda A. Kerns*
Linda A. Kerns, Esquire
Law Offices of Linda A. Kerns, LLC
Attorney ID 84495
1420 Locust Street, Suite 200
Philadelphia, PA 19102
T: 215-731-1413
lak@lindakernslaw.com

*Counsel for all Plaintiffs*