# Exhibit 1

**Carter, Allen T.**

---

██████████████████████████████████████
████████████████████████
████████████████████████████████████████████████
██████████████

██████████████
███████████████████████████████████.

---------- Forwarded message ---------
From: **Melissa Hazell Davis** <MDavis@griesinglaw.com>
Date: Tue, Nov 3, 2020 at 9:10 AM
Subject: Fwd: [External] RE: Important DOS Email - Clarification regarding Ballots Set Aside During Pre-canvass
To: linda@lindakernslaw.com <linda@lindakernslaw.com>

Melissa Hazell Davis

Sent from my iPhone

**From:** Hangley, Michele D. <mdh@hangley.com>
**Sent:** Tuesday, November 3, 2020 9:09:46 AM
**To:** 'Melissa Hazell Davis' <MDavis@griesinglaw.com>
**Subject:** FW: [External] RE: Important DOS Email - Clarification regarding Ballots Set Aside During Pre-canvass

<span style="color:red">WARNING: This email originated outside of the Firm. DO NOT CLICK links or attachments unless you recognize the sender and *are expecting* the email.</span>

**From:** Marks, Jonathan <jmarks@pa.gov>
**Sent:** Monday, November 2, 2020 8:38 PM
**To:** Marks, Jonathan <jmarks@pa.gov>
**Subject:** Important DOS Email - Clarification regarding Ballots Set Aside During Pre-canvass
**Importance:** High

Dear County Election Directors,

The Department of State has been asked whether county boards of elections can provide information to authorized representatives and representatives of political parties during the pre-canvass about voters

whose absentee and mail-in ballots have been rejected.  The Department issued provisional ballot guidance on October 21, 2020, that explains that voters whose completed absentee or mail-in ballots are rejected by the county board for reasons unrelated to voter qualifications may be issued a provisional ballot.  To facilitate communication with these voters, the county boards of elections should provide information to party and candidate representatives during the pre-canvass that identifies the voters whose ballots have been rejected and should promptly update the SURE system.

Kind regards,

Jonathan M. Marks

Deputy Secretary for Elections & Commissions

Pennsylvania Department of State

302 North Office Building | Harrisburg, PA 17120
☎ 717.783.2035 🖷 717.787.1734

✉ jmarks@pa.gov



--
**Linda A. Kerns**

Law Offices of Linda A. Kerns, LLC  |  www.lindakernslaw.com  |  1420 Locust Street, Ste 200  |  Philadelphia, PA 19102
**T: 215.731.1400 | F: 215.701.4154  |  *Securely send me larger files via this link*** https://www.hightail.com/u/lindakernslaw

# Exhibit 2



# Pennsylvania
# Provisional Voting Guidance

Date: October 21, 2020

Version: 1.1

TLP WHITE

## Scope

1    Background ...................................................................................................................... 2

    1.1    Provisional Voting Reasons ...................................................................................... 2

    1.2    Absentee and Mail-in Voting.................................................................................... 3

2    Process for the Voter ...................................................................................................... 3

3    Process for Poll Workers .................................................................................................. 4

4    Process For County Elections Officials ............................................................................. 4

## 1   BACKGROUND

This revised guidance addresses the issuance, voting and examination of provisional ballots under the Election Code. Provisional ballots were originally mandated by section 302 of the Help America Vote Act of 2002 (HAVA).[1] Provisional ballot amendments included in Act 77 of 2019 went into effect for the 2020 Primary election. Provisional ballot amendments included in Act 12 of 2020 go into effect for the first time on November 3, 2020.

Generally, if a voter is not eligible to be issued a regular ballot, that voter shall be entitled to vote provisionally at the polling place. Provisional ballots may be issued at the polling place until the close of polls on election day absent a court order extending voting hours.

### 1.1   PROVISIONAL VOTING REASONS

A voter may be issued a provisional ballot for the reasons below:

- Voter's name was not in the poll book or supplemental poll book
    - For example, the voter reported to the wrong precinct; or
    - The voter did not report a recent change in residence to the county election office
- Voter is required to show ID, but cannot show ID
- Voter eligibility was challenged by an election official
- Voter was issued but did not successfully vote an absentee or mail-in ballot and ballot was not surrendered at the polling place to be spoiled
- Voter returned a completed absentee or mail-in ballot that was rejected by the county board of elections and the voter believes they are eligible to vote
- Special court order with respect to the voter's status
- Special court order related to extending the hours of voting
- Voter claims they are registered in a political party with which they are not affiliated (for primary elections only)

---

[1] 1 52 U.S.C. § 21082.

TLP WHITE

## 1.2   ABSENTEE AND MAIL-IN VOTING

If the pollbook shows the voter has timely returned and voted their absentee or mail-in ballot, they are not eligible to vote by regular ballot at the polling place. These voters are not eligible to vote on the voting equipment but may vote provisionally if they believe they have not already voted and are eligible to vote. Voters who have requested an absentee ballot or mail-in ballot and are not shown on the district register as having voted the ballot and who appear on Election Day to vote can only vote provisionally at the polling place, unless they surrender their ballot and outer return envelope to be spoiled and sign the required declaration before the judge of elections.

## 2   PROCESS FOR THE VOTER

- Voters are entitled to a provisional ballot when their eligibility to vote is uncertain.
  - o A voter's eligibility is uncertain if his/her voter record cannot be located in the poll book or supplemental poll book.
  - o A voter's eligibility to vote is uncertain if he/she has been issued a mail-in or absentee ballot and are not shown as having voted the ballot or do not remit the ballot and outer return envelope to be spoiled at the polling place.
- If a voter requested an absentee or mail-in ballot for the upcoming election and appears to vote at the polling place, they may only vote by provisional ballot at the polling place, unless they surrender the ballot and outer return envelope to be spoiled and sign a declaration before the judge of elections.
- If a voter has returned and successfully voted their absentee or mail-in ballot by the ballot return deadline, their vote is considered final for that election. This means they should <u>not</u> go to a polling place to vote. *Refer to Section 3 for guidance on processing voters whose record indicates that they have returned their ballot.*
- If a voter returned an absentee or mail-in ballot but the ballot was rejected by county election officials, and the voter believes they are eligible to vote in person, the voter may cast a provisional ballot on Election Day.
- For a voter to be issued a provisional ballot, the following must occur:
  - o Before a voter can receive the ballot, they must complete the sections on the provisional envelope labeled Voter Information, Voter Affidavit for Provisional Ballot, and Current Address in front of election officials.
  - o After a voter receives and marks their provisional ballot, they must seal their ballot in the secrecy envelope and then place the secrecy envelope in the provisional ballot envelope.
  - o Finally, the voter must fill out the Voter Signature section on the provisional ballot envelope in front of the Judge of Elections and the Minority Inspector. The Judge of Elections and the Minority Inspector will then sign and date the envelope after noting the reason for the provisional ballot.
- County election officials must review provisional ballots within 7 days of the election and decide if they should be fully counted, partially counted, or not counted.
  - o Fully counted – all contests on the ballot are counted.
  - o Partially counted – some contests, but not all contests on the ballot are counted.
  - o Not counted – No contests on the ballot are counted.
- Voters can check the status of their provisional ballot after the election by calling the county board of elections, checking the PA Voter Services website, or calling the PA Department of

TLP WHITE

State. *Note: The online provisional ballot search will only return results for the active election and cannot be used to search provisional ballots from previous elections.* Voters will need to provide their provisional ballot number or their full name and date of birth to check the status of their provisional ballots.

- o Voters can find the phone number for their county election office online at www.votespa.com/county.
- o The website for PA Voter Services is www.votespa.com/provisional.
- o The phone number for the PA Department of State is 1-877-VOTESPA (1-877-868-3772), option 6.

# 3    PROCESS FOR POLL WORKERS

- County election officials must ensure that poll workers are familiar with provisional voting rules.
- A county election official or poll worker must inform voters that they have a right to use a provisional ballot when they are entitled to receive one.
- Before a provisional ballot is issued, the Voter Information, Voter Affidavit for Provisional Ballot, and Current Address sections on the provisional ballot envelope must be completed by the voter.
- If a voter requested an absentee or mail-in ballot and did **not** successfully return and cast the ballot, his/her name will be found in section 1 of the poll book, and the signature line will say either **Remit Absentee Ballot or Vote Provisionally** or **Remit Mail-in Ballot or Vote Provisionally**. This advises the poll worker that there are two circumstances that may apply if one of these voters appear on Election Day.
  - o If the voter has their ballot and outer envelope with them, the poll worker shall permit the voter to surrender their ballot and envelope and sign the Elector's Declaration to Surrender their Mail Ballot form.  After the voter does this, the poll worker shall allow the voter to vote by regular ballot same as any voter.
  - o If the voter is designated in the pollbook as having been issued an absentee or mail-in ballot but does not have the ballot and outer envelope with them, the voter may only vote by provisional ballot, and the poll worker shall offer him/her this option.
- If a voter was issued an absentee or mail-in ballot and returned and successfully voted their ballot, their name will be found in section 2 of the poll book, and the signature line will say either **Absentee – Ballot Cast/Not Eligible** or **Mail-in – Ballot Cast/Not Eligible**. Their vote is considered final at this point.
  - o If the voter believes that he/she has not returned or cast the ballot successfully or otherwise contests his/her ballot status, the poll worker shall provide the voter a provisional ballot.
- If polling place hours are extended beyond 8:00 p.m. by court order on election day, all ballots shall be cast via provisional ballot only after 8 pm.

# 4    PROCESS FOR COUNTY ELECTIONS OFFICIALS

- It is recommended counties notify parties and the public a week in advance of the date that election officials will meet to examine and reconcile provisional ballots during the post-election

TLP WHITE

official count.  Under no circumstance should the county board of elections schedule the meeting without providing the notice required by the Sunshine Act, 65 Pa.C.S. 701, et seq., for public meetings.

- When determining whether to count a provisional ballot, the county board of elections <u>must</u> reconcile provisional ballots with ballots cast in person on election day and with returned absentee and mail-in ballots. If a voter cast an election day ballot or voted an absentee or mail-in ballot, the provisional ballot shall <u>not be counted</u>.
- A county board of elections can only approve a provisional ballot for counting if the voter is qualified and eligible to vote for the election.
- When researching provisional ballots during the canvassing period, the county election staff should enter the voter's provisional voting information from the provisional envelope into the SURE system to maintain an accounting of the number of provisional ballots issued for the election.
- The county board of elections must review and make a determination on the disposition of each provisional ballot within 7 days of the election.
- If a provisional ballot is challenged during the canvass, the county board must schedule a hearing within 7 days of the challenge to consider the challenge and determine the disposition of the ballot. Additionally, notice shall be given where possible to the challenged provisional voter and to the attorney, watcher or candidate who made the challenge.
- During the official canvass, the County Board of Elections must determine, for each provisional ballot, whether:
   o The provisional ballot is invalid because the voter successfully cast another ballot;
   o The provisional ballot should be counted in full;
   o The provisional ballot should be rejected and the reason(s) for the rejection; or
   o The provisional ballot should be partially counted and the reason(s) for the partial counting.
- If a voter's mail-in or absentee ballot was rejected for a reason unrelated to the voter's qualifications and the voter casts a provisional ballot and meets other provisional ballot requirements, the provisional ballot shall be counted if the county determines that the voter is eligible to vote.
- Counties are prohibited from counting a provisional ballot from another county.

# # #

Version History:

| Version | Date | Description |
| --- | --- | --- |
| 1.0 | 3.5.2020 | Initial document release |
| 1.1 | 10.21.2020 | Updated per Act 12 of 2020 |

## Elector's Declaration to Surrender Their Mail Ballot

**For the Voter:**

I hereby declare that I am a qualified registered elector who was issued an absentee or mail-in ballot for this election, but that I have not mailed or cast an absentee or mail-in ballot in this election.  Instead, I am hereby remitting my absentee or mail-in ballot and its declaration envelope to the judge of elections at my polling place to be spoiled. I request that my absentee or mail-in ballot be voided, and that I be permitted to sign the poll book and vote a regular ballot.

I verify that the statements made in this declaration are true and correct to the best of my knowledge and belief. I understand that false statements made herein are subject to the criminal penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

_____
(Today's Date)

_____
(Printed Name of Elector)

_____
(Signature of Elector)

_____
(Address of Elector)

**For Election Officials Only:**

I hereby declare I have received the voter's ballot and envelope containing the voter's declaration from the voter and I am spoiling it and permitting the voter to sign the poll book and vote a regular ballot.

_____
(Printed Name of Judge of Elections)

_____
(Judge of Elections Signature)

_____
(Precinct)

Instructions after completion: This form should be attached to the voter's surrendered balloting material and returned in the [container] [bag] designated for spoiled ballots. Do not forget to  check the  "**BALLOT REMITTED?**" option next to the voter's name in the poll book.

# Exhibit 3

TLP: WHITE



# GUIDANCE CONCERNING CIVILIAN ABSENTEE AND MAIL-IN BALLOT PROCEDURES

**Date: September 28, 2020**

**Version: 1.0**

GUIDANCE CONCERNING CIVILIAN ABSENTEE AND MAIL-IN BALLOT PROCEDURES

## 1   MAIL-IN AND CIVILIAN ABSENTEE BALLOTING – GENERAL PROVISIONS

Qualified voters may apply at any time on or before 5:00 p.m. on the Tuesday before any primary or election for a mail-in or civilian absentee ballot, and county boards of elections must begin processing applications at least fifty (50) days before the primary or election. County boards of elections may process applications earlier than fifty (50) days before the primary or election, if the county board of elections determines that it is better for its operational needs to do so.

### 1.1   WHO MAY REQUEST AN ABSENTEE OR MAIL-IN BALLOT?

All qualified voters in Pennsylvania are eligible to vote by mail-in ballot, and no excuse is required. For example, even if a voter will be present in their municipality on Election Day, but would simply prefer to vote from home, they may request a mail-in ballot.

Absentee ballots may be voted by domestic voters who will be absent from their municipality on Election Day due to work or vacation, voters who are celebrating a religious holiday, and voters such as college students who also may be away from the municipality on Election Day, if they don't choose to vote where they go to school.  Absentee ballots are also for those who are unable to attend their polling place due to illness or physical disability.

A voter may only qualify for and vote one ballot.

### 2.2   Permanent Voter Lists

Any qualified voter can request to be placed on the permanent **mail-in** voter list at any time.

For the permanent annual **absentee** ballot list, only voters with a permanent illness or disability are eligible; this section does not apply to voters expecting to be absent from the municipality.  Absentee voters who request to be placed on the permanent absentee list do not have to renew their physician's certification of continued disability every four (4) years or list it on each application.

If voters wish to request to become an annual permanent voter:

- For annual permanent **mail-in** list requests: these requests may be submitted when completing their online mail-in ballot request application.
- For annual permanent **absentee** list requests: this may be submitted by paper application only due to the physician's certification requirement.

Each year the county must send an application to any voter on the permanent absentee and mail-in voter lists by the first (1st) Monday in February.  The yearly application, once approved, serves as a standing request for a mail-in or absentee ballot to be mailed to that voter for every election that calendar year and for any special election until the third (3rd) Monday in February the next year.

If a permanent mail-in or permanent absentee voter no longer wishes to receive a ballot for the upcoming election or wishes to cancel her permanent status, the voter can submit a cancellation form to the county board of elections.  The cancellation form can be found at VotesPA.com.

## 2   REQUESTING AN ABSENTEE OR MAIL-IN BALLOT

There are three (3) ways by which voters can apply for mail-in or absentee ballots:

1.  By Mail
2.  In Person
3.  Online

### 2.1   MAIL REQUESTS

A voter may submit a paper application via mail to the county board of elections for absentee and mail-in ballot applications.

### 2.2   IN-PERSON (OVER THE COUNTER) REQUESTS

Act 77 of 2019 allows voters to request and cast an absentee or mail-in ballot over the counter in advance of Election Day. After ballots are finalized by a county, voters may apply at a County Election Office (CEO) during established business hours to receive and cast a mail-in or absentee ballot in person while the voter is in the office.

Once the voter is determined to be qualified and the application for an absentee or mail-in ballot is approved, the county board of elections **must promptly present** the voter with the voter's mail-in or absentee ballot.  Under Section 1305 of the Election Code, 25 P.S. § 3146.5, a county board of elections may not deny the eligible voter's request to have the ballot presented to the voter while the voter is at the office unless there is a bona fide objection to the absentee or mail-in ballot application.  Voters still need to provide proof of identification (as defined in the Election Code) to be verified by county boards of elections to vote an absentee or mail-in ballot.  Proof of identification for civilian absentee and mail-in voting include a valid driver's license number, the last four digits of the voter's social security number or other valid photo identification.

Voters who receive a mail-in or absentee ballot in person must be provided an opportunity to privately and secretly mark their ballot. ***Note:** The marking of the ballot in secret does not have to take place in the election offices. It can be provided in a nearby location.*

#### 2.2.1   Satellite County Election Offices

County election boards may provide for mail-in and absentee application processing and balloting at more than one location within county borders.

Counties may establish additional business hours for CEOs; hours do not have to be limited to weekdays or to typical business hours. Counties are encouraged to offer business hours outside of these time frames, including weeknights or weekend hours to enable maximum flexibility and convenience for voters.

When a county decides to provide additional mail-in and absentee balloting by establishing additional CEOs, the county must account for all of the following:

- Each CEO must be staffed by appointed elections personnel in municipal or county-owned or leased locations selected by the county board of elections for processing applications and in-person voting of both mail-in and absentee ballots.
- Each CEO must have a secure county network connection that is capable of connecting to the Statewide Uniform Registry of Electors (SURE), and staff trained and approved to access SURE. NOTE: The Department will work with counties to establish secure connections; the county network extension must be approved by the Department.
- Each CEO must either have copies of all ballot styles available to be voted in the county, or an on-demand ballot printer capable of printing all ballot styles available to be voted in the county.
- Each CEO must have a secure ballot collection receptacle to store voted mail-in or absentee ballots submitted at the location.  County boards of election are required to keep voted ballots in a sealed or locked container until the time of pre-canvassing.
- Please see the Department of State's August 19, 2020 Absentee and Mail-In Ballot Return Guidance for more information and guidance on choosing a location for a CEO.

## 2.3   ONLINE REQUESTS

A voter may submit either an absentee or mail-in ballot request online via the Department's online portal at PA Voter Services.

Online applications must be processed according to the same statutory requirements as an application submitted by-mail or in person, including the proof of identification requirements defined in the Election Code.

## 3   DELIVERY OF MAIL-IN AND ABSENTEE BALLOTING MATERIALS

Counties must begin delivering mail-in or absentee ballots as soon they are certified and available. Counties may await the outcome of pending litigation that affects the contents of the ballots, but in any event the county must begin delivering mail-in or absentee ballots no later than the 2nd Tuesday prior to Election Day.

Once the counties begin delivering their ballots, as additional applications are received and approved, the county must deliver or mail ballots to such additional voters within forty-eight (48) hours of receipt of approved applications.

## 3.1   BALLOTING MATERIALS

The absentee and mail-in balloting materials must include the following:

1. The voter's proper ballot style based on the voter's registration address.
2. A white, inner (or "secrecy") envelope that indicates official ballot.

3.  A pre-addressed outer ballot-return envelope that contains a declaration which the voter must sign and date.

The ballot must be returned within the inner envelope, which must be placed in the pre-addressed outer envelope.

With regard to the inner envelope:

- The Pennsylvania Supreme Court held on September 17, 2020, that any ballot that is not returned in the official ballot envelope (secrecy envelope) must be set aside and declared void. These ballots have been referred to as "naked ballots."  In accordance with that ruling, all ballots that are not returned within the inner envelope must be set aside and may not be counted.  ***Counties are strongly encouraged to include an instructional insert which describes how the voter should mark and return their ballot and to clearly warn that ballots must be returned in the secrecy envelopes or they will not be counted.***  The Department encourages county boards of election to publicize the requirement that ballots must be returned within the inner envelope, including on the county's website, in their offices, at ballot collection sites, and in other locations that may assist and educate voters.
- If any voted ballot's inner (or "secrecy") envelope contains any text, mark, or symbol which reveals the identity of the voter, the voter's political affiliation (party), or the voter's candidate preference, the envelopes and the ballots inside them must be set aside, declared void and may not be counted.

With regard to the outer ballot-return envelope:
- A ballot-return envelope with a declaration that is filled out, dated, and signed by an elector who was approved to receive an absentee or mail-in ballot is sufficient and counties should continue to pre-canvass and canvass these ballots.
- A ballot-return envelope with a declaration that is not filled out, dated, and signed is not sufficient and must be set aside, declared void and may not be counted.  Ballot-return envelopes must be opened in such a manner as not to destroy the declarations executed thereon.
- All ballot-return envelopes containing executed declarations must be retained for a period of two years in accordance with the Election Code.

## 3.2   BALLOT DESIGN REQUIREMENTS

Act 12 of 2020 changed the law with respect to the surrender process for voters who request mail-in or absentee ballots.

Pursuant to Act 12 of 2020, a warning notice is required to be listed on both the absentee and mail-in ballots, which states:

> WARNING: If you receive an absentee or mail-in ballot and return your voted ballot by the deadline, you may not vote at your polling place on election day. If you are unable to return your voted absentee or mail-in ballot by the deadline, you may only vote a provisional ballot at your polling place on election day, unless you surrender your absentee or mail-in ballot and envelope to the judge of elections to be voided to vote by regular ballot.

## 4   RETURN OF BALLOTS BY VOTERS

### 4.1   VOTER MUST RETURN OWN BALLOT

A voter must return his or her own completed absentee or mail-in ballot by 8:00 pm on Election Day to the county board of elections or other county-designated drop-off location.  Third-person delivery of absentee or mail-in ballots is not permitted, and any ballots delivered by someone other than the voter are required to be set aside.  The only exceptions are voters with a disability who have designated in writing an agent to deliver their ballot for them.  Agency forms may be found at VotesPA.com. Emergency absentee ballots also may be delivered by a designated agent.

### 4.2   COLLECTION OF MAIL-IN AND ABSENTEE BALLOTS

In addition to the main CEO and satellite CEOs, counties may provide for other secure ballot collection locations that the county deems appropriate to accommodate in-person return of voted mail-in and absentee ballots.  ***Please refer to the Department's August 19, 2020 Absentee and Mail-In Ballot Return Guidance for more information and guidance regarding ballot collection locations and procedures.***

County boards of election are required to keep absentee and mail-in ballots in a sealed or locked container(s) until the time of pre-canvassing.

### 4.3   SURRENDER PROCESS FOR VOTERS WHO REQUEST MAIL-IN OR ABSENTEE BALLOTS

Once a voter requests a civilian absentee or mail-in ballot, they should vote and return that mail-in or absentee ballot by mail, or deliver it in person to a county elections office (CEO) or other designated drop-off location prior to 8:00 P.M. on Election Day.

However, if a voter has not voted their mail-in or absentee ballot, they may take it to their polling place on election day to surrender it.  (NOTE:  This is a different procedure than was in place for the June 2020 primary.  Act 12 of 2020 changed the procedures for voters who request mail-in or absentee ballots, but later appear at their polling place.  These changes take effect for the first time in the November 2020 General Election.)

Specifically, a voter who requests a mail-in or absentee ballot and who is not shown on the district register as having voted the ballot may vote at their polling place on Election Day if (1) the voter surrenders the original mail-in or absentee ballot and its outer envelope to the judge of elections to be spoiled, and (2) the voter signs a statement subject to the penalties under 18 Pa. C.S. § 4904 in substantially the following form:

> I hereby declare that I am a qualified registered elector who has obtained an absentee ballot or mail-in ballot. I further declare that I have not cast my absentee ballot or mail-in ballot, and that instead I remitted my absentee ballot or mail-in ballot and the envelope containing the declaration of the elector to the judge of elections at my polling place to be spoiled and therefore request that my absentee ballot or mail-in ballot be voided.

If the voter turns in (surrenders) his or her ballot and outer envelope and signs the statement, the voter is permitted to vote by regular ballot at the polling place.

If a voter whose record in the district poll book indicates that the voter requested a mail-in or absentee ballot but the voter does not surrender their ballot and declaration envelope and sign the required statement, the voter should be provided a provisional ballot. Even if the voter asserts that they did not cast a mail-in or absentee ballot and is eligible to vote, the voter should only be provided a provisional ballot.

## 5   ABSENTEE AND MAIL-IN VOTING PROCESSES FOR COUNTY ELECTION OFFICIALS

### 5.1   POLL BOOK PROCESSES
The poll books will be divided into two sections.

The main section will include a) voters who have not requested a mail-in or absentee ballot for this election and b) voters who requested an absentee or mail-in ballot but who did not return their ballot by the date the pollbooks were printed. There will be a special watermark in the poll book indicating that voters who did not return their ballot by the date the pollbooks were printed must either surrender their ballot as described in Section 4.3 above or vote provisionally if they appear at the polling place on Election Day.

The secondary section of the pollbook will contain a list of voters who have both requested and returned their ballot (cast their vote) by the time the poll book was printed.

Voters who requested but have not returned their absentee or mail-in ballot may vote in person at their polling place on election day ONLY if they surrender their ballot and the declaration envelope that accompanies it, as described in Section 4.3 above. The poll worker shall take the surrendered ballot and declaration envelope and mark them as "VOID." There is a location in the poll book where the poll worker must indicate that the items were surrendered. The voided ballot and declaration envelope, and the signed surrender declaration should be placed in a secure envelope or container and returned to the county election office with other polling place materials at the end of the voting day. The surrendered ballot materials must be preserved.

As noted above, the poll book record for voters whose cast absentee or mail-in ballot has already been received will indicate that the voter's ballot was cast and they are not eligible to vote at the polling place. This will aid poll workers when checking in voters to easily determine that these voters are not eligible to vote on the voting equipment but may vote provisionally if the voter believes they are eligible to vote.

The watermarks in the poll books as listed above also apply to voters with a permanent flag on their voter record. In either case, the poll worker will be able to determine the appropriate course of action when reviewing the poll book on election day.

## 5.2    PRE-CANVASSING AND CANVASSING ABSENTEE AND MAIL-IN BALLOTS

The Act 12 of 2020 amendments provide for a pre-canvass period beginning on the morning of Election Day to canvass all ballots received prior to the pre-canvass meeting. The amendments further provide for a canvass meeting beginning no earlier than the close of polls to canvass all ballots not included in the pre-canvass meeting.

**Pre-canvass Meeting**

- The **pre-canvass** may begin no earlier than 7:00 AM on Election Day. County boards of election must provide notification of the time and location of a pre-canvass meeting at least 48 hours prior to the meeting by posting notice on its website.
- The county board of elections must provide a list of the names of the voters whose absentee or mail-in ballots are to be pre-canvassed.
- One authorized representative for each candidate and one authorized representative for each political party must be permitted to remain in the room where the pre-canvass meeting occurs.
- Persons observing, attending or participating in the pre-canvass meeting MAY NOT disclose the result of any portion of the pre-canvass prior to the close of polls on Election Day.
- The Department strongly urges all counties to begin pre-canvassing at the earliest time allowed to ensure that results can be tabulated promptly.

**Canvass Meeting**

- The **canvass** of mail-in and absentee ballots may begin no earlier than the close of polls and no later than the 3rd day following the election. County boards of election must provide notification of the time and location of the **canvass** meeting at least 48 hours prior to the meeting by posting notice on its website.
- The county board of elections must provide a list of the names of the voters whose absentee or mail-in ballots are to be canvassed.
- The canvass process must continue through the 8th day following the election to include valid military and overseas ballots received by 5:00 PM on the 7th day following the election.
- One authorized representative for each candidate and one authorized representative for each political party must be permitted to remain in the room where the canvass meeting occurs.
- The Department strongly urges all counties to begin canvassing at the earliest time allowed to ensure that results can be tabulated and reported promptly.

**Pre-canvass and Canvass Procedures**

At the pre-canvass or canvass, as the case may be, the county board of elections should:

- Segregate the unopened ballots of voters whose applications were challenged by the challenge deadline (5:00 PM on the Friday before the election).
  - These ballots must be placed in a secure, sealed container until the board of elections holds a formal hearing on the challenged ballots.
  - Ballot applications can only be challenged on the basis that the applicant is not qualified to vote.
- Set aside the ballot of any voter who was deceased before election day.

- Set aside any ballots without a filled out, dated and signed declaration envelope.
- Set aside any ballots without the secrecy envelope and any ballots in a secrecy envelope that include text, mark, or symbol which reveals the identity of the voter, the voter's political affiliation (party), or the voter's candidate preference.

The Election Code does not permit county election officials to reject applications or voted ballots based solely on signature analysis.

No challenges may be made to mail-in or absentee ballot applications after 5:00 pm on the Friday before the election.

No challenges may be made to mail-in and absentee ballots at any time based on signature analysis.

NOTE: For more information about the examination of return envelopes, please refer to the Department's September 11, 2020 *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes*.

# # #

Version History:

| Version | Date | Description |
|---------|------|-------------|
| 1.0 | 9.28.2020 | Initial document release |

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; LAWRENCE ROBERTS; and DAVID JOHN HENRY; | ) ) ) ) | CIVIL ACTION |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 20-CV- _____ |
| v. | ) | |
| | ) | |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania; ALLEGHENY COUNTY BOARD OF ELECTIONS; CENTRE COUNTY BOARD OF ELECTIONS; CHESTER COUNTY BOARD OF ELECTIONS; DELAWARE COUNTY BOARD OF ELECTIONS; MONTGOMERY COUNTY BOARD OF ELECTIONS; NORTHAMPTON COUNTY BOARD OF ELECTIONS; and PHILADELPHIA COUNTY BOARD OF ELECTIONS; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

## VERIFIED COMPLAINT
## FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, by their undersigned counsel, hereby complain of Defendants as follows:

- 1 -

## **INTRODUCTION**

1.      American citizens deserve fair elections.  Every legal – not illegal –
vote should be counted.  And no government power, be it state or federal, may deny
American citizens the right to observe the process by which votes are cast, processed,
and tabulated.  We must protect our democracy with complete transparency.

2.      Nothing less than the integrity of the 2020 Presidential election is at
stake in this action.  Defendants, the very officials charged with ensuring the
integrity of the election in Pennsylvania, have so mismanaged the election process
that no one – not the voters and not President Trump's campaign – can have any
faith that their most sacred and basic rights under the United States Constitution are
being protected.  The evidence is plain that Defendants have been and are blatantly
violating the protections and procedures, including those enacted by the
Pennsylvania General Assembly, vitally necessary to ensure that the votes of the
citizens of Pennsylvania are not illegally diluted by invalid ballots and that the
election is free and fair.

3.      While the bedrock of American elections has been transparency, almost
every critical aspect of Pennsylvania's November 3, 2020 General Election was
effectively shrouded in secrecy. Democrat-majority counties provided political
parties and candidates, including the Trump Campaign, no meaningful access or

actual opportunity to review and assess mail-in ballots during the pre-canvassing meetings.

4.     Allegheny and Philadelphia Counties alone received and processed 682,479 mail-in and absentee ballots without review by the political parties and candidates. These are unprecedented numbers in Pennsylvania's elections history. Rather than engaging in an open and transparent process to give credibility to Pennsylvania's brand-new voting system, the processes were hidden during the receipt, review, opening, and tabulation of those 682,479 votes in direct contravention of the Election Code.

5.     Allegheny and Pennsylvania counties conducted the canvassing and tabulation in convention center rooms and placed observers far away from the action. In the case of Philadelphia County, when an emergency order was issued requiring them to provide meaningful access to representatives, Philadelphia failed to comply.

6.     Worse, Democratic-heavy counties violated the mandates of the Election Code and the determinations of the Pennsylvania Supreme Court, advantaging voters in Democratic-heavy counties as compared to those in Republican-heavy counties.  Democratic-heavy counties engaged in pre-canvass activities prior to November 3, 2020, by reviewing received mail-in ballots for deficiencies, such as lacking the inner secrecy envelope or lacking a signature of the elector on the outer declaration envelope.  Those offending Counties then would

- 3 -

notify those voters in order to allow them to cure their ballot deficiencies by voting provisionally on Election Day or cancelling their previously mailed ballot and issuing a replacement. In other words, those counties provided their mail-in voters with the opportunity to cure mail-in and absentee ballot deficiencies, while Republican-heavy counties followed the law and did not provide a notice and cure process, disenfranchising those that themselves complied with the Election Code to case legal votes.

7. The commonality and statewide nature of these irregularities impacts the elections.

8. "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000). All citizens, including Pennsylvanians, have rights under the United States Constitution to the full, free, and accurate elections built upon transparency and verifiability. Citizens are entitled – and deserve – to vote in a transparent system that is designed to protect against vote dilution.

9. As evidenced by numerous sworn statements, Defendants egregious misconduct has included ignoring legislative mandates concerning mail-in ballots – which amounted to over 2.6 million of the approximately 6.75 million votes in

Pennsylvania – including the mandate that mail-in ballots be post-marked on or before Election Day, and critically, preventing Plaintiff's poll watchers from observing the receipt, review, opening, and tabulation of mail-in ballots. Those mail-in ballots are evaluated on an entirely parallel track to those ballots cast in person.

10.     On Election Day, when the Trump Campaign's poll watchers were present and allowed to observe in various polling locations throughout the Commonwealth, they observed and reported numerous instances of election workers failing to follow the statutory mandates relating to two critical requirements, among other issues: (1) a voter's right to spoil their mail-in ballot at their polling place on election day and to then vote in-person, and (2) the ability for voters to vote provisionally on election day when a mail-in ballot has already been received for them, but when they did not cast those mail-in ballots.

11.     Additionally, Plaintiffs have learned that certain County Election Boards were mailing unsolicited mail-in ballots to voters despite the fact that they had not applied for a mail-in ballot for the General Election, thus resulting in voters who received two ballots. The offending counties also failed to undertake any effort to ensure destruction of the duplicate ballots.

12.     The right to vote includes not just the right to cast a ballot, but also the right to have it fairly counted if it is legally cast. The right to vote is infringed if a

vote is cancelled or diluted by a fraudulent or illegal vote, including without limitation when a single person votes multiple times. The Supreme Court of the United States has made this clear in case after case. *See, e.g., Gray v. Sanders*, 372 U.S. 368, 380 (1963) (every vote must be "protected from the diluting effect of illegal ballots."); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (plurality op. of Stevens, J.) ("There is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters."); *accord Reynolds v. Sims*, 377 U.S. 533, 554-55 & n.29 (1964). The disparate treatment of Pennsylvania voters, in subjecting one class of voters to greater burdens or scrutiny than another, violates Equal Protection guarantees because "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds,* 377 U.S. at 555.

13. In a rush to count mail ballots and ensure Democrat Joe Biden is elected, Pennsylvania has created an illegal two-tiered voting system for the 2020 General Election, devaluing in-person votes. For voters that appeared at the polls, those citizens were required to sign voter registrations, have those signatures checked against voter rolls, vote in a polling place monitored by statutorily-authorized poll observers, and have their votes counted in a transparent and verifiable open and observed manner. By contrast, due to the arbitrary,

unauthorized, and standardless actions of the Secretary of the Commonwealth of Pennsylvania, Kathy Boockvar, nearly 2.65 million votes were cast through a "mail-in" process that lacked all of the hallmarks of transparency and verifiability that were present for in-person voters. In fact, Secretary Boockvar affirmatively excised nearly every element of transparency and verifiability. Among other things, the Secretary refused to require adequate verification of the voter's identity. Rather than require votes to be received on the day of election, the Secretary permitted ballots received up to three days after the election to be counted without any evidence of timely mailing, such as a postmark. Finally, contrary to the in-person voting that is open and transparent to the parties and the candidates, Defendants permitted the review and counting of mail-in ballots largely in secret with no monitoring.

14. Through the arbitrary and illegal actions of the Secretary, Pennsylvania created a two-track system of voting resulting in voters being treated differently depending on how they chose to exercise their franchise. The first, marked by voters appearing personally at the polls complied with transparency and verifiability requirements of Pennsylvania Election Code. The second, marked by a mass of paper ballots received through the mail, was cloaked in darkness and complied with none of those transparency and verifiability requirements. This two-track election system not only violates Plaintiffs' rights guaranteed by the United States Constitution, but

- 7 -

also violates the structure of the Constitution that elections in the States must be carried out as directed by their respective legislatures.

15. Accordingly, Plaintiffs seek an emergency order prohibiting Defendants from certifying the results of the General Election. In the alternative, Plaintiffs seek an emergency order prohibiting Defendants from certifying any results from the General Election that included the tabulation of absentee and mail-in ballots which do not comply with the Election Code, including, without limitation, the tabulation of absentee and mail-in ballots Trump Campaign's watchers were prevented from observing or based on the tabulation of invalidly cast absentee and mail-in ballots which (i) lack a secrecy envelope, or contain on that envelope any text, mark, or symbol which reveals the elector's identity, political affiliation, or candidate preference, (ii) do not include on the outside envelope a completed declaration that is dated and signed by the elector, or (iii) are delivered in-person by third parties for non-disabled voters. Lastly and in addition to the alternative requests for relief, Plaintiffs seek a permanent injunction requiring the County Election Boards to invalidate ballots cast by voters who were notified and given an opportunity to cure their invalidly cast mail-in ballot.

## JURISDICTION AND VENUE

16. Under 28 U.S.C. §§ 1331 & 1343, this Court has subject matter jurisdiction because this action arises under the Constitution and laws of the United

- 8 -

States and involves a federal election for President of the United States. "A significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question." *Bush*, 531 U.S. at 113 (Rehnquist, C.J., concurring); *Smiley v. Holm*, 285 U.S. 355, 365 (1932). Also, this Court has supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367.

17.     Venue is proper because a substantial part of the events giving rise to the claims occurred in this District, and certain of the Defendants reside in this District and all of the Defendants are residents of the Commonwealth of Pennsylvania in which this District is located. 28 U.S.C. § 1391(b) & (c).

## **PARTIES**

18.     Plaintiff Donald J. Trump for President, Inc. (hereinafter, the "Trump Campaign"), is the principal committee for the reelection campaign of Donald J. Trump, the 45th President of the United States of America (hereinafter, "President Trump"). President Trump is the Republican nominee for the office of the President of the United States of America in the November 3, 2020 General Election. The Trump Campaign brings this action for itself and on behalf of its candidate, President Trump. As a political committee for a federal candidate, the Trump Campaign has Article III standing to bring this action. *See, e.g., Orloski v. Davis*, 564 F. Supp. 526, 530-31 (M.D. Pa. 1983). *See also Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587-588 (5th Cir. 2006) ("[A]fter the primary election, a candidate steps into

the shoes of his party, and their interests are identical."); *In re General Election-1985*, 531 A.2d 836, 838 (Pa. Commw. Ct. 1987) (A candidate for office in the election at issue suffers a direct and substantial harm sufficient for standing to contest the manner in which an election will be conducted).

19.   Plaintiff David John Henry (hereinafter, "Mr. Henry") is an adult individual who is a qualified registered elector residing in West Hempfield Township, Lancaster County, Pennsylvania.  Mr. Henry  constitutes a "qualified elector" as that term is defined in Election Code Section 102(t), 25 P.S. § 2602(t). Mr. Henry brings this suit in his capacity as a private citizen.  As a qualified elector and registered voter, Mr. Henry has Article III standing to bring this action.  *See Orloski*, 564 F. Supp. at 530; *Pierce*, 324 F. Supp. 2d at 692-93.

20.   Plaintiff Lawrence Roberts (hereinafter, "Mr. Roberts") is an adult individual who is a qualified registered elector residing in Uniontown, Fayette County, Pennsylvania.  Mr. Roberts  constitutes a "qualified elector" as that term is defined in Election Code Section 102(t), 25 P.S. § 2602(t). Mr. Roberts brings this suit in his capacity as a private citizen.  As a qualified elector and registered voter, Mr. Roberts has Article III standing to bring this action.  *See Orloski*, 564 F. Supp. at 530; *Pierce*, 324 F. Supp. 2d at 692-93.

21.   Defendant Secretary Boockvar is the Secretary of the Commonwealth. In this role, Secretary Boockvar leads the Pennsylvania Department of State.  As

Secretary, she is Pennsylvania's Chief Elections Officer and a member of the Governor's Executive Board. The Pennsylvania Constitution vests no powers or duties in Secretary Boockvar. *Perzel v. Cortes,* 870 A.2d 759, 764 (Pa. 2005). Instead, her general powers and duties concerning elections are set forth in Election Code Section 201, 25 P.S. § 2621. Under the Election Code, Secretary Boockvar acts primarily in a ministerial capacity and has no power or authority to intrude upon the province of the Pennsylvania General Assembly. *Perzel,* 870 A.2d at 764; *Hamilton v. Johnson*, 141 A. 846, 847 (Pa. 1928). Secretary Boockvar is sued in her official capacity.

22. Defendants Allegheny, Centre, Chester, Delaware, Philadelphia, Montgomery, and Northampton County Board of Elections (collectively hereinafter, the "County Election Boards") are the county boards of elections in and for the aforementioned counties of the Commonwealth of Pennsylvania as provided by Election Code Section 301, 25 P.S. § 2641. The County Election Boards "have jurisdiction over the conduct of primaries and elections in such count[ies], in accordance with the provision of [the Election Code.]" *Id.* at § 2641(a). The County Election Boards' general powers and duties are set forth in Election Code Section 302, 25 P.S. § 2642. The County Election Boards are executive agencies that carry out legislative mandates, and their duties concerning the conduct of elections are purely ministerial with no exercise of discretion. *Shroyer v. Thomas*, 81 A.2d 435,

437 (Pa. 1951); *Perles v. Hoffman*, 213 A.2d 781, 786 (Pa. 1965) (Cohen, J.,

concurring).  *See also* *Deer Creek Drainage Basin Authority v. County Bd. of Elections*, 381 A.2d 103, 109 (Pa. 1977) (Pomeroy, J., dissenting) ("A board of

elections, it has been well said, "does not sit as a quasi-judicial body adjudicating

contending forces as it wishes, but rather as an executive agency to carry out

legislative mandates. Its duties are ministerial only."); *In re Municipal Reapportionment of Township of Haverford*, 873 A.2d 821, 833, n.18 (Pa. Commw. Ct. 2005) ("The duties of a board of elections under the Election Code are ministerial

and allow for no exercise of discretion."), *appeal denied* 897 A.2d 462 (Pa. 2006).

## FACTUAL ALLEGATIONS

### I.  Federal Constitutional Protections for Free and Fair Public Elections.

23.   Free, fair, and transparent public elections are crucial to democracy – a

government of the people, by the people, and for the people.

24.   In statewide elections involving federal candidates, "a State's

regulatory authority springs directly from the United States Constitution." *Project Vote v. Kelly*, 805 F. Supp. 2d 152, 174 (W.D. Pa. 2011) (citing *Cook v. Gralike*, 531 U.S. 510, 522-23 (2001); *U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 805 (1995)).

25.   The Elections Clause of the United States Constitution states that "[t]he

Times, Places, and Manner of holding Elections for Senators and Representatives,

shall be prescribed in each State by *the Legislature* thereof." U.S. Const. Art. I, § 4, cl. 1 (emphasis added). Likewise, the Electors Clause of the United States Constitution states that "[e]ach State shall appoint, in such Manner as *the Legislature* thereof may direct, a Number of Electors" for President. U.S. Const. Art. II, § 1, cl. 2 (emphasis added).

26. The Legislature is "'the representative body which ma[kes] the laws of the people.'" *Smiley* 285 U.S. 365. Regulations of congressional and presidential elections, thus, "must be in accordance with the method which the state has prescribed for legislative enactments." *Id.* at 367; *see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 135 S. Ct. 2652, 2668 (U.S. 2015).

27. In Pennsylvania, the "legislature" is the General Assembly. Pa. Const. Art. II, § 1. *See also Winston v. Moore,* 91 A. 520, 522 (Pa. 1914) ("The power to regulate elections is legislative, and has always been exercised by the lawmaking branch of the government."); *Patterson v. Barlow,* 60 Pa. 54, 75 (1869) ("It is admitted that the Constitution cannot execute itself, and that the power to regulate elections is a legislative one, which has always been exercised by the General Assembly since the foundation of the government.").

28. Because the United States Constitution reserves for state legislatures the power to set the time, place, and manner of holding elections for Congress and the President, state executive officers, including but not limited to Secretary

Boockvar, have no authority to unilaterally exercise that power, much less flout existing legislation.

29.    Nor can the authority to ignore existing legislation be delegated to an executive officer.  While the Elections Clause "was not adopted to diminish a State's authority to determine its own lawmaking processes," *Ariz. State Legislature*, 135 S. Ct. at 2677, it does hold states accountable to their chosen processes when it comes to regulating federal elections.    *Id.* at 2668. A significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question." *Bush*, 531 U.S. at 113 (Rehnquist, J., concurring); *Smiley*, 285 U.S. at 365.

## II.    Actual Observation by Watchers and Representatives Ensures Free and Fair Public Elections.

30.    Elections in Pennsylvania are governed and regulated by the Pennsylvania Election Code.   "Although the [Commonwealth] is ultimately responsible for the conduct and organization of elections, the statutory scheme [promulgated by the Election Code] delegates aspects of that responsibility to the political parties.  This delegation is a legislative recognition of 'the critical role played by political parties in the process of selecting and electing candidates for state and national office.'" *Tiryak v. Jordan*, 472 F. Supp. 822, 823-24 (E.D. Pa. 1979) (quoting *Marchioro v. Chaney*, 442 U.S. 191, 195 (1979)). "Pennsylvania's election laws apply equally to federal and state elections." *Project Vote*, 805 F. Supp. 2d at

174 (citing *Kuznik v. Westmoreland County Board of Elections*, 902 A.2d 476, 490-93 (Pa. 2006)).

31.     The United States Supreme Court has noted: "[S]unlight," as has so often been observed, "is the most powerful of all disinfectants." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 305 (1964).

32.     The Pennsylvania General Assembly understood that sentiment long ago and intertwined the concept of watching with the act of voting, enshrining transparency and accountability into the process in which Pennsylvanians choose elected officials.  After all, reasonable people cannot dispute that "openness of the voting process helps prevent election fraud, voter intimidation, and various other kinds of electoral evils." *PG Publishing Co. v. Aichele*, 705 F.3d 91, 111 (3d Cir. 2013).

33.     As long as Pennsylvania has had an Election Code, it has had watchers. In 1937, the Pennsylvania General Assembly included the concept of "watchers" in the then-newly enacted Pennsylvania Election Code, a statutory scheme addressing the administration of elections in the Commonwealth.  *See* 25 P.S. §§ 2600, *et. seq*.

34.     As it exists today, Election Code Section 417, codified at 25 P.S. § 2687, creates the position of watcher and entrusts to each candidate for nomination or election at any election, and each political party and each political body which

- 15 -

has nominated candidates for such elections, the power to appoint watchers to serve in each election district in the Commonwealth. *See* 25 P.S. § 2687(a).

35.     Under the Election Code, "poll watcher[s] perform[] a dual function on Election Day.  On the one hand, because [watchers] are designated and paid by [candidates, political parties, and/or political bodies], [their] job is to guard the interests of [their] candidates [or political parties or bodies].  On the other hand, because the exercise of [their] authority promotes a free and fair election, poll watcher[s] serve to guard the integrity of the vote.  Protecting the purity of the electoral process is a state responsibility and [watchers'] statutory role in providing that protection involves [them] in a public activity, regardless of [their] private political motives." *Tiryak*, 472 F. Supp. at 824.

36.     Under Election Code Section 417(b), watchers may observe the election process from the time the first polling place official appears in the morning to open the polling place until the time the polls are closed and the election returns are counted and posted at the polling place entrance.  25 P.S. § 2687(b).  However, until the polls close, only one watcher representing each political party and its candidates at a general, municipal, or special election can be present in the polling place outside the enclosed space from the time that the election officers meet to open the polls and until the counting of the votes is complete.  *Id*.  *See also* Election Code Section 1220, 25 P.S. § 3060(a) & (d).  Once the polls close and while the ballots

are being counted, then all the watchers for candidates and political parties or bodies are permitted to be in the polling place outside the enclosed space. 25 P.S. § 2687(b).

37.    In addition to the activities authorized by Election Code Section 417(b), watchers are among those who are authorized under Election Code Section 1210(d), 25 P.S. § 3050(d), to challenge any person who presents himself or herself to vote at a polling place on Election Day concerning the voter's identity, continued residence in the election district, or registration status. *See* 25 P.S. § 3050(d) ("any person, although personally registered as an elector, may be challenged by any qualified elector, election officer, overseer, or **watcher** at any primary or election as to his identity, as to his continued residence in the election district or as to any alleged violation of the provisions of section 1210 of this act, …") (emphasis added).

38.    Also, watchers are authorized under Election Code Section 1308(b), 25 P.S. § 3146.8(b), to be present when the envelopes containing absentee and mail-in ballots are opened, counted, and recorded. 25 P.S. § 3146.8(b).

39.    Moreover, watchers' functions go beyond the activities authorized under Election Code Sections 417(b) and 1210(d) on Election Day.

40.    For example, under Election Code Section 310, 25 P.S. § 2650, watchers appointed by parties, political bodies, or bodies of citizens may appear "at any public session  or sessions of the county board of elections," and "at any computation and canvassing of returns of any primary or election and recount of

- 17 -

ballots or recanvass of voting machines," in which case such poll watchers may exercise the same rights as watchers at polling places and may raise objections to any ballots or machines for subsequent resolution by the county board of elections and appeal to the courts. 25 P.S. § 2650(a) & (c).

41.     In addition to watchers, the Election Code permits "representatives" of candidates and political parties to be involved in the pre-canvassing and canvassing of absentee and mail-in ballots. *See* 25 P.S. § 3146.8(g)(1.1) & (2).

42.     The Election Code also authorizes "representatives" of candidates and political parties to be present when provisional ballots are examined to determine if the individuals voting such ballots are entitled to vote at the election districts in the election. *See* 25 P.S. § 3050(a.4)(4).

43.     Election Code Section 417(b) provides that to be a watcher, a person must be "a qualified registered elector of the county in which the election district for which the watcher [is] appointed is located." 25 P.S. § 2687(b).

44.     Without watchers and representatives, the integrity of the vote in elections is threatened and the constitutional right to free and fair public elections under the United States Constitution is denied.

45.     Watchers and representatives serve as an important check to ensure transparency and guard against inconsistencies and other wrongdoing by election officials. The need for watchers and representatives is demonstrated by the case of

*United States v. DeMuro*, Criminal No. 20-112 (E.D. Pa. unsealed May 21, 2020). In that case, a former Judge of Elections in South Philadelphia pled guilty to adding fraudulent votes to the voting machines during Election Day – also known as "ringing up" votes – and then falsely certifying that the voting machine results were accurate for specific federal, state, and local Democratic candidates in the 2014, 2015, and 2016 primary elections. The scheme involved a political consultant who purportedly solicited monetary payments from the candidates as "consulting fees," and then used portions of those funds to pay election board officials, including DeMuro, in return for ringing up votes. DeMuro was able to commit the fraud because there were no poll watchers at his precinct. *See United States v. DeMuro*, Criminal No. 20-112, Information (Doc. #1) (E.D. Pa Mar. 03, 2020); M. Cavacini, "U.S. Attorney William M. McSwain Announces Charges and Guilty Plea of Former Philadelphia Judge of Elections Who Committed Election Fraud," U.S. Attys. Office – Pa., Eastern (May 21, 2020) (available at *https://www.justice.gov/usao-edpa/pr/us-attorney-william-m-mcswain-announces-charges-and-guilty-plea-former-philadelphia*.

46.     The importance of watchers and representatives serving as an important check in elections is recognized internationally. The International Institute for Democracy and Electoral Assistance issued a publication in 2002 called the *International Electoral Standards: Guidelines for Review the Legal Framework of*

*Elections*.  The purpose of the International IDEA standards is to be "used as benchmarks to assess whether or not an election is free and fair."  *International Electoral Standards* at v; *see also id.* at 6 ("These international standards are relevant to each component, and necessary for the legal framework to be able to ensure democratic elections.  This publication is intended to identify electoral standards which contribute to uniformity, reliability, consistency, accuracy and overall professionalism in elections.").  The sources for the *Standards* include numerous international Declarations, Charters, and Conventions, including many to which the U.S. is a signatory.  *See id.* at 7.

47.    As it relates to ballot counting and tabulation, the *Standards* set out as a general principle the following:

> A fair, honest and transparent vote count is a cornerstone of democratic elections.  This requires that votes be counted, tabulated and consolidated in the presence of the representatives of parties and candidates and election observers, and that the entire process by which a winner is determined is fully and completely open to public scrutiny.

*Standards*, at 77.

48.    "Regardless of whether ballots are counted at the polling station or at a central counting location or at both places, the representatives of parties and candidates and election observers should be permitted to remain present on this occasion."  *Id.* at 78.

- 20 -

49.     "The legal framework for elections should clearly specify that the representatives of parties and candidates and election observers be given, as far as practicable, certified copies of tabulation and tally sheets." *Id.* at 78.  "As a necessary safeguard of the integrity and transparency of the election, the legal framework must contain a provision for representatives nominated by parties and candidates contesting the election to observe all voting processes." *Id.* at 83.

50.     "[T]he representatives of parties and candidates should have the right to immediately query decisions made by polling officials or the implementation of voting procedures . . . ." *Id.* at 84.  Per the *Standards*, representatives of parties and candidates should be permitted "[t]o observe all activity – with the exception of the marking of ballots by voters – within the polling station, from the check counting of ballots and sealing of ballot boxes prior to the commencement of voting to the final packaging of material after close of voting; [t]o challenge the right of any person to vote; [and t]o query any decisions made by polling officials with the polling station[,] committee president and election management officials." *Id.* at 85.  "The legal framework must also be clear and precise concerning what a domestic observer may not do, for instance, interfere with voting, take a direct part in the voting or counting processes, or attempt to determine how a voter will vote or has voted.  It should strike a balance between the rights of observers and the orderly administration of the election processes.  But in no case should it hinder legitimate

- 21 -

observation, 'muzzle' observers, or prevent them from reporting or releasing information that has been obtained through their observations." *Id.* at 90.

## III.   The Perils of an Unmonitored Mail-In Voting System.

51.    Failing to uphold and ensure the adherence to even basic transparency measures or safeguards against the casting of illegal or unreliable ballots creates an obvious opportunity for ineligible voters to cast ballots, results in fraud, and undermines the public's confidence in the integrity of elections — all of which violate the fundamental right to vote, the guarantee of equal protection, and the right to participate in free, fair, and transparent elections as guaranteed by the United States Constitution.

52.    If a state fails to follow even basic integrity and transparency measures — especially its own — it violates the right to free, fair, and transparent public elections because its elections are no longer meaningfully public and the State has functionally denied its voters a fair election.

53.    "[P]ublic confidence in the integrity of the electoral process has independent significance, because it encourages citizen participation in the democratic process." *Crawford*, 553 U.S. at 195-96 (plurality op. of Stevens, J.). As the Commission on Federal Election Reform – a bipartisan commission chaired by former President Jimmy Carter and former Secretary of State James A. Baker III, and cited extensively by the United States Supreme Court – observed, "the 'electoral

- 22 -

system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters.'" *Building Confidence in U.S. Election,* Report of the Commission on Federal Election Reform, p. 46 (Sept. 2005) (available at *https://bit.ly/3dXH7rU,* and referred to and incorporated herein by reference) (hereinafter, the "Carter-Baker Report").

54.     According to the Carter-Baker Report, mail-in voting is "the largest source of potential voter fraud." Carter-Baker Report, p. 46. Many well-regarded commissions and groups of diverse political affiliation agree that "when election fraud occurs, it usually arises from absentee ballots." Michael T. Morley, *Election Emergency Redlines*, p. 2 (Mar. 31, 2020) (available at *https://ssrn.com/abstract=3564829* or *http://dx.doi.org/10.2139/ssrn.3564829,* and referred to and incorporated herein by reference) (hereinafter, "Morley, Redlines"). Such fraud is easier to commit and harder to detect. As one federal court put it, "absentee voting is to voting in person as a take-home exam is to a proctored one." *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004). *See also id.* at 1130-31 (voting fraud is a "serious problem" and is "facilitated by absentee voting.").

55.     Courts have repeatedly found that mail-in ballots are particularly susceptible to fraud. As Justice Stevens has noted, "flagrant examples of [voter] fraud ... have been documented throughout this Nation's history by respected historians and journalists," and "the risk of voter fraud" is "real" and "could affect

- 23 -

the outcome of a close election." *Crawford*, 553 U.S. at 195-96 (plurality op. of

Stevens, J.) (collecting examples). Similarly, Justice Souter observed that mail-in

voting is "less reliable" than in-person voting. *Crawford*, 553 U.S. at 212, n.4

(Souter, J., dissenting) ("'[E]lection officials routinely reject absentee ballots on

suspicion of forgery.'"); *id.* at 225 ("[A]bsentee-ballot fraud . . . is a documented

problem in Indiana."). *See also Veasey v. Abbott,* 830 F.3d 216, 239, 256 (5th Cir.

2016) (en banc) ("[M]ail-in ballot fraud is a significant threat" — so much so that

"the potential and reality of fraud is much greater in the mail-in ballot context than

with in-person voting.")*. See also id.* at 263 ("[M]ail-in voting . . . is far more

vulnerable to fraud."); *id.* (recognizing "the far more prevalent issue of fraudulent

absentee ballots").

56.     Pennsylvania is not immune to mail-in ballot fraud.  For example, in

1999, former Representative Austin J. Murphy was indicted by a Fayette County

grand jury and then convicted of absentee ballot fraud for forging absentee ballots

for residents of a nursing home and adding his wife as a write-in candidate for

township election judge.  *See* B. Heltzel, "Six of seven charges against Austin

Murphy dismissed," Pittsburgh Post-Gazette (June 22, 1999) (available at

*http://old.post-gazette.com/regionstate/19990622murphy6.asp,* and referred to and

incorporated herein by reference).  Similarly, in 2014, Richard Allen Toney, the

former police chief of Harmar Township in Allegheny County pleaded guilty to

illegally soliciting absentee ballots to benefit his wife and her running mate in the 2009 Democratic primary for town council. *See* T. Ove, "Ex-Harmar police chief pleads guilty to ballot tampering," Pittsburgh Post-Gazette (Sept. 26, 2014) (available at *https://www.post-gazette.com/local/north/2014/09/26/Ex-Harmar-police-chief-pleads-guilty-to-ballot-tampering-Toney/stories/201409260172,* and referred to and incorporated herein by reference). Further, in 2015, Eugene Gallagher pled guilty to unlawfully persuading residents and non-residents of Taylor in Lackawanna County to register for absentee ballots and cast them for him during his councilman candidacy in the November 2013 election. *See* J. Kohut*,* "Gallagher resigns from Taylor council, pleads guilty to three charges," The Times-Tribune (Apr. 3, 2015) (available at https://www.thetimes-tribune.com/news/gallagher-resigns-from-taylor-council-pleads-guilty-to-three-charges/article_e3d45edb-fe99-525c-b3f9-a0fc2d86c92f.html, and referred to and incorporated herein by reference). *See also* *Commonwealth v. Bailey*, 775 A.2d 881, 886 (Pa. Commw. Ct. 2001) (upholding defendant's conviction for absentee ballot violations, holding that a county district attorney has jurisdiction to prosecute such claims even in the absence of an investigation and referral by the Bucks County elections board); *In re Center Township Democratic Party Supervisor Primary Election*, 4 Pa . D. & C.4th 555, 557-563 (Pa. Ct. Com. Pl. Beaver 1989) (court ordered a run-off election after evidence proved that fifteen absentee ballots were applied for and cast by non-

existent individuals whose applications and ballots were handled by a political ally of the purported winner).

57.    As part of the November 3, 2020 General Election, there are at least two Counties that had suspected instances of mail-in ballot fraud.  Fayette County experienced two different issues with their mail-in ballots leading up to Election Day. First, an issue caused by Pennsylvania's SURE software system as to the marking of online applications submitted prior to the June primary election with the "permanent mail-in" status caused some voters to receive duplicate ballots for the general election. *See* https://www.wpxi.com/news/top-stories/election-officials-working-correct-mail-in-ballot-problems-fayette county/NH5DSEM7EVE7LGZLMAN4CS52YE/.    Prior to November 3, 2020, Fayette County uncovered an incident involving two voters who received mail-in ballots that were already filled out and two ballots that were found at the election bureau already opened with the secrecy envelope and the ballot missing out of those envelopes. Ballots that were already filled out arrived at homes 40 miles apart. *See* https://www.wtae.com/article/fayette-co-prosecutors-investigating-reports-of-voters-receiving-mail-in-ballots-already-filled-out/34527256.    In late September 2020, officials in Luzerne County discovered that a temporary seasonal elections worker had discarded into a trash bin nine (9) military ballots received in unmarked envelopes,   7   of   which   were   all   cast   for   President   Trump.   *See*

https://www.wgal.com/article/federal-authorities-investigate-discarded-ballots-in-luzerne-county-pennsylvania/34162209#.

58. This risk of abuse by absentee or mail-in voting is magnified by the fact that "many states' voter registration databases are outdated or inaccurate." Morley, Redlines, p. 2. A 2012 study from the Pew Center on the States – which the U.S. Supreme Court cited in a recent case - found that "[a]pproximately 24 million – one of every eight – voter registrations in the United States are no longer valid or are significantly inaccurate"; "[m]ore than 1.8 million deceased individuals are listed as voters"; and "[a]pproximately 2.75 million people have registrations in more than one state." *See* Pew Center on the States*, Election Initiatives Issue Brief*, "Inaccurate, Costly, and Inefficient: Evidence That America's Voter Registration System Needs an Upgrade," (Feb. 2012) (available at https://www.issuelab.org/resources/13005/13005.pdf, and referred to and incorporated herein by reference) (cited in *Husted v. A. Philip Randolph Inst*., 138 S. Ct. 1833, 1838 (U.S. 2018)).

59. Crucially as it pertains to Pennsylvania's registered voters, as recently as December 2019, the Auditor General of Pennsylvania, Eugene DePasquale, determined through an audit of Pennsylvania's Statewide Uniform Registry of Electors ("SURE"), administered by the Department of State, that there are more than 50,000 cases of potentially inaccurate voter records. The Performance Audit

Report noted that the audit "found too many instances of potentially bad data and sloppy recordkeeping." *See* https://www.paauditor.gov/press-releases/auditor-general-depasquale-issues-audit-of-voter-registration-system-calls-for-changes-at-pennsylvania-department-of-state; https://www.paauditor.gov/Media/Default/Reports/Department%20of%20State_SURE%20Audit%20Report%2012-19-19.pdf.   The Department of State was provided 50 recommendations to strengthen their policies and management controls, one of which was to work with counties to resolve records management issues such a duplicative voter records. *See id.* Mr. DePasquale criticized the Pennsylvania Department of State for its "lack of cooperation and a failure to provide the necessary information" during the audit, including the "denial of access to critical documents and excessive redaction of documentation." *Id.* As a result, the Auditor General was "unable to establish with any degrees of reasonable assurance that the SURE system is secure and that Pennsylvania voter registration records are complete, accurate and in compliance with applicable laws, regulations, and related guidelines." *Id.*

60.     Because of its inherent risk, absentee and mail-in voting is an election process that requires adequate procedural safeguards to deter fraud and ensure transparency.

61.     One procedural safeguard that any absentee or mail-in ballot voting system must have is the ability of candidates, political parties, and the public at large

to engage in meaningful, effective, and actual observation of the inspection, opening, counting, and recording of absentee and mail-in ballots in order to ensure that the election officers are uniformly applying the same rules and procedures to all absentee and mail-in voters and that only legitimately cast votes are counted and recorded.

## IV.   Pennsylvania Enacts All-Voter Mail-in Voting.

62.   The Pennsylvania General Assembly may enact laws governing the conduct of elections.  *Winston*, 91 A. at 522.  However, no legislative enactment may contravene the United States Constitution.  U.S. CONST. art. VI; *Shankey v. Staisey*, 257 A. 2d 897, 898 (Pa.), *cert. denied* 396 U.S. 1038 (1970).

63.   "Prior to the year 1957, the Pennsylvania Constitution permitted absentee voting only by individuals engaged in actual military service (Art. 8, § 6 of the Pennsylvania Constitution (1874)), and by bedridden or hospitalized veterans (Art. 8, § 18 added to the Pennsylvania Constitution (1949))."  *Absentee Ballots Case*, 224 A.2d 197, 199 (Pa. 1966).

64.   In 1957, the Pennsylvania Constitution was further amended to permit absentee voting for those "qualified electors who may, on the occurrence of any election, be absent from the municipality of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or

physical disability or who will not attend a polling place because of the observance of a religious holiday or who cannot vote because of election day duties, in the case of a county employee[.]" Pa. Const. art. VII, § 14.

65.     In 1960, the Election Code was amended to implement the 1957 amendment to the Pennsylvania Constitution. *Absentee Ballots Case*, 224 A.2d at 200. *See also* The Act of January 8, 1960, entitled "An Act amending the Act of June 3, 1937," P.L. 2135, 25 P.S. §§ 3149.1-3149.9 (Supp. 1960).

66.     "Absentee voting has consistently been regarded by the Pennsylvania courts as an extraordinary procedure in which the safeguards of the ordinary election process are absent." *Canvass of Absentee Ballots of April 28, 1964, Primary Election*, 34 Pa. D. & C.2d 419, 420 (Pa. Ct. Com. Pl. Phila. 1964).

67.     Specifically, "in the casting of an absentee ballot, the ordinary safeguards of a confrontation of the voter by the election officials and watchers for the respective parties and candidates at the polling place are absent." *Canvass of Absentee Ballots of April 28, 1964, Primary Election*, 34 Pa. D. & C.2d at 420.

68.     Because "it is fraught with evils and frequently results in void votes," Pennsylvania's laws regarding absentee voting are "strictly construed and the rights created thereunder not extended beyond the plain and obvious intention of the act." *Canvass of Absentee Ballots of April 28, 1964, Primary Election*, 34 Pa. D. & C.2d at 420-21 (citing *Decision of County Board of Elections*, 29 D.&C.2d 499, 506-7

- 30 -

(Pa. Ct. Com. Pl. 1962)).  *See also Marks v. Stinson,* Civ. A. No. 93-6157, 1994 U.S.
Dist. LEXIS 5273, at *78 (E.D. Pa. Apr. 26, 1994).

69.     Moreover, consistent with Pennsylvania's Statutory Construction Act,
the Election Code's use of the word "shall" to identify the manner and other
"technicalities" that an elector must follow to cast an absentee ballot are "substantive
provisions" that are necessary to "safeguard against fraud" and preserve the "secrecy
and the sanctity of the ballot and must therefore be observed," and ballots cast "in
contravention of [such] mandatory provision[s] are void." *In re Canvass of Absentee
Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d 1223, 1231-34 (Pa. 2004).

70.     On October 31, 2019, the Pennsylvania General Assembly enacted Act
77.  *See* Act 2019-77 (S.B. 421), § 8, approved October 31, 2019, eff. October 31,
2019.

71.     Act 77 fundamentally changed the administration of elections in the
Commonwealth of Pennsylvania in that, for the first time in its history, qualified
Pennsylvania electors now have the choice to vote by mail, rather than in person on
Election Day, without providing a reason or excuse.  *See, e.g.*, 25 P.S. §§ 3150.11-
3150.17; *see also Pa. Dem. Party v. Boockvar*, Case No. 133 MM 2020, 2020 Pa.
LEXIS 4872, at * 1 (Pa. Sept. 27, 2020).  Previously, the law offered electors who
could not vote in person on the designated Election Day the ability to apply for and
receive an absentee ballot, verifying they qualified based on a limited number of

excuses outlined in the statute. Pennsylvania held its first election under Act 77's no excuse mail-in ballot scheme during the Primary Election held on June 2, 2020. The November 3, 2020 election was the first General Election in Pennsylvania under the state's new mail-in voting scheme.

72.  Mail-in ballots are not automatically sent to electors in Pennsylvania. The Election Code requires that a person applying for both an absentee and a mail-in ballot complete a form with various information and sign the application. *See* 25 P.S. § 3146.2(a)–(e); (the absentee ballot application "shall be signed by the applicant"); 25 P.S. § 3150.12(a)–(d); 25 P.S. § 3146.2(d) (except has not relevant here, "the application [for a mail-in ballot] shall be signed by the applicant."). The only exception to the signature requirement is for military, overseas and disabled voters. *Id.*

73.  Other than the signature requirement, there is no other proof of identification required to be submitted with the ballot applications. *See generally* 25 P.S. § 3146.2; 25 P.S. § 3150.12. When those ballots are being reviewed for approval, the board of elections is required to both (i) compare the information provided on the application with the information contained on the voter's permanent card and (ii) verify the proof of identification. *See* 25 P.S. § 3146.2b(c); 25 P.S. § 3150.12b(a). The board of elections' signature verification on the application is the only means available to it to verify the identity of the voter.

- 32 -

74. For both absentee and mail-in voting, Act 77 retains the requirement that "the [non-disabled] elector shall send [his or her absentee or mail-in ballot] by mail, postage, except where franked, or deliver it in person to [the] county board of elections," in order for the ballot to be properly cast under Act 77. 25 P.S. §§ 3146.6(a) & 3150.16(a). Accordingly, as it did prior to the enactment of Act 77, the Election Code bars ballot harvesting of absentee and mail-in ballots cast by non-disabled voters. *See Crossey v. Boockvar*, Case No. 108 MM 2020, 2020 Pa. LEXIS 4868, at \*4 (Pa., Sept. 17, 2020) ("It has long been the law of this Commonwealth, per 25 P.S. § 3146.6(a), that third-person delivery of absentee ballots is not permitted. Act 77 adds a substantially identical provision for mail-in ballots, which we likewise conclude forbids third-party delivery of mail-in votes.") (citations omitted); *Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d at 1234 ("[W]e hold that Section 3146.6(a)'s 'in person' delivery requirement is mandatory, and that the absentee ballots of non-disabled persons who had their ballots delivered in contravention of this mandatory provision are void."); *Marks,* 1994 U.S. Dist. LEXIS 5273 at \*83.

75. Also, for both absentee and mail-in voting, Act 77 retains the requirement that an elector must comply with the following additional mandatory requirements for such ballot to be properly cast:

> [T]he [non-disabled] elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope . . . .

25 P.S. §§ 3146.6(a) & 3150.16(a).

76.     Moreover, as it did prior to the enactment of Act 77, the Election Code bars the counting of an absentee or mail-in ballot that either lacks an "Official Election Ballot," or contains on that envelope "any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference," or fails to contain a completed declaration that is signed and dated by the elector.  Election Code Sections 1306.6(a) and 1308(g)(i)-(iv), 25 P.S. §§ 3146.6(a) & 3146.8(g)(4)(i)-(iv).

77.     These provisions in the Election Code, as amended by Act 77, that identify exactly what an elector "shall" do to properly cast and vote an absentee or mail-in ballot serve to ensure the secrecy of such ballots and to prevent fraud.  *See Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d at 1232.  *See also id.* at 1234 (the Election Code's provisions of how to cast an absentee ballot are "substantive matters—how to cast a reliable vote—and not [] a mere procedural

matter" that can be disregarded by a county board of elections); *Appeal of Yerger*, 333 A.2d 902, 907 (Pa. 1975) (the validity of a ballot must first be ascertained before any factual inquiry into the intention of the voter); *Appeal of James*, 105 A.2d 64, 66 (Pa. 1954) ("[V]iolations of substantive provisions of the [Election] Code cannot be overlooked on the pretext of pursuing a liberal construction.").

78.    Importantly, the Pennsylvania Supreme Court recently reaffirmed that "ballots that voters have filled out incompletely or incorrectly" shall be set aside and declared void, and election boards are not permitted to afford these voters a "notice and opportunity to cure" procedure to remedy such defects.   *Boockvar*, 2020 Pa. LEXIS 4872 at *55.   The *Boockvar* Court further concluded "that a mail-in ballot that is not enclosed in the statutorily-mandated secrecy envelope *must be disqualified*." *Id. at *73* (emphasis added).

79.    However, in contrast to prior provisions of the Election Code, all absentee and mail-in ballots are no longer sent to polling places on Election Day and are no longer inspected by the local election boards or subject to challenge by watchers at the polling places.   Instead, Act 77 mandates that all properly cast absentee and mail-in ballots are to be "safely ke[pt] . . . in sealed or locked containers" at the county boards of elections until they are canvassed by the county elections boards.   Election Code Section 1308(a), 25 P.S. § 3146.8(a).

80. Additionally, Act 77 requires that "no earlier than seven o'clock A.M. on election day," the county boards of elections shall meet to conduct a pre-canvass of all absentee and mail-in ballots received to that meeting. Election Code Section 1308(g)(1.1), 25 P.S. § 3146.8(g)(1.1). During the pre-canvass, the election officials shall inspect and open the envelopes of all absentee and mail-in ballots, remove such ballots from such envelopes, and count, compute and tally the votes reflected on such ballots. However, as part of the pre-canvass, the county election boards are prohibited from recording or publishing the votes reflected on the ballots that are pre-canvassed. Election Code 102(q.1), 25 P.S. § 2602(q.1).

81. Further, contrary to prior provisions of the Election Code, Act 77 mandates that the county boards of elections are to meet no earlier than the close of polls on Election Day and no later than the third day following the election to begin canvassing absentee and mail-in ballots. *See* Election Code Section 1308(g)(2), 25 P.S. § 3146.8(g)(2). However, unlike a pre-canvass, the election officials during a canvass are permitted to record and publish the votes reflected on the ballots. *See* Election Code 102(a.1), 25 P.S. § 2602(a.1).

82. Act 77 prohibits an elector from casting both an absentee or mail-in ballot and in-person ballot, whether as a regular or provisional ballot. Specifically, Act 77 provides:

> Any elector who receives and votes a mail-in ballot under
> section 1301-D shall not be eligible to vote at a polling
> place on election day. The district register at each polling
> place shall clearly identify electors who have received and
> voted mail-in ballots as ineligible to vote at the polling
> place, and district election officers shall not permit
> electors who voted a mail-in ballot to vote at the polling
> place.

25 P.S. § 3150.16(b)(1). *See also* Election Code 1306(b)(1), 25 P.S. § 3146.6(b)(1).

83.     Further, Act 77 provides that an elector who requests a mail-in or
absentee ballot and who is not shown on the district register as having voted may
vote only by provisional ballot at the polling place on Election Day, unless the
elector remits the unvoted mail-in or absentee ballot and the envelope containing the
declaration of the elector to the judge of elections to be spoiled and the elector signs
a statement under penalties of perjury that he or she has not voted the absentee or
mail-in ballot. 25 P.S. §§ 3150.16(b)(2) & (3); 3146.6(b)(2) & (3).

84.     These restrictions and requirements under Act 77 were put in place to
reduce the possibility that illegally cast and/or fraudulent ballots would be counted.

85.     On November 3, 2020, Pennsylvania conducted the General Election
for national and statewide candidates; this was the first general election that followed
the enactment of Act 77 and its no-excuse, mail-in voting alternative.

86.     However, Philadelphians "began in-person mail-in voting at the
[S]atellite [O]ffices on September 29, 2020, sometime between 11:30 a.m. and 12:45

p.m.'" *Donald. J. Trump for President, Inc. v. Phila. Cnty. Bd. of Elections*, 983 CD 2020, at 7 n. 3 (Pa. Commw. Ct. Oct. 23, 2020) (McCullough, J.) (dissenting).

87.    In fact, "the presidential election is and has been happening since September 29, 2020. And all across America, news reports in Philadelphia and elsewhere have clearly conveyed that multi-millions of electors have already voted." *Id.* at p. 14-15.

88.    Out of the over 6.70 million votes cast for the Presidential election on November 3, 2020 in Pennsylvania, over 2.5 million of those votes were cast by mail-in or absentee ballot.

89.    Despite the unprecedented number of votes cast by absentee and mail-in ballots, Defendants failed to take adequate measures to ensure that the provisions of the Election Code enacted to protect the validity of absentee or mail-in ballots, including without limitation Act 77, were followed. This is crucial because the casting of votes in violation of the Election Code's mandatory provisions renders them void. *Absentee Ballots of Nov. 4, 2003 Gen. Election,* 843 A.2d at 1234.

## V.    **The Department of State's "Guidance" Memos Published Ahead of the General Election**.

### A.    *August 19, 2020 Guidance On Inner Secrecy Envelopes.*

90.    On the same day its guidance on the use of unmanned drop boxes and other ballot-collection sites was disseminated, the Pennsylvania Department of State, with the knowledge, approval, and/or consent of Secretary Boockvar,

published and disseminated to all the County Election Boards another guidance titled "Pennsylvania Guidance for Missing Official Ballot Envelopes ('Naked Ballots')." A true and correct copy of the August 19, 2020 Naked Ballots guidance was available at the Pennsylvania Department of State's web site at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS _NakedBallot_Guidance_1.0.pdf.

91.     In her Naked Ballot Guidance, Secretary Boockvar espoused "the … position that naked ballots should be counted pursuant to the Pennsylvania Election Code, furthering the Right to Vote under the Pennsylvania and United States Constitutions[,]" that "[t]he failure to include the inner envelope ('Secrecy Envelope') does not undermine the integrity of the voting process[,]" and that "no voter should be disenfranchised for failing to place their ballot in the official election ballot envelope before returning it to the county board of election." *Id.*

92.     On September 17, 2020, the Pennsylvania Supreme Court rejected the Secretary's position and ruled that "the secrecy provision language in Election Code Section 3150.16(a) is mandatory and the mail-in elector's failure to comply with such requisite by enclosing the ballot in the secrecy envelope renders the ballot invalid." *Pennsylvania Democratic Party*, 2020 Pa. LEXIS 4872 at *72.

93.     Following the Pennsylvania Supreme Court's September 17, 2020 decision, Secretary Boockvar has removed the August 19, 2020 Naked Ballot

guidance from the Pennsylvania Department of State's website.  However, she has not issued any guidance advising all 67 County Election Boards that they must *not* count non-compliant absentee or mail-in ballots, including, without limitation, those that lack an inner secrecy envelope, contain on that envelope any text, mark, or symbol which reveals the elector's identity, political affiliation, or candidate preference, do not include on the outside envelope a completed declaration that is dated and signed by the elector, and/or are delivered in-person by third-parties for non-disabled voters.

### B. *Guidance On Approving Absentee and Mail-In Ballot Applications and Canvassing Absentee and Mail-In Ballots.*

94.     On September 11, 2020, the Pennsylvania Department of State, with the knowledge, approval, and/or consent of Secretary Boockvar, published and disseminated to all the County Election Boards a guidance titled "GUIDANCE CONCERNING EXAMINATION OF ABSENTEE AND MAIL-IN BALLOT RETURN ENVELOPES."  A true and correct copy of the September 11, 2020 Guidance is available at the Pennsylvania Department of State's web site at https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/Examination%20of%20Absentee%20and%20Mail-In%20Ballot%20Return%20Envelopes.pdf.

95.     Under the "Background" section of the September 11, 2020 Guidance, Secretary Boockvar states that "[b]efore sending [an absentee or mail-in] ballot to

the applicant, the county board of elections confirms the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained in the voter record[,]" that "[i]f the county is satisfied that the applicant is qualified, the application must be approved[,]" and that "[t]his approval shall be final and binding, except that challenges may be made only on the grounds that the applicant was not a qualified voter . . . ."

96.     Yet, the Election Code mandates that for non-disabled and non-military voters, all applications for an absentee or mail-in ballot "shall be signed by the applicant."  25 P.S. §§ 3146.2(d) & 3150.12(c).

97.     Moreover, because of the importance of the applicant's signature and the use of the word "shall," Pennsylvania courts have consistently upheld challenges to absentee ballots that have been cast by voters who did not sign their absentee ballot applications.  *See, e.g., Opening of Ballot Box of the First Precinct of Bentleyville,* 598 A.2d 1341, 1343 (Pa. Commw. Ct. 1991).

98.     Except for first-time voters, the only basis under the Election Code for the identification of any voter, whether voting in-person or by absentee or mail-ballot, is by confirmation of the presence of the voter's signature.

99.     Before one can cast a regular ballot at a polling place on Election Day, that voter is subject to the following signature comparison and challenge process:

(1) All electors, including any elector that shows proof of identification pursuant to subsection (a), shall subsequently sign a voter's certificate in blue, black or blue-black ink with a fountain pen or ball point pen, and, unless he is a State or Federal employee [sic] who has registered under any registration act without declaring his residence by street and number, he shall insert his address therein, and hand the same to the election officer in charge of the district register.

(2) Such election officer shall thereupon announce the elector's name so that it may be heard by all members of the election board and by all watchers present in the polling place and ***shall compare the elector's signature on his voter's certificate with his signature in the district register. If, upon such comparison, the signature upon the voter's certificate appears to be genuine, the elector who has signed the certificate shall, if otherwise qualified, be permitted to vote:*** Provided, That if the signature on the voter's certificate, as compared with the signature as recorded in the district register, shall not be deemed authentic by any of the election officers, such elector shall not be denied the right to vote for that reason, but shall be considered challenged as to identity and required to make the affidavit and produce the evidence as provided in subsection (d) of this section.

25 P.S. § 3050(a.3)(1) – (2)(2020) (emphasis added).

100. Similarly, under Election Code Section 1308(g)(3)-(7), "[w]hen the county board meets to pre-canvass or canvass absentee ballots and mail-in ballots . . ., the board shall examine the declaration on the envelope of each ballot not set aside under subsection (d) and shall compare the information thereon with that contained in the 'Registered Absentee and Mail-in Voters File,' the absentee voters' list and/or the 'Military Veterans and Emergency Civilians Absentee Voters File,'

whichever is applicable. If the county board has verified the proof of identification as required under this act and is satisfied that the declaration is sufficient and the information contained in the 'Registered Absentee and Mail-in Voters File,' the absentee voters' list and/or the 'Military Veterans and Emergency Civilians Absentee Voters File' verifies his right to vote, the county board shall provide a list of the names of electors whose absentee ballots or mail-in ballots are to be pre-canvassed or canvassed." 25 P.S. § 3146.8(g)(3). Further, only those ballots "that have been verified under paragraph (3) shall be counted . . . ." 25 P.S. § 3146.8(g)(4). If a ballot is not counted because of a lack of a signature, it is considered "challenged" and subject to the notice and hearing provisions under Section 1308(g)(5)-(7). 25 P.S. § 3146.8(g)(5)-(7).

101. The Pennsylvania Election Code authorizes the County Election Boards to set aside and challenge returned absentee or mail-in ballots that do not contain the signatures of voters and for which the County Election Boards did not verify the signature of the electors before the mail-in ballot was separated from the outer envelope.

102. County Elections Boards failure and refusal to set aside and challenge returned absentee or mail-in ballots that do not contain the signatures of voters in the November 3, 2020 General Election has resulted in the arbitrary, disparate, and

unequal treatment between those who vote in-person at the polling place versus those who vote by absentee or mail-in ballot.

103.   In addition, the disparate treatment between mail-in and in person voters as to the verification of the voter's identity through signature verification has created an environment in Pennsylvania that encourages ballot fraud or tampering and prevents the Commonwealth and the County Election Boards from ensuring that the results of the November 3, 2020 General Election are free, fair, and transparent.

104.   As a result of the manner in which the County Election Boards were directed to conduct the election including the canvassing of mail-in ballots, the validity of Pennsylvanians' votes have been unconstitutionally diluted through Defendants' arbitrary, disparate, and/or uneven approval of all absentee and mail-in ballots without performing the requisite verification of the voter's signature, resulting in the treatment of by-mail and in-person voters across the state in an unequal fashion in violation of state and federal constitutional standards.

105.   The Department of State issued an additional deficient guidance related to the issue of signature verification on September 28, 2020 related to the issue of signature verification titled "GUIDANCE CONCERNING CIVILIAN ABSENTEE AND MAIL-IN BALLOT PROCEDURES."   (App. Ex. 25.)[1]   This most recent

---

[1]   Judicial notice of the Secretary's September 28, 2020 guidance memo is appropriate. *See Miller v. City of Bradford*, No. 17-268 Erie, 2019 U.S. Dist. LEXIS

guidance provides additional information about the acceptance and scrutiny of mail-in and absentee ballots for the General Election and not only fails to remedy but doubles down on the illegal September 11 guidance forbidding signature verification as a reason to set aside both mail-in ballots and ballot applications as well. In this September 28 guidance memo, the Secretary proclaims that "[t]he Election Code does not permit county election officials to reject applications or voted ballots based solely on signature analysis." (*Id.*, at p. 9.) She then goes even further and pronounces that "[n]o challenges may be made to mail-in and absentee ballots at any time based on signature analysis." (*Id.*)

106. Secretary Boockvar continued to issue guidance to the counties in direct contradiction of the Election Code up until the of the eve of the election. On November 1, 2020, Secretary Boockvar, with no authority to do so, extended the Election Code's mandatory deadline for voters to resolve proof of identification issues with their mail-in and absentee ballots.[2]

---

134248, at *7 n.4 (W.D. Pa. Aug. 9, 2019)  ("The Court takes judicial notice of these provisions, as they constitute matters of public record.").

[2]     The Trump Campaign filed a Petition for Review challenging the validity of the November 1, 2020 guidance which is currently pending before the Commonwealth Court of Pennsylvania in *Donald J. Trump for President, Inc., et al. v. Boockvar*, Case No. 602 M.D. 2020 (Pa. Commw. Ct. 2020).

## VI. Defendants' Inconsistent and Uneven Administration of the 2020 General Election Violated the Election Code and Infringed Plaintiffs' Constitutional Rights to Free, Fair and Transparent Public Elections.

107. As of the filing of this complaint, 6,743,874 million votes were cast for President in Pennsylvania, with approximately 2,635,090 ballots returned and cast by absentee or mail-in ballots (approximately 3.1 million absentee and mail-in ballots were approved and sent to electors for the General Election).[3]

108. In the named County Elections Boards, the following are the number of canvassed and tabulated absentee and mail-in ballots:

      a. Allegheny:  335,573

      b. Centre:      32,514

      c. Chester:    148,465

      d. Delaware:  127,751

      e. Montgomery:   238,122

      f. Northampton:   71,893

      g. Philadelphia:   345,197

109. Despite the fact that well over a third of the votes were cast by mail, Secretary Boockvar and the Pennsylvania Department of State did not undertake any meaningful effort to prevent the casting of illegal or unreliable absentee or mail-in

---

[3] References contained herein to the November 3, 2020 election results in Pennsylvania are derived from https://www.electionreturns.pa.gov/.

ballots and/or to ensure the application of uniform standards across the County Election Boards to prevent the casting of such illegal or unreliable ballots. Rather, Secretary Boockvar has exercised every opportunity to do quite the opposite, thereby sacrificing the right to vote by those who legally cast their ballots (whether in-person or through properly cast absentee or mail-ballots) through the unlawful dilution or debasement of the weight of their vote.

### A.  *The Prevalence of Unsolicited Mail-In Votes*

110.  Throughout the Commonwealth, including in the named County Election Boards, numerous voters reported receiving mail-in ballots, even though they did not apply for them.

111.  Worse, numerous voters reported have received multiple mail-in ballots, in some documented cases as many as four or five ballots, again, even though they had not themselves submitted applications for mail-in ballots.

112.  Moreover, at the polling locations on Election Day, voters were informed that they must vote provisionally because they had applied for mail-in votes, even though those voters report that they neither applied for nor received mail-in ballots.  Poll watchers throughout the state observed similar incidents.

113.  Voters reported being denied the right to vote in person because they had been told that they had already voted by mail-in or absentee ballots, even though they appeared at their polling place with their un-voted mail-in or absentee ballots

in hand. In many cases, those voters were required to vote provisionally in-person at the polls.

114. Plaintiffs also have reports of voters who were visited at home in the weeks before the election by individuals soliciting their participation in mail-in voting. Those voters report that even though they never applied for mail-in ballots, they did receive mail in ballots, and when they attempted to vote in person were told that they had voted by mail. In at least two documented cases, even though poll workers told the voters that they were recorded as having already voted by mail, they were allowed to vote in person by live ballot on the voting machines.

115. Other voters reported having received unsolicited and un-applied for mail-in ballots, but when they went to their in-person polling place, the poll books reflected that no mail-in ballot had been sent.

116. A witness, who was required to vote provisionally because the voter was identified as having requested a mail-in ballot even though the voter had not done so, contacted the Allegheny County elections office to complain about having to submit a provisional ballot and was advised hat a larger number of Republican voters experienced the same issue.

**B.    *The Misadministration of the Election by the County Election Boards and Poll Workers.***

117. In Montgomery County, a poll watcher observed a Judge of Elections pull aside voters who were not listed in the poll books as registered to vote. The poll

- 48 -

watcher reports hearing the Judge of Elections tell those voters that they needed to return later and report their name as another name that was in the poll book.

118.   Across numerous counties, poll watchers observed poll workers mishandling spoiled mail-in or absentee ballots brought to the polling place by voters who intended to vote in-person.   Rather than disposing of the spoiled ballots securely, the spoiled ballots were instead placed in unsecured boxes or in stacks of paper despite the protests of voters or poll watchers.   For instance in Centre County, a poll worker observed mail-in ballots being improperly spoiled.   The workers placed the mail-in ballots returned to the polling place by in-person voters in a bag without writing "void" on them or otherwise destroying them.

119.   In at least one case, a voter brought the voter's own secrecy envelope to the polling place after realizing that the voter had failed to include it when returning the mail-in ballot.   The voter was not permitted to submit a provisional ballot in accordance with the statute.

120.   In Allegheny County, Plaintiffs have received reports that poll workers were observing voters vote provisionally in such a way that the poll worker could determine which candidates the elector voted on their provisional ballot.

121.   In Centre County, a poll worker reported that persons appearing at the polls and admitting that they were New Jersey voters, rather than Pennsylvania voters, were nonetheless provided provisional ballots on which to vote.

122.   In Chester County, a representative watcher present during the pre-canvass observed the elections workers counting a reported 15% of mail-in ballots that were sliced or otherwise damaged during the mechanized ballot opening process.  Some of those ballots were cut in half and workers had a hard time identifying how to address and/or to rectify the issue.

123.   In Chester County, an observer witnessed a flawed resolution process for over-voted and under-voted ballots.  The observer witnessed one election worker responsible for resolving over-voted and under-voted ballots by subjectively determining who the elector intended to choose on the empty votes.  The observer reports that in numerous instances the election worker altered the over-voted ballot by changing votes that had been marked for Donald J. Trump to another candidate.

124.   In Delaware County, an observer at the county office observed issues related to mail-in voted ballots being scanned through machines four or five times before finally being counted.  When a voting machine warehouse supervisor arrived to address whether the machine was malfunctioning, the supervisor instead reported that the bar codes on the ballots must be "defective."

125.   In Delaware County, poll watchers observed in at least seven (7) different polling locations numerous instances of voters who were told they had registered to vote by mail, but were given regular ballots, rather than provisional ballots, *and were not made to sign in the registration book*.

126.   Mail carriers have noted significant anomalies related to the delivery of mail-in ballots.  A mail carrier for the USPS in Erie County has noted that during the course of the General Election mail-in ballot delivery period there were multiple instances in which dozens of mail-in ballots were addressed to single addresses, each ballot being in a different name.  Based on the carrier's experience delivering mail to those addresses, the carrier is aware that the people whose names were on the ballots are not names of people who live at those addresses.   In addition, ballots were mailed to vacant homes, vacation homes, empty lots, and to addresses that do not exist.

127.   It has been reported by Project Veritas, in a release on November 5, 2020, that carriers were told to collect, separate and deliver all mail-in ballots directly to the supervisor.  In addition, Plaintiffs have information that the purpose of that process was for the supervisor to hand stamp the mail-in ballots.

**C.    *Uneven Treatment of Absentee and Mail-Ballots That Fail to Include a Secrecy Envelope or Otherwise Comply with the Mandates of the Election Code.***

128.   The statutory provisions in the Election Code and Act 77 involving absentee and mail-in ballots do not repose in either Secretary Boockvar or the County Election Boards the free-ranging power to attempt to ascertain voter intent or rule out fraud when a vote has been cast in violation of its explicit mandates. While voter intention may be paramount in the realm of the fundamental right to

vote, ascertaining that intent necessarily assumes a properly cast ballot. Otherwise, a properly cast ballot will be diluted by one which has been improperly cast.

129.   By enacting the inner secrecy envelope proscription and the other mandates for the casting of a "reliable vote" via an absentee or mail-in ballot, the General Assembly weighed the factors bearing on that question, and it did not vest, and has not vested, any discretion or rule-making authority in Secretary Boockvar and/or the County Election Boards to reweigh those factors in determining whether or not to count a particular absentee or mail-in ballot should be counted. *Pennsylvania Democratic Party*, 2020 Pa. LEXIS 4872 at *73.

130.   Pennsylvania prominently included secrecy envelope instructions in its mail-in ballot and absentee ballot mailings, and in the months and weeks leading up to the election, repeated those instructions on its website and on its social media postings. *See, e.g.*, https://www.votespa.com/Voting-in-PA/Pages/Mail-and-Absentee-Ballot.aspx

131.   Local officials also engaged in media campaigns to encourage voters to remember not to send their ballots in "naked," *i.e.* without the secrecy envelope. The "naked ballot" ad campaign even included several local celebrities and election officials appearing on social media topless to remind the public about the inner envelope.

132.    Certain of the County Election Boards proceeded to pre-canvass mail-in ballot envelopes prior to Election Day on November 3, 2020, and for those ballots that lacked an inner secrecy envelope, the voters were notified prior to Election Day in order to cure the invalidity by voting provisionally on Election Day at their polling location.

133.    Philadelphia County, however, had other plans. As reflected in a document titled "Cancelled Ballot Notification Information," Philadelphia County sent a "notification" to voters whose "ballot was cancelled" because, among other reasons, the ballot "was returned without a signature on the declaration envelope" or "was determined to lack a secrecy envelope." Philadelphia County allowed those voters to cure this defect by casting a "provisional ballot on Election Day" or requesting "a replacement ballot at a satellite election office." Philadelphia City Comm'rs, *Cancelled Ballot Notification Information*, bit.ly/3la08LR (last visited Nov. 7, 2020).

134.    To figure out which voters should be notified, Philadelphia County had to inspect the mail-in ballots before election day—in plain violation of state law. *See* 25 P.S. §3146.8. This required substantial manipulation: Officials in Philadelphia County were determining whether ballots were missing an inner secrecy envelope, for example, which cannot be determined without manipulating the outer envelope—feeling the envelope, holding the envelope up to the light, weighing the

envelope, by evaluating the weight of the envelope through the sorting and/or scanning equipment, etc. This kind of tampering squarely undermines the legislature's "mandate" that mail-in voting cannot compromise "fraud prevention" or "ballot secrecy." *Pa. Democratic Party*, 2020 Pa. LEXIS 4872, at *26.

135. Secretary Boockvar encouraged this unlawful behavior. In an November 2, 2020 email sent at approximately 8:30 p.m. on the eve of the November 3, 2020 General Election, her office suggested that counties "should provide information to party and candidate representatives during the pre-canvass that identifies the voters whose ballots have been rejected" so that those voters "may be issued a provisional ballot."

136. While counties like the Defendant County Boards of Elections permitted voters to cast either replacement absentee and mail-in ballots before Election Day or provisional ballots on Election Day in order to cure their defective mail-in ballots, many more counties are not. Lancaster, York, Westmoreland and Berks Counties, for example, did not contact voters who submitted defective ballots or give them an opportunity to cure. They simply followed the law and treated these ballots as invalid and refused to count them.

137. Because the counties that followed state law and did not provide a cure process are heavily Republican (and counties that violated state law and did provide a cure process are heavily Democratic), Defendants' conduct harmed the Trump

Campaign.  It deprived the President of lawful votes and awarded his opponent with unlawful votes.

  **D.** ***Uneven Treatment of Watchers and Representatives at the County Election Boards' Canvassing of Ballots.***

  138. In every instance where an absentee or mail-in ballot is opened and canvassed by a county election board, poll watchers and canvass representatives are legally permitted to be present.  *See* Election Code Section 1308(b), 25 P.S. § 3146.8(b) ("Watchers shall be permitted to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded."); *see also* 25 P.S. § 3146.8(g)(1.1) and (g)(2).

  139. Poll watchers and canvass representatives serve the important purpose of assuring voters, candidates, political parties, and political bodies, who may question the fairness of the election process, that the same is conducted in compliance with the law, and is done in a correct manner which protects the integrity and validity of the vote and ensures that all elections are free, open, fair, and honest.

  140. Defendants have not allowed watchers and representatives to be present when the required declarations on envelopes containing official absentee and mail-in ballots are reviewed for sufficiency, when the ballot envelopes are opened, and when such ballots are counted and recorded.  Instead, watchers were kept by security personnel and a metal barricade from the area where the review, opening, and

counting were taking place. Consequently, it was physically impossible to view the envelopes or ballots.

141. In Centre County, the central pre-canvassing location was a large ballroom. The set-up was such that the poll watchers did not have meaningful access to observe the canvassing and tabulation process of mail-in and absentee ballots, and in fact, the poll watchers and observers who were present could not actually observe the ballots such that they could confirm or object to the validity of the ballots.

142. In Philadelphia County, poll watchers and canvass representatives were denied access altogether in some instances.

143. In Delaware County, observers were denied access to a back room counting area. After a court-ordered injunction, the poll watchers and canvass representatives were finally allowed in the back room counting area on November 5, 2020, to observe, but for only five minutes every two hours. During the allowed observation time in the back room counting area, the observers witnessed tens of thousands of paper ballots.

144. Other Pennsylvania Counties provided watchers with appropriate access to view the ballots as required by Commonwealth law. However, Defendants intentionally denied the Trump Campaign access to unobstructed observation and ensure opacity, denying Plaintiffs and the residents of Pennsylvania the equal protection of the law.

145.   With particular regard to the Philadelphia County Board of Elections, the Board would not permit the Trump Campaign's watchers to be within 6 feet of "all aspects" of the pre-canvassing process in direct contravention of Commonwealth Court Judge Christine Fizzano Cannon's November 5, 2020 Order "requiring that all candidates, watchers, or candidate representatives be permitted to be present for the canvassing process pursuant to 25 P.S. § 2650 and/or 25 P.S. § 3146.8 and be permitted to observe all aspects of the canvassing process within 6 feet." *See In Re: Canvassing Observation*, 11/05/2020 Order, 1094 C.D. 2020 (Pa. Commw. Ct. 2020).

146.   The Order required the Philadelphia Board of Elections to comply and allow watcher to be within 6 feet by 10:30 a.m., but at 10:35 a.m. the workers were denied entry.   Instead, the Board sent all of the workers on a break (previously workers received breaks on a rolling basis), and the Commissioners met offsite.   Two hours later the workers returned, and the watchers were allowed to be within 6 feet, but within 6 feet of the first row of counters only.   Within a short period of time, the workers began working at other rows that were well-beyond 6-feet, rendering it impossible for watchers to observe the rows that were more than 25-feet beyond the area where watchers were allowed. Moreover, during the course of the entire period, the workers repeatedly removed ballots, sometimes over 100 feet away, to do

something with them, which the Trump Campaign's watchers were unable to observe.

147. Other Counties in the Commonwealth afford watchers the right to be present – that is, to be able to meaningfully view and even read – when official absentee and mail-in ballots are reviewed, being opened, counted, or recorded as required by 25 P.S. § 3146.8(b).

148. It is estimated that 680,770 ballots were processed by the Allegheny and Philadelphia County Boards of Elections when no observation was allowed.

149. A shocking number of mail-in ballots have inexplicably appeared in counties since the November 4 ballot reports. For instance, in Delaware County, the county's Wednesday, November 4 report indicated that Delaware County reported it has received about 113,000 mail-in ballots and counted approximately 93,000 voted ballots. On the next day, November 5, the Secretary of the Commonwealth's 4:30 report reflected that Delaware County had received about 114,000 ballots. Several hours later, the Delaware County solicitor reported to an observer that the County had received about 126,000 mail-in ballots and counted about 122,000. As of Sunday, November 8, 2020, the Department of State's website reflects that the County has counted about 127,000 mail-in ballots. Plaintiffs have received no explanation for where the additional 14,000 voted ballots came from, when they arrived, or why they are included in the current count.

150.    Defendants have also violated the Equal Protection Clause because as a result of their desire to ensure opacity, watchers in Allegheny and Philadelphia County do not have the same right as watchers in other Pennsylvania Counties to be present as a matter of law when envelopes containing official absentee and mail-in ballots are reviewed and opened and when such ballots are counted and recorded. Also, this means voters are at an unequal risk of having their legal votes diluted by ballots that otherwise should be disqualified.  There is no legitimate state interest justifying this disparity.

### E.    *Mail-in Ballots Received After 8 p.m. On Election Day*

151.    In Delaware County, an observer in the county office where mail-in ballots were counted was told by the Delaware County Solicitor that ballots received on November 4, 2020, were not separated from ballots received on Election Day, and the County refused to answer any additional questions.

152.    Also in Delaware County, an observer in the county office where mail-in ballots were counted witnessed a delivery on November 5, 2020, of v-cards or USB drives in a plastic bag with no seal and no accompanying paper ballots.  The v-cards or USB drives were taken to the back counting room, where observer access was limited.  There was no opportunity to observe what happened to the v-cards or USB drives in the back counting room.

## VII. Need for Emergency Judicial Intervention.

153.    The Equal Protection Clause mandates that the Commonwealth provide and use in every County the same statewide uniform standards and regulations when conducting statewide or multi-county elections involving federal candidates, including without limitation the standards and regulations providing for the casting and counting of votes. *Pierce*, 324 F. Supp. 2d at 698-99.  In other words, the Equal Protection Clause requires every county in the Commonwealth to enforce and apply the same standards and procedures for an election, and it does not allow a select few counties to either decline to enforce or employ those standards or develop their own contradicting standards that benefit their voters to the detriment of voters outside their counties. *Id.*

154.    For statewide elections involving federal candidates, Defendants' allowance, by act or omission, of the collection and counting of in-person, provisional, and absentee and mail-in ballots in a manner and at locations that are contrary to the Election Code's mandatory provisions (as set forth above) constitutes legislative action by the Executive Branch in violation of the Elections and Electors Clauses of the United States Constitution.

155.    Finally, the Defendants' lack of statewide standards and use of a patchwork of ad-hoc rules that vary from county to county in a statewide election

- 60 -

involving federal and state-wide candidates violates the Equal Protection clause of the Fourteenth Amendment. *Pierce*, 324 F. Supp. 2d at 698-99.

156.   Because the standards in the conduct of statewide elections involving federal and state candidates, including without limitation the casting and counting of votes, are to be uniform, Plaintiffs have a vested interest in ensuring that the electoral process is properly administered in every election district. However, the administration of the November 3, 2020 General Election across the counties of the Commonwealth, in particular in the named County Election Boards, was far from uniform and did not follow the strictures of the Election Code and the United States Constitution.

157.   In light of the Defendants' clear violations of United States Constitution through their illegal implementation of Pennsylvania's Election Code, as set forth above, Plaintiffs seek an order, declaration and/or injunction directing the Defendants to verify and confirm that all mail-in ballots tabulated in the 2020 election results in Commonwealth of Pennsylvania were validly cast in compliance with state law.

158.   The current voting regime as employed by Defendants has resulted in the denial of free and fair elections and other fundamental rights during the 2020 Pennsylvania General Election.

# COUNT I

**Fourteenth Amendments**
**U.S. Const. Art. I § 4, cl. 1; Art. II, § 1, cl. 2; Amend. XIV, 42 U.S.C. § 1983**
**Denial of Due Process On The Right to Vote**
**Invalid Enactment of Regulations Affecting Observation and**
**Monitoring of the Election**

159. Plaintiffs refer to and incorporate by reference each of the prior paragraphs of this Complaint as though the same were repeated at length herein.

160. The right of qualified citizens to vote in a state election involving federal candidates is recognized as a fundamental right under the Fourteenth Amendment of the United States Constitution. *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 665 (1966). *See also Reynolds*, 377 U.S. at 554 (The Fourteenth Amendment protects the "the right of all qualified citizens to vote, in state as well as in federal elections."). Indeed, ever since *Slaughter-House Cases*, 83 U.S. 36 (1873), the United States Supreme Court has held that the Privileges or Immunities Clause of the Fourteenth Amendment protects certain rights of federal citizenship from state interference, including the right of citizens to directly elect members of Congress. *See Twining v. New Jersey*, 211 U.S. 78, 97 (1908) (citing *Ex parte Yarbrough*, 110 U.S. 651, 663-64 (1884)). *See also Oregon v. Mitchell*, 400 U.S. 112, 148-49 (1970) (Douglas, J., concurring) (collecting cases).

161.   The fundamental right to vote protected by the Fourteenth Amendment is cherished in our nation because it "is preservative of other basic civil and political rights." *Reynolds*, 377 U.S. at 562.

162.   Voters have a "right to cast a ballot in an election free from the taint of intimidation and fraud," *Burson v. Freeman*, 504 U.S. 191, 211 (1992), and "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (*per curiam*).

163.   "Obviously included within the right to [vote], secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted" if they are validly cast. *United States v. Classic*, 313 U.S. 299, 315 (1941).   "[T]he right to have the vote counted" means counted "at full value without dilution or discount." *Reynolds*, 377 U.S. at 555, n.29 (quoting *South v. Peters*, 339 U.S. 276, 279 (1950) (Douglas, J., dissenting)).

164.   "Every voter in a federal . . . election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." *Anderson v. United States*, 417 U.S. 211, 227 (1974); *see also Baker v. Carr*, 369 U.S. 186, 208 (1962).

165. Invalid or fraudulent votes "debase[]" and "dilute" the weight of each validly cast vote. *See Anderson*, 417 U.S. at 227.

166. The right to an honest [count] is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been injured in the free exercise of a right or privilege secured to him by the laws and Constitution of the United States." *Anderson*, 417 U.S. at 226 (quoting *Prichard v. United States*, 181 F.2d 326, 331 (6th Cir.), *aff'd due to absence of quorum*, 339 U.S. 974 (1950)).

167. Practices that promote the casting of illegal or unreliable ballots, or fail to contain basic minimum guarantees against such conduct, can violate the Fourteenth Amendment by leading to the dilution of validly cast ballots. *See Reynolds*, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.").

168. The Fourteenth Amendment Due Process Clause protects the right to vote from conduct by state officials which seriously undermines the fundamental fairness of the electoral process. *Marks v. Stinson*, 19 F.3d 873, 889 (3d Cir. 1994); *Griffin v. Burns*, 570 F.2d 1065, 1077-78 (1st Cir. 1978).

169. Separate from the Equal Protection Clause, the Fourteenth Amendment's due process clause protects the fundamental right to vote against "the

disenfranchisement of a state electorate." *Duncan v. Poythress*, 657 F.2d 691, 702 (5th Cir. 1981).

170. "When an election process 'reaches the point of patent and fundamental unfairness,' there is a due process violation." *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1183-84 (11th Cir. 2008) (quoting *Roe v. Alabama,* 43 F.3d 574, 580 (11th Cir.1995) (citing *Curry v. Baker,* 802 F.2d 1302, 1315 (11th Cir.1986))). *See also Griffin*, 570 F.2d at 1077 ("If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order."); *Marks v. Stinson,* 19 F.3d 873, 889 (3d Cir. 1994) (enjoining winning state senate candidate from exercising official authority where absentee ballots were obtained and cast illegally).

171. Part of courts' justification for such a ruling is the Supreme Court's recognition that the right to vote and to free and fair elections is one that is preservative of other basic civil and political rights. *See Black,* 209 F.Supp.2d at 900 (quoting *Reynolds,* 377 U.S. at 561-62 ("since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.")); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 370

- 65 -

(1886) ("the political franchise of voting … is regarded as a fundamental political right, because [*sic*] preservative of all rights.").

172. "[T]he right to vote, the right to have one's vote counted, and the right to have ones vote given equal weight are basic and fundamental constitutional rights incorporated in the due process clause of the Fourteenth Amendment to the Constitution of the United States." *Black,* 209 F. Supp. 2d at 900 (a state law that allows local election officials to impose different voting schemes upon some portions of the electorate and not others violates due process).

173. "Just as the equal protection clause of the Fourteenth Amendment prohibits state officials from improperly diluting the right to vote, the due process clause of the Fourteenth amendment forbids state officials from unlawfully eliminating that fundamental right." *Duncan,* 657 F.2d at 704.

174. "Having once granted the right to vote on equal terms, [Defendants] may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05.

175. In statewide and federal elections conducted in the Commonwealth of Pennsylvania, including without limitation the November 3, 2020 General Election, all candidates, political parties, and voters, including without limitation Plaintiffs, have a vested interest in being present and having meaningful access to observe and monitor

the electoral process to ensure that it is properly administered in every election district and otherwise free, fair, and transparent.

176. Moreover, through its provisions involving watchers and representatives, the Pennsylvania Election Code ensures that all candidates and political parties, including without limitation Plaintiff, the Trump Campaign, shall be "present" and have meaningful access to observe and monitor the electoral process to ensure that it is properly administered in every election district and otherwise free, fair, and transparent.

177. Defendants have a duty to guard against deprivation of the right to vote through the dilution of validly cast ballots by ballot fraud or election tampering.

178. Rather than heeding these mandates and duties, Defendants arbitrarily and capriciously denied the Trump Campaign meaningful access to observe and monitor the electoral process by: (a) mandating that representatives at the pre-canvass and canvass of all absentee and mail-ballots be either Pennsylvania barred attorneys or qualified registered electors of the county in which they sought to observe and monitor; and (b) not allowing watchers and representatives to visibly see and review all envelopes containing official absentee and mail-in ballots either at the time or before they were opened and/or when such ballots were counted and recorded. Instead, Defendants refused to credential all of the Trump Campaign's submitted watchers and representatives and/or kept Trump Campaign's watchers

and representatives by security and metal barricades from the areas where the inspection, opening, and counting of absentee and mail-in ballots were taking place. Consequently, Defendants created a system whereby it was physically impossible for the candidates and political parties to view the ballots and verify that illegally cast ballots were not opened and counted.

179.   Defendants intentionally and/or arbitrarily and capriciously denied Plaintiffs access to and/or obstructed actual observation and monitoring of the absentee and mail-in ballots being pre-canvassed and canvassed by Defendants.

180.   Defendants have acted and will continue to act under color of state law to violate the right to vote and due process as secured by the Fourteenth Amendment to the United States Constitution.

181.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless the injunctive relief requested herein is granted.

## COUNT II

**Fourteenth Amendment**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983**
**Denial of Equal Protection**
**Invalid Enactment of Regulations Affecting Observation and**
**Monitoring of the Election**

182.   Plaintiffs refer to and incorporate by reference each of the prior paragraphs of this Complaint as though the same were repeated at length herein.

183.   The equal enforcement of election laws is necessary to preserve our most basic and fundamental rights.

184.   The requirement of equal protection is particularly stringently enforced as to laws that affect the exercise of fundamental rights, including the right to vote.

185.   In statewide and federal elections conducted in the Commonwealth of Pennsylvania, including without limitation the November 3, 2020 General Election, all candidates, political parties, and voters, including without limitation Plaintiffs, have a vested interest in being present and having meaningful access to observe and monitor the electoral process in each County to ensure that it is properly administered in every election district and otherwise free, fair, and transparent.

186.   Moreover, through its provisions involving watchers and representatives, the Pennsylvania Election Code ensures that all candidates and political parties in each County, including the Trump Campaign, have meaningful access to observe and monitor the electoral process to ensure that it is properly administered in every election district and otherwise free, fair, and transparent. *See, e.g.,* 25 P.S. §§ 3146.8(b) & (g)(1.1)-(2).

187.   Defendants have a duty to treat the voting citizens in each County in the same manner as the citizens in other Counties in Pennsylvania.

188.   Rather than heeding these mandates and duties, Defendants denied the Trump Campaign equal rights to meaningful access to observe and monitor the

electoral process enjoyed by citizens in other Pennsylvania Counties by: (a) mandating that representatives at the pre-canvass and canvass of all absentee and mail-ballots be either Pennsylvania barred attorneys or qualified registered electors of the county in which they sought to observe and monitor; and (b) not allowing watchers and representatives to visibly see and review all envelopes containing official absentee and mail-in ballots either at or before they were opened and/or when such ballots were counted and recorded. Instead, Defendants refused to credential all of the Trump Campaign's submitted watchers and representatives and/or kept Trump Campaign's watchers and representatives by security and metal barricades from the areas where the inspection, opening, and counting of absentee and mail-in ballots were taking place. Consequently, Defendants created a system whereby it was physically impossible for the candidates and political parties to view the ballots and verify that illegally cast ballots were not opened and counted.

189. Other Pennsylvania county boards of elections provided watchers and representatives of candidates and political parties, including without limitation watchers and representatives of the Trump Campaign, with appropriate access to view the absentee and mail-in ballots being pre-canvassed and canvassed by those county election boards and without restricting representatives by any county residency or Pennsylvania bar licensure requirements.

190.  Defendants intentionally and/or arbitrarily and capriciously denied Plaintiffs access to and/or obstructed actual observation and monitoring of the absentee and mail-in ballots being pre-canvassed and canvassed by Defendants, depriving them of the equal protection of those state laws enjoyed by citizens in other Counties.

191.  Defendants have acted and will continue to act under color of state law to violate Plaintiffs' right to be present and have actual observation and access to the electoral process as secured by the Equal Protection Clause of the United States Constitution.

192.  Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless the injunctive relief requested herein is granted.

## COUNT III

### U.S. Const. Art. I, §4, cl. 1 & Art. II, § 1, cl. 2
### Violation of the Electors & Elections Clauses

193.  Plaintiffs incorporate each of the prior allegations in this complaint.

194.  The Electors Clause states that "[e]ach State shall appoint, in such Manner as *the Legislature* thereof may direct, a Number of Electors" for President. U.S. Const. art. II, § 1, cl. 2 (emphasis added).  Likewise, the Elections Clause of the U.S. Constitution states that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by *the Legislature* thereof." U.S. Const. art. I, § 4, cl. 1 (emphasis added).

- 71 -

195.   The Legislature is "'the representative body which ma[kes] the laws of the people.'" *Smiley*, 285 U.S. at 365.

196.   Regulations of congressional and presidential elections, thus, "must be in accordance with the method which the state has prescribed for legislative enactments." *Id.* at 367; *see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2668 (2015).

197.   In Pennsylvania, "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representative." Pa. Const. Art. II, § 1.  *See also Winston*, 91 A. at 522; *Patterson*, 60 Pa. at 75.

198.   Defendants, as a member of the Governor's Executive Board and county boards of elections, are not part of the General Assembly and cannot exercise legislative power.  Rather, Defendants' power is limited to "tak[ing] care that the laws be faithfully executed." Pa. Const. Art. IV, § 2.

199.   Because the United States Constitution reserves for the General Assembly the power to set the time, place, and manner of holding elections for the President and Congress, county boards of elections and state executive officers have no authority to unilaterally exercise that power, much less to hold them in ways that conflict with existing legislation.

200.   Through its provisions involving watchers and representatives, the Pennsylvania Election Code ensures that all candidates and political parties, including without limitation Plaintiff, the Trump Campaign, shall be "present" and have meaningful access to observe and monitor the electoral process to ensure that it is properly administered in every election district and otherwise free, fair, and transparent. *See, e.g.,* 25 P.S. §§ 3146.8(b) & (g)(1.1)-(2).

201.   Defendants are not the legislature, and their unilateral decision to implement rules and procedures that deny Plaintiffs the ability to be "present" and have meaningful access to observe and monitor the electoral process violates the Electors and Elections Clauses of the United States Constitution.

202.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless the injunctive relief requested herein is granted.

## COUNT IV

**Fourteenth Amendment**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983**
**Denial of Equal Protection**
**Disparate Treatment of Absentee/Mail-In Voters Among Different Counties**

203.   Plaintiffs incorporate each of the prior allegations in this Complaint.

204.   According to the Supreme Court, the Fourteenth Amendment of the United States Constitution protects the "the right of all qualified citizens to vote … in federal elections." *Reynolds*, 77 U.S. at 554.  Consequently, state election laws

may not "deny to any person within" the state's "jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1, cl. 4.

205.   The Equal Protection Clause requires States to "'avoid arbitrary and disparate treatment of the members of its electorate.'" *Charfauros v. Bd. of Elections*, 249 F.3d 941, 951 (9th Cir. 2001) (*quoting Bush*, 531 U.S. at 105). That is, each citizen "has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Bloomstein*, 405 U.S. 330, 336 (1972). A qualified voter "is no more nor no less so because he lives in the city or on the farm. This is the clear and strong command of our Constitution's Equal Protection Clause." *Reynolds*, 377 U.S. at 568; *see also Gray v. Sanders*, 372 U.S. 368, 380 (1963) ("The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of [the Supreme Court's] decisions."). "[H]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05.

206.   "The right to vote extends to all phases of the voting process, from being permitted to place one's vote in the ballot box to having that vote actually counted. Thus, the right to vote applies equally to the 'initial allocation of the franchise' as well as 'the manner of its exercise.' Once the right to vote is granted, a state may not draw distinctions between voters that are inconsistent with the

guarantees of the Fourteenth Amendment's equal protection clause." *Pierce,* 324 F. Supp. 2d at 695.

207.   "[T]reating voters differently" thus "violate[s] the Equal Protection Clause" when the disparate treatment is the result of arbitrary, ad hoc processes. *Charfauros*, 249 F.3d at 954. Indeed, a "minimum requirement for non-arbitrary treatment of voters [is] necessary to secure the fundamental right [to vote]." *Bush,* 531 U.S. at 105.

208.   The use of "standardless" procedures can violate the Equal Protection Clause.  *Bush,* 531 U.S. at 103.  "The problem inheres in the absence of specific standards to ensure … equal application" of even otherwise unobjectionable principles.  *Id.* at 106.  Any voting system that involves discretion by decision makers about how or where voters will vote must be "confined by specific rules designed to ensure uniform treatment."  *Id.  See also Thomas v. Independence Twp.,* 463 F.3d 285, 297 (3d Cir. 2006) (Equal Protection Clause prohibits the "selective enforcement" of a law based on an unjustifiable standard); *United States v. Batchelder*, 442 U.S. 114, 125 n.9, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979).

209.   Allowing a patchwork of different rules from county to county, and as between similarly situated absentee and mail-in voters, in a statewide election involving federal and state candidates implicates equal protection concerns. *Pierce,* 324 F. Supp. 2d at 698-99.  *See also Gray*, 372 U.S. at 379-81 (a county unit system

- 75 -

which weights the rural vote more heavily than the urban vote and weights some small rural counties heavier than other larger rural counties violates the Equal Protection Clause and its one-person, one-vote jurisprudence).

210. The equal enforcement of election laws is necessary to preserve our most basic and fundamental rights. Moreover, the requirement of equal treatment is particularly stringently enforced as to laws that affect the exercise of fundamental rights, *see Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015), including the right to vote.

211. Because of Defendants' conduct, voters in some counties have been and being treated differently than voters in other counties—and for no good reason. A voter in any of the counties covered by the Defendant County Elections Boards, who received notice of a defective mail-in ballot and an opportunity to cure it by correcting the ballot or casting a new one before Election Day or by casting a provisional ballot at the polling place on Election Day, has had or may have his vote counted. But voters like Mr. Henry, who received no such opportunity, will not, as their votes were rejected as having been improperly cast and thus void.

212. That "different standards have been employed in different counties across the Commonwealth of Pennsylvania to determine whether an absentee ballot should be counted" is the "kind of disparate treatment" that violates "the equal

protection clause because uniform standards will not be used statewide to discern the legality of a vote in a statewide election." *Pierce*, 324 F. Supp. 2d at 699.

213.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless the injunctive relief requested herein is granted.

## COUNT V

### U.S. Const. Art. I, §4, & Art. II, § 1
### Violation of the Electors & Elections Clauses

214.   Plaintiffs incorporate each of the prior allegations in this complaint.

215.   The Electors Clause states that "[e]ach State shall appoint, in such Manner as *the Legislature* thereof may direct, a Number of Electors" for President. Art. II, § 1, cl. 2 (emphasis added).  Likewise, the Elections Clause of the U.S. Constitution states that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by *the Legislature* thereof." Art. I, § 4, cl. 1 (emphasis added).

216.   The Legislature is "'the representative body which ma[kes] the laws of the people.'" *Smiley*, 285 U.S. at 1932.

217.   Regulations of congressional and presidential elections, thus, "must be in accordance with the method which the state has prescribed for legislative enactments." *Id.* at 367; *see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2668 (2015).

218.   In Pennsylvania, "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representative." Pa. Const. Art. II, § 1. *See also* Winston, 91 A. at 522; *Patterson, 60 Pa. at 75*.

219.   Defendants, as a member of the Governor's Executive Board and county boards of elections, are not part of the General Assembly and cannot exercise legislative power.  Rather, Defendants' power is limited to "tak[ing] care that the laws be faithfully executed." Pa. Const. Art. IV, § 2.

220.   Because the United States Constitution reserves for the General Assembly the power to set the time, place, and manner of holding elections for the President and Congress, county boards of elections and state executive officers have no authority to unilaterally exercise that power, much less to hold them in ways that conflict with existing legislation.

221.   According to the Pennsylvania Supreme Court, "although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the 'notice and opportunity to cure' procedure[.]" *Pa. Democratic Party, 2020 Pa. LEXIS 4872, at *56*.  Moreover, "[t]o the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements, … the decision to provide a 'notice and opportunity to cure' procedure to alleviate that risk is one best suited for the Legislature[,] . . . particularly in light

- 78 -

of the open policy questions attendant to that decision, including what the precise contours of the procedure would be, how the concomitant burdens would be addressed, and how the procedure would impact the confidentiality and counting of ballots, all of which are best left to the legislative branch of Pennsylvania's government." *Id.*

222.   Defendants are not the legislature, and their unilateral decision to create a cure procedure violates the Electors and Elections Clauses of the United States Constitution.

223.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless the injunctive relief requested herein is granted.

## COUNT VI

**Fourteenth Amendment Equal Protection Clause**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983**
**Denial of Due Process**
**Disparate Treatment of Absentee/Mail-In Voters Among Different Counties**

224.   Plaintiffs incorporate each of the prior allegations in this Complaint.

225.   Voting is a fundamental right protected by the Fourteenth Amendment to the United States Constitution.

226.   The Fourteenth Amendment protects the right to vote from conduct by state officials which seriously undermines the fundamental fairness of the electoral process. *Marks v. Stinson*, 19 F.3d 873, 889 (3d Cir. 1994); *Griffin*, 570 F.2d at 1077-78.   "[H]aving once granted the right to vote on equal terms, the State may not,

by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05.

227.    The United States Constitution entrusts state legislatures to set the time, place, and manner of congressional elections and to determine how the state chooses electors for the presidency.  *See* U.S. Const. Art. I, § 4, cl. 1 & Art. II, § 1, cl. 2.

228.    In Pennsylvania, "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representative."  Pa. Const. Art. II, § 1.  *See also Winston,* 91 A. at 522; *Patterson,* 60 Pa. at 75.

229.    Defendants, as a member of the Governor's Executive Board and county executive agencies, are not part of the General Assembly and cannot exercise legislative power.  Rather, Defendants' power is limited to "tak[ing] care that the laws be faithfully executed."  Pa. Const. Art. IV, § 2.

230.    Although the Pennsylvania General Assembly may enact laws governing the conduct of elections, "no legislative enactment may contravene the requirements of the Pennsylvania or United States Constitutions."  *Shankey,* 257 A. 2d at 898.

231.    According to the Pennsylvania Supreme Court, "although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the 'notice and opportunity to cure' procedure[.]"  *Pa. Democratic Party,*

2020 Pa. LEXIS 4872, at *56. Moreover, "[t]o the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements, … the decision to provide a 'notice and opportunity to cure' procedure to alleviate that risk is one best suited for the Legislature[,] . . . particularly in light of the open policy questions attendant to that decision, including what the precise contours of the procedure would be, how the concomitant burdens would be addressed, and how the procedure would impact the confidentiality and counting of ballots, all of which are best left to the legislative branch of Pennsylvania's government." *Id*.

232.   Defendants are not the legislature, and their unilateral decision to create and implement a cure procedure for some but not all absentee and mail-in voters in this Commonwealth violates the Due Process Clause of the United States Constitution.

233.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless the injunctive relief requested herein is granted.

## COUNT VII

### U.S. Const. Art. I, §4, & Art. II, § 1
### Violation of the Electors & Elections Clauses

234.   Plaintiffs incorporate each of the prior allegations in this complaint.

235.   The Electors Clause states that "[e]ach State shall appoint, in such Manner as *the Legislature* thereof may direct, a Number of Electors" for President.

Art. II, § 1, cl. 2 (emphasis added).  Likewise, the Elections Clause of the U.S. Constitution states that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by *the Legislature* thereof." Art. I, § 4, cl. 1 (emphasis added).

236.   The Legislature is "'the representative body which ma[kes] the laws of the people.'" *Smiley*, 285 U.S. at 193.

237.   Regulations of congressional and presidential elections, thus, "must be in accordance with the method which the state has prescribed for legislative enactments." *Id.* at 367; *see also Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2668 (2015).

238.   In Pennsylvania, "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representative." Pa. Const. Art. II, § 1. *See also Winston,* 91 A. at 522; *Patterson,* 60 Pa. at 75.

239.   Defendants, as a member of the Governor's Executive Board and county boards of elections, are not part of the General Assembly and cannot exercise legislative power.  Rather, Defendants' power is limited to "tak[ing] care that the laws be faithfully executed." Pa. Const. Art. IV, § 2.

240.  Because the United States Constitution reserves for the General Assembly the power to set the time, place, and manner of holding elections for the

President and Congress, county boards of elections and state executive officers have no authority to unilaterally exercise that power, much less to hold them in ways that conflict with existing legislation.

241.   According to the Pennsylvania Supreme Court, "although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the 'notice and opportunity to cure' procedure[.]" *Pa. Democratic Party, 2020 Pa. LEXIS 4872, at *56*. Moreover, "[t]o the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements, … the decision to provide a 'notice and opportunity to cure' procedure to alleviate that risk is one best suited for the Legislature[,] . . . particularly in light of the open policy questions attendant to that decision, including what the precise contours of the procedure would be, how the concomitant burdens would be addressed, and how the procedure would impact the confidentiality and counting of ballots, all of which are best left to the legislative branch of Pennsylvania's government." *Id*.

242.   Defendants are not the legislature, and their unilateral decision to create a cure procedure violates the Electors and Elections Clauses of the United States Constitution.

243.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm unless the injunctive relief requested herein is granted.

WHEREFORE, in addition to any other affirmative relief that the Court may deem necessary and proper, Plaintiffs ask this Court to enter judgment in their favor and provide the following alternative relief:

    i.    An order, declaration, and/or injunction that prohibits the Defendant County Boards of Elections and Defendant Secretary Boockvar from certifying the results of the 2020 General Election in Pennsylvania on a Commonwealth-wide basis;

    ii.    As an alternative to the first request for relief, an order, declaration, and/or injunction that prohibits Defendants from certifying the results of the General Elections which include the tabulation of absentee and mail-in ballots for which Plaintiffs' watchers were prevented from observing during the pre-canvass and canvass in the County Election Boards;

    iii.    In addition to the alternative requests for relief, an order, declaration, and/or injunction that prohibits Defendants from certifying the results of the General Elections which include the tabulation of absentee and mail-in ballots which Defendants improperly permitted to be cured;

    iv.    A temporary restraining order and preliminary injunction granting the above relief during the pendency of this action;

    v.    Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees; and cost; and

    vi.    All other further relief to which Plaintiffs might be entitled.

Date: November 9, 2020        Respectfully submitted,

                        PORTER WRIGHT MORRIS & ARTHUR, LLP

                By: */s/ Ronald L. Hicks, Jr.*
                    Ronald L. Hicks, Jr. (PA #49520)
                    Carolyn B. McGee (PA #208815)

Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
cmcgee@porterwright.com

and

*/s/ Linda A. Kerns*
Linda A. Kerns (PA #84495)
Law Offices of Linda A. Kerns, LLC
1420 Locust Street, Suite 200
Philadelphia, PA 19102
*linda@lindakernslaw.com*


*Counsel for Plaintiffs*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that I have reviewed the foregoing Complaint and that the factual allegations are true and correct.

Date: November 9, 2020

/s/ *James Fitzpatrick*
James Fitzpatrick, PA EDO Director
Donald J. Trump for President, Inc.

# Exhibit 5

Meeting of the Commissioners - Elections
November 9, 2020

Filed and Attested by the
Office of Judicial Records
10 NOV 2020 11:18 pm
S. WULKO

BOARD OF ELECTIONS

MEETING OF COMMISSIONERS

-  -  -


HELD ON:    November 9, 2020


COMMISSIONERS:    LISA M. DEELEY
                  AL SCHMIDT
                  OMAR SABIR




REPORTED BY:    Angela M. King, RPR
                (Via Zoom telephone)


        -  -  -

STREHLOW & ASSOCIATES, INC.
FULL SERVICE COURT REPORTING AGENCY
54 FRIENDS LANE, SUITE 116
NEWTOWN, PENNSYLVANIA 18940
(215) 504-4622  FAX(215)504-7155
WWW.STREHLOWCOURTREPORTING.COM



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 2

1            (At this time, the proceedings commenced
2      at approximately 9:00 a.m.)

3                  -  -  -

4            COMMISSIONER DEELEY:  This is
5            November 9, 2020.
6                  First, I have an announcement, the
7            Philadelphia City Commissioners met
8            virtually in Executive Session on Friday,
9            November 6, 2020 to meet with the Council
10           in order to discuss ongoing litigation
11           regarding the election.
12                 We will now move to Public
13           Comments.  Commenters shall state where
14           they live.  Or if they are not a resident
15           in Philadelphia, that they are a
16           Philadelphia approximate.  Public Comments
17           is not an opportunity for dialogue or Q and
18           A.  It is Public Comments, a chance for you
19           to tell us what you think.
20                 Each speaker shall have two
21           minutes.  However, I may extend this time
22           at my discretion.  All Public Comments must
23           be relevant or germane towards business.
24                 Finally, it is my responsibility to

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 3

1          preserve order and decorum of the meeting.

2          As such, profane, slanderous,

3          discriminatory or personal attacks will not

4          be tolerated.

5                   Anyone wishing to offer Public

6          Comments, please, step forward.

7                   Step forward.

8                   MS. KERNS:  My name is Linda Kerns.

9          I represent Donald Trump -- (audio fades

10         out.)

11                  THE STENOGRAPHER:  I can't hear at

12         all.

13                  COMMISSIONER DEELEY:  Wait, one

14         second.

15                  THE CLERK:  I'm going to go over to

16         the speaker so you can hear better.

17                  THE STENOGRAPHER:  Please.

18                  Thank you.

19                  COMMISSIONER DEELEY:  Ms. Kerns,

20         can you please repeat your comment.

21                  MS. KERNS:  Sure.  My name is Linda

22         Kerns.  I represent Donald Trump.  I just

23         needed to know the name of the court

24         reporter.  I asked Mr. Bluestein.  And he

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 4

1        told me to direct my questions to you.

2                COMMISSIONER DEELEY:  Thank you.

3                We will give you that information

4        after the meeting.

5                We will now hear a report from

6        Supervisor of Elections, Mr. Garrett Dietz.

7                MR. DIETZ:  Good morning,

8        Commissioners.

9                COMMISSIONER DEELEY:  Good morning,

10       Garrett.

11               COMMISSIONER SCHMIDT:  Good

12       morning, Garrett.

13               MR. DIETZ:  Before I get into the

14       ballots that I performed a secondary review

15       on, I just want to note that per the court

16       order from Election Day, we have confirmed

17       that Verna Phillips of Ward 36 Division 15,

18       did not submit a valid ballot.

19               THE STENOGRAPHER:  Can you, please,

20       move closer to the speakers.  I'm having a

21       hard time hearing.

22               THE CLERK:  Okay.  I'll put it

23       right up to the speaker.

24               MR. DIETZ:  Now I will go through

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 5

1        the various categories per my second level

2        review.

3                The first category is ballots with

4        a blank Declaration Envelope where it does

5        not appear that the voter attempted to

6        complete any of the information including

7        signature on the Declaration Envelope of

8        the ballot.  There are 472 ballots in this

9        category.

10               COMMISSIONER DEELEY:  I vote no

11       count.

12               COMMISSIONER SCHMIDT:  I vote not

13       to count.

14               COMMISSIONER SABIR:  I vote not to

15       count.

16               MR. DIETZ:  Okay.

17               Category number two are ballots

18       where it appears that the voter did not

19       sign the Declaration Envelope.

20               COMMISSIONER DEELEY:  How many of

21       those, Mr. Dietz?

22               MR. DIETZ:  There are 225 ballots

23       in this category.

24               COMMISSIONER DEELEY:  Thank you.



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 6

1              I vote not to count.

2              COMMISSIONER SCHMIDT:  I vote not

3    to count.

4              COMMISSIONER SABIR:  I vote not to

5    count.

6              MR. DIETZ:  Okay.

7              Category number three.  There are

8    1,211 ballots in this category.  This is a

9    category where the voter affixed their

10   signature to the Declaration Envelope, but

11   no other information was provided.

12             I should add that every ballot --

13   every ballot category I am going through

14   today was timely received by close of polls

15   on Election Day.

16             COMMISSIONER SCHMIDT:  And how many

17   ballots are in this universe?

18             MR. DIETZ:  1,211 ballots.

19             COMMISSIONER DEELEY:  Garrett, the

20   voters did sign -- there is a signature on

21   the Dec?

22             MR. DIETZ:  Correct.  The voter did

23   affix their signature.

24             COMMISSIONER DEELEY:  I vote to

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 7

1          count.
2                    COMMISSIONER SCHMIDT:  I vote not
3          to count.
4                    COMMISSIONER SABIR:  Garrett, can I
5          have a question.
6                    Did the signatures match the list?
7          Did we check that?
8                    MR. DIETZ:  Per the directions from
9          the Department of State, we cannot verify
10         signatures against the system.
11                   COMMISSIONER SABIR:  I vote to
12         count.
13                   MR. DIETZ:  Okay.
14                   Category number four.  This is
15         where ballots were completed except for the
16         date of signature.  So, the Declaration had
17         a signature.  And they had the printed name
18         of the elector and the street address of
19         the elector.
20                   COMMISSIONER DEELEY:  And, Garrett,
21         how many of these ballots?
22                   MR. DIETZ:  1,259 ballots.
23                   COMMISSIONER DEELEY:  And these
24         ballots were received timely?

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 8

1           MR. DIETZ:  Correct.

2           COMMISSIONER DEELEY:  I vote to

3     count.

4           COMMISSIONER SCHMIDT:  I vote not

5     to count.

6           COMMISSIONER SABIR:  I vote to

7     count.

8           MR. DIETZ:  Okay.

9           Category number five.  Ballots in

10    this category were complete with signature,

11    date and street address and are missing the

12    printed name of the voter.

13          COMMISSIONER DEELEY:  And how many

14    ballots were these, Garrett, in this

15    category?

16          MR. DIETZ:  533 ballots in this

17    category.

18          COMMISSIONER DEELEY:  I vote to

19    count.

20          COMMISSIONER SCHMIDT:  I vote to

21    count.

22          COMMISSIONER SABIR:  I vote to

23    count.

24          MR. DIETZ:  Category number six.



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 9

1        Ballots in this category had the signature

2        of the voter as well as the date of

3        signature and the printed name of the

4        elector.  It's missing the street address

5        of the voter.

6              COMMISSIONER DEELEY:  And how many

7        of these were in this category?

8              MR. DIETZ:  I should clarify when I

9        say missing street address, printed by the

10       voter specifically.

11             COMMISSIONER SCHMIDT:  But the

12       street address is on the label?

13             MR. DIETZ:  Correct.  That's why I

14       wanted to make that distinction.

15             COMMISSIONER DEELEY:  And,

16       Mr. Dietz, they are signed and dated?

17             MR. DIETZ:  Correct.

18             COMMISSIONER DEELEY:  And the

19       number?

20             MR. DIETZ:  860.

21             COMMISSIONER DEELEY:  I vote to

22       count.

23             COMMISSIONER SCHMIDT:  I vote to

24       count.

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 10

1          COMMISSIONER SABIR:  I vote to

2     count.

3          MR. DIETZ:  Category number seven.

4          This is where the voter affixed

5     their signature to the Declaration Envelope

6     and provided the date of signing.  However,

7     it is missing the printed name and the

8     street address specifically written in, in

9     hand, by the voter.

10         COMMISSIONER DEELEY:  Garrett,

11     these ballots were received timely?

12         MR. DIETZ:  Correct.

13         COMMISSIONER DEELEY:  And the

14     number in this category?

15         MR. DIETZ:  4,466.

16         COMMISSIONER DEELEY:  I vote to

17     count.

18         COMMISSIONER SCHMIDT:  I vote to

19     count.

20         COMMISSIONER SABIR:  So, these were

21     signed by the voter?

22         MR. DIETZ:  Correct.

23         COMMISSIONER SABIR:  I vote to

24     count.



Exhibit A

Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 11

1            MR. DIETZ:  Category number eight.

2            Ballots where the individual that

3      completed the Declaration appears different

4      than the elector who was assigned the

5      ballot.  Using the label on the Declaration

6      Envelope to decide that.

7            There are 112 ballots in this

8      category.

9            COMMISSIONER DEELEY:  Garrett, do

10     they indicate on this Declaration Envelope

11     a need for assistance?

12            MR. DIETZ:  No.

13            COMMISSIONER DEELEY:  Could you

14     repeat the number, please?

15            MR. DIETZ:  112.

16            COMMISSIONER DEELEY:  I vote to not

17     count.

18            COMMISSIONER SCHMIDT:  I vote not

19     to count.

20            COMMISSIONER SABIR:  I vote to not

21     count.

22            MR. DIETZ:  Category number nine.

23            Ballots that were not included in a

24     Secrecy Envelope.

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 12

1           COMMISSIONER DEELEY:  And, Garrett,
2       what is the number of ballots that did
3       not -- were not included in the Secrecy
4       Envelope?
5           MR. DIETZ:  4,027.
6           COMMISSIONER DEELEY:  And were
7       those 4,027 received timely?
8           MR. DIETZ:  Yes.
9           COMMISSIONER DEELEY:  Were the Dec
10      Envelopes filled out accurately?  Properly?
11          MR. DIETZ:  It varies.
12          COMMISSIONER DEELEY:  Thank you.
13          The naked ballot is a difficult one
14      for me.  Since I have been a Commissioner,
15      we have always counted naked ballots.
16          I am aware of the recent Supreme
17      Court ruling concerning them and our
18      legislators failure to correct the matter.
19      I am pleased that the awareness campaign
20      leading up to the election, including the
21      work done by myself, Commissioners Sabir
22      and Schmidt.  What we were expecting to be
23      tens of thousands of ballots became just
24      over 4,000.

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 13

1               But still, these are 4,000

2       Philadelphia voters, 4,000 people who did

3       nothing wrong behind failing to put their

4       ballots into a second envelope.  I cannot

5       with a good conscious count these.

6               I, therefore, vote no count.

7               COMMISSIONER SCHMIDT:  I vote not

8       to count.

9               COMMISSIONER DEELEY:  To count.

10      I'm sorry.  I apologize.  I read the wrong

11      thing.  Let me correct myself.

12              I vote to count the 4,027 ballots

13      not enclosed in the Secrecy Envelope.

14              COMMISSIONER SCHMIDT:  I vote not

15      to count.

16              COMMISSIONER SABIR:  I vote not to

17      count.

18              MR. DIETZ:  Okay.

19              That is all the categories I have

20      today.

21              COMMISSIONER DEELEY:  This

22      business having con -- I'm sorry.

23              Does anybody have any New Business?

24              COMMISSIONER SCHMIDT:  I have none.



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

Page 14

1           COMMISSIONER SABIR:  I'd just like

2     to thank the Election Board Staff, the

3     Commissioners, the Deputies for the timely

4     hard work that leads to this election.

5           COMMISSIONER DEELEY:  Thank you,

6     Commissioner Sabir.

7           The business having concluded, we

8     will stand in recess to the call of the

9     Chair.

10          (At this time, the Meeting

11    concluded at 9:12 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

Meeting of the Commissioners - Elections
November 9, 2020

C E R T I F I C A T I O N

I, hereby certify that the proceedings
and evidence noted are contained fully and
accurately in the stenographic notes taken by me
in the foregoing matter, and that this is a
correct transcript of the same.

_____
ANGELA M. KING, RPR,
Court Reporter, Notary Public

(The foregoing certification
of this transcript does not
apply to any reproduction of
the same by any means, unless
under the direct control
and/or supervision of the
certifying reporter.)

STREHLOW & ASSOCIATES, INC.
(215) 504-4622



Case ID: 201100878
Control No.: 20110899

| A | | | | | | | |
|---|---|---|---|---|---|---|---|

**A**

**a m** 2:2 14:11
**accurately**
  12:10 15:5
**add** 6:12
**address** 7:18
  8:11 9:4,9
  9:12 10:8
**affix** 6:23
**affixed** 6:9
  10:4
**AGENCY**
  1:16
**AL** 1:7
**and/or** 15:18
**Angela** 1:12
  15:11
**announcem...**
  2:6
**anybody**
  13:23
**apologize**
  13:10
**appear** 5:5
**appears** 5:18
  11:3
**apply** 15:15
**approximate**
  2:16
**approxima...**
  2:2
**asked** 3:24
**assigned** 11:4
**assistance**
  11:11
**ASSOCIA...**
  1:16
**attacks** 3:3
**attempted**
  5:5
**audio** 3:9
**aware** 12:16
**awareness**
  12:19

**B**

**ballot** 4:18
  5:8 6:12,13
  11:5 12:13
**ballots** 4:14
  5:3,8,17,22
  6:8,17,18
  7:15,21,22
  7:24 8:9,14

8:16 9:1
10:11 11:2
11:7,23
12:2,15,23
13:4,12
**better** 3:16
**blank** 5:4
**Bluestein**
  3:24
**Board** 1:1
  14:2
**business** 2:23
  13:22,23
  14:7

**C**

**C** 15:1,1
**call** 14:8
**campaign**
  12:19
**categories**
  5:1 13:19
**category** 5:3
  5:9,17,23
  6:7,8,9,13
  7:14 8:9,10
  8:15,17,24
  9:1,7 10:3
  10:14 11:1
  11:8,22
**certification**
  15:13
**certify** 15:3
**certifying**
  15:19
**Chair** 14:9
**chance** 2:18
**check** 7:7
**City** 2:7
**clarify** 9:8
**CLERK** 3:15
  4:22
**close** 6:14
**closer** 4:20
**commenced**
  2:1
**comment**
  3:20
**Commenters**
  2:13
**Comments**
  2:13,16,18
  2:22 3:6
**Commissio...**

2:4 3:13,19
4:2,9,11
5:10,12,14
5:20,24 6:2
6:4,16,19
6:24 7:2,4
7:11,20,23
8:2,4,6,13
8:18,20,22
9:6,11,15
9:18,21,23
10:1,10,13
10:16,18,20
10:23 11:9
11:13,16,18
11:20 12:1
12:6,9,12
12:14 13:7
13:9,14,16
13:21,24
14:1,5,6
**Commissio...**
  1:2,7 2:7
  4:8 12:21
  14:3
**complete** 5:6
  8:10
**completed**
  7:15 11:3
**con** 13:22
**concerning**
  12:17
**concluded**
  14:7,11
**confirmed**
  4:16
**conscious**
  13:5
**contained**
  15:4
**control** 15:17
**correct** 6:22
  8:1 9:13,17
  10:12,22
  12:18 13:11
  15:7
**Council** 2:3
**count** 5:11,13
  5:15 6:1,3,5
  7:1,3,12 8:3
  8:5,7,19,21
  8:23 9:22
  9:24 10:2
  10:17,19,24

11:17,19,21
13:5,6,8,9
13:12,15,17
**counted**
  12:15
**court** 1:16
  3:23 4:15
  12:17 15:11

**D**

**date** 7:16
  8:11 9:2
  10:6
**dated** 9:16
**Day** 4:16
  6:15
**Dec** 6:21 12:9
**decide** 11:6
**Declaration**
  5:4,7,19
  6:10 7:16
  10:5 11:3,5
  11:10
**decorum** 3:1
**DEELEY** 1:7
  2:4 3:13,19
  4:2,9 5:10
  5:20,24
  6:19,24
  7:20,23 8:2
  8:13,18 9:6
  9:15,18,21
  10:10,13,16
  11:9,13,16
  12:1,6,9,12
  13:9,21
  14:5
**Department**
  7:9
**Deputies** 14:3
**dialogue** 2:17
**Dietz** 4:6,7,13
  4:24 5:16
  5:21,22 6:6
  6:18,22 7:8
  7:13,22 8:1
  8:8,16,24
  9:8,13,16
  9:17,20
  10:3,12,15
  10:22 11:1
  11:12,15,22
  12:5,8,11
  13:18

**different** 11:3
**difficult**
  12:13
**direct** 4:1
  15:17
**directions** 7:8
**discretion**
  2:22
**discriminat...**
  3:3
**discuss** 2:10
**distinction**
  9:14
**Division** 4:17
**Donald** 3:9
  3:22

**E**

**E** 15:1
**eight** 11:1
**election** 2:11
  4:16 6:15
  12:20 14:2
  14:4
**Elections** 1:1
  4:6
**elector** 7:18
  7:19 9:4
**enclosed**
  13:13
**envelope** 5:4
  5:7,19 6:10
  10:5 11:6
  11:10,24
  12:4 13:4
  13:13
**Envelopes**
  12:10
**evidence** 15:4
**Executive** 2:8
**expecting**
  12:22
**extend** 2:21

**F**

**F** 15:1
**fades** 3:9
**failing** 13:3
**failure** 12:18
**FAX(215)5...**
  1:18
**filled** 12:10
**Finally** 2:24

**first** 2:6 5:3
**five** 8:9
**foregoing**
  15:6,13
**forward** 3:6
  3:7
**four** 7:14
**Friday** 2:8
**FRIENDS**
  1:17
**FULL** 1:16
**fully** 15:4

**G**

**Garrett** 4:6
  4:10,12
  6:19 7:4,20
  8:14 10:10
  11:9 12:1
**germane** 2:23
**give** 4:3
**go** 3:15 4:24
**going** 3:15
  6:13
**good** 4:7,9,11
  13:5

**H**

**hand** 10:9
**hard** 4:21
  14:4
**hear** 3:11,16
  4:5
**hearing** 4:21
**HELD** 1:5

**I**

**included**
  11:23 12:3
**including** 5:6
  12:20
**indicate**
  11:10
**individual**
  11:2
**information**
  4:3 5:6
  6:11

**J**

**K**

**Kerns** 3:8,8
  3:19,21,22

**King** 1:12
  15:11
**know** 3:23

**L**

**label** 9:12
  11:5
**LANE** 1:17
**leading** 12:20
**leads** 14:4
**legislators**
  12:18
**level** 5:1
**Linda** 3:8,21
**LISA** 1:7
**list** 7:6
**litigation**
  2:10
**live** 2:14

**M**

**M** 1:7,12
  15:11
**match** 7:6
**matter** 12:18
  15:6
**means** 15:16
**meet** 2:9
**meeting** 1:2
  3:1 4:4
  14:10
**met** 2:7
**minutes** 2:21
**missing** 8:11
  9:4,9 10:7
**morning** 4:7
  4:9,12
**move** 2:12
  4:20

**N**

**N** 15:1
**naked** 12:13
  12:15
**name** 3:8,21
  3:23 7:17
  8:12 9:3
  10:7
**need** 11:11
**needed** 3:23
**New** 13:23
**NEWTOWN**
  1:17
**nine** 11:22

**Notary** 15:11
**note** 4:15
**noted** 15:4
**notes** 15:5
**November**
  1:5 2:5,9
  6:7 7:14
  8:9,24 9:19
  10:3,14
  11:1,14,22
  12:2

**O**

**O** 15:1
**offer** 3:5
**Okay** 4:22
  5:16 6:6
  7:13 8:8
  13:18
**OMAR** 1:8
**ongoing** 2:10
**opportunity**
  2:17
**order** 2:10
  3:1 4:16

**P**

**PENNSYL...**
  1:17
**people** 13:2
**performed**
  4:14
**personal** 3:3
**Philadelphia**
  2:7,15,16
  13:2
**Phillips** 4:17
**please** 3:6,17
  3:20 4:19
  11:14
**pleased** 12:19
**polls** 6:14
**preserve** 3:1
**printed** 7:17
  8:12 9:3,9
  10:7
**proceedings**
  2:1 15:3
**profane** 3:2
**Properly**
  12:10
**provided**
  6:11 10:6



Case ID: 201100878
Control No.: 20110899

**Public** 2:12
2:16,18,22
3:5 15:11
**put** 4:22 13:3

**Q**
**question** 7:5
**questions** 4:1

**R**
**R** 15:1
**read** 13:10
**received** 6:14
7:24 10:11
12:7
**recess** 14:8
**regarding**
2:11
**relevant** 2:23
**repeat** 3:20
11:14
**report** 4:5
**REPORTED**
1:12
**reporter** 3:24
15:11,19
**REPORTI...**
1:16
**represent** 3:9
3:22
**reproduction**
15:15
**resident** 2:14
**responsibili...**
2:24
**review** 4:14
5:2
**right** 4:23
**RPR** 1:12
15:11
**ruling** 12:17

**S**
**Sabir** 1:8
5:14 6:4
7:4,11 8:6
8:22 10:1
10:20,23
11:20 12:21
13:16 14:1
14:6
**Schmidt** 1:7
4:11 5:12
6:2,16 7:2

8:4,20 9:11
9:23 10:18
11:18 12:22
13:7,14,24
**second** 3:14
5:1 13:4
**secondary**
4:14
**Secrecy**
11:24 12:3
13:13
**SERVICE**
1:16
**Session** 2:8
**seven** 10:3
**sign** 5:19
6:20
**signature** 5:7
6:10,20,23
7:16,17
8:10 9:1,3
10:5
**signatures**
7:6,10
**signed** 9:16
10:21
**signing** 10:6
**six** 8:24
**slanderous**
3:2
**sorry** 13:10
13:22
**speaker** 2:20
3:16 4:23
**speakers** 4:20
**specifically**
9:10 10:8
**Staff** 14:2
**stand** 14:8
**state** 2:13 7:9
**STENOGR...**
3:11,17
4:19
**stenographic**
15:5
**step** 3:6,7
**street** 7:18
8:11 9:4,9
9:12 10:8
**STREHLO...**
1:16
**submit** 4:18
**SUITE** 1:17
**supervision**

15:18
**Supervisor**
4:6
**Supreme**
12:16
**Sure** 3:21
**system** 7:10

**T**
**T** 15:1,1
**taken** 15:5
**telephone**
1:13
**tell** 2:19
**tens** 12:23
**thank** 3:18
4:2 5:24
12:12 14:2
14:5
**thing** 13:11
**think** 2:19
**thousands**
12:23
**three** 6:7
**time** 2:1,21
4:21 14:10
**timely** 6:14
7:24 10:11
12:7 14:3
**today** 6:14
13:20
**told** 4:1
**tolerated** 3:4
**transcript**
15:7,14
**Trump** 3:9
3:22
**two** 2:20 5:17

**U**
**universe** 6:17

**V**
**valid** 4:18
**varies** 12:11
**various** 5:1
**verify** 7:9
**Verna** 4:17
**virtually** 2:8
**vote** 5:10,12
5:14 6:1,2,4
6:24 7:2,11
8:2,4,6,18
8:20,22

9:21,23
10:1,16,18
10:23 11:16
11:18,20
13:6,7,12
13:14,16
**voter** 5:5,18
6:9,22 8:12
9:2,5,10
10:4,9,21
**voters** 6:20
13:2

**W**
**Wait** 3:13
**want** 4:15
**wanted** 9:14
**Ward** 4:17
**wishing** 3:5
**work** 12:21
14:4
**written** 10:8
**wrong** 13:3
13:10
**WWW.ST...**
1:18

**X**

**Y**

**Z**
**Zoom** 1:13

**0**

**1**
**1,211** 6:8,18
**1,259** 7:22
**112** 11:7,15
**116** 1:17
**15** 4:17
**18940** 1:17

**2**
**2020** 1:5 2:5
2:9
**215** 1:18
**225** 5:22

**3**
**36** 4:17

**4**

**4,000** 12:24
13:1,2
**4,027** 12:5,7
13:12
**4,466** 10:15
**472** 5:8

**5**
**504-4622**
1:18
**533** 8:16
**54** 1:17

**6**
**6** 2:9

**7**

**8**
**860** 9:20

**9**
**9** 1:5 2:5
**9:00** 2:2
**9:12** 14:11

STREHLOW & ASSOCIATES, INC.
(215) 504-4622

Case ID: 201100878
Control No.: 20110899

Exhibit A

# Exhibit 6

Find information regarding <u>COVID-19</u>.  





**November 12 - 10:30 AM Dispatch**: The Elections warehouse operations began again this morning at 9 AM. The review of provisional ballots, with challenges by authorized representatives, continues.

Staff are also preparing provisional ballots for tabulation later today. These are the provisional ballots that were not challenged yesterday and will be partially counted based on the determination by Elections.

Election Day Updates (November 3, 2020)

There are currently 18 representatives of candidates or parties observing or participating in the process  Of those, half are Democratic representatives and half are Republican representatives  Additionally, there is a staff person form the Committee on House Administration observing

**November 11 - 9 PM Dispatch**: The operations at the Elections warehouse are done for today. The group will reconvene tomorrow at 9 AM.

All provisional ballots that were unchallenged and could be counted in their entirety were opened, scanned and tabulated this evening. That number of 8,097 bringing the total votes cast in Allegheny County to 717,733. A total of 14,969 votes were added to the totals today.

Of the 8,097 votes counted in the last batch, 4,345 were cast for Biden and 3,579 were cast for Trump. The full results are available on the Election results website.

Tomorrow, the last batches of the provisional ballots will be reviewed. The provisional ballots without challenge that can be partially counted will be created and scanned. The remaining overseas/military ballots will be created and scanned. Any provisional ballots in the last batches will also be scanned.

**November 11 - 6:30 PM Dispatch**  After a brief 30  minute break for dinner, the review of provisional ballots and challenges has continued but will be wrapping up shortly for the evening  The vast majority of the provisional ballots have been reviewed at this point  Any remaining items will be transported to the warehouse tomorrow morning for review

The final ballots out of the incorrect ballots were finished and scanned. The results have been uploaded to the website. This batch includes an additional 2,422 ballots with 1,803 votes cast for Biden and 569 votes cast for Trump. The total votes case by county voters is now 709,636. Today, a total of 6,872 votes were added to the count thus far.

The staff has also begun to process the provisional ballots for which there was no challenge and would be fully counted  We expect to have one more upload of results before work ends for the evening

Tomorrow, the staff expects to finish the process to review provisional ballots and will begin processing and working through the provisional ballots for which there was no challenge and would be partially counted.

**November 11 - 4:30 PM Dispatch**: The review of provisional ballots continues. Those which have been designated as allowable votes that are not contested are being processed and are expected to be scanned/counted/tabulated later this evening.

Another batch of ballots from the 7,000 incorrect ballots that were returned by voters were scanned and added to the results page

The total count of votes added from that batch are 2,061 bringing the total ballots cast in the county to 707,214. Of those votes, 1,519 were cast for Biden and 460 were cast for Trump. This morning's first batch also included the 256 miscellaneous ballots that had been set aside for resolution and were determined to be valid to vote.

With both batches together, approximately 2,000 of the ballots from the 7,000 incorrect ballots remain to be scanned/counted/tabulated

**November 11 - 1:15 PM Dispatch**: The staff and authorized representatives have just re-convened after a short, 30-minute break for lunch.

The batch of 7,000 incorrect ballots that were returned are continuing to through the process to vote the candidates who would have appeared on the corrected ballot if that race also appeared on the incorrect ballot. Once that's complete, those ballots will be scanned, tabulated and reported. The first set of those ballots have been scanned and added to the results page.

The examination of provisional ballots has also begun this morning with representatives from both sides seated at the table for any challenges.

Warehouse staff are opening the ballot return bags to ensure there are no provisional ballots stored there and then will be resealing them. They are also extracting the poll books for scanning.

There were a total of 2,389 ballots that were uploaded into the system, bringing the total number of votes cast to 705,153  Of those ballots, 1,771 votes were cast for Biden and 578 votes were cast for Trump

**November 11 - 10 AM Dispatch**: The operations at the Elections warehouse began again at 9 AM this morning.

The batch of 7,000 incorrect ballots that were returned are currently going through the process to vote the candidates who would have appeared on the corrected ballot if that race also appeared on the incorrect ballot. Once that's complete, those ballots will be scanned, tabulated and reported.

The examination of provisional ballots has also begun this morning with representatives from both sides seated at the table for any challenges.

Warehouse staff are also opening the ballot return bags to ensure there are no provisional ballots stored there and then will be resealing them. They are also extracting the poll books for scanning.

Currently, there are 21 authorized representatives for candidates or parties on site. Of those, 14 are representing Republican candidates and seven (7) are representing Democratic candidates. There is also a staff person here representing the Committee on House Administration.

**November 10 - 9:15 PM Dispatch**: Operations at the warehouse concluded at 9:15 PM for the evening. At a minimum, operations tomorrow will run from 9 AM to 9 PM, with a possibility that they could go longer into the evening.

The approximately 7,000 incorrect ballots are currently in process  As noted earlier, the staff did the sufficiency review, opened the declaration envelopes, and extracted the secrecy envelopes tonight  The rest of the process will be done tomorrow

Tomorrow morning, the Return Board will begin to examine the provisional ballots and open the ballot return bags to ensure there are no provisional ballots stored there.

**November 10 - 8 PM Dispatch**  The organization of and research into the provisional ballots for the Return Board process continues  The work is complete for approximately 560 precincts with the remaining in process

All of the surrendered ballots have been reviewed to pull and set aside any of the batch of corrected ballots (with an orange bar) that were surrendered. There were a total of 1,331 ballots in that category and, of those, 120 ballots had a matching white (incorrect) envelope that had been returned to Elections. Those ballots have now been set aside. Another eight (8) ballots show that a white one (incorrect ballot) was returned in the SURE system but the white ballot has not yet been identified. Those ballots have also been set aside. The 128 number will be subtracted from the estimated 7,100 ballots to leave approximately 7,000 to be canvassed. The team is doing the sufficiency review, opening the declaration envelopes, and extracting the secrecy envelopes tonight. The rest of the process will be done tomorrow.

At today's Board of Elections meeting, the Board voted by a 2-1 vote to count the 2,349 ballots returned with no date. There is a 48 hour period to appeal that vote and so those ballots will be put aside until that time period has expired with no appeal, or until appeals have been exhausted, whichever comes first. Additionally, the 947 ballots that were postmarked on or before Election Day and received on November 4-6 remain segregated and have not been counted.

Approximately 200-300 that had miscellaneous issues to be resolved have been addressed and will move forward for canvassing. As of 3 PM today, another 317 military and overseas ballots had been received which will also be brought over for canvassing. With the above ballots, that brings the total estimated mail-in and absentee ballots to a little over 10,000 that remain to be canvassed with the noted caveats.

Another approximately 2,000 ballots were naked    meaning they were returned without a secrecy envelope    and will not be counted pursuant to the PA Supreme Court ruling  An additional 370 had incomplete voter declarations and will not be counted

The plan for tomorrow is to begin examination of the provisional ballots and open the ballot return bags to ensure there are no provisional ballots stored there. Both will be done with the authorized representatives and watchers present.

**November 10 - 12:50 PM Dispatch**   The review of surrendered and spoiled ballots continues at this time

Staff and authorized representatives are currently taking a half hour break for lunch and will reconvene at 1 PM.

The cover sheets for the provisional ballots for which research has been completed will be provided to authorized representatives once work begins again at 1 PM

The Elections Division also noted that it has received 4 OmniBallots which allow those who are visually impaired to vote by mail-in or absentee ballot. There were 7 applications and these 4 were returned timely. The votes from those ballots will be added to the tallies later today.

**November 10 - 9 AM Dispatch**: The staff convened again this morning at 9 AM. The review of surrendered and spoiled ballots has continued with five (5) of seven (7) regions complete and work underway on the sixth.

The examination of provisionals could begin today and we will note when that process occurs.

As of now, there are 18 representatives of campaigns or candidates at the warehouse – 11 represent the Republican party or candidates and seven (7) represent the Democratic party of candidates. Additionally, there are two staff members representing the Committee on House Administration present.

**November 9 - 8 PM Dispatch**  Operations at the warehouse are concluding at 8 PM for the evening  The review of surrendered and spoiled ballots continues and will be the first activity tomorrow as well

The examination of provisional ballots could begin tomorrow, to the extent that a precinct is not impacted by the review of a surrendered or spoiled ballot.

At a minimum, operations tomorrow will run from 9 AM to 9 PM, with a possibility that they could go longer into the evening.

**November 9 - 4:30 PM Dispatch**  The Elections staff continues to go through the ballots that were surrendered or spoiled to find any ballots with an orange bar on them which would indicate that the county may have received an incorrect ballot as well  This process is necessary to ensure that no person votes more than once

Of the appx. 6,500 ballots that had various issues to be resolved, the staff sorted through all of those today with approximately 500 being researched further. The Board of Elections will meet virtually tomorrow at 3 PM to consider resolution of those ballots.

This afternoon, 449 in  person votes were added to the totals from the scanners that were returned to the warehouse and still had medium in them that had not been uploaded  This brought the number of total votes cast to 702,764  An additional 124 votes were cast for Biden and 320 for Trump  The full summary results is available on the election results webpage

The division continues to work on the time-consuming process to research the approximately 17,000 provisional ballots. The sort of the surrendered and spoiled ballots must occur before examination of the provisionals begins. The staff has completed one of seven regions and is working on two others.

The mail  in ballots that were postmarked on or before election day but received Wednesday through Friday remain segregated and have not been opened or counted

The team plans to continue working this evening with no set end time. Additionally, hours are 9 AM to 9 PM tomorrow and for the remainder of the week, at a minimum.

**November 9 - 10:30 AM Dispatch**: This morning, there are three main activities occurring at the Elections warehouses: The bins of ballots still needing resolution are being reviewed by the Division Manager and Deputy Division Manager on a table in front of the observers. They will be sorted into two piles – one for ballots for which resolution is not possible; and, one for ballots that will require further research. Once they are sorted, the ballots that will require further research will be reviewed using the SURE system to determine if resolution is possible.

Elections officials are currently going through the envelopes of ballots surrendered at the polling places to pull any of the ballots returned by a voter who received an incorrect and corrected ballot  Those surrendered ballots will then be matched against the incorrect ballots that will be reviewed during the Return Board process  That step will ensure that anyone who voted in person will not also have their incorrect ballot voted

Elections employees are also pulling the precinct-level scanners from a handful of precincts because the memory sticks remain in those scanners. In the vast majority of those cases, the votes are already contained in results as they were entered using the machine tapes.

There are currently 26 representatives of candidates and parties on premises  Of those, seven are Democratic, 17 are Republican and there are two representatives from Congress on hand to observe the activities

**November 7 - 2 PM Dispatch**: The processing and counting of ballots was suspended while the Elections Division does some additional administrative work and research related to the final batch of ballots from the group of the correct/incorrect ballots. The Return Board and canvassing is expected to begin again on Monday, November 9 to allow time for the Division staff to do that work. There will be no further ballots counted, or results reported until that date.

**November 7 - 11:35 AM Dispatch**: The Elections Division has announced that another 7,253 votes have been added to the Allegheny County vote total, bringing the number of votes cast to 702,315.  Of those, 5,184 votes were cast for Biden and 1,893 votes were cast for Trump. The full detail/summary report is available on the Elections results page at https://results.enr.clarityelections.com/PA/Allegheny/106267/web.264614/.

**November 7 - 9 AM Dispatch**: The Return Board resumed this morning at 9 AM. They are continuing to process the batch of ballots sent to voters that had to be reissued. Last night, the ballots from voters who returned both an incorrect and correct ballot were reviewed, processed, scanned and reported out. This morning, the ballots from voters who returned just the correct ballot are being reviewed and processed. They have begun the scanning process and a report on the results of those ballots are expected to be available sometime between 11 and Noon.

**November 6 - 10:40 PM Dispatch**  The last update for today has been uploaded to the Election results webpage  There are 3,212 additional votes that have been added to bring the total vote count to 695,062  Of the most recent update, 2,436 votes went to Biden and 733 votes went to Trump  Additional detail is available on the results webpage

For members of the media, access to the warehouse is available beginning at 8:30 AM. If your outlet was on the list today, you will be on tomorrow's list as well.

**November 6 - 9:30 PM Dispatch**: The Elections Division has just added the remaining military and overseas ballots returned to the Division thus far, as well as the ballots for voters who submitted correct and incorrect ballots. That number is 9,288 and brings the number of overall votes cast to 691,850. In the presidential race, 7,300 additional votes went to Biden and 1,875 votes went to Trump. The remaining detail on races in the county are available on the Elections' results webpage.

**November 6 - 7:15 PM Dispatch**  The Return Board is continuing its work with military and overseas ballots and expects to close that process shortly  At that time, they will move to canvassing of the ballots of voters who received incorrect and corrected ballots

The Division will first go through the ballots where a voter returned both a correct and incorrect ballot. If the correct ballot is sufficient, it will move forward for processing. If not, it and the incorrect ballot will be forwarded to the Return Board for processing. If only a correct ballot was returned, it will move forward for processing. If only an incorrect ballot was returned, it will be forwarded to the Return Board for processing.

Today's mail included 113 ballots of which 64 met the Court's criteria for counting  In the three days, 1,045 total ballots were received  Of those, 947 are able to be counted

Finally, the Division has released results for the ballots that would not scan previously, and for 2/3 of the overseas and military ballots done to date. A total of 5,345 votes were added. In the Presidential race, 4,134 of those went to Biden and 1,076 went to Trump. The full summary result and totals are being uploaded to the election results website now.

**November 6 - Noon Dispatch**   The Return Board has made the decision to not break for lunch and will instead work through until 4 30 PM

The total votes cast in the county are 677,172 and reflects the six precincts that were not reported until yesterday. They are in-person votes.

Yesterday's mail included 370 total pieces. Of those, 358 meet the criteria set forth by the Court.

To date, the county has received 3,873 overseas and military ballots. Those will continue to come into the office as the deadline is one week from Election Day, or next Tuesday.

Additionally, while there is not an exact number at this time, the Elections Division estimates that there are 17,000 provisional ballots and expect that number will grow

**November 6 - 9 AM Dispatch**: Two members of the Board of Elections – County Executive Rich Fitzgerald and Council Member Sam DeMarco – arrived at the Election warehouse this morning and made remarks, thanking the approximately 80 members of the Return Board who were being sworn in. County Executive Fitzgerald, who is the Chair of the Board of Elections, administered the oath of office.

The first item that the board is doing is addressing the 2,200 ballots that would not scan on Election night. These ballots are eligible to be counted and were reviewed, but would not go through the scanner. Authorized representatives of the parties and candidates on the ballot may have individuals here viewing the process and examining the ballots. Once that process is complete, the ballots can be scanned.

In yesterday's mail, 372 ballots were received. They are being reviewed now to see how many were postmarked on or before Election Day.

**November 5 - 1 PM Dispatch**: Allegheny County has counted all of the votes that are able to be voted to this point. Its remaining mail-in and absentee ballots fall into one of three categories:

1 The first category includes ballots that would not scan appropriately  The remedy is to address those ballots during the Return Board process  Again, by state law, the Return Board cannot convene until three days after the election

2. Ballots returned that have been determined by the Elections Division to have sufficiency issues. These ballots will be reviewed as part of the Return Board process. This is an extra step to be as transparent as possible. By state law, the Return Board process cannot begin until three days after the election.

3. Ballots returned by voters impacted by the mailing error announced October 14 (see release) have a potential universe of 29,000. A process was outlined at that time. Subsequently, these ballots were brought up during the federal court case filed by Sean Parnell and Luke Negron related to watchers at additionally offices. As a result of that, the county's process was provided and became part of the order issued by the Court. It specifically stated that Elections could not begin the review, processing and counting of ballots until after the ballot return deadline, which is Friday at 5 PM.

The convening of the Return Board has already been properly advertised and announced  The board is Elections Division staff and will be sworn in at 9 AM on Friday, November 6 at the Elections Warehouse at 901 Pennsylvania Avenue, Pittsburgh 15233

**November 4 - 11 PM Dispatch**: The elections warehouse closed shortly before 11 PM this evening after final uploads of scanned mail-in and absentee ballots and additional in-person precinct results were added to the Election Results webpage.

The current number of ballots cast is 675,928. This includes 313,072 mail-in and absentee ballots.

On Tuesday at 8 PM, we had a total of 348,485 mail-in or absentee ballots returned. The difference between the two numbers – mail-in/absentee votes counted (313,072) and total ballots returned (348,485) is 35,413. That 35,413 includes the universe of voters who received incorrect ballots and were then issued corrected ballots (appx. 29,000), ballots that were unscannable and will need to be duplicated during the Return Board process (appx. 2,250) and miscellaneous ballots like ones missing the date, or an

illegible voter on declaration (appx 4,350) Again, those numbers are all estimates and explain the differences between the number that we have now and the number of ballots returned

The Return Board will convene on Friday morning, November 6, at 9 AM. Although originally planned for the County Office Building, the Return Board will now convene at the Elections Warehouse. Further information and detail will be issued publicly tomorrow.

There are six precincts of the 1,323 that will be reported tomorrow as their results were not transmitted from the regional reporting centers on Tuesday. Those are Braddock Hills 02, Homestead 01-01, Pittsburgh 20-13, Pittsburgh 25-01, Shaler 02-05, and Whitehall 09.

Last, but not least, there is not any canvassing work being done at the warehouse tomorrow and it will be closed to media and observers. The Elections Division staff will be using the day to do administrative work. They will not be available for any media inquiries or interviews tomorrow.

**November 4 - 8 PM Dispatch** A small precinct update (in person voting) was added to the total counts, as well as 20,404 absentee and mail in ballots bringing the total number of votes cast to 658,040

The staff has scanned 287,171 mail-in and absentee ballots thus far with 114,103 of those scanned today since 10:30 AM.

**November 4 - 6:45 PM Dispatch**: A total of 3,366 additional in-person votes have been added to the total number of ballots cast in the county. These additions reflect precincts that did not report yesterday and include Bethel Park 2, Moon 7, North Fayette 2, Pittsburgh 3-4, Pittsburgh 5-12, Pittsburgh 9-1, Pittsburgh 20-2, Pittsburgh 21-1, Pittsburgh 32-4, Ross 4-2, and Upper St. Clair 8-2. This brings the number of ballots cast in the county to 636,468.

The next update will reflect additional scanned mail-in and absentee ballots.

**November 4 - 6 PM Dispatch** We have scanned an additional 29,008 ballots since the last update which brings today's total to 93,699 and the number of ballots cast in the county to 633,468

The staff has also reviewed the mail received today. There were 525 returned ballots that were postmarked on or before Election Day that were received today. This includes regular and overnight mail. An additional 25 ballots were received from FedEx and 12 ballots were postmarked after Election Day.

**November 4 - 5 PM Dispatch**: The staff is continuing to scan ballots at the warehouse.

As reported tin the 2:45 AM update this morning, we received 348,485 ballots back from voters. In that report, we advised that 173,068 ballots had been scanned and uploaded. As of now, we are at 237,759, an increase of 64,691.

We are currently pulling data from the scanners and expect to have another upload to the website in the next 30-45 minutes.

There are 110,726 ballots remaining. An approximate 29,000 ballots will be reviewed as part of the Return Board process which leaves approximately 81,726 ballots to be counted. Of those, not all will be scanned during this process as some have been set aside due to various issues that need to be resolved before they can be opened and processed. We do not have a count of those ballots, but will provide those when one is available.

**November 4 - 1 PM Dispatch**: County staff, authorized representatives and media reported at 10 AM this morning to begin scanning again. Ballots that had been stored overnight in a locked cage under surveillance were brought out at approximately 10:15 AM and scanning began anew around 10:30 AM. As of noon, 15,118 additional ballots have been scanned and those results uploaded to the county's results page. Scanning continues now.

The county announced in October that nearly 29,000 incorrect ballots were sent to voters and, as a result new, corrected ballots were issued to those voters. The effort to reconcile those ballots with the voters will be done as part of the Return Board process. Additionally, there are an unknown number (our priority has been to process, scan and

count the ballots with no issues) of ballots will need to be resolved with the Elections Division in consultation with the Law Department The review of those ballots will begin later today and updates and numbers of those will be provided as they are available

We do not currently have a count of provisional ballots cast in Allegheny County and will likely not have those numbers for several days.

Today's mail has arrived at the Elections warehouse. We estimate that approximately 500 mail-in and absentee ballots were delivered. As announced previously, those ballots will be segregated along with any mail received through Friday.

**November 4 - 2:45 AM Dispatch**: The county has made the decision to suspend scanning and will begin again after 10 AM. Staff are being asked to report at 10 AM and scanning will begin shortly after.

As noted earlier, we have 348,485 mail in and absentee ballots that have been returned Of those, 173,068 are scanned and uploaded and approximately 29,000 will be reviewed manually through the Return Board process The remaining 146,537 will be scanned beginning late morning tomorrow and updates provided as that process begins until complete

All ballots have been secured in the warehouse with County Police patrolling the facility all evening. The facility is also under 24-hour video surveillance.

**November 4 - 1 AM Dispatch**: Late on Tuesday evening, our tech staff noticed that precinct information was not loading as quickly as it should have been. After doing some troubleshooting, and testing, with the tech staff, the decision was made to back out the votes coming in from the regional reporting systems and to transmit them again. For a short period of time, the total votes dropped by about 10,000 and has since continued to go back up with 515 precincts uploaded to the reporting software. The team is updating the system every 15 minutes.

A total of 151,022 mail and absentee ballots have been scanned as of now. The process is continuing with staff separating, extracting and flattening ballots. The expectation is that staff will complete that process within the next 60-90 minutes.

**November 3 - 10:30 PM Dispatch** There have been 348,485 total mail in and absentee ballots recorded as returned Of those, 125,383 are scanned

Of the in person voting, 421 precincts are currently reporting with more coming in

**November 3 - 9:15 PM Dispatch**: There are currently 111,884 mail-in and absentee ballots scanned. The number of ballots marked returned is 347,711, and will continue to go up.

The results webpage is updating about every half hour and now includes both mail-in/absentee ballots and in-person results. You can find a link directly to the results page at https://alleghenyvotes.com.

Please note that we are aware that a number of national outlets are reporting incorrect vote totals and over reporting the number of votes for Donald Trump, apparently because of a typo. This is not an error on the county's side. We are trying to reach the source company to ask for them to correct the data.

**November 3 - 8 PM Dispatch**: Polls are closed.

There are 95,998 ballots scanned currently. The first set of 65,000 has been tabulated and uploaded to the Elections Results page (visit for a direct link - https://alleghenyvotes.com). The remaining will be uploaded immediately afterward.

As of 8 PM today, there were 413,716 applications for mail-in and absentee ballots approved. This includes the emergency ballots that were applied for over the past week.

There have been 347,670 recorded as received as of 8 PM. That number will continue to increase as the other ballots received today will be added to that total.

**November 3 - 7 PM Dispatch**  As of 6 40 PM, we have scanned 82,716 ballots

There are approximately 20,000 ballots that did not contain bar codes and are being manually entered and checked in. We expect that in the next hour or two, the vast majority of the ballots will have had the secrecy envelopes separated from the declaration envelopes with only the final set of ballots needing to go through the

process  There will also be additional ballots that were returned by voters to the County Office Building that will be transported here after polls close and will also go through the process for opening

There are currently 160+ staff working on that process. A third shift of employees will come in relieve this set at 11 PM.

**November 3 - 5 PM Dispatch**: At polling places - The poll worker removed earlier from Pittsburgh 04-10 and 04-11 has been allowed to return by the Court.

We have received reports of a few polling places which did not have voters sign the poll book  Those voters do not need to come back  The numbered list of voters will be used to remedy this issue and note those voters as having cast a vote in this election

Two poll workers at Pittsburgh 15-1, 15-2, 15-3 location removed for fighting; unclear if verbal or physical. Both left before deputies arrived and the other left willingly.

A Court Order was issued for two poll watchers to be removed from Penn Hills 02-03 and 02-04 for alleged voter intimidation. The watchers voluntarily left, but vehemently denied any wrongdoing.

At the warehouse - At 5 PM, five full trays of returned ballots were delivered to the warehouse from the County Office Building. That accounts for approximately 2,000 ballots. Ballots may still be returned until 8 PM.

As of 4 45 PM, 59,799 ballots have been counted

**November 3 - 3 PM Dispatch**: In the 8 AM dispatch, we noted that Pittsburgh 05-05 was unable to open on time. The Judge of Elections' vehicle was stolen with the suitcase inside and has since been recovered. The suitcase does NOT contain ballots. It contains the poll book and keys needed to open the ballot marking device and scanner, as well as other paperwork/materials. The Sheriff's Office also recovered the suitcase and has it in their custody. Four of the five individuals believed to be in the vehicle are in custody, all are juveniles.

This afternoon, the Court ordered the removal of a poll worker from the polling place for Pittsburgh 4-10 and 4-11 on Ellsworth Avenue. Other poll workers reported that the individual was causing a disturbance, taking pictures and video of poling place

activities, and looking at voters' ballots prior to those being scanned

At the warehouse, we have 43,894 ballots scanned as of 3 PM today. The first shift is leaving and a second one of approximately 200 employees is coming in.

**November 3 - 1 PM Dispatch:** As of 1 PM, there are 25,583 ballots scanned. Staff are split approximately 50/50 now between removing the ballot from the privacy envelope and flattening the ballots for scanning. Another 30-40 people are continuing to process the mail that was received late yesterday and today so far.

There are no real updates for polling places  Some sites still have lines, but most appear to be moving smoothly at this time  There have been some complaints of individuals not wearing marks, requests to increase physical distancing and some arguments at polling places  Elections has issued reminders to poll workers and has rover checking to ensure proper physical distancing in place  There has been no need to take any actions relative to arguments

**'November 3 - 11 AM Dispatch:** As of 11 AM this morning, there have been over 9,000 ballots scanned. Yesterday and today's mail is being checked in and processed.

All ballots are in some step of the process with two exceptions:  (1) The ballots returned by voter that received incorrect ballots. Those ballots will be processed manually to reconcile them per the process outlined previously; and, (2) Ballots that have been identified today as needing resolution will be reviewed by a team of elections officials in consultation with the Law Department about further steps.

The Elections Division continues to respond to any issues at polling places.

**November 3 - 9:30 AM Dispatch:** The first few thousand mail-in and absentee ballots will be scanned shortly. Approximately 80% ballots at the warehouse are at some stage of the pre-canvassing process.

Over 105,000 have had the declaration review and had that first envelope opened, and another 10,000 have now had the secrecy envelope opened and are extracting and flattening the ballots for scanning

The three polling places that were delayed in opening are all open and operating now Reports of machines that are not working correctly have all been addressed, with the majority of them being operator error  Additional reports of needs for additional supplies or items for polling places have been addressed, or were provided but poll workers were not aware they already had them

**November 3 - 8:20 AM Dispatch**:  At this time, there are three election districts which have not opened. Elections has staff at each site and is creating a new suitcase with materials so that they can open. They are Monroeville 1-1, McKeesport 12-1 and Pittsburgh 5-5.

At the warehouse, approximately 25% of ballots are at some stage of processing. Over 13,500 have gone through the declaration review and have had the declaration envelope opened and the secrecy envelopes extracted.

**November 3 - 7 AM Dispatch**:  Polls are now open and the pre-canvassing process is beginning shortly of mail-in and absentee ballots.

We have had a few reports, as we do each year, of polling places that will be opening a few minutes late as poll workers set up equipment, or because someone was late

# Exhibit 7

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



## COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

DONALD J TRUMP FOR PRESIDENT INC

vs.

BUCKS COUNTY BOARD OF ELECTIONS

NO. 2020-05786

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Bucks County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney: Britain Henry, Esq., ID: 314279

Self-Represented (Pro Se) Litigant ☐

**Class Action Suit**      ☐ Yes      ☒ No

**MDJ Appeal**      ☐ Yes      ☒ No          **Money Damages Requested** ☐

**Commencement of Action:**          **Amount in Controversy:**

Petition

## Case Type and Code

Miscellaneous:

Other

**Other:**      ELECTION

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

IN RE: CANVASS OF ABSENTEE      STATUTORY APPEAL
AND/OR MAIL-IN BALLOTS OF       No. _____
NOVEMBER 3, 2020 GENERAL
ELECTION

                              (Election Appeal)

## ORDER OF COURT

AND NOW, to-wit, this _____ day of _____, 2020, upon consideration of Petitioners' Notice of Appeal via Petition for Review and finding that an error of law occurred, it is hereby ORDERED, ADJUDGED and DECREED that, following an informal adjudicator proceeding, the decision of the Bucks County Board of Elections in denying Petitioners' objections as to the statutorily prohibited absentee and/or mail-in ballots is reversed. The identified absentee and/or mail-in ballots were not completed / returned / filled out correctly by the electors in accordance with the Pennsylvania Election Code; thus, they are invalid, void and cannot be counted.

BY THE COURT:

_____ J.

15

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

| | |
|---|---|
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | STATUTORY APPEAL No. _____ |

(Election Appeal)

**NOTICE OF APPEAL VIA PETITION FOR REVIEW OF DECISION BY THE BUCKS COUNTY BOARD OF ELECTIONS**

Code: 190

**FILED ON BEHALF OF PETITIONERS,**
Donald J. Trump for President Inc.,
c/o Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222

Heidelbaugh for Attorney General, Inc.,
c/o Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222

Garrity for PA
c/o Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222

Counsel of Record for Petitioners:
Ronald L. Hicks (PA #49520)
Carolyn B. McGee (PA # 208815)
Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@portwright.com
cmcgee@portwright.com

- and -

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Jonathan S. Goldstein (PA #201627)
Britain Henry (PA #31427)
Goldstein Law Partners, LLC
11 Church Road
(610) 949-0444 (Telephone)
jgoldstein@goldsteinlp.com
bhenry@goldsteinlp.com

Case# 2020-05786-0 – JUDGE51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA

| | |
|---|---|
| IN RE: CANVASS OF ABSENTEE AND MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | STATUTORY APPEAL<br>No. _____ |

(Election Appeal)

### NOTICE OF APPEAL VIA PETITION FOR REVIEW OF DECISION BY THE BUCKS COUNTY BOARD OF ELECTIONS

**NOW COMES**  Donald J. Trump for President, Inc., Republican National Committee, Heidelbaugh for Attorney General, Inc., Garrity for PA, (the "Petitioners"), pursuant to Section 3146.8 and 3157(a) of the Pennsylvania Election Code, 25 P.S. §§ 3146.8 & 3157(a), by their undersigned counsel, hereby file this notice of appeal via a petition for this Court to review and reverse the decision of the Bucks County Board of Elections in denying Petitioners' objection to the counting of statutorily prohibited absentee and/or mail-in ballots cast in Bucks County, PA, in the November 3, 2020 General Election.  In support thereof, Petitioners state as follows:

#### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this statutory appeal and venue is proper in this Court pursuant to Section 3157 of the Election Code, 25 P.S. § 3157(a).

#### PARTIES

2.      Petitioner Donald J. Trump for President, Inc. (hereinafter, the "Trump Campaign"), is the principal committee for the reelection campaign of Donald J. Trump, the 45th President of the United States of America (hereinafter, "President Trump").  President Trump is the Republican candidate for the office of the President of the United States of America in the ongoing November 3, 2020 General Election. The Trump Campaign brings this action for itself

Case# 2020-05785-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and on behalf of its candidate, President Trump. President Trump is a "candidate" as that term is defined in Election Code Section 102(a), 25 P.S. § 2602(a). *See Rowland v. Smith,* 83 Pa. D. & C. 99, 101-2 (Pa. Ct. Com. Pl. Dauphin 1952) ("candidate" under the Election Code includes one who is a candidate for nomination for President of the United States). The Trump Campaign is a "political body" as that term is defined in 25 P.S. § 1102. *See In re Canvass of Absentee Ballots of November 4, 2003,* 839 A.2d 451, 457 (Pa. Commw. Ct. 2003) (Under Election Code, status given to political bodies grants standing regarding watchers), *rev'd on other grounds* 843 A.2d 1223 (Pa. 2004); *In re General Election-1985,* 531 A.2d 836, 838 (Pa. Commw. Ct. 1987) (a candidate for office in the election at issue suffers a direct and substantial harm sufficient for standing to contest the manner in which an election will be conducted).

3.     Petitioner, Republican National Committee (hereinafter, the "RNC") is a national political committee that leads the Republican Party of the United stats (hereinafter, the "Republican Party"). RNC works to elect Republican candidates to state and federal offices throughout the United States, including in the Commonwealth of Pennsylvania, and it organizes and operates the Republican National Convention through which its members nominate their candidates for President and Vice President of the United States. The Republican Party includes over thirty million (30,000,000) registered Republicans in all fifty (50) states, the District of Columbia, and the U.S. territories, and constitutes a "political party" as that term is defined in Election Code Section 801, 35 P.S. § 2831. The RNC brings this action for itself, the Republican Party, all of its members, all registered Republican voters, and all nominated Republican candidates in the November 3, 2020, General Election in the Commonwealth of Pennsylvania. As a political committee, the RNC has Article III standing to bring this action. *See e.g., Sandusky County Democratic Party v. Blackwell,* 387 F.3d 565, 573-75 (6th Cir. 2004); *Pa.*

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania; Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Democratic Party v. Republican Party of Pa.*, 2016 U.S. Dist. LEXIS 153944, at *8-9 (E.D. Pa. Nov. 7, 2016); *Democratic Exec. Comm. v. Detzner*, 347 F. Supp. 3d 1017, 1025 (N.D. Fl. 2018); *Orloski*, 564 F. Supp. at 530-31.

4.     Petitioner Heidelbaugh for Attorney General, Inc. is the principal committee for the election campaign of Heather Heidelbaugh for the office of Attorney General of Pennsylvania ("Heidelbaugh"). Heidelbaugh is the Republican candidate for the office of Attorney General of Pennsylvania in the ongoing November 3, 2020 General Election. Heidelbaugh for Attorney General, Inc. brings this action for itself and on behalf of its candidate. Heidelbaugh is a "candidate" as that term is defined in Election Code Section 102(a), 25 P.S. § 2602(a). Heidelbaugh for Attorney General, Inc. is a "political body" as that term is defined in 25 P.S. § 1102. *See In re Canvass of Absentee Ballots of November 4, 2003*, 839 A.2d 451, 457 (Pa. Commw. Ct. 2003) (Under Election Code, status given to political bodies grants standing regarding watchers), *rev'd on other grounds* 843 A.2d 1223 (Pa. 2004); *In re General Election – 1985*, 531 A.2d 836, 838 (Pa. Commw. Ct. 1987) (a candidate for office in the election at issue suffers a direct and substantial harm sufficient for standing to contest the manner in which an election will be concluded).

5.     Petitioner Garrity for PA is the principal committee for the election campaign of Stacy L. Garrity for the office of Treasurer of Pennsylvania ("Garrity").     Garrity is the Republican candidate for the office of the Treasurer of Pennsylvania in the ongoing November 3, 2020 General Election. Garrity for PA brings this action for itself and on behalf of its candidate, Garrity.  Garrity is a "candidate" as that term is defined in Election Code Section 102(a), 25 P.S. § 2602(a). Garrity for PA, Inc. is a "political body" as that term is defined in 25 P.S. § 1102. *See In re Canvass of Absentee Ballots of November 4, 2003*, 839 A.2d 451, 457 (Pa. Commw. Ct.

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

2003) (Under Election Code, status given to political bodies grants standing regarding watchers), *rev'd on other grounds* 843 A.2d 1223 (Pa. 2004); *In re General Election – 1985*, 531 A.2d 836, 838 (Pa. Commw. Ct. 1987) (a candidate for office in the election at issue suffers a direct and substantial harm sufficient for standing to contest the manner in which an election will be concluded)

6.      Respondent Bucks County Board of Elections ("Board") is responsible for overseeing the conduct of elections in Bucks County, including but not limited to the administration of the pre-canvass and canvass sessions of the Board during which absentee and mail-in ballots are opened, reviewed and counted, which is required to be done in accordance with the Election Code.  Its principal place of business is located at 55 East Court Street, Doylestown, PA 18901.

## FACTS AND PROCEDURAL BACKGROUND

7.      Codified Sections 3146.1 – 3146.9 of the Pennsylvania Election Code provides for the voting by electors through official absentee ballots in any primary or election held in the Commonwealth of Pennsylvania. *See* 25 P.S. §§ 3145.1-3146.9.

8.      Section 3145.6 specifically addresses how an absentee elector shall complete their absentee ballot, while section 3146.6a details the assistance permitted in voting by certain absentee electors. *See* 25 P.S. §§ 3145.6 and 3146.6a.

9.      In Pennsylvania, absentee voting has been held to be "an extraordinary procedure" in which the "ordinary safeguards of a confrontation of the voter by the election officials and watchers for the respective parties and candidates at the polling place are absent." *Canvass of Absentee Ballots of April 28, 1964, Primary Election*, 34 Pa.D.&C.2d 419, 420 (C.C.P. Phila. 1964). Although it is "a salutary feature in our democratic processes of

4

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

government," *Absentee Ballots Case (No. 1)*, 245 A.2d 258, 261 (Pa. 1968); absentee voting is a privilege that is "fraught with evils and frequently results in voided votes." *Decision of County Board of Election*, 29 Pa.D.&C.2d 499, 504 (C.C.P. Lebanon 1964).    Thus, it has been recognized by the Pennsylvania courts that "the provisions of the law regarding absentee voting must be strictly construed and the rights created thereunder not extended beyond the plain and obvious intention of the act." *Decision of County Board of Election*, 29 Pa.D.&C.2d at 504; *see also In re: April 10, 1984 Election of E. Whiteland Twp., Chester Co.*, 483 A.2d 1033, 1035 (Pa. Commw. Ct. 1984); *Canvass of Absentee Ballots of April 28, 1964, Primary Election*, 34 Pa.D.&C.2d at 421.

10.    On October 31, 2019, the Pennsylvania General Assembly enacted Act 77.  *See* Act 2019-77 (S.B. 421), § 8, approved October 31, 2019, eff. October 31, 2019. Act 77 made significant changes to Pennsylvania's elections, including the adoption of no excuse mail-in voting for all qualified electors. *See, e.g.,* 25 P.S. §§ 3150.11-3150.17.

11.    In extending the right to vote to include absentee voting and now no-excuse mail-in voting, the Pennsylvania General Assembly has properly provided in the Pennsylvania Election Code various safeguards to insure that the exercise of the absentee and mail-in voting privilege is not abused either directly or indirectly, inadvertently or maliciously. *See* 25 P.S. §§ 3146.1-9 (voting by qualified absentee electors) and 3150.11-3150.18 (voting by qualified mail-in electors).

12.    The public has a strong interest in ensuring that the election is conducted in a free and fair manner and that all duly qualified and properly registered voters have equal and adequate opportunity to vote, whether they vote in person, by absentee or mail-in ballot.

13.    On November 3, 2020, a general election was held in which Petitioners were

Case# 2020-05786-0 - JUDGE;51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

candidates and/or registered voters (as is the case for Heidelbaugh and Garrity who did in fact cast their votes).

14.     The November 3, 2020 general election was the first general election following the enactment of Act 77 in 2019, which made significant changes to Pennsylvania's elections, including the adoption of no excuse mail-in voting for all qualified electors. *See, e.g.,* 25 P.S. §§ 3150.11-3150.17.   Presumably knowing of all the risks associated with mail-in voting, the General Assembly enacted no excuse mail-in voting with certain restrictions designed to ensure the ballot's secrecy and to prevent fraud.   One of those restrictions, for example, forbidding third-party delivery, was replicated in Act 77 and was confirmed by the Pennsylvania Supreme Court as recently as September 17, 2020. *See* 25 P.S. § 3150.16(a); *Crossey v. Boockvar,* No. 108 MM 2020, 2020 Pa. LEXIS 4868, at *4 (Pa., Sept. 17, 2020) ("It has long been the law of this Commonwealth, per 25 P.S. § 3146.6(a), that third-person delivery of absentee ballots is not permitted.  Act 77 adds a substantially identical provision for mail-in ballots, which we likewise conclude forbids third-party delivery of mail-in votes.") (citations omitted).

15.     In *Pa. Democratic Party v. Boockvar,* 2020 WL 5554644, 2020 Pa. LEXIS 4872 (Pa., Sept. 17, 2020), the PA Supreme Court declared that absentee and mail-in ballots cast in violation of Election Code's mandatory requirements are void and cannot be counted. *Id.,* 2020 Pa . LEXIS 4872, at *66-*74.

16.     At issue in this appeal is Sections 3146.6 and 3150.16(a) of the Election Code, which states in pertinent part:

> Except as provided in paragraphs (2) and (3), at any time after receiving an official absentee ballot, but on or before eight o'clock P.M. the day of the primary or election, the elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in

6

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3146.6(a).

17.  Act 77 duplicated this section for mail-in ballots, as codified at 25 P.S. § 3150.16(a):

> At any time after receiving an official mail-in ballot, but on or before eight o'clock P.M. the day of the primary or election, the mail-in elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

5 P.S. § 3150.16(a)

18.  The requirements set forth in Election Code Sections 3146.6(a) and 3150.16(a) are mandatory. *See* 25 P.S. §§ 3146.6(a) & 3150.16(a). Those sections mandate that the elector fold the ballot, enclose it, and secure it in the smaller envelope on which is printed "Official Election Ballot," and then place the inner secrecy envelope into the second envelope on which is printed the form of declaration of the elector, the elector's local election district, and the address of the elector's county board of election. Accordingly, the PA Supreme Court ruled that a mail-in or absentee ballot that is not enclosed in the statutorily-mandated inner secrecy envelope must

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

be disqualified and not counted.  2020 Pa . LEXIS 4872, at *73.]

19.    The law is clear that during the counting at any pre-canvass and/or canvass meeting of absentee and mail-in ballots, those ballots which suffer from the following deficiencies are void and may not be counted: (i) without inner secrecy envelopes, (ii) with inner secrecy envelopes that have marks, text, or symbols which identify the elector, the elector's political affiliation or the elector's candidate preference, and/or (iii) with the declaration envelopes not filled out, dated, and/or signed.  25 P.S. §§ 3146.6(a) & 3150.16(a).

20.    Under 25 P.S. § 3146.8, ballots received after 8:00 p.m., on the Tuesday November 3, 2020, were set aside and separated into five (5) categories as follows: (1) Postmarked November 3rd or earlier; (2) Illegible Postmark; (3) No Postmark; (4) Postmarked after November 3rd; and (5) Miscellaneous / Not Sure.  Of the 629 ballots to be further reviewed, Petitioners challenge the ballots accepted by the Board of Elections .  *See* 25 P.S. § 3146.8(g)(4).

21.    Under 25 P.S. § 3146.8, ballots received prior to 8:00 p.m., on the Tuesday November 3, 2020, were set aside for defects.  These ballots totaled 2,296 and were separated into the following categories: (1) No signatures – 111;  (2) No Date / Partial Date - 1,197; (3) No Printed Name Or Address – 644; (4) Partial Addresses – 87;  (5) Mismatched Addresses – 247; (6) Mismatched Names -13; and (7) Miscellaneous - 4.

22.    The Board of Elections took the following actions:

      a.   Declined to accept as votes 111 ballots with no signatures;

      b.   Accepted as votes 1,197 ballots with no date or a partial date;

      c.   Accepted as votes 644 ballots with no printed name or address;

      d.   Accepted as votes 87 ballots with a partial address;

      e.   Accepted as votes 247 ballots with a mismatched address;

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

       f.   Declined to accept as votes 13 ballots with mismatched names; and

       g.   Declined to accept as votes 4 ballots for miscellaneous reasons.

23.    The Board of Elections, accordingly, accepted a total of 2,175 of the 2,296 defective ballots as votes.

24.    Petitioners challenge the 2,175 defective ballots accepted as of votes by the Board of Elections. *See* 25 P.S. § 3146.8(g)(4).

25.    Under 25 P.S. § 3146.8, , the Board of Elections set aside 805 ballots received prior to 8:00 p.m., on the Tuesday November 3, 2020.

26.    These 805 ballots were separated into the following categories: (1) Naked Ballots – 708; (2) Unsealed Privacy Envelopes – 69; and (3) Markings – 28.

27.    The Board of Elections took the following actions in regard to these 805 ballots:

       a.   Declined to accept as votes 708 naked ballots;

       b.   Accepted as votes 69 ballots with unsealed privacy envelopes;

       c.   Declines to accept as votes 21 of the ballots with markings, and accepts as votes 7 of the ballots with markings.

28.    The Board of Elections, accordingly, accepted a total of 76 of the 805 ballots as votes.

29.    Petitioners challenge these 76 ballots accepted as of votes by the Board of Elections. *See* 25 P.S. § 3146.8(g)(4)

30.    Under 25 P.S. § 3146.8(d), "whenever it shall appear by due proof that any absentee elector or mail-in elector who has returned his ballot in accordance with the provisions of this act ***has died prior to the opening of the polls on the day of the primary or election, the ballot of such deceased elector shall be rejected*** by the canvassers but the counting of the ballot

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

of an absentee elector or a mail-in elector thus deceased shall not of itself invalidate any nomination or election. 25 P.S. § 3146.8(d)(emphasis added).

31.     Under 25 P.S. § 3146.8(g)(3) and (h), the ballots of absentee and/or mail-in voters whose identification has not been verified by election officials are not to be counted during any pre-canvass and canvass meeting. 25 P.S. § 3146.8(g)(3) and (h).

32.     Under 25 P.S. §§ 3146.6(a) and 3150.16(a), the ballots of absentee and/or mail-in voters that were not enclosed and/or securely sealed in an envelope with the "Official Election Ballot" either "printed, stamped or endorsed," shall be set aside and not counted. *See* 25 P.S. § 3146.6(a) ("... the elector shall ... enclose and securely seal the [ballot] in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.'"); 25 P.S. § 3150.16(a). *See also Pa. Democratic Party v. Boockvar*, 2020 Pa. LEXIS 4872, at *70-74, 2020 WL 5554644 (Pa. Sept. 17, 2020) ("shall" is mandatory).

33.     In summary, the statutorily prohibited ballots fall into the following categories:

   a.  For failure to seal the secrecy envelopes, pursuant to 25 P.S. §§ 3146.6(a) and 3150.16(a);

   b.  For failure to include a date or including only a partial date;

   c.  For failure to include a printed name and/or address;

   d.  For including only a partial address;

   e.  For including a mismatched address

34.     On November 7, 2020, during an informal adjudicatory proceeding before the Board of Elections, Petitioners asserted objections to the counting of the aforementioned 805 and 76 statutorily prohibited absentee and/or mail-in ballots based on the deficiency identified herein and these ballots were placed at issue, were sequestered and set aside at the Bucks County Board

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

of Elections.

35.    On November 7, 2020, the Bucks County Board of Elections held a hearing as to the subject statutorily prohibited absentee and/or mail-in ballots.

36.    At the hearing before the Bucks County Board of Elections, 69 unsealed privacy envelopes were accepted, and 7 envelopes with markings were accepted.

37.    At the conclusion of the informal adjudication on November 7, 2020, the Bucks County Board of Elections denied Petitioners' objections as to those identified statutorily prohibited ballots herein

38.    It is believed and therefore averred that by mistake, error or other irregularity, the Bucks County Board of Elections has improperly construed the Pennsylvania Election Code to permit the counting of the cited absentee and/or mail in ballots at issue in this appeal, which are void as a matter of law and should be prohibited from being counted pursuant to 25 P.S. §§ 3146.6(a) and 3150.16(a).

39.    Following an informal adjudication, the November 7, 2020 decision of the Board, which denied Petitioners' objections to the aforementioned statutorily prohibited absentee and/or mail-in ballots, constitutes an abuse of discretion and involve errors of law.

40.    The Bucks County Board of Elections is not empowered to re-write the Election Code or adopt rules, regulations, instructions or decisions that are inconsistent with the Election Code. *See* 25 P.S. § 2642.

41.    It is undisputed that the mail-in and /or absentee ballots identified in this Petition..

42.    Accordingly, the decision of the Bucks County Board of Elections denying Petitioners' objections as to the absentee and/or mail-in ballots identified here is based on a clear error of law and must be reversed.

11

43.    This Notice of Appeal via Petition for Review has been timely made.

WHEREFORE, Petitioners respectfully request this Honorable Court to enter an order that reverses the decision of the Bucks County Board of Elections and sustains Petitioners' objections as to those statutorily prohibited absentee and/or mail-in ballots cast by voters in the November 3, 2020 General Election, and for such other and further relief as provided by the Pennsylvania Election Code and/or as this Court deems just and appropriate.

Dated:   November 9, 2020

Respectfully submitted,

/s/ Britain Henry                    .
Jonathan S. Goldstein (PA # 201627)
Britain Henry (PA #314279)
**Goldstein Law Partners, LLC**
11 Church Road
Hatfield, PA 19440
(610) 949-0444
jgoldstein@goldsteinlp.com
bhenry@goldsteinlp.com

Ronald L. Hicks, Jr. (PA #49520)
Carolyn B. McGee (PA #208815)
**Porter Wright Morris & Arthur, LLP**
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@portwright.com
cmcgee@portwright.com

*Counsel for Petitioners*

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Jonathan S. Goldstein hereby swear or affirm that I am counsel of record for Petitioners in the within action; that the verification of the Petitioners could not be obtained within the time allowed for filing this Petition; and that the facts contained in the attached Petition are true and correct based on information supplied to be by others.

This statement is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Dated: November 9, 2020

13

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Jonathan S. Goldstein hereby swear or affirm that I am counsel of record for Petitioners in the within action; that the verification of the Petitioners could not be obtained within the time allowed for filing this Petition; and that the facts contained in the attached Petition are true and correct based on information supplied to be by others.

This statement is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Dated: November 9, 2020

Case# 2020-05786-0 - JUDGE:51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

/s/ Britain Henry                    .

14

Case# 2020-05786-0 - JUDGE.51 Received at County of Bucks Prothonotary on 11/09/2020 3:23 PM, Fee = $258.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Jonathan S. Goldstein hereby swear or affirm that I am counsel of record for Petitioners in the within action; that the verification of the Petitioners could not be obtained within the time allowed for filing this Petition; and that the facts contained in the attached Petition are true and correct based on information supplied to be by others.

This statement is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Dated: November 9, 2020

13

# Exhibit 8

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

DONALD J TRUMP FOR PRESIDENT INC

vs.

MONTGOMERY COUNTY BOARD OF ELECTIONS

NO.  2020-18680

## CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document <u>commencing an action</u> in the Montgomery County Court of Common Pleas.  The information provided herein is used solely as  an aid in tracking cases in the court system.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

Name of Plaintiff/Appellant's Attorney:   JONATHAN S GOLDSTEIN, Esq., ID: 201627

Self-Represented (Pro Se) Litigant  ☐

**Class Action Suit**        ☐ Yes    ☒ No

**MDJ Appeal**      ☐   Yes    ☒   No          <u>**Money Damages Requested**</u> ☐

<u>**Commencement of Action**</u>:               <u>**Amount in Controversy**</u>:

Petition

## Case Type and Code

Miscellaneous: _____

Other _____

**Other:**        PETITION FOR REVIEW _____

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM. Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

IN RE: CANVASS OF ABSENTEE AND
MAIL-IN BALLOTS OF NOVEMBER 3,
2020 GENERAL ELECTION

No. _____

**PETITION FOR REVIEW OF DECISION
BY THE MONTGOMERY COUNTY
BOARD OF ELECTIONS**

Code: 190

**FILED ON BEHALF OF PETITIONERS,**
Donald J. Trump for President Inc.,
c/o Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222

Republican National Committee
c/o Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222

Heidelbaugh for Attorney General, Inc.,
c/o Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222

Garrity for PA
c/o Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222

Daniel J. Wissert
c/o Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Counsel of Record for Petitioners:**
Ronald L. Hicks, Jr. (PA #49520)
Carolyn B. McGee (PA #208815)
Porter Wright Morris & Arthur LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
cmcgee@porterwright.com

*- and –*

Jonathan S. Goldstein (PA #201627)
Britain Henry (PA # 314279)
Goldstein Law Partners, LLC
11 Church Road
Hatfield, PA 19440
(610) 949-0444 (Telephone)
jgoldstein@goldsteinlp.com
bhenry@goldsteinlp.com

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM. Fee = Fees = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

IN RE: CANVASS OF ABSENTEE AND          :
MAIL-IN BALLOTS OF NOVEMBER 3,          :   No.:
2020 GENERAL ELECTION                    :
                                         :
                                         :

## PETITION FOR REVIEW OF DECISION BY THE MONTGOMERY COUNTY BOARD OF ELECTIONS

**NOW COMES**  Donald J. Trump for President Inc., Republican National Committee, Heidelbaugh for Attorney General, Inc., Garrity for PA, and Daniel J. Wissert (the "Petitioners"), pursuant to Section 3146.8 and 3157(a) of the Pennsylvania Election Code, 25 P.S. §§ 3146.8 & 3157(a), by their undersigned counsel, hereby file this petition for this Court to review and reverse the decision of the Montgomery County Board of Elections in denying Petitioners' objection to the counting of statutorily prohibited absentee and mail-in ballots cast in Montgomery County, PA in the November 3, 2020 General Election.  In support thereof, Petitioners state as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this statutory appeal and venue is proper in this Court pursuant to Section 3157 of the Election Code, 25 P.S. § 3157(a).

### PARTIES

2.      Petitioner Donald J. Trump for President, Inc. (hereinafter, the "Trump Campaign"), is the principal committee for the reelection campaign of Donald J. Trump, the 45th President of the United States of America (hereinafter, "President Trump").  President Trump is the Republican candidate for the office of the President of the United States of America in the ongoing November 3, 2020 General Election. The Trump Campaign brings this action for itself and on behalf of its candidate, President Trump. President Trump is a "candidate" as that term is

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

defined in Election Code Section 102(a), 25 P.S. § 2602(a).  *See Rowland v. Smith,* 83 Pa. D. & C. 99, 101-2 (Pa. Ct. Com. Pl. Dauphin 1952) ("candidate" under the Election Code includes one who is a candidate for nomination for President of the United States).  The Trump Campaign is a "political body" as that term is defined in 25 P.S. § 1102.  *See In re Canvass of Absentee Ballots of November 4, 2003*, 839 A.2d 451, 457 (Pa. Commw. Ct. 2003) (Under Election Code, status given to political bodies grants standing regarding watchers), *rev'd on other grounds* 843 A.2d 1223 (Pa. 2004); *In re General Election-1985*, 531 A.2d 836, 838 (Pa. Commw. Ct. 1987) (a candidate for office in the election at issue suffers a direct and substantial harm sufficient for standing to contest the manner in which an election will be conducted).

3.      Petitioner, Republican National Committee (hereinafter, the "RNC") is a national political committee that leads the Republican Party of the United States (hereinafter, the "Republican Party").  The RNC works to elect Republican candidates to state and federal offices throughout the United States, including in the Commonwealth of Pennsylvania, and it organizes and operates the Republican National Convention through which its members nominate their candidates for President and Vice President of the United States.  The Republican Party includes over thirty million (30,000,000) registered Republicans in all fifty (50) states, the District of Columbia, and the U.S. territories, and constitutes a "political party" as that term is defined in Election Code Section 801, 25 P.S. § 2831.  The RNC brings this action for itself, the Republican Party, all of its members, all registered Republican voters, and all nominated Republican candidates in the November 3, 2020 General Election in the Commonwealth of Pennsylvania.  As a political committee, the RNC has Article III standing to bring this action.  *See, e.g., Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 573-74 (6th Cir. 2004); *Pa. Democratic Party v. Republican Party of Pa.*, 2016 U.S. Dist. LEXIS 153944, at *8-9 (E.D. Pa. Nov. 7, 2016);

2

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM. Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Democratic Exec. Comm. v. Detzner,* 347 F. Supp. 3d 1017, 1025 (N.D. Fl. 2018); *Orloski,* 564 F. Supp. at 530-31.

4.     Petitioner Heidelbaugh for Attorney General, Inc. is the principal committee for the election campaign of Heather Heidelbaugh for the office of Attorney General of Pennsylvania ("Heidelbaugh"). Heidelbaugh is the Republican candidate for the office of Attorney General of Pennsylvania in the ongoing November 3, 2020 General Election. Heidelbaugh for Attorney General, Inc. brings this action for itself and on behalf of its candidate. Heidelbaugh is a "candidate" as that term is defined in Election Code Section 102(a), 25 P.S. § 2602(a). Heidelbaugh for Attorney General, Inc. is a "political body" as that term is defined in 25 P.S. § 1102. *See In re Canvass of Absentee Ballots of November 4, 2003*, 839 A.2d 451, 457 (Pa. Commw. Ct. 2003) (Under Election Code, status given to political bodies grants standing regarding watchers), *rev'd on other grounds* 843 A.2d 1223 (Pa. 2004); *In re General Election-1985*, 531 A.2d 836, 838 (Pa. Commw. Ct. 1987) (a candidate for office in the election at issue suffers a direct and substantial harm sufficient for standing to contest the manner in which an election will be conducted).

5.     Petitioner Garrity for PA is the principal committee for the election campaign of Stacy L. Garrity for the office of Treasurer of Pennsylvania ("Garrity"). Garrity is the Republican candidate for the office of Treasurer of Pennsylvania in the ongoing November 3, 2020 General Election. Garrity for PA brings this action for itself and on behalf of its candidate, Garrity. Garrity is a "candidate" as that term is defined in Election Code Section 102(a), 25 P.S. § 2602(a). Garrity for PA is a "political body" as that term is defined in 25 P.S. § 1102. *See In re Canvass of Absentee Ballots of November 4, 2003*, 839 A.2d 451, 457 (Pa. Commw. Ct. 2003) (Under Election Code, status given to political bodies grants standing regarding watchers), *rev'd on other grounds* 843

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

A.2d 1223 (Pa. 2004); *In re General Election-1985*, 531 A.2d 836, 838 (Pa. Commw. Ct. 1987) (a candidate for office in the election at issue suffers a direct and substantial harm sufficient for standing to contest the manner in which an election will be conducted).

6. Petitioner, Daniel J. Wissert is the Republican candidate for the office of Pennsylvania House of Representatives to represent District 70 in the ongoing November 3, 2020 General Election. Daniel J. Wissert brings this action for himself and as a candidate. He is a "candidate" as that term is defined in Election Code Section 102(a), 25 P.S. § 2602(a)

7. Respondent Montgomery County Board of Elections ("Board") is responsible for overseeing the conduct of elections in Montgomery County, including but not limited to the administration of the pre-canvass and canvass sessions of the Board during which absentee and mail-in ballots are opened, reviewed and counted, which is required to be done in accordance with the Election Code. Its principal place of business is located at One Montgomery Plaza, 425 Swede Street, Norristown, PA 19401.

## **FACTS AND PROCEDURAL BACKGROUND**

8. Codified Sections 3146.1 – 3146.9 of the Pennsylvania Election Code provides for the voting by electors through official absentee ballots in any primary or election held in the Commonwealth of Pennsylvania. *See* 25 P.S. §§ 3145.1-3146.9.

9. Section 3145.6 specifically addresses how an absentee elector shall complete their absentee ballot, while section 3146.6a details the assistance permitted in voting by certain absentee electors. *See* 25 P.S. §§ 3145.6 and 3146.6a.

10. In Pennsylvania, absentee voting has been held to be "an extraordinary procedure" in which the "ordinary safeguards of a confrontation of the voter by the election officials and watchers for the respective parties and candidates at the polling place are absent." *Canvass of*

4

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Absentee Ballots of April 28, 1964, Primary Election*, 34 Pa.D.&C.2d 419, 420 (C.C.P. Phila. 1964). Although it is "a salutary feature in our democratic processes of government," *Absentee Ballots Case (No. 1)*, 245 A.2d 258, 261 (Pa. 1968); absentee voting is a privilege that is "fraught with evils and frequently results in voided votes." *Decision of County Board of Election*, 29 Pa.D.&C.2d 499, 504 (C.C.P. Lebanon 1964). Thus, it has been recognized by the Pennsylvania courts that "the provisions of the law regarding absentee voting must be strictly construed and the rights created thereunder not extended beyond the plain and obvious intention of the act." *Decision of County Board of Election*, 29 Pa.D.&C.2d at 504; *see also In re: April 10, 1984 Election of E. Whiteland Twp., Chester Co.*, 483 A.2d 1033, 1035 (Pa. Commw. Ct. 1984); *Canvass of Absentee Ballots of April 28, 1964, Primary Election*, 34 Pa.D.&C.2d at 421.

11.     On October 31, 2019, the Pennsylvania General Assembly enacted Act 77. *See* Act 2019-77 (S.B. 421), § 8, approved October 31, 2019, eff. October 31, 2019. Act 77 made significant changes to Pennsylvania's elections, including the adoption of no excuse mail-in voting for all qualified electors. *See, e.g.,* 25 P.S. §§ 3150.11-3150.17.

12.     In extending the right to vote to include absentee voting and now no-excuse mail-in voting, the Pennsylvania General Assembly has properly provided in the Pennsylvania Election Code various safeguards to insure that the exercise of the absentee and mail-in voting privilege is not abused either directly or indirectly, inadvertently or maliciously. *See* 25 P.S. §§ 3146.1-9 (voting by qualified absentee electors) and 3150.11-3150.18 (voting by qualified mail-in electors).

13.     The public has a strong interest in ensuring that the election is conducted in a free and fair manner and that all duly qualified and properly registered voters have equal and adequate opportunity to vote, whether they vote in person, by absentee or mail-in ballot.

14.     On November 3, 2020, a general election was held in which Petitioners were

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

candidates and/or registered voters (as is this case for Heidelbaugh, Garrity and Daniel J. Wissert, who did in fact cast their votes).

15.    The November 3, 2020 general election was the first general election following the enactment of Act 77 in 2019 which made significant changes to Pennsylvania's elections, including the adoption of no excuse mail-in voting for all qualified electors. *See, e.g.,* 25 P.S. §§ 3150.11-3150.17. Presumably knowing of all the risks associated with mail-in voting, the General Assembly enacted no excuse mail-in voting with certain restrictions designed to ensure the ballot's secrecy and to prevent fraud. One of those restrictions, for example, forbidding third-party delivery, was replicated in Act 77 and was confirmed by the Pennsylvania Supreme Court as recently as September 17, 2020. *See* 25 P.S. § 3150.16(a); *Crossey v. Boockvar,* No. 108 MM 2020, 2020 Pa. LEXIS 4868, at *4 (Pa., Sept. 17, 2020) ("It has long been the law of this Commonwealth, per 25 P.S. § 3146.6(a), that third-person delivery of absentee ballots is not permitted. Act 77 adds a substantially identical provision for mail-in ballots, which we likewise conclude forbids third-party delivery of mail-in votes.") (citations omitted).

16.    In *Pa. Democratic Party v. Boockvar*, 2020 WL 5554644, 2020 Pa . LEXIS 4872 (Pa., Sept. 17, 2020), the PA Supreme Court declared that absentee and mail-in ballots cast in violation of Election Code's mandatory requirements are void and cannot be counted. *Id.*, 2020 Pa . LEXIS 4872, at *66-*74.

17.    At issue in this appeal are Sections 3146.6(a) and 3150.16(a) of the Election Code. Section 3146.6(a) states:

> Except as provided in paragraphs (2) and (3), at any time after receiving an official absentee ballot, but on or before eight o'clock P.M. the day of the primary or election, the elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the

6

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM. Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

25 P.S. § 3146.6(a)

18.    Act 77 duplicated this section for mail-in ballots, as codified at 25 P.S. § 3150.16(a):

> At any time after receiving an official mail-in ballot, but on or before eight o'clock P.M. the day of the primary or election, the mail-in elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

5 P.S. § 3150.16(a)

19.    The requirements set forth in Election Code Sections 3146.6(a) and 3150.16(a) are mandatory. *See* 25 P.S. §§ 3146.6(a) & 3150.16(a).

20.    The law is clear that during the counting at any pre-canvass and/or canvass meeting of absentee and mail-in ballots, those ballots which suffer from the following deficiencies are void and may not be counted: (i) without inner secrecy envelopes, (ii) with inner secrecy envelopes that have marks, text, or symbols which identify the elector, the elector's political affiliation or the elector's candidate preference, and/or (iii) with the declaration envelopes not filled out, dated,

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM. Fee = Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and/or signed.  25 P.S. §§ 3146.6(a) & 3150.16(a).

21.      Petitioners seek relief in this action in light of the Respondent's failure and refusal to adhere to the mandatory requirements of 25 P.S. §§ 3146.6(a) & 3150.16(a) in that they are canvassing and counting absentee and mail-in ballots for which the outer declaration envelope is not completed filled in with the elector's signature, address and/or date of execution.

22.      At this time, there are approximately 600 ballots which suffer from these deficiencies.

23.      On November 4, 2020, counsel for Petitioners was notified via telephone call from Joshua Stein, Solicitor for Montgomery County, as to the existence of the aforementioned ballots and the Montgomery County Board of Elections intent to canvass and count said ballots, despite immediate objection from Petitioners as to validity of the identified ballots for failure to comply with the mandatory requirements of 25 P.S. §§ 3146.6(a) & 3150.16(a).

24.      It is believed and therefore averred that by mistake, error or other irregularity, the Montgomery County Board of Elections has improperly construed the Pennsylvania Election Code to permit the counting of the aforementioned absentee and mail in ballots at issue in this appeal, which are void as a matter of law and should be prohibited from being counted pursuant to 25 P.S. §§ 3146.6(a) & 3150.16(a).

25.      The November 4, 2020 decision of the Board which denied Petitioners' objections to the aforementioned 600 of statutorily prohibited absentee and mail-in ballots constitute an abuse of discretion and is clearly contrary and in violation of the Pennsylvania Election Code.

26.      The Montgomery County Board of Elections is not empowered to re-write the Election Code or adopt rules, regulations, instructions or decisions that are inconsistent with the Election Code.  *See* 25 P.S. § 2642.

8

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

27.     Accordingly, the decision of the Montgomery County Board of Elections denying
Petitioners' objections as to the absentee and mail-in ballots cast in violation of 25 P.S. §§
3146.6(a) & 3150.16(a), by failing to have all of the requirement information completed on the
outer declaration envelope, is based on a clear error of law and must be reversed.

28.     This Notice of Appeal via Petition for Review has been timely made.

WHEREFORE, Petitioners respectfully request this Honorable Court to enter an order that
reverses the decision of the Montgomery County Board of Elections and sustains Petitioners'
objections as to those statutorily prohibited absentee and mail-in ballots cast by voters in violation
25 P.S. §§ 3146.6(a) & 3150.16(a) in the November 3, 2020 General Election, and for such other
and further relief as provided by the Pennsylvania Election Code and/or as this Court deems just
and appropriate.

Dated:   November 5, 2020                        Respectfully submitted,

Jonathan S. Goldstein (PA #201627)
Brittain Henry (PA #314279)
**Goldstein Law Partners, LLC**
11 Church Road
Hatfield, PA 19440
(610) 949-0444 (Telephone)
jgoldstein@goldsteinlp.com
bhenry@goldsteinlp.com

Ronald L. Hicks, Jr. (PA #49520)
Carolyn B. McGee (PA #208815)
**Porter Wright Morris & Arthur LLP**
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500 (Telephone)
(412) 235-4510 (Fax)
rhicks@porterwright.com
cmcgee@porterwright.com
*Counsel for Petitioners*

9

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Jonathan Goldstein, hereby swear or affirm that I am counsel of record for Petitioners in the within action; that the verification of the Petitioners could not be obtained within the time allowed for filing this Petition; and that the facts contained in the attached Petition are true and correct based on information supplied to be by others.

This statement is made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Dated: November _5_, 2020

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

11

Case# 2020-18680-0 Docketed at Montgomery County Prothonotary on 11/05/2020 3:16 PM, Fee = $289.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| IN RE: CANVASS OF ABSENTEE AND/OR MAIL-IN BALLOTS OF NOVEMBER 3, 2020 GENERAL ELECTION | : No. _____ <br> : <br> : <br> : |

## <u>ORDER OF COURT</u>

AND NOW, to-wit, this _____ day of _____, 2020, upon consideration of Petitioners' Petition for Review and finding that an error of law occurred, it is hereby ORDERED, ADJUDGED and DECREED that the decision of the Montgomery County Board of Elections in denying Petitioners' objections as to the statutorily prohibited absentee and mail-in ballots which are void under 25 P.S. §§ 3146.6(a) & 3150.16(a) by failing to have all of the requirement information completed on the outer declaration envelope (the signature of the elector, address and date of execution) is reversed. The identified absentee and mail-in ballots were not completed or filled out correctly by the electors in accordance with the Pennsylvania Election Code; thus, they are invalid, void and cannot be counted.

BY THE COURT:

_____J.

# Exhibit 9

# LAW OFFICES OF LINDA A. KERNS, LLC

1420 LOCUST STREET                                    (PA TEL)   215.731.1400
SUITE 200                                             (FAX)   215.701.4154
PHILADELPHIA, PA 19102                                WWW.LINDAKERNSLAW.COM


LINDA A. KERNS (PA, NJ, LLM IN TAXATION)


November 11, 2020

*Via Electronic Mail Only*

All Counsel: Distribution list attached

> Re:   **Donald J. Trump For President, Inc. et al v. Boockvar et al**
>       **4:20-cv-02078-MWB**

Counsel:

Recognizing that we have not had a Rule 26(f) conference, I seek, on behalf of plaintiffs, a stipulation under Fed. R. Civ. P. 26 (d) (1).  I ask all defendants to agree to answer limited discovery requests by 5:00pm EST on Monday, November 16, 2020. For your information, and considering the exigencies of the case, I attach a copy of the Interrogatories that I would request that you answer.

To the extent we cannot reach an agreement on this issue, I will seek an order from the Court timely compelling responses.  I look forward to your response to this request for a stipulation by 5:00 pm on Thursday, November 12, 2020. Thank you for your courtesies.

Very truly yours,

*/s/ Linda A. Kerns*

LINDA A. KERNS

LAK/la

Attachment

cc:   Donald J. Trump for President, Inc.
      Lawrence Roberts
      David John Henry

Counsel Distribution List

Andrew F. Szefi
andrew.szefi@alleghenycounty.us

Brian J. Taylor
btaylor@kingspry.com

Christina C Matthias
ccm@hangley.com

Clifford B. Levine
clevine@cohenlaw.com

Daniel T Donovan
daniel.donovan@kirkland.com

Daniel T. Brier
dbrier@mbklaw.com

Donna A. Walsh
dwalsh@mbklaw.com

Edward D. Rogers
rogerse@ballardspahr.com

Elizabeth Wingfield
wingfielde@ballardspahr.com

Elizabeth A. Dupuis
bdupuis@babstcalland.com

John B. Dempsey
jdempsey@mbklaw.com

Karen Mascio Romano
kromano@attorneygeneral.gov

Keli M. Neary
kneary@attorneygeneral.gov

Mark A. Aronchick
maronchick@hangley.com

**Law Offices of Linda A. Kerns, LLC**                    **Page 3**

Michele D. Hangley
mhangley@hangley.com

Molly E Meacham
mmeacham@babstcalland.com

Nicole J. Boland
nboland@attorneygeneral.gov

Robert A Wiygul
raw@hangley.com

Stephen Moniak
smoniak@attorneygeneral.gov

Terence M Grugan
grugant@ballardspahr.com

Timothy D. Katsiff
KatsiffT@ballardspahr.com

Virginia Scott
virginia.scott@alleghenycounty.us

Witold J. Walczak
vwalczak@aclupa.org

# Exhibit 10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; LAWRENCE ROBERTS; and DAVID JOHN HENRY; | ) ) ) ) | CIVIL ACTION |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 20-CV- 02078-MWB |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania; ALLEGHENY COUNTY BOARD OF ELECTIONS; CENTRE COUNTY BOARD OF ELECTIONS; CHESTER COUNTY BOARD OF ELECTIONS; DELAWARE COUNTY BOARD OF ELECTIONS; MONTGOMERY COUNTY BOARD OF ELECTIONS; NORTHAMPTON COUNTY BOARD OF ELECTIONS; and PHILADELPHIA COUNTY BOARD OF ELECTIONS; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

Plaintiffs request that Defendants answer the following Interrogatories in writing and under oath and serve a copy of your answers upon the undersigned counsel by Monday, November 16, 2020.

These Interrogatories are continuing in nature and must be supplemented or corrected, or both, in a timely manner.

## INSTRUCTIONS TO ALL DEFENDANTS

1.      You shall deem these Interrogatories to be continuing, and you shall provide supplemental answers pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

2.      You shall answer each Interrogatory on the basis of your entire knowledge from all sources after conducting an appropriate good faith inquiry and search.

3.      If you encounter any ambiguities when construing a question, instruction, or definition, your answer shall set forth the matter you deem ambiguous and the construction you used in answering.

4.      To the extent that you elect as part of any of your responses to these Interrogatories to produce business records under Rule 33(d) of the Federal Rules of Civil Procedure, segregate and identify such business records according to the Interrogatory to which the records are responsive.

5.      If you are unable to fully respond to any Interrogatory, supply the information that is available and explain why your response is incomplete, the efforts made to obtain responsive information, and the source(s) from which all responsive information may be obtained to the best of your knowledge or belief.

6.      If you withhold information on the grounds of attorney-client privilege, work product immunity, or any other privilege or immunity, identify the nature of the privilege that you claim, and if the privilege is being asserted in connection with a claim or defense governed by state law, state the privilege rule

you invoke. When withholding information on the basis of any privilege claim, you must also indicate whether any such information exists.

7.      For any information requested herein that has been destroyed, transferred, or lost, identify the information, provide a brief explanation of the circumstances (*e.g.*, when, how, whom, and why) surrounding the information's destruction, transfer, or loss, and identify any and all records pertaining to its destruction, transfer, or loss.

8.      If you or your attorneys know of the existence of any information called for in an Interrogatory, but such information is not presently in your possession, custody, or control or in the possession, custody, or control of your agents, representatives, or attorneys, you shall so state in response to the Interrogatory, identify such information in response to the Interrogatory, and identify the individual(s) in whose possession, custody, or control the information was last known to reside.

9.      If you have a good-faith objection to any Interrogatory or any part thereof, the specific nature of the objection and whether it applies to the entire Interrogatory or to a part of the Interrogatory shall be stated. If you object to any part of an Interrogatory, then you shall identify the part to which you object and produce information responsive to the remaining unobjectionable part of the Interrogatory.

**INTERROGATORY ONE (TO EACH COUNTY DEFENDANT):**

Separately, in the format below, provide the number of tabulated and counted ballots, ballots invalidated for any reason, and processed inner secrecy envelopes in connection with the canvass for the election of November 3, 2020. Please provide this information with current data as of 12:01am on Monday November 16, 2020, and supplement with a response representing current data as of 12:01am on Thursday November 19, 2020 prior to the evidentiary hearing.

| Tabulated (counted) mail-in ballots | Tabulated (counted) absentee ballots | Invalidated mail-in ballots | Invalidated absentee ballots | Processed Inner secrecy envelopes |
|---|---|---|---|---|
|  |  |  |  |  |

**INTERROGATORY TWO (TO EACH COUNTY DEFENDANT):**

What number of mail-in and absentee ballots lacking a signature, lacking an inner secrecy envelope, or otherwise defective were "cured" by a provisional ballot after you or your agents contacted a voter to inform them of the defect in their ballot?

**INTERROGATORY THREE (TO THE SECRETARY ALONE):**

When did you or anyone in the Secretary of State's office become aware that the County Election Board defendants were, prior to the election, engaged in inspection of mail-in and/or absentee ballots and communicating to voters where such ballots were deemed defective?

**INTERROGATORY FOUR (TO THE SECRETARY ALONE):**

Describe how you became aware that the County Election Board defendants were, prior the election, engaged in inspection of mail-in and/or absentee ballots and communicating to voters where such ballots were deemed defective and all steps you took to ensure that uniform procedures were being followed throughout the Commonwealth.

Date:  November 11, 2020

By:
        */s/ Linda A. Kerns*
        Linda A. Kerns (PA #84495)
        Law Offices of Linda A. Kerns, LLC
        1420 Locust Street, Suite 200
        Philadelphia, PA 19102
        215-731-1400 (T)
        215-701-4154 (F)
        *linda@lindakernslaw.com*

        *Counsel for Plaintiffs*

# Exhibit 11

Office of the
**PHILADELPHIA**
**CITY COMMISSIONERS**

VOTE BY MAIL | NEW VOTING SYSTEM | REGISTER ONLINE | CAMPAIGN FINANCE

Home | About Us | Voters | Candidates & Campaigns | Election Board Officials | Resources & Data | Contact Us

**Presidential General Election**
11/3/2020
Polls open 7am-8pm.

**1** DAYS

**20** HRS   **45** MINS

**Election Calendar**

11/ 3/2020
Last day for County Boards of Elections to receive voted mail-in and civilian absentee ballots

11/ 3/2020
GENERAL ELECTION

11/ 3/2020
24-Hour Reporting - Daily Reporting Ends

11/ 4/2020
First day to REGISTER after November election

11/10/2020
Last day for County Boards of Elections to receive voted military and overseas absentee ballots

## Cancelled Ballot Notification Information

Share on Facebook | Print

Voters who have received a notification that their ballot was cancelled may fall into one of the following three categories:

- ✓ CANC – NO SIGNATURE - Voter's ballot was returned without a signature on the declaration envelope
- ✓ CANC – VOTE CANCELLED - Voter's ballot was determined to lack a secrecy envelope without opening the declaration envelope
- ✓ CANC - UNDELIVERABLE - Voter's ballot was returned by the USPS to the County Board of Elections

Voters whose ballots have been cancelled can vote by provisional ballot on Election Day; alternatively they may request a replacement ballot at a satellite election office through 8:00 PM on Election Day.

Información sobre el Aviso de Boleta Cancelada

Los votantes que hayan recibido un aviso de que su boleta fue cancelada pueden integrar una de las tres categorías siguientes:

- ✓ CANCELACIÓN-FALTA DE FIRMA: la boleta del votante se envió sin una firma en el sobre de declaración.
- ✓ CANCELACIÓN-VOTO CANCELADO: se determinó, sin abrir el sobre de declaración, que la boleta del votante nocontenía el sobre secreto.
- ✓ CANCELACIÓN-IMPOSIBILIDAD DE ENTREGA: USPS devolvió la boleta del votante a la Junta Electoral del Condado.

Los votantes cuyas boletas hayan sido canceladas pueden votar mediante una boleta provisional el Día de la Elección; alternativamente, pueden solicitar una boleta electoral de reemplazo en una oficina electoral satélite hasta las 8:00 p. m. del Día de la Elección.

# Exhibit 12

## DECLARATION

1.      My name is Marjilyn Murray.  I am over the age of 18.  All the facts stated herein are true and based on my personal knowledge.

2.      I am a resident of Philadelphia County, Pennsylvania.

3.      I voted using a mail-in ballot for the 2020 General Election.

4.      After submitting my ballot, I received a text message on November 2, 2020 at about 12:57 p.m. from Elizabeth Fiedler's campaign for a state representative office.  See Exhibit 1.

5.      My understanding is that Elizabeth Fiedler is a democratic candidate

6.      The text message stated that my ballot was unable to be processed and informed me that I had to go to a satellite office to get a new ballot printed for me to fill out and vote.

7.      I asked if I could just vote provisionally, and they said that if I did that, there would be a chance my vote would not count.  Exhibit 2.

8.      I am friends with Al Schmidt.  Via a Facebook Messenger chat that was deleted, he informed me that my ballot was rejected because it did not have an inner secrecy envelope.

9.      I declare under penalty of perjury that the forgoing is true and correct. (28 U.S.C. § 1746).

Executed on November 12, 2020

Marjilyn Murray



2:26

+12672821194
12:57 PM, Nov 2

**(No subject)**

Hi, this is Karla  from state rep Elizabeth Fiedler's campaign. I wanted to let you know that we got a notice that, while you returned your mail-in ballot, it was not able to be processed. You'll need to go to a satellite election office, there they can print a new ballot for you and you can fill it out and vote all in one visit. The closest office to south Philly is the high school for the creative and performing arts at 901 s broad st (that's at broad & Catharine). They're open today, and Election Day. We can help arrange a ride for you if you need. If you have questions or issues, please call us at 267-777-8683

Copy text                    Share



2:26

+12672821194

...Elizabeth Fedrel's campaign...
I wanted to let you know that
we got a notice that, while you
returned your mail-in ballot, it was
not able to be processed. You'll
need to go to a satellite election
office, there they can print a new
ballot for you and you can fill it

📄 View all                              〉

MMS
12:57 PM

Can i vote in person and just ask for
a provisional ballot tomorrow at my
polling place? Thank u for your help

1:14 PM

Yes you can but there's a chance
you'd vote would not be counted on
time.

1:18 PM

Aaahhh ok. So tomorrow go to capa
instead of my polling place?

1:18 PM

That would be ideal. They are
open today till 4:30 and tomorrow
7am-8pm.

1:20 PM

Wonderful thank u so much!

1:24 PM

You're welcome. You can call or
text me if you have any questions

1:24 PM

# Exhibit 13

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
PENNSYLVANIA

**{PLAINTIFF}**,

       Plaintiff,

    v.

**{DEFENDANT}**,

       Defendant.

Case No. {}

## DECLARATION OF DAVID HENRY

I David Henry, declare as follows:

1. I am a resident of West Hempfield Township, Lancaster County, Pennsylvania.   I was born on 01/28/1946 and am of sound mind. I have personal knowledge of the contents of this Declaration and if called as a witness I could and would testify competently as to their truth.

2. On  or about May 8, 2020, I requested a ballot to vote by mail in the United States 2020 presidential election.   I am a registered Republican.   I submitted my vote by mail for President Trump on or about October 6, 2020.   I was notified that my ballot was canceled three days after the election concluded on November 6, 2020.  The ballot was canceled due to it not being enclosed in the second "secrecy" envelope.

3. I have been informed subsequently that public Secretary of State records show that my ballot was never received and was listed as "canceled."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.


EXECUTED ON: **November 8, 2020**          By:     */s/David Henry/* David Henry

Name: David Henry

# **Exhibit 14**

**DECLARATION OF LAWRENCE ROBERTS**

**COMMONWEALTH OF PENNSYLVANIA**               )

                                                                              ) SS

**COUNTY OF    FAYETTE**                                    )

Lawrence Roberts who has been first duly sworn, deposes and states as follows:

1.  I am an adult individual over the age of eighteen (18).

2.   I am a resident of Uniontown, Fayette  County, Pennsylvania.

3.  I have personal knowledge of the facts described in this Declaration.

4.   My name is Lawrence Roberts

5.  I have been a registered voter in Uniontown for approximately 15 years.

6.  I have also been an elected official; I was a representative for 51st District for 15 years. I was elected as a Democrat, but I switched to Republican after I retired.

7.  I have filed absentee ballots for approximately the last 15 years, with no problems.

8.  Approximately two weeks before the election, I hand carried my absentee ballot to the election bureau in Uniontown, and handed it to an election official.

9.  I just learned today that the voter services website indicates that my vote was cancelled.  No one has called or notified me of that fact.

10. I am very upset that my vote has not been counted.

**DECLARANT SAYETH NOTHING FURTHER**

 Pursuant to 28 U.S. Code § 1746, I declare under the laws of the United States of America and under penalty of perjury that the foregoing is true and correct.

 Executed on November 9, 2020

*/s/Lawrence Roberts* Lawrence Roberts

Name:  Lawrence Roberts

# Exhibit 15

## DECLARATION OF THOMAS HETAK

**COMMONWEALTH OF PENNSYLVANIA        )**
**                                                                            ) SS**
**COUNTY OF NORTHAMPTON                        )**


<u>DECLARATION OF THOMAS HETAK</u>

I THOMAS HETAK declare as follows:

1.  I am a resident of Northampton County, Pennsylvania. I am over 18 years of age and my date of birth is: March 25, 1965.  I have personal knowledge of the contents of this Declaration and if called as a witness I could and would testify competently as to their truth.

2.  I'm a registered Voter and qualified to vote in the Commonwealth of Pennsylvania.

3.  I requested a mail in ballot for the 2020 US Presidential Election, and I submitted it by mail 2 weeks before November 3, 2020.

4.  On October 26th, 2020 I received an email from <u>RA-voterregstatcert@state.pa.us</u> stating: "Your ballot status has been updated to 'cancelled' because of voting at a polling place…" This email will be attached to this Declaration.

5.  I never voted at a polling place, and my ballot should have been cancelled for this reason.

6.  On November 2, 2020 I received an email from a GOP account further reminding me, "Records show you requested a mail in ballot but have not returned it.  If you plan to vote in person…." This email will also be attached to this Declaration.

7.  I was not able to vote in person because travel took me out of Pennsylvania in the weeks leading up to and during the election.

8. My votes were for Donald Trump for President and down ballot Republican candidates.

9. The current status of my mail in ballot according to the Secretary of State is "cancelled".

10. I was told my ballot was cancelled because of a record that I voted in person.  I did not vote in person.  My cancelled, mail in ballot should be reinstated, as it was in fact the only vote I submitted in this election.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

EXECUTED ON: **November 10, 2020**          By: *_/s/THOMAS HETAK_*
                                            Name: THOMAS HETAK

# Your Ballot Has Been Received

Inbox

RA-voterregstatcert  Oct 26
to HECIOT

Dear THOMAS HETAK,

Your ballot has been received by NORTHAMPTON County on 10/26/2020.

Your ballot status has been updated to cancelled because it cannot be counted due to voting at the polling place.

If you have questions about your ballot, please contact NORTHAMPTON County at (610) 829-6260.

Thank you

****Please do not reply to this email.****

Reply            Forward


Text Message
Mon, Nov 2, 4:25 PM

Our records show you have requested a mail-in ballot but have not returned it! If you plan to vote in person please bring BOTH envelopes with you to vote. You can find your polling place: http://securely.vote/6eok

You can check the status of your mail-in ballot here:http://securevote.gop/kx4g

(Reply STOP to opt out)

Text Message

# Exhibit 16

## DECLARATION OF DOUGLAS CHEW

**COMMONWEALTH OF PENNSYLVANIA**     )
                                               ) SS
**COUNTY OF WESTMORELAND**               )

### DECLARATION OF DOUGLAS W. CHEW

I, Douglas W. Chew, declare as follows:

1. I am a resident of Westmoreland County, Pennsylvania.

2. I am over 18 years of age.

3. I have personal knowledge of the contents of this Declaration.

4. I'm a registered voter and qualified to vote in the Commonwealth of Pennsylvania.

5. I am the Vice-Chairman of the Westmoreland County Board of Elections, and because of my position, I am familiar with Westmoreland County's pre-canvassing procedures.

6. Westmoreland County did not contact voters whose mail-in or absentee ballots had been cancelled for lack of a secrecy envelope, date, signature, printed name, or address, and did not provide such voters with an opportunity to cure any such deficiencies in their returned mail-in or absentee ballots.

7. I believe that it is imperative that the laws enacted by the Pennsylvania General Assembly are followed by voters and officials alike to ensure free, open, fair, and honest elections.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

**EXECUTED ON: November 12, 2020**                  By: _____

                                                        Name: Douglas W. Chew

# Exhibit 17

## DECLARATION OF CHRISTIAN LEINBACH

I, Christian Y. Leinbach, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

1.  I am a citizen of the United States.

2.  I am a Berks County Commissioner.

3.  As a Berks County Commissioner, I am involved in the elections process in Berks County.

4.  On November 2, 2020, our elections department received an email from Jonathan M. Marks, Deputy Secretary for Elections & Commissions with the subject "Important DOS Email – Clarification regarding Ballots Set Aside During Pre-Canvass." A copy of the email is attached as Exhibit "A."

5.  After reviewing the law we determined that the election code does not authorize or address the action noted in the Nov. 2, 2020 communication from Jonathan Marks.

6.  Berks County disagreed with the Department of State's guidance.

7.  Berks County did not contact any voters or provide any voter information to party or candidate representatives.

8.  Berks County chose not to follow the Department of State's Guidance.

9.  All votes should count equally not only in Berks County, but in all counties across Pennsylvania.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: <u>November 6, 2020</u>        By: _____

                                               Christian Y. Leinbach