# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 4:20-cv-02078-MWB

Judge Matthew W. Brann

## SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

MYERS BRIER & KELLY LLP
Daniel T. Brier
Donna A. Walsh
John B. Dempsey
425 Spruce Street, Suite 200
Scranton, PA 18503
(570)-342-6011

KIRKLAND & ELLIS LLP
Daniel T. Donovan
Susan M. Davies
Michael A. Glick
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
Keli M. Neary
Karen M. Romano
Nicole J. Boland
Stephen Moniak
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717)-787-2717

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of*
*Pennsylvania*

November 12, 2020

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................6

Pre-Election Litigation ........................................................................6

Election Day and Mail-In Ballot Preparations...........................................9

Election Day and Post-Election Day Litigation.......................................10

ARGUMENT ....................................................................................13

I.    The Court Should Abstain In Favor Of Ongoing Or Available State
      Proceedings. ..............................................................................13

II.   Plaintiffs Cannot Identify a Particularized and Non-Speculative
      Injury, and Therefore Lack Standing.............................................17

      A.    Plaintiffs assert only generalized grievances. ...................... 17

      B.    Plaintiffs assert only speculative injuries............................ 21

      C.    Plaintiff lack standing to assert violations of the Elections or Electors
            Clauses of the U.S. Constitution. ..................................... 23

III.  Plaintiffs Fail to State Plausible Federal Claims Based on State
      Election Violations. ...................................................................25

      A.    Plaintiffs do not allege cognizable constitutional claims regarding canvass
            watcher access.............................................................. 26

      B.    Counties' use of notice-and-cure procedures for deficient mail-in ballots
            does not burden due process rights or violate equal protection. ........................... 33

      C.    The Secretary Did Not Violate The Elections or Electors Clauses. ..................... 36

IV.   The Equities and Circumstances Disfavor Federal Judicial
      Intervention...............................................................................38

      A.    Plaintiffs do not plausibly plead entitlement to injunctive relief......................... 38

      B.    Plaintiffs' failure to pursue available state is fatal to their claim to federal
            injunctive relief. ........................................................... 42

CONCLUSION ...................................................................................................45

CERTIFICATE OF SERVICE ............................................................................47

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Acosta v. Democratic City Comm.*,
  288 F. Supp. 3d 597 (E.D. Pa. 2018) ..................................................26

*Am. C.R. Union v. Martinez-Rivera*,
  166 F. Supp. 3d 779 (W.D. Tex. 2015) ...............................................20

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
  576 U.S. 787 (2015).......................................................... 23, 37

*Artway v. Att'y Gen. of N.J.*,
  81 F.3d 1235 (3d Cir. 1996) ..............................................15

*Barnette v. Lawrence*,
  No. 2:20-cv-05477-PBT (E.D. Pa.) ......................................11

*Broyles v. Texas*,
  643 F. Supp. 2d 894, (S.D. Tex. 2009)..................................27

*Chiropractic Am. v. Lavecchia*,
  180 F.3d 99 (3d Cir. 1999) ...............................................14

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983).........................................................21

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)........................................................21

*Corman v. Torres*,
  287 F. Supp. 3d 558 (M.D. Pa. 2018).................................24

*Dailey v. Hands*,
  2015 WL 1293188 (S.D. Ala. Mar. 23, 2015)......................27

*Donald J. Trump for President, Inc. v. Boockvar*,
  2020 WL 5997680 (W.D. Pa. Oct. 10, 2020).......... 6, 7, 17, 22, 25, 26, 27, 28, 45

*Donald J. Trump for President, Inc. v. Cegavske*,
  --- F. Supp. 3d ----, 2020 WL 5626974 (D. Nev. Sept. 18, 2020).......................19

*Donald J. Trump for President, Inc. v. Philadelphia Court of Elections*,
   No. 2:20-cv-05533-PD (E.D. Pa.)............................................................................12

*Fender v. Washington Cty., Pa.*,
   2014 WL 1491138 (W.D. Pa. Apr. 15, 2014)........................................................14

*Fuente v. Cortés*,
   207 F. Supp. 3d 441 (M.D. Pa. 2016)....................................................................14

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018)............................................................................................18

*Glover v. S.C. Democratic Party*,
   2004 WL 3262756 (D.S.C. Sept. 3, 2004), *aff'd*, 122 Fed. App'x 83 (4th Cir.
   2005) ......................................................................................................................27

*Golden v. Gov't of the Virgin Islands*,
   2005 WL 6106401 (D.V.I. Mar. 1, 2005)...............................................................44

*Hendon v. N.C. State Bd. of Elections*,
   710 F.2d 177 (4th Cir. 1983)); *Pa. Democratic Party v. Republican Party of Pa.*,
   2016 WL 6582659, at *4 (E.D. Pa. Nov. 7, 2016) ................................................44

*Hennings v. Grafton*,
   523 F.2d 861 (7th Cir. 1975) .................................................................................26

*Hotze v. Hollins*,
   2020 WL 6437668 (S.D. Tex. Nov. 2, 2020) ........................................... 20, 24, 25

*In re Luzerne Cty. Return Bd.*,
   290 A.2d 108 (Pa. 1972)........................................................................................35

*In re Nov. 3, 2020 Gen. Election*,
   --- A.3d ---, 2020 WL 6252803 (Pa. Oct. 23, 2020)....................................... 8, 29

*Lac D'Amiante du Quebec, Ltee v. Am. Home Assur. Co.*,
   864 F.2d 1033 (3d Cir. 1988) ................................................................................16

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................ 17, 21

*Marks v. Stinson*,
   19 F.3d 873 (3d Cir. 1994) ............................................................................. 41, 42

*Martel v. Condos*,
   --- F. Supp. 3d ----, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020).... 17, 18, 20

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ........................................................39

*Moore v. Circosta*,
   --- F. Supp. 3 ----, 2020 WL 6063332 (M.D.N.C. Oct. 14, 2020)................ 18, 19

*Ne. Ohio Coal. for the Homeless v. Husted*,
   837 F.3d 612 (6th Cir. 2016) ......................................... 31, 34

*Org. for Black Struggle v. Ashcroft*,
   978 F.3d 603 (8th Cir. 2020) ............................................40

*Pa. Democratic Party v. Boockvar*,
   2020 WL 5554644 (Pa. Sept. 17, 2020) ........................................ 7, 8, 22, 27, 39

*Pa. Voters Alliance v. Centre Cty.*,
   --- F.3d ---, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020) ....................................19

*Paher v. Cegavske*,
   457 F. Supp. 3d 919 (D. Nev. 2020)............................................ 20, 36

*Perles v. Cty. Return Bd. of Northumberland Cty.*,
   415 Pa. 154 (1964) ........................................................39

*PG Publ'g v. Aichele*,
   705 F.3d 91 (3d Cir. 2013) ................................................31

*Pileggi v. Aichele*,
   843 F. Supp. 2d 584 (E.D. Pa. 2012) ....................................40

*Planned Parenthood of Cent. N.J. v. Farmer*,
   220 F.3d 127 (3d Cir. 2000) ...............................................14

*Railroad Comm'n of Tex. v. Pullman Co.*,
   312 U.S. 496 (1941)........................................................14

*Republican Nat'l Comm. v. Common Cause R.I.*,
   --- S. Ct. ---, 2020 WL 4680151 (2020) .............................................24

*Republican Party of Pa. v. Cortés,*
  218 F. Supp. 3d 396 (E.D. Pa. 2016) ............................................................ 27, 31

*Samuel v. V.I. Joint Bd. of Elections,*
  2013 WL 842946 (D.V.I. Mar.
  7, 2013) ...................................................................................................................25

*Shambach v. Bickhart,*
  845 A.2d 793 (Pa. 2004) .......................................................................................35

*Short v. Brown,*
  893 F.3d 671(9th Cir. 2018) ..................................................................... 31, 32, 33

*Soules v. Kauaians for Nukolii Campaign Committee,*
  849 F.2d 1176 (9th Cir. 1988) .............................................................................44

*Spokeo, Inc. v. Robins,*
  136 S. Ct. 1540 (2016) ..........................................................................................17

*Tex. League of United Latin Am. Citizens v. Hughs,*
  --- F.3d. ----, 2020 WL 6023310 (5th Cir. Oct. 12, 2020) ...................................34

*Wexler v. Anderson,*
  452 F.3d 1226 (11th Cir. 2006) ............................................................................32

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ..................................................................................................38

*Wise v. Circosta,*
  2020 WL 6156302 (4th Cir. 2020) .......................................................................24

**Constitutions, Rules and Statutes**

25 Pa. Cons. Stat. § 2641(a) .......................................................................................36

25 Pa. Cons. Stat. § 2642(f) ........................................................................................36

25 Pa. Cons. Stat. § 2676-80 .......................................................................................30

25 Pa. Cons. Stat. § 3046 ............................................................................................42

25 Pa. Cons. Stat. § 3050(a.4)(4) ...............................................................................15

25 Pa. Cons. Stat. § 3050(a.4)(4)(v) ..........................................................................15

vi

25 Pa. Cons. Stat. § 3146.8(g)(1.1) ...................................................................9

25 Pa. Cons. Stat. § 3146.8(g)(2) ............................................................... 9, 27

25 Pa. Cons. Stat. § 3150.12b(a)(2) ........................................................... 8, 29

25 Pa. Cons. Stat. § 3150.12b(a)(3) ........................................................... 8, 29

25 Pa. Cons. Stat. § 3150.16(b)(2) ...............................................................38

25 Pa. Cons. Stat. § 32911 ...........................................................................16

25 Pa. Cons. Stat. § 3351 .............................................................................16

25 Pa. Cons. Stat. § 3456 .............................................................................16

42 Pa. Cons. Stat. § 764(1) ..................................................................... 16, 28

Fed. R. Civ. P. 12(b)(1) ...............................................................................17

Fed. R. Civ. P. 12(b)(6) ...............................................................................24

Pa. Cons. Stat. § 2641 .................................................................................30

Pa. Cons. Stat. § 2641(a) .............................................................................28

Pa. Cons. Stat. § 2646 .................................................................................28

Pa. Cons. Stat. § 3050 .................................................................................29

Pa. Cons. Stat. § 3150.12 .............................................................................29

U.S. Const. art. I, § 4, cl. 1 ..........................................................................22

U.S. Const. art. II, § 1, cl. 2 .........................................................................22

## **INTRODUCTION**

The Commonwealth of Pennsylvania has a long history of conducting fair, free, and open elections.  The Pennsylvania Department of State, led by Secretary of the Commonwealth Kathy Boockvar, and Pennsylvania's 67 county boards of elections carried on that proud tradition in the 2020 election, overseeing the safe and equal participation of nearly 6.8 million voters, even during a pandemic.  The voting is over and the counting of votes is substantially complete, with counties currently finalizing the tabulation and review of certain mail-in and provisional ballots as dictated by the Election Code.  The Secretary will then be prepared to certify Pennsylvania's election results for the numerous federal and state races conducted across the Commonwealth.

Six days after Election Day and when the overwhelming majority of ballots cast were already counted and reported, the Trump Campaign and two individual Plaintiffs brought this lawsuit—on the basis of repeatedly-rejected legal theories and no evidence—seeking to nullify the votes of millions of Pennsylvania voters in certain counties and requesting that the Court take the extraordinary step of enjoining the Secretary from performing her statutory certification responsibility.  Nearly half of the paragraphs in the Complaint are recycled allegations asserted by the Trump Campaign (represented by the same lawyers as in the present case) in a Western District of Pennsylvania case dismissed last month in a well-reasoned, 138-page

1

opinion entering judgment in favor of the Secretary and the county boards—a decision from which the Trump Campaign did not even appeal.  And for those issues raised in their latest Complaint that were not resolved in the months-long litigation before Judge Ranjan, the Trump Campaign and allied parties have already litigated—and in some cases are still litigating—those very issues in Commonwealth or sister federal district courts.

A review of the Complaint shows the slap-dash nature of the Trump Campaign's allegations and legal theories, as they offer a variety of unsupported allegations of one-off balloting and polling place irregularities (a number of which allegedly occurred in counties not even named in the Complaint) but then fail to even assert claims based on those isolated events.  Despite its rhetoric, the Complaint's seven largely overlapping causes of action concern just two issues: (i) whether candidate and political party representatives have a right to observe the canvassing of mail in ballots from their preferred distance; and (ii) whether voters who cast potentially defective mail-in ballots may cure their votes prior to the close of the polls, including through the casting of provisional ballots.  See Compl. ¶¶ 159-243 (Counts I-VII).  Each of the Complaint's claims—whether cast as a due process violation, an equal protection violation, or a violation of the Constitution's Elections or Electors clause—is grounded in these two (and only these two) issues.  But court after court has rejected those theories, and this Court should do the same.

The Court should expediently dispense with this case for four primary reasons. ***First***, the Court should abstain from resolving the state law questions underlying Plaintiffs' federal claims in light of proceedings that are pending, or which Plaintiffs could initiate, in state court. In particular, an expedited appeal is currently pending before the Pennsylvania Supreme Court with regard to the lone county (Philadelphia) for which the Trump Campaign challenged their canvass observer access rights during the actual counting process. A decision of the Commonwealth's highest court on that question stands to obviate Plaintiffs' federal constitutional claims. Similarly, this Federal Court should defer to the state Election Code's comprehensive regime with regard to challenging provisional ballots (including those provisional ballots cast by voters seeking to "cure" potential mail-in ballot defects) as well as for election contests writ-large, which risks inconsistent state and federal results and which disfavors this Court's intervention at this stage.

***Second***, Plaintiffs lack standing to pursue their claims, which constitute mere generalized grievances and which rest upon conjectural theories of supposed harm requiring multiple leaps of logic. This jurisdictional defect is fatal. In particular, Plaintiffs' assertion that, because some counties did not permit their preferred form of canvass observation, the Commonwealth's elections were over-run with fraud has already been rejected as purely speculative and legally unsupportable. Critically, Plaintiffs also lack standing to assert violations of the Elections or Electors Clauses.

*Third*, Plaintiffs fail to state plausible claims on the merits pertaining to either (i) the purported refusal to grant their canvass watchers Plaintiffs' preferred form of access, or (ii) allowing voters to cast provisional ballots or otherwise remedy defective mail-in ballots.  Not only do Plaintiffs fail to identify any violation of state law pertaining to those issues, their attempt to manufacture federal constitutional violations out of garden-variety state election disputes finds no home in the caselaw and would be an unprecedented extension of federal judicial power.  In particular, Plaintiffs' suggestion that there is a federal constitutional due process right for a political representative to stand a certain number of feet away from government employees counting ballots is unsupported in the law and would transform the role of the federal judiciary in monitoring state-run elections.  Moreover, Plaintiffs do not even advance allegations against each of the Defendant counties: the Complaint does not make any specific allegations unique to Chester, Montgomery, or Northampton Counties, and alleges that only certain counties denied the Trump Campaign's preferred form of canvassing access or engaged in the practice of allowing voters to "cure" mail-in ballots.  Such pleading failures only confirm the deficient nature of Plaintiffs' scattershot Complaint.  Furthermore, Plaintiffs' assertion that the Secretary and county boards improperly usurped legislative power in violation of the Constitution's Elections and Electors Clauses fails where the

Secretary and county boards lawfully exercised discretion afforded them by the General Assembly in the Election Code.

*Fourth*, neither the law nor the equities permit the extraordinary relief sought by Plaintiffs, namely their eleventh-hour request that this Court bar the certification of the Commonwealth's election results and deny the democratic will and voting rights of nearly 7 million Pennsylvanians. Indeed, the relief requested is substantially disproportionate to the, at best, garden-variety irregularities alleged in the Complaint. And such relief is particularly unwarranted at this stage given Plaintiffs' failure to exercise statutorily prescribed state-court avenues on or immediately after Election Day. Indeed, while the canvassing of mail-in ballots was ongoing, the Trump Campaign notably only challenged the breadth of their access in *one* county—even though Pennsylvania law provides ready access to courts to resolve such issues on Election Day. Nor has the campaign exhausted the Election Code's prescribed county-level process for challenging provisional ballots, including such ballots cast by voters whose mail-in ballots were rejected, all of which counsels against the radical federal intervention sought here.

The voters of Pennsylvania have spoken. The counties are busy finishing the tabulation of those votes and the Secretary is preparing to certify the results. The Court should deny Plaintiffs' desperate and unfounded attempt to interfere with that process, and should dismiss the Complaint with prejudice.

# BACKGROUND

## Pre-Election Litigation

This Complaint is the latest in a panoply of litigation brought in state and federal court by the Trump Campaign and others both in the run-up to and aftermath of the November 2020 General Election.  Most pertinent here, on June 29, 2020, the Trump Campaign and other plaintiffs sued Secretary Boockvar and Pennsylvania's 67 county boards of elections in the Western District of Pennsylvania alleging that the Commonwealth's mail-in voting procedures would give rise to a host of federal and state constitutional violations during the General Election.  *See Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020).  Following extensive expedited discovery, and after initially abstaining from resolving the Trump Campaign's claims in favor of an ongoing proceeding before the Pennsylvania Supreme Court (discussed more fully below), on October 10, the Honorable J. Nicholas Ranjan issued a 138-page opinion entering judgment in favor of Secretary Boockvar on all of the Trump Campaign's federal constitutional claims.

In particular, as it relates to the present action, the court dismissed the Trump Campaign's challenge to Pennsylvania's county residency requirement for poll watchers, which was premised on the Trump Campaign's re-occurring fears of vote dilution stemming from their purported inability to staff and monitor polling places. *See id.* at *37.  The court found that such claim was merely "speculative," *id.* at *71,

and "rest[ed] on evidence of vote dilution that [did] not rise to the level of a concrete harm," *id.* at *37. The court also rejected the Trump Campaign's claim that guidance issued by the Secretary instructing county boards that they could not set aside mail-in ballots based solely on signature analysis would promote voter fraud, finding that the Trump Campaign "present[ed] only the possibility and potential for voter fraud," and that "the risk of voter fraud generally without signature comparison—as a matter of fact and law—does not rise to patent and fundamental unfairness." *Id.* at *59. The time for the Trump Campaign to appeal that decision expired on November 9.

Judge Ranjan's dismissal of the Trump Campaign's challenge to these poll watcher rules came just weeks after the Pennsylvania Supreme Court reached the same conclusion in response to a petition brought by the Secretary. In its opinion, issued on September 17, the Supreme Court held "there is no individual constitutional right to serve as a poll watcher; rather, the right to do so is conferred by statute," and that claims of "heightened election fraud involving mail-in voting" necessitating enhanced poll watcher authority were "unsubstantiated." *Pa. Democratic Party v. Boockvar*, 2020 WL 5554644, at *30 (Pa. Sept. 17, 2020).

In that same opinion, the Pennsylvania Supreme Court addressed a request brought by the Pennsylvania Democratic Party that would have affirmatively required Pennsylvania's counties to notify voters of a defect in their mail-in ballot and offer them an opportunity to cure it. In resolving that question, the Court held

7

that county boards "are not required to implement a 'notice and opportunity to cure' procedure for mail-in and absentee ballots that voters have filled out incompletely or incorrectly." *Id.* at *20. Notably, the Court did not determine—nor was it asked to determine—whether counties were *permitted* to provide such notification even if the Election Code and state constitution did not affirmatively *require* it.

On the heels of its September 17 ruling, the Pennsylvania Supreme Court issued another decision on October 23 addressing the Election Code's rules regarding signature analysis and challenges (the same issue Judge Ranjan's October 10 opinion had addressed, in part). *See In re Nov. 3, 2020 Gen. Election*, --- A.3d ---, 2020 WL 6252803, at *14 (Pa. Oct. 23, 2020). Consistent with Judge Ranjan, the Pennsylvania Supreme Court held that "county boards of elections are prohibited from rejecting absentee or mail-in ballots based on signature comparison conducted by county election officials or employees, or as the result of third-party challenges based on signature analysis and comparisons" during the ballot canvassing process. *Id.* at *14. Accordingly, as Election Day approached, the counties and interested parties were well aware that (i) individual mail-in ballots and ballot envelopes could not be challenged by canvass watchers (or anyone else) during the counties' pre-canvassing and canvassing process, and (ii) in fact, the only basis for challenging a mail-in ballot was that the voter was not a qualified elector—a challenge that the

8

Election Code required to be lodged by the Friday before Election Day (October 30). *See* 25 Pa. Cons. Stat. § 3150.12b(a)(2), (3).

### Election Day and Mail-In Ballot Preparations

In light of the ongoing COVID-19 pandemic, and many citizens' concomitant fear of in-person voting during that pandemic, prior to the General Election, Pennsylvania's county boards of elections received and fulfilled millions of mail-in/absentee ballot applications for the November election (in excess of 100,000 mail-in ballots each in six of the seven counties named as Defendants). To prepare for the pre-canvass of those ballots beginning at 7:00 a.m. on Election Day, counties inquired with the Department of State as to whether they could could disclose the names of voters whose mail-in ballots were defective. In response, on November 2, the Department of State advised all 67 counties that, during the pre-canvassing period, county boards were permitted to provide candidate and party representatives with information regarding voters whose mail-in ballots were rejected. The Secretary uniformly advised all counties and encouraged them to provide such notification publicly. The Department also referred to guidance issued on October 21, which explained—consistent with the Pennsylvania Constitution's commitment to protecting the franchise—that voters whose completed mail-in ballots were rejected for reasons unrelated to the voter's qualifications may be issued a provisional ballot at the polls.

Consistent with the Election Code, the pre-canvassing of mail-in and absentee ballots commenced in the Defendant counties on or after 7:00 a.m. on Tuesday, November 3, *see id.* § 3146.8(g)(1.1), followed by the canvassing of such ballots, *see id.* § 3146.8(g)(2). Per the Election Code, one authorized representative of each candidate and one representative of each political party were "permitted to remain in the room in which the absentee ballots and mail-in ballots" were pre-canvassed and canvassed in each county. *Id.* § 3146.8(g)(1.1), (2).

### Election Day and Post-Election Day Litigation

Since Election Day, state and federal courts in Pennsylvania have decided at least eight cases pertinent to the claims re-asserted by Plaintiffs in this case.

First, with regard to Plaintiffs' challenge to the noticing of mail-in ballot defects, courts in Bucks, Northampton, and Philadelphia Counties denied Election Day requests by the Trump Campaign and Northampton County Republican Committee, respectively, to prohibit the disclosure of voided or cancelled ballots during the pre-canvassing process. *See Order, Donald J. Trump for President, Inc. v. Bucks Cty. Bd. of Elections*, No. 2020-05627 (Pa. Ct. Com. Pl. Bucks Cty. Nov. 3, 2020) (Ex. 1); Order of Court, *In re Mot. for Injunctive Relief of Northampton Cty. Republican Comm.*, No. C-48-CV-2020-6915 (Pa. Ct. Com. Pl. Northampton Cty. Nov. 3, 2020) (Ex. 2); Order, *In re General Election Pre-Canvas*, No. 7501 (Pa. Ct. Com. Pl. Philadelphia Cty. Nov. 3, 2020) (Ex. 3). In a fourth case, the plaintiffs

(a Republican congressional candidate and party county chairman) originally sought a temporary restraining order in the Eastern District of Pennsylvania pertaining to Montgomery County's allowing of voters to cure certain ballot defects, but since withdrew that request and yesterday voluntarily dismissed their action rather than contest a motion to dismiss.  *See Barnette v. Lawrence*, No. 2:20-cv-05477-PBT (E.D. Pa.).  And in a fifth case, brought in Commonwealth Court, the Secretary did not object to an injunction segregating provisional ballots cast by voters who sought to cure defects in their mail-in ballots so that plaintiffs could challenge those provisional ballots, if necessary, in accordance with the Election Code's standard procedures for addressing provisional ballots (*i.e.*, at public sessions of each county board).  *See* Order, *Hamm v. Boockvar*, No. 600 MD 2020 (Pa. Commw. Ct. Nov. 6, 2020) (Ex. 4).

Regarding Plaintiffs' challenges related to canvass watchers, the Trump Campaign and/or Republican county committees sued on Election Day or shortly thereafter concerning access to observe mail-in ballot canvassing in two of the seven Defendant counties.  First, in Philadelphia County, the Trump Campaign filed a petition on Election Day requesting closer observation of the canvassing process. The Philadelphia Court of Common Pleas denied that request.  *See* Order, *In re Canvassing Observation*, No. 7003 (Pa. Ct. Com. Pl. Philadelphia Cty. Nov. 3, 2020) (Ex. 5).  The Commonwealth Court reversed that determination, permitting

observation from six feet away (rather than the approximately twelve feet the county had been permitting), *see* Order, *In re Canvassing Observation*, No. 1094 CD 2020 (Pa. Commw. Ct. Nov. 5, 2020), Order at 1 (Ex. 6), but Philadelphia County petitioned the Pennsylvania Supreme Court for allowance of appeal, which effected a *supersedeas* staying the Commonwealth Court's order pending appeal, and on November 9, the Pennsylvania Supreme Court granted allocator to review the Commonwealth Court's order, and ordered expedited briefing to occur this week. *See* Order, *In re Canvassing Observation*, No. 425 EAL 2020 (Pa. Nov. 9, 2020) (per curiam) (Ex. 7) Additionally, while the state court proceedings were pending, on November 5, the Trump Campaign filed an emergency application in the Eastern District of Pennsylvania seeking enforcement of the Commonwealth Court order. *See Donald J. Trump for President, Inc. v. Philadelphia Court of Elections*, No. 2:20-cv-05533-PD (E.D. Pa.).  Following an emergency hearing in which the Trump Campaign's lawyer conceded that "there [was] a nonzero number of [Trump Campaign representatives]" in Philadelphia County's counting room, *see* Ex. 8, Nov. 5, 2020 Hr'g Tr. 10:8-11:7, the parties reached agreement and the court denied the Trump Campaign's motion without prejudice.  *See* E.D. Pa. No. 20-cv-5533, at ECF No. 5.

Similarly, in Delaware County, the Delaware County Republican Executive Committee filed an emergency application in the Court of Common Pleas for

Delaware County regarding access to the county's canvassing process.  Following a hearing, the parties reached agreement on November 4, which was encompassed in a consent order.  *See* Order, *Del. Cty. Republican Exec. Comm. v. Del. Co. Bd. of Elections* (Pa. Ct. Com. Pl. Delaware Cty. Nov. 4, 2020) (Ex. 9).

Neither the Trump Campaign nor any other party challenged their representatives' access to observe the canvassing process in Allegheny, Centre, Chester, Montgomery, Northampton of any of Pennsylvania's other 60 Counties.

## **ARGUMENT**

I.  **The Court Should Abstain In Favor Of Ongoing Or Available State Proceedings.**

First, multiple abstention doctrines require this Court to defer to proceedings that are either ongoing—or could be brought—in state court regarding the issues of state law underlying resolution of Plaintiffs' federal claims.  Such abstention doctrines promote principles of federalism, efficiency, and comity, and are especially important in the context of election disputes, where a state's interest in managing its own affairs is at its apex and the federal courts' mandate is at its nadir. Here, abstaining may "potentially obviate the need for federal adjudication of [Plaintiffs'] constitutional claims" or, at the very least, would allow this Court to refrain from "deciding a federal constitutional question when the case may be disposed on questions of state law," avoid "needless conflict with the administration by a state of its own affairs," and minimize "duplicative litigation."  *Fender v.*

*Washington Cty., Pa.*, 2014 WL 1491138, at *3 (W.D. Pa. Apr. 15, 2014) (citing

*Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)); *Chiropractic Am.*

*v. Lavecchia*, 180 F.3d 99, 103 (3d Cir. 1999) (citations omitted).

First, with regard to Plaintiffs' claims premised on access provided to their

canvass observers, these claims are a prime candidate for *Pullman* abstention given

the Pennsylvania Supreme Court's pending review of Philadelphia County's appeal

regarding whether the Election Code requires that canvass observers be entitled to

stand within a certain distance of ballots under canvass.  That state-law question,

which is unsettled, underlies Plaintiffs' federal constitutional claims, and the

resolution of that question "could obviate the need to adjudicate or substantially

narrow the scope of the federal constitutional claim." *Fuente v. Cortés*, 207 F. Supp.

3d 441, 448 (M.D. Pa. 2016) (quoting *Planned Parenthood of Cent. N.J. v. Farmer*,

220 F.3d 127, 149 (3d Cir. 2000)).  Moreover, an erroneous construction of state law

by this federal court would disrupt important state policies.  *See id.*  The

Pennsylvania Supreme Court ordered expedited briefing on this issue and all signs

point to that court resolving the question expediently, meaning there should still be

time for this Court to address any remaining federal constitutional questions (to the

extent any exist) following the Pennsylvania Supreme Court's decision.  *See Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1270 (3d Cir. 1996).[1]

As for Plaintiffs' claims pertaining to the potential curing of defective mail-in ballots, the Election Code provides a clear process before county election board and, if necessary, Commonwealth courts for the Trump Campaign to challenge provisional ballots cast by voters who sought to cure their mail-in ballots.  *See* 25 Pa. Cons. Stat. § 3050(a.4)(4).  Specifically, representatives of the Trump Campaign had the power to challenge specific provisional ballots during the county boards' review of those ballots, and to defend their challenges during an evidentiary hearing before the county board.  *Id.* § 3050(a.4)(4).  And if still aggrieved after such hearing, the Trump Campaign has a further right to challenge the county board's decision of before the county's court of common pleas.  *Id.* § 3050(a.4)(4)(v).  Notably, that

---

[1]  Furthermore, should the Pennsylvania Supreme Court resolve Plaintiffs' Philadelphia County challenge against the Trump Campaign, the *Rooker-Feldman* doctrine would bar re-litigation of that issue through federal constitutional claims here in Federal Court.  Federal district courts do not exist to give unsuccessful state court plaintiffs a second bite at the apple.  To the contrary, "federal courts may not 'exercis[e] jurisdiction over a case that is the functional equivalent of an appeal from a state court judgement." *Stein v. Cortés*, 223 F. Supp. 3d 423, 434 (E.D. Pa. 2016) (brackets in original) (quoting *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004) (citing in turn *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923))).  This doctrine would preclude the Trump Campaign's challenge to the canvass-watcher access afforded in Philadelphia County, as Plaintiffs' allegations in this case represent a clear effort to obtain "appellate review" in federal court of the Pennsylvania Supreme Court's decision, re-packaged as federal constitutional claims.  *See Stein*, 223 F. Supp. 3d at 434.

challenge process is *still ongoing*, such that the Trump Campaign can—and, indeed, currently is—pursuing state-law remedies with respect to voters who they do not believe should have been entitled to cast provisional ballots.  Where, as here, "a state creates a complex regulatory scheme, supervised by the state courts and central to state interests," *Lac D'Amiante du Quebec, Ltee v. Am. Home Assur. Co.*, 864 F.2d 1033, 1043 (3d Cir. 1988), *Burford* abstention applies.  Plaintiffs can and should proceed under that challenge system rather than through federal litigation.[2]

Similarly, the Election Code prescribes a clear election contest regime—with which the Trump Campaign has made no effort to invoke.  In particular, the Election Code permits an aggrieved party or candidate to file an election contest within 20 days of the election showing why an election was purportedly illegal.  *Id.* §§ 32911, 3351, 3456; 42 Pa. Cons. Stat. § 764(1).  Once again, the availability of a complex state regime to challenge the election counsels in favor of this federal court's abstention here.

---

[2] At the very least, given the ongoing challenge process, *Colorado River* abstention applies, which would avoid "piecemeal litigation" in both state and federal court that might result in conflicting remedies.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).

## II.     Plaintiffs Cannot Identify a Particularized and Non-Speculative Injury, and Therefore Lack Standing.

Article III and the Supreme Court's precedent interpreting it are clear: a plaintiff must have standing to invoke federal jurisdiction, which requires that the plaintiff demonstrate it has suffered an injury-in-fact that is concrete and particularized, and actual or imminent; fairly traceable to the defendant's challenged conduct; and likely to be redressed by a favorable judgment. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).   Such standing considerations place important limits on federal judicial authority and have "an extensive history in the context of challenges to election practices." *Martel v. Condos*, --- F. Supp. 3d ----, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020); *see also Boockvar*, 2020 WL 5997680, at *31 ("Standing is particularly important in the context of election-law cases . . . ."). Here, Plaintiffs lack Article III standing because, whether their claims are packaged under the due process or equal protection clauses, they do not assert particularized, concrete injuries, but rather only generalized and speculative grievances.   Nor can Plaintiffs assert claims based on supposedly illegal departures from the U.S. Constitution's Elections and Electors clauses, as such claims are reserved for state legislatures alone.   The Court should therefore dismiss Plaintiffs' claims under Rule 12(b)(1).

### A.     Plaintiffs assert only generalized grievances.

17

First, Plaintiffs' challenge to the canvass-watching procedures as well as rules surrounding mail-in ballot cures are quintessential generalized objections to state and county election policies. But "the Supreme Court continues to decline to extend standing to plaintiffs asserting generalized objections to state election laws." *Martel*, 2020 WL 5755289, at *4 (citing *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018)). The premise of Plaintiffs' challenges is that the public canvassing of mail-in ballots outside the close purview of their canvass observers or the counting of provisional or cured ballots may lead to the counting of illegal ballots, which may dilute what they believe are validly cast ballots. But such an undifferentiated allegation that validly cast ballots "will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing." *Moore v. Circosta*, --- F. Supp. 3 ----, 2020 WL 6063332, at *14 (M.D.N.C. Oct. 14, 2020) That is because all Pennsylvania voters stand to suffer the same vote dilution if a fraudulent or illegal vote is counted and, absent allegations of a specific fraud, the injury is not particularized to Plaintiffs—neither to the Trump Campaign nor the individual voter Plaintiffs. Indeed, neither individual Plaintiff alleges that *his* particular vote was somehow diluted in a manner distinct from all other Pennsylvania voters, nor does the Trump Campaign allege that it has a particularized injury relating to alleged vote dilution from these practices. And oddly, the Trump Campaign would have this court believe that the alleged vote

dilution only impacted the Presidential race and not the races in which numerous local and statewide Republican candidates prevailed (none of whom have joined this lawsuit).

Multiple federal courts have declined to find standing in light of these types of unsubstantiated generalized claims in similar cases in recent weeks and months, including ruling against the Trump Campaign itself. *See Donald J. Trump for President, Inc. v. Cegavske*, --- F. Supp. 3d ----, 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020) ("Even if accepted as true, plaintiffs' pleadings allude to vote dilution that is impermissibly generalized. The alleged injuries are speculative as well, but their key defect is generality." (citation omitted)); *id.* ("As with other generally available grievances about the government, plaintiffs seek relief on behalf of their member voters that no more directly and tangibly benefits them than it does the public at large."); *Pa. Voters Alliance v. Centre Cty.*, --- F.3d ---, 2020 WL 6158309, at *4-5 (M.D. Pa. Oct. 21, 2020) (allegation that plaintiffs' vote will be diluted by increased voter turnout in other counties is "precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court has] refused to countenance in the past" (brackets in original) (citation omitted)); *Moore*, 2020 WL 6063332, at *14 (holding that plaintiffs lacked standing to bring vote-dilution claims because "all voters in North Carolina . . . would suffer the injury Individual Plaintiffs allege"); *Martel*, 2020 WL 5755289, at

19

*4-5 ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926-27 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter.  Such claimed injury therefore does not satisfy the requirement that Plaintiffs must state a concrete and particularized injury."); *see also Am. C.R. Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) ("[C]omplaints of . . . vote dilution are nothing but a generalized grievance about government . . . .").

The same is true for Plaintiffs' equal protection theories: like their claimed vote-dilution injuries, such claims are not particularized to any of the Plaintiffs. All Plaintiffs have alleged is an undifferentiated concern that some electors may have been treated unequally.  That kind of generalized injury is not sufficient to confer standing, which requires that plaintiffs identify an individualized injury.  *Hotze v. Hollins*, 2020 WL 6437668, at *1 (S.D. Tex. Nov. 2, 2020) ("Plaintiffs' general claim that Harris County's election is being administered differently than Texas's other counties does not rise to the level of the sort of particularized injury that the Supreme Court has required for constitutional standing in elections cases.").

## B.   Plaintiffs assert only speculative injuries.

Plaintiffs also fail to allege an "actual or imminent" injury, as opposed to one that is merely "conjectural" or "hypothetical."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402, 409 (2013)); *Lujan*, 504 U.S. at 560 (citations omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983).  Instead, Plaintiffs' mere predictions of vote dilution due to purported voter fraud or other criminal activity are the prototypical speculative injuries that are not justiciable under Article III.

Starting with Plaintiffs' canvass-watcher claims, it is critical to first understand the chain of events undergirding Plaintiffs' theory of alleged harm stemming from the supposed denial of Plaintiffs' preferred proximity of access to observe the canvassing process in certain counties.[3]  Plaintiffs theorize that (i) voters submitted illegal or fraudulent mail-in votes, which (ii) county election workers permitted to be canvassed and counted in violation of the Election Code, that (iii) the Trump Campaign's canvass observers would have caught and been able to challenge if only they were in their preferred position, *and* (iv) those illegal votes were cast for a candidate other than President Trump, thus diluting properly cast Trump votes.  To

---

[3] The Trump Campaign does not even specifically allege they were denied meaningful access in all seven Defendant counties, advancing only specific allegations pertaining to Allegheny, Centre, Delaware, and Philadelphia.  And of course, while the counting was ongoing, the Trump Campaign only saw fit to challenge their access in one such county (Philadelphia).

state such a chain of theoretical events is to reject it. *See Boockvar*, 2020 WL 5997680, at *32.

Judge Ranjan reached a similar conclusion in finding that the Trump Campaign failed to identify a concrete injury with regard to its poll-watcher claims in the Western District case. There, the Trump Campaign alleged that Pennsylvania's county-residency requirement for poll watchers violated due process because the restriction (so they said) would prohibit the Trump Campaign from being able to staff every in-person polling location, thereby leading to rampant voter fraud. *See Boockvar*, 2020 WL 5997680, at *71. Judge Ranjan disagreed, finding "there [was] no authority to support a finding of burden based solely on a speculative, future possibility that election irregularities might occur" in the absence of poll watchers. *Id.* Addressing a similar challenge, the Pennsylvania Supreme Court likewise held that there was no need for relaxed poll watcher rules because claims of "heightened election fraud involving mail-in voting" were "unsubstantiated." *Pa. Democratic Party*, 2020 WL 5554644, at *30. So too here.

Plaintiffs' allegations with respect to the supposedly unconstitutional notice-and-cure policies fare no better in alleging an "imminent" injury, particularly because Plaintiffs do not even allege that any county has counted any such "cured" ballots. In fact, Plaintiffs only advance specific allegations regarding the processes in a single county (Philadelphia), Compl. ¶¶ 133-34, and even for Philadelphia,

Plaintiffs allege only that the County "allowed those voters to cure" ballot envelope defects "by casting a 'provisional ballot on Election Day' or requesting 'a replacement ballot at a satellite election office.'" *Id.* ¶ 133 (citation omitted). Plaintiffs nowhere allege that any such voter actually cast such a ballot or made such a request (let alone how many), nor do they allege that Philadelphia actually counted such provisional ballots. Indeed, the Trump Campaign elected not to inform this Court that it is pursuing challenges to provisional ballots cast in Philadelphia county and elsewhere. Finally, they also fail to allege that any other county actually permitted such cures or has counted such votes. Rather, Plaintiffs' claimed injuries related to this issue remain purely speculative and merit dismissal.

### C. Plaintiff lack standing to assert violations of the Elections or Electors Clauses of the U.S. Constitution.

In a last-ditch effort, Plaintiffs allege that the Secretary's and Defendant county boards' actions constituted illegal legislating in violation of the Elections and Electors Clauses of the federal Constitution. *See* U.S. Const. art. I, § 4, cl. 1 (Elections Clause); *id.* art. II, § 1, cl. 2 (Electors Clause). But Plaintiffs—a presidential campaign and two individual electors—have no particularized injury, and therefore lack standing, where their claim is that the *legislature's* power has been usurped. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 802 (2015) (Arizona Legislature possessed standing because it "is an

institutional plaintiff asserting an institutional injury, and it commenced this action after authorizing votes in both of its chambers").

Courts around the country—and in this district—have recognized that only state legislatures have standing to raise claims under those clauses. *See, e.g.*, *Corman v. Torres*, 287 F. Supp. 3d 558, 567-68 (M.D. Pa. 2018) (three-judge panel holding that individual state legislators lacked standing because "the claims in the complaint rest[ed] solely on the purported usurpation of the Pennsylvania General Assembly's exclusive rights under the Elections Clause of the United States Constitution"); *Wise v. Circosta*, 2020 WL 6156302, at *14 (4th Cir. 2020) (holding that the Speaker of the North Carolina General Assembly and President Pro Tempore of the North Carolina Senate had standing to assert Elections Clause claim because "[u]nder North Carolina law, [they] jointly represent the interests of the General Assembly of North Carolina and can pursue those interests in court"); *Hotze*, 2020 WL 6437668, at *2 ("These cases appear to stand for the proposition that only the state legislature (or a majority of the members thereof) have standing to assert a violation of the Elections Clause."). In fact, the Supreme Court has itself repeatedly rejected efforts by campaigns and other private political actors to assert rights belonging to government entities in election-related disputes. *See, e.g.*, *Republican Nat'l Comm. v. Common Cause R.I.*, --- S. Ct. ---, 2020 WL 4680151, at *1 (2020)

24

(holding that national and state political party "lack[ed] a cognizable interest in [Rhode Island]'s ability to 'enforce its duly enacted' laws." (citation omitted)).

Here, Plaintiffs allege that Defendants' "unilateral decision to implement rules and procedures . . . violate[d] the Electors and Elections Clauses of the United States Constitution." Compl. ¶ 201. Courts have steadfastly rejected such claims brought by private actors—including candidates for office—and the Court should likewise do so here. *See Hotze*, 2020 WL 6437668, at *1-2.

## III. Plaintiffs Fail to State Plausible Federal Claims Based on State Election Violations.

Even if Plaintiffs' claims were justiciable, they must be dismissed under Rule 12(b)(6) because Plaintiffs' allegations, even if true, fail to state cognizable claims. Plaintiffs' Complaint recycles a similar tactic used in the Western District case: they conflate disputes over the interpretation and execution of Pennsylvania's Election Code with federal constitutional violations. *See* Compl. ¶ 2. But such "[g]arden variety" election irregularities "are simply not a matter of federal constitutional concern." *Boockvar*, 2020 WL 5997680, at *49; *see also Samuel v. V.I. Joint Bd. of Elections*, 2013 WL 842946, at *7 (D.V.I. Mar. 7, 2013) (collecting cases). Even accepting Plaintiffs' allegations as true, Plaintiffs fail to state any constitutional due process or equal protection violation related to either canvass observer access or notice-and-cure procedures that would justify their extraordinary requested relief.

25

**A.     Plaintiffs do not allege cognizable constitutional claims regarding canvass watcher access.**

Plaintiffs cannot manufacture federal constitutional violations based on perceived slights to their canvass observers.  First, in Count I, Plaintiffs allege that some counties violated due process by "creat[ing] a system whereby it was physically impossible for the candidates and political parties to view the ballots and verify that illegally cast ballots were not opened and counted."  Compl. ¶ 178.  The due process clause is implicated only when "the election process itself reaches the point of patent and fundamental unfairness."  *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 645 (E.D. Pa. 2018) (citation omitted).  Claims of patent and fundamental unfairness have historically involved "the most extraordinary circumstances"—for example, discrimination "against a discrete group of voters," refusal "to hold an election . . . resulting in a complete disenfranchisement," or "willful and illegal conduct of election officials" resulting "in fraudulently obtained or fundamentally unfair voting results."   *Boockvar*, 2020 WL 5997680, at *51 (citations omitted); *see also id.* at *59 ("To violate substantive due process in the voting-rights context, the infringements are much more severe."); *see also Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) (observing that federal courts intervene in state elections only when there has been "purposeful or systematic discrimination against voters of a certain class, geographic area, or political affiliation" or "willful conduct which undermines the organic processes by which candidates are elected"

26

(citations omitted)); *Broyles v. Texas*, 643 F. Supp. 2d 894, 900 (S.D. Tex. 2009) ("[C]ourts faced with claims that election irregularities violated due process and equal protection rights have uniformly declined to endorse actions under § 1983 with respect to garden variety election irregularities." (citation omitted)); *Glover v. S.C. Democratic Party*, 2004 WL 3262756, at *5 (D.S.C. Sept. 3, 2004) ("Only when election irregularities are 'fundamentally unfair' and transcend 'garden variety' problems do federal courts have a duty to step in to ensure that citizens' rights are protected."), *aff'd*, 122 Fed. App'x 83 (4th Cir. 2005).

At the outset, there is no independent constitutional right to be a partisan poll watcher or to observe elections or the counting of ballots at all. *See, e.g.*, *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 408, 413-14 (E.D. Pa. 2016); *Dailey v. Hands*, 2015 WL 1293188, at *5 (S.D. Ala. Mar. 23, 2015) ("[P]oll watching is not a fundamental right protected by the First Amendment."). Instead, "[s]tate law, not the Federal Constitution, grants individuals the ability to serve as poll watchers and parties and candidates the authority to select those individuals." *Cortés*, 218 F. Supp. 3d at 414; *see also Pa. Democratic Party*, 2020 WL 5554644, at *30 (the right to serve as a poll watcher "is conferred by statute"); *Boockvar*, 2020 WL 5997680, at *23 (noting that at least one state, West Virginia, does not allow poll watchers at all). At bottom, therefore, Plaintiffs' claims amount to nothing more than a disagreement with certain counties as to how they interpreted and administered the

Election Code's provisions related to attendance at ballot canvassing meetings—a disagreement that does not equate to a constitutional violation. *See Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 5407748, at *9 (W.D. Pa. Sept. 8, 2020) (the violation of "unambiguous state election code requirements does not rise to the level of federal constitutional concern" (citing, *inter alia*, *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1062 (7th Cir. 2020))).  Indeed, Plaintiffs' claims would reduce federal courts to election monitors tasked with fly-specking, among other things, the distance election observers can stand from ballot counters.  That is not the role of federal courts.

Even assessing the Election Code itself, the allegations in the Complaint do not demonstrate that any Defendant county violated the Code via its canvass-observer procedures.  The Code permits one authorized representative of each candidate on the ballot and one authorized representative of each party to "remain in the room in which the absentee ballots and mail-in ballots are canvassed." 25 Pa. Cons. Stat. § 3146.8(g)(2).  The Code does not specify where "in the room" such observers are entitled to be, including whether they are entitled to be close enough to view particular aspects of the canvassing process.  The Code further confers wide discretion to the counties to implement Election Code provisions as they deem fit.  *See, e.g.*, id. § 2641(a) (giving county boards "jurisdiction over the conduct of primaries and elections in [each] county"); *id.* § 2642(f) (empowering

county boards with "mak[ing] and issu[ing] such rules, regulations and instructions, not inconsistent with law, as they may deem necessary for the guidance of voting machine custodians, elections officers and electors"); *id.* § 2646 (assigning "county solicitor[s]" to serve as "counsel" for the boards and to provide them with legal advice "concerning the best methods of legal procedure for carrying out the various provisions of" the Election Code).

Here, Plaintiffs do not dispute that candidate and party representatives were uniformly allowed to observe ballot canvassing "in the room[s]" where such canvassing was taking place. Instead, they claim that representatives "did not have meaningful access to observe the canvassing and tabulation process of mail-in and absentee ballots." Compl. ¶ 141; *see also id.* ¶¶ 142-47. But the Election Code does not afford them such a right. While Plaintiffs assume that their role as observers is to "confirm or object to the validity of the ballots," *id.* ¶ 141, "the Election Code presently provides no mechanism for time-of-canvassing challenges by candidate or party representatives." *In re November 3, 2020 Gen. Election*, 2020 WL 6252803, at *14. Rather, the code is clear that any challenges to mail-in electors are limited to challenging their eligibility to vote and must be lodged by the Friday before the election. *See* 25 Pa. Cons. Stat. § 3150.12b(a)(2), (3). There is thus no need for these representatives to be close enough to inspect every ballot; instead, the

representatives' presence "in the room" ensures transparency and enables those representatives to ask questions and observe the general canvassing process.

Even if the limited allegations here violated the letter of the Election Code in the few counties for which the Trump Campaign asserts it was denied "meaningful" access, that misses the larger point: such alleged violation does not amount to a federal constitutional violation meriting this Court's post-election interfence.  If it did, literally every local deviation from the Election Code would seemingly justify a federal case, requiring the federal judiciary to set up the equivalent of an elections monitoring panel.  The due process clause requires no such thing.

In any event, the Election Code provision enabling observation of ballot canvassing is just one element of the Election Code's overall procedure for ensuring the integrity of Pennsylvania's elections.  Among other things, the Election Code requires voters to affirmatively apply for mail-in ballots and demonstrate their qualifications to vote in their application, *id.* § 3150.12; provides for a challenge process for any mail-in ballot application until the Friday prior to the election, *id.* § 3150.12b(a)(3); calls for review of provisional ballots by county boards of elections following each election and in the presence of candidate and party representatives who are entitled to challenge any provisional ballot, *id.* § 3050; requires county boards to have minority representation, *id.* § 2641; and mandates that all elections workers (including election officers, judges, inspectors, clerks, and machine

inspectors) take an oath prior to commencing their service, *id.* §§ 2676-80.  Courts have recognized that safeguards like these ensure that elections are fundamentally fair, above and beyond the use of partisan poll watchers, such that even if canvass observers did not have "meaningful access to observe and monitor the electoral process" at all times (and they did), *see* Compl. ¶ 175, Plaintiffs fall well short of plausibly alleging the election was "fundamentally unfair." *See Cortés*, 218 F. Supp. 3d at 404 ("[W]hile poll watchers may help guard the integrity of the vote, they are not the Election Code's only, or even best, means of doing so.").

Nor do Plaintiffs state a cognizable equal protection violation pertaining to allegedly differential canvass observer access.   It is well-settled that local distinctions in voting procedures do not raise equal protection concerns.  *See, e.g.*, *PG Publ'g v. Aichele*, 705 F.3d 91, 114-16 (3d Cir. 2013) (rejecting equal protection challenge to law limiting polling place access where "in some instances, reporters from newspapers in some counties were permitted into the polling place, while reporters in other counties were not"); *see also, e.g.*, *Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018) (rejecting Equal Protection challenge to state vote-by-mail law that adopted different policies for different counties); *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 635-36 (6th Cir. 2016) (rejecting equal protection challenge even where "plaintiffs presented uncontested evidence that, in determining

whether to reject a given ballot, the practices of boards of elections can vary, and sometimes considerably").

Here, it is inevitable that the particular form of canvass observer access among Pennsylvania's 67 counties is going to differ—the counties have varying population levels, received differing numbers of mail-in ballots requiring differential personnel levels, processed mail-in ballots using different equipment, and performed their canvassing in rooms of varying size that in turn called for differential safety considerations in the midst of the pandemic.  Once again, the Election Code, and Pennsylvania's de-centralized election administration system, contemplate that each county board will exercise its discretion and deploy its own procedures for fairly and efficiently processing mail-in ballots.  Put simply, the fact that one county might permit observers to monitor that process from a closer vantage point than another county does not create an equal protection violation, and the Court should reject Plaintiffs' invitation to have federal courts micromanage counties' canvassing procedures in their respective jurisdictions.  *See, e.g.*, *Short*, 893 F.3d at 678-79; *Wexler v. Anderson*, 452 F.3d 1226, 1231-33 (11th Cir. 2006) ("Plaintiffs do not contend that equal protection requires a state to employ a single kind of voting system throughout the state. Indeed, local variety in voting systems can be justified by concerns about cost, the potential value of innovation, and so on.").

**B.      Counties' use of notice-and-cure procedures for deficient mail-in ballots does not burden due process rights or violate equal protection.**

Plaintiffs also fail in attempting to convert efforts by some counties to allow voters to cure their ballots before the close of the polls into some sort of nefarious constitutional violation.  At the outset, Plaintiffs fail to identify any burden these efforts placed on the fundamental right to vote for voters whose counties did not embrace available means to allow for voters to cure defective mail-in ballots.  Even as Plaintiffs allege it, the limited number of voters who cured (or attempted to cure) their ballots did not seek to have two ballots count in the election; they merely sought to remedy an originally defective ballot, so their vote could count—once—and they did so before the close of the polls on Election Day.  Plaintiffs offer no suggestion that the "cured" votes were fraudulent or that the limited number of voters who exercised this option were not eligible to vote; they only allege that some minor discrepancy was cured.   Giving voters this innocuous option to protect their franchise cannot possibly burden *other* voters' (or a political campaign's) due process rights, and Plaintiffs' contention that they suffered harm because other voters' votes were counted runs counter to well-settled democratic principles. Indeed, several courts have held that a practice that makes it easier for some individuals to vote does not create a cognizable burden.  *See, e.g.*, *Short*, 893 F.3d at 677-78 ("Appellants [have not] cited any authority explaining how a law that

makes it easier to vote would violate the Constitution."); *Tex. League of United Latin Am. Citizens v. Hughs*, --- F.3d. ----, 2020 WL 6023310, at *5, *8 (5th Cir. Oct. 12, 2020) (finding it a "mystery" how the "expansion of voting opportunities burdens anyone's right to vote"); *Boockvar*, 2020 WL 5997680, at *41-43 (holding that counties' differential use of drop boxes did not give rise to equal protection violation because it did not burden plaintiffs' right to vote).

Because Plaintiffs cannot demonstrate any burden on the fundamental right to vote, rational basis review of the notice-and-cure procedures applies. *See Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012) ("If a plaintiff alleges only that a state treated him or her differently than similarly situated voters, without a corresponding burden on the fundamental right to vote, a straightforward rational basis standard of review should be used."). There are ample rational bases for the Defendant counties to allow correction of defects—not the least of which is that it protects their citizens' right to have their votes counted. For instance, counties with higher rates of mail-in voting compared to in-person voting may have wanted to implement notice-and-cure procedures to reduce disenfranchisement of first-time mail-in voters, particularly given Pennsylvania's newly expanded mail-in voting system and the ongoing pandemic.

Nor do such procedures violate the "mandates" of the Election Code, as Plaintiffs incorrectly suggest. Compl. ¶ 6. In an attempt to support that allegation,

34

Plaintiffs misquote the Pennsylvania Supreme Court, which merely held that "the [County] Boards are not *required* to implement a 'notice and opportunity to cure' procedure for mail-in and absentee ballots that voters have filled out incompletely or incorrectly."  2020 WL 5554644, at *20 (emphasis added).  The court did not rule—nor was it asked to rule—on whether the Election Code prohibited counties from voluntarily undertaking such a process.  *See id.*  And to the extent the Election Code is silent or ambiguous on whether counties may allow such cures, it is well settled under Pennsylvania law that any ambiguity should be resolved in favor of ensuring the franchise and, here, counting the cured ballots.  *See, e.g.*, *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004) (citing the "longstanding and overriding policy in this Commonwealth to protect the elective franchise" and noting that "although election laws must be strictly construed to prevent fraud, they 'ordinarily will be construed liberally in favor of the right to vote.'" (citations omitted)); *In re Luzerne Cty. Return Bd.*, 290 A.2d 108, 109 (Pa. 1972) ("Our goal must be to enfranchise and not to disenfranchise [the electorate].").

Moreover, Plaintiffs do not allege that the counties applied the cure procedures discriminatorily.  Plaintiffs attempt to argue that because counties with more Democratic voters were more likely to adopt notice-and-cure procedures than counties with more Republican voters, it stands to reason that deficient Republican mail-in ballots were less likely to be cured than deficient Democratic ballots.  *See*

Compl. ¶¶ 6, 137.  This argument misses the mark.  Plaintiffs do not allege, nor could they, that counties with greater numbers of Republican voters were prevented from implementing notice-and-cure procedures; those counties simply exercised their discretion not to.  The Secretary disseminated her guidance regarding this issue to all counties; the fact that some counties opted not to embrace such an option does not mean that those counties that did violated the Constitution.  Election practices need not cater to the lowest common denominator, and Plaintiffs' arguments would improperly penalize those counties that are enfranchising voters by helping them avoid ballot disqualification.  *See Paher v. Cegavske*, 2020 WL 2748301, at *9 (D. Nev. May 27, 2020) (rejecting equal protection challenge to plan that "ma[d]e it easier or more convenient to vote in [one] County, but [did] not have any adverse effects on the ability of voters in other counties to vote").  Nor do Plaintiffs allege that the Defendant counties discriminatorily applied the procedure only to Democratic ballots.  In sum, Plaintiffs' allegations concerning the opportunity to cure defective mail-in ballots does not establish an equal protection violation.

## C.   The Secretary Did Not Violate The Elections or Electors Clauses.

Putting aside that Plaintiffs lack standing to assert violations of the Elections or Electors Clauses (Counts III, V, VII[4]), *see supra* § II.C, those claims fail on the

---

[4] Count VII appears to have been included in error, as it is the exact same as Count V, save for different paragraph numbers.

merits in any event. *First*, because the procedures implemented by the Secretary and Defendant counties are entirely consistent with the Election Code (for all the reasons set forth above), there can be no violation of the Electors or Elections Clauses as a matter of law. It is axiomatic that, where there is no violation of a legislature's directives for the conduct of an election, there is no violation of the Electors or Elections Clauses.

*Second*, the county boards were merely acting within the power and discretion afforded them under the Election Code to regulate elections, which does not run afoul of the Elections or Electors Clauses. *See Arizona Ind. Redistricting Comm'n*, 576 U.S. at 814. The General Assembly cannot foresee every possible circumstance that may arise, particularly when new legislation, such as Pennsylvania's Act 77, is passed. For this reason, the General Assembly long ago gave county boards of election the power and discretion "to make and issue such rules, regulations, and instructions, not inconsistent with law, as they may deem necessary, for the guidance of . . . elections officers and electors." 25 Pa. Cons. Stat. § 2642(f); *see also id.* § 2641(a) (giving county boards of elections "jurisdiction over the conduct of primaries and elections in [each] county"). Rather than usurping the role of the General Assembly, the counties simply instituted procedures to give effect to the legislature's demonstrated intent in enacting the Election Code. There is nothing improper about that, and Counts II, V, and VII should be dismissed.

**IV.    The Equities and Circumstances Disfavor Federal Judicial Intervention.**

Even if it the Court were to look past the substantial justiciability and plausibility defects in Plaintiffs' Complaint—and it should not—the Complaint fails for a more fundamental reason: Plaintiffs cannot meet the elements required for the undemocratic and drastic relief they seek, which at its core is an injunction disenfranchising millions of voters and preventing the Secretary and the counties from certifying the results of the Commonwealth's recent elections.   That is particularly true where, as here, the Trump Campaign failed to pursue available state-court avenues, substantially undermining their claim to emergency injunctive relief now.

**A.    Plaintiffs do not plausibly plead entitlement to injunctive relief.**

Injunctive relief is "an extraordinary remedy," which a court may grant only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  Setting aside the merits of the claims (on which this case is dead on arrival), a plaintiff seeking an injunction must establish (i) irreparable harm in the absence of the injunction, (ii) that the balance of equities tips in her favor, and (iii) that an injunction is in the public interest.  *See id.* at 20. Plaintiffs cannot establish any of those required elements.

Plaintiffs will not be irreparably harmed by the absence of an injunction in this case.  Narrower and more appropriate relief is readily available that would

38

remedy Plaintiffs' claimed injuries.  For example, even if this Court were to rule that voters who cast defective mail-in ballots should not have been allowed to vote by provisional ballots despite the Election Code provision to the contrary, *see* 25 Pa. Cons. Stat. § 3150.16(b)(2), the Secretary did not object to an injunction whereby provisional ballots cast by voters who sought to cure defects in their mail-in ballots would be segregated so that parties could challenge those provisional ballots, if necessary, in accordance with the Election Code's standard procedures for addressing provisional ballots (*i.e.*, at public sessions of each county board).  *See* Ex. 4.  That tailored remedy addresses Plaintiffs' claimed injuries.  That Plaintiffs' requested remedy in this case is not narrowly tailored is fatal to its Complaint.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) ("If a less drastic remedy . . . was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted." (citations omitted)); *see also Perles v. Cty. Return Bd. of Northumberland Cty.*, 415 Pa. 154, 159 (1964) ("The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons."); *Pa. Democratic Party*, 2020 WL 5554644, at *9 ("[I]t is well-settled that, although election laws must be strictly construed to prevent fraud, they ordinarily will be

construed liberally in favor of the right to vote . . . to enfranchise and not to disenfranchise" voters."); *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 596 (E.D. Pa. 2012) (declining to issue a temporary restraining order in an election case when doing so would mean that "Pennsylvania voters could be disenfranchised").

The two remaining factors—the balance of equities and the public interest— likewise prohibit granting the radical, anti-democratic, and overbroad equitable relief Plaintiffs seek. Since the Secretary and counties work on behalf of the people of the Commonwealth, both factors essentially ask whether the public will be harmed by Plaintiffs' requested injunction, and it is incontrovertible that it would. The public has a weighty interest in enfranchisement and in promptly finalizing the results of the elections. *See Org. for Black Struggle v. Ashcroft*, 978 F.3d 603 (8th Cir. 2020) ("[T]he State's interest[] in . . . quickly certifying election results . . . further serve[s] the public's interest[.]" (internal quotation marks and citations omitted)). The certainty that comes with a certified election result allows, for instance, the peaceful transfer of power from one officeholder to the next, which is fundamental to American democracy and our nation's founding principles. *See id.* ("[C]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy[.]" (citation omitted)). Should this Court happen to find any violation of law (and it should not), the appropriate remedy cannot be to prevent certification.

Additionally, and perhaps more importantly, Plaintiffs' overbroad injunction request does not remotely square with the current margin of their preferred candidate's reported deficit at present. Based on the results publicly reported to date, former Vice President Biden's 53,000-plus vote margin over President Trump renders any injunctive relief particularly inappropriate here. *See* https://www.electionreturns.pa.gov/General/SummaryResults (last checked, 11/12/20, 3:30 p.m.). Third Circuit precedent limits the authority of federal courts to grant injunctive relief only "where there is *substantial* wrongdoing in an election, the effects of which are *not capable of quantification* but which render the apparent result an unreliable indicium of the will of the electorate." *Marks v. Stinson*, 19 F.3d 873, 887 (3d Cir. 1994) (emphases added). That is a far cry from this case. Whereas *Marks* concerned intentional and "massive absentee ballot fraud, deception, intimidation, harassment and forgery," including a conspiracy between the winning candidate and local election officials, *id.* at 886-87, Plaintiffs here allege, at most, garden-variety irregularities (none of which implicate the winning candidate or campaign), *see* Compl. ¶¶ 178, 211. Moreover, Plaintiffs do not and cannot plausibly suggest that, in the absence of the cited irregularities, their candidate would have "received a plurality of the legally cast votes." *Marks*, 19 F.3d at 886. As such, this Court may not issue Plaintiffs any injunctive relief at all, much less the extraordinary remedy of a federal injunction prohibiting the Secretary from

certifying the results of a state-run election in which nearly 7 million citizens participated.[5]

### B.   Plaintiffs' failure to pursue available state is fatal to their claim to federal injunctive relief.

Plaintiffs' plea for injunctive relief is also undermined by their substantial failure to take advantage of state remedies that could have resolved their election-related disputes.  Nearly a week after Election Day, Plaintiffs brought this Federal Complaint asserting what are, at most, disputes with individual counties' administration of the canvass-watching rules and allowance of voters to cure defective mail-in ballots.  These claims could and should have been brought against specific counties in state court—indeed, in some instances, Plaintiffs brought such actions and, in fact, one such challenge remains pending before the Pennsylvania

---

[5] The relief is also improper for another reason: it is barred by sovereign immunity. While nominally seeking to restrain conduct, the ultimate thrust of the relief requested in Plaintiffs' Complaint is to mandate a different election outcome by invaliding certain ballots.  See Compl. ¶ 15 & p. 84.  Sovereign immunity bars such claims seeking mandatory injunctions to compel affirmative action by Commonwealth officials.  *See, e.g.*, *Youst v. Pa. Dept. of Transp.*, 739 A.2d 625, 627 (Pa. Cmwlth. 1999) (sovereign immunity bars "claims seeking affirmative action by way of injunctive relief") (citation omitted); *see also* 1 Pa. Cons. Stat. § 2310 ("[T]he Commonwealth, and its officials . . . acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.").

Supreme Court.  The availability of such state remedies merits dismissal—or at least abstention—by this Federal Court now.

*First*, to the extent Plaintiffs had issues with the access granted to their observers at ballot canvassing sites or the process afforded mail-in voters to cure certain mail-in ballot defects, they could and should have brought those challenges either on Election Day or during the ballot counting process itself.  Indeed, the Election Code expressly contemplates the potential need for judicial intervention during an election in requiring that the court of common pleas in each county remain in "continuous session at the courthouse of said county . . . on the day of each . . . election from 7 o'clock A. M. until 10 o'clock P. M. and so long thereafter as it may appear that the process of said court will be necessary to secure a free, fair and correct computation."   25 Pa. Cons. Stat. § 3046.   Yet with the exception of challenging the canvass-watching procedures in Philadelphia County and the disclosure of cancelled mail-in ballots in Northampton County, the Trump Campaign did not challenge the canvass-watching or cure process in *any* other of the Defendant counties.  Now, only after those counties have counted nearly all of their mail-in votes and the votes disfavor President Trump, the Trump Campaign is attempting to cry foul.  Such a delayed attempt and request for a do-over after the fact is plainly impermissible.  *See Stein*, 223 F. Supp. 3d at 437 (holding that "prejudicial and unnecessary delay alone provides ample ground" to deny relief);

*Golden v. Gov't of the Virgin Islands*, 2005 WL 6106401, at *5 (D.V.I. Mar. 1, 2005) (denying post-election relief where plaintiffs "lacked diligence by waiting to see whether their candidate of choice won the one certified seat, before bringing a legal action"); *see also Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1180 (9th Cir. 1988) (affirming a district court's application of laches in a post-election lawsuit because doing otherwise "would permit, if not encourage, parties who could raise a claim to lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action" (quoting *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983)); *Pa. Democratic Party v. Republican Party of Pa.*, 2016 WL 6582659, at *4 (E.D. Pa. Nov. 7, 2016) ("Plaintiff's dilatory conduct 'weighs decidedly against granting the extraordinary relief [it] seek[s]'" (brackets in original) (citations omitted)).

*Second*, to the extent certain voters were permitted to cast provisional in-person ballots out of fear their mail-in votes were cancelled, the Trump Campaign had the power to challenge specific provisional ballots during the county boards' review of those ballots, and to raise any further challenges in Commonwealth courts. Accordingly, the Trump Campaign could have—and still can—readily pursue a state-law remedy against those voters who they do not believe should have been entitled to cast provisional ballots.  Given such option, Plaintiffs should not be

entitled to manufacture federal constitutional claims and demand from this Court the extraordinary injunctive relief of holding up the certification of statewide election results.

*Third*, as set forth above, the Election Code prescribes a clear election contest regime. But rather than comply with that process, the Trump Campaign has rushed (again) to federal court, attempting to equate minor perceived Election Code violations with constitutional claims—an argument Judge Ranjan dismissed in the Western District case. *Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 5407748, at *9 (W.D. Pa. Sep. 8, 2020).

Ultimately, Plaintiffs ask this Federal Court to use its discretionary powers to enjoin the Secretary from certifying the Commonwealth's election results based on unprecedented and unlimited theories of constitutional harm that, if accepted, would mandate federal court micromanagement of virtually every aspect of state elections going forward. If this Court does not dismiss the complaint outright—and it should—it can and should use its discretion to direct Plaintiffs back to the state courts where their grievances belong.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

Dated:  November 12, 2020

Respectfully submitted,

KIRKLAND & ELLIS LLP

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL

By:  */s/ Daniel T. Donovan*
     Daniel T. Donovan
     Susan M. Davies
     Michael A. Glick
     1301 Pennsylvania Avenue,
     N.W.
     Washington, DC  20004
     (202)-389-5000 (telephone)
     (202)-389-5200 (facimile)
     daniel.donovan@kirkland.com
     susan.davies@kirkland.com
     michael.glick@kirkland.com

By:  */s/ Keli M. Neary*
     Keli M. Neary
     Karen M. Romano
     Nicole Boland
     Stephen Moniak
     15th Floor, Strawberry Square
     Harrisburg, PA 17120
     (717) 787-2717 (telephone)
     (717) 772-4526 (facsimile)
     kromano@attorneygeneral.gov
     kneary@attorneygeneral.gov
     nboland@attorneygeneral.gov
     smoniak@attorneygeneral.gov

MYERS BRIER & KELLY LLP

By:  *Daniel T. Brier*
     Daniel T. Brier
     Donna A. Walsh
     John B. Dempsey
     425 Spruce Street, Suite 200
     Scranton, PA 18503
     (570) 342-6100 (telephone)
     (570) 342-6147 (facsimile)
     dbrier@mbklaw.com
     dwalsh@mbklaw.com
     jdempsey@mbklaw.com

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of*
*Pennsylvania*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Daniel T. Brier*

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of*
*Pennsylvania*