# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | : |
| Plaintiffs, | : |
| v. | : |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | : |
| Defendants. | : |

NO. 20-CV-02078-MWB

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ALLEGHENY COUNTY BOARD OF ELECTIONS, CHESTER COUNTY BOARD OF ELECTIONS, MONTGOMERY COUNTY BOARD OF ELECTIONS, AND PHILADELPHIA COUNTY BOARD OF ELECTIONS TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO DISMISS PENDING STATE-COURT RESOLUTION OF STATE-LAW QUESTIONS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

THE STATUTORY FRAMEWORK OF PENNSYLVANIA MAIL-IN AND ABSENTEE VOTING ...................................................................................... 5

I.    The General Assembly's Expansion of the Opportunity for Voters to Use Mail-In Ballots: Act 77 of 2019 and the 2020 Presidential Election ...... 6

II.   The Process for Obtaining a Mail-in or Absentee Ballot ............................. 8

PROCEDURAL HISTORY ................................................................................. 9

ARGUMENT ...................................................................................................... 13

I.    The Trump Campaign Makes No Plausible Claims of Election Fraud ......... 13

II.   Plaintiffs Lack Standing to Pursue Their Claims ....................................... 17

    A.    Plaintiffs Fail to Allege an Injury in Fact ........................................ 17

        1.    The Trump Campaign Does Not Allege an Injury in Fact ....... 18

        2.    The Individual Plaintiffs Do Not Allege an Injury in Fact ....... 20

    B.    Plaintiffs Fail to Allege Causation ................................................... 21

    C.    Plaintiffs Fail to Allege Redressability ............................................ 23

III.  Plaintiffs Have Failed to State A Viable Federal Constitutional Claim ....... 24

    A.    The U.S. Constitution Does Not Guarantee Partisan Representatives an Unobstructed Right to View and Inspect Mail-in Ballots .......................................................................... 26

    B.    Notice and Opportunity to Cure Procedure ..................................... 29

    C.    General Dissatisfaction with Mail-In Ballots Does Not Make Out a Constitutional Claim .............................................................. 30

    D.    Plaintiffs' Electors and Elections Clauses Claims Fails as a Matter of Law ............................................................................... 33

IV.  In the Alternative, this Court Should Abstain from Deciding Plaintiffs' Claims and Allow the Pennsylvania Judiciary to Resolve Them ................. 35

    A.    Principles of Federalism and Federal Law Require Deference to State Court Process ...................................................................... 36

    B.    The Court Should Abstain Under *Younger* ..................................... 38

    C.    The Court Should Abstain Under *Pullman* ...................................... 39

V.   The Trump Campaign's "Remedies" Are an Unconstitutional Attempt to Disenfranchise Millions of Pennsylvania Voters ..................................... 40

CONCLUSION .................................................................................................. 45

**Page(s)**

**Cases**

*Acosta v. Democratic City Comm.*,
    288 F. Supp. 3d 597 (E.D. Pa. 2018)..........................................................25, 31

*Barnette, et al. v. Lawrence*,
    20-CV-05477-PBT (E.D. Pa. Nov. 3, 2020)...................................................10

*Bennett v. Yoshina*,
    140 F.3d 1218 (9th Cir. 1998)...........................................................................31

*Berg v. Obama*,
    586 F.3d 234 (3d Cir. 2009).............................................................................20

*Bognet v. Boockvar*,
    No. 20-215, 2020 WL 6323121 (W.D. Pa. Oct. 28, 2020)...............................18

*Bonas v. Town of N. Smithfield*,
    265 F.3d 69 (1st Cir. 2001) ..............................................................................42

*In re Canvassing Observation*,
    No. 1094 CD 2020-CFC (Pa. Commw. Ct. Nov. 5, 2020)......................11m 12

*In re Canvassing Observation*,
    No. 425 EAL 2020, 2020 WL 6556414 (Pa. Nov. 9, 2020)...............................3

*In re Canvassing Operation*,
    No. 201107003-Tsai (Phila. Ct. Com. Pl. Nov. 3, 2020) ..................................12

*Casey v. Clayton Cnty.*,
    No. 04-871, 2007 WL 788943 (N.D. Ga. Mar. 14, 2007)...........................44, 45

*Chez Sez III Corp. v. Township of Union*,
    945 F.2d 628 (3d Cir. 1991).............................................................................39

*Citizens for John W. Moore Party v. Bd. of Election Comm'rs of City of Chi.*,
    781 F.2d 581 (7th Cir. 1986).............................................................................45

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).....................................................................................18, 22

*Corman v. Torres*,
   287 F. Supp. 3d 558 (M.D. Pa. 2018)..........................................................33, 34

*Curry v. Baker*,
   802 F.2d 1302 (11th Cir. 1986) ..............................................................24

*Digenova v. Baker*,
   No. 02-98, 2002 WL 32356401 (E.D. Pa. Apr. 11, 2002) ...............................14

*Donald J. Trump for President, Inc. v. Boockvar*,
   No. 20-CV-966, 2020 WL 4920952 (W.D. Pa. Aug. 23, 2020)................38, 40

*Donald J. Trump for President, Inc. v. Boockvar*,
   No. 20-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020)....................2, 20, 32

*Donald J. Trump for President, Inc. v. Cegavske*,
   No. 20-cv-1445, 2020 WL 5626974 (D. Nev. 2020) .................................20, 21

*Donald J. Trump for President, Inc. v. Phila. Cnty. Bd. of Elections*,
   No. 20-cv-5533-PSD (E.D. Pa. Nov. 3, 2020)............................................3, 13

*Donald J. Trump for President, Inc. v. Way*,
   No. CV2010753MASZNQ, 2020 WL 6204477 (D.N.J. Oct. 22, 2020) ............2

*In re Ellwood City Borough's Contested Election*,
   286 Pa. 257 (Pa. 1926)......................................................................32

*Gamza v. Aguirre*,
   619 F.2d 449 (5th Cir. 1980)..............................................................25

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018)......................................................................21

*Griffin v. Burns*,
   570 F.2d 1065 (1st Cir. 1978) ..........................................................25, 43

*Hoblock v. Albany Cnty. Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005)................................................................42

*Hunter v. Hamilton Cnty. Bd. of Elections*,
   850 F. Supp. 2d 795 (S.D. Ohio 2012) ...............................................45

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) ...........................................................14

*Lopez v. Merced Cnty., Cal.*,
  473 F. Supp. 2d 1072 (E.D. Cal. 2007) ....................................43, 44

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...............................................17, 22, 23

*Marks v. Stinson*,
  19 F. 3d 873 (3d Cir. 1994).........................................25, 43, 44

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004)....................................................32

*Nolles v. State Comm. for the Reorg. of Sch. Dists.*,
  524 F.3d 892 (8th Cir. 2008) ........................................21

*Oh v. Phila. Cnty. Bd. of Elections*,
  No. 08-81, 2008 WL 4787583 (E.D. Pa. Oct. 31, 2008)................19

*Pa. Democratic Party v. Boockvar*,
  238 A.3d 345, 2020 WL 5554644 (Pa. Sept. 17, 2020) ...............7, 36

*Paher v. Cegavske*,
  457 F. Supp. 3d 919 (D. Nev. 2020) ................................21

*Phila. Redevelopment Authority v. Atuahene*,
  229 A.3d 1002 (Pa. Super. Ct. 2020)................................32

*Pierce v. Allegheny Cnty. Bd. of Elections*,
  324 F. Supp. 2d 684 (W.D. Pa. 2003) ..............................40

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006)................................................41, 42

*R.R. Comm. of Tex. v. Pullman Co.*,
  312 U.S. 496 (1941)...............................................39

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
  140 S. Ct. 1205 (2020) ...........................................41

*Republican Party of Pa. v. Boockvar*,
   2020 WL 6536912 (U.S. Nov. 6, 2020) ....................................................12, 13

*Republican Party of Pa. v. Boockvar*,
   No. 20-542, — S. Ct. —, 2020 WL 6304626 (Oct. 28, 2020) ...................11, 38

*Reynolds v. Sims*,
   377 U.S. 533 (1964)..................................................................................5, 42

*Ron Barber for Cong. v. Bennett*,
   No. 14-CV-02489, 2014 WL 6694451 (D. Ariz. Nov. 27, 2014) ..............31, 44

*Samuel v. Virgin Islands Joint Bd. of Elections*,
   No. 2012-0094, 2013 WL 842946 (D.V.I. Mar. 7, 2013) .........................11, 19

*Schall v. Joyce*,
   885 F.2d 101 (3d Cir. 1989)............................................................................38

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014)..............................................................................8

*Stein v. Cortes*,
   223 F. Supp. 3d 423 (E.D. Pa. 2016)........................................ *19, 23, 37, 38, 39*

*Townley v. Miller*,
   722 F.3d 1128 (9th Cir. 2013)........................................................................23

*Trinsey v. Montgomery Cnty. Bd. of Elections*,
   No. 87-6975, 1988 WL 82877 (E.D. Pa. Aug. 4, 1988)...................................44

*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017).............................................................................8

*Warth v. Seldin*,
   422 U.S. 490 (1975)........................................................................................17

*Wise v. Circosta*,
   978 F.3d 93, 2020 WL 6156302 (4th Cir. Oct. 20, 2020)...............................34

**Statutes**

25 P.S. § 2642...............................................................................................8, 35

25 P.S. § 2687.....................................................................................................26

25 P.S. § 3017 ..................................................................7

25 P.S. § 3046 ................................................................36

25 P.S. § 3146.2b ......................................................9, 31

25 P.S. § 3146.8 ............................................7, 26, 31, 36

25 P.S. § 3150.12b ....................................................9, 31

25 P.S. § 3150.16 ..........................................................7

25 P.S. § 3154 ................................................................36

25 P.S. § 3157(b) ..........................................................36

25 P.S. § 3291 ................................................................36

25 P.S. § 3351 ................................................................36

25 P.S. § 3376 ................................................................36

25 P.S. § 3401 ................................................................36

25 P.S. § 3431 ................................................................36

3 U.S.C. § 5 ..............................................................8, 37

**Other Authorities**

Fed. R. Civ. P. 8(a) ......................................................14

Fed. R. Civ. P. 9(b) ......................................................14

Fed. R. Civ. P. 12(b)(6) ..................................................8

Pa. Dep't of State, *Pennsylvania Guidance for Mail-in and Absentee Ballots Received from the United States Postal Service after 8:00 p.m. on Tuesday, November 3, 2020* (Oct. 28, 2020), *available at* https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Documents/2020-10-28-Segregation-Guidance.pdf ..................................................................11

Pa. Dep't of State, *Reporting Center* (last visited Nov. 11, 2011), *available at* https://www.electionreturns.pa.gov ..............................8

*Press Release: Patrick offers up to $1 Million in Rewards for Voter Fraud Whistleblowers & Tipsters, Texans for Dan Patrick*, https://www.danpatrick.org/patrick-offers-up-to-1-million-in-rewards-for-voter-fraud-whistleblowers-tipsters/?fbclid=IwAR2gWbGwdo1wwtmKzfFMQgjG Evp5uzrrmugenZcdy5gPPCytRsAyo8NiP3A (last visited Nov. 11, 2020) ...............................................................................13

U.S. Const. art. I, § 4, cl. 1 .................................................................33

U.S. Const. art. II, § 1, cl. 2................................................................34

# INTRODUCTION

This Court should see this lawsuit for what it is: a transparent and premeditated attack on our electoral system that broadly seeks to disenfranchise all Pennsylvania voters who legally cast ballots in this election. This extraordinary request to enjoin certification of the Presidential election, boiled down to its essence, is based on recycled, narrow, and meritless contentions that partisan observers needed an enhanced view of the canvass process and that the named County Boards of Election ("Counties") violated the Pennsylvania Election Code—claims that have been considered and rejected by other federal courts or are presently pending in state court. These claims are untimely, bereft of plausible facts, lacking Article III standing, warranting abstention in favor of pending state-court litigation on the same subject-matter, and unhinged from any viable constitutional theory of relief. None of these claims will affect the outcome of the election and they should be swiftly dismissed.

The instant effort to discredit mail-in ballots is part of a long-publicized litigation strategy by the Trump Campaign. Yet, in piecemeal litigation brought by the Trump Campaign before and during the election, sister federal district courts and the Pennsylvania state courts repeatedly rebuffed any suggestion that mail-in ballots

are inherently suspect or susceptible to fraud.[1] *See, e.g.*, *Donald J. Trump for President, Inc. v. Boockvar*, — F. Supp. 3d —, No. 20-cv-966, 2020 WL 5997680, at \*1 (W.D. Pa. Oct. 10, 2020); *Donald J. Trump for President, Inc. v. Phila. Cnty. Bd. of Elections*, No. 20-cv-5533-PSD (E.D. Pa. Nov. 3, 2020); *Donald J. Trump for President, Inc. v. Way*, No. 20-10753, 2020 WL 6204477, at \*1 (D.N.J. Oct. 22, 2020).

This Complaint reprises those losing arguments here to ask this Court to take the extraordinary measure of enjoining certification of a Presidential election based on little more than the Trump Campaign's dissatisfaction with the General Assembly's mail-in ballot process. This more audacious version of already-failed claims cannot be permitted to overthrow Pennsylvania's election results.

This Court should dismiss this action for lack of Article III Standing because the Trump Campaign and individual Plaintiffs assert no injury from their canvass-observation and small-scale ballot challenges. That is, they cannot and do not allege that these challenges could impact the election in such a way as to require the disenfranchisement of all Pennsylvania voters.

Even if this Court were to exercise jurisdiction, the Trump Campaign pleads no cognizable constitutional claims. No constitutional rights are implicated by

---

[1] *See, e.g.*, Am. Compl., *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-CV-966 (W.D. Pa. June 29, 2020), ECF No. 1.

Plaintiffs' generalized grievances about Trump Campaign representatives' ability to closely observe the ballot counting process—a claim premised on a patently incorrect reading of Pennsylvania law. Although the precise contours of any observation rights are pending before the Pennsylvania Supreme Court,[2] it is clear that Pennsylvania law provides neither a right to "inspect" mail-in ballots (which is implicit in the Trump Campaign's settlement of similar claims before U.S. District Judge Diamond),[3] nor a presumption that such ballots are somehow invalid unless the Trump Campaign's partisan observers conducted some sort of independent verification. In any event, the state-law rules and Board of Elections regulations governing qualified ballot observers are designed to *promote* (not thwart) the security of the mail-in ballots, to ensure the privacy of ballots, to assist in the efficient and timely count of the vote, and to address the serious health concerns posed by COVID-19, which require social distancing among those administering the count and observers, all while providing a transparent and open process. It was well within the Counties' broad discretion to establish such rules that reasonably balanced these weighty interests and to implement them in ways that accounted for natural differences between the size of available ballot-counting locations, the volume of

---

[2] *In re Canvassing Observation*, No. 425 EAL 2020, 2020 WL 6556414, at *1 (Pa. Nov. 9, 2020).

[3] *Donald J. Trump for President, Inc. v. Phila. Cnty. Bd. of Elections*, No. 20-cv-5533-PD (E.D. Pa. Nov. 3, 2020), ECF No. 6.

ballots, and the security and health risks amid a global pandemic. None of these considerations give rise to any inference of fraud or malfeasance, let alone a cognizable federal constitutional claim.

The Trump Campaign's complaints about "curing" mail-in ballots and challenges to the voter instructions regarding provisional ballots also fall entirely flat. At the outset, the number of ballots the Trump Campaign has placed at issue make this lawsuit futile. Moreover, the counting of provisional ballots is ongoing, and there are well-established *state-court* processes for challenging provisional ballots. The Trump Campaign cannot invoke federal jurisdiction to derail a state-court process midstream, particularly because those provisional ballots would not be outcome determinative of the Presidential election. None of this pleads a federal claim for relief—and certainly not one that warrants the extraordinary remedy of throwing out large swaths of Pennsylvanians' mail-in ballots.

Aside from these meritless observation and cure claims, all that is left of the Complaint is innuendo and scattershot assertions of individual ballot and polling place irregularities, which do not show any actual fraud, much less particularized and credible allegations of widespread and systemic fraud by state election officials, which would be required to seek the extraordinary relief of invalidation in a Presidential election. Isolated, garden-variety instances of poll and ballot scanning

hitches do not amount to a federal constitutional claim and cannot invalidate millions of duly cast votes.

In the alternative, this Court should abstain in light of pending state-court litigation on precisely the questions belatedly raised before this Court. The Pennsylvania Election Code sets forth a detailed administrative process for challenging the validity of voted ballots or contesting the election and the Pennsylvania judiciary is poised and best able to decide Plaintiffs' claims.

The Trump Campaign's attempt to indiscriminately throw out mail-in votes threatens the fundamental rights of all Pennsylvania voters to cast their ballots in the manner prescribed by the state legislature and the County Boards of Elections and *to have their votes counted*. The right to vote as the legislature has prescribed is fundamental, and "necessarily includes the right to have the vote fairly counted." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). It is this lawsuit that threatens Pennsylvanians' core constitutional rights, *not* any action by state and County election officials. Accordingly, this Court should dismiss this unfounded attack on the vote-counting process, which fails to state a federal constitutional claim.

## THE STATUTORY FRAMEWORK OF PENNSYLVANIA MAIL-IN AND ABSENTEE VOTING

There should be no mistake, this case is not about fraud or the legality of the more than 2.6 million mail-in and absentee ballots cast in Pennsylvania. It is a candidate's audacious attempt to overturn the results of a free and fair election.

Variations of the word "fraud" appear 33 times in the Complaint, yet there is not a single allegation of fraud by the Counties (or County officials) during this election. Defendants are aware of no credible claims of fraud. And no facts are alleged that would come close to justifying the disenfranchisement of every voter in the Commonwealth.

The Trump Campaign's claims ignore the context of Act 77's passage and are based on a misinterpretation of that law. The General Assembly enacted Act 77 to expand access to mail-in voting as an option available to voters beginning with the spring primaries, a measure that ultimately became important to maintaining Pennsylvania's 2020 public health in light of the continuing threat posed by the COVID-19 global pandemic. In anticipation of higher-than-usual use of mail-in and absentee ballots amid the pandemic, the Counties embraced their responsibility to ensure such votes were properly counted in a transparent and ethical manner. As more fully described below, each step of the process (including pre-canvassing and canvassing the mail-in ballots) was done in accordance with the Election Code. And that is precisely why the Trump Campaign has made no plausible allegations that support their unsubstantiated fraud claims.

I.     **The General Assembly's Expansion of the Opportunity for Voters to Use Mail-In Ballots: Act 77 of 2019 and the 2020 Presidential Election**

The General Assembly enacted Act 77 in October 2019 to allow *all* qualified voters to vote by mail regardless of absentee status. *See Pa. Democratic Party v.*

*Boockvar*, 238 A.3d 345, 2020 WL 5554644, at *1 (Pa. Sept. 17, 2020). Additional legislative enactments on mail-in voting procedures went into effect on March 27, 2020 (just weeks after the Commonwealth began responding to the COVID-19 pandemic). *See, e.g.*, 25 P.S. § 3150.16 ("Voting by mail-in electors"). Through these recent legislative enactments, the Commonwealth's legislature made an informed choice that determined how Pennsylvania's 2020 election would be conducted.

To participate in an election, voters in Pennsylvania must be registered. The process of registering to vote verifies the voter's identity and eligibility. Proof of identity requirements are the same whether that voter votes in person or by mail. Under Pennsylvania law, qualified voters had until October 19 to register to vote, and until October 27 to apply for a mail-in or absentee ballot for the general election held on November 3. 25 P.S. § 3017. While Election Day was held on Tuesday, November 3, counties were, of course, permitted to count votes in the days that followed.[4] The last day for county boards of elections to file official returns from the November 3 election with the Secretary of the Commonwealth is November 23,

---

[4] Any claim that all votes must be counted by the conclusion of Election Day is plainly specious. The Election Code does not permit the count of mail-in votes even to *begin* until Election Day—that is the start, not the *conclusion* of the canvassing process. 25 P.S. § 3146.8. In fact, overseas absentee ballots have one week to arrive. *Id.* § 3146.8(g).

2020. 25 P.S. § 2642. All state recounts and court contests must be completed by December 8, 2020. 3 U.S.C. § 5.

The public health crisis drove record numbers of qualified voters to follow this process and request mail-in ballots for the general election. Excluding the provisional ballots currently being processed, the Commonwealth has reported that 2,570,076 votes were cast by mail and an additional 4,189,015 were cast in person. Pa. Dep't of State, *Reporting Center* (last accessed Nov. 11, 2011), *available at* https://www.electionreturns.pa.gov/.[5] At every stage of the election, there was a clear accounting for eligible, registered voters and the ballots they cast. This process prevented the widespread malfeasance Plaintiffs insinuate (but do not plausibly plead) in the Complaint.

## II. The Process for Obtaining a Mail-in or Absentee Ballot

The arc of an absentee or mail-in ballot has a clear, predictable, and accountable trajectory. In order to vote by mail in Pennsylvania, a qualified, registered voter must apply for a mail-in or absentee ballot from the county board of

---

[5] In evaluating a Rule 12(b)(6) motion, the Court may take judicial notice of matters of public record such as letters of government agencies and published reports of administration bodies. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The Third Circuit has noted that where "information is publicly available on government websites" it is appropriate to take judicial notice of it. *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017). For the Court's convenience, a Declaration that contains relevant court orders and pleadings is being filed in support of this motion.

elections, which verifies proof of identification and compares the information provided on the ballot application with the information in the voter's registration profile. 25 P.S. § 3150.12. After the county board of election receives an application, it must be satisfied that the applicant is qualified to receive a ballot before marking the application as "approved." 25 P.S. §§ 3150.12b(a)(1) (mail-in ballots); *id.* at §§ 3146.2b(c) (absentee ballots).

The county board of election's approval decision is final and binding, except that challenges may be made concerning a voter's qualifications. 25 P.S. §§ 3150.12b(a)(2), 1302.2-D(a)(2), 3146.2b(c), 1302.2(c). Any challenges of this nature were required to be lodged with the county board of elections before 5:00 p.m. on the Friday prior to the election—October 30, 2020. 25 P.S. §§ 3150.12b(a)(3), 1302.2-D(a)(3), 3146.2b(c), 1302.2(c). Plaintiffs filed *no such* challenge. The window of opportunity to challenge the qualifications of mail-in voters therefore closed days before the pre-canvassing or canvassing phase and no level of access to or observation of the Election Day activities would have changed this.

## PROCEDURAL HISTORY

This action is not the Trump Campaign's first litigation effort in Pennsylvania. The Trump Campaign has repeatedly put forward baseless assertions of voter fraud in a scattershot approach to litigating election issues in the Commonwealth, with

many of the same issues raised here pending before (or already decided by) other state and federal courts. Many, if not most, of the allegations, themes and claims in this Complaint are retreads of material from those previous actions. For example:

- **Signature verification.** The Trump Campaign alleges that certain counties have acted "illegally" because they did not reject mail-in and absentee ballots based on signature analysis. Compl. ¶¶ 104-05. The Trump Campaign does not mention, however, that the Pennsylvania Supreme Court recently held that counties *may not* reject ballots for that reason. *See In re Nov. 3, 2020 Gen. Election*, — A.3d —, No. 149 MM 2020, 2020 WL 6252803, at *14 (Pa. Oct. 23, 2020); *see also Donald J. Trump for President, Inc*, 2020 WL 5997680, at *53 (W.D. Pa. Oct. 10, 2020).

- **A "two-tiered" or "two-track" voting system.** The Trump Campaign alleges that differences between in-person and mail-in voting violate voters' constitutional rights. Compl. ¶¶ 13-14. The Western District of Pennsylvania has rejected this theory. *Donald J. Trump for President, Inc*, 2020 WL 5997680, at *61-62.

- **Notice and cure.** The Trump Campaign alleges that "Democratic-heavy counties" notified voters of technical problems with their ballots, which allowed the voters to cure these deficiencies by correcting their ballots or casting provisional ballots, and that this process was illegal. Compl. ¶¶ 6-7. On November 3, 2020, the Republican Party sued at least two counties in state trial courts, seeking to prohibit them from publishing lists of such voters. After losing each case, the Republican Party declined to appeal.[6] Republican candidates also sued regarding ballot notice and cure in the Eastern District of Pennsylvania, then withdrew the suit after argument. *Barnette v. Lawrence*, No. 20-cv-

---

[6] *See In re Mot. for Injunctive Relief of Northampton Cnty. Republican Comm.*, No. C-48-CV-2020-6915 (Northampton C.C.P. Nov. 3, 2020), *available at* https://www.democracydocket.com/wp-content/uploads/sites/45/2020/11/ORDER-11-3-20.pdf; *Donald J. Trump for President, Inc. v. Bucks Cnty. Bd. of Elections*, No. 2020-05627 (Bucks C.C.P. Nov. 3, 2020), *available at* https://www.democracydocket.com/wp-content/uploads/sites/45/2020/11/Bucks-County-Lawsuit.pdf.

5477 (E.D. Pa. Nov. 3, 2020). Finally, Republican candidates filed suit in the Pennsylvania Commonwealth Court. *Hamm v. Boockvar*, No. 600 MD 2020 (Pa. Commw. Ct.). That case is stayed, and the parties have not tried to lift the stay.

- **Susceptibility of mail voting to "fraud."** The Trump Campaign argues, citing decades-old anecdotes from other jurisdictions and authors' hypotheticals, that voting by mail is "particularly susceptible to fraud." Compl. ¶ 50. The Trump Campaign does not, however, present any examples of fraud in the recent election[7] and have been unable to do so when pressed in other cases.[8]

- **Ballot receipt extension.** The Trump Campaign complains that Secretary Boockvar extended the deadline for receipt of mailed ballots, Compl. ¶ 13, and that such ballots were not segregated from other ballots, *id.* ¶ 151. But the Pennsylvania Supreme Court ordered the extension, *see Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020), and Justice Samuel A. Alito has ordered the counties to segregate ballots received during the extension period, *see* Order, No. 20A84 (U.S. Nov. 6, 2020); *see also* Pa. Dep't of State, *Pennsylvania Guidance for Mail-in and Absentee Ballots Received from the United States Postal Service after 8:00 p.m. on Tuesday, November 3, 2020* (Oct. 28, 2020), *available at* https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Voting ElectionStatistics/Documents/2020-10-28-Segregation-Guidance.pdf.

---

[7] The Trump Campaign claims unspecified instances where voters received unsolicited mail-in ballots requiring submission of a provisional ballot, isolated reports that a poll worker did not properly spoil mail-in ballots surrendered at in-person polling places (but no actual claims of double counting votes), the potential for alteration of over-voted or under-voted ballots (but no actual alteration), and the appearance of unspecified "additional ballots" in Delaware County. *See* Compl. ¶¶ 116-17, 120, 133-34.

[8] *See Trump v. Boockvar*, 2020 WL 5997680, at *61 (holding Trump Campaign, despite opportunity to present evidence of fraud, provided only speculation); *Donald J. Trump for President, Inc. v. Montgomery County Board of Elections*, No. 2020-18680, Montgomery County C.C.P,, Nov. 10, 2020 Tr. at 11 (Judge: "Are you claiming that there is any fraud in connection with these 592 disputed ballots?" Plaintiff's counsel: "To my knowledge at present, no.").

Ballots that arrived after November 3 were segregated by the counties. *See Republican Party of Pa. v. Boockvar*, 2020 WL 6536912 (U.S. Nov. 6, 2020) (confirming the Commonwealth's guidance that ballots with a delayed arrival should be segregated).

- **Access and observation of canvassing activities.** Counts I, II, and III of the Complaint all relate to alleged violations of Pennsylvania state law by failing to allow access by the Trump Campaign to view the canvassing process. Around 9:45 p.m. on November 3, the Trump Campaign re-filed a motion that it had initially withdrawn, relating to access in the Philadelphia Election Court.[9] This motion was ultimately denied by Judge Stella Tsai in the Election Court, shortly before midnight the same night.[10] While initially reversed by the Commonwealth Court, *see In re Canvassing Observation*, No. 1094 CD 2020-CFC (Pa. Commw. Ct. Nov. 5, 2020), the Philadelphia County Board of Elections filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which operated as an automatic supersedeas on the Commonwealth Court's order. Despite the stay, the Philadelphia County Board endeavored to comply with the Commonwealth Court's order, reconfiguring the canvassing room by moving the barrier at the front of the observer area up to within six feet of the first row of canvassing activities. On November 9, 2020, the Pennsylvania Supreme Court granted allocatur; briefing is scheduled to be completed by Friday, November 13. *See* Docket, No. 30 EAP 2020 (Pa.).

---

[9] *In re Canvassing Operation*, No. 201107003-Tsai (Phila. Ct. Com. Pl. Nov. 3, 2020) (first motion); Order, *In re Canvassing Operation*, No. 201107003 (Phila. Ct. Com. Pl. Nov. 3, 2020)(Tsai, J.), D.E. 2.

[10] Judge Tsai's decision was based on her factual and legal findings "the accommodations afforded to campaign representatives to observe election board employees complied with the relevant provisions of the election code and denied the petition." Opinion, *In re Canvassing Operation*, No. 201107003 (Phila. Ct. Com. Pl. Nov. 4, 2020)(Tsai, J.), D.E. 6, at 1. The opinion further held that "[i]n creating the physical layout, the Board struck the proper balance between the observers' ability to observe the canvassing process and the paramount interest of voter privacy as there are declaration envelopes that are being opened, secrecy envelopes that are being opened, and ballots that are being extracted." *Id*. at 3.

On November 5, 2020, the Trump Campaign filed another action against the Philadelphia County Board of Elections, requesting emergency injunctive relief for canvass observers. *Donald J. Trump for President, Inc. v. Phila. Cnty. Bd. of Elections*, No. 20-cv-5533-PSD (E.D. Pa. Nov. 5, 2020). An injunction hearing occurred at 5:30 p.m. and the motion was denied as moot after the parties reached an agreement resolving the issue. *Id.*, Order (Nov. 5, 2020), ECF No. 5.

In sum, nearly every issue in the Complaint has already been adjudicated and rejected by, or is presently pending in, Pennsylvania's courts.

## ARGUMENT

## I.   The Trump Campaign Makes No Plausible Claims of Election Fraud

The Trump Campaign has set up hotlines, enlisted and dispatched poll watchers across the Commonwealth, and appealed to local and national elected officials (who have offered cash rewards for examples of "fraud" in Pennsylvania[11]) in an attempt to locate benign voter irregularities it could transform into claims of voter fraud. Despite these efforts, the Trump Campaign alleges no facts (and points to no evidence) to suggest the procedures implemented in Pennsylvania led to voter fraud or otherwise corrupted the integrity of the present election. And the Trump Campaign's failure to allege such facts is not a surprise. Pennsylvania's mail-in ballot procedures were a success, allowing over 2.6 million Pennsylvania voters the

---

[11] *Press Release: Patrick offers up to $1 Million in Rewards for Voter Fraud Whistleblowers & Tipsters, Texans for Dan Patrick*, https://www.danpatrick.org/patrick-offers-up-to-1-million-in-rewards-for-voter-fraud-whistleblowers-tipsters/?fbclid=IwAR2gWbGwdo1wwtmKzfFMQgjG Evp5uzrrmugenZcdy5gPPCytRsAyo8NiP3A (last visited Nov. 11, 2020)

opportunity to safely vote amid a deadly global pandemic. The Trump Campaign, however, is undeterred. It now claims, without a shred of credible evidence, that Pennsylvania's mail-in ballot procedures resulted in fraud. This claim is simply not plausible. *See* Fed. R. Civ. P. 8(a). As such, Plaintiffs' not-so-veiled attempt to maintain political power at the expense of Pennsylvania voters should be summarily dismissed.

To sustain a claim sounding in fraud, The Trump Campaign must plead the facts of fraud with particularity. *See* Fed. R. Civ. P. 9(b); *cf. Digenova v. Baker*, No. 02-98, 2002 WL 32356401, at *2 (E.D. Pa. Apr. 11, 2002) (applying heightened pleading requirement to allegation of fraud in a union election). Conspiracy theories repackaged from the darkest corners of the internet do not support a federal claim. As relevant here, this means that to sustain their claims, The Trump Campaign must allege "the who, what, when, where, and how" of the alleged fraud.[12]   *See Institutional Inv'rs Grp. v. Avaya, Inc*., 564 F.3d 242, 254 (3d Cir. 2009) (explaining Rule 9(b) requirements). They must allege who committed fraud rather than simply implying that 2.6 million voters cannot be trusted. They must allege exactly what the fraudulent activities were, as well as where and when those actions took place.

---

[12] Plaintiff Donald J. Trump for President, Inc. itself recognized this standard just four years ago in litigation concerning a third-party candidate's attempt to seek a recount in light of flimsy allegations of voter fraud. *See* Memo. of Donald J. Trump for America, Inc in Opposition to Pls' Mtn. for Preliminary Injunction, No. 16-6287, Dkt. 38, at 22-23 (E.D. Pa. Dec. 8, 2016).

And they must identify who was involved in those activities. Their insinuation that illegal or fraudulent voter activity resulted from the procedures implemented by the Commonwealth and County Boards of Election does not come close to this standard.

The Trump Campaign's attempt to repackage their allegations of fraud as a widespread attack on Pennsylvania's mail-in voting procedures based on the unsupported premise that mail-in votes are inherently suspect. Such rhetoric—espoused by relying on irrelevant historical anecdotes, inapplicable international election "standards," and speculative theories of potential voter fraud—does not suffice to state a claim. *See, e.g.*, Compl. ¶¶ 4, 55-56 (discussing historical significance of Pennsylvania's vote by mail efforts and historical commentary of voter fraud); ¶¶ 46-50 (referencing "international standards").

The Trump Campaign further claims that "no one—not the voters and not Trump's campaign—can have faith that their most sacred and basic rights under the United States Constitution are being protected." *Id.* ¶ 2.[13] But nothing in the Complaint provides any factual basis to believe the election or its implementing procedures were tainted by fraud. The Trump Campaign does not even come close in that regard. For example, the Trump Campaign claims that procedures

---

[13] This argument is particularly concerning given the fact that the Trump Campaign asks this Court to strip Pennsylvania voters of their right to vote and apparently hand the decision of who will represent the Commonwealth of Pennsylvania in the Electoral College to the General Assembly.

administered by the Counties resulted in ill-defined fraud because those procedures impacted the ability of Republican poll watchers to observe the "receipt, review, opening, and tabulation," of all of this election's 2,600,691 absentee and mail-in ballots. *See, e.g.*, Compl. ¶¶ 4, 10. Yet it alleges no facts to support this claim. The Trump Campaign has not alleged that *all* Republican poll watchers were denied access to observe canvassing activities—but it has been admitted in open court that that is not true.[14] Nor does the Trump Campaign allege any facts to suggest that the procedures governing poll watchers applied differently to Republicans and Democrats. *See, e.g.*, *id.* ¶ 145 (detailing Court Order that applied to "all candidates, watchers, [and] candidate representatives"); *id.* ¶ 146 (noting all watchers were "allowed to be within 6 feet" of the canvassing process).

The Trump Campaign instead alleges only that "in some [undefined] instances" Republican poll watchers were denied access to observe canvassing activities. *Id.* ¶ 142. This is not enough to invalidate a single vote, let alone millions. Without more, this Court, the Counties, and more importantly, the public, are left to wonder what exactly the Trump Campaign believes would warrant casting aside the

---

[14] In Philadelphia, for example, the Trump Campaign acknowledged in court that Republican poll watchers *were permitted* to observe canvassing activity. *See* Nov. 5, 2020 Hr'g Tr., *Donald J. Trump for President, Inc. v. Phila. Cnty. Bd. of Elections*, No. 20-cv-5533 (E.D. Pa.) (Q: "I'm asking you as a member of the bar of this Court, are people representing the Donald J. Trump for President . . . in room [provided to poll watch]?" A: "Yes.").

will of Pennsylvania voters when federal courts in this Commonwealth have already concluded that the Trump Campaign cannot state constitutional claims "based on speculation that . . . alleged instances of voter fraud would be prevented by . . . poll watchers were they not precluded from serving at [specific] locations." *Cortes*, 218 F. Supp. 3d at 407.

Because the Trump Campaign has yet to put forward a single plausible, much less particular, factual allegation to support any of the claims asserted, the Complaint should be dismissed in its entirety.

## II.    Plaintiffs Lack Standing to Pursue Their Claims

The Plaintiffs in this case—the Trump Campaign and two individual voters—lack Article III standing. Their Complaint contains no plausible facts that would change the outcome of this election, they lack associational standing to represent voter or even the candidate's interests, and they fail to otherwise plead the constitutional elements necessary to pursue the extraordinary relief of enjoining the Presidential election: injury-in-fact; causation; and redressability.

### A.    Plaintiffs Fail to Allege an Injury in Fact

A cognizable "injury in fact" requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted). Allegations resting on

"highly speculative fear" or "a highly attenuated chain of possibilities" do not satisfy these requirements. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-11 (2013). Neither the Trump Campaign nor the two individual voters have therefore pled an injury in fact.

1. *The Trump Campaign Does Not Allege an Injury in Fact*

The Complaint contains only two paragraphs with specific ballot grievances, allegedly affecting: (1) four voters in Fayette County; (2) nine voters in Luzerne County[15]; and (3) one voter in an unidentified County. Compl. ¶¶ 57, 119. As of November 12, 2020, Joseph R. Biden earned 50,000 more votes than President Trump in Pennsylvania.[16] Even if all 14 ballots were invalid or unlawful, and even if they were all cast for President Trump, which the Trump Campaign admits they were not, these votes would not affect the outcome of the election. *See Bognet v. Boockvar*, No. 20-215, 2020 WL 6323121 (W.D. Pa. Oct. 28, 2020)(holding that there was no standing because the "number of ballots cast in favor of his opponent would have to be sufficient to change the results of the election" and allegations attempting to support this fact were conjectural and speculative). As such, the Trump Campaign has not suffered an injury in fact on the basis that the election results would somehow be different but for these 14 allegedly invalid ballots.

---

[15] These ballots were allegedly discarded by a temporary election worker.

[16] Pa. Secretary of State, *available at* https://www.electionreturns.pa.gov/.

The remainder of the Complaint's allegations constitute wholly speculative fears of election malfeasance with no factual basis. Such speculative fear of fraud or malfeasance cannot constitute an injury in fact. In *Stein*, a 2016 election candidate alleged that machine hacking may lead to inaccurate voter counts—without any factual support for that claim. *Stein v. Cortes*, 223 F. Supp. 3d 423, 432 (E.D. Pa. 2016). The Court refused to find standing holding that, "Plaintiffs' allegation[s] that voting machines may be 'hackable,' and the seemingly rhetorical question they pose respecting the accuracy of the vote count, simply do not constitute [an] injury-in-fact." *Id.*; *see also Samuel v. V.I. Joint Bd. of Elections*, No. 2012-0094, 2013 WL 842946, at *3 (D.V.I. Mar. 7, 2013).

The dearth of factual allegations at this late date is telling, given the Trump Campaign's reiteration of the same speculative fears across multiple lawsuits filed in the Commonwealth of Pennsylvania and across the United States beginning *weeks* before November 3, 2020, none of which have apparently born out. The Trump Campaign has searched for an injury and found none.

The Trump Campaign also lacks associational standing to make claims on behalf of Pennsylvania voters. *See Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (citations omitted); *see Oh v. Phila. Cnty. Bd. of Elections*, No. 08-81, 2008 WL 4787583, at *7 (E.D. Pa. Oct. 31, 2008) (holding that the losing candidate "cannot rest his claim to relief on the legal rights or interests of the voters," as "even if

substantiated, [such a claim] would amount to a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens and is not sufficient to confer standing."); *Donald J. Trump for President, Inc. v. Cegavske*, — F. Supp. 3d —, No. 20-cv-1445, 2020 WL 5626974, at *5 (D. Nev. 2020) (holding that "[t]he Trump Campaign does not represent Nevada voters," whose "individual constitutional interests are . . . distinct," but rather "only Donald J. Trump and his 'electoral and political goals' of reelection."). The Court should therefore reject the Trump Campaign's attempts to pretend to represent the interests of anyone but President Trump.

2.     *The Individual Plaintiffs Do Not Allege an Injury in Fact*

The two individual Plaintiffs, Lawrence Roberts and David John Henry, also fail to allege an injury in fact. Outside of the two paragraphs introducing Roberts and Henry as registered voters, the Complaint is largely mute on their presence in this action. There is one paragraph mentioning Henry—which confusingly alleges that "voters like Mr. Henry" did not receive an opportunity to cure their defective mail-in ballots. Compl. ¶¶ 19, 20, 211. Yet there are no allegations as to whether Roberts or Henry even voted in the election, and, if they did, whether their ballots were defective, and, if so, why. These bare allegations fail to establish a particularized injury in fact. A desire that President Trump be re-elected is not a basis for standing. *Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009) (dismissing for

lack of standing where voter's "wish that the Democratic primary voters had chosen a different presidential candidate . . . do[es] not state a legal harm").

Further, to the extent Roberts and Henry seek to assert more generalized injury, they still do not have standing. *Berg*, 586 F.3d at 239; *see also Gill v. Whitford,* 138 S. Ct. 1916, 1929 (2018) (holding that voter plaintiffs did not have standing to challenge vote dilution). Multiple federal courts, including this Court, have rejected similar attempts to confer voters standing in recent weeks and months. *See, e.g.*, *Penn. Voters Alliance v. Centre Cnty.*, No. 20-cv-1761, 2020 WL 6158309, at *3-7 (M.D. Pa. Oct. 21, 2020) (holding that voters' injuries were too speculative and generalized to support standing); *id.*, No. 20-3175 (3d Cir. Oct. 28, 2020) (denying motion for injunction pending appeal for lack of standing); *Cegavske*, 2020 WL 5626974, at *4; *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020); *accord Nolles v. State Comm. for the Reorg. of Sch. Dists.*, 524 F.3d 892, 900 (8th Cir. 2008) ("generalized grievance shared in common by all [Nebraska] voters" does not confer standing).

### B.     Plaintiffs Fail to Allege Causation

The Trump Campaign also fails to establish the causation element of standing, which requires that "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not

before the court." *Lujan*, 504 U.S. at 560 (internal quotation marks and alterations omitted).

The Trump Campaign challenges observer security and COVID-19 restrictions applicable to all observers and it complains, without basis, that it should have been provided increased access to the individuals counting mail-in ballots.[17] The insinuation being that mail-in ballots were fraudulent and that observers were denied an opportunity to document this supposed fraud. *See* Compl. ¶ 146. But any such fraud—which did not occur—would purportedly have been the work of third parties, not the Counties. No standing exists to sue the Counties on that basis.

As Judge Ranjan recently held in a related case, "this Court cannot 'endorse standing theories that rest on speculation about the decisions of independent actors.'" *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *2-3; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013). In the case before Judge Ranjan, "Plaintiffs fear[ed] that absent implementation of the security measures that they [sought] (guards by drop boxes, signature comparison of mail-in ballots, and poll watchers), there [was] a risk of voter fraud by other voters." *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *2-3. Now, even after the election, the Trump Campaign **still** cannot piece together a coherent set of allegations that: (1) fraud has

---

[17] As discussed above, there is only one paragraph even referring to Henry. Neither Henry nor Roberts allege that they tried to observe mail-in ballot counting, and could not, or any other activity at issue in this Complaint.

occurred; (2) all county election measures have failed; (3) the Trump Campaign's preferred measures would have somehow prevented fraud; and (4) the results would have affected whether Trump won Pennsylvania. *See Townley v. Miller*, 722 F.3d 1128, 1136 (9th Cir. 2013) (Ninth Circuit ruled that candidate did not have standing where Plaintiffs failed to connect competitive injury to conduct which allegedly violated candidate's rights). Plaintiffs utterly fail to plead causation to establish standing.

### C. Plaintiffs Fail to Allege Redressability

For similar reasons, the Trump Campaign cannot satisfy the redressability element of standing, which requires that it "be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561. The Trump Campaign only makes specific allegations about potential fraud or vote dilution for 14 ballots. Compl. ¶¶ 57, 119. In order to win Pennsylvania's electoral votes, President Trump would need to overturn tens of thousands of votes statewide. The Complaint provides no factual or legal basis to do so. *See Stein*, 223 F. Supp. 3d at 433-34 (holding that candidate did not allege how a recount would yield the votes necessary for her to prevail, and thus failed to allege an injury that the court could redress); *see also Lujan*, 504 U.S. at 571 (redressability element was lacking where "it is entirely conjectural whether the nonagency activity

that [allegedly] affects respondents will be altered . . . by the agency activity they seek to achieve").

## III.    Plaintiffs Have Failed to State A Viable Federal Constitutional Claim

When the 243 paragraph-complaint is reduced to causes of action, the Trump Campaign's purported constitutional violations amount to a challenge to the observers' access to watch polls and ballots (Counts I-III),[18] and claims relating to certain Counties' provision of notice of deficient mail-in ballot declarations and a limited opportunity to cure or cast provisional ballots (Counts IV-VI).[19] And despite casting these claims as violations of "equal protection," "due process" and the "Electors and Elections Clauses" of the U.S. Constitution, they constitute nothing more than dressed-up state-law claims pending before or already decided by Pennsylvania courts that pose no federal constitutional concern.

Pleading a due process and equal protection violation requires allegations of intentional fraud, wholesale wrongdoing by election officials, or voting irregularities pervasive enough to undermine the fundamental fairness of the entire election. *See*, *e.g.*, *Curry v. Baker*, 802 F.2d 1302, 1317 (11th Cir. 1986) ("A federally protected right 'is implicated where the entire election process—including as part thereof the state's administrative and judicial corrective process—fails on its face to afford

---

[18] Compl. ¶¶ 175-180, 185-191, 194, 197-200.
[19] Compl. ¶¶ 211-12, 220-22, 231-32. Count VII duplicates Count V.

fundamental fairness.'") (quoting *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978)) (holding there was no violation of federal constitutional rights, in part because the state courts provided an adequate procedure to address plaintiffs' complaints about the counting of illegal ballots). Only profound, systemic wrongdoing, such as "willful conduct" by state actors that "undermine[s] the organic process by which candidates [are] elected," can state a federal constitutional claim. *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 646 (E.D. Pa. 2018); *see also Marks v. Stinson*, 19 F. 3d 873, 889 (3d Cir. 1994); *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980).

Importantly, "while the Constitution demands equal protection, that does not mean all forms of differential treatment are forbidden." *Donald J. Trump for President, Inc. v. Boockvar*, — F. Supp. 3d —, No. 20-cv-966, 2020 WL 5997680, at *38 (W.D. Pa. Oct. 10, 2020). A state's election procedure may not burden the right to vote by debasement or dilution, but "[c]ommon sense, as well as constitutional law, compels the conclusion that states must be free to engage in substantial regulation of elections" to ensure "order, rather than chaos" in the administration of an election. *Id.* (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (internal quotation marks omitted) (alteration in original). That counties within the Commonwealth exercised their delegated discretion differently does not mean the Counties "[took] the votes of two voters, similarly situated in all respects,

and, for no good reason, count[ed] the vote of one but not the other." *Id*. at 42. The

Trump Campaign has not identified "uneven ***risks of vote dilution***—affecting voters

in some counties more than equivalent voters in others—but merely different voting

procedures in different counties that may contribute different amounts of vote

dilution ***distributed equally across the electorate as a whole***. *Id*. at 43 (emphases in

original).

The Trump Campaign's poll watcher and notice-and-cure claims fall woefully

short of stating a claim of insidious malfeasance that undermined the entire

Pennsylvania election and led to the arbitrary debasement and devaluation of votes.

### A.    The U.S. Constitution Does Not Guarantee Partisan Representatives an Unobstructed Right to View and Inspect Mail-in Ballots

Partisan poll and ballot-count watchers are not guaranteed a right to an

unobstructed view (or "appropriate" or "meaningful" access) of canvasing activities

under the U.S. Constitution. *See* Compl. ¶¶ 144, 178-79. The *Commonwealth's*

Election Code grants qualified representatives limited rights to be *present* during

canvassing activities. 25 P.S. §§ 2687, 3146.8. But the Election Code contains no

requirement that the county boards of elections ensure these individuals an

unobstructed view of those activities at all times, much less any right to "inspect" or

verify mail-in ballots. *See id*.; *cf*. Compl. ¶¶ 138-150. None of this plausibly

implicates equal protection, due process, or the Constitution's Electors and Elections Clauses.

The Trump Campaign, moreover, cannot tie their observation claims to any cognizable harm except for the unsupported "possibility" of fraud that their poll workers could have caught through "watching" the process. As explained in *Republican Party of Pennsylvania v. Cortes*, "[p]laintiffs [] cannot claim that [poll watcher restrictions] mathematically dilute[] their votes . . . based on speculation that fraudulent voters may be casting ballots elsewhere in the Commonwealth and the unproven assumption that these alleged instances of voter fraud would be prevented by the affected poll watchers were they not precluded from serving at those locations." 218 F. Supp. 3d 396, 407 (E.D. Pa. 2016). Without this speculative link to potential "fraud" any claim of vote dilution or equal protection violations disintegrate.

The Trump Campaign also does not plead plausible claims that its designated ballot observers were treated any differently than others. First, although the Trump Campaign generically asserts "poll watchers" and "canvass representatives" were "in some instances" denied access, it does not claim any were *qualified* observers who complied with the state-law credentialing regulations. There is no claim of differential treatment because of their political party. And it is of no constitutional significance that observers' proximity to the canvas varied by county: county boards

are delegated the authority to set rules for observation precisely because of *reasonable* considerations of differences in size, scale, facilities, staffing, security, health, and other variations bearing upon county ballot counting processes. The Counties established these rules to *promote* the security, efficiency, safety, and integrity of the ballot-counting process, as well as to protect the sacrosanct right to voter secrecy. That is no equal protection violation, it is the commonsensical adjustment to real-world and weighty concerns.

It is also worth considering that this is the *third* forum in which the Trump Campaign has advanced these failing claims. These same baseless observer arguments were raised and dismissed by the Honorable Paul S. Diamond, Jr. at the hearing on a motion for an emergency injunction filed by the Trump Campaign on Election Day. *Donald J. Trump for President, Inc. v. Phila. Cty. Bd. of Elections.*, No. 20-cv-5533 (E.D. Pa. Nov. 3, 2020), TRO Hr'g Tr. There, the Trump Campaign similarly asserted vague constitutional injuries claiming "a nonzero number of people" were not being given equal access to canvassing activities. *Id.* at 10:10-17. The Trump Campaign attempted to advance their contention that their poll watchers should be able to "observe the opening of individual ballots [] and checking of signatures," but Judge Diamond had to remind the Trump Campaign that "we have a virus out there" and to give the Trump Campaign the "meaningful access" sought would require the poll watchers "be allowed to stand over [the canvassers]

shoulders," which would not be "safe." *Id.* at 11:17-12:20; *see also id.* 30:16-17 ("[Observers] don't have the right to be within 100 feet."). The Trump Campaign agreed to limits on the number of observers and a minimum of 6 feet of distance from ballot-counting activities. *See id.*, Order, ECF No. 5. Having settled this claim, the Trump Campaign cannot now be heard to complain that greater access and proximity were constitutionally required.

The issue of observer access is also pending before the Pennsylvania Supreme Court, which may decide whether, as a matter of *state* law anything more than mere presence is required. But regardless of the resolution of that state-law question, the Trump Campaign raises no viable constitutional claim around observer access. *See, e.g.*, *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *46 ("To the contrary, it is well-established that even violations of state election laws by state officials, let alone violations by unidentified third parties, do not give rise to federal constitutional claims except in unusual circumstances.").

## B. Notice and Opportunity to Cure Procedure

This Court can readily reject the Trump Campaign's attempt to claim *it* was constitutionally injured because some county boards (or others not identified in the Complaint) gave voters notice that their mail-in ballot declarations were deficient and, in limited instances, gave voters an opportunity to fix the deficiency or permitted them to submit a provisional ballot. *See id.* ¶¶ 133-34. If any claim exists,

it is a fact-bound question of *state* law under the Election Code, not a federal constitutional issue. The Trump Campaign offers no explanation for how it was harmed because certain counties provided this notice, while allegedly "Republican" counties *exercised their discretion* not to provide such notice (as apparently was the case for Plaintiff Henry). *See id.* ¶¶ 19, 137, 211.

At the outset, even if allowing voters to "cure" the outer declaration of their ballot or to cast a provisional ballot were improper under state law, the vehicle for asserting such a challenge would be an *individual* challenge to the particular mail-in or provisional ballot, not a broadscale constitutional claim. It is up to the state courts to decide whether and in what circumstances such ballots count—a process which is presently underway and which requires no federal court intervention. *See, infra,* Section IV.

The Trump Campaign does not claim that this limited class of "cured" or "provisional" ballots would change the outcome of the election. Moreover, the Complaint identifies only a single voter, Mr. Henry, who sought to file a provisional ballot in a county that did not allow him to do so. The sheer absurdity of enjoining the certification of the state-wide count on this basis is apparent.

## C. General Dissatisfaction with Mail-In Ballots Does Not Make Out A Constitutional Claim

The Trump Campaign's generalized and unsubstantiated suspicion of mail-in voting does not state a legally cognizable injury. The Commonwealth offered all its

citizens three means of exercising their right to vote: in-person, absentee, and mail-in. That different rules apply to each method does not equate to a "two-track system of voting" that raises any constitutional concern. *See* Compl. ¶ 14. Rather, it is the exclusive purview of the Pennsylvania General Assembly to establish the methods of election, including by establishing the ways voters may cast their ballot. The Election Code set out the requirements for issuing and verifying absentee and mail-in ballots. *See* 25 P.S. §§ 3146.2b(c), 3150.12b (applications for absentee and mail-in ballots); *see also id.* §§ 3146.8(4), 3146.8(g)(3) (verification requirements for absentee and mail-in voters).

The Trump Campaign's citation to various "garden variety" election irregularities involving singular instances where mail-in ballots were not properly handled also raise no constitutional claim. *See Donald J. Trump for President, Inc.*, 2020 WL 5997680, *49 (quoting *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998) (collecting cases of various errors, technical deficiencies, and illegally cast votes that did not raise a Fourteenth Amendment violation); *Acosta*, 288 F. Supp. 3d at 643 (collecting cases). The Trump Campaign has not identified any facially discriminatory statute, regulation, or policy, or confirmed fraud or errors so systemic they caused mass disenfranchisement or the devaluation of votes. To the extent isolated errors occurred in the administration of the largest election in this

Commonwealth's history in the midst of the COVID-19 national disaster, the consequence of those errors were borne equally by all voters.[20]

The limited facts presented also document the Trump Campaign's inability to overcome the presumption of regularity, which requires "a meaningful evidentiary showing" before entertaining claims premised on doubts about the integrity of acts undertaken by public officials. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (2004); *see also Phila. Redevelopment Authority v. Atuahene*, 229 A.3d 1002, 1011 (Pa. Super. Ct. 2020) ("The presumption of regularity is *prima facie* evidence that public officials will properly carry out their official duties, unless and until contrary evidence is presented."). In the election context, absent such a showing, a court should "presume[] the returns of [an] election board were regular, and the election officers properly and in good faith performed the duties imposed on them." *In re Ellwood City Borough's Contested Election*, 286 Pa. 257, 259 (Pa. 1926).

---

[20] Of course, neither the statutory scheme nor the Secretary's guidance could possibly anticipate or account for every single possible iteration of how the millions of Pennsylvania absentee and mail-in voters might fill out the declarations accompanying their ballots

### D.    Plaintiffs' Electors and Elections Clauses Claims Fails as a Matter of Law

In a last-ditch effort to spoil thousands (if not millions) of votes, the Trump Campaign asserts meritless claims for violations of the Electors and Elections Clauses of the U.S. Constitution, which together vest State legislatures with the authority to set the "Time" and the "Manner" for "holding Elections" and "appoint[ing] . . . electors." U.S. Const. art. I, § 4, cl. 1; *id.* art. II, § 1, cl. 2.[21] *See* Compl. Counts III, V & VII.[22] The Trump Campaign lacks standing to assert claims based on purported Electors-and-Election Clause violations, which is limited to the General Assembly. Moreover, the rules and procedures Defendants implemented for curing ballots and observing the electoral process do not even implicate—much less violate—the Electors or Elections Clauses of the U.S. Constitution or present a

---

[21] Specifically, the Electors Clause states that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a number of Electors."  U.S. Const. art. II, § 1, cl. 2. The Elections Clause states that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof[.]" U.S. Const. art. I § 4, cl. 1. "The Supreme Court interprets the words 'the Legislature thereof,' as used in that clause, to mean the lawmaking processes of a state." *Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018) (quoting *Arizona State Legislature v. Arizona Indpt. Redistricting Com'n*, 576 U.S. 787, 816 (2015)).

[22] Count VII appears to be entirely duplicative of Count V. *See* Compl. ¶¶ 222, 242.

cognizable issue of federal law. the Trump Campaign's claims to the contrary should be dismissed with prejudice.

As a threshold matter, the Trump Campaign has no standing to raise Electors and Election Clauses challenges. Standing for such claims is limited to the General Assembly or "a group to which Pennsylvania has delegated the Commonwealth's lawmaking power." *Corman*, 287 F. Supp. 3d at 571. As a three-judge panel of this Court already ruled, Elections Clause claims "belong, if they belong to anyone, *only to the Pennsylvania General Assembly.*"[23] *Id.* (emphasis added). The Trump Campaign cannot seek relief based on an alleged violation of the *General Assembly's* right to regulate elections under the U.S. Constitution. *Id.* at 571-73; *see also Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019); *cf. Wise v. Circosta*, 978 F.3d 93, 2020 WL 6156302 (4th Cir. Oct. 20, 2020) (holding leaders of both chambers of the North Carolina General Assembly lacked standing to assert Elections Clause claim). Because the Trump Campaign lacks prudential standing to bring Counts III, V, and VII of their Complaint, those claims should be dismissed with prejudice.

The Trump Campaign's Electors claims also lacks any merit. No basis exists for its assertion that the Counties administered the election "in ways that conflict

---

[23] Because Elections Clause and the Electors Clause have "considerable similarity," this same logic applies to the Electors Clause. *Ariz. State Leg.*, 576 U.S. at 839 (Roberts, C.J., dissenting).

with existing legislation." Compl. ¶¶ 199, 201, 220-222. The General Assembly expressly delegated the authority to make instructions not inconsistent with the Election Code to the county boards of elections. 25 Pa. C.S. § 2642. The Counties' procedures concerning observation and notice-and-cure are entirely consistent with the Election Code and refute the notion that the Counties acted "unilaterally." *Cf.* Compl. ¶¶ 220, 232.

But even if the Counties misconstrued the Election Code that is far from a federal constitutional question under the Elections and Electors Clause, which requires "*significant* departure" from Pennsylvania's legislative scheme that would "*wholly change* the statutorily provided apportionment of responsibility among these various bodies." *Bush v. Gore*, 531 U.S. 98, 113-14 (2000) (Rehnquist, C.J., concurring). Certainly nothing of that sort has been alleged by the Trump Campaign. The claims alleged are based on minor questions of state law, not federal issues of constitutional import.

## IV. In the Alternative, this Court Should Abstain from Deciding the Trump Campaign's Claims and Allow the Pennsylvania Judiciary to Resolve Them

Pennsylvania law provides clear procedures for resolving election-related disputes and it gives ultimate responsibility in this regard to the Commonwealth's judiciary to hear election challenges. This Court should abstain and defer to the Pennsylvania judiciary which are poised to decide the Trump Campaign's claims.

### A. Principles of Federalism and Federal Law Require Deference to State Court Process

The Pennsylvania Election Code sets forth a detailed administrative process for challenging the validity of ballots during the vote canvassing and counting process with the governing county board of elections. *See* 25 P.S. §§ 3146.8, 3154. Further, the Election Code provides for the ultimate resolution of all disputes arising thereunder by the Pennsylvania judiciary. The County Courts of Common Pleas are empowered to hear all election law disputes initiated on Election Day. 25 P.S. § 3046; *Pa. Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644, at *37 n.2 (Pa. Sept. 17, 2020) (explaining that 25 P.S. § 3046 "provides courts of common pleas with authority, with some latitude, to make rulings on Election Day to secure compliance with the election laws"). The Pennsylvania General Assembly has also delegated to the Commonwealth's judiciary the sole power to adjudicate appeals of election board decisions and contests of all election results—whether alleging errors, fraud, or otherwise—according to an elaborate statutory scheme. 25 P.S. §§ 3261-3263, 3291, 3351, 3376, 3401, 3431, 3154, 3146.8; *see also* 25 P.S. § 3157(b) ("The court on an appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates, and to make such decree as right and justice may require[.]").

Pennsylvania's comprehensive administrative and judicial apparatus is well designed and more than adequate to dispose of election challenges arising under the Election Code, including through an election contest. As Judge Diamond observed, "Pennsylvania has developed its own statutory framework by which voters may challenge elections, a framework [Pennsylvania] courts have applied for decades" without any claim that these processes are unconstitutional. *Stein*, 223 F. Supp. 3d at 439. And federal law clearly and strongly endorses this broad delegation of authority, 3 U.S.C. § 5,[24] calling for deference to a state's own legal procedures for resolving disputes related to that state's appointment of presidential electors. *See, e.g.*, *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) (denying request to enjoin the certification of election results based on such recounts, in part because of the adequacy of "detailed [state-level] election dispute procedures"). Having failed to invoke these state law election-contest mechanisms, the Trump Campaign now urges this federal court to intervene in the election and disregard Pennsylvania's carefully crafted statutory regime. Principles of federalism require this Court to decline the invitation and defer to the

---

[24] Section 5 provides: "If any State shall have provided…for its final determination of any controversy or contest concerning the appointment of all or any of the electors of such State, by judicial or other methods or procedures, and such determination shall have been made at least six days before the time fixed for the meeting of the electors such determination . . . shall be conclusive, and shall govern in the counting of the electoral votes[.]" 3 U.S.C. § 5.

Commonwealth's "authority to regulate the right to vote." *See Trump for President, Inc. v. Boockvar*, No. 20-CV-966, 2020 WL 4920952, *16 (W.D. Pa. Aug. 23, 2020); *Republican Party*, 218 F. Supp. 3d at 404-05 ("Comity between the state and federal governments also counsels against last-minute meddling.").

## B. The Court Should Abstain Under *Younger*

Abstention is also appropriate under the *Younger* doctrine. "*Younger* abstention is proper where: (1) there are ongoing state judicial proceedings involving the federal plaintiff; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Stein*, 223 F. Supp. 3d at 435. "Abstention is particularly appropriate where the requested equitable relief would 'render the state court's orders or judgments nugatory.'" *Id.* (quoting *Schall v. Joyce*, 885 F.2d 101, 108 (3d Cir. 1989)).

In *Stein*, Judge Diamond held that the *Younger* doctrine counseled abstention from granting plaintiff Jill Stein's request for an injunction directing "recounts of votes counted by optical-scan machines and a forensic review of DRE machines" given that Stein was seeking the same relief before various boards of elections and courts of common pleas. *Id.* Judge Diamond explained that "[t]he Commonwealth has an obvious interest in regulating the conduct of its elections." *Id.* And the federal-court relief sought would effectively "nullify the Election Code provisions applied by the State Courts and Boards," and "annul the unfavorable judgments issued by

these bodies." *Id.* Finally, Stein could "raise in the Pennsylvania Courts the same constitutional claims" she raised in federal court. *Id.* Accordingly, the *Stein* court abstained under *Younger*.

Judge Diamond's rationale in *Stein* applies with equal force here. Parallel state court proceedings addressing the same claims raised here are currently underway. Those proceedings implicate the Commonwealth's "obvious interest in regulating the conduct of its elections." *Stein*, 223 F. Supp. 3d at 436. And the Trump Campaign could raise the same federal constitutional claims that they have asserted here in the state court proceedings. This Court should abstain under *Younger*.

## C.    The Court Should Abstain Under *Pullman*

Abstention is appropriate under the *Pullman* doctrine. *See R.R. Comm. of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), which applies because "the federal constitutional question might be eliminated by securing a Pennsylvania court's determination of an unresolved question of its local law." *Id.*; *see Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 631 (3d Cir. 1991); *see also Trump for President, Inc.*, 2020 WL 4929852, at *15 (finding abstention warranted where "analysis of Plaintiffs' claim would begin with an interpretation of the election-code provisions that Plaintiffs allege Defendants have violated. But it could also end there").

The Trump Campaign tries to transform discrete Election Code issues into federal equal protection claims. State court—not this federal court—should resolve how the Election Code applies to resolve how the Election Code applies to the issues presented including the rights of observers, the ability of County boards to provide notice-and-cure of defective mail-in ballot declarations, and the standards for valid mail-in ballots. All of this has been or should be resolved by state courts. *See Trump for President, Inc.*, 2020 WL 4920952 at *16; *see also Pierce v. Allegheny Cnty. Bd. of Elections*, 324 F. Supp. 2d 684, 704 (W.D. Pa. 2003) (abstaining where state-court construction of absentee-ballot provision at issue could obviate need to decide equal protection claim). Finally, abstention is proper because "an erroneous interpretation" of the Election Code, in the midst of ongoing challenges to ballots and the urgent need to certify the election "would be gravely detrimental to important Pennsylvania interests concerning state election procedures." *Fuentes*, 207 F. Supp. 3d at 450 (collecting cases); *accord, e.g.*, *Pierce*, 324 F. Supp. 2d at 703-04 (noting that "an erroneous construction of the absentee ballot provision of the election code could disrupt extremely important state policies concerning voting rights"). It is not the role of federal courts to decide novel and important issues of state law.

## V. The Trump Campaign's "Remedies" Are an Unconstitutional Attempt to Disenfranchise Millions of Pennsylvania Voters

Over 2.6 million Pennsylvania voters cast their mail-in or absentee ballots in this year's general election as authorized by Pennsylvania's General Assembly.

They followed the process established by state law and regulation: they timely requested their mail-in and absentee ballots; filled out their ballots and placed them within secrecy envelopes; completed their voter declarations; and returned their ballots to their respective Board of Elections *via* U.S. mail or an approved ballot drop box before Election Day. They did all of this with the expectation that, if they followed these rules, established by the General Assembly and County Board of Elections, their voices would be heard and their votes would be counted. The Court should decline the Trump Campaign's late invitation under the *Purcell* doctrine and refuse to fundamentally reinterpret the Election Code *after* the election, which would disenfranchise 2.6 million Pennsylvania voters in the process. *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

*Purcell* counsels for judicial non-interference in elections when it may have the result of disenfranchising or confusing voters. *Id.* The doctrine typically manifests when courts are called on to interpret election rules at the 11th hour, which could result in "voter confusion" and create an "incentive to remain away from the polls." *Id.*; *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). The Trump Campaign asks this Court to go even further than the classic *Purcell* case. Rather than interfere with election rules shortly before it begins—which may hinder the public's ability to vote—they seek to retroactively

invalidate millions of ballots by voters who voted as the General Assembly and County Boards of Election prescribed. *Purcell* plainly forbids this result.

The Trump Campaign's plan to *throw away* legally cast ballots is also an anathema to the U.S. Constitution. All qualified voters have a "constitutionally protected right to vote and to have their votes counted." *Reynolds*, 377 U.S. at 554 (citation omitted). While the Trump Campaign has failed to show their own constitutional rights were infringed, the draconian remedy proposed by it would strike at the heart of the rights to suffrage and equal protection held by Pennsylvania's voters. *See Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 97 (2d Cir. 2005) (holding that plaintiffs would suffer irreparable harm "if the election results are certified without counting the plaintiff voters' ballots"). Such a remedy is impermissible; a remedy established by a federal court cannot itself infringe on the right to choose an elector or the right of equal protection. *See Bonas v. Town of N. Smithfield*, 265 F.3d 69, 75 (1st Cir. 2001) ("[A]cross-the-board disenfranchisement betokens an utter breakdown of the electoral process.").

Further, without evidence of any form of systemic, state-sponsored fraud, the Trump Campaign claims they are entitled to an injunction barring Pennsylvania from certifying the results of the election. They are wrong. Such remedies are completely untethered from law and fact. Courts rarely even consider widescale disenfranchisement absent the plaintiff proving a systemic fraud that was the but-for

cause of the plaintiff's electoral loss. *See, e.g.*, *Griffin*, 570 F.2d at 1076 ("Federal court intervention into the state's conduct of elections for reasons other than racial discrimination has tended, for the most part, to be limited to striking down state laws or rules of general application which improperly restrict or constrict the franchise."). Indeed, the Third Circuit has explained that a district court may not order a remedy that "disenfranchises the voters who cast legal absentee ballots." *Marks*, 19 F.3d at 887. Doing so would "work significant hardship . . . effectively depriving the city's voters of their elections." *Lopez v. Merced Cnty., Cal.*, 473 F. Supp. 2d 1072, 1082 (E.D. Cal. 2007).

*Marks* is instructive. There, the district court tentatively found (at the injunction stage) that certain government officials in Philadelphia colluded with a campaign for a statewide race by knowingly accepting illegally harvested ballots. *Marks*, 19 F.3d at 877. That case was *sui generis*. Even in the face of actual and widespread fraud (not present here), the Third Circuit explained that disenfranchisement is not the proper remedy and that the plaintiff has the burden of demonstrating that the fraud was the but-for cause of the election loss. *Id.* at 887. Only after "ample record support" demonstrated "substantial wrongdoing . . . the effects of which [were] not capable of quantification but which render[ed] the apparent result an unreliable indicium of the will of the electorate" did the Third Circuit permit such an extreme remedy. *Id.* at 886-87.

The rights and votes of Pennsylvania's citizens cannot and should not be disregarded as easily as the Trump Campaign contends. To do so would undermine the General Assembly's legislative intent by "arbitrarily ignoring the [mail-in and] absentee vote[s]" that citizens submitted in good faith reliance upon Pennsylvania laws that permitted mail-in and absentee voting. *Marks*, 19 F.3d at 888. The proper focus when crafting a remedy is not on the candidates, but on "the right of the electors to vote and to have their votes counted." *Id.* at 889. One three-judge panel has explained that it, "like other courts faced with similar situations, [was] reluctant to set aside the results or prevent certification of an election." *Lopez*, 473 F. Supp. 2d at 1081 (collecting cases); *see also Ron Barber for Cong. v. Bennett*, No. 14-CV-02489, 2014 WL 6694451, at *7 (D. Ariz. Nov. 27, 2014) (explaining that the plaintiffs had "point[ed] to no cases where a court enjoined further action by state electoral officials after the election.").[25]

---

[25] In the prayer for relief, the Trump Campaign requests that this Court issue an order, declaration and/or injunction prohibiting the Defendant County Board of Elections for taking certain actions including certifying election results and tabulating certain ballots. Compl. at 84. Importantly, this Court does not have jurisdiction to enjoin the Defendant County Board of Elections as they are arms of the state entitled to immunity under the Eleventh Amendment of the U.S. Constitution. *Trinsey v. Montgomery Cnty. Bd. of Elections*, No. 87-6975, 1988 WL 82877, at *1 (E.D. Pa. Aug. 4, 1988) (claims against Pennsylvania county boards of election are "barred by the Eleventh Amendment"). Courts in Pennsylvania and elsewhere have repeatedly held that so long as the claims asserted against county boards of elections challenge their administration of federal and state-wide elections, those claims are barred under the sovereign immunity doctrine. *Id.*; *Hunter v.*

Finally, the Trump Campaign's alternate remedy of casting aside mail-in and absentee votes from specific counties would itself violate equal protection. This Court should resoundingly reject the Trump Campaign's cynical effort to eliminate votes in wholesale fashion from the most populous, most racially diverse, and among the most Democratic areas in the Commonwealth.

## CONCLUSION

Accordingly, this action seeking to disregard the lawful votes cast by over 2.6 million Pennsylvania voters should be dismissed with prejudice.

---

*Hamilton Cnty. Bd. of Elections*, 850 F. Supp. 2d 795, 801 (S.D. Ohio 2012); *see also Citizens for John W. Moore Party v. Bd. of Election Comm'rs of City of Chi.*, 781 F.2d 581, 584 (7th Cir. 1986) (Easterbrook, J., dissenting from decision to certify state-law question to Illinois Supreme Court).

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: November 12, 2020

By: */s/ Mark A. Aronchick*
Mark A. Aronchick (I.D. No. 20261)
Michele D. Hangley (I.D. No. 82779)
Robert A. Wiygul (I.D. No. 310760)
John G. Coit (I.D. No. 324409)
Christina C. Matthias (I.D. No. 326864)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 496-7050
Email: maronchick@hangley.com

Virginia Scott (I.D. No. 61647)
Scott Law Office
Allegheny County Law Department
445 Fort Pitt Commons, Suite 300
Pittsburgh, PA 15219
412-350-1120

*Counsel for Allegheny County Board of Elections, Chester County Board of Elections, Montgomery County Board of Elections, and Philadelphia County Board of Elections*

*Counsel for Allegheny County Board of Elections*

CITY OF PHILADELPHIA LAW DEPT.
Marcel S. Pratt, City Solicitor
(I.D. No. 307483)*
Benjamin H. Field, Divisional Deputy
City Solicitor* (I.D. No. 204569)
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595
(215) 683-5444

Joshua M. Stein (I.D. No. 90473)*
Montgomery County Solicitor
Montgomery County Solicitor's Office
One Montgomery Plaza, Suite 800
P.O. Box 311
Norristown, PA 19404-0311
(610) 278-3033

*Counsel for Philadelphia County Board of Elections*

*Counsel for Montgomery County Board of Elections*

*Motions for Special Admission Forthcoming