# EXHIBIT 6

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT
TRIAL DIVISION – CIVIL SECTION

| | | |
|---|---|---|
| IN RE: | : | Election Matter |
| | : | |
| CANVASSING OBSERVATION | : | |
| | : | NOVEMBER TERM 2020 |
| | : | No. 07003 |
| | : | (201107003) |
| | : | |
| APPEAL OF DONALD J. TRUMP for PRESIDENT, INC. | : | 1094 CD 2020 |

## OPINION

Tsai, J.

### I.   Introduction

Donald J. Trump for President, Inc. ("Appellant") has taken an appeal from our November 3, 2020 Order denying his oral petition to conduct closer inspection of the ballot canvassing process at the Philadelphia Convention Center. In his oral petition, Appellant argued that the Commissioners did not provide his designated observers meaningful access to observe the Election Board employees who are canvassing the absentee and mail-in ballots under 25 P.S. § 3146.8(b) so they could report back to the Candidate as to the integrity of the canvassing process. Appellant had filed two similar motions earlier in the day, but withdrew them both without prejudice and presented the instant petition to the Election Court about 15 minutes before Election Court was scheduled to close at 10 p.m. EST. Based on the testimony of the witness presented by Appellant in support of the Petition, we found that the accommodations afforded to campaign representatives to observe the Election Board employees complied with the relevant provisions of the Election Code and denied the Petition.

For the reasons that follow, we respectfully ask this Court to affirm our decision.

1

Case ID: 201107003

## II.     Factual Findings

Appellant's representative, Jeremy Mercer, is a volunteer for Appellant's campaign. He served as an observer of the canvassing process on November 3, 2020 starting at 7 a.m. throughout the entire day.  Mr. Mercer testified via Zoom technology.

The observer described how the canvassing room is set up. There are 3 rows of 15 tables spaced apart and observers are asked to stand behind a metal barrier facing the first table, which is about 15-18 feet away. Nov. 3, 2020 Tr. at 21:20-24:23. From that vantage point, Mr. Mercer can see the workers prepare the forms for evaluation, examine them, and sort the ballot into separate bins. He also described in detail the various stages of the process that he could observe, including "extraction" from about 20 feet away, "where the ballot envelopes are being fed through machines to slice them open so that what's inside the outer envelope can be removed, and then another set of what appear to be the same or very similar machines so that the inner secrecy envelopes then can be sliced open so that what's inside those can be removed." Nov. 3, 2020 Tr. At 28:14-30.

When asked about impediments to his line of sight, he identified the easels that identify each section of the canvassing process around which he can move. Nov. 3, 2020 Tr. 23:2-11. The observer was free to walk around the premises as he wished except beyond the metal safety or "crowd control" barrier. He recounted the specific steps followed by the staff to canvass a ballot. He cited concerns about the long distance between him and the employees, not because he could not see what they were doing, but because he could not see individual markings on the ballot or whether the signature page was completed properly and assess whether the Election Board employee was

2

handling the ballot properly under the Election Code. He was able to use binoculars, but he did not find them to be useful because the process is fast. Nov. 3, 2020 Tr. 36:2-14.

The Board designed the layout of the Philadelphia Convention Center for the canvassing process in keeping with CDC guidelines on social distancing between individuals and safety protocols.[1] In creating this physical layout, the Board struck the proper balance between the observer's ability to observe the canvassing process and the paramount interest of voter privacy, as there are declaration envelopes that are being opened, secrecy envelopes that are being opened, and ballots that are being extracted.[2]

### III.     Discussion

This Court ordered as it did based on our analysis of the statutory provision invoked by the Appellant, 25 P.S. § 3146.8(b), which states: "Watchers [also referred to herein as "observers"] shall be permitted to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded." Despite Appellant's argument that the Board of Elections was not providing observers the opportunity to "meaningfully observe" the canvassing of ballots, Appellant was unable to point to any statutory language or case law using the word "meaningful" or elaborating on what constitutes "meaningful observation."

---

[1] The Election Board allows the public to observe the canvassing process on You Tube on their website at ***https://youtu.be/-Zzb-7EH-MQ***

[2] The observer, who has worn a mask while observing the canvassing, testified that he saw Election Board workers who occasionally stood shoulder to shoulder, contrary to the CDC social distancing guidelines. The Appellant appears to contend that these incidents undercut the legitimacy of the social distancing guidelines which have influenced the design of the layout for observers. We do not believe these occasional, likely necessary, instances of shoulder-to-shoulder interactions between fellow workers to carry out their canvassing duties, is a legitimate reason to direct the Board to relax its current distancing requirements on observers.

Case ID: 201107003

Furthermore, § 3146.8(b), explicitly allows only for the watchers to "be present" for three activities: (1) the opening of the envelopes containing the ballots, (2) the counting of the ballots, and (3) the recording of the ballots.

The Appellant presented a witness, Jeremy Mercer, who provided copious testimony as to his ability to observe the opening and sorting of ballots. He testified as to his ability to observe the ballots being opened, placed in trays, and sorted – including the separation of so-called "naked ballots," which do not have inner secrecy envelopes. This satisfies the three explicit objects of the statute. The witness's concerns, however, pertained to his inability to observe the writing on the outside of the ballots. But observing the writing on the outside of the ballots is not necessary in order to simply be able to "be present" to watch the **opening** of the ballots or to watch the **counting and recording** of the ballots. The statute provides no further specific activities for the watchers to observe, and no activities for the watchers to do other than simply "be present." Watchers are not directed to audit ballots or to verify signatures, to verify voter address, or to do anything else that would require a watcher to see the writing or markings on the outside of either envelope, including challenging the ballots or ballot signatures.³

---

³ "[I]n 2020, the legislature eliminated time-of-canvassing challenges *entirely* from Section 3146.8(g)(3). ... Accordingly, the Election Code presently provides no mechanism for time-of-canvassing challenges by candidate or party representatives. ... Moreover, as is plain from the above account, at no time did the Code provide for challenges to ballot *signatures*.

Presumably, in expanding voting by mail, the legislature sought to streamline the process for canvassing such ballots, perhaps to avoid undermining the expansion effort by eliminating the prospect that voters – including a potentially large number of new mail-in voters – would be brought before the board or the courts to answer third-party challenges. Regardless, Intervenors would have us interpret the Election Code, which

4

Moreover, the Pennsylvania courts have clearly delineated the purpose of having watchers observe canvassing by making "a distinction between votes which are improperly cast and the subsequent mismanagement of votes by the election board, when those votes were completed correctly by the absentee voter." ***In re Canvass of Absentee Ballots of Gen. Election***, 39 Pa. D. & C.2d 429, 433 (Pa. Com. Pl. 1965). The court further elaborated that:

> In the first situation, the strict requirements must be followed to protect the individual's vote; in the latter case, although strict compliance is desired, it is not mandatory, because slight irregularities can be anticipated in the overall handling of absentee ballots. In the latter case, the principles of liberal interpretation should apply, consistent with the above-quoted approach of the Perles case, supra, viz.: "'Every rationalization within the realm of common sense should aim at saving the ballot rather than voiding it ..."D'

***Id.*** at 433-34.

That line of reasoning ultimately led the court to hold that even when it does not condone a short-cutting of canvassing procedures under the act, such short-cutting does not by itself seriously breach the legislative intent. ***See id.*** at 434.[4] The court thus

---

now does not provide for time-of-canvassing ballot challenges, and which never allowed for signature challenges, as both requiring signature comparisons at canvassing, and allowing for challenges on that basis. We reject this invitation." ***In re November 3, 2020 Gen. Election***, 149 MM 2020, 2020 WL 6252803, at *14 (Pa. Oct. 23, 2020) (footnotes, citations and quotations omitted).

[4] "The Montgomery County Board of Elections, prior to the general election of November 2, 1965, met with representatives of both the Democratic and Republican Committees of this county for the purposes of setting up a facile procedure to expedite the handling of absentee ballots within the county. At that meeting, on September 7, 1965, it was agreed that certain procedures required for technical compliance with the dictates of the Absentee Voting Act would be eliminated or modified, so that, at time of canvass, there would be less confusion and involvement. This proposal was approved by Horace A. Davenport, Esq., the solicitor for the county board of elections, Peter P. Stevens, chief clerk for the election board, Sheldon W. Farber, Esq., attorney for the County Democratic Committee, and John G. Kauffman, Esq., attorney for the

5

denied a "general 'blanket' challenge presented by petitioner to all the absentee ballots on the basis of the election board's departure from the statutory directions." *Id.* Likewise, we also recognized that canvassing arrangements may arguably be less than what the observer may deem as optimal without rising to the level of violating the statute, especially when the procedures need to be modified to promote safety during the COVID-19 pandemic. We therefore noted in our order that we "would not discourage the Board from considering the implementation of arrangements to allow for an additional corridor for observation along the side of the canvassing tables if feasible – subject to spatial distancing under COVID-19 and voting privacy requirements." ***In re: Canvassing Observation***, Order of November 3, 2020.

Additionally, in ***In re Recanvassing of the First Election Dist. of Jefferson Twp.***, 12 Pa. D. & C.4th 536 (Pa. Com. Pl. 1991), the court reasoned that "the Election Code speaks only of canvassing absentee ballots, not single ones," and that the "intent of the statute [is] to preserve and insure the secrecy and anonymity of the voter." *Id.* at 538. Indeed, if watchers like the witness were permitted to observe the canvassing of ballots closely enough to view the names and addresses on single ballots, they would be going beyond the purpose of the statute, which is only to provide for the canvassing of the ballots **writ large**. The watchers would also threaten the secrecy and anonymity of the voter in direct frustration of the statute's purpose. If the watcher intends to observe the canvassing with the intent of voiding ballots, we must emphasize that we "will not disenfranchise a voter for an act that may be contrary to procedure for

---

Republican Committee of the county." ***In re Canvass of Absentee Ballots of Gen. Election***, 39 Pa. D. & C.2d 429, 433 (Pa. Com. Pl. 1965)

Case ID: 201107003

canvassing the vote," as ballots are not to be voided "because of some minor irregularities or inconsistencies in the canvassing of the ballots." ***Id.*** at 538, 539.

Overall, the watchers' purpose is not to audit the individual ballots, and "meaningful observation" or "meaningful access" is not a legally recognized reason for a watcher getting close enough do so. Indeed, the term "meaningful" is not even used in the statute. We note that a similar conclusion has been reached in a similar case in Nevada. In that case, the court explained that the statue provides that "[t]he county...shall allow members of the general public to observe the counting of the ballots...," but does not "use the modifier 'meaningful.'" ***Kraus v. Cegavske***, First Judicial Dist. Of Nevada, Case No. 20 OC 00142 1B, Dept. 2, October 29, 2020, at p. 10. That court also specifically noted that "Petitioners seem to request ... observation of all information involved in the ballot counting process so they can verify the validity of the ballot, creating in effect a second tier of ballot counters and/or concurrent auditors of the ballot counting election workers," adding that the "statutes created observers not counters, validators, or auditors." ***Id.*** at 10-11.

Case ID: 201107003

## IV. Conclusion

Appellant's witness, Jerry Mercer, provided exacting and copious testimony as to his ability to observe the opening and sorting of ballots. Given that observers are directed only to observe and not to audit ballots, we conclude, based on the witness's testimony, that the Board of Elections has complied with the observation requirements under 25 P.S. § 3146.8 and that Appellant is not entitled to the relief that he seeks.

BY THE COURT:

_____ J.
**Presiding Election Day Judge**