## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Donald J. Trump for President, Inc., Lawrence Roberts, and David John Henry, <br><br>        Plaintiffs, <br><br>    v. <br><br> Kathy Boockvar, in her capacity as Secretary of the Commonwealth of Pennsylvania, Allegheny County Board of Elections, Centre County Board of Elections, Chester County Board of Elections, Delaware County Board of Elections, Montgomery County Board of Elections, Northampton County Board of Elections, and Philadelphia County Board of Elections, <br><br>        Defendants, <br><br>    v. <br><br> DNC Services Corporation/Democratic National Committee, <br><br>        Intervenor-Defendant. | No. 4:20-cv-02078-MWB <br> (Judge Matthew W. Brann) |

## INTERVENOR DNC'S CORRECTED MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION ....................................................................... 1

BACKGROUND ......................................................................... 2

ARGUMENT ............................................................................. 6

I.  Plaintiffs Lack Standing. ........................................................ 7

    A.  Plaintiffs Lack Standing On Their Equal
        Protection And Due Process Clause Claims. ............................. 7

    B.  Plaintiffs Lack Standing On Their Elections
        And Electors Clause Claims............................................. 7

        1.  Plaintiffs are not injured by Elections
            or Electors Clause violations. ........................... 10

        2.  Plaintiffs cannot advance the General
            Assembly's interests under the Elections
            and Electors Clauses. ...................................... 11

II.  Plaintiffs' Requests For Injunctive Relief Are Barred By
    The Eleventh Amendment. .................................................. 12

III.  Principles Of Federalism And Comity Counsel Strongly
    In Favor Of *Pullman* Abstention. ......................................... 14

IV.  Plaintiffs' Failure To Seek Pre-Election Relief Bars
    Their Claims Regarding Disparate Notification Procedures................. 18

V.  Plaintiffs' Causes Of Action Fail To State A Claim For Relief............ 20

    A.  Plaintiffs Fail To Plead A Due Process Violation....................... 20

    B.  Plaintiffs Fail To Plead An Equal Protection Violation............... 25

        1.  *Defendant Counties' decision to notify*
            *voters of ballot defects and offer them an*
            *opportunity to cast a valid ballot does not*
            *burden anyone's right to vote.* ........................... 27

        2.  *Defendants' alleged restrictions on observers*

*do not state an equal protection claim*................................ 30

      3.   *The inconsistencies alleged by Plaintiffs do not violate equal protection.* ............................... 35

   C.   Because Plaintiffs Have Not Identified Any Conduct That Violates The Election Code, Their Electors And Elections Clause Claims Fail As A Matter Of Law. ................... 38

VI.   Plaintiffs' Remedy Is Disproportionate To Their Purported Injury And Would Violate The U.S. Constitution. ........................................... 41

CONCLUSION ............................................................................. 44

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Acosta v. Democratic City Committee*, 288 F. Supp. 3d 597 (E.D. Pa. 2018) ...............................................................................................14

*Amato v. Wilentz*, 952 F.2d 742 (3d Cir. 1991) .....................................11

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ......................................30

*Artway v. Attorney General of New Jersey*, 81 F.3d 1235 (3d Cir. 1996) ...............................................................................................15

*Bennett v. Yoshina*, 140 F.3d 1218 (9th Cir. 1998) ..........................21, 24

*Biener v. Calio*, 361 F.3d 206 (3d Cir. 2004) .......................................28

*Bodine v. Elkhart County Election Board*, 788 F.2d 1270 (7th Cir. 1986....................................................................................................22

*Burdick v. Takushi*, 504 U.S. 428 (1992)...........................................27, 30

*Bush v. Gore*, 531 U.S. 98 (2000)............................................7, 35, 40, 43

*Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018) ...................10, 12

*Curry v. Baker*, 802 F.2d 1302 (11th Cir. 1986) ...................................22

*Dailey v. Hands*, 2015 WL 1293188 (S.D. Ala. Mar. 23, 2015) ............23

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)..............................9

*de la Fuente v. Cortes*, 207 F. Supp. 3d 441 (M.D. Pa. 2016) ...............17

*Democratic Party of Virginia v. Virginia State Board of Elections*, 2013 WL 5741486 (E.D. Va. Oct. 21, 2013)......................................28

*Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ...............................................................*passim*

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993)........................41

*Fusaro v. Howard*, 2020 WL 3971767 (D. Md. July 14, 2020)..............34

*Gallagher v. New York State Board of Elections*, 2020 WL 4496849
(S.D.N.Y. Aug. 3, 2020) ..........................................................................42

*Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980)..............................21, 22

*Genter v. Allstate Property & Casualty Insurance Co.*, 2020 WL
2533075 (W.D. Pa. June 24, 2011).........................................................42

*Georgevich v. Strauss*, 772 F.2d 1078 (3d Cir. 1985) ............................17

*Gill v. Whitford*, 138 S. Ct. 1916 (2018)....................................................8

*Gold v. Feinberg*, 101 F.3d 796 (2d Cir. 1996) ......................................21

*Green Party of Pennsylvania v. Aichele*, 89 F. Supp. 3d 723 (E.D. Pa.
2015) ......................................................................................................14

*Guerrero v. Halliburton Energy Services, Inc.*, 231 F. Supp. 3d 797
(E.D. Cal. 2017)......................................................................................42

*Gustafson v. Illinois State Board of Elections*, 2007 WL 2892667
(N.D. Ill. Sept. 20, 2007) .......................................................................37

*Harlan v. Scholz*, 866 F.3d 754 (7th Cir. 2017)......................................34

*Hart v. King*, 470 F. Supp. 1195 (D. Haw. 1979)...................................19

*Hendon v. North Carolina State Board of Elections*, 710 F.2d 177 (4th
Cir. 1983) ...............................................................................................22

*Hennings v. Grafton*, 523 F.2d 861 (7th Cir. 1975) ...............................21

*Illinois Board of Elections v. Socialist Workers Party*, 440 U.S. 173
(1979) .....................................................................................................30

*In re Contest of Election for Office of City Treasurer from Seventh
Legislative District (Wilkes-Barre City) of Luzerne County*, 162
A.2d 363 (Pa. 1960) ................................................................................5

*In re Contest of Election of Gollomar*, 175 A. 510 (Pa. 1934)............4, 5

*In re Petition to Set Aside Special Election in Thirty-Second
Senatorial District*, 15 Pa. D. & C.2d 271 (Pa. Com. Pl. 1959).........4

*Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020) ...........................................................................................8

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ......................................11, 12

*Lance v. Coffman*, 549 U.S. 437 (2007) .................................................10

*Libertarian Party of Pennsylvania v. Governor of Pennsylvania*, 813 F. App'x 834 (3d Cir. 2020) ...............................................................33

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..............................5

*Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994)...........................22, 24, 42

*Martinez v. Colon*, 54 F.3d 980 (1st Cir. 1995)....................................13

*Mays v. LaRose*, 951 F.3d 775 (6th Cir. 2020).....................................34

*Minnesota Voters Alliance v. Ritchie*, 720 F.3d 1029 (8th Cir. 2013) ..................20

*Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012) ..........................................................................................44

*Northeast Ohio Coalition for Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) ..........................................................................................36

*Nemes v. Bensinger*, 2020 WL 3402345 (W.D. Ky. June 18, 2020)......................33

*Paher v. Cegavske*, 457 F. Supp. 3d 919 (D. Nev. 2020)..................9, 33

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) ................13

*Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 2020 WL 5554644 (Pa. Sept. 17, 2020)...............................................17, 23, 40

*Perano v. Township of Tilden*, 2010 WL 1462367 (E.D. Pa. Apr. 12, 2010..........................................................................................31

*Philadelphia Marine Trade Ass'n-International Longshoremen's Ass'n Pension Fund v. C.I.R.*, 523 F.3d 140 (3d Cir. 2008)............................12

*Powell v. Power*, 436 F.2d 84 (2d Cir. 1970) ...................................21, 24

*Powers v. Ohio*, 499 U.S. 400 (1991)....................................................12

*Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ...................15

*Rees v. PNC Bank, N.A.*, 308 F.R.D. 266 (N.D. Cal. 2015) ....................................41

*Republican Party of Pennsylvania v. Cortés*, 218 F. Supp. 3d 396
   (E.D. Pa. 2016)................................................................................................7, 23

*Reynolds v. Sims*, 377 U.S. 533 (1964).................................................................30

*Rinaldi v. Ferret*, 941 A.2d 73 (Pa. Commw. Ct. 2007) .......................................17

*Rogers v. Corbett*, 468 F.3d 188 (3d Cir. 2006) ...................................................27

*Ron Barber for Congress v. Bennett*, 2014 WL 6694451 (D. Ariz.
   Nov. 27, 2014) .................................................................................................20

*Shipley v. Chicago Board of Election Commissioners*, 947 F.3d 1056
   (7th Cir. 2020)..............................................................................................13, 21

*Short v. Brown*, 893 F.3d 671 (9th Cir. 2018) ..................................................28, 37

*Sprague v. Cortes*, 223 F. Supp. 3d 248 (M.D. Pa. 2016).....................................14

*Stein v. Cortés*, 223 F. Supp. 3d 423 (E.D. Pa. 2016) ..................................9, 18, 41

*Toney v. White*, 488 F.2d 310 (5th Cir. 1973) ....................................................2, 19

*Tucker v. Burford*, 603 F. Supp. 276 (N.D. Miss. 1985) .......................................20

*Turner v. Cooper*, 583 F. Supp. 1160 (N.D. Ill. 1983)...........................................23

*United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162 (3d Cir.
   2019) ..................................................................................................................8

*Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773 (5th Cir. 2000) ..................26

*Welch v. McKenzie*, 765 F. 2d 1311 (5th Cir. 1985) ..............................................22

*Williamsburg Commons Condominium Ass'n v. State Farm Fire &
   Casualty Co.*, 907 F. Supp. 2d 673 (E.D. Pa. 2012)...........................................42

*Wise v. Circosta*, 2020 WL 6156302 (4th Cir. 2020)............................................10

## DOCKETED CASES

*Donald J. Trump for President, Inc. v. Philadelphia County Board of Elections*, No. 2:20-CV-5533 (E.D. Pa.) ................................................. 3

*Hamm v. Boockvar*, 600-MD-2020 (Pa. Commw. Ct.) ............................ 2

*In re: Canvassing Observation,* No. 30-EAP-2020 (Pa.) ........................ 2

*Kraus v. Cegavske*, No. 20 OC 00142 (Nev. Dist. Ct.) ........................... 23

*Parnell v. Allegheny County Board of Elections*, No. 20-cv-1570 (W.D. Pa.) ........................................................................................... 23

*Polasek-Savage v Benson*, No. 20-000217-MM (Mich. Ct. Cl.) ........... 23

*Stein v. Cortes*, No. 16-CV-06287 (E.D. Pa.) ........................................ 6

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const.
    art. I, § 4, cl.1 .................................................................................. 10
    art. II, § 1, cl. 2 ............................................................................... 10

New York Election Law
    § 145 ................................................................................................ 24
    § 330 ................................................................................................ 24

25 P.S.
    § 2602 .............................................................................................. 40
    § 2642 .............................................................................................. 43
    § 2650 .............................................................................................. 38
    § 3146.8 ........................................................................................... 38
    § 3150.16 ......................................................................................... 39
    § 3154 ................................................................................................ 4
    § 3157 ................................................................................................ 3
    § 3166 ......................................................................................... 12, 43
    § 3192 .............................................................................................. 43
    § 3261 ................................................................................................ 4
    § 3262 ................................................................................................ 4
    § 3291 ................................................................................................ 4
    § 3456 ................................................................................................ 4

42 Pa. C.S.A. § 764 ................................................................................... 4

3 U.S.C.
   § 5 ......................................................................................................... 43
   § 6 ......................................................................................................... 43
   § 7 ......................................................................................................... 43

## OTHER AUTHORITIES

CDC, *Polling Locations and Voters* (Oct. 29, 2020), https://
   www.cdc.gov/coronavirus/2019-ncov/community/election-polling-
   locations.html ...................................................................................... 33

Fed. R. Civ. P.
   Rule 9 ..................................................................................................... 8
   Rule 12 ................................................................................................... 6

*Local Officials Say Nine Pennsylvania Ballots Were Discarded Due to
   an Error, Undercutting Trump Claims of Intentional Fraud*, CNN
   (Sept. 25, 2020), https://www.cnn.com/2020/09/25/politics/
   pennsylvania-discarded-ballots-incorrectly-threw-out/index.html ...................... 3

*Postal Worker Recanted Allegations of Ballot Tampering, Officials
   Say*, Wash. Post (Nov. 10, 2020), https://www.washingtonpost
   .com/investigations/postal-worker-fabricated-ballot-
   pennsylvania/2020/11/10/99269a7c-2364-11eb-8599-
   406466ad1b8e_story.html ....................................................................... 3

## INTRODUCTION

Plaintiffs' Complaint asks this Court to nullify the November General Election in Pennsylvania and ignore the over 6.75 million ballots cast in the Commonwealth.  In the alternative, Plaintiffs ask the Court to selectively throw out hundreds of thousands of ballots cast by voters they suspect did not vote for Donald J. Trump.  That is not how democracy works.  Instead, voters cast *secret* ballots; those ballots are counted; and if there are genuine reasons to doubt the outcome of the election, losing candidates may file an election contest in state court.

Plaintiffs have instead enlisted the federal judiciary to air a laundry list of purported election administration grievances—from the notification provided to voters whose absentee and mail-in ballots were deficient (collectively, "mail ballots"), to the distance between a poll watcher and the canvassing proceedings— and attempt to evade the Commonwealth's election contest procedures, but effectively seek the same remedy:  to overturn the election.  The complaint, however, provides no basis for such extraordinary relief, nor does it justify the consequent intrusion on state sovereignty, as Plaintiffs' allegations are devoid of facts and they fail to identify a single injured party or support any federal cause of action.  This is especially true where, as is the case here, adequate state law

procedures provide a vehicle for the Trump Campaign to vindicate its claims of election irregularities if it can marshal the evidence to substantiate them.

To make matters worse, Plaintiffs brought this lawsuit too late. Rather than sue *before* the election to challenge county boards that were notifying voters of defects in mail ballots, for instance, Plaintiffs opted to "lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action." *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973) (en banc) (quotation marks omitted). This Court should follow the lead of numerous courts across the country—including those in the Commonwealth itself—and once more reject Plaintiffs' baseless attempts to nullify the will of the people.

## BACKGROUND

Plaintiffs seek to relitigate issues already decided or pending in state and federal courts, and repackage fraud claims that have already been debunked. For instance, issues surrounding "curing" defective mail ballots, which affects only a few thousand ballots, are currently being litigated in *Hamm v. Boockvar*, 600 MD 2020 (Pa. Commw. Ct. Nov. 3, 2020). Similarly, whether the Trump Campaign's poll watchers had adequate access to observe the canvass has been exhaustively litigated, and is currently before the Pennsylvania Supreme Court, *see In re: Canvassing Observation,* No. 30 EAP 2020 (Pa. Nov. 9, 2020). *See also Donald J.*

*Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, --- F. Supp. 3d ----, 2020
WL 5997680 (W.D. Pa. Oct. 10, 2020); *Donald J. Trump for President, Inc. v.
Phila. Cnty. Bd. of Elections*, No. 2:20-CV-5533 (E.D. Pa. 2020). And the Trump
Campaign's sensational claims of voter fraud regarding nine mail ballots found in
a Luzerne County wastebasket, Compl. ¶ 57, and an Erie County mail carrier's
observations of purported anomalies, *id.* ¶ 126, have been exposed as untrue.
*Local Officials Say Nine Pennsylvania Ballots Were Discarded Due to an Error,
Undercutting Trump Claims of Intentional Fraud,* CNN (Sept. 25, 2020);[1] *Postal
Worker Recanted Allegations of Ballot Tampering, Officials Say*, The Washington
Post (Nov. 10, 2020).[2]

Seeking a new venue for its previously unsuccessful claims, the Trump
Campaign filed this lawsuit one week after the election, and two days after
Pennsylvania was called for President-Elect Biden, asking this Court to discard the
results. *See* Compl. at 84. After the conclusion of an election, however,
Pennsylvania law authorizes only three avenues for a losing candidate to litigate
the result: A candidate can appeal the decision of a county board of elections, *see*
25 P.S. § 3157, a candidate's voters may file a Petition for a Recount or a

---

[1] https://www.cnn.com/2020/09/25/politics/pennsylvania-discarded-ballots-incorrectly-threw-out/index.html.

[2] https://www.washingtonpost.com/investigations/postal-worker-fabricated-ballot-pennsylvania/2020/11/10/99269a7c-2364-11eb-8599-406466ad1b8e_story.html.

Recanvass, *see id.* §§ 3154(e), 3261-3262, or a candidate may file a Petition for an Election Contest, *see id.* § 3456. Unlike a recount or recanvass, which concern the accuracy of the vote count and tabulation, an election contest challenges the honesty and validity of the elections process.

Plaintiffs' selection of this federal forum in lieu of the well-established and longstanding state procedures is not by happenstance. Election contests require a sufficient showing of proof and have an intentionally high bar to succeed. The Commonwealth Court of Pennsylvania has exclusive jurisdiction over election contests for presidential electors. *See* 42 Pa.C.S.A. § 764 (1); 25 P.S. § 3291. Pennsylvania law makes clear that "mere irregularities" or general grievances are insufficient to overturn an election result; instead, the petitioner must show fraud with particularity. *In re Contest of Election of Gollomar*, 175 A. 510, 513 (Pa. 1934). Indeed,

> where the contest is predicated on charges which do not specify fraud with precision and clearness, the court cannot lend itself to a seemingly futile and fruitless inquiry, engaging the parties in protracted litigation, casting doubt on the title to public office, involving the disfranchisement of many honest voters, not only as to the office involved but all the other offices voted for, and conceivably tainting the title of other elected officers unconcerned in the contest.

*Id.*; *see also In re Petition to Set Aside Special Election in Thirty-second Senatorial Dist.*, 15 Pa. D. & C.2d 271, 289 (Pa. Ct. Com. Pl. 1959) (requiring petitioner to set forth fraud in election with particularity). Moreover, it is not enough to allege

isolated fraud:  the petitioner must demonstrate that the magnitude of the fraud was

such that "the illegal acts are so irregular and the election so infected with fraud

that the result cannot be ascertained." *In re Contest of Election for Office of City

Treasurer from Seventh Legislative Dist. (Wilkes-Barre City) of Luzerne Cnty*., 162

A.2d 363, 365 (Pa. 1960); *see also Gollomar*, 175 A. at 513 (election contest

petition should be granted only when the "proof [] show[s] the honest will and

intent of the electorate [have been] thwarted as to the office involved and would

change the result").  The purpose is twofold:  to respect the will of electorate and to

ensure that elections can be timely resolved without protracted litigation.  In other

words, evidence-free allegations of widespread fraud or irregularities are plainly

insufficient to overturn election results in the Commonwealth of Pennsylvania.

In 2016, when then-presidential candidate Jill Stein called the election's

integrity into doubt and attempted to use the federal judiciary to overturn the result

in Pennsylvania, the Trump Campaign argued, and the district court agreed, that

(1) Stein's interest in a "free and fair election" was no more than a generalized

grievance, insufficient to confer Article III standing, (2) the federal judiciary had

no role in hearing these kinds of claims, (3) Stein's claims were barred by laches

because they should have been brought before the election, and (4) federal court

intervention would "jeopardize Pennsylvania's ability to identify and certify its

Presidential Electors and thus the State's place at the Electoral College table,"

which "could disenfranchise millions of Pennsylvania voters."  Brief of Donald J.
Trump for President, Inc. in Opposition to Plaintiffs' Motion for Preliminary
Injunction, *Stein v. Cortes*, No. 16-CV-06287, ECF No. 38 (E.D. Pa. Dec. 8, 2016).
The Trump Campaign and the district court were correct in 2016.

## ARGUMENT

Plaintiffs' challenge to the results of Pennsylvania's election is meritless.
The Court should dismiss Plaintiffs' claims under Rule 12(b)(1) because they lack
standing to assert a generalized grievance common to all Pennsylvania voters.
Even if the Court concludes Plaintiffs have standing, the Court should abstain from
adjudicating their claims, which—though labeled as federal causes of action—are
in reality issues of state law currently pending before Pennsylvania courts.

Were the Court to reach the merits, it should dismiss Plaintiffs' claims under
Rule 12(b)(6).  Those claims—brought weeks after the alleged conduct they
challenge, and seeking to overturn procedures on which millions of Pennsylvanians
relied in casting their ballots—are barred by the doctrine of laches, which carries
particular force in the election context and fundamental notions of fair play and
due process.  Pennsylvania's administration of the November General Election also
did not violate Plaintiffs' federal rights.  The procedures Plaintiffs challenge
impose no burden on any voter's ability to participate in the election and easily
pass muster under the *Anderson-Burdick* line of cases.  Those procedures,

moreover, bear no resemblance to the arbitrary, scattershot methods used in the Florida recount at issue in *Bush v. Gore*, 531 U.S. 98 (2000).

The Court should dismiss Plaintiffs' claims in their entirety with prejudice.

## I.    Plaintiffs Lack Standing

### A.    Plaintiffs Lack Standing On Their Equal Protection And Due Process Clause Claims

Plaintiffs lack Article III standing because they fail to allege any "concrete and particularized" injury-in-fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992). Plaintiffs identify no voter who was deprived of the right to vote. They do not allege that they themselves voted absentee, or identify *any* voter who submitted a mail ballot that was discarded because of missing information or a missing secrecy envelope and who was not notified of that issue and given an opportunity to cast a provisional ballot in person.[3]

Instead, Plaintiffs advance the oft-rejected theory that their votes have been "diluted" by the counting of other, supposedly unlawful, votes. As Judge Ranjan recently observed in dismissing similar Trump Campaign claims, however, "the claimed injury of vote dilution … is too speculative to be concrete." *Donald J. Trump for President*, 2020 WL 5997680, at *32; *see also Republican Party of Pa.*

---

[3] At most, the complaint suggests that Plaintiff Henry may have voted by mail and "received no … opportunity" to cast a new or provisional ballot, Compl. ¶ 211, but it does not indicate that his ballot was actually rejected. Even if it was, it was Lancaster County—not the Defendant Counties—that caused any such injury.

*v. Cortes*, 218 F. Supp. 3d 396, 406-407 (E.D. Pa. 2016) (rejecting vote-dilution claim premised "on speculation that fraudulent voters may be casting ballots elsewhere" in the state).  As before, Plaintiffs' asserted generalized entitlement to have the state follow certain procedures in canvassing *other* voters' valid ballots is a non-cognizable claim that is "'about group political interests, not individual legal rights.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1248 (11th Cir. 2020) (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1933 (2018)).

Likewise, Plaintiffs allege theoretical risks of fraud and abuse resulting from mail voting and Pennsylvania's election procedures.  *See, e.g.*, Compl. ¶¶ 55, 150. In an attempt to reach beyond the theoretical, Plaintiffs offer unfounded speculation that ballot fraud or destruction may have occurred.  For instance, Plaintiffs seem to suggest that something *could have happened* in "a back room counting area" in Delaware County, *id.* ¶ 143, and claim vaguely that "[a] shocking number of mail-in ballots have inexplicably appeared," *id.* ¶ 149.  But they do not allege that any specific unlawful votes were actually counted. [4]  And Plaintiffs make no effort to connect their anonymous allegations concerning inconsistencies

---

[4] Moreover, to the extent Plaintiffs hint that voter fraud occurred, the Complaint falls woefully short of satisfying Rule 9(b), which requires that they "state with particularity the circumstances constituting fraud or mistake" and allege that some actor possessed the requisite scienter. Fed. R. Civ. P. 9(b).  They fail to allege the "the who, what, when, where, and how" of any particular incidence of voting fraud. *See United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019).

with *in-person* voting to the challenged procedures, *id.* ¶¶ 112-127; "thus it is unclear how this can serve as evidence of a concrete harm … as to the specific claims in this case." *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *33.

Even aside from their failure to allege that specific votes were improperly cast and counted, Plaintiffs have not shown that any allegedly unlawful vote would have been cast for one candidate over the other and is thus more likely to "dilute" their votes. *See Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *35. And in any event, any so-called "dilution" could not amount to injury, because the impact would be felt by all Pennsylvania voters equally. Such a "generalized grievance" is insufficient for Article III standing. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (standing absent where plaintiff "suffers in some indefinite way in common with people generally"); *see, e.g.*, *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020); *Stein v. Cortes*, 223 F. Supp. 3d 423, 432-433 (E.D. Pa. 2016) (candidate's speculation that election's integrity was compromised was too generalized to support standing). Similarly, there is simply no allegation sufficient to assert a concrete and particularized injury here.

**B.** **Plaintiffs Lack Standing On Their Elections And Electors Clause Claims**

1. *Plaintiffs Are Not Injured By Purported Elections Or Electors Clause Violations*

The Elections and Electors Clauses vest authority in "the Legislature" of each state to regulate congressional and presidential elections—here the Pennsylvania General Assembly.  U.S. Const. art. I, § 4, cl.1, art. II, § 1, cl. 2.  The U.S. Supreme Court has held that private citizens do not have standing to assert a claim under the Elections Clause absent a "particularized stake in the litigation." *Lance v. Coffman*, 549 U.S. 437, 442 (2007).

In *Lance*, after describing the Court's "lengthy" jurisprudence holding that federal courts should not serve as a forum for generalized grievances," the Court articulated the "obvious" problem with the plaintiffs' standing:

> The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed.  This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.  It is quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing.

*Id.*  Consistent with *Lance*, federal courts have repeatedly declined to adjudicate Elections Clause claims brought by individual plaintiffs.  *See, e.g.*, *Wise v. Circosta*, 2020 WL 6156302 at *6 (4th Cir. 2020), *application for stay denied,* Nos. 20A71, 20A72 (U.S. Oct. 28, 2020); *Corman v. Torres*, 287 F. Supp. 3d 558, 567 (M.D. Pa. 2018) (three-judge panel held plaintiffs lacked standing because

claims "rest[ed] solely on the purported usurpation of the Pennsylvania General Assembly's exclusive rights under the Elections Clause of the United States Constitution," which individual legislators had no legal right or authority to assert). This Court should do the same.

2. *Plaintiffs Cannot Advance The General Assembly's Interests Under The Elections And Electors Clauses*

Even if Plaintiffs had suffered an injury sufficient for Article III purposes, their claims are still barred under the doctrine of prudential standing. *See Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (standing involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise"). Prudential limitations require "that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski*, 543 U.S. at 129; *see also Amato v. Wilentz*, 952 F.2d 742, 750 (3d Cir. 1991).

Here, Plaintiffs claim the election officials "implemented rules and procedures" that contravene Pennsylvania law and therefore violated Article II, which "reserves for the General Assembly the power to set the time, place, and manner of holding elections." Compl. ¶ 199. But Plaintiffs cannot assert the General Assembly's rights because they have identified neither a "close relationship with the [General Assembly]" nor a "'hindrance' to the [General Assembly's] ability to protect [its] own interests," *Kowalski*, 543 U.S. at 130

-11-

(quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).  As a three-judge panel of this district recently explained, "[a]bsent a 'hindrance' to the third-party's ability to defend its own rights, this prudential limitation on standing cannot be excused." *Corman*, 287 F. Supp. 3d 558 at 572 (quoting *Kowalski*, 543 U.S. at 130).  Because the General Assembly is certainly capable of protecting its interests, prudential limitations bar Plaintiffs' claims.  *Phila. Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. C.I.R.*, 523 F.3d 140, 145 (3d Cir. 2008) *see also Corman*, 287 F. Supp. 3d at 571-73.

## II.    Plaintiffs' Requests For Injunctive Relief Are Barred By The Eleventh Amendment

Plaintiffs' claims are barred because they seek a federal injunction against state officials for alleged violations of state law.  While Plaintiffs try to disguise their claims as federal constitutional violations, they advance nothing more than disagreements over the application of Pennsylvania's Election Code, and seek an order from this Court enjoining the certification of the General Election statewide. Compl. ¶ 84.  But certification of the election is the responsibility of a state official—the Secretary of State—not that of individual counties.  *See* 25 P.S. § 3166 (discussing the Secretary's and Governor's role in "receiving and computing returns of the election of presidential electors" and causing a "certificate of election to be delivered to each person so chosen").  Thus, a court order preventing

certification of the election in this case would violate the Eleventh Amendment.

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

In *Pennhurst*, the Supreme Court held that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when … the relief sought and ordered has an impact directly on the State itself." *Id.* at 117. As a result, "a claim that state officials violated state law in carrying out their official responsibilities" is jurisdictionally barred in federal court. *Id.* at 122.

That is precisely the claim Plaintiffs advance here. Their allegations concerning poll observers' access and notification about defective mail ballots are based entirely in state law, not the Constitution. *See, e.g.*, Compl. ¶¶ 178, 188, 201. And their requested relief seeks to prevent a state officer (the Secretary) from certifying elections statewide to force compliance with the state law as Plaintiffs perceive it.

Although Plaintiffs purport to rely on federal law, their claim is nothing more than state law with a federal label attached to it. Such sleight of hand cannot evade the Eleventh Amendment. *See, e.g.*, *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1062 (7th Cir. 2020) ("A violation of state law does not … transgress against the Constitution."); *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995) ("[T]he Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations…."). Plaintiffs would

require this Court to interpret state law, determine whether state officials violated

it, and grant injunctive relief to ensure its enforcement, all of which is foreclosed

by the Eleventh Amendment under well-settled precedent. *See, e.g., Acosta v.

Democratic City Comm.*, 288 F. Supp. 3d 597, 628 (E.D. Pa. 2018) (Eleventh

Amendment bars Pennsylvania Election Code claims against Secretary of State);

*Sprague v. Cortes*, 223 F. Supp. 3d 248, 284 (M.D. Pa. 2016) (state law challenge

to Secretary of State's ballot question to amend state constitution was

jurisdictionally barred by Eleventh Amendment); *Green Party of Pa. v. Aichele*, 89

F. Supp. 3d 723, 754 (E.D. Pa. 2015) (dismissing claims that defendants exceeded

their authority under the Pennsylvania Election Code on Eleventh Amendment

grounds).

However artfully pled, this lawsuit alleges that Defendants violated the

Election Code and seeks an injunction to force the Secretary's compliance

therewith.  The Secretary is entitled to Eleventh Amendment immunity, and any

claims seeking such relief are jurisdictionally barred.

## III.    Principles Of Federalism And Comity Strongly Favor *Pullman* Abstention

Pennsylvania's contest procedures are designed specifically to address the

types of grievances over the tabulation of votes and certification of election results

that Plaintiffs have raised here; yet Plaintiffs have bypassed this state law remedy

and instead ask this Court not only to micromanage the conduct of elections in

Pennsylvania, but to discard its results entirely. *See* Compl. at 84. The relief

Plaintiffs seek calls for a truly extraordinary intrusion on state sovereignty, and

principles of federalism and comity counsel strongly in favor of, and indeed may

well require, adjudication through the well-established state law procedures for

election contests. *See González-Cancel v. Partido Nuevo Progresista*, 696 F.3d

115, 120 (1st Cir. 2012) ("Where, as here, a plaintiff is aware of, yet fails to fully

use, an adequate state administrative or judicial process to address a local election

dispute, a claim that the election process created fundamental unfairness to warrant

federal intervention cannot survive.").

Under the doctrine announced in *Railroad Commission of Texas v. Pullman

Co.*, 312 U.S. 496 (1941), abstention is appropriate if the Court finds "(1) that

uncertain issues of state law underlie the federal constitutional claims brought in

the district court; (2) that the state law issues are amenable to a state court

interpretation that would obviate the need for, or substantially narrow, adjudication

of the federal claim; and (3) that important state policies would be disrupted

through a federal court's erroneous construction of state law." *Artway v. Att'y

Gen. of N.J.*, 81 F.3d 1235, 1270 (3d Cir. 1996). Each prong is easily met in these

circumstances.

First, Plaintiffs' claims center on unresolved questions of state law that

could obviate, or substantially narrow, the need to adjudicate their federal

constitutional claims.  As noted, Plaintiffs allege that poll watchers should have been allowed to stand closer to officials counting ballots, and that counties incorrectly notified some voters that their mail ballots were defective and provided them an opportunity to remedy those defects.  But there is no constitutional right to observe the canvassing process, much less to be placed near "the action," Compl. ¶ 5. Plaintiffs' objection to the distance between their observers and the canvassing activities is a question of state law, and one which is currently pending before the Pennsylvania Supreme Court in a case brought by the Trump Campaign.  *See* Order, *In Re: Canvassing Observation*, No. 30-EAP-2020 (Pa. Nov. 9, 2020) (granting appeal concerning issue of whether distance of poll watchers in Philadelphia complied with the Election Code).

Similarly, state-law issues surrounding the "curing" of mail ballots are likewise pending in state court.  *See* Application for Special Relief, *Hamm v. Boockvar*, No. 600-MD-2020 (Pa. Commw. Nov. 3, 2020) (seeking injunction prohibiting Defendant Boockvar "from permitting invalidly submitted absentee and mail-in ballots to be 'cured' by the submission of provisional ballots"); Order, *id.* (Pa. Commw. Nov. 6, 2020) (ordering segregation of such provisional ballots pending outcome of provisional ballot challenge procedure).  Plaintiffs cite *Pennsylvania Democratic Party v. Boockvar* to suggest that such "cure" procedures are prohibited by state law, but the court made no such finding.

-16-

Instead, the Pennsylvania Supreme Court simply held that boards were *not required* to have a curing process, but in no way did the court suggest they were prohibited from doing so.  *See* 2020 WL 5554644, at *19-20; *see also infra* at 40. In these circumstances, abstention is the correct course, to allow the Commonwealth's courts to definitively interpret Pennsylvania law and to enforce state law procedures for adjudicating challenges to election results.  *Cf. Georgevich v. Strauss*, 772 F.2d 1078, 1095 (3d Cir. 1985) ("If we do not need to intrude, we should not.  We can only know if intervention is required if we first abstain.").  Under similar circumstances, other district courts have found *Pullman*'s second prong satisfied and accordingly abstained.  *See, e.g., de la Fuente v. Cortes*, 207 F. Supp. 3d 441, 450 (M.D. Pa. 2016) (2016 presidential election).

Important state policies would be significantly disrupted were this Court to intrude here.  Pennsylvania has a strong interest in the orderly administration and certification of its elections.  Accordingly, the Commonwealth implemented robust procedures for voters to contest an election that require heightened standards of evidence.  *See supra* 4-5 (describing election contest procedures).  Pennsylvania courts have been unequivocal that these proceedings "constitute the *exclusive* means for challenging the accuracy of election results," *Rinaldi v. Ferrett*, 941 A.2d 73, 78 (Pa. Commw. Ct. 2007) (emphasis added), and principles of

-17-

federalism and comity counsel against federal court usurpation of Pennsylvania's well-developed state law avenues for adjudicating these grievances. *See Stein v. Cortes*, 223 F. Supp. 3d at 427-28; *see also* Brief of Donald J. Trump for President, Inc. in Opposition to Plaintiffs' Motion for Preliminary Injunction, *Stein v. Cortes*, No. 16-CV-06287, ECF No. 38. This Court should therefore abstain under *Pullman*.

## IV.   Plaintiffs' Failure To Seek Pre-Election Relief Bars Their Claims Regarding Disparate Notification Procedures

Plaintiffs' challenges to the counties' notification procedures in Counts IV, V, VI, and VII come too late and are barred by the doctrine of laches. Plaintiffs should have been aware of those procedures before Election Day, and could have brought their claims earlier. This delay was consequential: Now that the ballots have been opened, separated from their envelopes, and counted, if Plaintiffs' challenges were to be sustained, the votes of hundreds of thousands—perhaps millions—of Pennsylvanians would be discarded even though they committed no fault in the casting of their ballots. That severe prejudice would be contrary to fundamental principles of equity, which undergird the doctrine of laches and are incorporated into the Due Process Clause.

Plaintiffs admit that Philadelphia notified voters of its notification procedures *before* Election Day, Compl. ¶ 133, and that the Secretary of State "encouraged" these procedures—also *before* Election Day, *id.* ¶ 134. But rather

-18-

than seek injunctive relief at that point, Plaintiffs lay in wait.  Only after it became

apparent that Vice President Biden would lead the popular vote in Pennsylvania

did Plaintiffs sue to invalidate the outcome and to disenfranchise all the voters in

these counties who voted by mail ballot.  Had Plaintiffs sued before the election,

any injunction would, at most, have prevented some voters from learning that they

needed to cast a provisional ballot or obtain a replacement mail ballot.  But the

post-election injunction that Plaintiffs now seek would disenfranchise *all* voters

who cast a mail ballot in a county that provided notification.  That prejudice would

be extreme—and would be fundamentally contrary to the right to vote that

Plaintiffs claim to espouse.

Under basic principles of equity, Plaintiffs' gamesmanship should be

rejected.  Courts' "failure to require prompt pre-election action … as a prerequisite

to post-election relief may permit, if not encourage, parties who could raise a claim

to lay by and gamble upon receiving a favorable decision of the electorate and

then, upon losing, seek to undo the ballot results in a court action."  *Toney v.*

*White*, 488 F.2d 310, 314 (5th Cir. 1973) (en banc) (internal quotation marks

omitted).  Accordingly, "[c]ourts will consider granting post-election relief only

where the plaintiffs were not aware of a major problem prior to the election or

where by the nature of the case they had no opportunity to seek pre-election relief."

*Hart v. King*, 470 F. Supp. 1195, 1198 (D. Haw. 1979).  And courts have applied

this principle strictly, even in cases with much more egregious allegations than the ones here.  For example, in *Tucker v. Burford*, 603 F. Supp. 276 (N.D. Miss. 1985), the court refused to void an election where the defendants conceded that the districts were malapportioned because "to grant the extraordinarily relief of setting aside an election … would be to embrace the hedging posture" that courts have discouraged.  *Id.* at 279.  This Court should likewise refuse to license Plaintiffs' hedging and dismiss their belated claims.

## V.   Plaintiffs' Causes Of Action Fail To State A Claim For Relief

### A.   Plaintiffs Fail To Plead A Due Process Violation

Plaintiffs fail in their effort to transform run-of-the-mill (and misguided) claims that Defendants violated Pennsylvania's Election Code into a federal Due Process violation.[5]  *See* Counts I and VI.  "The Constitution is not an election fraud statute," *Minn. Voters Alliance v. Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013), and

---

[5] Although the complaint also contains a list of anonymous anecdotes concerning alleged isolated election inconsistencies, Compl. ¶¶ 110-127, their claims focus solely on those two alleged deficiencies, *id.* ¶¶ 185-191, 211-212.  But even if the Court were troubled by the minor incidents Plaintiffs allege, many of which have been rebutted, *supra* at 3, they do not merit intruding into Commonwealth officials' administration of the election.  "[S]cattered election-procedure violations regarding a small number of voters" are insufficient to "warrant[] a federal court's entry into the details of the administration of an election," particularly in the post-election context.  *Ron Barber for Congress v. Bennett*, 2014 WL 6694451, at *4 (D. Ariz. Nov. 27, 2014) (declining to order election officials to count 133 contested ballots even though "[i]t is unclear what standards [county officials] applied to determine a [signature] mismatch and whether the cure process is arbitrary").

it "d[oes] not authorize federal courts to be state election monitors," *Gamza v.*

*Aguirre*, 619 F.2d 449, 454 (5th Cir. 1980).

Nor are voters or candidates constitutionally entitled to an election free from

error. "[G]arden variety election irregularities do not violate the Due Process

Clause, even if they control the outcome of the vote or election." *Bennett v.*

*Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998). Even "a deliberate violation of state

election laws by state election officials does not transgress against the

Constitution." *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1062

(7th Cir. 2020). It is only where "a pervasive error … undermines the integrity of

the vote" that the Constitution is implicated. *Id.* At a minimum, a plaintiff

claiming a violation of due process must show "*significant disenfranchisement* that

results from a change in the election procedures." *Id.* at 1227 (emphasis added).

Only fundamental failures of the election system will support a due process claim

*Stein*, 223 F.Supp.3d at 438 (collecting cases).

Applying these principles, courts have rejected due process claims based on

malfunctioning voting machines, *Hennings v. Grafton*, 523 F.2d 861, 864-65 (7th

Cir. 1975); miscounting votes and delayed arrival of ballots, *Gold v. Feinberg*, 101

F.3d 796, 801 (2d Cir. 1996); mistakenly allowing non-party members to vote in a

congressional primary, *Powell v. Power*, 436 F.2d 84, 85 (2d Cir. 1970); an

allegedly inadequate state response to illegal cross-over voting, *see Curry v. Baker*,

-21-

802 F.2d 1302, 1316 (11th Cir. 1986); mechanical and human errors when tallying votes, *see Bodine*, 788 F.2d at 1272; technical inadequacies in printing ballots, *see Hendon v. North Carolina State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983); and unintentionally misclassifying all votes at several precincts, resulting in the wrong candidate being declared the winner, *Gamza*, 619 F.2d at 451. Indeed, the Fifth Circuit rejected a due process claim based on a bevy of mail ballot irregularities, including "complaints about missing signatures, ballots that should have been mailed rather than hand-delivered, and six fraudulent votes"—even though the contested ballots were enough to decide the election. *Welch v. McKenzie*, 765 F. 2d 1311, 1317 (5th Cir. 1985) (deeming these "garden variety" issues).

Genuine and far more serious impropriety is needed to rise to the level of a due process violation, as in, for example, *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994). There, one candidate induced hundreds of voters to fill out mail ballots fraudulently, with the deliberate assistance of state election officials. *Id.* at 877-878. Such conduct amounted to a substantive due process violation because there was "ample record support[] that the wrongdoing was substantial, that it *could* have affected the outcome of the election, and that it rendered the certified vote count an unreliable indicator of the will of the electorate." *Id.* at 886-887.

The allegations here are nothing like the facts proven in *Marks*.  Plaintiffs are dissatisfied with the access their observers were given to mail-ballot processing but, even if their allegations prove true, they never adequately tie poll observing with fraud prevention to establish that expanded access is required to ensure the fundamental fairness of the election.  "[T]here is no individual constitutional right to serve as a poll watcher," *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *71 (quotation marks omitted),[6] and courts have repeatedly rejected the notion that poll watching is necessary to prevent fraud.  *See id.*; *Cortes*, 218 F. Supp. 3d at 406.

Moreover, as explained below, Plaintiffs are wrong that any of the procedures they challenge violated any state law.  *See infra* 38-40.  But even if they were right, their allegations would amount to (at best) no more than "garden

---

[6] *See also Dailey v. Hands*, No. 14-423, 2015 WL 1293188, at *5 (S.D. Ala. Mar. 23, 2015) ("[P]oll watching is not a fundamental right protected by the First Amendment."); *Turner v. Cooper*, 583 F. Supp. 1160, 1162 (N.D. Ill. 1983) ("Plaintiffs have cited no authority …, nor have we found any, that supports the proposition that [the plaintiff] had a first amendment right to act as a poll watcher."); *see also* Order, *Parnell v. Allegheny Cnty. Bd. of Elections*, No. 20-cv-1570 (W.D. Pa. Oct. 23, 2020) (denying temporary restraining order expanding poll watcher access); *Cortes*, 218 F. Supp. 3d at 413-14  (holding no right to poll watch); *Pa. Democratic Party*, 2020 WL 5554644, at *30 (similar); Opinion and Order, *Polasek-Savage v Benson*, No. 20-000217-MM (Mich. Ct. Cl. Nov 3, 2020) (similar); Order, *Kraus v. Cegavske*, No. 20 OC 00142 (Nev. Dist. Ct. Oct. 29, 2020) motion to stay denied, No. 82018 (Nev. Sup. Ct. Nov. 03, 2020) (denying mandamus because petitioners including Donald J. Trump for President and others failed to cite any constitutional provision, statute, rule, or case that supports … request" for increased access to mail-ballot processing and counting).

variety irregularities." *Cf. Powell*, 436 F.2d at 88 ("[T]he due process clause …

offer[s] no guarantee against errors in the administration of an election.  New York

Election Law §§ 145, 330(2) provide a method for correcting such errors as are

made, and the plaintiffs do not contest the fairness and adequacy of that remedy.").

Plaintiffs have certainly not shown "significant disenfranchisement," *Bennett*, 140

F.3d at 1227—whether based on a vote dilution theory or otherwise.  Nor have

they shown intentional, official action to tip the scales for one candidate, as in

*Marks*, 19 F.3d 873.  They have offered no concrete evidence to show that *any*

"illegal votes" were cast or that votes were erroneously counted in the relevant

counties, relying entirely on specious allegations of widespread fraud.

Finally, Plaintiffs' claims are precluded because there is an adequate state

law remedy to address their claims of voter fraud.  "Where, as here, a plaintiff is

aware of, yet fails to fully use, an adequate state administrative or judicial process

to address a local election dispute, a claim that the election process created

fundamental unfairness to warrant federal intervention cannot survive." *González-*

*Cancel v. Partido Nuevo Progresista*, 696 F.3d 115, 120 (1st Cir. 2012) (citing

*Rosselló-González v. Calderón-Serra*, 398 F.3d 1, 16 (1st Cir. 2004)); *Griffin*, 570

F.2d at 1077 (noting that "even claims of official misconduct[] do not usually rise

to the level of constitutional violations where adequate state corrective procedures

exist").  As described *supra* at 4-5, if it can marshal the evidence to do so, the

Trump Campaign may use the election contest procedures under Pennsylvania law to vindicate its claims of election irregularities foreclosing a due process claim.

This Court should likewise reject Plaintiffs' fictitious claims of voter fraud and refuse to constitutionalize their state-law-based grievances.

### B.     Plaintiffs Fail To Plead An Equal Protection Violation

Plaintiffs' equal-protection theories all fail for fundamentally the same reason:  They cannot show that the local practices of which they complain adversely affected *anyone's* right to vote.  Moreover, their claims, if accepted, would unravel the entire system of administration of election laws that prevails in Pennsylvania, and indeed, throughout the country.

At their broadest, Plaintiffs' claims appear to assert that Defendants violate equal protection simply by having different systems, including different systems of voter verification, for in-person and mail ballots.  Thus, Plaintiffs accuse Pennsylvania of "creat[ing] a two-track system of voting resulting in voters being treated differently depending on" whether they voted in-person or by mail, Compl. ¶ 14, suggesting that they think mail voting is *per se* unconstitutional.  To the contrary, "[i]t is well-settled that states may employ in-person voting, absentee voting, and mail-in voting and each method need not be implemented in exactly the same way." *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *61 (dismissing identical claim). *Cf. In re Nov. 3, 2020 Gen. Election*, No. 149 MM

2020, 2020 WL 6252803, at *12 (Pa. Oct. 23, 2020) (noting that Pennsylvania legislature employed different rules for in-person and mail-in voting). To hold otherwise would suggest that the longstanding practice of *every state* violates federal law. *See Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 776 (5th Cir. 2000).

Perhaps recognizing the untenability of such a position, Plaintiffs retreat to two equally meritless arguments. They contend that Defendants violated the Equal Protection Clause because (1) certain counties notified voters whose mail ballots contained non-substantive defects so that they could vote by provisional ballot in person, Compl. ¶ 211 (Count IV), and (2) some counties imposed restrictions on election observers to ensure public health and safety during the COVID-19 pandemic that other counties did not, *id.* ¶¶ 188-189 (Count II). Those theories are nearly identical to those advanced by the Trump Campaign and rejected by Judge Ranjan less than a month ago, and his thorough analysis disposes of their claims now. *See Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *38-51, 60-68.

The first theory—which Judge Ranjan aptly described as an "inverted theory of vote dilution" that essentially "complains that the state is *not* imposing a restriction on *someone else's* right to vote"—is meritless. *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *44 (emphasis in original). Plaintiffs may

have some complaint against election boards in other counties that were not

particularly solicitous in protecting voters' rights to have their ballots counted, but

those counties are not parties to this case, and any alleged failure on the part of

those counties to reach out to voters  does not mean that Defendants in this case

denied them, or anyone, equal protection.  As to the second theory (concerning the

placement of observers), Plaintiffs have failed to explain how the eminently

reasonable public health regulation of which they complain affected any vote.  And

at bottom, Plaintiffs' demand that election administration be absolutely identical in

every county throughout the Commonwealth is unsupported by precedent,

including *Bush*, on which they claim great reliance.  The equal protection claims

should therefore be dismissed.

> 1.    *Defendant Counties' Decision To Notify Voters Of Ballot*
>       *Defects And Offer Them An Opportunity To Cast A Valid Ballot*
>       *Does Not Burden Anyone's Right To Vote*

The *Anderson-Burdick* balancing test is "the proper method for analyzing …

equal protection claims" challenging state election rules.  *Rogers v. Corbett*, 468

F.3d 188, 193 (3d Cir. 2006).  *Anderson-Burdick* creates a "flexible standard,"

which recognizes that "[e]lection laws will invariably impose some burden upon

individual voters," and that not all such burdens are unconstitutional.  *Burdick v.*

*Takushi*, 504 U.S. 428, 433, 434 (1992).  When voting rights are subjected only to

"reasonable, nondiscriminatory restrictions, … the State's important regulatory

interests are generally sufficient to justify" the restriction. *Id.*, 504 U.S. at 434 (quotation marks omitted).  That amounts to "a level of scrutiny" that is "close[] to rational basis," *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *39 (internal quotation marks omitted); *see also Biener v. Calio*, 361 F.3d 206, 215 (3d Cir. 2004) (applying rational-basis review to Equal Protection claim challenging state law waiving candidate filing fee only for indigent registrants).  Because Defendants' alleged conduct "imposes no burden on the 'right to vote' at all, true rational basis review applies." *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *39.

Here, Plaintiffs challenge procedures that "do[] not burden anyone's right to vote" but, at most, only "make[] it easier for some voters to cast their ballots." *Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018); *see also Democratic Party of Virginia v. Virginia State Bd. of Elections*, No. 1:13-CV-1218, 2013 WL 5741486, at *2 (E.D. Va. Oct. 21, 2013) (dismissing claim where "Plaintiff has not presented evidence of any individual who has been deprived of their right to vote").  Moreover, Plaintiffs do not suggest that the Defendant counties discriminated among any votes *within* their counties.  Rather, their complaint is that these Defendant counties were somewhat more solicitous of protecting mail voters' right to vote than were other counties elsewhere in the Commonwealth.  But if anyone was denied the opportunity to address a deficient mail ballot, that was not the fault

of these counties; Plaintiffs' complaint should be directed elsewhere. For example,

if Plaintiff Henry was denied notice of any defect in his own mail-in ballot, *see*

Compl. ¶ 211, he should have sued *Lancaster County*, which allegedly failed to

offer him the same procedures available elsewhere. But any failure by Lancaster

County does not mean that *other counties* somehow burdened Mr. Henry's or

anyone else's right to vote. As Judge Ranjan explained, "[t]he consequence of this

inverted theory of vote dilution is that *all* other votes are diluted in the same way;

all feel the same effect." *Donald J. Trump for President, Inc.*, 2020 WL 5997680,

at *44 (emphasis added).

Moreover, because "Plaintiffs' … theory is that by the Secretary [and

Defendant Counties] violating state law, unlawful votes are counted and thus

lawfully cast votes are diluted[,] … a necessary predicate for these constitutional

claims" is the unlawfulness of notifying voters that their ballot was cancelled and

giving them an opportunity to vote a provisional ballot. *Donald J. Trump for

President, Inc.*, 2020 WL 5997680, at *52–53. Thus, Plaintiffs' claims also fail

because the challenged procedures comply with Pennsylvania law, *see infra* 38-40,

and led solely to the casting of *lawful* votes, which cannot have unconstitutionally

"diluted" Plaintiffs' votes.

Even if the Court were to credit Plaintiffs' vote-dilution theory (which it

should not, *see supra* 7-8), it must weigh that asserted injury against "the precise

-29-

interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788-789 (1983)). Here, any minimal burden is readily justified by Pennsylvania's strong interest in protecting the right to vote, which "is of the most fundamental significance under our constitutional structure." *Ill. Bd. of Elections,* 440 U.S. at 184; *see also Reynolds v. Sims*, 377 U.S. 533, 554 (1964) ("[Q]ualified voters have a constitutionally protected right ... to have their votes counted."). Defendants' alleged decision to notify voters whose mail-in ballot was somehow defective so that they could vote via provisional ballot or obtain a replacement mail ballot, rather than entirely lose the ability to vote altogether, is justified by that paramount interest in securing the franchise.

2.   *Defendants' Alleged Restrictions On Observers Do Not State An Equal Protection Claim*

Plaintiffs' claim concerning the placement of canvassing observers fails for the same reason as the claim that the Trump campaign previously asserted against counties' use of unmanned ballot drop boxes. *See Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *42. Plaintiffs attempt to string together an equal protection theory by speculating that unlawful ballots were counted as a result of observer placement, which, they claim, caused their votes to be diluted. But even accepting that unsubstantiated theory, Plaintiffs cannot show "that votes cast in

some counties are diluted by a greater amount relative to votes cast in others," because "the effect of those events will … be felt by every voter across all of Pennsylvania." *Id.* Nor do they offer any non-speculative basis to suspect any such unlawful votes were disproportionately for one candidate. *See supra* 9.

Their Equal Protection claim concerning the placement of observers in some counties is also not cognizable because instead of asserting similarly situated individuals were treated differently, it compares fundamentally different situations. It would be absurd to expect counties like Philadelphia, which employed many canvass workers to count hundreds of thousands of absentee and mail-in ballots in the span of a few days, Compl. ¶ 146, to offer precisely the same level of access to the canvassing process as small counties which only needed to count fewer than 10,000 ballots, *id.* ¶ 147. It is a core feature of Equal Protection claims that "[a]pples must be compared to apples," or else there can be no constitutional violation. *Perano v. Twp. of Tilden*, No. 09-754, 2010 WL 1462367, at *10 (E.D. Pa. Apr. 12, 2010), *aff'd*, 423 F. App'x 234 (3d Cir. 2011). Plaintiffs, who "ha[ve] only offered oranges for purposes of comparison," cannot prevail on this claim.

Even if they could assert such a claim on a statewide basis, "there is no authority to support a finding of burden [on the right to vote] based solely on a speculative … possibility that election irregularities might occur." *Donald J. Trump for President, Inc.*, 2020 WL 5997680, *71. As with Defendants' notice

procedures, Plaintiffs do not suggest that Defendants' alleged actions requiring

observers to keep a safe distance from canvassers or otherwise limiting their

exposure, and structuring the canvassing in rows so that it could proceed more

expeditiously, actually denied them the opportunity to vote or to have their vote

counted.  Compl. ¶¶ 141, 143, 145-146; *see Donald J. Trump for President, Inc.*,

2020 WL 5997680, at *67 (county-residency requirement for poll watchers does

not violate equal protection because it does not "hinder the exercise of the

franchise" or "in any way limit voters' range of choices in the voting booth").

     In any event, those sensible regulations were justified by strong state

interests.  Public health considerations readily justify some counties' decision to

separate canvassing observers from the local election officials conducting the

canvassing.  As Judge Ranjan explained, "COVID-19 has spread to every corner of

the globe, including Pennsylvania, and jeopardized the safety and health of many

people," and Pennsylvanians have been "urged to … limit[] participation in large

gatherings [and] maintain[] social distance."  *Donald J. Trump for President, Inc.*,

2020 WL 5997680, at *10 (citations omitted).  As the U.S. Centers for Disease

Control and Prevention ("CDC") has explained, the two greatest risk factors in

transmission of Covid-19 are the distance from and duration of exposure to an

infected person.[7]  Thus, the CDC encouraged election officials to "[m]odif[y] layouts and procedures" by "ensur[ing] sufficient space for social distancing and other measures," and "identify[ing] larger facilities for use as future polling places."[8]  Defendants should not be penalized for following that guidance to protect the health of election workers—as well as the canvass observers themselves.  The Commonwealth's "interests in protecting … health and safety … in light of the COVID-19 pandemic far outweigh any burden on Plaintiffs' right to vote, particularly when that burden is premised on a speculative claim of voter fraud resulting in dilution of votes."  *Paher*, 457 F. Supp. 3d at 922; *see also Nemes v. Bensinger*, No. 3:20-CV-407-CRS, 2020 WL 3402345, at *13 (W.D. Ky. June 18, 2020) (Kentucky's interest in "provid[ing] for a free and fair election while attempting to minimize the spread of COVID-19" was a "sufficiently weighty" interest to justify "modest burden" of closing some polling locations).

In addition, Pennsylvania has a strong interest in ensuring the "orderly and efficient administration of elections." *Libertarian Party of Pa. v. Governor of Pa.*, 813 F. App'x 834, 835 (3d Cir. 2020).  Large counties' decision to place vote

---

[7] CDC, *Polling Locations and Voters* (Oct. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html ("The more an individual interacts with others, and the longer that interaction, the higher the risk of COVID-19 spread.").

[8] *Id.*

canvassers in rows and to prohibit observers from freely circulating in the canvassing area serves those jurisdictions' "interests in efficiently allocating [their] election resources and administering elections in an orderly manner," which outweighs any minimal burden on Plaintiffs' rights.  *See Mays v. LaRose*, 951 F.3d 775, 783 (6th Cir. 2020); *see also Harlan v. Scholz*, 866 F.3d 754, 755-756 (7th Cir. 2017) (upholding law that gave "more options for same-day registration and voting for residents of counties with populations of 100,000 or more than it does for those who live in smaller counties").  Along with administrability, Defendants also have a strong interest in protecting voter privacy and ballot security—both of which would be ill-served by allowing observers to approach the close proximity of canvassers, where they could introduce additional ballots and distort the count, tamper with election machinery, interfere with or intimidate election workers, or view outer declaration envelopes that contain voters' personal information.  *See, e.g.*, *Fusaro v. Howard*, No. CV ELH-17-3582, 2020 WL 3971767, at *20 (D. Md. July 14, 2020) (recognizing voter privacy as state interest sufficient to justify burdening access to election information).

In sum, none of the practices Plaintiffs challenge burden the right to vote, and Pennsylvania's paramount interests in protecting the right to vote, ensuring administrability, and protecting the health of election workers far outweigh the burdens Plaintiffs allege on their own rights.

3.   *The Inconsistencies Alleged By Plaintiffs Do Not Violate Equal Protection*

Plaintiffs' reliance on the Supreme Court's decision in *Bush v. Gore*, is similarly unavailing.  Plaintiffs appear to read that decision to require that every detail of election administration that might affect how votes are cast or counted in every locality within a State be exactly the same; that extravagant reading of the decision is unwarranted.  Indeed, in *Bush v. Gore*, "[t]he question before the Court [wa]s *not* whether *local* entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. at 109 (emphases added). All nine Justices recognized that the Equal Protection Clause does not forbid local officials from varying election rules according to local needs.  *See id.; see also id.* at 116-117 (Rehnquist, C.J., joined by Scalia and Thomas, JJ., concurring) (noting state legislature's authority to "delegate[] to county canvassing boards the duties of administering elections" and rejecting state court decision that disregarded county boards' discretion regarding recounts); *id.* at 126 (Stevens, J., joined by Ginsburg and Breyer, JJ., dissenting) (explaining that overly rigid application of constitutional principles would undermine the "decisions of the vast majority of state legislatures to delegate to local authorities certain decisions with respect to voting systems"); *id.* at 134 (Souter, J., joined by Breyer, J., dissenting) (recognizing constitutionality of "the use of a variety of voting mechanisms within a jurisdiction, even though different mechanisms will have different levels of

effectiveness in recording voters' intentions").  Rather, the Court was concerned with the lack of a *state* standard for counting the same type of vote.  *Id.* at 106.

But here, Plaintiffs concede (at Compl. ¶¶ 94-94, 135) that Secretary Boockvar offered uniform statewide guidance designed "[t]o promote consistency across the 67 counties" by standardizing the steps each county board of elections would follow to process returned mail ballots.[9]  As the Sixth Circuit explained in rejecting a similar challenge to Ohio counties' differing implementation of statewide guidance concerning mail ballots, "[a]rguable differences in how election boards apply uniform statewide standards to the innumerable permutations of ballot irregularities, although perhaps unfortunate, are to be expected, just as judges in sentencing-guidelines cases apply uniform standards with arguably different results." *Ne. Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 636 (6th Cir. 2016) ("*NEOCH*").

---

[9] *See* Penn. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-In Ballot Return Envelopes* (Sept. 11, 2020) ("Sept. 11 Guidance"), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/Examin ation%20of%20Absentee%20and%20Mail-In%20Ballot%20Return%20Envelopes.pdf.  The Sept. 11 Guidance is subject to judicial notice as an official government document, *see* Fed. R. Evid. 201; *In re Flickinger*, No. 1:09-BK-08739MDF, 2010 WL 4923933, at *2 (Bankr. M.D. Pa. Nov. 24, 2010), and can be considered because it is cited at length in the complaint and forms part of the basis for Plaintiffs' allegations.  Compl. ¶¶ 94-95.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

As Judge Ranjan recognized, "many courts … have recognized that counties may, consistent with equal protection, employ entirely different election procedures and voting systems within a single state." *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *44 (collecting cases). Such "[d]istrict-to-district flexibility" is a reality in any statewide election conducted by local officials in areas of the state with different population size and voting patterns, and it "must be dealt with by the State administration rather than a Federal court." *Gustafson v. Illinois State Bd. of Elec.*, No. 06 C 1159, 2007 WL 2892667 at *7 (N.D. Ill., Sept. 30, 2007). Thus, where, as here, local practice varies in a manner that merely affords greater protection to voters under their jurisdiction without burdening the voting rights of voters in other areas, there is no equal protection violation. *Short*, 893 F.3d at 677 (rejecting challenge to a California law allowing only some counties to automatically mail ballots to voters because law only "makes it *easier* for some voters to cast their ballots by mail, something that California voters already can do"). Pennsylvania pre-canvassed and canvassed mail ballots according to consistent state-wide standards, and inconsistences in county implementation of those standards do not raise equal protection concerns.

**C.    Because Plaintiffs Have Not Identified Any Conduct That Violates The Election Code, Their Elections And Electors Clause Claims Fail As A Matter Of Law**

On the merits, Plaintiffs' Elections and Electors Clause claims similarly fail because they cannot identify any provision of the Election Code that prohibits the practices or procedures that form the bases of these causes of action—i.e., the location of poll watchers in ballot processing facilities and the notification procedures for mail voters.  Compl. ¶¶ 193-202, 214-223, 234-243.

First, Plaintiffs complain that they were denied sufficient access to observe the canvassing process, but fail to point to any Pennsylvania statute or regulation that entitles them to be close to "the action."  Compl. ¶ 5.  Under Pennsylvania law, "watchers shall be permitted to be present when the envelopes containing official mail ballots are opened and when such ballots are counted and recorded." 25 P.S § 3146.8(b); *see id.* §§ 2650(a)-(b) (permitting poll watchers to be present at "any computation and canvassing of returns of any … election"), 3146.8(g)(1.1) (allowing one authorized representative of each candidate and political party in an election to be present when mail ballots are pre-canvassed).  No additional permissions are given.  Nothing in sections 3146.8(b) or 3146.8(g)(1.1)-(2)—or any other Pennsylvania law—requires that watchers or representatives be given access to read individual ballots.  *See* Compl. ¶ 186.  The denial of front-row access, *id.* ¶ 146, was not a departure from the General Assembly's regulation of

elections.  Rather, Plaintiffs attempted to read into the Election Code a right that, to their dismay, does not exist.  *Id.*

Second, contrary to Plaintiffs' claims that the County Defendants unlawfully inspected ballots prior to Election Day, *see id.* ¶¶ 132-134, no provision of the Election Code prevents County Boards of Elections from handling or reviewing ballot envelopes before pre-canvassing.[10]  Indeed, county boards of elections *must* examine and catalogue mail ballots prior to Election Day to comply with the Election Code's requirement that mail ballots be catalogued in a "district register" to reflect whether an elector in fact "voted" a mail ballot.  *See* 25 P.S. § 3150.16(b)(1) ("The district register at each polling place shall clearly identify electors who have received and voted mail-in ballots … .").  The purpose of this requirement, of course, is to ensure that electors who cast valid mail ballots *marked for counting* do not cast another ballot at the polling place on Election Day.  *See id.* That is not pre-canvassing, *see* Compl. ¶ 6, as that term is defined in the Election Code.  Pre-canvassing consists of "the inspection *and opening* of all envelopes containing official absentee ballots or mail-in ballots, *the removal* of such ballots from the envelopes and *the counting*, *computing and tallying* of the votes reflected

---

[10] Indeed, two months before the election, the Secretary issued guidance instructing that "[c]ounty boards of elections should have processes in place to record the date, return method, and ballot status for all voted ballots received" and that those returned ballots must be stored "in a secure location until the ballots may be pre-canvassed or canvassed."  Sept. 11 Guidance.

on the ballots." 25 P.S. § 2602(q.1) (emphasis added).  Plaintiffs do not allege that counties opened envelopes, removed ballots from envelopes, or began to count and tally those ballots before Election Day.

Nor does the Election Code prohibit counties from notifying voters that their mail ballots are defective and have been invalidated.  While Plaintiffs suggest that *Pennsylvania Democratic Party v. Boockvar* prohibited counties from doing so, that is flatly incorrect.  The Pennsylvania Supreme Court instead held that "[b]oards are not *required* to implement a 'notice and opportunity to cure' procedure for mail-in and absentee ballots that voters have filled out incompletely or incorrectly." 2020 WL 5554644, at *19-20 (emphasis added)).  Moreover, that case addressed whether counties were required to implement a notice and cure procedure for ballots that had been rejected *after the election*.  The Court nowhere suggested that boards are *prohibited* from protecting the franchise by notifying would-be voters that their vote stands in danger of being disallowed.

Because there was no departure from the requirements of the Election Code—let alone a "significant" one—there can be no violation of the Elections or Electors Clause.  *Bush v. Gore*, 531 U.S. 98, 112-113 (2000) (Rehnquist, C.J., concurring).

**VI.    Plaintiffs' Remedy Is Disproportionate To Their Purported Injury And Would Violate The U.S. Constitution**

Plaintiffs ask for relief that is disproportionate, implausible, and unconstitutional.  Their prayer for relief should be stricken, or, in the alternative, dismissed.

*First*, Plaintiffs' requests for relief are not tailored to the alleged violations. Plaintiffs ask the Court to enjoin certification on a *Commonwealth-wide* basis, or, in the alternative, to enjoin certification of results that include ballots that poll watchers could not observe during the canvass.  Compl. Prayer for Relief at (i)-(ii). A Commonwealth-wide injunction is improper.  It is only in the rarest of circumstances that federal courts have taken such drastic measures to prevent the certification of election results, and only where the evidence establishes that there was a fundamental failure of the election process.  *Stein*, 223 F. Supp. 3d at 438 (collecting cases).  The allegations in the complaint do not give rise to the type of systemic fraud or election worker error that could support such relief.  Because Plaintiffs' gambit to circumvent the will of the Pennsylvania electorate "has no essential or important relationship to the claim for relief," their prayer for relief reflecting this request should be dismissed or, in the alternative, stricken under Rule 12(f) as immaterial.  *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993));

*Genter v. Allstate Property and Cas. Ins. Co.*, No. 11-cv-0709, 2011 WL 2533075, at *5 (W.D. Pa. June 24, 2011).[11]

And Plaintiffs' alternative remedy—enjoining certification of results including ballots that poll watchers could not observe, or that were "improperly" cured—is not a true "alternative":  Once ballots have been processed and removed from their envelopes, there is no way to isolate them.  So to enjoin the certification of results that include such ballots is effectively to enjoin certification of *any* results from those precincts.  The requested relief is "grossly overinclusive," *Gallagher v. New York State Bd. of Elections*, No. 20-5504, 2020 WL 4496849, at *16 (S.D.N.Y. Aug. 3, 2020); *Stein¸* 223 F.Supp.3d at 442 (granting relief that "could well ensure that no Pennsylvania vote counts … would be both outrageous and completely unnecessary"); *Marks*, 19 F.3d at 888 (refusing to grant relief that would determine election based on non-absentee ballots—despite proven fraud in absentee ballots—because "[o]ur primary concern here is … to promote the public's interest in having legislative power exercised only by those to whom it has been legally delegated" and "[t]his interest is not served by arbitrarily ignoring the

---

[11]     *See also Guerrero v. Halliburton Energy Servs., Inc.*, 231 F. Supp. 3d 797, 809 (E.D. Cal. 2017) (dismissing request for injunctive relief instead of granting motion to strike); *Williamsburg Commons Condo. Ass'n v. State Farm Fire and Cas. Co.*, 907 F. Supp. 2d 673, 680 (E.D. Pa. 2012) (granting motion to dismiss requested relief).

absentee vote, a substantial but undetermined portion of which was … legally cast").

*Second*, even if it were possible for Plaintiffs to establish a claim that, in another context, would allow the election results to be nullified, such an order would be grossly inequitable in a presidential election.  The results of the election for President within a state must be determined by December 8, 2020, to benefit from the safe-harbor provision of the federal election code and in any event by December 14, 2020, to ensure that Pennsylvania's electoral votes will be counted. 3 U.S.C. §§ 5, 7; 25 Pa. Stat. § 3192 (electors must meet at noon the day directed by Congress); *see Bush*, 531 U.S. at 110–111.  To meet this task, Pennsylvania law requires the counties to certify their election results by November 23.  25 P.S. § 2642(k).  The Secretary of State then must compute the returns of the election and provide them to the Governor.  25 P.S. § 3166.  After that, consistent with federal law, the Governor certifies the slate of electors by issuing a certificate of election. *Id.*; 3 U.S.C. § 6. This certification process constitutes an outside limit on the ability of this Court to issue relief.  *Bush*, 531 U.S. at 110-111.  To prevent state officials from meeting that deadline could throw the results of this election into chaos, and could gravely undermine public confidence in the conduct of the presidential election and in the rightful winner.

*Finally*, the requested relief would also violate the constitutional rights of Pennsylvania voters.  Even if Plaintiffs' allegations were true (they are not) and there were isolated and sporadic incidents in which the election laws were violated, not by voters but by election workers, this occurrence could not possibly justify widescale disenfranchisement of hundreds of thousands—if not millions—of Pennsylvanians.  Such a remedy—unlike the election irregularities Plaintiffs allege—would place an undue burden on the right to vote.  *See Ne. Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 595, 597-98 (6th Cir. 2012) (holding rejecting ballots invalidly cast due to  poll worker error likely violates due process).  This unconstitutional prayer for relief must be rejected.

## CONCLUSION

For the reasons stated herein, this Court should deny grant Intervenor DNC's motion to dismiss.

Dated: November 12, 2020

Marc E. Elias*
Uzoma Nkwonta*
Lalitha D. Madduri*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
MElias@perkinscoie.com
UNkwonta@perkinscoie.com
LMadduri@perkinscoie.com
JGeise@perkinscoie.com

Respectfully submitted,

/s/ Clifford B. Levine

Clifford B. Levine (PA ID No. 33507)
Robert M. Linn (PA ID No. 44677)
Alex M. Lacey (PA ID No. 313538)
Kyle J. Semroc (PA ID No. 326107)
DENTONS COHEN & GRIGSBY P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Telephone: (412) 297-4998
Clifford.levine@dentons.com
Robert.linn@dentons.com
Alex.lacey@dentons.com
Kyle.semroc@dentons.com

Seth P. Waxman*
Ari Holtzblatt*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Seth.Waxman@wilmerhale.com
Ari.Holtzblatt@wilmerhale.com

*Counsel for Proposed Intervenor*

*\*Motions for Special Admission Pending*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document, memorandum in support, and proposed order were electronically filed on November 12, 2020, via the Court's CM/ECF System, which will send notification of such filing to counsel of record for Plaintiff.

/s/ Clifford B. Levine
Counsel for Proposed Intervenor DNC