**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., et al., | ) ) ) |
| Plaintiffs, | ) ) ) CIVIL ACTION |
| v. | ) ) |
| KATHY BOOCKVAR, et al., | ) ) No. 20-CV-02078 |
| Defendants. | ) ) |

**MOTION TO COMPEL RESPONSE TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES**

## TABLE OF CONTENTS

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 1 |
| III. | CONCLUSION | 4 |

**I.     INTRODUCTION**

The core questions in this case are whether Pennsylvania election officials counted unlawful ballots—in violation of the Electors Clause of the Constitution—and whether their counting process differed substantially in certain counties—in violation of the Equal Protection Clause of the Constitution.  Plaintiffs have alleged, and have evidence supporting their claim, that the answer to both is yes.  But fully demonstrating the *extent* of the constitutional violations—and whether they were sufficient to change the electoral outcome—requires evidence under the exclusive control of Pennsylvania officials.  This information is not confidential, and it is not burdensome to gather.  Defendants' answers are important ahead of the upcoming evidentiary hearing, and delay severely prejudices the Plaintiffs.  In an ordinary case, discovery would come at a later stage and the ordinary time periods in the Federal Rules would apply, but courts have discretion to expedite discovery for emergency relief, and this Court should exercise that discretion here.  Defendants should be compelled to respond to Plaintiffs' four concise, targeted Interrogatories.

**II.     ARGUMENT**

Plaintiffs contend that Defendant Counties counted invalid ballots, which is itself a violation of the Electors Clause and (because other counties did not do so) a violation of the Equal Protection Clause.  Defendants either deny that this occurred or admit it, but believe doing so was permissible.  Resolving the factual question is essential and can be done fairly easily.  District courts have wide discretion in managing discovery, and "courts have routinely granted expedited discovery in cases involving challenges to constitutionality of government action." *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) (citing cases).  Although "the Third Circuit has not yet adapted a clear standard [for expedited discovery] . . . the recent trend among courts in this circuit favors the 'good cause' or reasonableness standard."

1

*Canal St. Films v. Does 1-22*, No. 1:13-CV-0999, 2013 WL 1775063, at *2–3 (M.D. Pa. Apr. 25, 2013). And "[g]ood cause is usually found where the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant." *Id.* (citing cases); *see also Malibu Media LLC v. Doe*, No. 1:15-CV-1129, 2015 WL 3795948, at *2 (M.D. Pa. June 18, 2015) (granting expedited discovery).

Plaintiffs served their First Set of Interrogatories on Defendants on November 11, 2020. Plaintiffs asked for Defendants cooperation and advised them that Plaintiffs would seek relief from this Court if Defendants would not agree to provide responses ahead of the normal Rule 26 deadlines. *See* ECF 89-2 (Ex 9). In substance, the four interrogatories ask the following targeted and crucial questions:

1. **County Defendants**: How many mail-in ballots and absentee ballots were counted and how many were invalidated? How many secrecy ballots were received?

2. **County Defendants**: How many mail-in and absentee ballots lacking a signature, lacking an inner secrecy envelope, or otherwise defective were "cured" by a provisional ballot after you or your agents contacted a voter to inform them of the defect in their ballot?

3. **Secretary**: When did the Secretary of State's office become aware that the County Election Board defendants were, prior to the election, engaged in inspection of mail-in and/or absentee ballots and communicating to voters where such ballots were deemed defective?

4. **Secretary**: Describe how you became aware that the County Election Board defendants were, prior to the election, engaged in inspection of mail-in and/or absentee ballots and communicating to voters where such ballots were deemed defective and all steps you took to ensure that uniform procedures were being followed throughout the State.

Responding to these questions would not be burdensome. The materials required to answer each of these questions is within Defendants' possession. Moreover, the information sought in the first two Interrogatories is public record that should be made readily available under Pennsylvania law. *See* 25 Pa. Stat. Ann. § 3150.17 ("All official mail-in ballots, files,

applications for ballots and envelopes on which the executed declarations appear and all information and lists are designated and declared to be public records and shall be safely kept for a period of two years . . . .").

Getting answers to these questions is critical for demonstrating the Plaintiffs' claims. If Defendants rejected a negligible number of ballots, that presents good reason to believe they counted thousands of defective ballots (whether by simply counting them, or by allowing an opportunity to "cure"). Plaintiffs have no way to directly gather this information. The answers would provide hard numbers supporting Plaintiffs' claims and may shed light on the magnitude and materiality of the violation. For example, if the number of counted mail-in ballots is higher than the number of secrecy envelopes, that would prove that Defendants counted at least that number of invalid votes.

Responses to these Interrogatories before the evidentiary hearing on November 19 would greatly aid this Court in deciding Plaintiffs' Motion for a Preliminary Injunction. It will inform which witnesses Plaintiffs and Defendants alike may seek to call and will greatly focus the issues. Plaintiffs recognize that ordinary litigation timescales would not permit discovery at this early stage, but believe good cause exists to expedite the limited discovery sought here. December 8 is the statutory safe harbor date for appointing state electors. Under 3 U.S.C. § 5, as long as Pennsylvania appoints its electors by that day, its slate "shall be conclusive, and shall govern in the counting of the electoral votes." Unless this Court grants expedited discovery, it will not be possible to resolve the weighty questions presented in this case by that deadline. The result would be that a practice that "violates the United States Constitution and undermines the manner of selecting electors determined by the [Pennsylvania] Legislature" would be certified, which would "directly and irreparably harm[]" Plaintiffs.

3

## III.  CONCLUSION

For the foregoing reasons, the motion to compel should be granted.

Respectfully submitted:

Dated: November 13, 2020

*/s/ Linda A. Kerns*
Linda A. Kerns, Esquire
Law Offices of Linda A. Kerns, LLC
Attorney ID 84495
1420 Locust Street, Suite 200
Philadelphia, PA 19102
T: 215-731-1413
lak@lindakernslaw.com

*Counsel for all Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this 13th day of November, 2020, I filed a copy of the foregoing **BRIEF IN SUPPORT OF PLAINTIFFS' VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** which will serve all parties registered to receive same.

    */s/ Linda A. Kerns*
Linda A. Kerns, Esquire
Law Offices of Linda A. Kerns, LLC
Attorney ID 84495
1420 Locust Street, Suite 200
Philadelphia, PA 19102
T: 215-731-1413
lak@lindakernslaw.com

*Counsel for all Plaintiffs*