## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | : : : | NO. 20-CV-02078-MWB |
| Plaintiffs, | : : | |
| v. | : : | |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | : : : | |
| Defendants. | : : : | |

## REPLY BRIEF IN SUPPORT OF
## MOTION OF ALLEGHENY COUNTY BOARD OF ELECTIONS, CHESTER COUNTY BOARD OF ELECTIONS, MONTGOMERY COUNTY BOARD OF ELECTIONS, AND PHILADELPHIA COUNTY BOARD OF ELECTIONS TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO DISMISS PENDING STATE-COURT RESOLUTION OF STATE-LAW QUESTIONS

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................1

ARGUMENT ..................................................................................................2

I.    The County Boards' Pending Motion to Dismiss Was Not Mooted by Plaintiffs' Deficient Amended Complaint ......................................................3

II.   Plaintiffs Lack Standing ....................................................................6

III.  The Few Remaining Claims in Plaintiffs' Amended Complaint Fail as a Matter of Law .................................................................................11

    A.   The Equal Protection Claim Fails as a Matter of Law .........................11

    B.   Plaintiffs Concede Their Elections and Elector Clause Claims Fail .....13

    C.   Plaintiffs Have Waived Their Opportunity to Oppose Dismissal of Their Equal Protection and Elections and Electors Clause Claims .......14

IV.  In the Alternative, This Court Should Abstain from Deciding the Trump Campaign's Claims and Allow the Pennsylvania Judiciary to Resolve Them ...........................................................................................15

V.   The Court Should Not Alter the Election Rules Created by the General Assembly and Implemented by the Counties .................................................18

CONCLUSION ..............................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Berg v. Obama*,
586 F.3d 234 (3d Cir. 2009) ..............................................................................10

*Bognet v. Boockvar*,
No. 20-215, 2020 WL 6323121 (W.D. Pa. Oct. 28, 2020)..................................7

*Bognet v. Sec'y Comm. of Pa.*,
No. 20-3214, — F.3d —, 2020 WL 6686120 (3d Cir. Nov. 13,
2020) ...........................................................................................................*passim*

*Burdick v. Takushi*,
504 U.S. 428 (1992)..........................................................................................12

*Chez Sez III Corp. v. Twp. of Union*,
945 F.2d 628 (3d Cir. 1991) ......................................................................15, 17

*Common Cause Indiana v. Lawson*,
No. 20-2877, 2020 WL 6255361 (7th Cir. Oct. 23, 2020) ................................19

*Daugherty v. Adams*,
No. 17-368, 2019 WL 7987859 (W.D. Pa. Nov. 15, 2019) ...............................14

*Donald J. Trump for President, Inc. v. Boockvar*,
No. 20-cv-966, 2020 WL 4920952 (W.D. Pa. Aug. 23, 2020) ....................15, 17

*Donald J. Trump for President, Inc. v. Boockvar*,
No. 20-cv-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ................8, 12, 13

*Jordan v. City of Phila.*,
66 F. Supp. 2d 638 (E.D. Pa. 1999) ....................................................................5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................................8

*Mi Familia Vota v. Abbott*,
No. 20-50793, 2020 WL 6058290 (5th Cir. Oct. 14, 2020) ..............................20

*Pa. Voters Alliance v. Centre Cnty.*,
No. 20-cv-1761, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020)...........................9

*Pettaway v. Nat'l Recovery Sols., LLC*,
955 F.3d 299 (2d Cir. 2020) ................................................................5

*Planned Parenthood of Cent. N.J. v. Farmer*,
220 F.3d 127 (3d Cir. 2000) ..............................................................17

*Purcell v. Gonzalez*,
549 U.S. 1 (2006)......................................................................... 19-20

*R.R. Comm. of Tex. v. Pullman Co.*,
312 U.S. 496 (1941)...................................................................... 15-18

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
140 S. Ct. 1205 (2020)................................................................. 19-20

*Stein v. Cortes*,
223 F. Supp. 3d 423 (E.D. Pa. 2016)....................................................8

*Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*,
939 F. Supp. 365 (E.D. Pa. 1996)........................................................5

*Tex. Voters All. v. Dallas Cnty.*,
No. 20-cv-775, 2020 WL 6146248 (E.D. Tex. Oct. 20, 2020) ........................20

*Vorobey v. Cleveland Bros. Equip. Co., Inc.*,to
No. 18-0865, 2018 WL 6436717 (M.D. Pa. Dec. 7, 2018) ................................14

*Voting Integrity Project, Inc. v. Bomer*,
199 F.3d 773 (5th Cir. 2000) ..........................................................11

**Other Authorities**

*Federal Practice and Procedure* § 1476, n.4 (3d ed. 2020 update) ..................... 4-5

Pennsylvania, Department of State, 2020 Presidential Election,
*available at*
https://www.electionreturns.pa.gov/General/CountyResults?county
Name=Philadelphia&ElectionID=undefined&ElectionType=G&Is
Active=undefined..................................................................................7

## INTRODUCTION

The Trump Campaign has now admitted that whole swaths of the Complaint are meritless; has struck entirely its fraud, ballot observer, and due process claims; and has diluted its already-unsustainable equal protection claim to a point where it is not possible to discern what harm the Trump Campaign allegedly suffered and of what conduct they even complain. The amendment of the Complaint thus does not moot the motions to dismiss. Rather, it confirms that the motions are meritorious and that the Amended Complaint should be dismissed with prejudice.

Plaintiffs now concede they have not identified any evidence to support their claims. They no longer allege that they have amassed evidence showing that "Defendants have been and are blatantly violating the protections and procedures . . . vitally necessary to ensure that the votes of the citizens of Pennsylvania are not illegally diluted by invalid ballots and that the election is free and fair." *Compare* Compl. ¶ 2, *with* Am. Compl. ¶ 2 (ECF No. 125-1, at 2). Plaintiffs have *removed all* allegations of fraud, *all* claims related to the purported denial of Republican election observers' access, and *all* claims that the procedures governing this election were so fundamentally flawed that they violated due process. They also have added no new, plausible allegations that could possibly sustain their extraordinary request to enjoin Pennsylvania's certification of the Presidential election.

Meanwhile, nothing in the "Amended" Complaint establishes the Trump Campaign or the two individual voters have standing to raise equal protection violations or to enjoin certification of the statewide Presidential election. They clearly do not. And their increasingly vague and unsubstantiated allegations of ill-defined differences in canvassing procedures among Pennsylvania counties fail to state a claim under well-established equal protection standards, as most recently confirmed by the Third Circuit in *Bognet v. Secretary Commonwealth of Pennsylvania*, No. 20-3214, — F.3d —, 2020 WL 6686120, at *1 (3d Cir. Nov. 13, 2020) ("*Bognet*"); *see also Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-966, 2020 WL 5997680, at *38 (W.D. Pa. Oct. 10, 2020) (explaining that equal protection "does not mean all forms of differential treatment are forbidden" and finding that the Trump Campaign's allegations of differences among counties do not support an equal protection claim).

The Complaint, as amended, should be dismissed with prejudice.

## ARGUMENT

In their Motion to Dismiss, the Allegheny, Chester, Philadelphia, and Montgomery County Boards of Election (the "County Boards") demonstrated that: (i) Plaintiffs lack standing to assert their claims, (ii) Plaintiffs' constitutional claims fail as a matter of law, (iii) abstention is warranted, and (iv) the remedy sought by Plaintiffs is untimely and otherwise unconstitutional. *See* County Boards' Motion to

Dismiss at 17-45, ECF No. 94 (hereinafter the "Motion to Dismiss" or "Boards' Mot."); *see also* ECF Nos. 86, 92, 93, 95-105. In an apparent attempt to avoid these arguments and delay the inevitable, Plaintiffs have filed an Amended Complaint and argued that the Motion to Dismiss is moot. Implicitly recognizing that the Amended Complaint does nothing to cure the identified defects in the initial Complaint, Plaintiffs nonetheless filed an opposition brief to the Motion to Dismiss. The opposition brief does not even address the merits of the arguments raised in Defendants' Motions to Dismiss. Because the Amended Complaint shares all the same flaws as the original Complaint, this action should be dismissed with prejudice.[1]

## I.    The County Boards' Pending Motion to Dismiss Was Not Mooted by Plaintiffs' Deficient Amended Complaint

Plaintiffs' initial Complaint asserted meritless claims that this Court should dismiss for lack of jurisdiction. *See* Boards' Mot. at 17-33. Rather than addressing the infirmity of those claims, Plaintiffs have attempted to disrupt the briefing schedule and moot *all* pending motions by filing an Amended Complaint. Incredibly, Plaintiffs' Amended Complaint *abandons five of their seven claims*, including all claims asserting some sort of ill-defined election fraud or systemic irregularities in

---

[1] To the extent this Court credits Plaintiffs' mistaken assertion that the County Boards' pending Motion to Dismiss is moot, the Counties have joined the Commonwealth's Motion to Dismiss the Amended Complaint.

Pennsylvania's election. And while the Amended Complaint strikes allegations and narrows Plaintiffs' theories of liability, it adds no new plausible allegations or claims. Thus, the deficiencies raised in the County Boards' Motion to Dismiss all remain and that Motion is not moot. This Court should evaluate the Motion considering the more limited allegations in the Amended Complaint, grant the Motion, and dismiss the Amended Complaint with prejudice.

As a preliminary matter, the Amended Complaint simply re-asserts two claims that are materially identical to the first two counts of the initial Complaint: a vaguely defined equal protection claim (Count I), and a claim for violations of the Electors and Elections Clauses (Count II). Each of those claims was the subject of the Motion to Dismiss and remains deficient for all the same reasons that have already been briefed: (i) Plaintiffs lack standing to assert them, (ii) the claims are untimely, and (iii) the claims are based on non-cognizable (and non-sensical) legal theories. Plaintiffs have not cured any of these deficiencies. Instead, they simply changed the caption of the pleading from "Complaint" to "Amended Complaint," *removed* a significant number of substantive allegations and claims (including any assertion of fraud), and then reasserted two of those same claims with *less* factual support. That is not how the amendment process is designed to work. "To hold otherwise would be to exalt form over substance." *See* 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476, n.4 (3d ed. 2020

update). Because the Amended Complaint remains defective for all the reasons already briefed, this Court should reject Plaintiffs' formalistic attempt to use the amendment process to delay these proceedings.

A long line of authority holds that defendants "should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending" and that "the court simply may consider the motion as being addressed to the amended pleading." *Id.* (collecting cases); *see, e.g.*, *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020) (rejecting Plaintiffs' overly formalistic view that "a pending motion to dismiss is automatically rendered moot when a complaint is amended" (citing cases)); *Jordan v. City of Phila.*, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999) ("Since Counts IV through XIII of the amended complaint suffer from the same deficiencies that are addressed in defendants' motion to dismiss, the court will allow the motion to dismiss these counts to be considered as addressing the amended complaints."); *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 367, n.3 (E.D. Pa. 1996) (similar). "This is a sound approach that promotes judicial economy by obviating the need for multiple rounds of briefing addressing complaints that are legally insufficient." *Pettaway*, 955 F.3d at 303.

Applying the Motion to Dismiss to the deficient claims in the Amended Complaint is particularly warranted here. Plaintiffs rushed into court for an

emergency injunction, received a briefing schedule designed to address promptly their "emergency" claims on the merits, were immediately confronted with meritorious motions to dismiss, and now seek to moot those motions and reset the briefing schedule by filing a deficient amended pleading. This last-ditch attempt to moot those motions should be seen for what it is: a futile attempt to avoid defending the indefensible, *i.e.*, the merits of this lawsuit.[2] Plaintiffs should not be permitted to use procedural gamesmanship to alter the timing of the emergency proceedings— that they themselves brought—by filing an Amended Complaint without addressing the countless defects in the initial Complaint. Accordingly, this Court should apply the pending Motion to Dismiss to the deficient claims in the Amended Complaint and dismiss them with prejudice.

## II.    Plaintiffs Lack Standing

Plaintiffs admit that, "after the Third Circuit's recent ruling" in *Bognet*, "this Court *cannot* find that [Plaintiffs] have standing to raise their Electors Clause claim." Pls.' Opp'n Br. at 2 n.1, ECF No. 126 (emphasis added). Plaintiffs are correct that

---

[2] Tellingly, Plaintiffs contend their Amended Complaint moots the pending Motions to Dismiss, but they have not refiled or withdrawn their pending Preliminary Injunction Motion, which was based on the allegations in the initial Complaint and on claims for violations of the Electors and Elections Clauses (Boards' Mot. at 9-11, ECF No. 89), which they now concede they lack standing to assert. *See* ECF No. 124 at 1. Plaintiffs cannot have it both ways. By opposing the Motion on mootness grounds, Plaintiffs have effectively conceded that their Preliminary Injunction Motion is moot and should be dismissed. Indeed, their Motion is based largely on claims that were omitted from the Amended Complaint.

under *Bognet* they do not have standing to bring an Electors Clause claim—but fail to recognize that *Bognet* also holds they lack standing to assert their sole remaining claim for alleged equal protection violations. 2020 WL 6686120, at *9-17.

### 1.   The Trump Campaign Lacks Standing

The Trump Campaign asserts they have "competitive standing" because there is a "cure disparity" between Democratic-leaning and Republican-leaning counties that "will lead to the potential loss of an election." Pls.' Opp'n Br. at 5 (citation omitted).[3] As discussed in the County Boards' Motion, the Trump Campaign's purported injury is wholly hypothetical and speculative and cannot constitute an injury in fact for standing purposes. *See* Boards' Mot. at 17-21. Plaintiffs' Amended Complaint contains *no* allegations that the cure disparity affects approximately 69,000 ballots—the number of votes by which Plaintiff's candidate trails in Pennsylvania.[4] The Trump Campaign does not allege such an injury because it cannot do so in good faith. This failure is fatal to its standing argument; the Trump Campaign was required to allege an injury sufficient to make a difference in the election. Pls.' Opp'n Br. at 5; *Bognet v. Boockvar*, No. 20-215, 2020 WL 6323121,

---

[3] The Trump Campaign cannot establish standing through its right to vote being impeded—it did not vote in Pennsylvania.

[4] Pennsylvania, Department of State, 2020 Presidential Election, *available at* https://www.electionreturns.pa.gov/General/CountyResults?countyName=Philadel phia&ElectionID=undefined&ElectionType=G&IsActive=undefined.

at *3 (W.D. Pa. Oct. 28, 2020); *see also Stein v. Cortes*, 223 F. Supp. 3d 423, 432 (E.D. Pa. 2016).

The Trump Campaign also fails to establish the causation element of standing. Even if the Trump Campaign were injured by some small number of votes not being registered for Trump, such injury is not traceable to Defendants' actions. Rather, even in Counties allegedly permitting curing, whether a ballot is cured does not depend on the County Board of Elections, but, rather, the individual voter. That voter must make time and effort to submit a cured mail-in ballot—and many may not do so. "[S]peculation about the decisions of independent actors" cannot provide the basis for standing. *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *2-3 (internal quotation marks omitted).

Lastly, the Trump Campaign's alleged injury—the loss of the election— cannot be redressed. As discussed above, the Trump Campaign has failed to plausibly allege that its candidate would close his 69,000-vote deficit but for the alleged cure disparity. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 (1992) (holding that redressability is lacking where "it is entirely conjectural whether the nonagency activity that [allegedly] affects respondents will be altered . . . by the agency activity they seek to achieve")  The Trump Campaign cannot allege that the overall Pennsylvania election results would be different if the alleged "cure disparity" was remedied, and thus cannot redress their claim.

For these reasons, the Trump Campaign does not have standing.

### 2.    The Individual Voters Do Not Have Standing

Likewise, Mr. Roberts and Mr. Henry lack standing. The County Boards did not deprive Mr. Roberts or Mr. Henry of their right to vote; rather, their own failure to follow directions with respect to completing their mail-in ballots resulted in their votes not counting.

Mr. Henry alleges—for the first time in the Amended Complaint—that his mail-in ballot was rejected because it was not enclosed in a secrecy envelope.[5] Am. Compl. ¶ 15. Across the Commonwealth, the law is consistent: mail-in ballots without secrecy envelopes are not counted. If there is any injury here, it is generalized and cannot support standing. *See Pa. Voters Alliance v. Centre Cnty.*, No. 20-cv-1761, 2020 WL 6158309, at *3-7 (M.D. Pa. Oct. 21, 2020); *see also Bognet*, 2020 WL 6686120 at *14 (holding that every time an elections board deviates in counting ballots does not rise to an particularized injury in fact).

Further, neither Mr. Henry nor Mr. Roberts alleges a concrete injury because they fail to allege that they would have cured their defective ballots had they had the opportunity to do so. *Bognet*, 2020 WL 6686120, at *6 (holding that to bring suit you "must be injured in a way that concretely impacts your own protected legal

---

[5] Plaintiffs, in their original Complaint, admitted that such ballots should not be counted and even requested an emergency order prohibiting the certification of election results that included such ballots. Compl. ¶ 15.

interest."). We are left to speculate as to what actions Mr. Henry and Mr. Roberts—or any other voter—would have taken had they been given the opportunity to cure. When it is the voter's *choice* to become part of the "preferred class," as it is here, *Bognet* counsels that no standing exists for an equal protection claim. *Bognet*, 2020 WL 6686120, at *15. These speculations and hypotheticals concerning whether a voter would have cured his mail-in ballot cannot establish the requisite injury in fact required to maintain standing. *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009).

With respect to causation, Mr. Roberts was not notified that he was permitted to cure his ballot, despite living in Fayette County, which is not one of the Counties the Amended Complaint alleges as prohibiting cure. *See* Am. Compl. ¶¶ 16, 130. Plaintiffs' allegations undermine their simplistic and inaccurate characterization of a voter's "place of residence" as determinative of whether mail-in ballots were cured. The facts alleged regarding Mr. Roberts fail to demonstrate this. This is fatal to Mr. Roberts and Mr. Henry's standing under *Bognet*. *See Bognet*, at *14 (holding that "Voter Plaintiffs, who bear the burden to show standing, have presented no instance in which an individual voter had Article III standing to claim an equal protection harm to his or her vote from the existence of an allegedly illegal vote cast by someone else in the same election.").

Lastly, Mr. Henry and Mr. Roberts request that the Court prohibit the certification of the 2020 election results because they did not properly complete their

mail-in ballots. The appropriate redressability for two men's failure to follow mail-in ballot instructions cannot be to deny the certification of 6.8 million Pennsylvanians who properly voted. Mr. Roberts and Mr. Henry lacked standing.

## III. The Few Remaining Claims in Plaintiffs' Amended Complaint Fail as a Matter of Law

Plaintiffs' Amended Complaint contains two claims: (i) an equal protection claim, and (ii) a claim for violations of the Elections and Electors Clauses of the U.S. Constitution. The County Boards explained at length in their Motion to Dismiss that even if Plaintiffs had standing (and they do not), those claims fail as a matter of law.

### A. The Equal Protection Claim Fails as a Matter of Law

The equal protection claim in Plaintiffs' Amended Complaint fails as a matter of law. Am. Compl. ¶¶ 150-60; *see* Boards' Mot. at 24-35. If anything, it is more deficient than the equal protection claims in the initial Complaint. The sole remaining equal protection claim (Count I) is based on the vague and unsubstantiated premise that the mail-in and absentee ballots of voters in some counties have been treated differently than the ballots of voters in other counties. That does not suffice to establish a claim of denial of equal protection under law. To hold otherwise would suggest that the longstanding practice of every state violates federal law. *See Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 776 (5th Cir. 2000).

At the outset, there are no well-pled facts in the Amended (or initial) Complaint that support this theory. Plaintiffs' claim still rests on the assertion that

certain County Boards enforced the Election Code in a manner that differs from the approach used by other County Boards. But that is not a constitutional injury, as confirmed last week by the Third Circuit in *Bognet*, which eliminates any lingering doubt about the viability of Plaintiffs' claims. 2020 WL 6686120, at *1. There, the Court held that "[v]iolation of state election laws by state officials or other unidentified third parties is not always amenable to a federal constitutional claim." *Id.* at *11.

Near identical equal protection claims were asserted by the Trump Campaign and rejected less than two months ago. *Donald J. Trump for President, Inc*, 2020 WL 5997680, at *38. As Judge Ranjan explained, "'[c]ommon sense, as well as constitutional law, compels the conclusion' that states must be free to engage in 'substantial regulation of elections'" to ensure "'order, rather than chaos'" in the administration of an election. *Id*. (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). Thus, "while the Constitution demands equal protection, that does not mean all forms of differential treatment are forbidden." *Id.* Plaintiffs thus cannot state an equal protection claim by complaining, as they do here, that "the state is *not* imposing a restriction on *someone else's* right to vote." *Id.* at *44. Although Judge Ranjan persuasively explained that this so-called "inverted theory of vote dilution" is meritless and lacks any constitutional basis, *id.*, Plaintiffs' continue to rely on it here. This Court should reject this theory again here. The individual Plaintiffs'

complaint that *other* counties—which are not parties to this case—denied them the right to vote is not a viable theory of equal protection.

The Trump Campaign's replacement of references to "vote dilution" and violations of the "Election Code" with the term "illegal" does not cure these deficiencies. Although "illegal" avoids explicit reference to state law, the Trump Campaign's equal protection claim remains premised on purported violations of state law and on a theory of vote dilution that has no basis in fact or law. The requirements of the Election Code and the Secretary of State's Guidance are facially neutral and applicable to all counties equally. *See Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *38.

Plaintiffs' Amended Complaint falls far short of pleading a cognizable claim for equal protection violations. There is no constitutional basis for Plaintiffs' demand that *each* county administer its election in an identical way. That is not what the law requires. Plaintiffs' equal protection claim should be dismissed.

### B.     Plaintiffs Concede Their Elections and Elector Clause Claims Fail

As noted above, Plaintiffs "acknowledge that—because the General Assembly is not a party here—*Bognet* forecloses their allegations that they have standing to pursue their Elections and Electors Clause claims." Pls' Resp. to Notice of Supp. Auth. at 1, ECF No. 124. Yet they have not excised these claims from their Amended Complaint. That is, Plaintiffs continue to invite this Court to commit

reversible error by granting relief under the Elections or Electors Clause. The Court should promptly refuse this invitation and dismiss Plaintiffs' Elections and Elector Clause claim with prejudice.

### C.   Plaintiffs Have Waived Their Opportunity to Oppose Dismissal of Their Equal Protection and Elections and Electors Clause Claims

Plaintiffs have yet to substantively oppose any of the arguments raised above despite having the opportunity to do so in their response to the pending Motion to Dismiss, their Motion for Preliminary Injunction, and their Amended Complaint. Plaintiffs have therefore waived their right to oppose dismissal on the case-dispositive merits issues raised above. *See Vorobey v. Clevland Bros. Equip. Co., Inc.*, No. 18-0865, 2018 WL 6436717, at *3 (M.D. Pa. Dec. 7, 2018) (Brann, J.) ("Plaintiffs [] fail to set forth how they oppose this argument in [the] motion. Because 'issues not briefed are deemed waived,' I will grant [the] motion to dismiss[.]"); *Daugherty v. Adams*, No. 17-cv-368, 2019 WL 7987859, at *13 (W.D. Pa. Nov. 15, 2019) (collecting cases) ("Plaintiffs had an opportunity to respond to the substance of the arguments briefed by Defendants, to the extent Plaintiffs have failed to do so, the Court should deem those arguments waived."). Accordingly, dismissal is warranted.

The same basis for dismissal applies to Plaintiffs' extraordinary request to enjoin certification of Pennsylvania's election results. As explained in the County Boards' Motion to Dismiss, such a request for relief would disenfranchise 6.8

14

million Pennsylvania voters in violation of the U.S. Constitution. Boards' Mot. at 40-45. Plaintiffs have offered no response to this argument in their Opposition Brief, perhaps because their request to disenfranchise all voters through a federal court injunction is not only unconstitutional, but also truly indefensible. Yet Plaintiffs seek the same unlawful injunction in their Amended Complaint. Am. Compl., Prayer for Relief ¶ i, ECF No. 125, at 84. Plaintiffs' failure to address this issue in their opposition brief alone warrants dismissing the request for an injunction in their Amended Complaint.

## IV. In the Alternative, This Court Should Abstain from Deciding the Trump Campaign's Claims and Allow the Pennsylvania Courts to Resolve Them

In the alternative, this Court should abstain from entertaining this action in light of pending state-court litigation on the issues belatedly raised by Plaintiffs here. *See* Boards' Mot. at 9-13 (outlining overlapping state and federal litigation). Specifically, abstention is appropriate under the *Pullman* doctrine. *See R.R. Comm. of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). *Pullman* abstention applies here because "the federal constitutional question [posed in this litigation] might be eliminated by securing a Pennsylvania court's determination of an unresolved question of its local law." *Id.*; *see also Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-966, 2020 WL 4920952, at *15 (W.D. Pa. Aug. 23, 2020) ("[A]nalysis of Plaintiffs' claim would begin with an interpretation of the election-code provisions

15

that Plaintiffs allege Defendants have violated. But it could also end there" in light of the need to abstain from interpreting unique questions of state law.). Plaintiffs' attempts to suggest that *Pullman* does not apply are disingenuous, at best.

At the outset, Plaintiffs' assert that *Pullman* should not apply because "no issues of state law underlie Plaintiffs' equal protection claim." Pls.' Opp'n Br. at 8. This is not true. Plaintiffs' claims are predicated on alleged violations of the Pennsylvania Election Code. *See, e.g.*, Pls' Br. in Supp. of Prelim. Inj. at 3, ECF No. 89 ("[V]iolations of the Election Code . . . render the outcome of the Pennsylvania election too uncertain to be certified."); Compl. ¶ 6 ("Democratic-heavy counties violated the mandates of the Election Code . . . advantaging voters in [those] counties . . . ."); Am. Compl. ¶ 6 ("Democratic-heavy counties illegally advantaged voters in [those] counties . . . ."), ECF No. 125-1, at 3. Plaintiffs' suggestion to the contrary is meritless.[6]

Plaintiffs also claim that *Pullman* should not apply because, to the extent questions of state law are implicated by this action, those issues have already been

---

[6] Plaintiffs have taken great strides to scrub references to the Election Code from their Amended Complaint. Nevertheless, their claims remain a frontal attack on officials' interpretations of the Pennsylvania Election Code. *See, e.g.*, Am. Compl. ¶ 10 ("Pennsylvania has created an illegal voting system for the 2020 General Election."); *id.* at ¶¶ 15-16 (identifying provisions of the Election Code permitting Plaintiffs Henry and Roberts the ability to vote in Pennsylvania); *id.* at ¶ 17 (identifying Defendant Secretary Boockvar's statutory power related to election); *id.* at ¶ 18 (identifying Counties' statutory authority under the Election Code).

decided by the Pennsylvania Supreme Court. Pls.' Opp'n Br. at 8-9. This too is false. As one federal court recently opined, "no state court has interpreted" many of the Election Code provisions now underlying Plaintiffs' federal constitutional claims. *Donald J. Trump for President, Inc.*, 2020 WL 4920952, at *10; *see also Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (counseling abstention "where an unconstrued state statute is susceptible of a construction by the *state judiciary*" (emphasis added and internal quotation marks omitted)). This means that the interpretation of the Pennsylvania Election Code provisions remains uncertain and abstention is warranted. *See Chez Sez III Corp.*, 945 F.2d at 632 ("For *Pullman* to apply, the state or local law underlying the federal constitutional issue must be uncertain.").

Finally, Plaintiffs posit that Pennsylvania does not have an "important state policy interest in applying" its ballot counting rules. Pls.' Opp'n Br. at 9. On theme, Plaintiffs make this claim without reference to any authority. *Id.* This is likely because there can be no doubt that "a federal-court constitutional decision, premised on an erroneous interpretation of ambiguous state law . . . amid a global pandemic, would risk electoral chaos and undermine the integrity of the democratic process in the minds of voters." *Donald J. Trump for President, Inc.*, 2020 WL 4920952 at *17. Undermining the democratic process in this way would be detrimental to

Pennsylvania's policy interests. *de la Fuente v. Cortes*, 207 F. Supp. 3d 441, 450 (M.D. Pa. 2016) (collecting cases).

Plaintiffs, moreover, do not substantively oppose the County Boards' argument that principles of federalism and federal law require deference to ongoing state court processes or that this Court should abstain under *Younger* to allow state court proceedings (where the Trump Campaign or its affiliates are parties) to proceed unencumbered. Plaintiffs have waived their right to oppose dismissal on either basis. *See supra* Section III(C).

While Plaintiffs feign outrage over Defendants' request that this Court abstain from hearing this action, they put forward no good faith argument in opposition. It is not the role of federal courts to decide novel and important issues of state law amid an election. Accordingly, this Court should abstain from entertaining this action under *Pullman*.

## V.     The Court Should Not Alter the Election Rules Created by the General Assembly and Implemented by the Counties

Even if Plaintiffs were able to articulate some basis for the relief requested (and they have not), this Court should not alter the General Assembly and Counties' election rules while votes are still being tallied and the election has yet to be certified due to the *Purcell* doctrine. The *Purcell* doctrine "counsel[s] against injunctive relief" in the midst of an election in light of "[u]nique and important equitable considerations, including voters' reliance on the rules in place when they made their

18

plans to vote and chose how to cast their ballots." *Bognet*, 2020 WL 6686120, at *17; *see also Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Here, Plaintiffs request that this Court disenfranchise 6.8 million Pennsylvania voters by enjoining the certification of the general election. This request plainly runs afoul of *Purcell* and should be denied. *Purcell*, 549 U.S. 1 at 4.

Plaintiffs disagree. They suggest that *Purcell* should not bar their untimely claim because *Purcell* "has no bearing on post-election Equal Protection Clause claims." Pls.' Opp'n Br. at 11 n.6. That is inaccurate. While it is true that the doctrine *generally* manifests when courts are called upon to modify election rules at the eleventh hour, *Purcell*, 549 U.S. at 5; *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."); *Common Cause Indiana v. Lawson*, No. 20-2877, 2020 WL 6255361, at *4 (7th Cir. Oct. 23, 2020) (explaining that "federal courts should not alter election rules close to an election"), the Supreme Court has extended this principle to limit the post-election conduct of federal courts to "avoid . . . judicially created confusion" even after the election, *Republican Nat'l Comm.*, 140 S. Ct. at 1207 (staying district court's order that required post-election ballot collection). And lower courts have followed suit, extending *Purcell* to cases where, like here, an election is ongoing and votes remain to be counted. *See*, *e.g.*, *Mi Familia Vota v.*

19

*Abbott*, 977 F.3d 461, 471 (5th Cir. 2020) (refusing election-related injunctive relief because "it would be inappropriate for the district court to grant much of the requested relief with the election ongoing"); *Tex. Voters All. v. Dallas Cnty.*, No. 20-cv-775, 2020 WL 6146248, at *20-21 (E.D. Tex. Oct. 20, 2020) ("An injunction at this late stage, when millions of votes have already been cast, would send the Counties scrambling to adjust while voting occurs.").

Nonetheless, as Plaintiffs' argument highlights, the Trump Campaign asks this Court to go even further than the classic *Purcell* case. Rather than interfere with election rules shortly before it begins—which may hinder the public's ability to vote—they instead advocate to invalidate millions of ballots cast by voters relying on the election law created by the General Assembly. This is wholly improper. As the Third Circuit recently explained, even if the Court "assume[s] for the sake of argument that aspects of the now-prevailing regime in Pennsylvania are unlawful, . . . given the timing of Plaintiffs' request for injunctive relief, the electoral calendar [is] such that following it 'one last time' [is] better" than the alternative proposed by Plaintiffs—disenfranchising almost seven million Pennsylvania voters who lawfully cast ballots in the general election. *Bognet*, 2020 WL 6686120, at *17.

## CONCLUSION

Accordingly, this action seeking to disregard the lawful votes cast by all Pennsylvania voters should be dismissed with prejudice.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: November 16, 2020

By:  */s/ Mark A. Aronchick*
Mark A. Aronchick (I.D. No. 20261)
Michele D. Hangley (I.D. No. 82779)
Robert A. Wiygul (I.D. No. 310760)
John G. Coit (I.D. No. 324409)
Christina C. Matthias (I.D. No. 326864)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 496-7050
Email: maronchick@hangley.com

*Counsel for Allegheny County Board of
Elections, Chester County Board of
Elections, Montgomery County Board of
Elections, and Philadelphia County
Board of Elections*

Virginia Scott (I.D. No. 61647)
Allegheny County Law Department
445 Fort Pitt Commons, Suite 300
Pittsburgh, PA 15219
412-350-1120

*Counsel for Allegheny County Board
of Elections*

Joshua M. Stein (I.D. No. 90473)*
Montgomery County Solicitor
Montgomery County Solicitor's
Office
One Montgomery Plaza, Suite 800
P.O. Box 311
Norristown, PA  19404-0311
(610) 278-3033

*Counsel for Montgomery County
Board of Elections*

CITY OF PHILADELPHIA LAW
DEPT.
Marcel S. Pratt, City Solicitor
(I.D. No. 307483)*
Benjamin H. Field, Divisional Deputy
City Solicitor* (I.D. No. 204569)
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595
(215) 683-5444

*Counsel for Philadelphia County Board
of Elections*

*Motions for Special Admission
Forthcoming

21