**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.,* | ) ) ) | Civil Action |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.: 4:20-cv-02078 |
| Kathy Boockvar; *et al,* | ) ) | |
| Defendants. | ) | Judge Matthew W. Brann |

**BRIEF IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED
COMPLAINT AND JOINDER OF MOTION TO DISMISS THE
COMPLAINT OF NORTHAMPTON COUNTY BOARD OF ELECTIONS
OR, IN THE ALTERNATIVE, DISMISS PENDING STATE-COURT
RESOLUTION OF STATE-LAW QUESTIONS**

Lead Plaintiff Donald J. Trump for President, Inc. is the principal committee for the reelection campaign of Donald J. Trump and its candidate Donald J. Trump. The Complaint also names as Plaintiffs two individuals whom are purported to be qualified electors and registered voters – one from Lancaster County and one from Fayette County. Northampton County Board of Elections ("Movant") is the governmental office charged with running and operating general and primary elections in the County of Northampton, Pennsylvania.

On November 15, 2020, the Plaintiffs filed a First Amended Complaint that removes their argument related to watchers and focuses on a purported devaluation in the votes of certain individuals. This purported devaluation hinges on the interpretation of state law. They have added allegations related to their own County

1

Election Boards refusing to provide notice to voters who had their ballot spoiled and affording them the opportunity to vote provisionally. The allegations suggest a manner of interpretation of the Pennsylvania Election Code that is not correct and could be viewed as a violation of voters right to due process.  Instead of suing their own Boards, the Plaintiffs have sued Boards providing notice and opportunity to vote provisionally. Notably, there is a process for the Plaintiffs to challenge such provisional votes, but the interpretation proposed would also deprive voters of this due process remedy.  Additionally, in seeking an equitable remedy the Plaintiffs are seeking to the enjoin certification of the entire election rather than follow the processes set up by the Pennsylvania legislature in challenging provisional votes. Finally, the Plaintiff, in their First Amended Complaint, do not meet the pleading required for injunctive relief or the standard required for an equal protection violation, even by analogy, to the redistricting cases cited. There are, at best, only anecdotal and nominal allegations as to the size of any discrepancy.

## I.      Joinder of Argument

It is anticipated and expected that the other six (6) Defendant Counties' Boards of Elections and the Secretary of the Commonwealth of Pennsylvania will file Motions to Dismiss in this matter. It is anticipated and expected that the Motions to Dismiss filed by the six (6) counties and Secretary of the Commonwealth of Pennsylvania will provide grounds for dismissal of Plaintiffs' First Amended

Complaint that would also be grounds for dismissal of Plaintiffs' First Amended Complaint against Movant. Movant joins in and incorporates by reference any Motions to Dismiss and Joinders filed by the other six (6) counties and the Secretary of the Commonwealth of Pennsylvania to the extent that such Motion to Dismiss would provide a basis for the dismissal of Plaintiffs' First Amended Complaint as to the Movant.  Should this Court grant a Motion to Dismiss filed by any of the other six (6) counties or the Secretary of the Commonwealth and dismiss Plaintiffs' First Amended Complaint, Movant respectfully requests that any Order dismissing Plaintiffs' First Amended Complaint would apply equally to the Movant.  In addition to the legal grounds set forth in the Motions of the Co-Defendants, the Movant is entitled to relief on the three grounds as set forth below.

## II.      Failure to State a Claim

The Plaintiffs' First Amended Complaint makes broad allegations of the wrongdoing of the Defendant Counties' Boards of Elections without specifying the specific deficiencies attributable to the Movant. In fact, Movant is referenced only once, other than being named in the caption and identified as a defendant. Plaintiffs have not alleged that they have been injured in any way by Movant, nor have they reasonably offered evidence, based on a factual investigation, that the Movant has in any way acted improperly in conducting the Presidential Election of

November 2020.  Indeed, Plaintiffs' First Amended Complaint includes no factual allegations involving the improper conduct or actions of the Movant at all.

A well-pleaded Complaint must be supported by factual allegations.  Dreibelbis v. County of Berks, 438 F.Supp.3d 304 citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct 1937, 173 L.Ed,2d 868 (2009) and Bell Atl. Corp v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007). "A Claim has factual plausibility [only] when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct." Id at 678, 129 S.Ct. 1937. Dismissal for failure to plead appropriately pursuant to Federal Rule of Civil Procedure 12(b)(6) is warranted in the instant matter.

### III.   Pennsylvania Election Code

The Plaintiffs object to the practice of advising voters of discernible deficiencies as they are related to their mail-in or absentee ballots.  This is an action that preserves the due process rights of such voters, in relation to the state action, and also safeguards their franchise and opportunity to vote.  The Plaintiffs claim that the Board failed to follow mandatory duties in the "pre-canvass" and "canvass" of "votes", which diluted the "votes" of individuals in other counties. Painfully, the Plaintiffs cite Baker v. Carr and its progeny asking the court to essentially nullify millions of other votes. Baker v. Carr, 369 U.S. 186 (1962). They do so rather than suggesting a construction of the Election Code that is more

rational and that preserves the Constitutionality of the offered construction on due process grounds.  The Plaintiffs claim the Defendants pre-vote processing of ballots, including providing a notice regarding state action invalidating ballots and depriving individuals of their vote, devalued the "vote" of certain Plaintiffs in counties that did not provide notice of such deficiencies.

However, their interpretation of the Pennsylvania Election Code, which equates the practice of notifying those attempting to vote of errors with the devaluation of the actual vote of other potential  voters, is entirely erroneous.  The Plaintiffs can point to no prohibition in providing such notice.  They refer to the Boockvar case, which merely concluded that "Boards are *not required* to implement a 'notice and opportunity to cure' procedure for and absentee ballots that voters have filled out incompletely or incorrectly." Pa. Democratic Party v. Boockvar, 2020 Pa. LEXIS 4872, at *55 (Sep. 17, 2020).  The Court in Boockvar could have concluded such notice was prohibited, but instead only rejected compelling such action.

The Plaintiffs also cite Pierce, which addressed the application of "different standards to determine whether a third-party hand-delivered absentee ballot *constitutes a legal vote*." Pierce v. Allegheny Cty. Bd. of Elections, 324 F. Supp. 2d 684, 698 (W.D. Pa. 2003).  In Pierce, with limited evaluation of the equal protection claim, the issues were specifically couched in terms of the application of different

5

policies to counting otherwise valid votes.[1]  Upon acceptance, the votes in <u>Pierce</u>

would be counted by the Boards. As such, at issue was the standards applied to in

various counties to determine whether such a vote was valid, not necessarily pre-

vote actions that would increase the number of votes in a race, as at issue here.  The

harm was not based on the number of votes in Allegheny County versus

Philadelphia County, as is alleged by the Plaintiff in this case. It was failure to give

equal weight to votes cast in both Allegheny County and in Philadelphia County.  In

fact, there was no way for Philadelphia County, which was subject to an injunction,

to count votes from ballots hand-delivered by third parties.   Similarly, the Plaintiffs

cite <u>Bush v. Gore</u>, which also addresses the actual weight of a vote, stating

> The right to vote is protected in more than the initial allocation of the
> franchise. Equal protection applies as well to the manner of its
> exercise. Having once granted the right to vote on equal terms, the
> State may not, by later arbitrary and disparate treatment, value one

---

[1] Notably also in <u>Pierce</u> the Court did not order the decertification of an election
and instead treated certain specifically identified ballots as challenged. It also
noted that "[n]either the parties nor the intervenors addressed the ramifications of
defendant's absentee ballot practices to the results of the *statewide* November 4,
2003 election. <u>Pierce v. Allegheny Cty. Bd. of Elections</u>, 324 F. Supp. 2d 684, 698
(W.D. Pa. 2003). The <u>Pierce</u> court then deferred to the comprehensive challenge
procedures in place under the election code. <u>Id. at 698.</u> Other courts have
recognized that decertifying an election would cause a massive harm and
disenfranchisement of voters. <u>Marks v. Stinson, 19 F.3d 873, 875 (3d Cir. 1994)</u>

> person's vote over that of another. See, *e.g., Harper* v. *Virginia Bd. of Elections,* 383 U.S. 663, 665, 16 L. Ed. 2d 169, 86 S. Ct. 1079 (1966) ("Once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment"). It must be remembered that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds* v. *Sims*, 377 U.S. 533, 555, 12 L. Ed. 2d 506, 84 S. Ct. 1362 (1964).

Bush v. Gore, 531 U.S. 98, 104-05, 121 S. Ct. 525, 530 (2000).

Similar to these cases, the Plaintiffs argue the Defendants misapplied 25 P.S. 3146.8 causing an actual devaluation of the vote of other state voters. However, under the Election Code, a rejected absentee or mail-in ballot is not a vote that is part of the canvass or pre-canvass, as alleged. Additionally, the Plaintiffs appear to claim there is some sort of pre-canvass secrecy provision that would prohibit the Defendants from reporting information to the Department of State or to individuals attempting to vote. Rather, there is simply a provision limiting the ability of "watchers" to report "results" prior to the close of the polls.

Section 3146.8 describes the actions of the "county boards of election" and also "watchers" in relation to the tallying of ballots during the "pre-canvass," and subsequent "canvass" of votes. The Plaintiffs erroneously allege that advising potential voters of defects apparent on the exterior envelopes containing absentee or mail-in ballots amounts to a pre-canvass in violation of the Election Code.

The definition of "pre-canvass" means "the inspection ***and*** opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes ***and*** the counting, computating and tallying of the **votes** reflected on the ballots. The term does not include the recording or publishing of the votes reflected on the ballots." 25 P.S. 2602 (q.1)((2020) (emphasis added).   Similarly, except as to recording or publishing votes, the term "canvass," means the gathering of ballots after the final pre-canvass meeting and the counting, computing, and tallying of the votes reflected on the ballots.

The pre-canvass begins no earlier than 7:00 am on election day and it begins the process of actually, among other things, tallying votes on the ballots received inside the envelopes.  25 P.S. 3146.8(g)(1.1) (2020).  This is the only time that the actions of the entire definitional term can be undertaken – inspection, opening, removal ***and*** counting.  Further, in regard to the envelopes, the definition describes the "inspection **and** opening" as a joint clause.  It is not rational to interpret the inspection and opening terms separately.  It would be impossible to receive such ballots without observing aspects of the exterior envelope.  Some level of inspection of the outer envelope is necessary to process the absentee ballot, to scan the ballot, to ensure the information is inputted to avoid double voting, and to handle the ballot in a manner that makes naked ballots immediately evident due to tracki marks and

other relatively obvious indicia. There is also an interior envelope, the only envelope actually containing an official absentee or mail-in ballot.

In short, a rejected application or rejected ballot is not a part of the pre-canvass to be tabulated, nor is it a vote that is counted, computed, or tallied and, as a result, such information is not governed by 25 P.S. 3146.8(g)(1.1), which the Plaintiffs posit prohibits a due process type notice to potential voters.  The definition of "pre-canvass" bolsters this clear interpretation as the definition includes an "and" in relation to counting, computating and tallying of votes. This presumes an actual result at the conclusion of such activities and/or a vote actually being a part of such results.  25 P.S. 3146.8(g)(1.1) itself references "results" or any "portion of" results of a pre-canvass meeting which is an indication of finality – the results as a whole or portions of any race or result.  The statute must be interpreted in a manner to preserve its Constitutionality, and this interpretation allows the notice and the due process expected.  Similar notice and due process is provided for challenged ballots in 25 P.S. 3146.8(g)(5).

Finally, the Plaintiffs claim that the Board cannot publish or communicate any listing of rejected ballots as a result of the pre-canvass proviso that, "[n]o *person* observing, attending or participating in a pre-canvass meeting may disclose the results of any portion of any pre-canvass meeting prior to the close of the polls." 25 P.S. 3146.8(g)(1.1).  Notably 25 P.S. 3146.8(g)(1.1) also applies specifically to a

"pre-canvass" on election day, and the referenced clause appears immediately after a clause related to representatives being permitted to observe a pre-canvass.  The subsequent provision, 25 P.S. 3146.8(g)(2), deals with those votes received after the pre-canvass. In regard to this meeting, the Code specifically references that "[t]he *county board* of election shall not record or publish any votes reflected on the ballots prior to the close of the polls." The inclusion of the Board in prohibiting such contact after the period where a cure is possible by provisional ballot thus appears significant. Further, Section 3146.09 specifically indicates that any elections lists are public records, such as those made when an absent or mail-in ballot is processed, along with "[a]ll official absentee ballots, files, applications for such ballots and envelopes on which the executed declarations appear, and all information and lists." 25 P.S. 3146.9 (2020). It would make little consistent policy sense to have such open records yet an inability to provide such notice.

## IV.    Res Judicata and Collateral Estoppel

The Plaintiffs have previously litigated several of the exact issues in previous matters in a coordinated jurisdiction and state court, including issues related to providing such ballots, related to a voter's return of mail-in and absentee ballots, related to any review/verification of such ballots, related to notice and opportunity to cure and related to poll watchers.  Pa. Democratic Party v. Boockvar, 2020 Pa. LEXIS 4872 (Sep. 17, 2020); Donald J. Trump for President,

10

<u>Inc. v. Boockvar</u>, 2020 U.S. Dist. LEXIS 188390 (W.D. Pa. Oct. 10, 2020).

Similarly, the Plaintiffs pursued many of the same legal arguments related to Equal

Protection, Substantive Due Process and others.

Res judicata (i.e. claim preclusion) and collateral estoppel (i.e. issue

preclusion), bars the relitigation of claims or issues that should or could have been

adjudicated in a prior action. <u>McGill v. Southwark Realty Co.</u>, 828 A.2d 430, 433

(Pa. Commw. 2003). The main difference between the two doctrines is that res

judicata operates to preclude re-litigation of a claim irrespective of the issues

raised in the initial suit, whereas collateral estoppel operates only to preclude

relitigation of issues that were actually litigated in the initial suit. <u>Chada v. Chada</u>,

756 A.2d 39 (Pa. Super. 2000).

Res judicata prohibits relitigating a *claim* which has already been litigated.

It has been stated that "[w]here there has previously been rendered a final

judgment on the merits by a court of competent jurisdiction, the doctrine of res

judicata will bar any future suit on the same cause of action between the parties."

<u>Chada</u>, 756 A.2d at 42. In addition to a final judgment on the merits, there must be

"1. identity in the thing sued upon; 2. identity in the cause of action; 3. identity of

persons and parties to the action; and 4. identity of the capacity of the parties sued

or being sued" for the doctrine to apply. <u>Id</u>.  If it applies it "preclud[es] *any* future

suit between the parties . . . on the same cause of action." <u>Balent v. City of Wilkes-</u>

Barre, 669 A.2d 309, 313 (Pa. 1995). It applies not only to claims that were litigated but also to claims that should have been litigated. Id.

Collateral estoppel prohibits relitigating an *issue* which was already been decided. In order for collateral estoppel to apply the following must be established: "(1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment." Chada, 756 A.2d at 43. Our Supreme Court has adopted Restatement (Second) of Judgments § 27 and its definition of issue preclusion, which provides that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." McGill v. Southwark Realty Co., 828 A.2d 434 n.5 (Pa. Commw. 2003).

As a result, this matter should be dismissed as res judicata or the Plaintiffs should be estopped from proceeding as to the referenced claims.

## V.    No Properly Plead Claim of Vote Devaluation

American democracy is founded on the concept that power is derived from the

consent of the governed.[2]  Our society is too large for individual participation in the

administration of government, so we delegate our authority to representatives.

Americans express their consent through individual votes.  Several cases have

addressed the devaluation of these votes, primarily in the redistricting context. As

previously noted, Baker v. Carr and its progeny opened the courts' doors to claims

of vote devaluation, even over great concerns for the need for judicial restraint in

entering a "political thicket."  The cases cited by the Plaintiffs primarily address the

substantive weight of a vote in comparison to other voters.  However, as noted

---

[2] See THE DECLARATION OF INDEPENDENCE para. 2 (U.S. 1776) ("[w]e hold these Truths to be self-evident, that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. That to secure these Rights, Governments are instituted among Men, deriving their just Powers from the Consent of the Governed."); DECLARATION OF THE CAUSES AND NECESSITY OF TAKING UP ARMS para. 1-4 (U.S. 1775) (stating that "[i]f it was possible . . . that the divine Author of our existence intended a part of the human race to hold . . . an unbounded power over others . . . the inhabitants of these colonies might at least require from the parliament of Great-Britain some evidence, that this dreadful authority over them, has been granted to that body . . . . [Parliament has imposed unjust laws and taxes without our consent] [b]ut why should we enumerate our injuries in detail? By one statute it is declared, that parliament can 'of right make laws to bind us in all cases whatsoever.' What is to defend us against so enormous, so unlimited a power? Not a single man of those who assume it, is chosen by us.). DECLARATION AND RESOLVES OF THE FIRST CONTINENTAL CONGRESS para. 10 (U.S. 1774) (resolution four states that a "foundation of English liberty, and of all free government, is a right in the people to participate in their legislative council" and that a tax may not be imposed without the consent of the governed.).

above, the processes the Plaintiffs challenge have more to do with pre-voting access issues, which effectively allows a broader franchise and protection of due process rights.  Bognet v. Sec'y of the Commonwealth of Pa., No. 20-3214, 34 (3rd Cir. Nov. 13, 2020) ("Contrary to the Voter Plaintiffs' conceptualization, vote dilution under the Equal Protection Clause is concerned with votes being weighted differently").  In regard to the Equal Protection analysis, there are no allegations regarding any *quantification* of the purported devaluation of the Plaintiffs' vote as likely would be required for an actual Equal Protection review, as opposed to an Article I, § 2 analysis.  There are certainly no allegations related to actions potentially devaluing a vote by Defendant, Northampton County Board of Elections, and a fair reading of the Complaint cites nothing qualifiable on a statewide basis.

In regard to vote devaluation in the redistricting context, the one-person, one-vote principle announced in Gray v. Sanders and clarified in Wesberry v. Sanders[3] stated that "as nearly as practicable" districts must be drawn to produce population equality.  *Wesberry v. Sanders*, 376 U.S. 1 (1963);  *Gray v. Sanders*, 372 U.S. 368 (1963).  This is the crux of the argument regarding an equally

---

[3] *Wesberry* was the first post-*Baker* case to analyze Congressional redistricting. The challenged district had a population of 823,680 in a state with an average district population of 394,312 persons. Surprisingly the Court did not base its decision on the Equal Protection Clause.  It based its ruling on Article I, § 2 of the United States Constitution, which led to the incongruity between state legislative and Congressional redistricting standards.

weighted vote.  In the redistricting contest, this standard applies to both state legislative districts and Congressional districts. However, it is derived from two different origins and two slightly different standards have emerged. State legislative districts are reviewed under the Equal Protection Clause of the Fourteenth Amendment and an overall range of ten percent is permitted between the most and least populated districts to accommodate legitimate state policies. Mahan v. Howell, 410 U.S. 315, 93 S. Ct. 979 (1973). On the other hand, Congressional districts are regulated under Article I, § 2 of the United States Constitution, which generally requires absolute equality. *Kirkpatrick*, 394 U.S. at 530 (1969); White v. Weiser, 412 U.S. 783, 790 (1973); Karcher v. Daggett, 462 U.S. 725, 731 (1983).  That said, even under Article I, some deviations are permitted if they are unavoidable or occur despite a good faith effort to reach equality, if a valid justification is offered. *Kirkpatrick*, 394 U.S. at 530-31. At times, the Plaintiffs seem to conflate these different lines of cases.

To the extent that the Plaintiffs are alleging a structural or actual devaluation of their "vote" or an analogous pre-vote process that purportedly leads to less votes being cast in their "particular part heavy" county, it is posited that they must still plead some quantification of the harm to meet minimum pleading standards in this Equal Protection context. The Bognet case noted that analgous equal protection argument regarding devaluation that was being made, but did not proceed past the

standing issues. <u>Bognet v. Sec'y of the Commonwealth of Pa.</u>, No. 20-3214, 34-42

(3rd Cir. Nov. 13, 2020). Even if such a devaluation argument was actionable, the

courts would presumably have to treat votes devalued under line of reasoning with

votes devalued under the 14th Amendment Equal Protection in the redistricting

context.   In this case, there is nearly no actual allegations that state the magnitude

of such a deviation as would be required in redistricting cases. In fact, there are

only anecdotal irregularities alleged and nothing that would meet the applicable

standards under the Equal Protection clause.  Notably, even if one were to assume

the Plaintiffs have met their initial burden, there is clearly an exceptionally strong

legislative goal being sought – the enfranchisement of more citizens and the

protection of their right to vote in a particularly difficult period, i.e. a global

pandemic.  Notably, in the redistricting context, the burden of justification has also

been flexible depending on the size of the deviation. Given the important

justification and the near nonexistent offering on the part of the Plaintiffs it is

without reasonable question that this burden would be met.

### VI.    Equitable Relief Inappropriate

Though the exercise of jurisdiction in equity is discretionary, a court has no jurisdiction

where an adequate statutory remedy at law exists.  <u>Starkey v. Smith</u>, 445 Pa. 118, 283 A.2d

700 (1971)(no jurisdiction related to registering voters because of Election Code remedies).

Remedies at law and in equity may co-exist where a statute creates a special remedy in

equity which is in addition to the remedy at law, but where only an action at law exists, a party is estopped from maintaining an equity action. Slotsky v. Gellar, 455 Pa. 148, 314 A.2d 495 (1974). The evidence needed to establish equitable rights must be clear and precise. Additionally, the relief granted in equity must be on the narrowest grounds possible.

In this case, the Election Code provides a remedy at law and no equitable relief is proper or permitted given the statutory remedy.  Additionally, the evidence is not clear and precise. In this case, there are no pleadings that state any clear right to recover and the Plaintiffs continually press for discovery to seek evidence to prove their case.

Further, the Plaintiffs are seeking broad sweeping relief, such as decertification of the entire election and disenfranchisement of millions of voters. Such broad relief is not the most narrow available or appropriate in light of the adequate remedy art law in challenging the resulting provisional votes, which has been ignored by the Plaintiffs.

Plaintiffs' prayer for relief includes a request that Defendants be precluded from certifying the results of the General Election and a temporary restraining order and preliminary injunction granting the same relief during the pendency of this action. This requested relief goes far beyond the "cure" issue that remains at the heart of Plaintiffs' First Amended Complaint. Case law is clear that dismissal is warranted where the relief requested is two broadly framed. Victor v. R.M. Lawler, 2011 WL 1107013 (M.D. Pa. 2011).

**Conclusion**

Moving Defendant respectfully requests that this Court grant its Motion to Dismiss and dismiss Plaintiffs' First Amended Complaint for all of the grounds cited herein or in the Motions to Dismiss and Briefs filed by the Co-Defendants in this matter.

COUNTY OF NORTHAMPTON

By: /s/ Timothy P. Brennan
       Attorney ID: 91798
       Assistant Solicitor
       County of Northampton
       669 Washington Street
       Easton, PA 18042
       610-829-6350
       tbrennan@northamptoncounty.org

By: /s/ Brian J. Taylor, Esq.
       Attorney ID: 66601
       Assistant Solicitor
       County of Northampton
       669 Washington Street
       Easton, PA 18042
       610-829-6350
       btaylor@northamptoncounty.org

Date: November 16, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR | ) | Civil Action |
| PRESIDENT, INC.; *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 4:20-cv-02078 |
| | ) | |
| Kathy Boockvar; *et al,* | ) | |
| | ) | |
| Defendants. | ) | Judge Matthew W. Brann |

## <u>WORD COUNT CERTIFICATION</u>

I, Timothy P. Brennan, Esquire, counsel for Movant, Northampton County Board of Elections, hereby certify that the herein Brief is in compliance with the requirements for the length and word count of briefs pursuant to Middles District of Pennsylvania Rules of Court LR 7.8(b). The word count function indicates that Movant's Brief contains 4,490 words.

COUNTY OF NORTHAMPTON


By:  /s/ Timothy P. Brennan
     Attorney ID: 91798
     Assistant Solicitor
     County of Northampton
     669 Washington Street
     Easton, PA 18042
     610-829-6350
     tbrennan@northamptoncounty.org

By:  /s/ Brian J. Taylor, Esq.
     Attorney ID: 66601
     Assistant Solicitor

19

County of Northampton
669 Washington Street
Easton, PA 18042
610-829-6350
btaylor@northamptoncounty.org

Date: November 16, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC.; *et al.,* | ) | Civil Action |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 4:20-cv-02078 |
| | ) | |
| Kathy Boockvar; *et al,* | ) | |
| | ) | |
| Defendants. | ) | Judge Matthew W. Brann |

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy P. Brennan, Esquire hereby certify that on this date, a copy of

Movant's Motion and Brief were served upon all counsel of record via the Court's

CM/ECF system, which will provide electronic notice to all parties of record.


COUNTY OF NORTHAMPTON


By:   /s/ Timothy P. Brennan
      Attorney ID: 91798
      Assistant Solicitor
      County of Northampton
      669 Washington Street
      Easton, PA 18042
      610-829-6350
      tbrennan@northamptoncounty.org

By:   /s/ Brian J. Taylor, Esq.
      Attorney ID: 66601
      Assistant Solicitor
      County of Northampton
      669 Washington Street

Easton, PA 18042
610-829-6350
btaylor@northamptoncounty.org

Date: November 16, 2020