# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD J. TRUMP FOR
PRESIDENT, INC., *et al.*,

      Plaintiffs,

      v.

KATHY BOOCKVAR, *et al.*,

      Defendants,

NAACP-PENNSYLVANIA STATE
CONFERENCE, *et al.*,

      Intervenor-Defendants,

DNC SERVICES
CORPORATION/DEMOCRATIC
NATIONAL COMMITTEE,

      Intervenor-Defendant.

Civil Action
No. 4:20-cv-02078-MWB

Hon. Matthew W. Brann

## REPLY IN SUPPORT OF MOTION TO DISMISS BY INTERVENOR-DEFENDANTS NAACP-PENNSYLVANIA STATE CONFERENCE, BLACK POLITICAL EMPOWERMENT PROJECT, COMMON CAUSE PENNSYLVANIA, LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, JOSEPH AYENI, LUCIA GAJDA, STEPHANIE HIGGINS, MERIL LARA, RICARDO MORALES, NATALIE PRICE, <u>TIM STEVENS, AND TAYLOR STOVER</u>

# **TABLE OF CONTENTS**

Introduction .................................................................................................. 1

Argument....................................................................................................... 3

I.     Plaintiffs' Last-Minute Filing Of An Amended Complaint Does Not Moot The Pending Motions To Dismiss. ........................................................ 3

II.    Plaintiffs Could Have Brought Their Claims In October, And Are Barred From Advancing Them After The Election........................................ 8

      A.    Dismissal Of Plaintiffs' Claims Based On Laches Is Appropriate At The Pleadings Stage.................................... 8

      B.    Plaintiffs Could Have—and Should Have—Brought Their Claim Before The Votes Were Counted. ........................................... 11

      C.    Plaintiffs' Delay Has Prejudiced The Voter Intervenors. .................. 13

III.    Discarding Lawfully Cast Votes Is Not A Permissible Remedy For Plaintiffs' Alleged Equal Protection Violation. ........................................... 14

Conclusion .................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Appeal of Simon*,
46 A.2d 243 (Pa. 1946) ..................................................................16

*Benak ex. rel. All. Premier Growth Fund v. All. Cap. Mgmt.*,
435 F.3d 396 (3d Cir. 2006) ......................................................9, 13

*Bowden v. DB Schenker*,
No. 1:17-CV-01999, 2018 WL 1203362 (M.D. Pa. Mar. 8, 2018) ....................9

*Coughlin v. Ryder*,
260 F. Supp. 256 (E.D. Pa. 1966) ..........................................................8

*Donald J. Trump for President, Inc. v. Boockvar*,
No. 2:20-cv-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ......................12

*Donald J. Trump for President, Inc. v. Montgomery Cnty. Bd. of Elections*,
No. 2020-18680 (Pa. Ct. Com. Pl. Nov. 13, 2020) (Ex. A) ..............................16

*Gourge v. United States*,
2013 WL 1797099 (S.D. Cal. 2013) ..................................................15

*Gray v. Sanders*,
372 U.S. 368 (1963) ..................................................................3

*Hendon v. N.C. State Bd. of Elections*,
710 F.2d 177 (4th Cir. 1983). (*See* Opening Br. .) ...................................8, 11, 14

*Jordan v. City of Philadelphia*,
66 F. Supp. 2d 638 (E.D. Pa. 1999) ..................................................5

*King v. Mansfield Univ. of Pa.*,
No. 1:15-CV-0159, 2018 WL 1203467 (M.D. Pa. Mar. 8, 2018) ......................5

*League of Women Voters of Ohio v. Brunner*,
548 F.3d 463 (6th Cir. 2008) ..........................................2, 13, 14, 16

*Patton Elec. Co. v. Rampart Air, Inc.*,
777 F. Supp. 704 (N.D. Ind. 1991) ..................................................6

*Planned Parenthood of Cent. N.J. v. Farmer*,
220 F.3d 127 (3d Cir. 2000) ..........................................................11

*Rountree v. Dyson*,
   892 F. 3d 681 (5th Cir. 2018) ................................................................5

*Snyder v. Pascack Valley Hosp.*,
   303 F.3d 271 (3d Cir. 2002) ................................................................4

*Sprague v. Casey*,
   550 A.2d 184 (Pa. 1988) ......................................................................9

*Staehr v. Hartford Fin. Servs. Grp.*,
   547 F.3d 406 (2d Cir. 2008) ................................................................9

*Stein v. Cortés*,
   223 F. Supp. 3d 423, 443 (E.D. Pa. 2016) ........................................18

*Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*,
   939 F. Supp. 365 (E.D. Pa. 1996) ......................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................8

*Toney v. White*,
   488 F.2d 310 (5th Cir. 1973) ............................................................11

*Warner v. Sun Ship, LLC*,
   No. 11-CV-7830, 2012 WL 1521866 (E.D. Pa. Apr. 30, 2012) ..........8

*White v. Alcon Film Fund, LLC*,
   No. 1:13-cv-1163, 2013 WL 12067479 (N.D. Ga. Aug. 13, 2013) .....15

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ............................................................15

*Wilson v. Somerset Cnty. Prosecutors Office*,
   No. 15-6034, 2016 WL 1090811 (D.N.J. Mar. 21, 2016) ....................6

**Statutes**

25 P.S. § 3150.16(b)(2) ...........................................................................16

**Other Authorities**

Federal Rule of Civil Procedure 8 ............................................................15

Federal Rule of Civil Procedure 12 ..................................................*passim*

Federal Rule of Civil Procedure 56 ..........................................................................15

6 Wright & Miller, Federal Practice and Procedure
   (3d ed. 2020 update) ..............................................................................................5

## INTRODUCTION

Over the last three days, most of Plaintiffs' case has vanished.  On Friday, Plaintiffs admitted that binding Third Circuit precedent precludes their Elections and Electors Clause claims.  (Dkt. 124 at 1.)  On Sunday, Plaintiffs dropped all of their claims concerning observer access during ballot counting.  All that remains is a single Equal Protection claim: a complaint that counties adopted different approaches to notifying voters of problems with their mail-in ballots, which made it easier for voters in some counties to cure the problem and cast a valid ballot.  (*See* Am. Compl. ¶¶ 150–160, Dkt. 125.)

Yet even this diminished case remains profoundly dangerous.  Plaintiffs profess to believe that "[e]very legal . . . vote should be counted."  (*Id.* ¶ 1.)  But they are asking for the opposite—an injunction against counting legal votes.  They still include the preposterous request for this Court to enjoin certification of the 2020 General Election results in their entirety, nullifying *every* vote cast in Pennsylvania and leaving the Commonwealth without most of its elected officials.  Their fallback request for a "notice and cure" injunction is no less radical.  Plaintiffs say that because some counties made it easier to cast a legal vote than others, the valid ballots of qualified voters in those counties should be discarded.  There is, of course, nothing wrong with county-by-county variation in election administration, which is a well-established feature of U.S. and Pennsylvania elections.  But even if Plaintiffs were

right that some *counties* did something wrong, it would not remotely follow that the Court should discard the ballots of *voters* who cured prior defects and cast perfectly valid, legal votes.  The unavailability of the requested relief is sufficient grounds to dismiss the Amended Complaint in its entirety.

So is the fundamental untimeliness of Plaintiffs' claims.  Because Plaintiffs concede that they lack standing to bring an Elections and Electors Clause claim, they can no longer claim that the election was administered in violation of Pennsylvania law.  Plaintiffs' *only* remaining claim is that "voters in some counties have been and are being treated differently than voters in other counties" with respect to when and whether they were alerted to any defects in mail-in ballots.  (Am. Compl. ¶ 158.) Plaintiffs do not dispute that no later than mid-October, it was publicly known that counties were taking different approaches to providing notice of defective mail ballots, such that whether "you get a second chance if you made a mistake on a mail-in ballot" could "depend on where you live."  (Dkt. 95-1, at 56, Ex. D.)  If Plaintiff Donald J. Trump for President, Inc. (the "Trump Campaign") was worried that these differing approaches would make it harder to vote in "Republican-heavy counties" (Am. Compl. ¶ 6), it could have done something about it well before Election Day. Plaintiffs could have sought a pre-Election injunction requiring all counties to make similar efforts to help voters cast legal votes.  As a result, Plaintiff Roberts, who is now "very upset that [his] vote has not been counted" (Dkt. 89-2, at 202, Ex. 14),

could have had an opportunity to cast a valid vote. But Plaintiffs took no legal action before the election to compel "Republican-heavy counties" to make the same efforts as other counties. Nor did they seek to enjoin the Defendant counties from continuing their well-publicized efforts to help voters cast valid ballots. Having made that choice before the election, Plaintiffs cannot try to disrupt the counting of legal votes afterward.

"The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing—one person, one vote." *Gray v. Sanders*, 372 U.S. 368, 381 (1963). After lying in wait while Pennsylvania's 67 counties did their best to administer an election in the midst of a global pandemic, and without alleging that a single ineligible voter voted, Plaintiffs now seek to disenfranchise qualified Pennsylvania voters who followed election officials' directions to cast legal votes. That effort must be summarily rejected.

## ARGUMENT

### I.   Plaintiffs' Last-Minute Filing Of An Amended Complaint Does Not Moot The Pending Motions To Dismiss.

Plaintiffs brought this case on November 9, six days after Election Day, asserting a "Need for Emergency Judicial Intervention." (Dkt. 1 at 60.) The next day, the Court set a highly expedited briefing schedule for motions to dismiss, with argument on those motions set for tomorrow. This accelerated schedule was

appropriate considering the November 23 deadline for counties to certify their results to the Secretary of the Commonwealth.  Just minutes before their opposition to Defendants' motions to dismiss was due, Plaintiffs filed an amended complaint that deleted half of their allegations and five of their seven counts, but did not add any new claims or material allegations.  Despite requesting emergency relief, and with a hearing on the motions to dismiss imminent, Plaintiffs now claim that the narrowing of their claims renders Defendants' motions to dismiss "moot." (Response to Mot. to Dismiss ("Opp."), Dkt. 126 at 1.)

Plaintiffs' position is wrong as a matter of law: The filing of an amended complaint does not require a court to reject a pending motion to dismiss.  Moreover, doing so would be especially improper here, not only because it would threaten the prompt resolution of Plaintiffs' claims and the timely conclusion of this election challenge, but also because the amendments to the Complaint have no material impact on the pending motions—other than to effectively concede aspects of them.[1]

Plaintiffs note that their scaled-back Amended Complaint "supercedes the original version in providing the blueprint for the future course of a lawsuit," *Snyder*

---

[1] Notwithstanding the clear authority permitting this Court to apply the pending motions to the Amended Complaint, if the Court concludes that the amended complaint does moot the pending motions to dismiss, then the Voter Intervenors respectfully ask the Court to simply treat this reply brief as a renewed motion to dismiss under Rule 12 and order the Plaintiffs to file an opposition no later than Tuesday morning, so that the motion to dismiss oral argument set for Tuesday afternoon can proceed as scheduled.

*v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002).  And they are correct that when amended complaints are filed, "motions to dismiss 'addressing the original complaint *may* be deemed moot.'"  (Opp. at 1 (emphasis added) (quoting *King v. Mansfield Univ. of Pa.*, No. 1:15-CV-0159, 2018 WL 1203467, at *1 (M.D. Pa. Mar. 8, 2018)).)  But "may" is not "must," and mootness is not automatic.  "[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending."  6 Wright & Miller, Federal Practice and Procedure § 1476 (3d ed. 2020 update); *see also Rountree v. Dyson,* 892 F. 3d 681, 683–84 (5th Cir. 2018) (rejecting plaintiff's argument that an amended complaint "nullified" a pending motion to dismiss).  Rather, a court faced with an amended complaint filed after a motion to dismiss "simply may consider the [pending motions to dismiss] as being addressed to the amended pleading."  6 Wright & Miller, Federal Practice and Procedure § 1476.  To "hold otherwise would be to exalt form over substance" and delay resolution on the merits.  *Id.*

Courts in this circuit apply this pragmatic approach.  It is especially appropriate where, as here, "the contentions presented in [Intervenors'] initial Motion to Dismiss are germane to the Amended Complaint because it failed to cure a majority of the deficiencies initially alleged."  *Sun Co., Inc. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 367 n.3 (E.D. Pa. 1996); *see also Jordan v. City of Philadelphia*, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999) ("Since

Counts IV through XII of the amended complaint suffer from the same deficiencies that are addressed in defendants' motion to dismiss, the court will allow the motion to dismiss these counts to be considered as addressing the amended complaints.") (citing *Patton Elec. Co. v. Rampart Air, Inc.*, 777 F. Supp. 704, 713 (N.D. Ind. 1991)).  While Plaintiffs have deleted their allegations related to canvass observers and have abandoned five of their seven counts, they continue to assert the exact same allegations and two of the exact same claims concerning the Defendant counties' alleged notice-and-cure practices.  (*Compare* Dkt. 1, Counts IV and V, *with* Dkt. 125, Counts I and II.)  The Voter Intervenors' motion to dismiss argued that these claims are barred by laches and that the remedies sought by Plaintiffs are unavailable as a matter of law.  (*See* Voter Intervenors' Mem. in Supp. of Mot. to Dismiss ("Opening Br."), Dkt. 95 at 7.)  These arguments continue to apply with full force to Plaintiffs' Amended Complaint, which makes no material changes to the notice-and-cure claims.  Plaintiffs cannot use their voluntary dismissal of half of their case to delay adjudication of motions to dismiss the other half of the case that they continue to press.  *See, e.g.*, *Wilson v. Somerset Cnty. Prosecutors Office*, No. 15-6034, 2016 WL 1090811 (D.N.J. Mar. 21, 2016) (a "Court is permitted to 'transfer' the motion to the amended complaint if the same issues are presented in the original and amended complaint . . . [and] applying the pending motion to the amended complaint would [not] create confusion" (citations omitted)).

6

Plaintiffs' "mootness" argument is just the latest delaying tactic that is designed to allow them to continue questioning the integrity of an unfavorable election outcome without having to substantiate their legal claims or subject them to any scrutiny.   First, Plaintiffs decided not to challenge the Defendant counties' notice-and-cure practices until a week *after* the election and only when the results were clear.   Then, Plaintiffs filed a motion for preliminary injunction conceding the lack of sufficient factual support for their claims and asking for a "brief pause" so they could search about for facts to support their "theory" that Pennsylvania officials counted tens of thousands of supposedly invalid votes.  (Dkt. 89 at 1.)  Now, after filing an amended complaint that abandons half of their case and most of their claims, they seek to postpone a ruling that would establish that their remaining claims are wholly meritless and must be dismissed.  Such delay tactics are especially inappropriate given the imminent November 23 deadline for counties to certify their election results.   Plaintiffs should not be allowed to thwart the Defendant counties' ability to meet that deadline, threaten the disenfranchisement of the Voter Intervenors, and undermine the public's confidence in the electoral system based on an unsupported "theory" that the election results should have been different.   The Court should adjudicate the pending motions to dismiss.

**II.    Plaintiffs Could Have Brought Their Claims In October, And Are Barred From Advancing Them After The Election.**

**A.    Dismissal Of Plaintiffs' Claims Based On Laches Is Appropriate At The Pleadings Stage.**

To protect election results from after-the-fact criticisms from losing candidates, it is well-settled that there is "a duty on parties having grievances based on election laws to bring their complaints forward for pre-election adjudication when possible." *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983). (*See* Opening Br. at 7–15.)  Plaintiffs do not deny that this is the rule.  Nor do they dispute that the doctrine of laches bars untimely claims, or that it applies with particular rigor to election cases.

Plaintiffs instead ask the Court not to apply this rule at the pleadings stage, but, as Plaintiffs concede, a complaint may be dismissed on laches grounds when "applicability of the doctrine is apparent from the face of the Complaint."  (Opp. at 10 (quoting *Warner v. Sun Ship, LLC*, No. 11-CV-7830, 2012 WL 1521866, at *2 (E.D. Pa. Apr. 30, 2012))); *see also, e.g.*, *Coughlin v. Ryder*, 260 F. Supp. 256, 260 (E.D. Pa. 1966) (dismissal under Rule 12 appropriate "where laches can be determined without the necessity for further factual inquiry").

Laches can thus be applied at the pleadings stage where, as here, the defense is based on "matters of which a court may take judicial notice," which are appropriately considered on a motion to dismiss.  *Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Bowden v. DB Schenker*, No. 1:17-CV-01999, 2018 WL 1203362, at *2 (M.D. Pa. Mar. 8, 2018) (applying affirmative defense on Rule 12(b)(6) motion and taking judicial notice of facts relevant to the defense).[2]

Whether a plaintiff's claim is barred by laches because of insufficient diligence depends "not upon what the plaintiff knows, but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him." *Sprague v. Casey*, 550 A.2d 184, 188 (Pa. 1988) (quotation marks omitted).  As the Third Circuit has held, when the question is whether a party should be charged with notice, press reports are judicially noticeable to "indicate what was in the public realm at the time." *Benak ex. rel. All. Premier Growth Fund v. All. Cap. Mgmt.*, 435 F.3d 396, 401 n.5 (3d Cir. 2006); *see also, e.g.*, *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) ("proper to take judicial notice of the *fact* that press coverage . . . contained certain information, without regard to the truth of their contents," for purposes of deciding whether party had "inquiry notice").

---

[2] Plaintiffs ignore the Voter Intervenors' argument, in the alternative, that the Court could convert the present motion into a Motion for Summary Judgment.  (Opening Br. at 8 n.3.)  That would certainly be appropriate in this fast-moving proceeding, where Plaintiffs do not and could not dispute that the grounds for their claims were widely known pre-election.

Plaintiffs do not dispute that the practices they challenge were well-known in October or that the alleged injury from those practices was imminent. Nor could they. Public reports show that the purported factual basis for Plaintiffs' sole remaining claim—that voters in some counties received notice and an opportunity to cure, and voters in other counties did not—was widely known by mid-October.[3] On October 15, a Pennsylvania CBS affiliate broadcast a story about this very issue, and published an article with the *headline* "Some Pennsylvania counties offer second chances at mail-ballots, others do not." (Dkt. 95-1, at 56, Ex. D.) The report began: "Will you get a second chance if you made a mistake on a mail-in ballot? Well, it may depend on where you live." (*Id.*) In fact, the report stated that in Lancaster County, home to Plaintiff Henry (Am. Compl. ¶ 15), "a naked ballot is dead in the water and no one will be reaching out if you forget a signature." (Dkt. 95-1, at 56, Ex. D.) Similarly, several days before the election, the *Philadelphia Inquirer* reported that "Pennsylvania struggles with how—or if—to help voters fix their mail ballots." (Dkt. 95-1, at 50, Ex. C.) The report pointed to a "patchwork" of policies across the State. (*Id.*) "Some counties are marking [defective] ballots as received" and thus "giv[ing] voters no indication there's a problem"; other counties "are

---

[3] In addition to the Equal Protection claim, Count Two of the Amended Complaint alleges that county notice-and-cure practices violate Pennsylvania law and therefore violate the Elections and Electors Clause of the Constitution. While Plaintiffs include that claim for preservation purposes, they admit that under binding Third Circuit law, they lack standing to advance it. (Dkt. 124 at 1.)

marking them as canceled . . . which sends voters warning emails"; and "[s]till others try to reach voters directly." (*Id.*)

That the very "patchwork" of notice-and-cure policies that Plaintiffs allege was widely reported several weeks ago shows that Plaintiffs could have raised their claim long before election day. Indeed, the Trump Campaign filed pre-election suits in several jurisdictions, including Pennsylvania, challenging various election procedures. Plaintiffs have not identified any reason why they decided to wait nearly a week *after* the election to file this action—and then nearly another week to amend it. One might infer that it was a strategic decision to do exactly what is forbidden: "gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action." *Hendon*, 710 F.2d at 182 (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)).

## B. Plaintiffs Could Have—and Should Have—Brought Their Claim Before The Votes Were Counted.

Plaintiffs' only response to the merits of the laches argument is that their claims were not "ripe" until "votes were unequally counted" because that is "when their injury actually occurred." (Opp. at 10.) That is wrong as a matter of law. A claim is ripe for adjudication as soon as there is "danger of imminent injury." *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 147 (3d Cir. 2000). There was clearly an imminent risk of injury (as Plaintiffs define it) known before election day in this case. By definition, if a county is providing voters with an

opportunity to cure their mail-in ballots, the inexorable consequence is that the county will, in fact, count those cured ballots.

Moreover, Plaintiffs' argument is directly contradicted by the Trump Campaign's own pre-election litigation in this state. Just over a month ago, a federal court in the Western District of Pennsylvania ruled that the Trump Campaign's pre-election challenges to certain mail-in ballot procedures were ripe, noting that the alternative would be to force the campaign to litigate those challenges on the eve of, or after, the election. *See Donald J. Trump for President, Inc. v. Boockvar,* No. 2:20-cv-966, 2020 WL 5997680, at *28–29 (W.D. Pa. Oct. 10, 2020). Having filed a separate action challenging mail-in balloting procedures several weeks before the election, and obtained a ruling that this challenge was ripe, the Trump Campaign cannot turn around and credibly argue that they were somehow foreclosed from challenging the notice-and-cure procedures at issue here until after the votes were counted.

Plaintiffs' newly discovered position on the supposed infeasibility of pre-election challenges would turn election law on its head. By definition, challenges to the procedures by which elections are conducted (or votes counted or other candidates' qualifications determined) can almost always be described as causing "injuries" that do not actually "occur[]" until Election Day or thereafter. If that were enough to justify a plaintiff's lying in wait and suing after the election, laches would

12

never apply, and pre-election challenges would never be required.  That is not and cannot be the law.

### C.     Plaintiffs' Delay Has Prejudiced The Voter Intervenors.

Plaintiffs do not dispute that their delay was prejudicial.  Had Plaintiffs brought this suit before the election, the Secretary could have issued even more guidance in order to ensure uniform approaches to defective ballots.  And rather than cherry-pick seven counties after the fact based on which candidate won the most votes there, a pre-election challenge could have joined *all* counties.  That way, if Plaintiffs could establish that a divergence in county practice violated the Equal Protection Clause, the Court could have had the option of ordering *all* counties to take steps to notify voters of ballot defects, without disenfranchising anyone. Instead, by waiting until after the election was complete, Plaintiffs forced a situation where they can claim that mass disenfranchisement in so-called "Democrat counties" is the only way to address the alleged variation among counties' notice-and-cure procedures.  (Opp. at 9; *see also* Opp. at 5.)  This gamesmanship is obviously prejudicial, and exactly what courts reject in election case after election case.  (*See, e.g.*, Opening Br. 8–9.)

The one case that Plaintiffs cite actually proves Voter Intervenors' point. Plaintiffs argue that "post-election Equal Protection Clause claims" are "regularly litigated after the election."  (Opp. 11 n.6.)  They cite *League of Women Voters of*

*Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008), which no doubt involved "post-election . . . claims," (*cf.* Opp. 11 n.6).  But the request there was for an injunction requiring the State to improve its voting system *before the next election*.  *League of Women Voters*, 548 F.3d at 466.  What courts do not allow are belated Equal Protection claims seeking to throw out the results of a *prior* election after votes are cast.  *See, e.g.*, *Hendon*, 710 F.2d at 182 (declining to grant relief for past election despite plaintiffs' meritorious equal-protection claim).

Voters are entitled to rely on the rules that are in place at the time they vote.  Courts have consistently and vigorously applied the doctrine of laches to protect this vital interest.  If Plaintiffs were truly concerned that some counties were making it easier to cure ballots than others, they could have easily sued long before the Election.  They may not belatedly complain about these practices and demand disenfranchisement as a remedy.

## III.   Discarding Lawfully Cast Votes Is Not A Permissible Remedy For Plaintiffs' Alleged Equal Protection Violation.

Plaintiffs' response to the motions to dismiss filed by the Voter Intervenors and all other defendants confirms that Plaintiffs' requested remedy is impermissible as a matter of law.  Plaintiffs seek to prevent certification of the Commonwealth's election results, in their entirety or to the extent they include mail-in or absentee ballots where voters were provided with the opportunity to cure perceived defects in their ballots.  (Am. Compl. ¶ 170.)  The alleged errors in the way Pennsylvania

counties administered the election simply cannot support an order not to count *valid* ballots cast by *qualified* Pennsylvania voters.  Thus, even if Plaintiffs had stated a valid constitutional claim, the drastic relief they seek could not be granted, and thus their complaint must be dismissed.  *See Gourge v. United States*, 2013 WL 1797099 (S.D. Cal. 2013) (appropriate to "challenge remedies that are unavailable as a matter of law" through either a Rule 12(b)(6) motion to dismiss or a Rule 12(f) motion to strike).  "The selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading *if* the statement of the claim indicates the pleader may be entitled to relief of some other type."  Wright & Miller, Federal Practice and Procedure § 1255 (emphasis added).  Here, Plaintiffs have neither identified nor suggested any other form of relief that would redress their claimed injuries, so this is a case where an improper request for relief is fatal and the entire case should be dismissed.[4]

*First*, as discussed in the Voter Intervenors' opening brief, disenfranchising voters is not the proper way to cure Plaintiffs' alleged constitutional violation.

---

[4] Voter Intervenors respectfully request that this Court dismiss Plaintiffs' prayer for relief under Rule 12(b)(6) on the grounds that the remedies Plaintiffs request are unavailable as a matter of law or, alternatively, strike the prayer for relief under Rule 12(f).  *Compare, e.g.*, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (motion to eliminate legally unavailable forms of relief from complaint properly brought under Rule 12(b)(6) or Rule 56, not Rule 12(f)), *with, e.g.*, *White v. Alcon Film Fund, LLC*, No. 1:13-cv-1163, 2013 WL 12067479, at *7 n.7 (N.D. Ga. Aug. 13, 2013) (noting that "[c]ourts are divided as to whether a motion to strike pursuant to Rule 12(f) is the appropriate method for challenging a prayer for relief").

(Opening Br. 20-21.)   Defendant Counties gave voters an opportunity to cure perceived deficiencies in their ballots so those voters could exercise their fundamental right to vote.  The voters who cured their ballots include those whose ballots were initially rejected due to technical reasons, such as signing an Anglicized version of the voter's name in order to fit it into the "very small" signature space, omitting a secrecy envelope, or not writing an address in the voter declaration when that address was pre-printed elsewhere on the envelope.  (*See* Dkt. 31-7, ¶ 7; 31-8, ¶ 11; 31-9, ¶ 7; 31-10, ¶ 7; 31-11, ¶ 7.)  Some of these purported errors would provide no basis for a county elections office to reject a ballot in any event, as Pennsylvania courts have confirmed.   *See* Order, *Donald J. Trump for President, Inc. v. Montgomery Cnty. Bd. of Elections*, No. 2020-18680 (Pa. Ct. Com. Pl. Nov. 13, 2020) (Ex. A) (holding that votes should be counted where voters did not write their addresses on ballot declarations).

Even assuming that these counties erred by notifying voters of potential errors in their ballots, the *voters* did nothing wrong by relying upon the notice and correcting their ballots.  *See Appeal of Simon*, 46 A.2d 243, 246 (Pa. 1946) ("[T]he rights of voters are not to be prejudiced by [officials'] errors.").  Pennsylvania law expressly permits unsuccessful mail-in voters to cast a provisional ballot, *see* 25 P.S. § 3150.16(b)(2), and some voters made significant efforts to exercise that right and cast a single valid ballot.  (*See, e.g.*, Dkt. 31-8 ¶ 15 (voter drove to two locations in

a different town, in the pouring rain, to correct ballot).)  Had no notice been given, these voters still would have had every right to fix their own mistakes and cast a valid provisional ballot.  The fact that these voters followed the guidance of county election officials, reasonably expecting that their efforts to fix any problems would ensure their votes were counted, cannot be grounds for discarding their votes.

*Second*, the mass disenfranchisement sought by Plaintiffs would be even more extreme if some of the ballots they allege were improperly cured cannot be separated from other ballots that were not cured.  (*See* Dkt. 105 at 18, 42.)  That potential problem could have been avoided had Plaintiffs brought a pre-election challenge. *See supra* Section II.  But now, it would plainly be improper to remedy the problem of counties' permitting voters to fix their ballots by throwing out millions of votes that not even Plaintiffs contend were improperly cast.  (*See, e.g.*, Dkt. 31-5, ¶ 6 (voter in third trimester of high-risk pregnancy cast absentee ballot); Dkt. 31-6, ¶ 6 (voter with autoimmune disorder who voted by absentee ballot to avoid COVID-19 exposure); Dkt. 31-2, ¶ 2 (mail voter who was concerned about contracting COVID-19 due to age and race).)

*Third*, the remedy sought by Plaintiffs would create its own violations of the Equal Protection Clause that would dwarf the severity of any purported constitutional violations alleged by Plaintiffs.  (Opening Br. 18.)  Plaintiffs do not allege that the defendant counties were the *only* counties in Pennsylvania that

provided voters with notice and permitted them to cure their ballots; indeed, they admit that the Secretary of the Commonwealth provided uniform guidance to all counties that they should do so.  (Am. Compl. ¶ 129.)  And it appears that other counties likely did engage in the notice-and-cure practice recommended by the Secretary.  (Dkt. 95-1, at 52–53, Ex. C; *id.* at 56, Ex. D.)  Yet Plaintiffs seek to throw out voters' ballots in only selected counties.  This selective remedy might be advantageous to one campaign, but it would hardly remedy a complaint of differential treatment.  If Plaintiffs had their way, they would fix a supposed Equal Protection Clause violation by creating a far larger one.  *See Stein v. Cortés*, 223 F. Supp. 3d 423, 443 (E.D. Pa. 2016) (rejecting losing candidate's claims for relief where proposed remedy "would abrogate the right of millions of Pennsylvanians to select their President and Vice President").  Because Plaintiffs cite no authority demonstrating that this is permitted under the law, the Amended Complaint must be dismissed.

## CONCLUSION

The Court should dismiss the Amended Complaint.

Dated:  November 16, 2020

Respectfully submitted,

Mary M. McKenzie (PA No. 47434)**
Benjamin D. Geffen (PA No. 310134)**
Claudia De Palma (PA No. 320136)
PUBLIC INTEREST LAW CENTER
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
Telephone: (215) 627-7100
mmckenzie@pubintlaw.org
bgeffen@pubintlaw.org
cdepalma@pubintlaw.org

Shankar Duraiswamy*
David M. Zionts*
COVINGTON & BURLING LLP
One City Center
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
SDuraiswamy@cov.com
DZionts@cov.com

Rani Gupta*
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square
Palo Alto, CA 94306-2112
Telephone: (650) 632-4700
RGupta@cov.com

Kristen Clarke**
Jon Greenbaum*
Ezra Rosenberg*
LAWYERS COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300

*/s/  Witold J. Walczak*
Witold J. Walczak (PA No. 62976)
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Telephone: (412) 681-7736
vwalczak@aclupa.org

Marian K. Schneider (PA No. 50337)*
AMERICAN CIVIL LIBERTIES UNION OF
PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
Telephone: (215) 592-1513
mschneider@aclupa.org

Sophia Lin Lakin*
Adriel I. Cepeda Derieux*
Ihaab Syed*
Dale Ho*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
slakin@aclu.org
acepedaderieux@aclu.org
isyed@aclu.org
dho@aclu.org

Sarah Brannon*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW
Washington, DC 20005
Telephone: (202) 210-7287
sbrannon@aclu.org

kclarke@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org


\* Admitted *pro hac vice*
\*\* *Pro hac vice* application forthcoming

*Counsel for Intervenor-Defendants
NAACP-Pennsylvania State Conference,
Black Political Empowerment Project,
Common Cause Pennsylvania, League of
Women Voters of Pennsylvania, Joseph
Ayeni, Lucia Gajda, Stephanie Higgins,
Meril Lara, Ricardo Morales, Natalie
Price, Tim Stevens, and Taylor Stover*

## **CERTIFICATE OF WORD COUNT**

I hereby certify that the above memorandum contains fewer than 5000 words (4,551).

Dated:  November 16, 2020

*/s/  Witold J. Walczak*
Witold J. Walczak

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing reply in support of the motion to dismiss was filed electronically and served on Plaintiffs' counsel of record via the ECF system of the U.S. District Court for the Middle District of Pennsylvania.

Dated:  November 16, 2020

*/s/  Witold J. Walczak*
Witold J. Walczak