# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 4:20-cv-02078-MWB |
| KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, | ) ) ) ) | Judge Matthew W. Brann |
| Defendants. | ) ) | |

## SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND ALTERNATIVE MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

MYERS BRIER & KELLY LLP
Daniel T. Brier
Donna A. Walsh
John B. Dempsey
425 Spruce Street, Suite 200
Scranton, PA 18503
(570)-342-6011

KIRKLAND & ELLIS LLP
Daniel T. Donovan
Susan M. Davies
Michael A. Glick
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 389-5000

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
Keli M. Neary
Karen M. Romano
Nicole J. Boland
Stephen Moniak
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717)-787-2717

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of*
*Pennsylvania*

November 16, 2020

# **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................4

ARGUMENT ........................................................................................................12

I.    Plaintiffs Cannot Identify a Particularized and Non-Speculative
      Injury, and Therefore Lack Standing.............................................................12

      A.    Plaintiffs assert only a generalized grievance. ....................................13

      B.    Plaintiffs assert speculative injuries and seek ineffective
            remedies................................................................................................18

II.   Plaintiffs Fail to State an Equal Protection Claim.........................................21

      A.    Counties' use of notice-and-cure procedures for deficient mail-
            in ballots does not violate equal protection..........................................22

      B.    Plaintiffs fail to state a claim based on the alleged counting of
            ballots mailed in allegedly deficient envelopes. ..................................28

III.  The Equities and Circumstances Disfavor Federal Judicial
      Intervention....................................................................................................30

      A.    Plaintiffs do not plausibly plead entitlement to injunctive relief........31

      B.    Plaintiffs' delay and failure to pursue available state remedies is
            fatal to their claim to federal injunctive relief.....................................34

CONCLUSION .....................................................................................................39

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................30

*Barnette v. Lawrence*,
  No. 2:20-cv-05477-PBT (E.D. Pa.) ....................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................30

*Bognet v. Secretary of the Commonwealth of Pennsylvania*,
  --- F.3d ---, 2020 WL 6686120 (3d Cir. Nov. 13, 2020) .. 1, 2, 8, 9, 10, 11, 12, 14,
  15, 16, 17, 18, 19

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ..............................................................................19

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................19

*Donald J. Trump for President, Inc. v. Bullock*,
  --- F. Supp. 3d ----, 2020 WL 5810556 (D. Mont. Sept. 30, 2020) ....................27

*Donald J. Trump for President, Inc. v. Cegavske*,
  --- F. Supp. 3d ----, 2020 WL 5626974 (D. Nev. Sept. 18, 2020) ........................14

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ...............................................................29

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) ........................................................................13

*Golden v. Gov't of the Virgin Islands*,
  2005 WL 6106401 (D.V.I. Mar. 1, 2005) ...........................................36

*Green v. Irvington Police Dep't*,
  723 F. App'x 172 (3d Cir. 2018) .........................................................30

*Hendon v. N.C. State Bd. of Elections*,
   710 F.2d 177 (4th Cir. 1983) ................................................................37

*Hotze v. Hollins*,
   2020 WL 6437668 (S.D. Tex. Nov. 2, 2020) ........................................15

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ................................................................29

*In re Luzerne Cty. Return Bd.*,
   290 A.2d 108 (Pa. 1972).......................................................................28

*Jackman v. Rosenbaum Co.*,
   260 U.S. 22 (1922)...............................................................................27

*Kovarik v. S. Annville Twp.*,
   2018 WL 1428293 (M.D. Pa. Mar. 22, 2018) .............................. 11, 30

*Lac D'Amiante du Quebec, Ltee v. Am. Home Assur. Co.*,
   864 F.2d 1033 (3d Cir. 1988) ..............................................................38

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)....................................................................... 12, 19

*Marks v. Stinson*,
   19 F.3d 873 (3d Cir. 1994) ..................................................................34

*Martel v. Condos*,
   --- F. Supp. 3d ----, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020).... 12, 13, 15

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010)............................................................................32

*Moore v. Circosta*,
   --- F. Supp. 3 ----, 2020 WL 6063332 (M.D.N.C. Oct. 14, 2020)................. 13, 15

*Ne. Ohio Coal. for the Homeless v. Husted*,
   837 F.3d 612 (6th Cir. 2016) ..............................................................27

*Org. for Black Struggle v. Ashcroft*,
   978 F.3d 603 (8th Cir. 2020) ..............................................................33

*Pa. Democratic Party v. Boockvar*,
  2020 WL 5554644 (Pa. Sept. 17, 2020) ..................................................... 5, 28, 32

*Pa. Democratic Party v. Republican Party of Pa.*,
  2016 WL 6582659 (E.D. Pa. Nov. 7, 2016) ........................................................37

*Pa. Voters Alliance v. Centre Cty.*,
  --- F.3d ---, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020) ....................................15

*Paher v. Cegavske*,
  457 F. Supp. 3d 919 (D. Nev. 2020)............................................................. 15, 26

*Perles v. Cty. Return Bd. of Northumberland Cty.*,
  415 Pa. 154 (1964) ................................................................................................32

*Peterson v. Ivins*,
  1990 WL 39831 (E.D. Pa. Apr. 2, 1990) .............................................................11

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ................................................................................29

*Pileggi v. Aichele*,
  843 F. Supp. 2d 584 (E.D. Pa. 2012) ..................................................................32

*Samuel v. V.I. Joint Bd. of Elections*,
  2013 WL 842946 (D.V.I. Mar. 7, 2013)...............................................................22

*Shambach v. Bickhart*,
  845 A.2d 793 (Pa. 2004) ......................................................................................28

*Short v. Brown*,
  893 F.3d 671 (9th Cir. 2018) ...............................................................................24

*Sibley v. Alexander*,
  916 F. Supp. 2d 58 (D.D.C. 2013) .......................................................................19

*Soules v. Kauaians for Nukolii Campaign Committee*,
  849 F.2d 1176 (9th Cir. 1988) .............................................................................36

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) .........................................................................................12

*Stein v. Cortés*,
   223 F. Supp. 3d 423 (E.D. Pa. 2016) ....................................................36

*Tex. League of United Latin Am. Citizens v. Hughs*,
   --- F.3d. ----, 2020 WL 6023310 (5th Cir. Oct. 12, 2020) ...................24

*Wexler v. Anderson*,
   452 F.3d 1226 (11th Cir. 2006) ...........................................................27

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................31

## Statutes

25 Pa. Cons. Stat. § 3046 ........................................................................36

25 Pa. Cons. Stat. § 3050(a.4)(4) ............................................................37

25 Pa. Cons. Stat. § 3050(a.4)(4)(v) .......................................................37

25 Pa. Cons. Stat. § 3150.16(a) ................................................................4

25 Pa. Cons. Stat. § 3150.16(b)(2) ..........................................................31

25 Pa. Cons. Stat. § 32911 ......................................................................38

25 Pa. Cons. Stat. § 3351 ........................................................................38

25 Pa. Cons. Stat. § 3456 ........................................................................38

42 Pa. Cons. Stat. § 764(1) ......................................................................38

Fed. R. Civ. P. 12(b)(1) ...........................................................................13

Fed. R. Civ. P. 12(b)(6) ...........................................................................21

Fed. R. Civ. P. 8 .......................................................................................3

Fed. R. Civ. P. 8(a)(2) ....................................................................... 22, 28

## **INTRODUCTION**

Notwithstanding Plaintiffs' attempt to fashion their Amended Complaint in a manner that avoids the Third Circuit's controlling decision in *Bognet v. Secretary of the Commonwealth of Pennsylvania*, --- F.3d ---, 2020 WL 6686120 (3d Cir. Nov. 13, 2020), the Amended Complaint merits dismissal for all the same reasons that the Third Circuit affirmed the dismissal at issue in that case, as well as other grounds as set forth in the Secretary's motion to dismiss the original Complaint.

Plaintiffs' Amended Complaint eliminates numerous allegations and abandons several claims, leaving only one count alleging that Defendants violated Plaintiffs' Federal Equal Protection rights because voters in some counties were able to "cure" deficiencies in their mail-in ballots and others were permitted to vote a provisional ballot if their mail-in ballot was not accepted (Count I).  Given such amendment—which obviates the need for the Court to address several arguments made in the Secretary's motion to dismiss the original Complaint—the Secretary requests that the Court construe this pleading as both a reply in support of the Secretary's motion regarding the original Complaint as well as streamlined brief in support of the Secretary's motion to dismiss the Amended Complaint, which was filed last evening (ECF No. 127).  And of course, this reply accounts for the intervening decision in *Bognet*, which came the day after the Secretary filed her original motion and which confirms Plaintiffs' claims must be dismissed.

Three independent grounds require dismissal of the Amended Complaint:

*First*, Plaintiffs lack standing to pursue their sole remaining Equal Protection claim, which constitutes a mere generalized grievance and which still rests upon conjectural theories of supposed harm.  This jurisdictional defect—made all the more clear by the Third Circuit's thorough analysis and decision in *Bognet*—remains fatal to Plaintiffs' lawsuit, even as amended.

*Second*, Plaintiffs fail to state a plausible claim for a violation of the Equal Protection Clause based on certain counties allegedly counting defective mail-in ballots.  Once again, Plaintiffs' attempt to manufacture federal constitutional violations out of garden-variety state election disputes finds no home in the caselaw and would be an unprecedented extension of federal judicial power.  With specific respect to the "cure" option allegedly afforded by some counties, Plaintiffs fail to identify how one county's offering an opportunity for a voter to cure his or her defective ballot before the close of the polls could possibly burden the rights of a voter in a separate county.  It could not; there is no suggestion that the voters who sought to "cure" their ballots did so fraudulently or sought to have two votes count in the election—they simply attempted to vote in a manner so their (single) vote would count.  And with regard to Plaintiffs' allegations pertaining to the supposed counting of ballots transmitted in defective envelopes, Plaintiffs' bare allegation that certain, unidentified "Democrat-leaning counties" counted ballots from voters who

"failed to fill out their mail or absentee ballot envelopes" is devoid of any detail whatsoever and falls far short of Rule 8's plain requirements.

*Third*, neither the law nor the equities permit the extraordinary relief sought by Plaintiffs, namely their eleventh-hour request that this Court bar the certification of the Commonwealth's election results and deny the democratic will and voting rights of nearly 7 million Pennsylvanians.  Once again, the relief requested is substantially disproportionate to the irregularities alleged in the Amended Complaint.  And such relief is particularly unwarranted at this stage given the prior state court decisions denying the Trump Campaign relief on such issues (which they are not entitled to collaterally attack in this Court) as well as Plaintiffs' failure to exercise other statutorily prescribed state-court avenues to address these issue on or after Election Day.

The voters of Pennsylvania have spoken.  The counties are busy finishing the tabulation of those votes and the Secretary is preparing to certify the results.  The Court should deny Plaintiffs' attempt to interfere with that process, and should dismiss the Amended Complaint with prejudice.

# BACKGROUND[1]

The Commonwealth has a long and proud history of conducting fair and free elections. Consistent with that history, in late 2019, the Pennsylvania General Assembly passed and Governor Wolf signed Act 77, which reformed the Commonwealth's Election Code. Am. Compl. ¶¶ 63-64. Act 77 made several changes to the Election Code, but the most consequential was the extension of no-excuse mail-in voting to all qualified electors. *Id*.

In preparation for the November 2020 General Election, which was the first General Election conducted since the enactment of Act 77, the Pennsylvania Department of State, under the direction of Secretary of the Commonwealth Kathy Boockvar, issued numerous guidance documents to all 67 counties with regard to canvassing and counting of mail-in and absentee ballots. Such guidance included, among other things, instructions regarding the requirements for counting or setting aside ballots depending on whether they met certain requirements in the Election Code pertaining to signatures, dates, and other envelope requirements, as well as the use of provisional ballots. *See, e.g.*, Sept. 28, 2020 Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures (Ex. 10); Oct. 21, 2020 Provisional Voting

---

[1] The Secretary included a more fulsome recitation of the history in her memorandum in support of its motion to dismiss the original Complaint, but only includes here the history relevant to the claims in the Amended Complaint.

Guidance (Ex. 11).[2]   All guidance was contemporaneously sent to each of Pennsylvania's 67 county boards of elections and made available to the public through the Department of State's public website.   *See* https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Pages/Election-Adminstration-Tools.aspx.

At the same time, the Secretary was engaged in various pre-Election Day lawsuits regarding, among other things, the requirements for mail-in ballots.  As pertinent to the Amended Complaint, on September 17, 2020, the Pennsylvania Supreme Court addressed a suit brought by the Pennsylvania Democratic Party that would have affirmatively required Pennsylvania's counties to notify voters of a defect in their mail-in ballot and offer them an opportunity to cure it even after Election Day.  *See Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020).  In resolving that question, the Court held that county boards "are not required to implement a 'notice and opportunity to cure' procedure for mail-in and absentee ballots that voters have filled out incompletely or incorrectly." *Id.* at 374.  Notably, however, the Court did not determine—nor was it even asked to determine—whether

---

[2] Citations to Exhibits 1-9 are to the exhibits filed with the Secretary's Memorandum of Law in Support of Motion to Dismiss (ECF Nos. 93-1 to 93-9) and citations to Exhibits 10-12 are to the exhibits being filed with this reply.

counties were *permitted* to provide such notification even if the Election Code and state constitution did not affirmatively *require* it.

In light of the ongoing COVID-19 pandemic, and many citizens' concomitant fear of in-person voting during that pandemic, Pennsylvania's county boards of elections received and fulfilled millions of mail-in ballot applications for the November election (in excess of 100,000 mail-in ballots each in six of the seven counties named as Defendants). In preparation for pre-canvassing those ballots, counties inquired with the Department of State as to whether they could disclose the names of voters whose mail-in ballots were defective. In response, on November 2, the Department of State uniformly advised all 67 county boards that they were permitted to provide candidate and party representatives with information regarding voters whose mail-in ballots were rejected as defective, and encouraged the boards to provide such notification publicly. The Department also referred to the Secretary's earlier October 21 provisional ballot guidance, which explained—consistent with the Pennsylvania Constitution's commitment to protecting the franchise—that voters whose completed mail-in ballots were rejected for reasons unrelated to the voter's qualifications may be issued a provisional ballot at the polls.

Beginning on Election Day, state and federal courts in Pennsylvania have decided numerous cases pertinent to the allegations asserted by Plaintiffs in this case.

First, with regard to Plaintiffs' challenge to the noticing of mail-in ballot defects, state courts in Bucks, Northampton, and Philadelphia Counties denied Election Day requests by the Trump Campaign and others to prohibit the disclosure of voided or cancelled ballots during the pre-canvassing process. *See* Order, *Donald J. Trump for President, Inc. v. Bucks Cty. Bd. of Elections*, No. 2020-05627 (Pa. Ct. Com. Pl. Bucks Cty. Nov. 3, 2020) (Ex. 1); Order of Court, *In re Mot. for Injunctive Relief of Northampton Cty. Republican Comm.*, No. C-48-CV-2020-6915 (Pa. Ct. Com. Pl. Northampton Cty. Nov. 3, 2020) (Ex. 2); Order, *In re General Election Pre-Canvas*, No. 7501 (Pa. Ct. Com. Pl. Philadelphia Cty. Nov. 3, 2020) (Ex. 3).  In a fourth case, the plaintiffs (a Republican congressional candidate and party county chairman) originally sought a temporary restraining order in the Eastern District of Pennsylvania pertaining to Montgomery County's allowing of voters to cure certain ballot defects, but later withdrew that request and then voluntarily dismissed their action rather than contest the county's motion to dismiss.  *See Barnette v. Lawrence*, No. 2:20-cv-05477-PBT (E.D. Pa.).  And in a fifth case, brought in Commonwealth Court, the Secretary did not object to an injunction segregating provisional ballots cast by voters who sought to cure defects in their mail-in ballots so that the plaintiffs could challenge those provisional ballots, if necessary, in accordance with the Election Code's standard procedures for addressing provisional ballots (*i.e.*, at

public sessions of each county board).  *See* Order, *Hamm v. Boockvar*, No. 600 MD 2020 (Pa. Commw. Ct. Nov. 6, 2020) (Ex. 4).  That order remains effective.

Additionally, on October 22, a Congressional candidate and three individual voters asserted claims in the Western District of Pennsylvania under the Federal Constitution's Equal Protection Clause and Elections and Electors Clauses challenging the Pennsylvania Supreme Court's extension of the deadline for the receipt of mail-in ballots.  *See Bognet v. Boockvar*, No. 3:20-cv-00215-KRG (W.D. Pa.).  After the Western District denied plaintiffs' request for a temporary restraining order, they took an expedited appeal to the Third Circuit.  On November 13, the Third Circuit issued a unanimous precedential decision affirming the district court's decision.  As relevant here, Chief Judge D. Brooks Smith, writing for the panel, reaffirmed that "[f]ederal courts are not venues for plaintiffs to assert a bare right to have the Government act in accordance with law."  *Bognet v. Sec'y of the Commonwealth of Pa.*, --- F.3d ----, 2020 WL 6686120, at *6 (3d Cir. Nov. 13, 2020) (citation omitted).  Specifically, the Court held that "private plaintiffs lack standing to sue for alleged injuries attributable to a state government's violations of the Elections Clause."  *Id.*; *see also id.* at *7 (same logic applies to the Electors Clause).  The Court further specifically elaborated that the candidate plaintiff in that case did not have standing because he could "not explain how counting *more* timely cast votes would lead to a less competitive race, nor [could] he offer any evidence

tending to show that a greater proportion of mailed ballots received after Election Day than on or before Election Day would be cast for [his] opponent," and similarly held that for the candidate to have standing to enjoin the counting of certain ballots, he would have to show that such votes would be sufficient in number to change the outcome of his race.  *See id.* at *8.

With regard to the individual voter plaintiffs, the Third Circuit held that they lacked standing to pursue claims against Secretary Boockvar and county election boards under the Equal Protection Clause alleging vote dilution and arbitrary and disparate treatment because such harm is neither concrete nor particularized.  *Id.* at *9-17.  The court held that the plaintiffs' "conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment."  *Id.* at *11. Furthermore, the court concluded, the alleged counting of improper votes is a mere generalized grievance which is insufficient to confer standing.  *Id.* at *12-14.  The Court wrote:  "Allowing standing for such an injury strikes us as indistinguishable from the proposition that a plaintiff has Article III standing to assert a general interest in seeing the proper application of the Constitution and laws—a proposition that the Supreme Court has firmly rejected."  *Id.* at *14 (citation omitted).

The Secretary promptly notified the Court of the Third Circuit's decision in *Bognet* later that day.  ECF No. 120.

Notwithstanding the *Bognet* decision, yesterday, November 15, Plaintiffs filed an Amended Complaint.  In relevant part, Amended Complaint modifies the original Complaint as follows:

(i)     Plaintiffs no longer assert causes of action concerning Pennsylvania counties' canvass observation practices (formerly Counts I-III of the original Complaint);

(ii)    Plaintiffs abandon their claims arising under the Due Process Clause of the Fourteenth Amendment (formerly Counts I and IV of the original Complaint);

(iii)   Plaintiffs also functionally drop their claims under the Elections and Electors Clauses of the U.S. Constitution (original Compl. Counts III, V, VII), instead asserting a claim under those clauses (Am. Compl. Count II) only for preservation purposes, *see* Pls.' Resp. to Defs.' Mots. to Dismiss (ECF No. 126) ("Opp'n") at 2 n.1; and

(iv)    Without adding any new specific allegations as to which counties counted such ballots and in what circumstances, Plaintiffs add a new allegation as part of their Equal Protection claim that "voters in Republican-leaning counties who failed to fully fill out their mail or absentee ballot envelopes had their ballots rejected, while voters in Democrat-leaning counties who similarly failed to fill out their mail or absentee ballot envelopes had their ballots counted."  *See* Am. Compl. (ECF No. 125) ¶ 158.

The Secretary now moves to dismiss the Amended Complaint.  In doing so, given Plaintiffs' concession that they lack standing to assert their Elections and Electors Clause challenge (Count II) under *Bognet*, and that such count is included merely "to preserve it for appellate review," *see* Opp'n at 2 n.1, the Secretary does not address that Count here.  However, those sections of the Secretary's motion to dismiss the original Complaint would still apply to that count, *see, e.g.* ECF No. 93

at §§ II.C, III.C, which arguments would only be bolstered by *Bognet*.

Likewise, the Secretary does not endeavor here to respond to every isolated incident and issue raised in the Amended Complaint but which does not relate to or appear in Plaintiffs' actual claims.  Like the original Complaint, the Amended Complaint features a variety of allegations untethered to the actual claims asserted by Plaintiffs (Counts I or II).  This includes Plaintiffs' stray allegations of purported "uneven treatment of watchers and representatives at the county election boards' canvassing of ballots," which appear in the body of the Amended Complaint, *see* Am. Compl. ¶¶ 132-50, but which have been stripped out of—and have no bearing on—Plaintiffs' actual claims.  *See* Redlined Am. Compl. (ECF No. 125-1) at 63-74 (deleting causes of action based on "Regulations Affecting Observation and Monitoring of the Election"); *see also id.* at 60 (deleting ¶ 150 in original Complaint alleging differential canvass observer access by county).  Those allegations therefore cannot form the basis for any purported relief, and the Secretary does not re-address the substantial flaws with such allegations here.  *See, e.g.*, *Kovarik v. S. Annville Twp.*, 2018 WL 1428293, at *7 (M.D. Pa. Mar. 22, 2018) (dismissing complaint with prejudice where it was "peppered with vague and conclusory factual allegations that are not clearly tied to any particular cause of action"); *Peterson v. Ivins*, 1990 WL 39831, at *2 (E.D. Pa. Apr. 2, 1990) (dismissing complaint that "contain[ed] numerous extraneous allegations which are irrelevant to the underlying claims").

## ARGUMENT

**I.    Plaintiffs Cannot Identify a Particularized and Non-Speculative Injury, and Therefore Lack Standing.**

Article III and the Supreme Court's precedent interpreting it are clear: a plaintiff must have standing to invoke federal jurisdiction, which requires that the plaintiff demonstrate it has suffered an injury-in-fact that is concrete and particularized, and actual or imminent; fairly traceable to the defendant's challenged conduct; and likely to be redressed by a favorable judgment. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).   Such standing considerations place important limits on federal judicial authority and have "an extensive history in the context of challenges to election practices." *Martel v. Condos*, --- F. Supp. 3d ----, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020); *see also Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d ----, 2020 WL 5997680, at *31 (W.D. Pa. Oct. 10, 2020) ("Standing is particularly important in the context of election-law cases . . . .").

The Third Circuit's precedential opinion in *Bognet* faithfully applies these principles.  Chief Judge Smith explained in the plainest terms:  "[I]f the injury that you claim is an injury that does no specific harm to you, or if it depends on a harm that may never happen, then you lack an injury for which you may seek relief from a federal court." *Bognet*, 2020 WL 6686120, at*6.  That decision is fatal to Plaintiffs' lone remaining claim under the Equal Protection Clause.  In particular,

Plaintiffs lack Article III standing for such a claim based on the counting of certain allegedly unlawful votes because they fail to assert particularized, concrete injuries, but rather assert only generalized and speculative grievances. The Court should therefore dismiss that claim pursuant to Rule 12(b)(1).

### A.   Plaintiffs assert only a generalized grievance.

First, Plaintiffs' challenge to the counting of certain mail-in votes is a quintessential generalized objection to state and county election policies. But "the Supreme Court continues to decline to extend standing to plaintiffs asserting generalized objections to state election laws." *Martel*, 2020 WL 5755289, at \*4 (citing *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018)). The premise of Plaintiffs' challenge is that the counting of certain "invalid" votes may dilute what they believe are validly cast ballots. But such an undifferentiated allegation that validly cast ballots "will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing." *Moore v. Circosta*, --- F. Supp. 3d ----, 2020 WL 6063332, at \*14 (M.D.N.C. Oct. 14, 2020). That is because all Pennsylvania voters stand to suffer the same vote dilution if a fraudulent or illegal vote is counted and, absent allegations of a specific fraud, the injury is not particularized to Plaintiffs—neither to the Trump Campaign nor the individual voter Plaintiffs. Indeed, neither individual Plaintiff alleges that *his* particular vote was somehow diluted in a manner distinct from all other

Pennsylvania voters, nor does the Trump Campaign allege that it has a particularized injury relating to alleged vote dilution from these practices.

*Bognet* squarely forecloses Plaintiffs' attempts to manufacture a particularized injury here. There, the Third Circuit precedentially held that plaintiffs lack standing to bring claims under the Equal Protection Clause alleging, among other things, vote dilution because such harm was neither concrete nor particularized. *See* 2020 WL 6686120, at *9-17. Importantly, the Court decisively rejected the "conceptualization of vote dilution" as injury, holding that "counting ballots in violation of state election law . . . is not a concrete harm under the Equal Protection Clause." *Id.* at *11. The Court further held that the alleged counting of improper votes is a generalized grievance that is insufficient to confer standing. *See id.* at *12-14. The *Bognet* decision was no outlier: multiple other federal courts have likewise declined to find standing in light of these types of unsubstantiated generalized claims in similar cases in recent weeks and months, including ruling against the Trump Campaign itself.[3]

_____

[3] *See, e.g.*, *Donald J. Trump for President, Inc. v. Cegavske*, --- F. Supp. 3d ----, 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020) ("Even if accepted as true, plaintiffs' pleadings allude to vote dilution that is impermissibly generalized. The alleged injuries are speculative as well, but their key defect is generality." (citation omitted)); *id.* ("As with other '[g]enerally available grievance[s] about the government,' plaintiffs seek relief on behalf of their member voters that 'no more directly and tangibly benefits [them] than it does the public at large.'" (brackets in original) (citations omitted)); *Pa. Voters Alliance v. Centre Cty.*, --- F. Supp. 3d ----,

In light of Plaintiffs' own allegations, *Bognet* deals a knock-out blow to their conception of standing.   Just as in *Bognet*, Plaintiffs' claims here are not particularized to them; all they have alleged is an undifferentiated concern that some electors may have been treated unequally.   That kind of generalized injury is not sufficient to confer Article III standing, which requires that plaintiffs in federal court identify an individualized injury.   *See Bognet*, 2020 WL 6686120, at *12 ("Such an alleged 'dilution' is suffered equally by all voters and is not 'particularized' for standing purposes."); *see also Hotze v. Hollins*, 2020 WL 6437668, at *1 (S.D. Tex. Nov. 2, 2020) ("Plaintiffs' general claim that Harris County's election is being administered differently than Texas's other counties does not rise to the level of the sort of particularized injury that the Supreme Court has required for constitutional standing in elections cases.").

---

2020 WL 6158309, at *4-5 (M.D. Pa. Oct. 21, 2020)  (allegation that plaintiffs' vote will be diluted by increased voter turnout in other counties is "precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court has] refused to countenance in the past" (brackets in original) (citation omitted)); *Moore*, 2020 WL 6063332, at *14 (holding that plaintiffs lacked standing to bring vote-dilution claims because "all voters in North Carolina . . . would suffer the injury Individual Plaintiffs allege"); *Martel*, 2020 WL 5755289, at *4-5 ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926-27 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter.  Such claimed injury therefore does not satisfy the requirement that Plaintiffs must state a concrete and particularized injury.").

Moreover, Plaintiffs' entire equal-protection theory for why they are allegedly being discriminated against is that their votes were not counted, whereas the "illegal" votes of other electors were counted.   That boils down to nothing more than a grievance that the Election Code was not uniformly followed.   But the Third Circuit explained in *Bognet* that "if dilution of lawfully cast ballots by the 'unlawful' counting of invalidly cast ballots were a true equal-protection problem, then it would transform every violation of state election law . . . into a potential federal equal-protection claim . . . .   That is not how the Equal Protection Clause works."   2020 WL 6686120, at *11 (citation omitted); *see also id.* at *12 ("'[A] vote' . . . counted illegally[] 'has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged.'   Such an alleged dilution is suffered equally by all voters and is not particularized for standing purposes.") (citation omitted).

Likewise, *Bognet* confirms that the Trump Campaign specifically does not and cannot "plead a cognizable injury by . . . pointing to a 'threatened' reduction in the competitiveness of his election from counting [additional] ballots."   *Id.* at *8; *contra* Opp'n at 5.   In accordance with *Bognet*, allowing additional ballots to be counted in this case would not affect the Trump Campaign "in a particularized way when, in fact, all candidates in Pennsylvania, including [President Trump's]

16

opponent, are subject to the same rules."  2020 WL 6686120, at *8.  Such theory thus offers the Trump Campaign no outlet either.

Faced with the unambiguous (and devastating) effect of *Bognet* on their lone remaining claim, Plaintiffs attempt to pivot in their Amended Complaint by striking numerous—but notably not all—allegations pertaining to vote dilution, and insisting in their Opposition that they are really concerned with vote "denial," not "dilution." *Compare, e.g.*, Redline Am. Compl. (ECF No. 125-1) ¶¶ 2, 8, 121, 177 (striking allegations referencing "dilution"), *with id.* ¶¶ 97, 102 (retaining allegations citing alleged "dilution"); Opp'n at 4.  But notably, the term "denial" does not appear in any of the Amended Complaint's allegations, and logic confirms that the individual Plaintiffs are not concerned with the fact that their votes were "denied": if they were, they surely would have named the counties that "denied" those votes (Lancaster County in the case of Mr. Henry and Fayette County in the case of Mr. Roberts, *see* Am. Compl. ¶¶ 15-16) among the Defendant counties in this case.  And notably, Plaintiffs' requested relief would not even result in their "denied" votes being counted; to the contrary, it would only disenfranchise *other* Pennsylvanians who cured their ballots in an attempt to participate in the election (and in fact their primary request in this case would disenfranchise millions of Pennsylvania voters by enjoining the statewide certification of their votes, *see infra* § III).  *See* Am. Compl. at 62 (seeking to prohibit the certification of election results that "include

the tabulation of absentee and mail-in ballots which Defendants improperly permitted to be cured"). Plaintiffs cannot dance around *Bognet*'s square application through an immaterial and unsupported manipulation of terminology.

It is clear from Plaintiffs' own allegations that what they are concerned about is that some counties did not follow the law (as Plaintiffs incorrectly interpret it) while others allegedly did. *Bognet* confirmed this is a quintessential generalized grievance that cannot support a finding of Article III standing. *See* 2020 WL 6686120, at *14 ("Allowing standing for such an injury strikes us as indistinguishable from the proposition that a plaintiff has Article III standing to assert a general interest in seeing the 'proper application of the Constitution and laws—a proposition that the Supreme Court has firmly rejected." (citation omitted)). Rather, "when voters cast their ballots under a state's facially lawful election rule and in accordance with instructions from the state's election officials, private citizens lack Article III standing to enjoin the counting of those ballots on the grounds that . . . doing so dilutes their votes or constitutes differential treatment of voters in violation of the Equal Protection Clause." *Id.* at *18. Plaintiffs thus lack standing to bring such a challenge.

### B. Plaintiffs assert speculative injuries and seek ineffective remedies.

Plaintiffs also fail to allege an "actual or imminent" injury, as opposed to one that is merely "conjectural" or "hypothetical." *Clapper v. Amnesty Int'l USA*, 568

18

U.S. 398, 402, 409 (2013)); *Lujan*, 504 U.S. at 560 (citations omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983).  And the Trump Campaign fails to identify or seek any effective remedy for its claimed injury.  *See Lujan*, 504 U.S. at 559-61.

For one, the Trump Campaign has not alleged (nor can they) that the outcome of the presidential election in Pennsylvania would change by excluding cured or allegedly mis-counted ballots from the vote count, which currently reflects a vote disparity between former Vice President Biden and President Trump of more than 69,000 votes. *See 2020 Presidential Election Unofficial Returns*, Pennsylvania Department of State (Nov. 16, 2020, 11:36 a.m.), https://www.electionreturns.pa.gov.  Again, *Bognet* makes clear that to establish standing in circumstances like this—and in particular for the extraordinary relief of enjoining the certification of statewide results—the challenged votes "would have to be sufficient in number to change the outcome of the election to [the Trump Campaign]'s detriment."  2020 WL 6686120, at *8 (citing *Sibley v. Alexander*, 916 F. Supp. 2d 58, 62 (D.D.C. 2013) ("[E]ven if the Court granted the requested relief, [plaintiff] would still fail to satisfy the redressability element [of standing] because enjoining defendants from casting the . . . votes would not change the outcome of the election.")).

Moreover, the Trump Campaign's allegations are insufficient in alleging an "imminent" injury, particularly because Plaintiffs do not even allege that any particular county has actually counted any such "cured" or defective mail-in ballots. In fact, Plaintiffs only even attempt to advance specific allegations regarding the processes in a single county (Philadelphia), Am. Compl. ¶¶ 127-28, and even then, Plaintiffs only allege that the County "allowed those voters to cure" ballot envelope defects "by casting a 'provisional ballot on Election Day' or requesting 'a replacement ballot at a satellite election office,'" *id.* ¶ 127 (citation omitted). Plaintiffs nowhere allege that any such voter actually cast such a ballot or made such a request (let alone how many), nor do they allege that Philadelphia actually counted such provisional ballots.[4]  With regard to the other Defendant counties, Plaintiffs do not even allege that any of them actually permitted such cures or has counted such votes.  Finally, the Trump Campaign can only speculate that the curing of some unidentified number of ballots in certain counties (which they do not even identify) accrued to their detriment.  Because they are textbook speculative, Plaintiffs' claimed injuries deprive them of standing and merit dismissal.

---

[4] Indeed, the Trump Campaign elected not to inform this Court that it is pursuing challenges under the Election Code to provisional ballots cast in Philadelphia and elsewhere.

## II.    Plaintiffs Fail to State an Equal Protection Claim.

Even if Plaintiffs' remaining claim was justiciable, it must be dismissed under Rule 12(b)(6) because Plaintiffs' allegations, even if true, fail to state cognizable claims.  In their Amended Complaint, Plaintiffs attempt to manufacture a claim under the Federal Equal Protection Clause based on (i) certain unidentified counties' alleged use of notice-and-cure procedures to allow voters who originally cast defective mail-in ballots to "cure" those defects before the close of the polls and—again allegedly—to have those votes counted, and (ii) certain again-unidentified counties' counting of ballots that were allegedly not included in "fully fill[ed] out" envelopes.  Am. Compl. ¶ 158.  Not only do Plaintiffs fail to plead sufficient facts to state a claim under either theory even at this juncture (including providing any specifics as to the counties that engaged in the identified practices or even identifying what such practices were), but even taking the few facts Plaintiffs allege as true, they fail to state any federal equal protection violation that would justify their extraordinary requested relief.  Rather, the Amended Complaint continues to try to manufacture federal constitutional violations out of what are, at most, "[g]arden variety" election irregularities.  *Boockvar*, 2020 WL 5997680, at *49 ("'Garden variety' election irregularities . . . are simply not a matter of federal constitutional concern 'even if they control the outcome of the vote or election.'" (quoting *Bennett*

*v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998)); *see also Samuel v. V.I. Joint Bd. of Elections*, 2013 WL 842946, at *7 (D.V.I. Mar. 7, 2013) (collecting cases).

### A.   Counties' use of notice-and-cure procedures for deficient mail-in ballots does not violate equal protection.

Plaintiffs fail in attempting to convert efforts by some counties to allow voters to cure their defective mail-in ballots before the close of the polls into some sort of nefarious constitutional violation.

As an initial matter, Plaintiffs' allegations as to the "cure" process fail to satisfy even the basic pleading requirements of Rule 8(a)(2), which requires a "showing that the pleader is entitled to relief."  As set forth above, Plaintiffs here do not even allege that any particular county has actually counted any such "cured" or defective mail-in ballots.  In fact, the only county against whom Plaintiffs levy specific allegations regarding the "cure" process is Philadelphia, *see* Am. Compl. ¶¶ 127-28, and even with regard to Philadelphia, Plaintiffs do not even allege that it has actually counted any of the cured ballots.  And Plaintiffs do not offer any specific allegation as to *any* of the six other Defendant counties, including that any of those counties actually permitted such cures or have counted such votes.

Even setting aside that fundamental pleading failure, Plaintiffs fail to identify any burden that some counties' notice-and-cure practices for defective mail-in ballots placed on the rights of voters in counties that did not embrace available means to allow for voters to cure such ballots.  Even as Plaintiffs allege it, the limited

number of voters who cured (or attempted to cure) their ballots did not seek to have two ballots count in the election; they merely sought to remedy an originally defective ballot, so their vote could count—once—and they did so before the close of the polls on Election Day.  Plaintiffs offer no suggestion that the "cured" votes were fraudulent or that the limited number of voters who exercised this option were not eligible to vote; they only allege that voters "curing" some minor discrepancy violates the Election Code, and thus must also violate the Federal Constitution.

More fundamentally, there is no allegation—nor could there be—that the alleged cure practices in any way changed the voting options or otherwise affected the ability for voters (including the voter Plaintiffs) to cast their votes, even in the counties that did not publicize notice-and-cure procedures.  Put simply, giving some voters an option to protect their franchise does not burden *other* voters' (or a political campaign's) rights—even if they were not afforded that option—because there was never any infringement on any individual's right to vote all.  All that the Federal Constitution requires is that each individual have the opportunity to exercise the fundamental right to vote, un-infringed by state action.  Plaintiffs' contention that they suffered harm simply because other voters' ballots were counted runs counter to well-settled democratic principles.  Indeed, several courts have held that a practice that makes it easier for some individuals to vote does not create a cognizable burden for others.  For instance, in *Short v. Brown*, the Ninth Circuit addressed a similar

scenario, where some California counties opted into a new law allowing them to automatically mail ballots to all registered voters and other counties did not, requiring voters in those other counties to instead apply for mail-in ballots. *See* 893 F.3d 671, 674-75 (9th Cir. 2018). The Ninth Circuit affirmed a district court's denial of a preliminary injunction based on a supposed Equal Protection violation brought by voters in the non-opt-in counties, finding that, as to "voters outside the counties that have opted in to the all-mailed system, their access to the ballot is exactly the same as it was prior to the [new law]'s enactment. *Id.* at 677. The court contrasted that case with a scenario where "the state effectively penalize[s] one class while preserving the favorable status quo for another." *Id.* (distinguishing *Obama for Am. v. Husted*, 697 F.3d 423 (6th Cir. 2012), which invalidated an Ohio law that shortened the early voting period for the general population but not for military personnel). Because Plaintiffs here have likewise not "cited any authority explaining how a law that makes it easier to vote would violate the Constitution," *Short*, 893 F.3d at 677-78, they similarly cannot establish any Equal Protection violation. *See also Tex. League of United Latin Am. Citizens v. Hughs*, --- F.3d. ----, 2020 WL 6023310, at *5-8 (5th Cir. Oct. 12, 2020) (finding it a "mystery" how the "expansion of voting opportunities burdens anyone's right to vote"); *Boockvar*, 2020 WL 5997680, at *41-43 (holding that counties' differential use of drop boxes did not

give rise to equal protection violation because it did not burden the plaintiffs' right to vote).

Because Plaintiffs cannot demonstrate any burden on their own right to vote from allowing other citizens to cure their defective ballots before the close of the polls, rational basis review of the notice-and-cure procedures applies. *See Husted*, 697 F.3d at 429 ("If a plaintiff alleges only that a state treated him or her differently than similarly situated voters, without a corresponding burden on the fundamental right to vote, a straightforward rational basis standard of review should be used."). Here, there are ample rational bases why the Defendant counties might have allowed correction of mail-in ballot defects—not the least of which is that it protects their citizens' right to have their votes counted.  For instance, counties with higher rates of mail-in voting may have wanted to implement notice-and-cure procedures to reduce disenfranchisement of first-time mail-in voters, particularly given Pennsylvania's newly expanded mail-in voting system and the ongoing pandemic. Likewise, counties may have chosen to allocate resources differently in the run-up to Election Day, with some determining that dedicating attention to ensuring their citizens' enfranchisement was a worthwhile use of resources.

Moreover, Plaintiffs do not allege that the counties applied the cure procedures discriminatorily.  Plaintiffs attempt to argue that because counties with more Democratic voters were allegedly more likely to adopt notice-and-cure

procedures than counties with more Republican voters, it stands to reason that defective Republican mail-in ballots were less likely to be cured than defective Democratic ballots (even though they never specify which counties adopted such cure procedures). *See* Am. Compl. ¶¶ 6, 131. This argument misses the mark. Plaintiffs do not allege, nor could they, that counties with greater numbers of Republican voters were prevented from implementing notice-and-cure procedures; those counties simply exercised their discretion not to. The Secretary disseminated her guidance regarding this issue to all counties; the fact that some counties opted not to embrace such an option does not mean that those counties that did violated the Constitution. Election practices need not cater to the lowest common denominator, and Plaintiffs' arguments would improperly penalize those counties that took steps to ensure the enfranchisement of voters by helping them avoid ballot disqualification. *See Paher v. Cegavske*, 2020 WL 2748301, at *9 (D. Nev. May 27, 2020) (rejecting equal protection challenge to plan that "ma[d]e it easier or more convenient to vote in [one] County, but [did] not have any adverse effects on the ability of voters in other counties to vote").

Finally, Plaintiffs' Equal Protection argument pertaining to certain counties' "cure" procedures ignores the plethora of cases, including Judge J. Nicholas Ranjan's recent decision in the Western District of Pennsylvania, finding that "counties may, consistent with equal protection, employ entirely different election

procedures and voting systems within a single state." *Boockvar*, 2020 WL 5997680, at *44-45 (citing cases); *see also, e.g.*, *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 635-36 (6th Cir. 2016) (rejecting equal protection challenge even where "plaintiffs presented uncontested evidence that, in determining whether to reject a given ballot, the practices of boards of elections can vary, and sometimes considerably"); *Wexler v. Anderson*, 452 F.3d 1226, 1231-33 (11th Cir. 2006) ("Plaintiffs do not contend that equal protection requires a state to employ a single kind of voting system throughout the state. Indeed, 'local variety [in voting systems] can be justified by concerns about cost, the potential value of innovation, and so on.'" (brackets in original) (citation omitted)). Rather, as Judge Ranjan noted, "[e]qual protection does not demand the imposition of 'mechanical compartments of law all exactly alike.'" *Boockvar*, 2020 WL 5997680, at *45 (quoting *Jackman v. Rosenbaum Co.*, 260 U.S. 22, 31 (1922)). The fact that some counties implemented mail-in voting in a manner that offered a cure mechanism to assist voters and others did not does not create an Equal Protection Clause violation. *See Donald J. Trump for President, Inc. v. Bullock*, --- F. Supp. 3d ----, 2020 WL 5810556, at *14 (D. Mont. Sept. 30, 2020) ("[F]ew (if any) electoral systems could

survive constitutional scrutiny if the use of different voting mechanisms by counties offended the Equal Protection Clause.").[5]

**B.    Plaintiffs fail to state a claim based on the alleged counting of ballots mailed in allegedly deficient envelopes.**

The Amended Complaint likewise fails to state a claim for relief based on the new—and exceptionally bare—allegation that "voters in Democrat-leaning counties who . . . failed to fill out their mail or absentee ballot envelopes had their ballots counted," while "voters in Republican-leaning counties who failed to fully fill out their mail or absentee ballot envelopes had their ballots rejected."  Am. Compl. ¶ 158.  Such allegation again falls far short of the pleading requirements of Rule 8(a)(2)—even more so than Plaintiffs' barely-plead allegations described

---

[5] Plaintiffs are also wrong to suggest that counties that allowed for the curing of ballots violated the Election Code.  *See* Am. Compl. ¶¶ 6, 128.  To support that assertion, Plaintiffs misquote the Pennsylvania Supreme Court, *see id.* ¶ 71, which merely held that "the [County] Boards are not *required* to implement a 'notice and opportunity to cure' procedure for mail-in and absentee ballots that voters have filled out incompletely or incorrectly."  *Pa. Democratic Party*, 238 A.3d at 374 (emphasis added).  The court did not rule—nor was it asked to rule—on whether the Election Code prohibited counties from voluntarily undertaking such a process.  *See id.*  And to the extent the Election Code is silent or ambiguous on whether counties may allow such cures, it is well settled under Pennsylvania law that any ambiguity should be resolved in favor of ensuring the franchise and, here, counting the cured ballots.  *See, e.g.*, *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004) (citing the "longstanding and overriding policy in this Commonwealth to protect the elective franchise" and noting that "although election laws must be strictly construed to prevent fraud, they 'ordinarily will be construed liberally in favor of the right to vote.'" (citations omitted)); *In re Luzerne Cty. Return Bd.*, 290 A.2d 108, 109 (Pa. 1972) ("Our goal must be to enfranchise and not to disenfranchise [the electorate].").

above related to the mail-in ballot "cure" process.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("A complaint has to 'show' such an entitlement with its facts.").

To meet their burden even at the pleading stage, Plaintiffs must plead facts with sufficient specificity and detail "to raise a right to relief above the speculative level."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319-20 (3d Cir. 2010) (citations omitted).  But Plaintiffs' "blanket assertion" here regarding the supposed counting of ballots in incomplete ballot envelopes, devoid of any supporting detail whatsoever, is plainly insufficient.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).  For instance, Plaintiffs nowhere plead (i) why such mail-in ballots were, in their view, not "fully fill[ed] out" (*i.e.*, what supposed failings the envelopes had), (ii) which counties supposedly counted such ballots and which did not, nor (iii) how many such ballots were supposedly "counted."

Take, for example, Plaintiffs' references throughout the Amended Complaint to the "secrecy," or "inner," envelope in which voters' mail-in ballots were to be returned.  While Plaintiffs allege that Mr. Henry's ballot was "was canceled due to it not being enclosed in a secrecy envelope," Am. Compl. ¶ 15, Plaintiffs fail to allege that *any* county (whether a Defendant county or otherwise) in fact counted such ballots during the November election.  Nor do Plaintiffs allege that any county board counted ballots sent in envelopes missing declaration signatures that might

cause them to be considered not "fully fill[ed] out." Instead, the Secretary and other Defendants are improperly left to guess the nature of Plaintiffs' Equal Protection charge. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding complaint must plead "enough facts to state a claim to relief that is plausible on its face"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given Plaintiffs' pleading failure, they cannot state a claim based on incomplete ballot envelopes and the Court should disregard this new, half-baked allegation altogether. *See, e.g.*, *Green v. Irvington Police Dep't*, 723 F. App'x 172, 173 (3d Cir. 2018) (affirming dismissal of complaint where plaintiff's claims "were broad [and] lacked sufficient detail" such that it was "very difficult to understand . . . what exactly transpired"); *Kovarik*, 2018 WL 1428293, at *7 n.15 (dismissing complaint with prejudice where it did not "ascribe particular conduct to a defendant, but rather collectively asserts all claims against all defendants").

## III.   The Equities and Circumstances Disfavor Federal Judicial Intervention.

Even if the Court were to look past the substantial justiciability and plausibility defects in Plaintiffs' Amended Complaint—and it should not—the Amended Complaint fails for a more fundamental reason: Plaintiffs cannot meet the elements required for the drastic and undemocratic relief they seek, which at its core is an injunction disenfranchising millions of voters and preventing the Secretary from certifying the results of the election. That is particularly true where, as here,

the Trump Campaign failed to pursue available state-court avenues, substantially undermining their claim to emergency injunctive relief now.

### A.    Plaintiffs do not plausibly plead entitlement to injunctive relief.

Injunctive relief is "an extraordinary remedy," which a court may grant only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Setting aside the merits of the claims, a plaintiff seeking an injunction must establish (i) irreparable harm in the absence of the injunction, (ii) that the balance of equities tips in her favor, and (iii) that an injunction is in the public interest. *See id.* at 20. Plaintiffs cannot establish any of those required elements.

Plaintiffs will not be irreparably harmed by the absence of an injunction in this case. Narrower and more appropriate relief is readily available that would remedy Plaintiffs' claimed injuries. For example, even if this Court were to rule that voters who cast defective mail-in ballots should not have been allowed to vote by provisional ballots despite the Election Code provision to the contrary, *see* 25 Pa. Cons. Stat. § 3150.16(b)(2), the Secretary did not object to an injunction currently in place that directed county boards of elections to segregate and separately tabulate provisional ballots cast by voters who sought to cure defects in their mail-in ballots so that parties could challenge those provisional ballots, if necessary, in accordance with the Election Code's standard procedures for addressing provisional ballots (*i.e.*,

at public sessions of each county board).  *See* Ex. 4.  That tailored remedy addresses Plaintiffs' claimed injuries.  That Plaintiffs' requested remedy in this case is not narrowly tailored is fatal to its Amended Complaint, particularly where their requested relief would risk disenfranchising millions of voters.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) ("If a less drastic remedy . . . was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted." (citations omitted)); *see also Perles v. Cty. Return Bd. of Northumberland Cty.*, 415 Pa. 154, 159 (1964) ("The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons."); *Pa. Democratic Party*, 238 A.3d at 361 ("[I]t is well-settled that, although election laws must be strictly construed to prevent fraud, they ordinarily will be construed liberally in favor of the right to vote . . . [and] to enfranchise and not to disenfranchise' voters."); *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 596 (E.D. Pa. 2012) (declining to issue a temporary restraining order in an election case when doing so would mean that "Pennsylvania voters could be disenfranchised").

The two remaining factors—the balance of equities and the public interest—likewise do not merit the radical, anti-democratic, and overbroad equitable relief

Plaintiffs seek.  Since the Secretary and counties work on behalf of the people of the Commonwealth, both factors essentially ask whether the public will be harmed by Plaintiffs' requested injunction, and it is incontrovertible that it would.  The public has a weighty interest in enfranchisement and in promptly finalizing the results of elections.  *See Org. for Black Struggle v. Ashcroft*, 978 F.3d 603 (8th Cir. 2020) ("[T]he State's interest[] in . . . quickly certifying election results . . . further serve[s] the public's interest[.]" (internal quotation marks and citations omitted)).  The certainty that comes with a certified election result allows, for instance, the peaceful transfer of power from one officeholder to the next, which is fundamental to American democracy and our nation's founding principles.  *See id.* ("[C]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy[.]" (citation omitted)).  Holding up that certification would constitute an extreme extension of this Federal Court's judicial authority premised on the remaining challenge to the counties' election practices that, even if true, protected the franchise of voters and did not result in a single fraudulent vote (even taking Plaintiffs' allegations as true).  The requested relief would do vastly more harm and is therefore not an appropriate or commensurate remedy here.

Additionally, and perhaps more importantly, Plaintiffs' overbroad injunction request does not remotely square with the current margin of their preferred candidate's reported deficit.  Based on the results publicly reported to date, former

Vice President Biden's 69,000 vote margin over President Trump renders any injunctive relief particularly inappropriate here. *See 2020 Presidential Election Unofficial Returns*, Pennsylvania Department of State (Nov. 16, 2020, 8:39 a.m.), https://www.electionreturns.pa.gov. Third Circuit precedent limits the authority of federal courts to grant injunctive relief only "where there is *substantial* wrongdoing in an election, the effects of which are *not capable of quantification* but which render the apparent result an unreliable indicium of the will of the electorate." *Marks v. Stinson*, 19 F.3d 873, 887 (3d Cir. 1994) (emphases added). That is a far cry from this case. Whereas *Marks* concerned intentional and "massive absentee ballot fraud, deception, intimidation, harassment and forgery," including a conspiracy between the winning candidate and local election officials, *id.* at 886-87, Plaintiffs here allege, at most, garden-variety irregularities (none of which allege any wrongdoing on the part of the winning candidate or campaign), *see* Am. Compl. ¶¶ 158. Moreover, Plaintiffs do not and cannot plausibly suggest that, in the absence of the cited irregularities, their candidate would have "received a plurality of the legally cast votes." *Marks*, 19 F.3d at 886. As such, this Court may not issue Plaintiffs any injunctive relief at all, much less the extraordinary remedy of a federal injunction prohibiting the Secretary from certifying the results of a state-run election in which nearly 7 million citizens participated.

### B.   Plaintiffs' delay and failure to pursue available state remedies is fatal to their claim to federal injunctive relief.

Plaintiffs' plea for injunctive relief is also undermined by their delay and substantial failure to take advantage of state remedies that could have resolved their election-related disputes.  Nearly a week after Election Day, Plaintiffs brought this case asserting what are, at most, disputes with individual counties' administration of mail-in voting.  These claims could and should have been brought against specific counties in state court—indeed, in some instances, the Trump Campaign brought such actions and lost.  To the extent such prior rulings do not foreclose Plaintiffs' claims now, their delay and the availability of such state remedies merits dismissal— or at least abstention—by this Federal Court at this stage.

*First*, the Trump Campaign actually litigated their challenge to the "cure" option being afforded to voters in some counties and lost in multiple state courts, including Bucks County (which they do not name as a defendant in this case) and Northampton and Philadelphia Counties (which they do).  *See* Exs. 1-3.  Having done so, the *Rooker-Feldman* doctrine bars the Trump Campaign from seeking to collaterally appeal those rulings in federal court now.  *See ITT Corp. v. Intelnet Int'l*, 366 F.3d 205, 210 (3d Cir. 2004) ("The *Rooker-Feldman* doctrine bars federal jurisdiction . . . if the claim was 'actually litigated' in state court or if the claim is "inexplicably intertwined' with the state court adjudication.") (citations and internal quotation marks omitted).

As for challenges to other counties' procedures related to such ballots, the Trump Campaign could and should have brought those challenges either on Election Day or during the ballot counting process itself.  Indeed, the Election Code expressly contemplates the potential need for judicial intervention during an election in requiring that the court of common pleas in each county remain in "continuous session at the courthouse of said county . . . on the day of each . . . election from 7 o'clock A. M. until 10 o'clock P. M. and so long thereafter as it may appear that the process of said court will be necessary to secure a free, fair and correct computation." 25 Pa. Cons. Stat. § 3046.  Yet with the exception of the disclosure of defective mail-in ballots in the three counties identified above, the Trump Campaign did not challenge the cure process in *any* other of the Defendant counties.  Now, only after most counties have disclosed their vote totals and President Trump trails in the results, the Trump Campaign is attempting to cry foul.  Such a delayed attempt and request for a do-over after the fact is plainly impermissible.  *See Stein v. Cortés*, 223 F. Supp. 3d 423, 437 (E.D. Pa. 2016) (holding that "prejudicial and unnecessary delay alone provides ample ground" to deny relief); *Golden v. Gov't of the Virgin Islands*, 2005 WL 6106401, at *5 (D.V.I. Mar. 1, 2005) (denying post-election relief where plaintiffs "lacked diligence by waiting to see whether their candidate of choice won the one certified seat, before bringing a legal action"); *see also Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1180 (9th Cir. 1988)

(affirming a district court's application of laches in a post-election lawsuit because doing otherwise "would permit, if not encourage, parties who could raise a claim to lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action" (quoting *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983)); *Pa. Democratic Party v. Republican Party of Pa.*, 2016 WL 6582659, at *4 (E.D. Pa. Nov. 7, 2016) ("Plaintiff's dilatory conduct 'weighs decidedly against granting the extraordinary relief [it] seek[s]'" (brackets in original) (citations omitted)).

*Second*, to the extent certain counties permitted a voter to cast provisional in-person ballots if the voter feared her mail-in vote would be cancelled, the Trump Campaign had the power to challenge specific provisional ballots during the county boards' review of those ballots and to raise any further challenges in Commonwealth courts. *See* 25 Pa. Cons. Stat. § 3050(a.4)(4). Specifically, representatives of the Trump Campaign were entitled to challenge specific provisional ballots during the county boards' review of those ballots, and to defend their challenges during an evidentiary hearing before the county board. *Id.* And if still aggrieved after such hearing, the Trump Campaign has a further right to challenge the county board's decision before the county's court of common pleas. *Id.* § 3050(a.4)(4)(v). Notably, that challenge process is *still ongoing*, such that the Trump Campaign can—and, indeed, currently is—pursuing state-law remedies with respect to voters who they

do not believe should have been entitled to cast provisional ballots. Given such option, Plaintiffs should not be entitled to end-run the Election Code's time-tested processes and remedies by manufacturing federal constitutional claims and demanding the extraordinary injunctive relief of holding up the certification of statewide election results.

*Third*, the Election Code prescribes a clear election contest regime—which the Trump Campaign has made no effort to invoke. In particular, the Election Code permits an aggrieved party or candidate to file an election contest within 20 days of the election, showing why an election was purportedly illegal. *Id.* §§ 3291, 3351, 3456; 42 Pa. Cons. Stat. § 764(1). But rather than comply with that process, the Trump Campaign has (again) rushed to federal court, attempting to equate minor perceived Election Code violations with constitutional claims—an argument Judge Ranjan dismissed in the Western District case. *Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 5407748, at *9 (W.D. Pa. Sept. 8, 2020).[6]

---

[6] At the very least, given the availability of comprehensive state law regimes to address both provisional ballots and election contests generally, the Court should abstain from resolving Plaintiffs' remaining claim. Particularly in the context of election disputes, where a state's interest in managing its own affairs is at its apex and the federal courts' mandate is at its nadir, abstention promotes principles of federalism, efficiency, and comity. Where, as here, "a state creates a complex regulatory scheme, supervised by the state courts and central to state interests," *Lac D'Amiante du Quebec, Ltee v. Am. Home Assurance Co.*, 864 F.2d 1033, 1043 (3d Cir. 1988), abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), applies and a federal court should not interfere.

Ultimately, Plaintiffs ask this Federal Court to use its discretionary powers to enjoin the Secretary from certifying the Commonwealth's election results based on unprecedented and unlimited theories of constitutional harm that, if accepted, would mandate federal court micromanagement of state elections going forward.  But even state courts have recently rejected similar efforts by the Trump Campaign to enjoin the certification process in other states, concluding that "[i]t would be an unprecedented exercise of judicial activism."  Op. & Order at 11, *Costantino v. City of Detroit*, No. 20-014780-AW (Mich. 3d Jud. Cir. Ct. for Wayne Cty. Nov. 13, 2020) (Ex. 12).  That concern rings even more true in federal court.  If this Court does not dismiss the Amended Complaint outright—and it should—it can and should use its discretion to direct Plaintiffs back to the state courts where their grievances belong.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Dated:  November 16, 2020

Respectfully submitted,

KIRKLAND & ELLIS LLP

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL

By:  */s/ Daniel T. Donovan*
    Daniel T. Donovan
    Susan M. Davies
    Michael A. Glick
    1301 Pennsylvania Avenue,
    N.W.
    Washington, DC  20004
    (202)-389-5000 (telephone)
    (202)-389-5200 (facsimile)
    daniel.donovan@kirkland.com
    susan.davies@kirkland.com
    michael.glick@kirkland.com

By:  */s/ Keli M. Neary*
    Keli M. Neary
    Karen M. Romano
    Nicole Boland
    Stephen Moniak
    15th Floor, Strawberry Square
    Harrisburg, PA 17120
    (717) 787-2717 (telephone)
    (717) 772-4526 (facsimile)
    kromano@attorneygeneral.gov
    kneary@attorneygeneral.gov
    nboland@attorneygeneral.gov
    smoniak@attorneygeneral.gov

MYERS BRIER & KELLY LLP

By:  *Daniel T. Brier*
    Daniel T. Brier
    Donna A. Walsh
    John B. Dempsey
    425 Spruce Street, Suite 200
    Scranton, PA 18503
    (570) 342-6100 (telephone)
    (570) 342-6147 (facsimile)
    dbrier@mbklaw.com
    dwalsh@mbklaw.com
    jdempsey@mbklaw.com

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of*
*Pennsylvania*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system.  Parties may access this filing through the Court's system.


_/s/  Daniel T. Brier_

_Counsel for Kathy Boockvar_
_Secretary of the Commonwealth of_
_Pennsylvania_