## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Donald J. Trump for President, Inc., Lawrence Roberts, and David John Henry,<br><br>      Plaintiffs,<br><br>   v.<br><br>Kathy Boockvar, in her capacity as Secretary of the Commonwealth of Pennsylvania, Allegheny County Board of Elections, Centre County Board of Elections, Chester County Board of Elections, Delaware County Board of Elections, Montgomery County Board of Elections, Northampton County Board of Elections, and Philadelphia County Board of Elections,<br><br>      Defendants,<br><br>   v.<br><br>DNC Services Corporation/Democratic National Committee,<br><br>      Intervenor-Defendant. | No. 4:20-cv-02078-MWB<br>(Judge Matthew W. Brann) |

## INTERVENOR-DEFENDANT DNC'S REPLY IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE DNC'S MEMORANDUM OF LAW IN SUPPORT OF CONDITIONAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................3

   I.   The Pending Motions to Dismiss Are Not Moot.............................3

   II.   Plaintiffs Lack Standing ...............................................................5

   III.  Plaintiffs' Requests for Injunctive Relief Are Barred by the Eleventh
        Amendment. .........................................................................12

   IV.  Principles of Federalism and Comity Strongly Favor *Pullman* Abstention..14

   V.   Laches Bars Plaintiffs' Claims. ..................................................17

   VI.  Plaintiffs' Equal Protection Claims Fail as a Matter of Law. ......................19

   VII.Plaintiffs' Remedy Is Disproportionate to Their Purported Injury and Would
        Violate the U.S. Constitution. ...................................................22

CONCLUSION .................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acosta v. Democratic City Comm.*,
  288 F. Supp. 3d 597 (E.D. Pa. 2018)....................................................14

*Artway v. Att'y Gen. of N.J.*,
  81 F.3d 1235 (3d Cir. 1996) ..............................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................21

*Balsam v. Sec'y of N.J.*,
  607 F. App'x 177 (3d Cir. 2015) ........................................................13

*Bennett v. Yoshina*,
  140 F.3d 1219 (9th Cir. 1998) ...........................................................23

*Bognet v. Sec'y Commonwealth of Pa.*,
  --- F.3d ----, No. 20-3214, 2020 WL 6686120
  (3d Cir. Nov. 13, 2020).................................................................passim

*Burdick v. Takushi*,
  504 U.S. 428 (1992)...........................................................................19

*Bush v. Gore*,
  531 U.S. 98 (2000)...............................................................10, 20, 25

*Clean Air Council v. United States*,
  362 F. Supp. 3d 237 (E.D. Pa. 2019)..................................................11

*De Oca v. Beato*,
  No. 3:17-CV-837, 2018 WL 3371920 (M.D. Pa. June 6, 2018) .........3

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*,
  665 F.3d 524 (3d Cir. 2011) ................................................................7

*Donald J. Trump for President, Inc. v. Boockvar*,
  --- F. Supp. 3d. ----, No. 2:20-cv-966, 2020 WL 5997680
  (W.D. Pa. Oct. 10, 2020) ..............................................................passim

# TABLE OF AUTHORITIES

**Page(s)**

*Donald J. Trump for President, Inc. v. Montgomery Cnty. Bd. of Elections*,
No. 2020-18680 (Pa. Ct. Com. Pl. Nov. 13, 2020)...........................11

*Genter v. Allstate Prop. & Cas. Ins. Co.*,
No. 11-cv-0709, 2011 WL 2533075 (W.D. Pa. June 24, 2011).......................24

*González-Cancel v. Partido Nuevo Progresista*,
696 F.3d 115 (1st Cir. 2012)...................................................23

*Green Party of Pa. v. Aichele*,
89 F. Supp. 3d 723 (E.D. Pa. 2015)...................................14

*Griffin v. Burns*,
570 F.2d 1065 (1st Cir. 1978)...................................................23

*Guerrero v. Halliburton Energy Servs., Inc.*,
231 F. Supp. 3d 797 (E.D. Cal. 2017)................................24

*Gustafson v. Ill. State Bd. of Elections*,
No. 06 C 1159, 2007 WL 2892667 (N.D. Ill., Sept. 30, 2007).........................21

*Hamm v. Boockvar*,
600 MD 2020 (Pa. Commw. Ct. Nov. 3, 2020)...................................16

*Ill. State Bd. of Elections v. Socialist Workers Party*,
440 U.S. 173 (1979)...................................................20

*In re: Canvass of Absentee & Mail-In Ballots*,
No. 201100874 (Pa. Ct. Com. Pl. Nov. 13, 2020)...................................12

*In re: Canvass of Absentee & Mail-In Ballots*,
No. 201100875 (Pa. Ct. Com. Pl. Nov. 13, 2020)...................................12

*In re: Canvass of Absentee & Mail-In Ballots*,
No. 201100876 (Pa. Ct. Com. Pl. Nov. 13, 2020)...................................11

*In re: Canvass of Absentee & Mail-In Ballots*,
No. 201100878 (Pa. Ct. Com. Pl. Nov. 13, 2020)...................................11

*Interstate Equip. Sales & Rentals, Inc. v. Napcon, Inc.*,
No. 3:05-CV-01555, 2006 WL 8449229 (M.D. Pa. Jan. 30, 2006).....................3

# TABLE OF AUTHORITIES

**Page(s)**

*Jordan v. City of Phila.*,
  66 F. Supp. 2d 638 (E.D. Pa. 1999) ..................................................... 3

*Kansas v. Colorado*,
  514 U.S. 673 (1995) .......................................................................... 18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................ 8

*McMullen v. Maple Shade Twp.*,
  643 F.3d 96 (3d Cir. 2011) ................................................................ 13

*Ne. Ohio Coal. for the Homeless v. Husted*,
  837 F.3d 612 (6th Cir. 2016) ........................................................ 22, 25

*Pa. Democratic Party v. Boockvar*,
  238 A.3d 345 (Pa. 2020) ................................................................ 7, 15

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) ............................................................................ 12

*Perry v. Judd*,
  471 F. App'x 219 (4th Cir. 2012) ...................................................... 18

*R.R Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496 (1941) .......................................................................... 15

*Rees v. PNC Bank, N.A.*,
  308 F.R.D. 266 (N.D. Cal. 2015) ...................................................... 24

*Reynolds v. Sims*,
  377 U.S. 533 (1964) .......................................................................... 20

*Rinaldi v. Ferrett*,
  941 A.2d 73 (Pa. Commw. Ct. 2007) ................................................ 17

*Shipley v. Chi. Bd. of Election Comm'rs*,
  947 F.3d 1056 (7th Cir. 2020) ........................................................... 23

*Short v. Brown*,
  893 F.3d 671 (9th Cir. 2018) ............................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

*Soules v. Kauaians for Nukolii Campaign Comm.*,
   849 F.2d 1176 (9th Cir. 1988) ...............................................................18

*Sprague v. Cortes*,
   223 F. Supp. 3d 248 (M.D. Pa. 2016)....................................................14

*St. Pierre v. Nielsen*,
   357 F. Supp. 3d 432 (M.D. Pa. 2018) ......................................................4

*Stein v. Cortes*,
   223 F. Supp. 3d 423 (E.D. Pa. 2016)..............................................17, 23

*Sun Co. (R & M) v. Badger Design & Constructors, Inc.*,
   939 F. Supp. 365 (E.D. Pa. 1996)............................................................4

*Toney v. White*,
   488 F.2d 310 (5th Cir. 1973) (en banc) .................................................19

*Tucker v. Burford*,
   603 F. Supp. 276 (N.D. Miss. 1985)......................................................18

*United States v. Hays*,
   515 U.S. 737 (1995).................................................................................7

*Warner v. Sun Ship, LLC*,
   No. 11-7830, 2012 WL 1521866 (E.D. Pa. Apr. 30, 2012) .................18

*Webb v. Volvo Cars of N.A., LLC*,
   No. 13-cv-02394, 2015 WL 3444237 (E.D. Pa. May 29, 2015) ...........4

*Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas. Co.*,
   907 F. Supp. 2d 673 (E.D. Pa. 2012).....................................................25

## STATUTES

25 P.S. § 2642(k).........................................................................................1

3 U.S.C. § 5...........................................................................................2, 22

## OTHER AUTHORITIES

Rule 12(b)(6)...............................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

Rule 12(f) ...............................................................................................................23

## INTRODUCTION

Six days after the 2020 General Election, the Trump Campaign filed this lawsuit raising wide-ranging and generalized grievances about Pennsylvania's election procedures which had been in place for weeks or even months before the election. The Campaign opted not to present these complaints for pre-election adjudication as they had done in other litigation, but stood by and watched the vote tally.  Then the Campaign sought to reverse the will of the Commonwealth's voters citing purported deviations from the election code, yet presented no evidence of fraud, ineligible voters who cast ballots unlawfully, or eligible ballots that were wrongfully excluded from the vote count—and certainly nothing approaching the wide-spread, systematic breakdown that would be required to undo an entire election or to eradicate President Trump's 68,000-plus vote deficit.

On the slender reed of purported voting irregularities, shifting theories, and an implicit admission that they lack evidence to support their claims, the Trump Campaign sought the most drastic form of relief on an extraordinarily compressed schedule—in light of the November 23 certification deadline—only to ask this Court to restart the process by filing an amended (but substantively identical) complaint twelve days after the election, and three days after the Defendants and Intervenors had briefed their motions to dismiss. The reasons behind Plaintiffs' attempted re-start are quite obvious: the legal defects identified in Defendants' and Intervenors'

motions to dismiss, along with the Third Circuit's ruling in *Bognet v. Secretary Commonwealth of Pennsylvania*, --- F.3d ----, No. 20-3214, 2020 WL 6686120 (3d Cir. Nov. 13, 2020), were devastating to their claims. Indeed, Bognet confirmed that election officials' purported use of procedures that allowed eligible voters to cast their ballots does not impose a cognizable injury on Plaintiffs who seek not to protect their own rights, but to prevent the votes of others from being counted. And while Plaintiffs make vague references to "vote denial," they have not sued any of the counties that purportedly denied votes, nor do they seek relief that would remedy any such harm; quite the opposite: Plaintiffs argue that voters who failed to execute perfectly their absentee or mail-in ballots should be denied the right to vote.

These theories are entirely foreign to the Equal Protection Clause, and this lawsuit should be resolved immediately on the expedited schedule initially ordered by the Court. Time is of the essence. The electoral college meets on December 14 to choose the next president. 3 U.S.C. § 7, which means the counties must certify their election results by November 23. *Id*. § 2642(k). In other words, the result of the election must be conclusively determined on the timeline prescribed by Pennsylvania law. To effectuate the will of the millions of Pennsylvanians who voted in this election, the Court should bring this litigation to a close expeditiously, dismiss Plaintiffs' evidence-free claims, and allow the Commonwealth to complete the electoral process.

## ARGUMENT

### I.     The Pending Motions to Dismiss Are Not Moot.

Contrary to what Plaintiffs argue, Pls.' Opp. at 1-2, the Court can and should exercise discretion to treat the parties' previously-filed motions to dismiss as directed to the Amended Complaint. *See Interstate Equip. Sales & Rentals, Inc. v. Napcon, Inc.*, No. 3:05-CV-01555, 2006 WL 8449229, at *2 (M.D. Pa. Jan. 30, 2006) ("treat[ing] the Motion to Dismiss as though it were addressed to the Second Amended Complaint"). Defendants "are not required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Jordan v. City of Phila.*, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999) (citing 6 Charles A. Wright, et al., *Fed. Prac. & Proc.* § 1476 (2d. ed. 1990)).[1]

---

[1] *See also De Oca v. Beato*, No. 3:17-CV-837, 2018 WL 3371920, at *4 (M.D. Pa. June 6, 2018), *report and recommendation adopted*, 2018 WL 3370561 (M.D. Pa. July 10, 2018) (considering motion to dismiss addressed to superseded complaint and rendering moot only arguments attacking claims not restated in the amended complaint); *St. Pierre v. Nielsen*, 357 F. Supp. 3d 432, 435 (M.D. Pa. 2018) (not requiring defendants to file new motion to dismiss addressed to amended complaint); *Webb v. Volvo Cars of N.A., LLC*, No. 13-cv-02394, 2015 WL 3444237, at *2 (E.D. Pa. May 29, 2015) (agreeing that defendant "was not required to file a redundant motion to dismiss for lack of personal jurisdiction after Plaintiff filed a second amended complaint that did not contain any new allegations pertaining to this issue"); *Sun Co. (R & M) v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 367 n.3 (E.D. Pa. 1996) ("With the exception of the arguments addressing the

There are good—indeed overwhelming—reasons for the Court to exercise such discretion here. The Amended Complaint is virtually identical to its predecessor; it largely deletes allegations and several claims without adding new allegations that could cure the defects that the DNC (and Defendants) identified in their previously-filed motions to dismiss. Plaintiffs have filed an opposition brief (Dkt. 126) that responds to the threshold arguments made in the DNC's motion to dismiss. There is thus no need for any new briefing. And there is a pressing need to resolve this case immediately, so that the counties can fulfil their statutory obligation to certify election results by November 23, and thereby enable the Secretary and the Governor to certify a slate of electors prior to the federal safe-harbor deadline of December 8, 2020. *See* DNC Mot. at 43 (detailing process).

In the alternative, although no new motion to dismiss is required, to the extent the Court disagrees, the DNC has filed a conditional motion to dismiss the Amended Complaint and this memorandum supports that motion. The Court should proceed to decide those grounds. Plaintiffs should not be rewarded with further delay of the proceedings, especially in light of the extreme relief requested and the pending deadline to certify the election results.

---

two claims [plaintiff] dropped, however, the contentions presented in Defendants' initial Motion to Dismiss are germane to the Amended Complaint because it failed to cure a majority of the deficiencies initially alleged.").

## II.   Plaintiffs Lack Standing

Plaintiffs' opposition and Amended Complaint fail to overcome any of the standing defects that the DNC identified in its motion to dismiss. DNC Mot. at 7-9. And since the DNC filed that motion, those defects have become even more clear in light of the Third Circuit's just-issued decision in *Bognet*, 2020 WL 6686120. *Bognet* involved the same type of plaintiffs (a candidate for federal office and several Pennsylvania voters) asserting the same claims (Electors, Elections, and Equal Protection Clauses claims premised on the defendants' counting of certain votes in supposed violation of state law). Plaintiffs concede that *Bognet* forecloses their standing to sue under the Elections and Electors Clauses. *See Bognet*, 2020 WL 6686120, at *6-9.[2] It also requires dismissal of the sole remaining claim that they continue to press, under the Equal Protection Clause.

*Bognet* held that a challenge like Plaintiffs', which asserts equal-protection injury based on "state actors [allegedly] counting ballots in violation of state election law," is neither "concrete" nor "particularized." *Id.* at *9-14. As the Third Circuit explained, the Equal Protection Clause is "concerned with votes being *weighed differently*." *Id.* at *11 (emphasis added). To permit standing based on mere

---

[2] *See* Am. Compl.; Pls.' Opp. at 2 n.1. Plaintiffs "acknowledge[d] that—because the General Assembly is not a party here—Bognet forecloses their allegations that they have standing to pursue their Elections and Electors Clauses claims," and withdrew those claims as a basis for their requested extraordinary relief. *See* Dkt. 124.

noncompliance with state law "would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim." *Id.* (internal quotation marks omitted); *see also Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d. ----, No. 2:20-cv-966, 2020 WL 5997680, at *35 (W.D. Pa. Oct. 10, 2020).

Plaintiffs' Equal Protection Clause claims here are likewise premised solely on Defendants' use of supposedly "unlawful" election procedures, and thus fail under *Bognet*. Plaintiffs cannot escape *Bognet*'s reach by deleting a few references to vote dilution from their original complaint and re-labeling their claim as one of "vote *denial*." Pls.' Opp. at 4. The counties they have sued did not deny anyone the right to vote through the challenged practices; rather, any alleged vote denial came from *other counties* that Plaintiffs have chosen not to sue. As to Defendants in *this case*, Plaintiffs' Equal Protection Clause claim is thus premised on how supposedly unlawful procedures in the Defendant Counties diluted Plaintiffs' votes—and therefore presents "a 'paradigmatic generalized grievance that cannot support standing.'" *Bognet*, 2020 WL 6686120 at *12 (citation omitted).

Plaintiffs' alternate standing theories are equally meritless. Plaintiff Lawrence alleges merely that his ballot was cancelled and that he was not notified of that fact, Am. Compl. ¶ 16, but he fails to allege *why* his vote was rejected, and thus cannot establish that his ballot was handled differently from any ballot canvassed by

Defendants. Plaintiff Henry alleges that he "cast a defective ballot that was not counted, but another Pennsylvania voter in another county could cast the same defective ballot and have his vote counted." Pls.' Opp. at 3. But that is demonstrably false, as Henry's own allegations establish. Henry alleges that Lancaster County cancelled his mail ballot because it lacked an inner secrecy envelope, Am. Compl. ¶ 15—which would have led to its *rejection in every county in the Commonwealth*, including the Defendant Counties, as a matter of state law, *id.* ¶ 85; *see also Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 380 (Pa. 2020) ("[T]he mail-in elector's failure to . . . enclos[e] the ballot in the secrecy envelope renders the ballot invalid."). Plaintiffs do not allege that Defendants *counted* any such ballots. Am. Compl. ¶¶ 126-27. Accordingly, Henry cannot show he was "'*personally* denied equal treatment by the challenged discriminatory conduct.'" *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 542 (3d Cir. 2011) (emphasis added); *see also United States v. Hays*, 515 U.S. 737, 743 (1995) ("The rule against generalized grievances applies with as much force in the equal protection context as in any other.").

To the extent Plaintiffs claim they were injured because they were never notified about their defective ballots and given an opportunity to cast a new, valid ballot, they cannot satisfy the "traceability" or "redressability" requirements of standing based on that injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61

(1992). Any such injury was caused by (in other words, is "fairly traceable" to) *Lancaster* and *Fayette Counties*, who cancelled their votes and allegedly provided no notification—not Defendants, who took no action with respect to Voter Plaintiffs' ballots. Likewise, only a judgment in Plaintiffs' favor against *other* counties—which they have elected not to sue—could conceivably redress any injury from the denial of their votes. *See id.* at 561. Forcing Defendants to disenfranchise hundreds of thousands of other voters would do nothing to remedy Plaintiffs' own alleged "vote denial."

*Bognet*—which rejected a federal election candidate's effort to force Pennsylvania officials to comply with state election law—also forecloses Donald J. Trump for President, Inc.'s ("DJT") effort to establish "competitive standing" here. Were a candidate's complaint that officials were accepting ballots in contravention of state law, without more, sufficient to show injury, the Third Circuit would not have rejected Bognet's standing. But the Third Circuit did reject his claim, and its reasoning applies with equal force to DJT.

*First*, the Third Circuit explained that Bognet's assertion of "a 'threatened' reduction in the competitiveness of his election" from the unlawful procedure did not "affect[] him in a particularized way when, in fact, all candidates in Pennsylvania, including Bognet's opponent, are subject to the same rules." *Bognet*,

8

2020 WL 6686120, at *8. Here, too, DJT and Vice President Biden were subject to "the same rules."

*Second*, like Bognet, DJT's competitor-standing theory is far too speculative, because the Campaign "does not explain" in any non-conclusory manner "how counting more timely cast votes would lead to a *less* competitive race, nor does [it] offer any evidence tending to show that a greater proportion of [defective] mailed ballots" would be cast for Vice President Biden—much less that "such votes would have to be sufficient in number to change the outcome of the election to [Trump's] detriment." 2020 WL 6686120, at *8. As in *Bognet*, Plaintiffs offer no "empirical evidence . . . that would establish a statistical likelihood or even the plausibility" that the notification procedure they challenge resulted in a single unlawful vote being cast for Vice President Biden, *id.* at *17—much less that so many allegedly unlawfully-counted votes were cast for Vice President Biden such that they could change the outcome of the race. Plaintiffs' bare allegation that "the counties that did not provide a cure process are heavily Republican" falls far short of such a showing, given that Vice President Biden's Pennsylvania margin currently stands at 68,000 votes.[3] *See* Am. Compl. ¶ 131.

---

[3] Pa. Dep't of State, 2020 Presidential Election Unofficial Returns – Statewide, https://www.electionreturns.pa.gov/# (last visited Nov. 15, 2020).

In contrast to Plaintiffs' speculation concerning the effect of any notice-and-cure procedures, the equal protection claim in *Bush v. Gore*, 531 U.S. 98 (2000), on which Plaintiffs rely, plainly sprang from a concrete and particularized injury. In *Bush*, the U.S. Supreme Court rejected the Florida Supreme Court's application of an arbitrary "intent-of-the-voter" test as part of Florida's recount, in which Vice President Gore and then-Governor Bush were separated by only hundreds of votes statewide, and the standard applied to the ballots that were to be recounted could have easily proven decisive in the Presidential Election. *Id.* at 109. Nothing about that holding suggests that DJT has standing to, in effect, set aside the result of an election based on Defendants' use of a procedure whose impact Plaintiffs can only guess at—but which was surely far less than the millions of mail-in and absentee ballots Plaintiffs now seek to invalidate.

*Finally*, Plaintiffs cannot avoid these fatal defects by attempting to raise an entirely new claim through a single sentence in the Amended Complaint, alleging that "voters in Republican-leaning counties who failed to fully fill out their mail or absentee ballot envelopes had their ballots rejected, while voters in Democrat-leaning counties who similarly failed to fill out their mail or absentee ballot envelopes had their ballots counted." Am. Compl. ¶ 158. Plaintiffs do not specify which counties counted such ballots, what sort of missing-information ballots they counted, or how many ballots are at issue. Their throwaway line utterly fails to

"'clearly . . . allege facts demonstrating' each element" of their standing on this claim. *Clean Air Council v. United States*, 362 F. Supp. 3d 237, 245 (E.D. Pa. 2019) (citation omitted).

In any event, Plaintiffs cannot possibly establish standing to assert such a claim, because neither Voter Plaintiff was personally injured by any county's counting of ballots missing information on the outer envelope. Plaintiff Lawrence does not suggest his cancelled ballot would have been counted had he resided in any of the Defendant Counties, and Plaintiff Henry concedes his ballot was *not* rejected because of a failure to fill out the ballot envelope and so would not have been counted even by those counties. *See supra* at 7-8. Moreover, Pennsylvania courts have uniformly held—in cases initiated by DJT—that these ballots should all be counted under Pennsylvania law.[4] Merely counting lawful votes cannot cause DJT a cognizable injury.

---

[4] *See Donald J. Trump for President, Inc. v. Montgomery Cnty. Bd. of Elections*, No. 2020-18680, at 4-9 (Pa. Ct. Com. Pl. Nov. 13, 2020); *In re: Canvass of Absentee & Mail-In Ballots*, No. 201100878, at 1-2 (Pa. Ct. Com. Pl. Nov. 13, 2020); *In re: Canvass of Absentee & Mail-In Ballots*, No. 201100876, at 1-2 (Pa. Ct. Com. Pl. Nov. 13, 2020); *In re: Canvass of Absentee & Mail-In Ballots*, No. 201100875, at 1-2 (Pa. Ct. Com. Pl. Nov. 13, 2020); *In re: Canvass of Absentee & Mail-In Ballots*, No. 201100874, at 1-2 (Pa. Ct. Com. Pl. Nov. 13, 2020).

### III.   Plaintiffs' Requests for Injunctive Relief Are Barred by the Eleventh Amendment.

Plaintiffs press claims against the Secretary—through which they seek a Commonwealth-wide injunction—yet continue to ignore the Eleventh Amendment's limitations on this Court's jurisdiction. Their opposition brief and Amended Complaint are explicit in seeking redress for alleged violations of state law, in the form of a court order enjoining certification statewide. *See* Am. Compl. at 62. Even assuming the Secretary could provide such relief, this Court lacks jurisdiction to issue an injunction against the Secretary based on purported state law violations. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

It is well settled (and uncontested in Plaintiffs' opposition) that "a claim that state officials violated state law in carrying out their official responsibilities" is foreclosed by the Eleventh Amendment, *id*. at 121; and those are precisely the claims Plaintiffs continue to advance here. *See* Am. Compl. ¶¶ 28-39, 54, 132-42 (describing purported violations of state law regarding the presence of poll watchers); *id*. ¶¶ 55-77, 82 (describing state law regarding absentee voting and Plaintiffs' belief that it was not followed); *id*. ¶¶ 90-94, 99 (describing Plaintiffs' view of the law regarding counting of absentee and provisional ballots and the Secretary's purported violation of these provisions); *id*. ¶¶ 121-22, 125, 128 (describing Plaintiffs' concern about compliance with state law regarding pre-canvass procedures, secrecy envelopes, and notifying voters of absentee and mail-in

defects). Indeed, Plaintiffs' requested relief, once again, purports to prevent a state officer (the Secretary) from certifying elections statewide to force compliance with state law as Plaintiffs perceive it. *Id*. at 62.

At bottom, these claims are nothing more than state election law grievances with federal labels attached to them. Faced with similar attempts to manufacture federal causes of action, the Third Circuit has recognized that it is the substance of the claims, not the labels Plaintiffs affix, that inform whether a claim states a federal cause of action. *See, e.g.*, *Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015) (rejecting argument that plaintiffs' " state law claims [were] premised on violations of the federal Constitution" and finding state law claims jurisdictionally barred by Eleventh Amendment); *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 98 (3d Cir. 2011) (affirming dismissal for failure to state a federal claim "[d]espite [plaintiff's] best efforts to dress-up [his] claim in the federal garb of the Fourth Amendment"). Plaintiffs make no attempt to dispute—and indeed their Amended Complaint reaffirms—that their lawsuit would require this Court to interpret state law, determine whether state officials violated it, and grant injunctive relief to ensure its enforcement, all in violation of the Eleventh Amendment. *See, e.g.*, *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 628 (E.D. Pa. 2018) (Eleventh Amendment bars Pennsylvania Election Code claims against Secretary of State); *Sprague v. Cortes*, 223 F. Supp. 3d 248, 284 n.12 (M.D. Pa. 2016) (state law

challenge to Secretary of State's ballot question to amend state constitution is jurisdictionally barred by Eleventh Amendment); *Green Party of Pa. v. Aichele*, 89 F. Supp. 3d 723, 754 (E.D. Pa. 2015) (dismissing claims that defendants exceeded their authority under the Pennsylvania Election Code on Eleventh Amendment grounds). This Court therefore lacks jurisdiction to issue an injunction against the Secretary.

## IV.   Principles of Federalism and Comity Strongly Favor *Pullman* Abstention.

Plaintiffs' opposition brief also fails to offer any explanation at all as to why this Court should inject itself into the conduct of state elections. Pennsylvania law already provides comprehensive election contest procedures designed specifically to address grievances over the tabulation of votes and certification of election results. *See* DNC Mot. at 3-4. Principles of federalism and comity counsel strongly in favor of adjudicating Plaintiffs' grievances through these existing procedures, and against a wholesale federal court injunction of the Commonwealth's certification of its election results, on a motion for preliminary injunction no less. The *Pullman* abstention doctrine instructs that a federal court should stay its hand under these circumstances, where: "(1) . . . uncertain issues of state law underlie the federal constitutional claims brought in the district court; (2) . . . the state law issues are amenable to a state court interpretation that would obviate the need for, or substantially narrow, adjudication of the federal claim; and (3) . . . important state

policies would be disrupted through a federal court's erroneous construction of state law." *Artway v. Att'y Gen. of N.J.*, 81 F.3d 1235, 1270 (3d Cir. 1996); *see also R.R Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

Plaintiffs argue that these prongs are not met because no uncertain question of state law underlies their federal claims, but in doing so they misread and misstate the Pennsylvania Supreme Court's holding in *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020). Plaintiffs suggest that the *Boockvar* decision somehow foreclosed county boards from offering voters who cast defective mail ballots notice that their votes would not count and a process for casting an effective ballot because, according to Plaintiffs, the court stated that the decision whether to provide a cure is one for the legislature. Pls.' Opp. at 8-9. But that is not what the Pennsylvania Supreme Court did. The court held simply that boards were *not required* to have a *post-election* process for voters to cure defective ballots, but in no way did the court suggest that counties were *prohibited* from notifying voters that, without further action before the close of polls on Election Day, their attempt to vote would not count. *See* 238 A.3d at 374. Whether the Pennsylvania Election Code should be interpreted in the manner Plaintiffs suggest—that a mail voter who has cast a defective ballot should have neither notice of that fact nor an opportunity, before the close of polls, to cast a vote that will be counted—is a matter of profound significance for state policy and in our federal system should be resolved by the

Pennsylvania courts. Under these circumstances, *Pullman*'s first prong is indisputably met.

Plaintiffs attempt to obscure the outsized role of state law interpretation in this lawsuit by asserting that "unequal treatment of voters violates the federal constitution whether or not that treatment also violates state law." Pls.' Opp. at 8. Plaintiffs are wrong that a county can violate the Equal Protection Clause by counting lawful votes; any Equal Protection Clause violation in that circumstance would lie, at most, against other counties that did not count similarly-situated votes. *See supra* at 6-8. In any event, Plaintiffs' argument entirely misunderstands the second *Pullman* inquiry, which considers whether a resolution of the unresolved state law question could avoid the need for the court to address a constitutional issue or substantially narrow the question, or, in other words, whether a court even needs to consider the constitutionality of Defendants' conduct. This prong is easily satisfied here as issues surrounding "curing" defective mail ballots, which affects only a few thousand ballots, are currently being litigated in *Hamm v. Boockvar*, 600 MD 2020 (Pa. Commw. Ct. Nov. 3, 2020).

Plaintiffs also fail to grapple with the important state policies implicated by the extraordinary injunction they seek—the third prong under *Pullman*—and this factor carries significant weight. The orderly administration and certification of Pennsylvania elections would come to a halt were this Court to intrude here. The

Commonwealth has well-defined procedures allowing voters to contest an election or candidates to request recounts or recanvasses, and Pennsylvania courts have unequivocally stated that these avenues "constitute the *exclusive* means for challenging the accuracy of election results," *Rinaldi v. Ferrett*, 941 A.2d 73, 78 (Pa. Commw. Ct. 2007) (emphasis added). Principles of federalism and comity counsel against federal court usurpation of Pennsylvania's well-developed state law avenues for adjudicating these grievances. *See Stein v. Cortes*, 223 F. Supp. 3d 423, 427-28 (E.D. Pa. 2016); *see also* Brief of Donald J. Trump for President, Inc. in Opposition to Plaintiffs' Motion for Preliminary Injunction, *Stein v. Cortes*, No. 16-CV-06287, Dkt. 38. Plaintiffs offer no reason why this Court should ignore those concerns. Therefore, abstention is the correct course to allow the Commonwealth's courts to definitively interpret Pennsylvania law and apply the Commonwealth's procedures for adjudicating election contests.

## V.    Laches Bars Plaintiffs' Claims.

Plaintiffs' opposition also provides no basis to avoid dismissal on laches grounds. As Plaintiffs recognize, Pls'. Opp. at 10, "laches may serve as the basis for dismissal pursuant to Rule 12(b)(6) if applicability of the doctrine is apparent from the face of the Complaint," *Warner v. Sun Ship, LLC*, No. 11-7830, 2012 WL 1521866, at *2 (E.D. Pa. Apr. 30, 2012), *aff'd*, 507 F. App'x 107 (3d Cir. 2012). Plaintiffs' Complaint alleges that the Secretary sent an improper instruction to the

Defendant Counties prior to Election Day. Compl. ¶ 135; Am. Compl. ¶ 129. And the opposition concedes that Plaintiffs have known about the challenged notification procedures since before Election Day. Pls.' Opp. at 7 ("Defendants announced the cure process (shortly before election day)"); *id.* at 10 ("the Secretary . . . instruct[ed] counties to allow curing . . . the night before election day"). The opposition also concedes that "[c]ounties took different positions on curing *before* election day." *Id.* (emphasis added). DJT had no previous qualms about bringing suit on similar theories prior to Election Day. Yet Plaintiffs waited to file their claims until *after* it became apparent that their preferred candidate would lose, nearly a week after Election Day.

Such "hedging" is barred by the fundamental principles of equity that undergird the doctrine of laches. *Tucker v. Burford*, 603 F. Supp. 276, 279 (N.D. Miss. 1985); *see also Kansas v. Colorado*, 514 U.S. 673, 687 (1995) ("'[L]aches[] is based upon [the] maxim that equity aids the vigilant and not those who slumber on their rights.'"). In their opposition, Plaintiffs offer no response to— and indeed ignore—decisions that have applied the doctrine of laches based on similarly unreasonable delays in the election context.[5]

---

[5] *See, e.g.*, *Perry v. Judd*, 471 F. App'x 219, 220 (4th Cir. 2012) (affirming denial of preliminary injunction based on laches); *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1181 (9th Cir. 1988) (affirming lower court's application of laches where "[t]he record clearly demonstrates that appellants knew of the basis of their alleged equal protection claim well in advance of the special election").

Plaintiffs "la[id] by and gamble[d] upon receiving a favorable decision of the electorate and then, upon losing, s[ought] to undo the ballot results in a court action," *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973) (en banc) (internal quotation marks omitted). The prejudice caused by Plaintiffs' request would be extreme, as they seek nothing less than to undo the popular vote of *all* Pennsylvanians by preventing the Secretary from certifying the results statewide. This Court should not allow Plaintiffs' gamesmanship to stand.

## VI.    Plaintiffs' Equal Protection Claims Fail as a Matter of Law.

Rather than expressly address the deficiencies of their equal protection claims on the merits, Plaintiffs have sought to moot those deficiencies by filing an Amended Complaint that does nothing to save them. Plaintiffs' equal protection claims fail because they cannot show that Defendants' notification procedures burdened anyone's right to vote. As Judge Ranjan explained last month, a "complain[t] that the state is *not* imposing a restriction on *someone else's* right to vote" is not cognizable under the Equal Protection Clause. *Donald J. Trump for President, Inc*., 2020 WL 5997680, at *44; *see also Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018) (no burden on anyone's right to vote where procedures only "ma[d]e[] it easier for some voters to cast their ballots").

When a voting procedure "imposes no burden on the 'right to vote' at all," *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *39, "the State's

important regulatory interests" will be "generally sufficient to justify" the restriction, *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (internal quotation marks omitted). Defendants' alleged procedures easily survive this deferential review because they advance compelling state interests in protecting the right to vote, which "is of the most fundamental significance under our constitutional structure." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) ("[Q]ualified voters have a constitutionally protected right . . . to have their votes counted."). Defendants' alleged decision to notify voters whose mail ballots were defective so that they could submit a valid ballot, rather than lose the ability to vote altogether, is justified by that interest.

As explained above, Plaintiffs cannot save their equal protection claim by relying on *Bush v. Gore*, as they do in describing their claim in the standing section of their opposition. *See* Pls.' Opp. at 3. In that case, "[t]he question before the Court [wa]s *not* whether *local* entities, in the exercise of their expertise, may develop different systems for implementing elections." *Bush*, 531 U.S. at 109 (emphases added). In line with that observation, "[m]any courts . . . have recognized that counties may, consistent with equal protection, employ entirely different election procedures and voting systems within a single state." *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *44 (collecting cases, and upholding Pennsylvania counties' different approaches to accepting mail ballots via unmanned drop boxes).

20

Indeed, Plaintiffs themselves concede that "no one doubts that" "[c]ounties have leeway to conduct elections somewhat differently from each other." Pls.' Br. in Supp. of PI at 12. Plaintiffs attempt to distinguish these cases by recasting their claim regarding Defendants' notification procedures as differential treatment in the way ballots are *counted*. *Id.* at 4. But notifying a voter that a ballot is defective does not affect whether that vote is counted; it merely provides the voter the opportunity to cast a valid ballot, which will only be counted if it meets the requirements for lawfully cast ballots. Defendants' alleged notification to voters whose ballots were rejected thus falls well within the "[d]istrict-to-district flexibility" that characterizes most elections and presents no equal protection concern. *Gustafson v. Ill. State Bd. of Elections*, No. 06 C 1159, 2007 WL 2892667 at *7 (N.D. Ill., Sept. 30, 2007).

Finally, this Court should not consider Plaintiffs' newfound theory that counties took different approaches to counting ballots with missing information, Am. Compl. ¶ 158; *see also* Dkt. 124 at 2, Pls'. Opp. at 5, because the Amended Complaint's vague and passing reference utterly fails to plead any "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" that contention cannot "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But even if the Court were to consider that conclusory assertion, it too must fail. The Sixth Circuit rejected Plaintiffs' exact theory, declining to find an equal protection violation in

Ohio counties' "considerabl[e]" variation in accepting or rejecting absentee ballots whose envelopes lacked certain information fields, including the voter's name, signature, voting residence, and birthdate. *See Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 636 (6th Cir. 2016) ("Arguable differences in how election boards apply uniform statewide standards to the innumerable permutations of ballot irregularities, although perhaps unfortunate, are to be expected, just as judges in sentencing-guidelines cases apply uniform standards with arguably different results."). And in any event, that theory is premised on the notion that ballots were unlawfully counted, but the challenged procedures are consistent with Pennsylvania law—as the Commonwealth's courts have already decided in a series of cases to which DJT was a party. *See supra* at 12; *see Donald J. Trump for President, Inc*., 2020 WL 5997680, at *52-53.

## VII.   Plaintiffs' Remedy Is Disproportionate to Their Purported Injury and Would Violate the U.S. Constitution.

Despite narrowing their claims significantly, Plaintiffs continue to seek relief that is grossly disproportionate to their alleged injury and unconstitutional. Plaintiffs ask this Court to enjoin Defendants "from certifying the results of the 2020 General Election in Pennsylvania on a Commonwealth-wide basis." Am. Compl. Prayer for Relief at (i). An injunction against certifying the election results would put the Commonwealth in a legal quagmire, potentially preventing it from meeting state statutory deadlines, which ensure the Commonwealth's electors are submitted by the

federal safe-harbor deadline of December 8. 3 U.S.C. § 5. In other words, granting the requested relief "could well ensure that no Pennsylvania vote counts. Such a result would be both outrageous and completely unnecessary." *Stein*, 223 F. Supp. 3d at 442.

The DNC raised this proportionality issue in its initial motion to dismiss, Mot. at 40-43; yet Plaintiffs neither addressed it in their opposition brief nor revised their request in amending their Complaint. Their requested relief should thus be dismissed, or in the alternative, stricken under Rule 12(f) as immaterial for three primary reasons.

*First*, Plaintiffs' allegations fail to go beyond the "garden variety election irregularities" that would support federal court intervention. *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1064 (7th Cir. 2020). Federal courts have taken the drastic measure of enjoining the certification of election results *only* where the election was fundamentally unfair. *Stein*, 223 F. Supp. 3d at 438 (collecting cases); *cf. Bognet*, 2020 WL 6686120, at *11 ("It was not intended by the Fourteenth Amendment . . . that all matters formerly within the exclusive cognizance of the states should become matters of national concern." (citation omitted)). There must

be "a pervasive error" and "significant disenfranchisement" that "undermines the integrity of the vote." *Bennett v. Yoshina*, 140 F.3d 1219, 1226-27 (9th Cir. 1998).[6]

Neither the original nor the amended complaint alleges the type of systemic fraud or pervasive election worker error that could support such relief. At most, Plaintiffs argue that some Pennsylvanians were denied the ability to vote because of defects on their mail ballots, an injury that should be remedied by franchising those voters (if the denial was unlawful), not by also disenfranchising over a million more Pennsylvanians. *See Bognet*, 2020 WL 6686120, at *16. A Commonwealth-wide injunction against certifying the election results would have "no essential or important relationship to the claim for relief," and should be dismissed. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)); *Genter v. Allstate Prop. & Cas. Ins. Co.*, No. 11-cv-0709, 2011 WL 2533075, at *5 (W.D. Pa. June 24, 2011).[7]

---

[6] Federal courts have also generally intervened only where there was not an adequate state law remedy to challenge election irregularities. *See González-Cancel v. Partido Nuevo Progresista*, 696 F.3d 115, 120 (1st Cir. 2012) (citing *Rosselló-González v. Calderón-Serra*, 398 F.3d 1, 16 (1st Cir. 2004)); *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978) (noting that "even claims of official misconduct[] do not usually rise to the level of constitutional violations where adequate state corrective procedures exist"). Here, however, Pennsylvania has well developed recount and election contest procedures. *See* DNC Mot. at 3-4.

[7] *See also Guerrero v. Halliburton Energy Servs., Inc.*, 231 F. Supp. 3d 797, 809 (E.D. Cal. 2017) (dismissing request for injunctive relief instead of granting motion to strike); *Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas. Co.*, 907 F. Supp. 2d 673, 680 (E.D. Pa. 2012) (granting motion to dismiss requested relief).

*Second*, federal court intervention here would impede the ability of the counties and the Commonwealth to meet statutory deadlines to certify the results and ensure that Pennsylvania's electoral votes will be counted. *See* DNC Mot. at 50. The certification process constitutes an outside limit on the ability of this Court to issue relief. *Bush*, 531 U.S. at 110-11. To prevent state officials from meeting that deadline would throw the results of this election into unprecedented chaos.

*Third*, the requested relief would violate the constitutional rights of Pennsylvania voters. Even if Plaintiffs' allegations were true (they are not), and there were isolated and sporadic incidents in which the election laws were violated—not by voters but by election workers—this occurrence could not possibly justify widescale disenfranchisement of hundreds of thousands—if not millions—of Pennsylvanians. Such a remedy—unlike the election irregularities Plaintiffs allege—would place a crushing burden on the right to vote. *See Ne. Ohio Coal. for Homeless*, 696 F.3d at 595, 597-98 (holding rejecting ballots invalidly cast due to poll worker error likely violates due process). This unconstitutional prayer for relief must be rejected.

## CONCLUSION

For the reasons stated herein, this Court should grant Intervenor DNC's motion to dismiss Plaintiffs' Complaint, or in the alternative dismiss Plaintiffs' Amended Complaint.

Dated: November 16, 2020                    Respectfully submitted,

Marc E. Elias*                              /s/ Clifford B. Levine
Uzoma N. Nkwonta*
Lalitha D. Madduri*                         Clifford B. Levine (PA ID No. 33507)
John M. Geise*                              Robert M. Linn (PA ID No. 44677)
PERKINS COIE LLP                            Alex M. Lacey (PA ID No. 313538)
700 Thirteenth St., N.W., Suite 800         Kyle J. Semroc (PA ID No. 326107)
Washington, D.C. 20005-3960                 DENTONS COHEN & GRIGSBY P.C.
Telephone: (202) 654-6200                   625 Liberty Avenue
Facsimile: (202) 654-9959                   Pittsburgh, PA 15222-3152
MElias@perkinscoie.com                      Telephone: (412) 297-4998
UNkwonta@perkinscoie.com                    Clifford.levine@dentons.com
LMadduri@perkinscoie.com                    Robert.linn@dentons.com
JGeise@perkinscoie.com                      Alex.lacey@dentons.com
                                            Kyle.semroc@dentons.com

                                            Seth P. Waxman*
                                            Ari Holtzblatt*
                                            WILMER CUTLER PICKERING HALE
                                            AND DORR LLP
                                            1875 Pennsylvania Ave. N.W.
                                            Washington, D.C. 20006
                                            Telephone: (202) 663-6000
                                            Seth.Waxman@wilmerhale.com
                                            Ari.Holtzblatt@wilmerhale.com

                                            *Counsel for Intervenor-Defendant DNC*

                                            *Special Admission*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document, memorandum in support, and proposed order were electronically filed on November 16, 2020, via the Court's CM/ECF System, which will send notification of such filing to counsel of record for Plaintiffs.

<u>/s/ Clifford B. Levine</u>
Counsel for Intervenor-Defendant DNC