# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC. *et. al*, <br><br> Plaintiffs, <br><br> v. <br> KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania; *et. al*, <br><br> Defendants. | No.  4:20-cv-**02078**-MWB |

# PLAINTIFFS' OMNIBUS OPPOSITION TO
# MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT (ECF 125)

i

# **TABLE OF CONTENTS**

PLAINTIFFS' OMNIBUS OPPOSITION TO MOTIONS TO DISMISS
THE FIRST AMENDED COMPLAINT (ECF 125) ..................................... i

PLAINTIFFS' OMNIBUS OPPOSITION TO MOTIONS TO DISMISS
THE FIRST AMENDED COMPLAINT (ECF 125) ..................................... 1

INTRODUCTION ............................................................................................ 1

FACTS ............................................................................................................. 4

SUMMARY OF THE ARGUMENT .............................................................. 7

ARGUMENT .................................................................................................... 8

I.   PLAINTIFFS HAVE STATED ENOUGH FACTS TO STATE A
     PLAUSIBLE CLAIM CONTRARY TO ARGUMENTS BY
     DEFENDANTS BOOCKVAR, DNC, AND COUNTIES ELECTION
     BOARDS ............................................................................................... 8

     A.   Plaintiffs Have Alleged Specific Harm And Grievances
          Contrary To Arguments ............................................................... 8

     B.   Defendants' Conduct Violated Due Process ................................ 9

     C.   Defendants' Procedural Objections Lack Merit ........................ 10

          1.   Plaintiffs Have Standing .................................................. 10

          2.   Plaintiffs' Claims Are Not Barred By Claim And Issue
               Preclusion Contrary To Arguments By Defendant
               Northampton County Board of Elections ......................... 14

          3.   Abstention Is Inappropriate In This Case Contrary To
               Arguments By Defendants Boockvar, DNC and the
               County Election Boards ................................................... 17

          4.   Abstention Under *Burford* Is Inappropriate Contrary To
               Arguments By Defendant Boockvar .................................. 24

          5.   Plaintiffs' Claims Are Not Barred By Laches Contrary
               To Arguments By Defendants Boockvar and DNC ........... 26

          6.   Plaintiffs Have Not Waived Their Opportunity To
               Oppose Dismissal ............................................................ 28

II.  PLAINTIFFS HAVE STATED AN EQUAL PROTECTION CLAIM
     CONTRARY TO ARGUMENTS BY DEFENDANTS BOOCKVAR,

DNC AND NORTHAMPTON AND CENTRE COUNTIES
ELECTION BOARDS ....................................................................29

    A.    Counties' Use Of Notice-And-Cure Procedures For Deficient
Mail-In Ballots Violated Equal Protection..........................................29

    B.    It is A Permissible Remedy For Equal Protection Violations To
Discard Unlawfully Cast Votes..........................................................29

III.    DEFENDANTS DO NOT HAVE AN ELEVENTH
AMENDMENT/SOVEREIGN IMMUNITY DEFENSE
CONTRARY TO ARGUMENTS BY DEFENDANT DNC.......................31

IV.    ELECTION RULES CREATED BY THE GENERAL ASSEMBLY
AND IMPLEMENTED BY THE COUNTIES SHOULD BE
STRICTLY ADHERED TO...........................................................32

CONCLUSION ...................................................................................33

# Table of Authorities

*A.R. v. Montrose Area Sch. Dist.*,
   2017 U.S. Dist. LEXIS 9695 (M.D.Pa. Jan. 23, 2017) ..................................... 25

*Abbas v. Dixon*,
   480 F.3d 636 (2d Cir. 2007) ............................................................................... 28

*Alevras v. Tacopina*,
   226 F. App'x 222 (3d Cir. 2007) ............................................................... 20, 21

*Arab African Int'l Bank v. Epstein*,
   10 F.3d 168 (3d Cir. 1993) ............................................................... 20, 21, 21

*Artway v. Attorney Gen. of State of N.J.*,
   81 F.3d 1235 (3d Cir. 1996) .............................................................................. 23

*Baykeeper v. NL Industr., Inc.*,
   660 F.3d 686 (3d Cir. 2011) .............................................................................. 25

*Bd. of Trustees v. Garrett*,
   531 U.S. 356 (2001) ........................................................................................... 33

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................. 15, 15

*Bell v. Southwell*,
   376 F.2d 659 (5th Cir. 1967) ............................................................................. 31

*Bognet*,
   2020 WL 6686120 ............................................................................................. 18

*Burford. Moses*
   Moses, 460 U.S. ................................................................................................. 28

*Bush v. Gore*,
   531 U.S. 98 (2000) ................................................................................ 10, 18, 19

*Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*,
   770 F.3d 610–14 (7th Cir. 2014) ...................................................................... 28

*Cira v. SEPTA*,
   1989 U.S. Dist. LEXIS 2728 (E.D.Pa. March 22, 1989) ................................. 25

*Constitution Party of Pa. v. Aichele*,

757 F.3d 347 (3d Cir. 2014) ............................................................... 16

*Csepel v. Republic of Hungary*,
714 F.3d 591–08 (D.C. Cir 2013) ...................................... 28

*Donald J. Trump for President*,
2020 U.S. Dist. LEXIS 188390 ...................................... 15, 16, 30, 32

*Donald Trump For President*,
2020 U.S. Dist. LEXIS 188390 ...................................... 19

*Drake v. Obama*,
664 F.3d 774 (9th Cir. 2011) .............................................. 17

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005) ........................................................... 27

*Fulani v. Hogsett*,
917 F.2d 1028 (7th Cir. 1990) ............................................ 17

*Gill v. Whitford*,
138 S. Ct. 1916 (2018) ....................................................... 17

*Golden v. Gov't of the V.I.*,
2005 U.S. Dist. LEXIS 45967 (D.V.I. March 1, 2005) .............................. 31-32

*Green Party of Tenn. v. Hargett*,
767 F.3d 533 (6th Cir. 2014) .............................................. 17

*in Pennsylvania." Regscan, Inc. v. Brewer*
Pennsylvania." Regscan, Inc. v. Brewer, 2006 WL 401852 (E.D. Pa. Feb. 17,
2006) ................................................................................ 20

*In re General Election- 1985*,
531 A.2d 836 (Pa. Commw. Ct. 1987) ............................. 17

*Kenworthy v. Hargrove*,
826 F.Supp.2d 138, (E.D.Pa. 1993) ................................. 25

*Lac D'Amiante Du Quebec, Ltee v. Am. Home Assur. Co.*,
864 F.2d 1033 (3d Cir. 1988) ...................................... 27, 28

*League of Women Voters of Ohio v. Brunner*,
548 F.3d 463 (6th Cir. 2008) ............................. 18-19, 29

*Ludwig v. Berks County*,
  313 Fed.Appx. 479 (3d Cir. 2008) .................................................................. 26

*Maleski v. Conning & Co.*,
  1995 U.S. Dist. LEXIS 14064 (E.D.Pa. Sept. 27, 1995) ............................ 25, 26

*Marks v. Stinson*,
  19 F.3d 873 (3d Cir. 1994) ................................................. 9, 21, 22, 23, 30, 31

*Marran v. Marran*,
  376 F.3d 143 (3d Cir. 2004) ...................................................................... 23, 26

*Nelson v. Warner*,
  2020 WL 4582414 (S.D.W. Va. Aug. 10, 2020) ............................................. 17

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989) ......................................................................................... 24

*Office of Disciplinary Counsel v. Kiesewetter*,
  889 A.2d 47–51 (Pa. 2005) .............................................................................. 20

*Orloski v. Davis*,
  564 F. Supp. 526 (M.D. Pa. 1983) ...................................................... 16-17, 17

*Pa. Democratic Party*,
  238 A.3d ........................................................................................................... 24

*Pa. Democratic Party*,
  238 A.3d 345 ............................................................................... 12-13, 13, 19

*Pa. Democratic Party*,
  2020 WL 5997680 ........................................................................................... 21

*Pavek v. Donald J. Trump for President, Inc.*,
  967 F.3d 905 (8th Cir. 2020) .......................................................................... 17

*PG Publ. Co. v. Aichele*,
  902 F.Supp.2d 724 (W.D.Pa. 2012) ................................................................ 33

*Radakovich v. Radakovich*,
  846 A.2d 709 (Pa. Super. Ct. 2004) ................................................................ 20

*Railroad Comm'n v. Pullman Co.*,
  312 U.S. 496 (1941) ........................................................................................ 23

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ................................................................... 9, 19

*Ryder v. Bartholomew*,
   2014 U.S. Dist. LEXIS 71839 (M.D. Pa. May 27, 2014) ................................. 30

*Schulz v. Williams*,
   44 F.3d 48 (2d Cir. 1994) ........................................................... 17

*Spinola v. Coles*,
   697 F. Supp. 895 (W.D. Pa. 1988) ................................................... 20

*Sprint Commcns., Inc. v. Jacobs*,
   571 U.S. 69 (2013) ................................................................. 23

*Stein v. Cortes*,
   223 F.Supp.3d 423 (E.D.Pa. 2016) .................................................. 31

*Terra Nova Ins. Co. v. 900 Bar, Inc.*,
   887 F.2d 1213 (3d Cir. 1989) .................................................... 24-25

*Tex. Democratic Party v. Benkiser*,
   459 F.3d 582 (5th Cir. 2006) ...................................................... 17

*United States v. L.D.T. Corp.*,
   302 F. Supp. 990 (E.D. Pa. 1969) .................................................. 29

*Younger v. Harris*,
   401 U.S. 37 (1971) ................................................................. 21

*Zwicklerv. Koota*,
   389 U.S. 241 (1967) ............................................................... 24

25 Pa. Stat. Ann. § 3146.8 ............................................................ 12

25 Pa. Stat. Ann. § 3150.16 .................................................. 11, 12, 24

42 U.S.C. 1983 ....................................................................... 25

### PLAINTIFFS' OMNIBUS OPPOSITION TO
### MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT (ECF 125)[1]

### INTRODUCTION

Defendants purposefully violated the Constitution by unequally and improperly processing hundreds of thousands of mail ballots under the cover of darkness in an illegal scheme to favor Joseph Biden over President Donald J. Trump, knowing that mail votes in the Counties at issue would favor Biden. In short, Defendants, including Pennsylvania's Secretary of the Commonwealth, appointed by a Democrat governor, and seven Democrat controlled County Boards of Elections violated Pennsylvania law with the purpose of influencing the election in favor of Biden over Trump.  Government conduct designed to favor one candidate over the other – which conduct also contravenes state law – violates the Due Process and Equal Protection clauses under *Reynolds v. Sims*, 377 U.S. 533 (1964), and *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994).

Defendants treated millions of mail-in voters differently depending on their geographic location and whom the voters were likely to support, and counted untold thousands of ballots that unambiguously fail to meet the mail ballot-security

---

[1] This Omnibus response addresses the following Motions to Dismiss ("**MTD**") the First Amended Complaint: Secretary Boockvar MTD (ECF 143); DNC MTD (ECF 105, 144, 145); Centre and Delaware County Boards of Elections MTD (ECF 136); Allegheny County Board of Elections, Chester County Board of Elections, Montgomery County Board of Elections, and Philadelphia County Board of Elections (ECF 138); Northampton County Board of Elections (ECF 141); NAACP-PA State Conference Black Political Empowerment Project, Common Cause Pennsylvania, League of Women Voters of Pennsylvania, Ayeni, Gajda, Higgins, Lara, Morales, Price, Stevens, and Stover (ECF 95, 142, 161).

requirements set forth by the Pennsylvania legislature. In addition, Defendants purposefully excluded Plaintiffs from meaningfully observing significant portions of this election, hindering Plaintiffs' ability to independently quantify how many thousands of invalid ballots were counted.   Just yesterday, the Pennsylvania Supreme Court ruled there is no right to meaningfully observe the canvassing of mail ballots.  If this decision is correct, the Pennsylvania mail ballot voting system is so porous that it violates Due Process.  Of course, under *Bush v. Gore*, 531 U.S. 98 (2000), this Court need not accept the Pennsylvania Supreme Court's interpretation of state law on an issue which impacts a presidential election.   Moreover, this decision represents a vast departure from Pennsylvania precedent, a change in law in the middle of a presidential election which is also improper under *Bush v. Gore.*

Due to confusion caused by the withdrawal of Plaintiffs' lead counsel on Friday,[2] November 13, the Amended Complaint filed on November 15 inadvertently withdrew numerous allegations contained in the original Complaint regarding the preclusion of observers at the canvassing of mail votes and the subsequent improper counting of mail votes in the seven Defendant County Boards of Election. Moreover, with the appearance of new counsel, former Mayor Rudy Giuliani and the Scaringi Firm, and new factual developments, the Campaign intends to file a

---

[2] As reported in the media, former counsel suffered threats of violence as well as economic reprisal for representing President Trump.  Other counsel remaining in this case also received threats and is under the protection of U.S. Marshalls.  Needless to say, this proved disruptive.

second amended complaint to make clear that there was intentional misconduct by the Defendant Boards of Election, which deliberately excluded Republican/Trump observers from the canvassing in order to facilitate counting mail ballots which did not comport with the signature, date, and other requirements of Pennsylvania law. The Democrats who controlled these Boards knew that these ballots would favor Biden over Trump, based on the registration of the mail voters, as well as through their knowledge that the Biden campaign's strategy was mail ballots, and the Trump campaign's strategy was voting at the polls.   The Defendants knew that this deliberate conduct would favor Biden over Trump, a clear violation of Equal Protection and Due Process under *Reynolds* and *Marks v. Stinson*.  In order to assist the Court, Plaintiffs are fully briefing the renewed motions to dismiss, albeit they intend to stand on the proposed Second Amended Complaint, not the Amended Complaint currently at issue.

Contemporaneously with this Opposition, Plaintiffs are filing a Second Motion for Expedited Discovery to obtain, *inter alia,* access to the outside and inside envelopes for the approximately 1.5 million mail ballots at issue – all public records – in the Defendant Counties, or, alternatively, a significant random sample from each county.  In accord with *Marks v. Stinson*, Plaintiffs will examine these envelopes to determine the percentage of mail ballots which were illegally counted – of which Biden won approximately 75% and Trump 25%, a 50% margin for Biden.  Plaintiffs,

through statistical expert analysis will then extrapolate this percent to the 1.5 million mail ballots.  This simple exercise will determine whether Plaintiffs can prove their case – that sufficient ***illegal*** ballots were counted that changed the result of the election.[3]  If so, the Court should set aside these votes and declare Trump the winner.[4]

## FACTS

After Plaintiffs were purposefully excluded from observing key aspects of the 2020 General Election in Pennsylvania and obtained publicly available evidence of unequal and illegal counting of votes by Defendants, Plaintiffs filed this action on Monday, November 9, 2020.  Pennsylvania law mandates that mail-in ballots meet detailed requirements.  *See* 25 Pa. Stat. Ann. § 3150.16. These include putting each ballot in an inner secrecy envelope, which "shall then be placed in the second [envelope], on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board

---

[3] For example, if 10% of the 1.5 million mail ballots were improperly counted because they lacked signatures, dates, or inside security envelopes, 75% x 150,000 votes should be deducted from Biden, and 25% x 150,000 votes should be deducted from Trump, a margin of 75,000 votes for Biden which would be sufficient to overturn reported results.

[4] At a minimum, the Court should order the above discovery.  If the evidence is insufficient, Plaintiffs may withdraw their case, which would avoid the burden on this Court of deciding numerous legal issues.

of election." *Id.* After officials receive the mail-in ballots, the law requires them to "safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections." 25 Pa. Stat. Ann. § 3146.8(a). Election officials may "pre-canvass" ballots "no earlier than seven o'clock A.M. on election day," but "[n]o person observing, attending or participating in a precanvass meeting may disclose the results of any portion of any pre-canvass meeting prior to the close of the polls." 25 Pa. Stat. Ann. § 3146.8(g)(1.1). As a precaution, "[w]atchers shall be permitted to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded." 25 Pa. Stat. Ann. § 3146.8(b). Together, these provisions ensure that: (i) mail-in ballots are not manipulated, tampered with, or inspected until election day; (ii) no one can open or count ballots without a poll watcher present; and (iii) even if someone pre-canvasses a ballot on election day, no one can be told "the results" of that pre-canvass until polls close.

Secretary Boockvar has advocated state officials should count more mail ballots than the law allows to favor Democrats. For instance, on September 28, 2020, she issued guidance to the County Boards of Elections that mail-in and absentee ballots returned without inner secrecy envelopes should be counted. *See* Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures, 9/28/2020, Boockvar Dep. Ex. 11. That guidance directly contradicted the mandatory language in

Pennsylvania's Election Code, which is why the Pennsylvania Supreme Court struck it down. *See* Pa. Democratic Party, 238 A.3d 345 ("[T]he Legislature intended for the secrecy envelope provision to be mandatory."). But Secretary Boockvar was not deterred. Despite the clear commands of the Election Code, she and the other Defendants systematically disregarded key ballot integrity and security measures associated with mail-in votes. Specifically, the Philadelphia County Elections Board issued a "Cancelled Ballot Notification" providing that voters whose ballots were cancelled (including those "returned without a signature on the declaration envelope" or "determined to lack a secrecy envelope"), would receive notice before Election Day. Am. Compl. ¶133; Web Archive, Cancelled Ballot Notification Information, Philadelphia City Commissions (Nov 1, 2020). This involved inspecting the ballots before Election Day, disclosing the results of that inspection before Election Day, and allowing voters to cure their defective ballot. Complaint ¶¶ 133-34. All of this was illegal and was done without allowing poll watchers access. The Defendant County Boards of Elections nonetheless permitted it. *Id.* ¶ 136.

As the Complaint details, poll watchers in Allegheny, Centre, Philadelphia, Delaware, and other Counties were not allowed to observe as ballots were reviewed for sufficiency, opened, counted, or recorded. Complaint ¶¶ 140-43, 150. Sometimes, this was because no poll watchers were permitted at all. Other times poll

watchers were permitted for only some periods, or were required to stand so far away that they could not tell which ballots were improperly counted. County boards have continued ignoring Pennsylvania law, and some have just days ago voted to count thousands of ballots with incomplete addresses, no signature, and other deficiencies. See Meeting of the Commissioners of Elections (Nov. 9, 2020) (Philadelphia County voted to count many thousands with no date, street address, or printed name); Election Day Updates (Nov. 12, 2020) (Allegheny County voted to count thousands of undated ballots); In Re: Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election, ¶¶ 22-23 (Bucks County voted to count ballots with no date and others with no printed name or address, a mismatched address, or other errors).

## SUMMARY OF THE ARGUMENT

Defendants purposefully violated the Constitution by unequally and improperly processing hundreds of thousands of mail ballots under the cover of darkness in an illegal purposeful scheme to favor Biden and other democrat candidates over Trump and Republican candidates, knowing that mail votes would favor the Democrats.  In short, Defendants violated Pennsylvania law with the purpose of influencing the election in favor of Biden and other Democrats.  This is not permitted under *Reynolds* and *Marks v. Stinson*, binding 3d Circuit precedent.

Defendants treated millions of mail-in voters differently depending on their geographic location, and counted untold thousands of ballots that unambiguously

fail to meet the ballot-security requirements set forth by the Pennsylvania legislature. In addition, Defendants have purposefully excluded Plaintiffs from meaningfully observing significant portions of this election, hindering Plaintiffs' ability to independently quantify how many thousands of invalid ballots were counted. All of this merits an injunction and serious judicial scrutiny of Defendants' actions.

## ARGUMENT[5]

### I. PLAINTIFFS HAVE STATED ENOUGH FACTS TO STATE A PLAUSIBLE CLAIM CONTRARY TO ARGUMENTS BY DEFENDANTS BOOCKVAR, DNC, AND COUNTIES ELECTION BOARDS

#### A. Plaintiffs Have Alleged Specific Harm And Grievances Contrary To Arguments

A complaint is not "require[d] [to have a] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level."). Plaintiffs alleged specific, non-speculative harm.

*First*, the Amended Complaint explains how the cure disparity and the Defendant counties' insistence upon counting illegal ballots disparately favored Democratic-leaning counties over Republican-leaning counties, causing harm to the Trump Campaign by depriving the President of lawful votes and awarding his

---

[5] All emphases are added, and citations, quotation marks, footnotes, and brackets are omitted, unless otherwise stated.

opponent with unlawful votes.  *See* Am. Compl. ¶¶ 6, 131, 158.

***Second***, the Amended Complaint explains how the Defendant counties' treatment of voters differently than voters in other counties causing harm to Plaintiffs Roberts and Henry in that their votes were not counted, while those in Defendant Counties were.  *See* Am. Compl. ¶¶ 6, 130, 158.

Defendants' reliance is misplaced on *Donald J. Trump for President, Inc. v. Boockvar*, 2020 U.S. Dist. LEXIS 1883902020 (W.D. Pa. Oct. 10, 2020).  Unlike this case, "[that] case [was] well past the pleading stage," "[e]xtensive fact and expert discovery [was] complete," and "[n]early 300 exhibits [were] submitted on cross-motions for summary judgment …." *Id.*, at *105.

## B.     Defendants' Conduct Violated Due Process

Defendants' conduct designed to exclude Republican/Trump observers as part of a scheme to count deficient mail ballots in order to favor Biden over Trump was grossly and patently unfair and violated substantive due process protected by the 14th Amendment.  *Donald J. Trump for President*, 2020 U.S. Dist. LEXIS 188390, at *157-58 ("substantive due process rights are violated if the election process itself reaches the point of patent and fundamental unfairness").

While, "[a] canvass of substantive due process cases related to voting rights reveals that voters can challenge a state election procedure in federal court only in limited circumstances, such as when the complained of conduct discriminates

against a discrete group of voters, … or when the willful and illegal conduct of election officials results in fraudulently obtained or fundamentally unfair voting results." *Donald J. Trump for President*, 2020 U.S. Dist. LEXIS 188390, at *158-59. Here, as in *Marks v. Stinson*, we have the "limited circumstance" of government officials discriminating against Republican voters and their willful conduct leading to fundamentally unfair voting results.

Defendants ineffectively attempt to capitalize on courts "draw[ing] a distinction between 'garden variety' election irregularities and a pervasive error that undermines the integrity of the vote."[6]   *Id*. at *158-59.   However, "either an intentional election fraud or an unintentional error resulting in broad-gauge unfairness" are the types of "election error[s]" that "become[] a key that unlocks the restraints on the federal court's authority to act" to protect due process rights.   *Id*. Plaintiffs have alleged unfairness and requested that this Court act to protect their due process rights.

## C.   Defendants' Procedural Objections Lack Merit

### 1.   Plaintiffs Have Standing[7]

Plaintiff Trump Campaign brings this action for itself and on behalf of its

---

[6] *See* Boockvar MTD (ECF 143), at 2, 21, 34 ("garden variety" disputes and irregularities); DNC MTD (ECF 144), at 23 ("garden variety election irregularities").

[7] "In reviewing [Defendants'] facial attack" on Plaintiffs' standing, the Court must consider the facts "in the light most favorable to the plaintiff" and "constru[e] the alleged facts in favor of the non-moving party." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

candidate, President Trump.  As a political committee for a federal candidate, the Trump Campaign has Article III standing to bring this action.  *See, e.g.*, *Orloski v. Davis*, 564 F. Supp. 526, 530-31 (M.D. Pa. 1983) ("Democratic State Committee ha[s] standing to raise [constitutional] claim").  See also *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587-588 (5th Cir. 2006) ("[A]fter the primary election, a candidate steps into the shoes of his party, and their interests are identical."); *In re General Election- 1985*, 531 A.2d 836, 838 (Pa. Commw. Ct. 1987) (A candidate for office in the election at issue suffers a direct and substantial harm sufficient for standing to contest the manner in which an election will be conducted).

*First*, as in *Marks v. Stinson*, Plaintiff Trump Campaign has "competitive standing" based upon disparate state action  leading to the "potential loss of an election." *Drake v. Obama*, 664 F.3d 774, 783 (9th Cir. 2011) ("the 'potential loss of an election' was an injury-in-fact sufficient to give a local candidate and Republican party officials standing.") "[O]verwhelming precedent" holds "that a candidate and his or her party can show an injury-in-fact if the defendant's actions harm the candidate's chances of winning." *Nelson v. Warner*, 2020 WL 4582414, at *4 (S.D.W. Va. Aug. 10, 2020).  *See also Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 907 (8th Cir. 2020); *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 538 (6th Cir. 2014); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587–88 (5th Cir. 2006); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990); *Schulz v.*

*Williams*, 44 F.3d 48, 53 (2d Cir. 1994).

The other Plaintiffs (Roberts and Henry), as qualified electors, registered voters and injured parties, also have Article III standing to bring this action. *See Orloski*, 564 F. Supp. at 530; *Pierce*, 324 F. Supp. 2d at 692-93.  Each has been injured in a way that concretely impacted their rights under the Fourteenth Amendment Due Process Clause; the Fourteenth Amendment Equal Protection Clause of the Constitution of the United States.

"'[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage."  *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). "The key inquiry for standing is whether the alleged violation of the right to vote arises from an invidious classification—including … '***place of residence within a State***,'—to which the plaintiff is subject and in which 'the favored group has full voting strength and the groups not in favor have their votes discounted.'" *Bognet*, 2020 WL 6686120, at *13-14 (*quoting Reynolds*, 377 U.S. at 555, 561 & n.29).[8]  Moreover, "voters who allege facts showing disadvantage to themselves" have standing to remedy that disadvantage if they are "part of a group of voters whose votes will be weighed differently compared to another group." *Id.*

***Second***, Plaintiff Henry makes precisely that allegation. Henry is a "qualified

---

[8] Plaintiffs believe *Bognet* was wrongly decided and maintain their Electors Clause claim to preserve it for appellate review.

registered elector residing in West Hempfield Township, Lancaster County, Pennsylvania." Am. Compl. ¶ 15. He specifically alleges:

> While counties like Defendant County Boards of Elections permitted voters to cast either replacement absentee and mail-in ballots before Election Day or provisional ballots on Election Day in order to cure their defective mail-in ballots, many more counties are not. Lancaster … for example, did not contact voters who submitted defective ballots or give them an opportunity to cure. They simply followed the law and treated these ballots as invalid and refused to count them.

Am. Compl. ¶ 130. Thus "two voters could each have cast a mail-in ballot before Election Day at the same time, yet perhaps only one of their ballots" would be counted because it was cast in a jurisdiction that allowed for cure. *Bognet*, 2020 WL 6686120, at *13-14.

This is a judicially cognizable injury under the Equal Protection Clause. The Clause imposes a "minimum requirement for nonarbitrary treatment of voters" and forbids voting systems and practices that distribute resources in "standardless" fashion, without "specific rules designed to ensure uniform treatment." *Bush v. Gore*, 531 U.S. 98, 105–07 (2000); *see also League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 477-78 (6th Cir. 2008) ("[T]he use of standardless manual recounts violates the Equal Protection Clause.")  Secretary Boockvar allowed some counties to ignore the State's uniform cure procedures, while others adhered to the law. The resulting haphazard cure process treated Pennsylvania voters, including Henry, differently solely based on their county of residence. *See Bush*, 531 U.S. at

107 (finding Equal Protection violation when "each of the counties used varying standards to determine what was a legal vote"). Pennsylvania's election thus violated the "clear and strong command of our Constitution's Equal Protection Clause" that "voters cannot be classified, constitutionally, on the basis of where they live." *Reynolds*, 377 U.S at 560, 568.

The Amended Complaint explains how the cure disparity and Defendant counties' insistence upon counting illegal ballots disparately favored Democratic-leaning counties over Republican-leaning counties. *See* Am. Compl. ¶¶ 6, 131, 158. Under *Bush v. Gore*, presidential candidates have an interest in having lawful votes counted and unlawful votes invalidated. This is particularly true in Pennsylvania, a few swing state where the vote margin is close. While Defendants breathlessly elide the merits, Plaintiffs have unquestionably suffered constitutionally redressable injury.

> **2.  Plaintiffs' Claims Are Not Barred By Claim And Issue Preclusion Contrary To Arguments By Defendant Northampton County Board of Elections**

Contrary to Defendant Northampton County Board of Elections, Plaintiffs' claims are *not* barred by claim or issue preclusion. Plaintiffs have not litigated the same issues in *Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (2020) and *Donald Trump For President*, 2020 U.S. Dist. LEXIS 188390. Defendat has not remotely met its burden to show claim or issue preclusion applies.

14

For claim preclusion to apply, under federal law, there must be: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *Arab African Int'l Bank v. Epstein,* 10 F.3d 168, 171 (3d Cir. 1993). Pennsylvania law, requires "the concurrence of four conditions between the present and prior actions: (1) identity of issues; (2) identity of causes of action; (3) identity of parties or their privies; and (4) identity of the quality or capacity of the parties suing or being sued." *Radakovich v. Radakovich,* 846 A.2d 709, 715 (Pa. Super. Ct. 2004).**9** Claim preclusion under federal law is "substantially the same as in Pennsylvania." *Regscan, Inc. v. Brewer*, 2006 WL 401852, *5 n.2 (E.D. Pa. Feb. 17, 2006); *see id.* (explaining the neat overlap).

For issue preclusion to apply, under federal and Pennsylvania law, the party seeking to invoke issue has the burden to show: "(1) the identical issue was decided in prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question." *Alevras*, 226 F. App'x at 227–28; *see*

---

**9** When a federal court considers whether a cause of action is precluded by earlier state-law litigation, it invokes state-law principles of preclusion, and then gives that determination full faith and credit under federal law. *See Spinola v. Coles*, 697 F. Supp. 895, 896 (W.D. Pa. 1988) (*citing Kremer v Chem. Const. Co.*, 456 U.S. 461 (1982)). Thus, the Court should apply state law to the extent Defendant argues Plaintiffs' claims are precluded by earlier state litigation, and federal law to the extent Defendant asserts preclusion on the basis of prior federal litigation. *See Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

*Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005) (listing the same four elements, plus the additional element that "the determination in the prior proceeding was essential to the judgment").  Northampton has not remotely met this burden.

***First***, Plaintiffs were not parties to the state litigation. *See* Order Granting in Part Applications for Intervention, *Pa. Democratic Party v. Boockvar*, No. 133 MM 2020 (Pa. Sep. 3, 2020) (per curiam minute order) (denying Donald J. Trump for President, Inc.'s motion to intervene).  Accordingly, there is no preclusion based upon the state case.  *See Alevras v. Tacopina*, 226 F. App'x 222, 227-28 (3d Cir. 2007); *see Kiesewetter*, 889 A.2d at 50-51; *Epstein,* 10 F.3d at 171; *Radakovich,* 846 A.2d at 715.

***Second***, Plaintiffs' equal protection challenge to the counting of illegal ballots and the cure process in this case was never raised, litigated, or decided. *See Pa. Democratic Party*, 2020 WL 5997680, at *1 (identifying the three claims at issue in the case as relating to drop boxes for mail-in ballots, signature matching, and the residency requirement for poll watchers). Indeed, Plaintiffs *could not have* raised such claims in that litigation because Plaintiffs' claim did not ripen until Defendants announced the cure process (shortly before election day), several counties decided not to implement the cure process (on election day itself), and different counties applied opposing standards for whether to count technically deficient ballots (on and

after election day).  Accordingly, Plaintiffs' claims are not barred by the federal case. *See Epstein,* 10 F.3d at 171; *Mullarkey*, 536 F.3d at 225; *Alevras*, 226 F. App'x at 227-28.

### 3. Abstention Is Inappropriate In This Case Contrary To Arguments By Defendants Boockvar, DNC and the County Election Boards

#### a. Abstention under *Younger* is inapplicable in this case contrary to arguments by Counties Election Boards

This case does not warrant abstention under *Younger v. Harris*, 401 U.S. 37 (1971).  "A federal court will only consider *Younger* abstention when the requested equitable relief would constitute federal interference in state judicial or quasi-judicial proceedings."  *Marks v. Stinson*, 19 F.3d 873, 882 (3d Cir. 1994) (*citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *Huffman v. Pursue*, 420 U.S. 592, 599-600 (1975)).

*First*, "abstention is appropriate in a few carefully defined situations."  *Marks*, 19 F.3d at 885 ("The district court did not err in refusing to abstain [under the *Younger* doctrine].").  This case is not one where abstention is appropriate.  A "proponent of abstention must show (1) there are ongoing state proceedings involving the would-be federal plaintiffs that are judicial in nature, (2) the state proceedings implicate important state interests, and (3) the state proceedings afford an opportunity to raise the federal claims."  *Marks*, 19 F.3d at 882.  Here, defendants have failed to show these three elements.

17

*Second*, even if defendants could show all three elements, "such a showing does not require that the federal court abstain." *Marks*, 19 F.3d at 882. "Where federal proceedings parallel but do not interfere with the state proceedings, the principles of comity underlying *Younger* abstention are not implicated." *Id.* Here, federal proceedings do not interfere with any state proceedings, and thus the *Younger* abstention is not warranted.

*Third*, a "federal plaintiff may pursue parallel actions in the state and federal courts so long as the plaintiff does not seek in the federal court that would interfere with the state judicial process." *Marks*, 19 F.3d at 885. "[A] person with a federal Civil Rights Act claim has no duty to exhaust state remedies before pursuing his or her claim in the federal courts." *Id.*, at 882 (*citing Patsy v. Bd. of Regents*, 457 U.S. 496 (1982)). "In the absence of a showing of some potential for interference with an ongoing state proceeding, *Younger* principles do not bar a Civil Rights Act plaintiff from going forward in a federal forum merely because there are unexhausted possibilities for state litigation over the same subject matter." *Id*. at 882. "Exhaustion of appellate remedies is required by *Younger* only when the federal proceedings seek effectively to annul the state judgment." *Id*. at 883 (*citing Wooley v. Maynard*, 430 U.S. 705 (1977)).

"This is not a case in which the federal plaintiffs are seeking relief which will in any way impair the ability of the state courts in Pennsylvania to adjudicate

anything that is currently before them."  *Id*. at 884 (noting that "plaintiffs were simply pursuing parallel tracks seeking consistent relief in the federal and state systems") (*citing Kentucky West Virginia Gas Co. v. Penn. Pub. Util. Comm'n*, 791 F.2d 1111, 1117 (3d Cir. 1986)):

> In the typical *Younger* case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state court proceedings…. In this case, on the other hand, the federal plaintiffs ... are also the state plaintiffs. Moreover, they are not seeking to enjoin any state judicial proceeding; instead, they simply desire to litigate what is admittedly a federal question in federal court, having agreed to dismiss their pending state court appeal if the district court assumes jurisdiction over the merits of their complaint….

> Under the circumstances, then, we believe that the balance of state and federal interests tips decidedly away from abstention under *Younger*….

*Id*. at 885 (citing 791 F.2d at 769). *See also Marran v. Marran*, 376 F.3d 143, 155 (3d Cir. 2004) ("When there are no pending state proceedings, *Younger* abstention is inappropriate.").

### b.    Abstention under *Pullman* is not warranted in this case contrary to arguments by Defendants Boockvar, DNC, and Counties Election Boards

This case does not warrant abstention under *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).  "In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction."  *Sprint Commcns., Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). "*Pullman* abstention 'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it [which] can be

justified ... only in exceptional circumstances.'" *Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1270 (3d Cir. 1996) (quoting *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 813 (1976)). A court can abstain under *Pullman* only if it finds "(1) that uncertain issues of state law underlie the federal constitutional claims brought in the district court; (2) that the state law issues are amenable to a state court interpretation that would obviate the need for, or substantially narrow, adjudication of the federal claim; and (3) that important state policies would be disrupted through a federal court's erroneous construction of state law." *Id.* All three requirements are missing here.

**First**, no issues of state law underlie Plaintiffs' equal protection claim; Defendants' unequal treatment of voters violates the federal constitution whether or not that treatment also violates state law.

**Second**, even if Plaintiffs' equal protection claim implicated a determinative question of state law, that question is not "uncertain" nor "obviously susceptible of a limiting construction" that would avoid the federal questions. *Zwickler v. Koota*, 389 U.S. 241, 251 n.14 (1967). The Pennsylvania Supreme Court—the ultimate authority on Pennsylvania law—already decided the relevant questions; it held that the decision to provide a cure process is one for the legislature and that the legislature decided not to provide one. *See Pa. Democratic Party*, 238 A.3d at 374. And Pennsylvania law is clear that mail and absentee ballot envelopes must meet certain

legal requirements. *See* 25 Pa. Stat. Ann. § 3150.16.

**Third**, no Defendant seriously maintains that Pennsylvania has an important state policy interest in applying lenient ballot-counting rules in Democratic counties and exacting standards in Republican ones.

Even if all three *Pullman* factors were met, this Court retains discretion to adjudicate the issue. It should do so. The deadline for finalizing election results is imminent, so sending the case to state court "would impose expense and long delay upon the litigants without hope of its bearing fruit." *Koota*, 389 U.S. at 251. With such a short period of time to redress serious federal questions, there is no basis for this Court to abstain from its "virtually unflagging" "obligation to adjudicate claims within [its] jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989).

      c.      **Abstention under *Colorado River* is not permissible in this case contrary to arguments by Defendant Boockvar**

The *Colorado River* abstention "permits a federal court to decline the exercise of jurisdiction in very limited circumstances," but "the United States Supreme Court has vehemently emphasized '***the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them***." *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1222 (3d Cir. 1989) (*quoting Colorado River*, 424 U.S. at 817). "This obligation is especially imperative in a civil-rights action … arising under 42

21

U.S.C. 1983, which offers a uniquely federal remedy for vindication of individual rights violated under color of state law." *Kenworthy v. Hargrove*, 826 F.Supp.2d 138, (E.D.Pa. 1993) (*citing Ivy Club v. Edwards*, 943 F.2d 270, 277 (3d Cir. 1991)). "Abstention under *Colorado River*, therefore, requires the clearest of justifications and is only permitted in exceptional circumstances, with the balance heavily weighted in favor of the exercise of jurisdiction."  *Id.* at 140 (holding defendant "failed to demonstrate the requisite 'exceptional circumstances' to justify abstention under *Colorado River*") (*citing Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265, 276 (3d Cir. 1991)).[10]  The doctrine of primary jurisdiction:

> [A]pplies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*Baykeeper v. NL Industr., Inc*., 660 F.3d 686, 691 (3d Cir. 2011) (*quoting U.S. v. W. Pac. RR. Co.*, 352 U.S. 59, 64 (1956).[11]

---

[10] *See also A.R. v. Montrose Area Sch. Dist*., 2017 U.S. Dist. LEXIS 9695, *11 (M.D.Pa. Jan. 23, 2017) (defendant "has made no … showing of a strong federal policy favoring exclusive state jurisdiction over civil rights claims under Title IX" and thus "has not established exceptional circumstances [under *Colorado River*] which would compel us to refrain from exercising the duty otherwise imposed upon us by law"); *Cira v. SEPTA*, 1989 U.S. Dist. LEXIS 2728, *12 (E.D.Pa. March 22, 1989) ("I conclude that there are no exceptional circumstances counseling *Colorado River* type abstention; that the avoidance of piecemeal litigation is not an important factor to be considered in Section 1983 cases, in which the federal courts enjoy a particular responsibility of protecting federal civil rights; and that the remedies available in this Section 1983 action might not be similar to those available in the state court action.").

[11] *Compare Maleski v. Conning & Co*., 1995 U.S. Dist. LEXIS 14064, *9 (E.D.Pa. Sept. 27, 1995) (noting that "abstention is appropriate in matters involving determinations by state courts of inherently local matters on complex state regulatory schemes.") (*citing Burford v. Sun Oil*, 319 U.S. at 332-34).

As in *Marks v Stinson*, Colorado does not apply because it is not a violation of a state body of law governing a uniquely state concern, but the Equal Protection, Due Process, and Electors Clause guaranteed by the Civil Rights Act in a presidential election.

### d.   Abstention under *Rooker-Feldman* Is Inappropriate Contrary To Arguments By Defendant Boockvar

The only mention of the *Rooker-Feldman* doctrine appears in Defendant Boockvar's MTD (ECF 143, n.1, at 15) and her Reply Brief (ECF 143, at 35).  For the *Rooker-Feldman* bar to apply, a case must be the functional equivalent of an appeal from a state court judgment, which it is deemed to be in two instances: (1) when the claim was actually litigated before the state court; or (2) when the claim is inextricably intertwined with the state adjudication.  *ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 210 (3d Cir. 2004).  It is well-established that "[u]nless the federal claims are identical to the state court claims, determining whether the claims have been actually litigated is more difficult than determining whether the claims are inextricably intertwined with the state judgment."  *Id*., at 211, n.8.  "*Rooker-Feldman* applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered, or must take action that would render the state judgment ineffectual."  P*arkview Assocs. Pshp. v. City of Leb*., 225 F.3d 321, 325 (3d Cir. 2000); *FOCUS*, 75 F.3d at 840. *Rooker-Feldman* is not implicated because a finding that Defendants violated

23

Plaintiffs' due process rights would not require a finding that the state court erred in its ruling. *Marran*, 376 F.3d at 154. *See also Ludwig v. Berks County*, 313 Fed.Appx. 479, 482 (3d Cir. 2008) ("[A] finding that [doctors] violated [plaintiff's] due process rights would not require a finding that the state court erred in relying on their reports. As in *Marran*, but *Rooker-Feldman* is not implicated.").

Here, *Rooker-Feldman* is not implicated because Plaintiffs do not seek to collaterally appeal any rulings by Pennsylvania courts; instead, they assert that their federal Constitutional rights have been violated, including under the Equal Protection Clause. *Marran*, 376 F.3d at 154.  Also, this case is not one where federal relief can only be predicated upon a conviction that the state court was wrong and thus Plaintiffs' claims are not "inextricably intertwined" with the state-court adjudication.  *ITT*, 366 F.3d at 210. *See also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (holding *Rooker-Feldman* only applies were "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review of that judgment.").

      **4.**    **Abstention Under *Burford* Is Inappropriate Contrary To Arguments By Defendant Boockvar**

The *Burford* abstention doctrine "stands for the proposition that where a state creates a complex regulatory scheme, supervised by the state court and central to state interests, abstention will be appropriate if federal jurisdiction deals primarily

with state law issues and will disrupt a state's efforts 'to establish a coherent policy with respect to a matter of substantial public concern.'" *Lac D'Amiante Du Quebec, Ltee v. Am. Home Assur. Co.*, 864 F.2d 1033, 1043 (3d Cir. 1988) (*quoting Colorado River*, 424 U.S. at 814) (*citing United Servs. Automobile Ass'n v. Muir*, 792 F.2d 356, 364 (3d Cir. 1986) ("Generally, *Burford* abstention is justified where a complex regulatory scheme is administered by a specialized state tribunal having exclusive jurisdiction."), *cert. denied*, 479 U.S. 1031 (1987)). In addition, "federal courts more readily abstain from a case that contains no issue of federal law." *Id.* at 1044 (*citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) ("The presence of federal-law issues must always be a major consideration weighing against surrender" of jurisdiction); *Izzo v. Borough of River Edge*, 843 F.2d 765, 768 (3d Cir. 1988) ("In the years since *Burford* the presence of a federal issue has become a significant element in deciding whether a court should abstain.").

The *Burford* abstention does not apply in this case.

**First**, this case does not involve "a complex state regulatory scheme … administered by a state tribunal with exclusive jurisdiction." *Lac D'Amiante,* 864 F.2d at 1043-44 (holding *Burford* applied to state insurance regulatory scheme); *Muir*, 792 F.2d at 364 (same). Plaintiffs instead claim that defendants violated their constitutional rights.

**Second**, the case involves questions of federal constitutional law, which

weighs heavily against abstaining based on *Burford*. *Moses*, 460 U.S. at 26; *Izzo*, 843 F.2d at 768.

      **5.**     **Plaintiffs' Claims Are Not Barred By Laches Contrary To Arguments By Defendants Boockvar and DNC**

          **a.**     **Dismissal Of Plaintiffs' Claims Based On Laches Is Not Appropriate At The Pleadings Stage**

The equitable doctrine of laches (like claim and issue preclusion) is an affirmative defense.  At the pleading stage, "plaintiffs must plead the elements of their claims" and "are not required to negate an affirmative defense in their complaint." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 607–08 (D.C. Cir 2013) (cleaned up); *see also Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014) ("'[C]omplaints need not … plead around defenses.'"); *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007) (same). Dismissal is appropriate only when the "applicability of the doctrine is apparent from the face of the Complaint." *Warner v. Sun Ship, LLC*, No. CIV.A. 11-7830, 2012 WL 1521866, at *2 (E.D. Pa. Apr. 30, 2012), *aff'd*, 507 F. App'x 107 (3d Cir. 2012).

Defendants cannot meet this standard because Plaintiffs did not "inexcusabl[y] delay" bringing their complaint – let alone allege such delay on the face of their complaint. *Id.* To the contrary, Plaintiffs filed this complaint less than a week after Election Day, when their injury actually occurred. Plaintiffs' equal protection injury did not arise until votes were unequally *counted*. Counties took

different positions on curing before election day, the Secretary did not instruct counties to allow curing until the night before election day, and counties only decided (in grossly unequal fashion) which votes to count and which to discard *after* election day. *Those decisions,* and only those, are what trigger the equal protection violations alleged here. Suppose two voters: (1) a vote-by-mail voter whose ballot is cancelled due to a defect who is not given any opportunity to cure; and (2) an identically situated voter whose mail-in ballot is cancelled, who is informed of this in advance by his county election board, and who casts a provisional ballot on election day. If the second voter's provisional ballot is *not* counted, there is no equal-protection violation. It is only the decision to cancel the first and count the second voters' ballots that violates the Constitution. Plaintiffs brought this suit immediately once the constitutional violations were ripe. Laches is thus not only a procedurally improper defense at this stage, but a legally meritless defense at any stage.[12]

### b.    Plaintiffs Brought Their Claims As Soon As Practicable

Plaintiffs did not know Defendants would violate the law until canvassing began and the watchers were illegally excluded and ballots illegally counted. Plaintiffs brought their claims as soon as it was practicable to do so.

### c.    Plaintiffs' Post-Election Filing Has Not Prejudiced

---

[12] The *Purcell* principle – applicable only before an election – has no bearing on post- election Equal Protection Clause claims, which are regularly litigated after the election. *See, e.g., League of Women Voters of Ohio*, 548 F.3d at 466.

27

**Defendants**

Assuming *arguendo* that Plaintiffs delayed by filing post-election, the delay has not prejudiced Defendants. *See, e.g., United States v. L.D.T. Corp.*, 302 F. Supp. 990, 991 (E.D. Pa. 1969) (rejecting laches defense to government's motion to strike defendant's jury demand where government waited five years to file its motion but defendant showed no resulting prejudice from the delay other than the "mere lapse of time").

### 6. Plaintiffs Have Not Waived Their Opportunity To Oppose Dismissal

Plaintiffs have not waived their opportunity to oppose dismissal of their equal protection and elections and electors clause claims. Defendants argue that Plaintiffs have yet to substantively oppose any of the arguments they have raised. Defendants' waiver argument fails because (1) Plaintiffs' Amended Complaint mooted Defendants' motions to dismiss as the Court ruled at oral argument on November 17, 2020; (2) the Court has permitted Plaintiffs to file an opposition brief to all defendants' motions to dismiss today; and (3) Plaintiffs substantively opposed Defendants' motion to dismiss at the hearing before the Court yesterday. *See also Ryder v. Bartholomew*, 2014 U.S. Dist. LEXIS 71839, *4 (M.D. Pa. May 27, 2014) (plaintiff's filing of third amended complaint mooted defendants' motion to dismiss). The cases cited by Defendants are therefore inapposite and their waiver argument fails.

28

**II.    PLAINTIFFS HAVE STATED AN EQUAL PROTECTION CLAIM CONTRARY TO ARGUMENTS BY DEFENDANTS BOOCKVAR, DNC AND NORTHAMPTON AND CENTRE COUNTIES ELECTION BOARDS**

**A.    Counties' Use Of Notice-And-Cure Procedures For Deficient Mail-In Ballots Violated Equal Protection**

Defendants excluded Republican/Trump observers from the canvass so that they would not observe election law violations.  The use of notice/cure procedures violated equal protection because it was deliberately done in counties where defendants knew that mail ballots would favor Biden/Democrats.   Republican controlled counties followed the law and did not allow a cure.  Of course, "without differential treatment of votes or voters, there isn't any equal-protection injury for the Court to balance."  *Donald J. Trump for President*, 2020 U.S. Dist. LEXIS 188390, at *147.  Conversely, unequal treatment equals violation of Equal Protection requiring Court intervention.

**B.    It is A Permissible Remedy For Equal Protection Violations To Discard Unlawfully Cast Votes**

*Marks v. Stinson* specifically allows excluding illegal votes. The district court in that case found "massive absentee voter fraud, deception, intimidation, harassment and forgery, and that may of the absentee votes were tainted…." *Marks v. Stinson*, 19 F.3d 873, 887 (3d Cir. 1994). The district court held that "[i]n light of the massive scheme of Candidate Stinson and the Stinson Campaign, and in light of the failure of the Board to fairly conduct its duties, it would be grossly inequitable

29

to allow Stinson to remain in office…." *Id.* at 878.

The Third Circuit Court affirmed the district court's de-certification of defendant Stinson as the winner of the state senate election, based on the exclusion of illegally cast ballots:

> The district court did conclude, with ample record support, that the wrongdoing [by the Stinson campaign] was substantial, that it could have affected the outcome of the election, and that it rendered the certified vote count an unreliable indicator of the will of the electorate. Having so concluded for the purposes of the preliminary injunction motion, we cannot say that the district court abused its discretion in restraining Stinson from exercising the powers of the office pendent lite.
>
> The integrity of the election process lies at the heart of any republic. The people, the ultimate source of governmental power, delegate to their elected representatives the authority to take measures which affect their welfare in a multitude of important ways. When a representative exercises that authority under circumstances where the electors have no assurance that he or she was the choice of the plurality of the electors, the legitimacy of the governmental actions taken is suspect. Accordingly, where there is substantial wrongdoing in an election, the effects of which are not capable of quantification but which render the apparent result an unreliable indicium of the will of the electorate, courts have frequently declined to allow the apparent winner to exercise the delegated power. *See, e.g., Bell v. Southwell*, 376 F.2d 659 (5th Cir. 1967). Having tentatively found the facts that it did, we cannot fault the district court for restraining Stinson from exercising the powers that are delegated to a senator by the people, even though the court was not able to find that he received less than a plurality of the legally cast votes.

*Id.* at 886-87. *See also Stein v. Cortes*, 223 F.Supp.3d 423, 438 (E.D.Pa. 2016) ("The (rare) decisions that sustain due process challenges to elections involve documented instances of improperly cast ballots, wholesale refusal to count properly cast ballots,

direct infringements of the right to cast ballots, or a total failure to conduct the election.") (*citing Marks*, 19 F.3df at 887) ("massive absentee ballot fraud, deception, intimidation, harassment and forgery"); *Griffin [v. Burns*, 570 F.2d 1065, 1074 (1ˢᵗ Cir. 1978)] (state refused to count "the absentee and shut-in ballots that state officials had offered to the voters); *Golden v. Gov't of the V.I.*, 2005 U.S. Dist. LEXIS 45967, *8-9 (D.V.I. March 1, 2005) ("If a candidate were to be sworn in as an elected representative who received fewer votes than another candidate, then each of the votes cast for the other candidate would be ignored," which "would violate the constitutionally protected right to vote of those voters who had voted for the candidate who received the most votes, but was not seated.") (*citing Marks*, 19 F.3d at 887).

## III.   DEFENDANTS DO NOT HAVE AN ELEVENTH AMENDMENT/SOVEREIGN IMMUNITY DEFENSE CONTRARY TO ARGUMENTS BY DEFENDANT DNC

DNC Defendants have asserted an Eleventh Amendment/sovereign immunity defense.

***First***, the Eleventh Amendment "does not apply to Plaintiffs' federal-constitutional claims [in this case] under the *Ex Parte Young* doctrine." *Donald J. Trump for President*, 2020 U.S. Dist. LEXIS 188390, at *225-26 (*quoting Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 627 (E.D. Pa. 2018) ("Here, the doctrine of *Ex parte Young* applies to Plaintiffs' constitutional claims for prospective

injunctive and declaratory relief, and therefore the First and Fourteenth Amendment claims are not barred by the Eleventh Amendment.…") (*citing Ex Parte Young*, 209 U.S. 123, 159-60 (1908)).  All of Plaintiffs' claims in this case are based on the federal Constitution; therefore, they are not barred by the Eleventh Amendment. *Id.*

*Second*, "an officer of the Pennsylvania Department of State … may be sued in his individual and official capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law," which claims are not barred by the Eleventh Amendment. *Donald J. Trump*, 2020 U.S. Dist. LEXIS 188390, at *225-26 (*quoting Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 627 (E.D. Pa. 2018) (internal quotation marks omitted). Plaintiffs' claims in this case seek prospective and injunctive relief; therefore, the Eleventh Amendment does not bar Plaintiffs' claims against defendant Boockvar.

*Third*, "Eleventh Amendment does not extend its immunity to units of local government," such as "cities and counties." *Bd. of Trustees v. Garrett*, 531 U.S. 356, 368-69 (2001) (citations omitted). The defendant county boards of elections in this case are local governmental units, which are not entitled to sovereign immunity under the Eleventh Amendment. *Id. See also PG Publ. Co. v. Aichele*, 902 F.Supp.2d 724, 746 (W.D.Pa. 2012) (holding Allegheny County was not entitled to Eleventh Amendment immunity) (*citing Garrett*, 531 U.S. at 369).

## IV.    ELECTION RULES CREATED BY THE GENERAL ASSEMBLY AND IMPLEMENTED BY THE COUNTIES SHOULD BE

**STRICTLY ADHERED TO**

As in *Bush v. Gore*, the people administering the elections should have followed the law. There should have been strict adherence with election rules created by the General Assembly and implemented by the counties and, unfortunately, this was not the case.  Plaintiffs are stating, very simply, that laws must be followed and uniform treatment meted out.  Defendants excluded Republican/Trump observers from the canvass so they could not observe election law violations; the use of notice/cure procedures violated equal protection because it was deliberately done in counties where Defendants knew mail ballots would favor Biden/Democrats. Republican controlled counties followed the law and did not allow cures; invalid ballots were not counted.  Democrats should have done the same.

## CONCLUSION

For the foregoing reasons, Defendants Motions to Dismiss the First Amended Complaint should be denied.

Respectfully submitted,

*/s/ Marc A. Scaringi*
Marc A. Scaringi
marc@scaringilaw.com
PA Supreme Court ID No. 88346

Brian C. Caffrey
brian@scaringilaw.com
PA Supreme Court ID No. 42667
Scaringi Law
2000 Linglestown Road, Suite 106
Harrisburg, PA 17110
717-657-7770 (o)
     717-657-77797 (f)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR | : | |
| PRESIDENT, INC., et al, | : | CIVIL ACTION |
| | : | |
| Plaintiffs | : | No. 4:20-cv-02078 |
| | : | |
| v. | : | Judge Brann |
| | : | |
| KATHY BOOCKVAR, et al, | : | |
| | : | |
| Defendants | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Deborah A. Black, Paralegal for Scaringi Law, do hereby certify that I
served a true and correct copy of ***Plaintiffs' Omnibus Opposition to Motions to
Dismiss The First Amended Complaint (ECF 125)*** in the above-captioned action,
upon all parties via CM/ECF.

Date:  November 18, 2020          /s/ *Deborah A. Black*_____
                                 Deborah A. Black, Paralegal
                                 For Marc A. Scaringi, Esquire and
                                 Brian C. Caffrey, Esquire