# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD J. TRUMP FOR
PRESIDENT, INC., *et al.*,

       Plaintiffs,

    v.

KATHY BOOCKVAR, *et al.*,

       Defendants,

NAACP-PENNSYLVANIA STATE
CONFERENCE, *et al.*,

       Intervenor-Defendants,

DNC SERVICES
CORPORATION/DEMOCRATIC
NATIONAL COMMITTEE,

       Intervenor-Defendant.

Civil Action
No. 4:20-cv-02078-MWB

Hon. Matthew W. Brann

## REPLY IN SUPPORT OF MOTION TO DISMISS BY INTERVENOR-DEFENDANTS NAACP-PENNSYLVANIA STATE CONFERENCE, BLACK POLITICAL EMPOWERMENT PROJECT, COMMON CAUSE PENNSYLVANIA, LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, JOSEPH AYENI, LUCIA GAJDA, STEPHANIE HIGGINS, MERIL LARA, RICARDO MORALES, NATALIE PRICE, <u>TIM STEVENS, AND TAYLOR STOVER</u>

# **TABLE OF CONTENTS**

Introduction ................................................................................................ 1

Argument .................................................................................................... 5

I.  Plaintiffs Could Have Brought Their Claims In October, And Are
    Barred From Advancing Them After The Election ...................................... 5

    A.  Dismissal Of Plaintiffs' Claims Based On Laches Is
        Appropriate At The Pleadings Stage ................................................... 5

    B.  Plaintiffs Could Have—and Should Have—Brought Their
        Claim Before The Votes Were Counted. .............................................. 9

    C.  Plaintiffs' Delay Has Prejudiced The Voter Intervenors. .................. 11

II. Discarding Lawfully Cast Votes Is Not A Permissible Remedy For
    Plaintiffs' Alleged Equal Protection Violation. ........................................ 13

Conclusion ................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Benak ex. rel. All. Premier Growth Fund v. All. Cap. Mgmt.*,
  435 F.3d 396 (3d Cir. 2006) ........................................................................6, 12

*Bowden v. DB Schenker*,
  No. 1:17-CV-01999, 2018 WL 1203362 (M.D. Pa. Mar. 8, 2018) .....................6

*In re Canvassing Observation Appeal of City of Philadelphia Bd. of
  Elections*, No. 30 EAP 2020, 2020 WL 6737895
  (Pa. Nov. 17, 2020) ....................................................................................3, 4, 17

*Coughlin v. Ryder*,
  260 F. Supp. 256 (E.D. Pa. 1966) ......................................................................5

*Donald J. Trump for President, Inc. v. Boockvar*,
  No. 2:20-cv-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ........................9

*Donald J. Trump for President, Inc. v. Montgomery Cnty. Bd. of
  Elections*, No. 2020-18680 (Pa. Ct. Com. Pl. Nov. 13, 2020)...........................15

*Golden v. Gov't of the Virgin Islands*,
  Nos. 1:05-CV-00005RLFGWC, CIV.2005/0005, 2005 WL
  6106401 (D.V.I. Mar. 1, 2005) ........................................................................18

*Gourgue v. United States*, No. 12CV–1490–LAB,
  2013 WL 1797099 (S.D. Cal. Apr. 29, 2013) ...................................................14

*Griffin v. Burns*,
  570 F.2d 1065 (1st Cir. 1978)............................................................................18

*Hendon v. N.C. State Bd. of Elections*,
  710 F.2d 177 (4th Cir. 1983). ..................................................................5, 8, 11

*League of Women Voters of Ohio v. Brunner*,
  548 F.3d 463 (6th Cir. 2008) ................................................................2, 11, 15

*Marks v. Stinson*,
  19 F.3d 873 (3d Cir. 1993) ................................................................................18

*Planned Parenthood of Cent. N.J. v. Farmer*,
  220 F.3d 127 (3d Cir. 2000) ..................................................................9

*Appeal of Simon*,
  46 A.2d 243 (Pa. 1946) ......................................................................15

*Sprague v. Casey*,
  550 A.2d 184 (Pa. 1988) ......................................................................6

*Staehr v. Hartford Fin. Servs. Grp.*,
  547 F.3d 406 (2d Cir. 2008) .................................................................6

*Stein v. Cortés*,
  223 F. Supp. 3d 423, 442 (E.D. Pa. 2016) ....................................12, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..............................................................................6

*White v. Alcon Film Fund, LLC*,
  No. 1:13-cv-1163, 2013 WL 12067479 (N.D. Ga. Aug. 13, 2013) ...................14

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ..............................................................14

## Statutes

25 P.S. § 3150.16(b)(2) .........................................................................16

## Other Authorities

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and
  Procedure § 1255 (3d ed. 2020 update) .............................................14

## INTRODUCTION

More than two weeks after Election Day, this case remains a lawsuit in search of a legal theory.  Plaintiffs' latest attempt presents a fantastical "scheme to favor Biden and other democrat [*sic*] candidates over Trump and Republican candidates." (Plaintiffs' Omnibus Opposition to Motions to Dismiss the First Amended Complaint ("Opp."), Dkt. 170 at 7.)  But the operative complaint before the Court does not allege, much less substantiate, anything remotely like that.  The First Amended Complaint presents a single, exceedingly narrow Equal Protection claim: counties adopted different approaches to notifying voters of problems with their mail-in ballots, which made it easier for voters in some counties to cure the problem and cast a valid ballot.[1]  (*See* Am. Compl. ¶¶ 150–160, Dkt. 125.)  On the basis of this quibble, which they could have challenged before the election but decided not to, Plaintiffs ask for an extraordinary act of judicial activism: to "set aside [millions of] votes and declare Trump the winner."  (Opp. 4.)

This profoundly dangerous request of the Judiciary should be rejected. Plaintiffs profess to believe that "[e]very legal . . . vote should be counted."  (Am. Compl. ¶ 1.)  But they ask for the opposite—an injunction against counting legal votes.  They still include the preposterous request for this Court to enjoin

---

[1] Plaintiffs also bring an Elections and Electors Clause claim based on that same alleged conduct, but they admit that under binding Third Circuit precedent they lack standing to bring that claim.  (Dkt. 124 at 1.)

certification of the 2020 General Election results in their entirety, nullifying *every* vote cast in Pennsylvania and leaving the Commonwealth without most of its elected officials.  Their fallback request for a "notice and cure" injunction is no less radical. Plaintiffs say that because some counties made it easier to cast a legal vote than others, the valid ballots of qualified voters in those counties should be discarded. There is, of course, nothing wrong with county-by-county variation in election administration, a well-established feature of U.S. and Pennsylvania elections.  But even if Plaintiffs were right that some *counties* did something wrong, it would not remotely follow that the Court should discard the ballots of *voters* who cured prior defects and cast perfectly valid, legal votes.  The requested relief's unavailability is enough to dismiss the First Amended Complaint in its entirety.

So is the fundamental untimeliness of Plaintiffs' claims.  Because Plaintiffs concede that they lack standing to bring an Elections and Electors Clause claim, they can no longer claim that the election was administered in violation of Pennsylvania law.  Plaintiffs' *only* remaining claim is that "voters in some counties have been and are being treated differently than voters in other counties" with respect to when and whether they were alerted to any defects in mail-in ballots.  (Am. Compl. ¶ 158.) Plaintiffs do not dispute that no later than mid-October, it was publicly known that counties were taking different approaches to providing notice of defective mail ballots, such that whether "you get a second chance if you made a mistake on a mail-

in ballot" could "depend on where you live."  (Dkt. 95-1, at 56, Ex. D.)  If Plaintiff Donald J. Trump for President, Inc. (the "Trump Campaign") was worried that these differing approaches would make it harder to vote in "Republican-heavy counties" (Am. Compl. ¶ 6), it could have done something about it well before Election Day. Plaintiffs could have sought a pre-election injunction requiring all counties to make similar efforts to help voters cast legal votes.  As a result, Plaintiff Roberts, who is now "very upset that [his] vote has not been counted" (Dkt. 89-2, at 202, Ex. 14), could have had an opportunity to cast a valid vote.  But Plaintiffs took no legal action before the election to compel "Republican-heavy counties" to make the same efforts as other counties.  Nor did they seek to enjoin the defendant counties from continuing their well-publicized efforts to help voters cast valid ballots.  Having made that choice before the election, Plaintiffs cannot try to disrupt the counting of legal votes afterward.

While this Court heard argument on Tuesday, the Supreme Court of Pennsylvania decisively rejected the Trump Campaign's claim that the Election Code required greater observer access during canvassing proceedings.  The Supreme Court held that the Election Code only requires that observers can be present in the room to "broadly observe the mechanics of the canvassing process," and that closer observation is not required because under the Election Code, audit-like challenges to ballots are not permissible.  *In re Canvassing Observation Appeal of City of*

3

*Philadelphia Bd. of Elections*, No. 30 EAP 2020, 2020 WL 6737895, at *8 (Pa. Nov. 17, 2020).  But perhaps more importantly, Chief Justice Saylor, who disagreed with the majority opinion about what access observers must be allowed, would have rejected the drastic and inappropriate remedy Plaintiffs seek: "[S]hort of demonstrated fraud, the notion that presumptively valid ballots cast by the Pennsylvania electorate would be disregarded based on isolated procedural irregularities that have been redressed—thus disenfranchising potentially thousands of voters—is misguided."  *Id*. at *9 (Saylor, C.J., dissenting).  Presented with overheated rhetoric similar to what is in Plaintiffs' current opposition brief, Chief Justice Saylor "fail[ed] to see that there is any real issue."  *Id*.

Exactly the same can be said of the First Amended Complaint's notice-and-cure claims.  After lying in wait while Pennsylvania's 67 counties did their best to administer an election in the midst of a global pandemic, and without alleging that a single ineligible voter voted, Plaintiffs now seek to disenfranchise qualified Pennsylvania voters who followed election officials' directions to cast legal votes.  Here too there is not any real issue.  Plaintiffs' effort to disenfranchise millions of Pennsylvanians must be summarily rejected.

# ARGUMENT

## I.   Plaintiffs Could Have Brought Their Claims In October, And Are Barred From Advancing Them After The Election.

### A.   Dismissal Of Plaintiffs' Claims Based On Laches Is Appropriate At The Pleadings Stage.

To protect election results from after-the-fact criticisms from losing candidates, it is well-settled that there is "a duty on parties having grievances based on election laws to bring their complaints forward for pre-election adjudication when possible." *Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983). (*See* Opening Br. 7–15.)[2]  Plaintiffs do not deny that this is the rule.  Nor do they dispute that the doctrine of laches bars untimely claims, or that it applies with particular rigor to election cases.

Plaintiffs instead ask the Court not to apply this rule at the pleadings stage, but, as Plaintiffs concede, a complaint may be dismissed on laches grounds when "applicability of the doctrine is apparent from the face of the Complaint."  (Opp. 26 (quoting *Warner v. Sun Ship, LLC*, No. 11-CV-7830, 2012 WL 1521866, at *2 (E.D. Pa. Apr. 30, 2012))); *see also, e.g.*, *Coughlin v. Ryder*, 260 F. Supp. 256, 260 (E.D. Pa. 1966) (dismissal under Rule 12 appropriate "where laches can be determined

---

[2] References to "Opening Br." are to Voter Intervenors' Memorandum in Support of Motion to Dismiss, Dkt. 95, which Voter Intervenors reprised in support of their Motion to Dismiss the Amended Complaint, Dkt. 161.

without the necessity for further factual inquiry"). None of the cases Plaintiffs cite is to the contrary.

Laches can thus be applied at the pleadings stage where, as here, the defense is based on "matters of which a court may take judicial notice," which are appropriately considered on a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Bowden v. DB Schenker*, No. 1:17-CV-1999, 2018 WL 1203362, at *2 (M.D. Pa. Mar. 8, 2018) (applying affirmative defense on Rule 12(b)(6) motion and taking judicial notice of facts relevant to the defense).[3]

Whether a plaintiff's claim is barred by laches because of insufficient diligence depends "not upon what the plaintiff knows, but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him." *Sprague v. Casey*, 550 A.2d 184, 188 (Pa. 1988) (quotation marks omitted). As the Third Circuit has held, when the question is whether a party should be charged with notice, press reports are judicially noticeable to "indicate what was in the public realm at the time." *Benak ex. rel. All. Premier Growth Fund v. All. Cap. Mgmt.*, 435 F.3d 396, 401 n.5 (3d Cir. 2006); *see also, e.g., Staehr v.*

---

[3] Plaintiffs ignore the Voter Intervenors' argument, in the alternative, that the Court could convert the present motion into a Motion for Summary Judgment. (Opening Br. 8 n.3.) That would certainly be appropriate in this fast-moving proceeding, where Plaintiffs have now had ample opportunity to dispute the fact that their claims were widely known pre-election, and have not done so.

*Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008) ("proper to take judicial notice of the *fact* that press coverage . . . contained certain information, without regard to the truth of their contents," for purposes of deciding whether party had "inquiry notice").

Plaintiffs do not dispute that the practices they challenge were well-known in October or that the alleged injury from those practices was imminent.  Nor could they.  Public reports show that the purported factual basis for the sole remaining claim in the First Amended Complaint—that voters in some counties received notice and an opportunity to cure, and voters in other counties did not—was widely known by mid-October.  On October 15, a Pennsylvania CBS affiliate broadcast a story about this very issue, and published an article with the *headline* "Some Pennsylvania counties offer second chances at mail-ballots, others do not."  (Dkt. 95-1, at 56, Ex. D.)  The report began: "Will you get a second chance if you made a mistake on a mail-in ballot?  Well, it may depend on where you live." (*Id.*)  In fact, the report stated that in Lancaster County, home to Plaintiff Henry (Am. Compl. ¶ 15), "a naked ballot is dead in the water and no one will be reaching out if you forget a signature." (Dkt. 95-1, at 56, Ex. D.)

Similarly, several days before the election, the *Philadelphia Inquirer* reported that "Pennsylvania struggles with how—or if—to help voters fix their mail ballots." (Dkt. 95-1, at 50, Ex. C.)  The report pointed to a "patchwork" of policies across the

State.  (*Id.*)  "Some counties are marking [defective] ballots as received" and thus "giv[ing] voters no indication there's a problem"; other counties "are marking them as canceled . . . which sends voters warning emails"; and "[s]till others try to reach voters directly."  (*Id.*)  As Plaintiffs acknowledge, Philadelphia County publicized that it was notifying voters whose ballots were rejected because those ballots were not enclosed in a secrecy envelope and signed declaration envelope, and Philadelphia officials disseminated that information well before Election Day.[4]  That the very "patchwork" of notice-and-cure policies that Plaintiffs allege was widely reported several weeks ago shows that Plaintiffs could have raised their claim long before Election Day.  Indeed, the Trump Campaign filed pre-election suits in several jurisdictions, including Pennsylvania, challenging various election procedures. Plaintiffs have not identified any reason why they decided to wait nearly a week *after* the election to file this action—and then nearly another week to amend it.  One might infer that it was a strategic decision to do exactly what is forbidden: "gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action."  *Hendon*, 710 F.2d at 182 (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)).

---

[4] *See* Am. Compl. ¶ 127 (citing Phila. City Comm'rs, *Cancelled Ballot Notification Information*, https://www.philadelphiavotes.com/en/home/item/1873-cancelled_ballot_notification_info); Al Schmidt, Twitter.com (Oct. 29, 2020), https://twitter.com/Commish_Schmidt/status/1321952555342172161 (Philadelphia City Commissioner linking to the Cancelled Ballot Notification Information).

**B.    Plaintiffs Could Have—and Should Have—Brought Their Claim Before The Votes Were Counted.**

As Voter Intervenors' Opening Brief explains (pp. 13–14), Plaintiffs failed to exercise diligence in raising their notice-and-cure claim.  Plaintiffs' only response to the merits of that argument is that their claims were not "ripe" until "votes were unequally counted" because that is "when their injury actually occurred."  (Opp. 26.) That is wrong as a matter of law.  A claim is ripe for adjudication as soon as there is "danger of imminent injury." *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 147 (3d Cir. 2000).  There was clearly an imminent risk of injury (as Plaintiffs define it) known before Election Day in this case.  By definition, if a county is providing voters with an opportunity to cure their mail-in ballots, the inexorable consequence is that the county will, in fact, count those cured ballots.

Moreover, Plaintiffs' argument is directly contradicted by the Trump Campaign's own pre-election litigation in this state.  Over a month ago, a federal court in the Western District of Pennsylvania ruled that the Trump Campaign's pre-election challenges to certain mail-in ballot procedures were ripe, noting that the alternative would be to force the campaign to litigate those challenges on the eve of, or after, the election. *See Donald J. Trump for President, Inc. v. Boockvar,* No. 2:20-cv-966, 2020 WL 5997680, at *28–29 (W.D. Pa. Oct. 10, 2020).  Having filed a separate action challenging mail-in balloting procedures months before the election, and obtained a ruling that this challenge was ripe, the Trump Campaign cannot turn

9

around and credibly argue that they were somehow foreclosed from challenging the notice-and-cure procedures at issue here until after the votes were counted.[5]

Plaintiffs' newly discovered position on the supposed infeasibility of pre-election challenges would turn election law on its head. By definition, challenges to the procedures by which elections are conducted (or votes counted or other candidates' qualifications determined) can almost always be described as causing "injuries" that do not actually "occur[]" until Election Day or thereafter. If that were enough to justify a plaintiff's lying in wait and suing after the election, laches would never apply, and pre-election challenges would never be required. That is not and cannot be the law.

Plaintiffs make the cursory assertion that their claims are not laches-barred because Plaintiffs "did not know Defendants would violate the law until canvassing began and the watchers were illegally excluded" and that they "brought their claims as soon as it was practicable to do so." (Opp. 27 (§ I.5.b).) To the extent Plaintiffs are trying to explain their delay in challenging notice-and-cure practices, this point about observers is a non sequitur. To the extent they try to excuse their delay in challenging observer access, those claims are not in the First Amended Complaint

---

[5] Voter Intervenors' reply in support of the original motion to dismiss incorrectly suggested that the action before Judge Ranjan was filed several weeks before the election. (Dkt. 142 at 12.) In fact (and even worse for the Trump Campaign), that action was filed more than four *months* before the election.

or before this Court, and are irrelevant.  In any event, Plaintiffs offer no substantive response to the Opening Brief, which explains in detail (pp. 10–12) why Plaintiffs knew or should have known about observer access restrictions well in advance of Election Day or at least very early on Election Day.  Indeed, Plaintiffs *did* challenge observer access rules in Delaware and Philadelphia Counties on Election Day. Regardless of whether those challenges were timely, the much more expansive claims they bring now—which Plaintiffs are seeking to reinsert into the case *more than two weeks* after Election Day—are plainly not.

Plaintiffs' citation (at p.27 n.12) to *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008), actually proves Voter Intervenors' point. Plaintiffs argue that "post-election Equal Protection Clause claims" are "regularly litigated after the election."  Although *League of Women Voters* involved "post-election . . . claims," the request there was for an injunction requiring the State to improve its voting system *before the next election*.  *Id*. at 466.  What courts do not allow are belated Equal Protection claims seeking to throw out the results of a *prior* election after votes are cast.  *See, e.g.*, *Hendon*, 710 F.2d at 182 (declining to grant relief for past election despite plaintiffs' meritorious equal-protection claim).

### C.    Plaintiffs' Delay Has Prejudiced The Voter Intervenors.

Plaintiffs' delay in raising these claims prejudices Voter Intervenors (and the public at large).  This prejudice is not the "mere lapse of time" (Opp. 28 (quoting

*United States v. L.D.T. Corp.*, 302 F. Supp. 990, 991 (E.D. Pa. 1969))), but the threat that millions of voters will be disenfranchised.

Had Plaintiffs brought this suit before the election, the Secretary could have issued even more guidance in order to ensure uniform approaches to defective ballots.  And rather than cherry-pick seven counties after the fact based on which candidate won the most votes there, a pre-election challenge could have joined *all* counties.  That way, if Plaintiffs could establish that a divergence in county practice violated the Equal Protection Clause, the Court could have had the option of ordering *all* counties to take steps to notify voters of ballot defects, without disenfranchising anyone.  Instead, by waiting until after the election was complete, Plaintiffs forced a situation where they can claim that mass disenfranchisement in selected counties, where Plaintiffs speculate "defendants knew that mail ballots would favor Biden/Democrats," is the only way to address the alleged variation among counties' notice-and-cure procedures.  (Opp. 29.)

Indeed, Plaintiffs' delay—compounded by the halting manner in which they have prosecuted this action and the extraordinary and necessarily time-consuming discovery they demand—has resulted in a situation in which Plaintiffs ask for their sweeping requests for relief to be adjudicated in expedited fashion on the eve of the Commonwealth's deadline to certify the election results.  Interference with that deadline, too, would effectively disenfranchise all Pennsylvanians.  *Cf. Stein v.*

*Cortés*, 223 F. Supp. 3d 423, 442 (E.D. Pa. 2016) (balance of equities weighed against ordering recount that would prevent timely certification of election results). Plaintiffs' gamesmanship is obviously prejudicial, and exactly what courts reject in election case after election case. (*See, e.g.*, Opening Br. 8–9.)

Voters are entitled to rely on the rules that are in place at the time they vote. Courts have consistently and vigorously applied the doctrine of laches to protect this vital interest. If Plaintiffs were truly concerned that some counties were making it easier to cure ballots than others, they could have easily sued long before the election. They may not belatedly complain about these practices and demand disenfranchisement as a remedy.

## II. Discarding Lawfully Cast Votes Is Not A Permissible Remedy For Plaintiffs' Alleged Equal Protection Violation.

Plaintiffs' Opposition confirms that their requested remedy is impermissible as a matter of law. Plaintiffs seek to prevent certification of the Commonwealth's election results, in their entirety or to the extent they include mail-in or absentee ballots where voters were provided with the opportunity to cure perceived defects in their ballots. (Am. Compl. ¶ 170.) The alleged errors in the way Pennsylvania counties administered the election simply cannot support an order not to count *valid* ballots cast by *qualified* Pennsylvania voters. Thus, even if Plaintiffs had stated a valid constitutional claim, the drastic relief they seek could not be granted, and thus their complaint must be dismissed. *See Gourgue v. United States*, No. 12CV–1490–

LAB, 2013 WL 1797099, at *3 (S.D. Cal. Apr. 29, 2013) (appropriate to "challenge remedies that are unavailable as a matter of law" through either a Rule 12(b)(6) motion to dismiss or a Rule 12(f) motion to strike). The "selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading *if* the statement of the claim indicates the pleader may be entitled to relief of some other type." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1255 (3d ed. 2020 update) (emphasis added). Here, Plaintiffs have neither identified nor suggested any other form of relief that would redress their claimed injuries, so this is a case where an improper request for relief is fatal and the entire case should be dismissed.[6]

*First*, as discussed in the Voter Intervenors' opening brief, disenfranchising voters is not the proper way to cure Plaintiffs' alleged constitutional violation. (Opening Br. 20-21.) The defendant counties gave voters an opportunity to cure perceived deficiencies in their ballots so those voters could exercise their fundamental right to vote. The voters who cured their ballots include those whose

---

[6] Voter Intervenors respectfully request that this Court dismiss Plaintiffs' prayer for relief under Rule 12(b)(6) on the grounds that the remedies Plaintiffs request are unavailable as a matter of law or, alternatively, strike the prayer for relief under Rule 12(f). *Compare, e.g.*, *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (motion to eliminate legally unavailable forms of relief from complaint properly brought under Rule 12(b)(6) or Rule 56, not Rule 12(f)), *with, e.g.*, *White v. Alcon Film Fund, LLC*, No. 1:13-cv-1163, 2013 WL 12067479, at *7 n.7 (N.D. Ga. Aug. 13, 2013) (noting that "[c]ourts are divided as to whether a motion to strike pursuant to Rule 12(f) is the appropriate method for challenging a prayer for relief").

ballots were initially rejected due to technical reasons, such as signing an Anglicized version of the voter's name in order to fit it into the "very small" signature space, omitting a secrecy envelope, or not writing an address in the voter declaration when that address was pre-printed elsewhere on the envelope. (*See* Dkt. 31-7, ¶ 7; 31-8, ¶ 11; 31-9, ¶ 7; 31-10, ¶ 7; 31-11, ¶ 7.) Some of these purported errors would provide no basis for a county elections office to reject a ballot in any event, as Pennsylvania courts have confirmed. *See* Order, *Donald J. Trump for President, Inc. v. Montgomery Cnty. Bd. of Elections*, No. 2020-18680 (Pa. Ct. Com. Pl. Nov. 13, 2020) (Ex. A) (holding that votes should be counted where voters did not write their addresses on ballot declarations).

Even assuming that these counties erred by notifying voters of potential errors in their ballots, the *voters* did nothing wrong by relying upon the notice and correcting their ballots. *See Appeal of Simon*, 46 A.2d 243, 246 (Pa. 1946) ("[T]he rights of voters are not to be prejudiced by [officials'] errors."). Plaintiffs make the remarkable assertion that this Court should "discard" votes, on the basis that some unspecified number of votes were "unlawfully cast." (Opp. 29.) And at argument, Plaintiffs' counsel repeatedly asserted that "curing" a ballot is illegal under Pennsylvania law, without citing any provision saying that. None of this is true—there is nothing in the Election Code that says "one strike and you're out." A ballot that is "cured" is by definition a valid ballot—any deficiency is fixed and every

requirement is met.   Far from adopting the draconian rule Plaintiffs' suggest, Pennsylvania law *permits* unsuccessful mail-in voters to cast a provisional ballot. *See* 25 P.S. § 3150.16(b)(2) ("An elector who requests a mail-in ballot and who is not shown on the district register *as having voted* may vote by provisional ballot." (emphasis added)).   Some voters made significant efforts to exercise that right and cast a single valid ballot.   (*See, e.g.*, Dkt. 31-8 ¶ 15 (voter drove to two locations in a different town, in the pouring rain, to correct ballot).)   Had no notice been given, these voters still would have had every right to fix their own mistakes and cast a valid provisional ballot.   The fact that some voters may have followed the guidance of county election officials, reasonably expecting that their efforts to fix any problems would ensure their votes were counted, cannot be grounds for "discarding" *valid* votes cast by *qualified* voters.

*Second*, the mass disenfranchisement sought by Plaintiffs would be even more extreme if some of the ballots they allege were improperly cured cannot be separated from other ballots that were not cured.   (*See* Dkt. 105 at 18, 42.)   That potential problem could have been avoided had Plaintiffs brought a pre-election challenge. *See supra* Section I.   But now, it would plainly be improper to remedy the problem of counties' permitting voters to fix their ballots by throwing out millions of votes that not even Plaintiffs contend were improperly cast.   (*See, e.g.*, Dkt. 31-5, ¶ 6 (voter in third trimester of high-risk pregnancy cast absentee ballot); Dkt. 31-6, ¶ 6 (voter

with autoimmune disorder who voted by absentee ballot to avoid COVID-19 exposure); Dkt. 31-2, ¶ 2 (mail voter who was concerned about contracting COVID-19 due to age and race).)

*Third*, for similar reasons, there is no support for Plaintiffs' suggestion that the Court could simply declare the loser of the election to be the winner based on some purported expert's guess as to how more than 1.5 million voters may have voted.  *See* Opp. 3-4 (suggesting that an expert could "extrapolate" the percentage of supposedly "illegally counted" ballots based on a review of a sample of ballots to all of the 1.5 million mail-in ballots and based on that percentage, "set aside these votes and declare Trump the winner").  Even assuming—contrary to Pennsylvania law—that any of these votes should not be counted, that would not permit a mass disenfranchisement of mail-in voters.  Indeed, "short of demonstrated fraud, the notion that presumptively valid ballots cast by the Pennsylvania electorate would be disregarded based on isolated procedural irregularities that have been redressed— thus disenfranchising potentially thousands of voters—is misguided."  *In Re Canvassing Observation Appeal of City of Philadelphia Bd. of Elections*, 2020 WL 6737895, at *9 (Saylor, C.J., dissenting).[7]

---

[7] Chief Justice Saylor dissented on the grounds that (1) the case was moot and (2) the Commonwealth Court reasonably directed election officials in Philadelphia to permit candidate representatives closer views of the ballots; he nonetheless opined that the relevant votes could not be disregarded.  Thus, even if the Plaintiffs' former

None of the cases Plaintiffs cite support their argument that throwing out votes, or having a statistical expert decide a presidential election rather than voters, are permissible remedies for Plaintiffs' equal protection claim. *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1993), involved specific factual findings of "massive absentee ballot fraud." *Id.* at 887. Here Plaintiffs have admitted that they allege no fraud, much less massive fraud. They do not allege any votes were cast by a non-eligible voter. Plaintiffs' objection to "curing" is focused on ballots that *by definition* meet all applicable requirements. Whatever remedy might be justified under the extreme facts of *Marks*, there is no allegation of anything remotely similar here. Plaintiffs' other citations (at p.31) provide no support for Plaintiffs' requested disenfranchisement remedy. *See Griffin v. Burns*, 570 F.2d 1065, 1074-76 (1st Cir. 1978) (state could not refuse to count retroactively void absentee ballots for voters who had been induced by state action to vote by absentee rather than in person); *Golden v. Gov't of the Virgin Islands*, Nos. 1:05-CV-00005RLFGWC, CIV.2005/0005, 2005 WL 6106401, at *7 (D.V.I. Mar. 1, 2005) (write-in candidate could not be seated pursuant to Virgin Islands statute requiring party-affiliated candidates to be elected in primary election).

---

claims regarding observation of canvassing were at issue (though they have been removed from the operative First Amended Complaint), voter disenfranchisement would not be a permissible remedy for those claims, even if they had any merit.

18

*Finally*, the remedy sought by Plaintiffs would create its own violations of the Equal Protection Clause that would dwarf the severity of any purported constitutional violations alleged by Plaintiffs. (Opening Br. 18.) Plaintiffs do not allege that the defendant counties were the *only* counties in Pennsylvania that provided voters with notice and permitted them to cure their ballots; indeed, they admit that the Secretary of the Commonwealth provided uniform guidance to all counties that they should do so. (Am. Compl. ¶ 129.) And it appears that other counties likely did engage in the notice-and-cure practice recommended by the Secretary. (Dkt. 95-1, at 52–53, Ex. C; *id.* at 56, Ex. D.) Yet Plaintiffs seek to throw out voters' ballots in only selected counties. This selective remedy might be advantageous to one campaign, but it would hardly remedy a complaint of differential treatment. If Plaintiffs had their way, they would fix a supposed Equal Protection Clause violation by creating a far larger one. *See Stein*, 223 F. Supp. 3d at 442 (losing candidate's proposed remedy "would abrogate the right of millions of Pennsylvanians to select their President and Vice President"). Because Plaintiffs cite no authority demonstrating that this is permitted under the law, the First Amended Complaint must be dismissed.

## CONCLUSION

The Court should dismiss the First Amended Complaint.

Dated:  November 19, 2020                    Respectfully submitted,

Mary M. McKenzie (PA No. 47434)**          */s/  Witold J. Walczak*
Benjamin D. Geffen (PA No. 310134)         Witold J. Walczak (PA No. 62976)
Claudia De Palma (PA No. 320136)           AMERICAN CIVIL LIBERTIES UNION OF
PUBLIC INTEREST LAW CENTER                 PENNSYLVANIA
1500 JFK Blvd., Suite 802                   P.O. Box 23058
Philadelphia, PA 19102                      Pittsburgh, PA 15222
Telephone: (215) 627-7100                   Telephone: (412) 681-7736
mmckenzie@pubintlaw.org                     vwalczak@aclupa.org
bgeffen@pubintlaw.org
cdepalma@pubintlaw.org                      Marian K. Schneider (PA No. 50337)*
                                            AMERICAN CIVIL LIBERTIES UNION OF
Shankar Duraiswamy*                         PENNSYLVANIA
David M. Zionts*                            P.O. Box 60173
COVINGTON & BURLING LLP                     Philadelphia, PA 19102
One City Center                             Telephone: (215) 592-1513
850 Tenth Street NW                         mschneider@aclupa.org
Washington, DC 20001
Telephone: (202) 662-6000
SDuraiswamy@cov.com                         Sophia Lin Lakin*
DZionts@cov.com                             Adriel I. Cepeda Derieux*
                                            Ihaab Syed*
Rani Gupta*                                 Dale Ho*
COVINGTON & BURLING LLP                     AMERICAN CIVIL LIBERTIES UNION
3000 El Camino Real                         FOUNDATION
5 Palo Alto Square                          125 Broad Street, 18th Floor
Palo Alto, CA 94306-2112                    New York, NY 10004
Telephone: (650) 632-4700                   Telephone: (212) 549-2500
RGupta@cov.com                              slakin@aclu.org
                                            acepedaderieux@aclu.org
Kristen Clarke**                            isyed@aclu.org
Jon Greenbaum*                              dho@aclu.org
Ezra Rosenberg*
LAWYERS COMMITTEE FOR CIVIL RIGHTS          Sarah Brannon*
UNDER LAW                                   AMERICAN CIVIL LIBERTIES UNION
1500 K Street NW, Suite 900                 FOUNDATION
Washington, DC 20005                        915 15th Street, NW
Telephone: (202) 662-8300                   Washington, DC 20005
                                            Telephone: (202) 210-7287
                                            sbrannon@aclu.org

20

kclarke@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org


\* Admitted *pro hac vice*
\*\* *Pro hac vice* application forthcoming

*Counsel for Intervenor-Defendants
NAACP-Pennsylvania State Conference,
Black Political Empowerment Project,
Common Cause Pennsylvania, League of
Women Voters of Pennsylvania, Joseph
Ayeni, Lucia Gajda, Stephanie Higgins,
Meril Lara, Ricardo Morales, Natalie
Price, Tim Stevens, and Taylor Stover*

## **CERTIFICATE OF WORD COUNT**

I hereby certify that the above memorandum contains fewer than 5,000 words (4,768).

Dated:  November 19, 2020

*/s/  Witold J. Walczak*
Witold J. Walczak

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing reply in support of the motion to dismiss was filed electronically and served on Plaintiffs' counsel of record via the ECF system of the U.S. District Court for the Middle District of Pennsylvania.

Dated:  November 19, 2020

*/s/  Witold J. Walczak*
Witold J. Walczak
