## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania, *et al.*, <br><br> Defendants. | Civil Action No. 4:20-cv-02078-MWB <br><br> Judge Matthew W. Brann |

### SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiffs' Amended Complaint must be dismissed under settled law as there is no justification on any level for the radical disenfranchisement they seek. There is no allegation in the Amended Complaint that any of the more than 6.8 million votes in this fair, free, and open election was cast by anyone other than a qualified Pennsylvania elector and Plaintiffs admitted at oral argument that they are *not* alleging any voter fraud.

Plaintiffs' Opposition confirms what a half day of oral argument already made clear: Plaintiffs' lone remaining federal Equal Protection claim cannot proceed. *First*, Plaintiffs lack standing to pursue their generalized grievance that certain

county boards of elections afforded greater opportunity for qualified electors to cast their votes on election day. And the harm alleged—failure to comply with the Election Code—is not a concrete injury cognizable under the Equal Protection Clause. *Second*, Plaintiffs fail to allege a viable Equal Protection claim. Pennsylvania's decentralized election system expressly authorizes county boards to make and issue rules for the guidance of electors and the notice procedures at issue do not in any way burden the right to vote (in fact, they enfranchise voting) and are rationally related to legitimate government interests. *Third*, the injunctive relief sought is unavailable. There is no authority for Plaintiffs' attempt to disenfranchise every Pennsylvania voter and invalidate the election results for every federal and statewide race in the Commonwealth. *Fourth*, the Trump campaign litigated and lost challenges to these same notice procedures in state court and are barred by the *Rooker-Feldman* doctrine from relitigating the challenges here. This Court should abstain in favor of these state court processes.

The law is clear and settled and Plaintiffs' answers to the Court's questions during oral argument revealed the incurable defects in the Amended Complaint. The Court should dismiss this action with prejudice.

## I.     Plaintiffs Lack Standing.

Controlling precedent dictates that Plaintiffs lack standing to pursue their Equal Protection claim. Plaintiffs' Opposition offers nothing to suggest otherwise.

With respect to the individual voter Plaintiffs, Plaintiffs argue that their home counties (Lancaster and Fayette, respectively) rejected their ballots and that this is personal disadvantage that confers standing. Pls.' Opp'n at 12-13. But this is not the basis for their equal protection claim. Rather than sue the counties that rejected their votes, Plaintiffs brought this action against *other* counties for allowing *other* voters in those counties to allegedly "cure" *their* ballots before the close of the polls. Their claim is that the defective ballots cast by Mr. Henry and Mr. Roberts were ***properly rejected***, not that they should have been counted. *See, e.g.*, Am. Compl. ¶ 158 (Mr. Henry's vote was "rejected as having been improperly cast and thus void"). They are not alleging vote *denial*—for which they would have had to sue the counties that actually denied their votes—but rather vote *dilution*—that their would-be votes were diluted by alleged invalid ballots cast in other counties in purported violation of state law, *see, e.g.*, Am. Compl. ¶ 102. *Bognet* makes perfectly clear that alleged violation of state law is not a concrete injury for purposes of the Equal Protection Clause and instead constitutes a generalized grievance common to all members of the public that does not confer Article III standing. *Bognet v. Secretary of the Commonwealth of Pennsylvania*, --- F.3d ---, 2020 WL 6686120, at *9-14 (3d Cir. Nov. 13, 2020); *see also Pa. Voters Alliance v. Centre Cty.*, --- F. Supp. 3d ----, 2020 WL 6158309, at *4-5 (M.D. Pa. Oct. 21, 2020) (allegation that plaintiffs' vote will be diluted is "precisely the kind of undifferentiated, generalized grievance about the

conduct of government that [the Supreme Court has] refused to countenance in the past") (citation omitted), *appeal docketed*, No. 20-3175 (3d Cir. 2020).

The Trump Campaign also lack standing. Notwithstanding the hyperbolic and fanciful numbers bandied about during oral argument, the Trump Campaign does not allege that the limited number of ballots that were "cured" and subsequently counted in the Defendant counties were "sufficient in number to change the outcome of the election" to President Trump's advantage. *Bognet*, 2020 WL 6686120, at *8. In fact, the Trump Campaign's allegations regarding the notice-and-cure practices in the Defendant counties are exceedingly bare—they allege that only one of the Defendant counties (Philadelphia) notified voters of such option and "allowed" voters to cure their ballots defects. And for the other six Defendant counties, the Trump Campaign makes no such allegations whatsoever, and certainly no allegations that would suggest "cured" votes were cast *and counted* in sufficient number to affect the outcome of the election. As a result, the Trump Campaign lacks standing. *See Bognet*, 2020 WL 6686120, at *8 ("[F]or [a candidate] to have standing to enjoin the counting of ballots [alleged to be invalid], such votes would have to be sufficient in number to change the outcome of the election . . . .").

The Trump Campaign is also wide of the mark in arguing so-called "competitive standing." Pls.' Opp'n at 11. As in *Bognet*, the Trump Campaign does not and cannot explain how counting *more* votes would lead to a *less* competitive

race. *Id.* Moreover, the cases Plaintiffs cite involve challenges to ballot access and ballot order, neither of which is an issue here. *See Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905 (8th Cir. 2020) (ballot order); *Green Party of Tennessee v. Hargett*, 767 F.3d 533 (6th Cir. 2014) (ballot access); *Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011) (eligibility to hold office); *Texas Democratic Party v. Benkiser*, 459 F.3d 583 (5th Cir. 2006) (eligibility to appear on ballot); *Schulz v. Williams*, 44 F.3d 48 (2d Cir. 1994) (placement on ballot); *Fulani v. Hogsett*, 917 F.2d 1028 (7th Cir. 1990) (challenge to candidate appearing on ballot); *Nelson v. Warner*, --- F. Supp. 3d ---, 2020 WL 4582414 (S.D. W.Va. Aug. 10, 2020) (ballot order), ), *appeal docketed*, No. 20-1860 (4th Cir. Aug. 11, 2020).[1]   Because the standing inquiry is particular to the claim alleged in the complaint, *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 245 (3d Cir. 2012), these cases are simply not relevant and do not support Plaintiffs' claim to standing on their entirely different vote dilution theory.

Nor does *Marks v. Stinson* establish standing.  That case involved an alleged conspiracy between election officials and a candidate to fraudulently obtain and fill out absentee ballots—a materially different set of allegations from those in the First

---

[1]  Plaintiffs also cite *Hotze v. Hollins*, No. 4:20-cv-03709, 2020 WL 6437668 (S.D. Tex. Nov. 2, 2020), *see* Pls.' Opp'n at 4, a case that supports the Secretary. *Hotze* holds that candidates lack standing to bring an equal protection claim premised on alleged violations of state election law.  2020 WL 6437668, at *2.

Amended Complaint. *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994).  The district court in *Marks* rejected a challenge to standing without an explanation or discussion, 1994 WL 47710, at *11 (E.D. Pa. Feb. 18, 1994) (ruling on motion for preliminary injunction); 1994 WL 37722 (E.D. Pa. Feb. 7, 1994) (ruling on motion to dismiss), and the Third Circuit never addressed standing.  The district court decisions have no persuasive value to the standing question given the lack of any analysis of the issue and the completely different set of allegations.  *Bognet*, not a dated district court decision, is controlling and requires the conclusion that Plaintiffs lack standing to bring their vote dilution claim.

Plaintiffs' gripe is that some counties informed voters of their right to cast provisional ballots (allegedly contrary to the Election Code)[2] and that this had the effect of diluting votes in counties that did not inform voters of such an opportunity. As Judge Ranjan reasoned in rejecting the Trump Campaign's similar challenge to county procedures on use of drop boxes, the flaw in this theory is that any resulting vote dilution is *"distributed equally across the electorate as a whole* . . . [T]his is not an equal protection issue." *Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d ---, 2020 WL 5997680, at *43 (W.D. Pa. Oct. 10, 2020) (emphasis in

---

[2]   Contrary to Plaintiffs' argument, the Election Code *specifically authorizes* mail-in voters to vote by provisional ballot if their mail-in ballots are rejected.  25 P.S. § 3150.16(b)(2).  The Trump Campaign's election-day challenges to the notice and provisional ballot procedure have all been rejected.  Plaintiffs have no claim.

original).   Similarly, in *Bognet*, the Third Circuit rejected an equal protection challenge to the judicial extension of the ballot receipt deadline on the grounds that any alleged vote dilution resulting from the extension "is suffered equally by all voters." 2020 WL 6686120, at *12. *Bognet* sounds the death knell for Plaintiffs' equal protection claim from both a standing perspective and a substantive perspective.

## II.   Plaintiffs Fail To State an Equal Protection Claim.

Plaintiffs devote just a single paragraph in their Opposition to the viability of their equal protection claim, suggesting that any alleged unequal treatment must necessarily mean a violation of equal protection. Pls.' Opp'n at 29.  That is simply not the law.  Beyond ignoring the basic elements of an equal protection claim, Plaintiffs ignore the substantial authority cited by the Secretary holding that an expansion of voting opportunities does not burden the right to vote, *see* Secretary Boockvar's Supp. Br. at 24-26, and that local variations in election procedures are permissible and rational, *id.*, at 26-29.  Plaintiffs' Opposition confirms what oral argument made clear:  Plaintiffs fail to state an Equal Protection claim.

At most, Plaintiffs are attempting to challenge "[t]he use of notice/cure *procedures*" that varied across counties. Pls.' Opp'n at 29 (emphasis added).  As a matter of federal constitutional law, it is settled that such variation in election "procedures" across counties in a state, having nothing to do with the actual counting

of votes, does not run afoul of the Equal Protection Clause. *See Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d ---, 2020 WL 5997680, at *44 (W.D. Pa. Oct. 10, 2020) ("[C]ounties may, consistent with equal protection, employ entirely different election procedures and voting systems within a single state. . . .").[3]

Plaintiffs also wholly ignore the applicable standard of review. As set forth in the Secretary's opening memorandum, because Plaintiffs do not—and cannot—demonstrate any burden on the votes of citizens in those counties that opted not to notify their voters of mail-in ballot defects by *other* counties exercising such franchise-enhancing procedures, such procedures are subject to rational basis review, not strict scrutiny—which Plaintiffs never contest. *See* ECF No. 143 at 23-25 (citing *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012)); *see also Biener v. Calio*, 361 F.3d 206, 214 (3d Cir. 2004) (applying rational basis where there was no showing of an "infringement on the fundamental right to vote.");

---

[3] *See also, e.g.*, *Wexler v. Anderson*, 452 F.3d 1226, 1231-33 (11th Cir. 2006) ("[L]ocal variety in voting systems can be justified by concerns about cost, the potential value of innovation, and so on."); *Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018) ("Nothing in the Constitution, the Supreme Court's controlling precedent, or our case law suggests that we can micromanage a state's election process to this degree."); *Ron Barber for Cong. v. Bennett*, No. 14-2489, 2014 WL 6694451, at *5 (D. Ariz. Nov. 27, 2014) ("[T]he [*Bush v. Gore*] Court did not invalidate different county systems regarding implementation of election procedures."); *Tex. Democratic Party v. Williams*, No. 07-115, 2007 WL 9710211, at n.4 (W.D. Tex. Aug. 16, 2007) ("In *Bush v. Gore*, the Supreme Court specifically noted: 'The question before the Court is not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections.'").

*Boockvar*, 2020 WL 5997680, at *66 (finding "a deferential standard of review should apply" where challenged practice "does not . . . burden any of Plaintiffs' fundamental constitutional rights."). As the Secretary previously briefed—and which, again, Plaintiffs never contest—there are numerous valid reasons a county may adopt such procedures, not the least of which is to ensure that their citizens' participation in an election is not cancelled. Sec'y Boockvar's Supp. Br. at 25. Because local variations in notification procedures are perfectly permissible and rational, they cannot constitute an Equal Protection violation.

Fundamentally, Plaintiffs fail to explain how one county's notification to voters in alleged violation of *state* law can morph to a *federal* constitutional violation. For instance, the Election Code, as interpreted by the Pennsylvania Supreme Court, requires that voters return their ballots in a "secrecy" envelope. If a county counted ballots returned without such an envelope (in violation of the Pennsylvania Supreme Court's decision and the Secretary's clear guidance[4]

---

[4]   Plaintiffs accuse Secretary Boockvar of "advocating state officials should count more mail ballots than the law allows to favor Democrats." Pls.' Opp'n at 5. Plaintiffs' irresponsible effort to inject discrimination into this action by way of an offhand comment in a brief is improper. The word discrimination does not appear in the Amended Complaint and Plaintiffs cannot supplement their pleading through unsupported and unsupportable assertions in a brief. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Plaintiffs' attack on Secretary Boockvar is baseless and unhinged. Contrary to Plaintiffs' assertion, the September 28, 2020 guidance did not recommend "that mail-in and absentee ballots returned without inner secrecy envelopes should be counted." Pls.' Opp'n Br. at 5.

following that decision), Plaintiffs' remedy is to sue that county to prohibit such practice, *not* to run to federal court to manufacture a non-existent federal claim. Such a situation is readily distinguishable from the "standardless" process found in *Bush v. Gore*, cited by Plaintiffs. Pls.' Opp'n Br. at 13. Such deviations from the Code (to the extent they occurred) are not Equal Protection violations.

Plaintiffs take great liberties in their brief and at oral argument in their mischaracterizations of *Bush v. Gore*. That case is expressly "limited to [its] present circumstances," 531 U.S. at 109, and those circumstances are in no way analogous to the circumstances here. Unlike in *Bush v. Gore* where the Florida Supreme Court ordered a "standardless manual recount[]" of votes in certain counties without a uniform standard resulting in some votes being weighed differently than others, 531 U.S. at 103, the Plaintiffs in this case are alleging that the county election boards in the defendant counties implemented certain notice procedures that they claim failed to conform to the Election Code. *Bush v. Gore* does not address this situation. To the contrary, the Supreme Court made clear that its decision was based on differences in the treatment of votes between counties, not on differences in county

---

The guidance says exactly the opposite. It directs: "The Pennsylvania Supreme Court held on September 17, 2020, that any ballot that is not returned in the official ballot envelope (secrecy envelope) must be set aside and declared void. . . . In accordance with that ruling, all ballots that are not returned within the inner envelope ***must be set aside and may not be counted. . . .***" *See* Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures, September 28, 2020 at 5 (emphasis added).

election procedures.  In fact, the Supreme Court took pains to clarify that it was **not** addressing "whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. at 109. *Bush v. Gore* is not a magical "get out of defeat free card" that justifies disenfranchising millions of Pennsylvania voters.

### III.   Plaintiffs Do Not Plead a Plausible Entitlement to Injunctive Relief.

Plaintiffs make no effort to address the substantial authority cited by Secretary Boockvar which establishes that the injunctive relief they seek—disenfranchisement of every single Pennsylvania voter—is simply not available to them as a matter of law.  Secretary Boockvar's Supp. Br. at 31-34.  Instead, they offer a misreading of *Marks*, suggesting that unlawfully cast ballots may be "discard[ed]."  Pls.' Opp'n Br. at 29.  This is not even what *Marks* says.  The Third Circuit was clear that not even massive ballot fraud, deception and forgery—none of which are alleged or can be alleged here—can justify a federal court order disenfranchising all voters or compelling certification of the losing candidate.   *Marks*, 19 F.3d at 887-88. Plaintiffs cite no authority for the drastic relief they seek and there is no such authority.  As Chief Justice Saylor aptly recognized in his dissenting opinion in the poll observer case, "short of demonstrated fraud, the notion that presumptively valid ballots cast by the Pennsylvania electorate would be disregarded based on isolated procedural irregularities that have been redressed—thus disenfranchising potentially

thousands of voters—is misguided." *In re Canvassing Observation Appeal*, --- A.3d --- , 2020 WL 6737460 (Pa. Nov. 13, 2020) (Saylor, C.J., dissenting).   Plaintiffs plainly fail to allege a plausible claim for injunctive relief.[5]

**IV.   Plaintiffs' Claim Is Barred by the Rooker-Feldman Doctrine and Dismissal Is Warranted Under Abstention Doctrines.**

The Trump campaign does not deny that it actually litigated the propriety of the procedures at issue here—identifying voters whose ballots were rejected and offering them an opportunity to cast a provisional ballot on election day—and lost those challenges in state court.  Instead, they contend that *Rooker-Feldman* does not apply because they are not seeking to collaterally appeal the adverse state rulings. Pls.' Opp'n at 24.  But this is exactly what they're doing.  Plaintiffs' Equal Protection claim is based on their view that the Election Code does not allow for the notice provided by Defendant counties.  Am. Compl. ¶¶ 126-31.  Because success on their constitutional claim would require this Court to find that the Election Code does not allow notice to voters or an opportunity to cast a provisional ballot, Plaintiffs are

---

[5]   While nominally seeking to restrain conduct, the ultimate thrust of the relief requested in the First Amended Complaint is to mandate a different election outcome by invaliding ballots. *See* Am. Compl. ¶ 11 & p. 62.   Contrary to Plaintiffs' argument, Pls.' Opp'n at 31-32, sovereign immunity bars such claims seeking mandatory injunctions to compel affirmative action by Commonwealth officials. *See, e.g., Youst v. Pa. Dept. of Transp.*, 739 A.2d 625, 627 (Pa. Cmwlth. 1999) (sovereign immunity bars "claims seeking affirmative action by way of injunctive relief") (citation omitted); *see also* 1 Pa. C.S. § 2310.

asking this Court to review and reject the adverse state court determinations. Under the reasoning in the *Ludwig* decision they cite, Plaintiffs' equal protection claim falls squarely within the bounds of *Rooker-Feldman. See Ludwig v. Berks County, Pa.*, 313 F. App'x 479, 481 (3d Cir. 2008) ("Because a ruling that [plaintiff's] due process rights were violated . . . would have required the District Court to find that the state court judgement was erroneous, the Rooker-Feldman doctrine bars [plaintiff's] claims . . . ."); *see also ITT Corp. v. Intelnet Int'l*, 366 F.3d 205, 210 (3d Cir. 2004) *Stein v. Cortes*, 223 F. Supp. 3d 423, 435 (E.D. Pa. 2016) (dismissing constitutional claims challenging election results which amounted to request to overrule state court decision denying recount). The Court should dismiss this action on this basis alone.

Multiple abstention doctrines also require this Court to defer to state court adjudications and statutory election challenge procedures. Abstention would allow this Court to refrain from "deciding a federal constitutional question when the case may be disposed on questions of state law," avoid "needless conflict with the administration by a state of its own affairs," and minimize "duplicative litigation." *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 103 (3d Cir. 1999) (citations omitted). Plaintiffs try to resist application of the *Pullman, Burford,* and *Colorado River* abstention doctrines by arguing, in conclusory fashion, that their assertion of federal constitutional claims is somehow solely dispositive. Pls.' Opp'n at 20, 23, and 25. But Plaintiffs ignore the state court proceedings already initiated on this exact issue,

and for purposes of *Colorado River* and *Burford* abstention, the statutory scheme established by the Election Code for challenging provisional ballots cast by voters who sought to cure their mail-in ballots, 25 P.S. § 3050(a.4)(4), and the election contest procedure which may be invoked "wherein it is claimed that the . . . election is illegal. . . ." 25 P.S. § 3456. The availability of these procedures favors abstention.

## V.   Plaintiffs' Opposition Raises a Host of Irrelevant Issues.

In a last gasp effort to avoid dismissal of the Amended Complaint, Plaintiffs' Opposition introduces or seeks to introduce a host of claims, allegations and arguments not in the Amended Complaint.[6] For example:

- Plaintiffs argue that Defendants engaged in an illegal scheme favoring President-Elect Biden over Donald Trump. No such allegations are in the Amended Complaint or are possible.
- Plaintiffs argue due process violations based on observer access, *see* Pls.' Opp'n Br. at 9-10, even though they withdrew these claims.[7]

---

[6] Plaintiffs complaint has been a moving target. On November 13, they told the Court and the Defendants that the "core allegations in this case" are the allegations in the Amended Complaint, *i.e.* "that Pennsylvania election officials mis-administered Pennsylvania's 2020 general election by (1) counting unlawful ballots and (2) counting ballots using processes that differed substantially across counties." (Response to Notice of Supp. Authority) (ECF No. 124). Yesterday, they stated that "they intend to stand on the proposed Second Amended Complaint, not the Amended Complaint currently at issue." Pls.' Opp'n Br. at 3. The First Amended Complaint is operative and cannot be "amended" through an opposition brief that alternately and unfairly cites to both the original complaint and amended complaint.

[7] Any effort to re-introduce those withdrawn allegations would be futile. There is no fundamental right to poll watch or watch ballot canvassing. *See Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 385 (Pa. 2020) (right to serve as a poll watcher "is conferred by statute"); *Boockvar*, 2020 WL 5554644, at *30. Rather, poll- or canvass-watching rights are created and governed by state law. And the Pennsylvania Supreme Court made clear in its opinion earlier this week that state

- Plaintiffs argue that Defendants engaged in a scheme designed to exclude Republican/Trump observers. Pls.' Opp'n at 9, 29.  In fact, all political parties had equal access and the Pennsylvania Supreme Court made clear this week that the level of access that the Trump Campaign challenged comported with state law.
- Plaintiffs argue that "government officials discriminat[ed] against Republican voters." Pls.' Opp'n at 10.  No such allegation appears in the Amended Complaint and no such allegations are possible.  In fact, the Republican candidates won the Auditor General and State Treasurer races.

Plaintiffs' most recent filings make their intent plain: recognizing they are unlikely to win Pennsylvania's presidential electors by popular vote, Plaintiffs ask this Court to simply "declare Trump the winner." Pls.' Opp'n at 4.  In doing so, they attempt to fabricate a criminal conspiracy between the Secretary and certain Pennsylvania counties to steal the election—an outrageous charge that has no basis in fact. Enough is enough.  The Court should not countenance this bald-faced attempt to overturn the will of the Pennsylvania electorate.

---

law does not guarantee a particular degree of access to canvass observers. *In re Canvassing Observation Appeal of: City of Philadelphia Bd. of Elections*, 2020 WL 6737895, at *9.  Accordingly, any effort to re-introduce such allegations would be futile and should not be allowed. *See Conde-Shenery v. Snow*, No. 19-929, 2019 WL 2399720, at *1 (M.D. Pa. 2019) ("An amendment is futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.").

Dated:  November 19, 2020

Respectfully submitted,

MYERS BRIER & KELLY LLP

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL

By:     *Daniel T. Brier*
       Daniel T. Brier
       Donna A. Walsh
       John B. Dempsey
       425 Spruce Street, Suite 200
       Scranton, PA 18503
       (570) 342-6100 (telephone)
       (570) 342-6147 (facsimile)
       dbrier@mbklaw.com
       dwalsh@mbklaw.com
       jdempsey@mbklaw.com

By:     */s/ Keli M. Neary*
       Keli M. Neary
       Karen M. Romano
       15th Floor, Strawberry Square
       Harrisburg, PA 17120
       (717) 787-2717 (telephone)
       (717) 772-4526 (facsimile)
       kromano@attorneygeneral.gov
       kneary@attorneygeneral.gov

*Counsel for Kathy Boockvar*
*Secretary of the Commonwealth of Pennsylvania*

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Daniel T. Brier