## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD J. TRUMP FOR
PRESIDENT, INC., *et al.*,

                Plaintiffs,

      v.

KATHY BOOCKVAR, in her capacity
as Secretary of the Commonwealth of
Pennsylvania, *et al.*,

                Defendants.

NO. 20-CV-02078-MWB

## REPLY BRIEF IN SUPPORT OF
## MOTION OF ALLEGHENY COUNTY BOARD OF ELECTIONS, CHESTER COUNTY BOARD OF ELECTIONS, MONTGOMERY COUNTY BOARD OF ELECTIONS, AND PHILADELPHIA COUNTY BOARD OF ELECTIONS TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO DISMISS PENDING STATE-COURT RESOLUTION OF STATE-LAW QUESTIONS

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................. 1

ARGUMENT.................................................................................... 2

I.      Plaintiffs Lack Standing............................................................. 2

     A.      The Trump Campaign Lacks Standing ............................... 2

     B.      The Individual Voters Do Not Have Standing................... 7

II.     The Few Remaining Claims in Plaintiffs' Amended Complaint Fail as a Matter of Law ........................................................................ 9

     A.      The Equal Protection Claim Fails as a Matter of Law ...................... 10

     B.      Plaintiffs Concede Their Elections and Elector Clause Claims Fail...14

     C.      Plaintiffs Struck Their Due Process Claim, Which Is Meritless in Any Event ............................................................................15

III.    In the Alternative, This Court Should Abstain from Deciding the Trump Campaign's Claims and Allow the Pennsylvania Courts to Resolve Them .16

IV.     The Trump Campaign Does Not Address or Acknowledge that the "Remedies" It Seeks Amount to an Unconstitutional Attempt to Disenfranchise Millions of Pennsylvania Voters by Altering the Rules of the Election After the Fact .................................................................19

CONCLUSION ...............................................................................21

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Berg v. Obama*,
  586 F.3d 234 (3d Cir. 2009) ............................................................8

*Bognet v. Boockvar*,
  No. 20-215, 2020 WL 6323121 (W.D. Pa. Oct. 28, 2020) ........................*passim*

*Burdick v. Takushi*,
  504 U.S. 428 (1992) ............................................................11, 12

*Burson v. Freeman*,
  504 U.S. 191 (1992) ............................................................19

*Bush v. Gore*,
  531 U.S. 98 (2000) ............................................................11

*In re Canvassing Observation Appeal of City of Phila. Bd. of Elections*,
  No. 30 EAP 2020, 2020 WL 6737895 (Pa. Nov. 17, 2020) ........................5, 13

*Chez Sez III Corp. v. Twp. of Union*,
  945 F.2d 628 (3d Cir. 1991) ............................................................16

*D.C. Ct. of Appeals v. Feldman*,
  460 U.S. 462 (1983) ............................................................9

*De la Fuente v. Cortes*,
  207 F. Supp. 3d 441 (M.D. Pa. 2016) ............................................................18

*Donald J. Trump for President, Inc. v. Boockvar*,
  No. 20-CV-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) .................*passim*

*Donald J. Trump for President, Inc. v. Boockvar*,
  No. 20-CV-966, 2020 WL 4920952 (W.D. Pa. Aug. 23, 2020) ............ 16, 17, 18

*Donald J. Trump for President, Inc. v. Cegavske*,
  No. 20-cv-1445, 2020 WL 5626974 (D. Nev. 2020) ........................................3

*Drake v. Obama*,
  664 F.3d 774 (9th Cir. 2011) ............................................................4

ii

*Evans v. Cornman*,
  398 U.S. 419 (1970).....................................................................................19

*Florida v. Powell*,
  559 U.S. 50 (2010).......................................................................................13

*Gamza v. Aguirre*,
  619 F.2d 449 (5th Cir. 1980)........................................................................14

*In re General Election-1985*,
  531 A.2d 836 (Pa. Commw. Ct. 1985) ...........................................................4

*Hamm v. Boockvar*,
  No. 600 MD 2020 (Pa. Commw. Ct. 2020).....................................................18

*Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*,
  426 U.S. 482 (1976).....................................................................................13

*Lance v. Coffman*,
  549 U.S. 437 (2007)........................................................................................4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)....................................................................................4, 6

*Marks v. Stinson*,
  19 F.3d 873 (3d Cir. 1994)...........................................................................15

*Marran v. Marran*,
  376 F.3d 143 (3d Cir. 2004)............................................................................9

*Mi Familia Vota v. Abbott*,
  977 F.3d 461 (5th Cir. 2020)........................................................................20

*NAACP Phila. Branch v. Ridge*,
  No. 00-CV-2855, 2000 WL 1146619 (E.D. Pa. Aug. 14, 2000) ......................16

*Orloski v. Davis*,
  564 F. Supp. 526 (M.D. Pa. 1983) ..................................................................3

*Pa. Voters Alliance v. Centre Cnty.*,
  No. 20-cv-1761, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020)..........................7

*Pavek v. Donald J. Trump for President, Inc.*,
   967 F.3d 905, 907 (8th Cir. 2020) ....................................................................4

*Planned Parenthood of Cent. N.J. v. Farmer*,
   220 F.3d 127 (3d Cir. 2000) ...........................................................................18

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) ...........................................................................................20

*R.R. Comm. of Tex. v. Pullman Co.*,
   312 U.S. 496 (1941) ..................................................................................16, 17

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
   140 S. Ct. 1205 (2020) ...................................................................................20

*Ron Barber for Cong. v. Bennett*,
   No. 14-2489, 2014 WL 6694451 (D. Ariz. Nov. 27, 2014) .............................11

*Rooker v. Fidelity Trust Co.*,
   263 U.S. 413 (1923) ..........................................................................................9

*Short v. Brown*,
   893 F.3d 671 (9th Cir. 2018) ..........................................................................14

*Stein v. Cortes*,
   223 F. Supp. 3d 423 (E.D. Pa. 2016) ............................................................5, 9

*Texas Democratic Party v. Benkiser*,
   459 F.3d 582 (5th Cir. 2006) ............................................................................3

*Wardius v. Oregon*,
   412 U.S. 470 (1973) ........................................................................................13

**Other Authorities**

Pennsylvania Department of State, 2020 Presidential Election,
   *available at* https://www.electionreturns.pa.gov/ ...............................................5

**INTRODUCTION**

The Trump Campaign's Opposition Brief is a futile attempt to stop the certification of Pennsylvania's presidential election by reverting back to baseless fraud and now-rejected state-law ballot observation claims that it excised from the operative Amended Complaint. Undeterred by the Pennsylvania Supreme Court's denial of its ballot observation claims, the Trump Campaign's Opposition Brief continues in its effort to cast doubt on the mail-in ballot counting process because partisan observers were not able to independently verify the technical compliance of each declaration—something the Pennsylvania Supreme Court made clear that no campaign has the right or ability to do under state law. The Third Circuit in *Bognet* systematically rejected the various constitutional theories thrown into the Opposition and the Amended Complaint, which are far afield from any cognizable constitutional claim.

Of course, all of this will get the Trump Campaign nowhere because it fails to put enough ballots at issue to change the outcome of the election and, as a mere funding entity, the Trump Campaign lacks standing to represent the interests of Pennsylvania voters or even the candidate himself. The two individual voters likewise assert no Article III standing and no constitutional injury.

Since the filing of the Counties' Motion to Dismiss, the Court has heard oral argument, and Plaintiffs have filed an Opposition. But nothing has changed.

Plaintiffs' reliance on conspiracy theory and innuendo—even when echoed in a federal courtroom—cannot salvage their frivolous federal claims. The Trump Campaign's vacillating and improper effort to derail the certification of the Pennsylvania vote should be brought to an end. The Amended Complaint should be dismissed with prejudice, and no further amendment should be permitted.

## ARGUMENT

### I. Plaintiffs Lack Standing

Plaintiffs have admitted that, "after the Third Circuit's recent ruling" in *Bognet*, "this Court *cannot* find that [Plaintiffs] have standing to raise their Electors Clause claim." Pls.' Opp. Br. at 2 n.1, ECF No. 126 (emphasis added); *see Bognet v. Sec'y Commonwealth of Pa.*, No. 20-3214, — F.3d —, 2020 WL 6686120, at *7 (3d Cir. Nov. 13, 2020) ("Because Plaintiffs are not the General Assembly, nor do they bear any conceivable relationship to state lawmaking processes, they lack standing to sue over the alleged usurpation of the General Assembly's rights under the Elections and Electors Clauses."). But *Bognet* also demonstrates Plaintiffs' lack of standing to assert their remaining claim for equal protection violations. 2020 WL 6686120, at *9-17.

#### A. The Trump Campaign Lacks Standing

The Trump Campaign—an entity that did not, cannot, and will never vote—asserts that it has standing on two grounds: (1) for the entity itself; and (2) for the candidate, Donald J. Trump. It is wrong.

First, the Trump Campaign, as an entity, does not have standing. This is because it "represents only Donald J. Trump and his electoral and political goals"—not the interests of voters. *Donald J. Trump for President, Inc. v. Cegavske*, — F. Supp. 3d —, No. 20-cv-1445, 2020 WL 5626974, at \*4 (D. Nev. Sept. 18, 2020). "By statutory definition, a federal election candidate's 'principal campaign committee' is simply a reserve of funds set aside for that campaign." *Id.* (citing 52 U.S.C. § 30102). The Trump Campaign cannot assert the rights of Pennsylvania voters.

No case cited by the Trump Campaign supports its standing as an entity. Rather, the Trump Campaign wrongly relies on cases describing associational standing—but the Trump Campaign is not an association with *members* that are harmed. The Trump Campaign apparently confuses a campaign *fund* with a political party or association. Unlike a political association, however, "[t]he Trump Campaign does not represent . . . voters. The Trump campaign represents only Donald J. Trump and his 'electoral and political goals' of reelection." *Cegavske*, 2020 WL 5626974, at \*4; *accord Orloski v. Davis*, 564 F. Supp. 526, 530-31 (M.D. Pa. 1983) (holding that the Democratic State Committee has standing because the *association's members* are suffering immediate or threatened injury such that they would have standing to sue in their own right); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587-88 (5th Cir. 2006) (similar).

Second, the Trump Campaign does not have "competitive standing" because it is not the candidate, Donald J. Trump. The Trump Campaign cites *In re General Election-1985*, where a *candidate*—not a campaign fund—was held to have standing when a Judge closed eleven election precincts within the county due to emergency, and put the candidate in jeopardy of losing. 531 A.2d 836, 838-39 (Pa. Commw. Ct. 1985).[1]

But there is more—the Trump Campaign flatly fails to plead the basic elements of Article III standing: they claim no injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Lance v. Coffman*, 549 U.S. 437, 439 (2007). At the outset, the Trump Campaign claims no injury-in-fact because it does not *plausibly* put at issue enough votes to remotely change the outcome of the election—now decided by a margin of more than *81,000 ballots*.[2] *See Bognet*, 2020 WL 6686120, at *8 ("[F]or Bognet to have standing to enjoin the counting of ballots . . . such votes would have to be sufficient in number to change the outcome of the election to Bognet's detriment."). The

---

[1] The Trump Campaign cites several other cases which concern candidates or political party committees, not a campaign fund. *See, e.g., Drake v. Obama*, 664 F.3d 774, (9th Cir. 2011). And, unlike in *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 907 (8th Cir. 2020), the Trump Campaign is no longer joined by political committees like the Republican National Committee, the National Republican Congressional Committee, or the National Republican Senatorial Committee.

[2] Pennsylvania, Department of State, 2020 Presidential Election, *available at* https://www.electionreturns.pa.gov/.

Trump Campaign fails to plead facts that would show its challenges to notice-and-cure, to provisional ballots cast by mail-in voters, and purported technical deficiencies in certain mail-in ballot declarations together amount to nearly enough votes to change the result.

Nor can the Trump Campaign plead injury based on hypothetical and speculative claims of fraud or "illegal" votes. *Id.* at *16-17 (Article III standing must be "based on well-pleaded facts; we do not credit bald assertions that rest on mere supposition"). The Campaign never pleaded plausible claims of fraud or illegality and struck such bare assertions from its Amended Complaint. *See Stein v. Cortes*, 223 F. Supp. 3d 423, 432 (E.D. Pa. 2016) (holding allegations of potential machine hacking simply do[es] not constitute an injury-in-fact").

Finally, the Trump Campaign's Opposition reveals that the essence of this claim still derives from their failed ballot-observation claim—a theory that has been definitively resolved against the Trump Campaign by the Supreme Court of Pennsylvania[3]—and which, in any event, asserts only speculative injury that depends on an illogical leap that rational and legal county differences in partisan ballot observation somehow resulted in illegal votes. This challenge (now recast as a claim of "ballot security") has no basis in Pennsylvania law—where partisan

---

[3] *See In re Canvassing Observation Appeal of City of Phila. Bd. of Elections*, No. 30-EAP-2020, — A.3d —, 2020 WL 6737895, at *8-9 (Pa. Nov. 17, 2020).

observers are not tasked with verifying the validity of votes—and concededly lacks any plausible facts to prove fraud or otherwise demonstrate "illegal" votes sufficient to change the outcome of the election. Pls.' Opp. Br. at 3-4 (seeking to randomly "sample" ballots to "extrapolate" "whether Plaintiffs can prove their case").

The Trump Campaign also fails to establish the causation element of standing. The claims of "ballot security," the opportunity to "cure" or vote provisional ballot are not traceable to Defendants' actions. Even if there were illegally casts votes, that would be the work of third parties, not the Counties. No standing exists to sue the Counties on that basis. "[S]peculation about the decisions of independent actors" cannot provide the basis for standing. *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-CV-966, 2020 WL 5997680, at *2-3 (W.D. Pa. Oct. 10, 2020) (internal quotation marks omitted).

Lastly, the Trump Campaign's alleged injury—the loss of the election— cannot be redressed. As discussed above, the Trump Campaign has failed to plausibly allege that Trump would close his 81,000-vote deficit but for issues he raises. *Lujan*, 504 U.S. at 571 (holding that redressability is lacking where "it is entirely conjectural whether the nonagency activity that [allegedly] affects respondents will be altered . . . by the agency activity they seek to achieve"). The Trump Campaign cannot allege that the overall Pennsylvania election results would

be different if the alleged "cure disparity" was remedied, and thus cannot redress their claim.

For these reasons, the Trump Campaign does not have standing.

## B. The Individual Voters Do Not Have Standing

Likewise, Mr. Roberts and Mr. Henry lack standing. The County Boards did not deprive Mr. Roberts or Mr. Henry of their right to vote; rather, their own failure to follow directions with respect to completing their mail-in ballots resulted in their votes not counting.

Mr. Henry alleges—for the first time in the Amended Complaint—that his mail-in ballot was rejected because it was not enclosed in a secrecy envelope.[4] Am. Compl. ¶ 15. Across the Commonwealth, the law is consistent: mail-in ballots without secrecy envelopes are not counted. Of course, Mr. Henry has no claim based on his assertion that his *improperly* cast ballot was not counted. In any event, if there were any injury here, it is generalized and cannot support standing. *See Pa. Voters Alliance v. Centre Cnty.*, No. 20-cv-1761, 2020 WL 6158309, at *3-7 (M.D. Pa. Oct. 21, 2020); *see also Bognet*, 2020 WL 6686120 at *14 (holding that every time an elections board deviates in counting ballots does not rise to an particularized injury in fact).

---

[4] Plaintiffs, in their original Complaint, admitted that such ballots should not be counted and even requested an emergency order prohibiting the certification of election results that included such ballots. Compl. ¶ 15.

Further, neither Mr. Henry nor Mr. Roberts alleges a concrete injury because they fail to allege that they would have cured their defective ballots had they had the opportunity to do so. *Bognet*, 2020 WL 6686120, at *6 (holding that to bring suit you "must be injured in a way that concretely impacts your own protected legal interest"). We are left to speculate as to what actions Mr. Henry and Mr. Roberts— or any other voter—would have taken had they been given the opportunity to cure. When it is the voter's *choice* to become part of the "preferred class," as it is here, *Bognet* counsels that no standing exists for an equal protection claim. *Bognet*, 2020 WL 6686120, at *15. These speculations and hypotheticals concerning whether a voter would have cured his mail-in ballot cannot establish the requisite injury in fact required to maintain standing. *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009).

With respect to causation, Mr. Roberts was not notified that he was permitted to cure his ballot, despite living in Fayette County, which is not alleged to be among the Counties prohibiting cure. *See* Am. Compl. ¶¶ 16, 130. Moreover, Mr. Roberts asserts no impediment to casting a provisional ballot—a procedure all Pennsylvania voters could have used to record their vote while the county board of elections determines whether it can be counted. *See* 25 P.S. §§ 3050, 3146.6(b)(2), 3150.16(b)(2). The independent decision of voters to avail themselves of the provisional balloting procedure is not traceable to the County Boards. Plaintiffs' allegations undermine their simplistic and inaccurate characterization of a voter's

"place of residence" as determinative of whether mail-in ballots were cured. In any event, none of the purported variations in county procedures—or even the potential for certain votes to have been counted in violation of state law—give rise to standing for these two individuals. *See Bognet*, 2020 WL 6686120, at *14 (holding that "Voter Plaintiffs, who bear the burden to show standing, have presented no instance in which an individual voter had Article III standing to claim an equal protection harm to his or her vote from the existence of an allegedly illegal vote cast by someone else in the same election.").

## II.   The Few Remaining Claims in Plaintiffs' Amended Complaint Fail as a Matter of Law

Plaintiffs' Amended Complaint contains two claims: (i) an equal protection claim, and (ii) a claim for violations of the Elections and Electors Clauses of the U.S. Constitution.[5] The County Boards explained at length in their Motion to Dismiss

---

[5] Plaintiffs argue that "Defendants conduct violated due process" (Op. Br. at 9-10, ECF No. 170), but no due process claims are at issue because Plaintiffs voluntarily *removed* those claims when they filed their operative First Amended Complaint—supposedly as a result of some mix of "confusion" and "mistake." But any due process claims would fail on the merits in any event. *See* County Boards' Br. at 24-30, ECF No. 94. Moreover, in light of the Pennsylvania Supreme Court's recent decision that the County Boards' procedures for observation *did not violate* the Election Code, those claims also would be barred by the Rooker-Feldman doctrine, which prohibits collateral attacks in federal court on state court judgments. *See, e.g.*, *Stein v. Cortes*, 223 F. Supp. 3d 423, 434 (E.D. Pa. 2016) (citing *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004); *see also D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923))).

that even if Plaintiffs had standing (and they do not), those claims fail as a matter of law. Plaintiffs have failed to respond to the substance of those arguments, and their Amended Complaint should be dismissed with prejudice.

### A.    The Equal Protection Claim Fails as a Matter of Law

The equal protection claim in Plaintiffs' Amended Complaint (Count I) fails as a matter of law. Am. Compl. ¶¶ 150-60; *see* Boards' Mot. at 24-35. Plaintiffs barely try to defend the merits of this claim, devoting only a single, cursory paragraph to it in their Opposition Brief. Op. Br. at 29, ECF No. 170. Plaintiffs appear to argue that the equal protection clause is violated because of unspecified differences in observer access and mail-in ballot procedures. That states no constitutional claim. *See Bognet*, 2020 WL 6686120, at *15-16 (rejecting argument "that the differential treatment between groups of voters by itself" is "an injury for standing purposes" without "a showing of discrimination or other intentionally unlawful conduct or at least some burden on Plaintiffs' own voting rights"); *see also Boockvar*, 2020 WL 5997680, at *38. Because Plaintiffs' equal protection claim lacks any factual or legal foundation, it should be promptly dismissed with prejudice.

At the outset, there are no well-pled facts in the Amended (or the proposed Second Amended) Complaint that support this theory. Plaintiffs' claim still rests on the vague assertion that certain counties enforced the Election Code in a manner that differs from the approach used by other counties. The Third Circuit in *Bognet*

confirmed no such "vote dilution" or arbitrary differences are established simply by virtue of county differences or even by virtue of state-law election code violations. 2020 WL 6686120. The new effort to recast mere geographic differences into invidious discrimination along party lines is not supported by pleaded or plausible facts to show there are so-called "Democratic" or "Republican" counties or that there was any "intentional" state-wide conspiracy to count the vote differently based on such classifications.[6]

Similar equal protection claims were asserted by the Trump Campaign and rejected less than two months ago. *Donald J. Trump for President, Inc*, 2020 WL 5997680, at *38. As Judge Ranjan explained, "'[c]ommon sense, as well as constitutional law, compels the conclusion' that states must be free to engage in 'substantial regulation of elections'" to ensure "'order, rather than chaos,'" in the administration of an election. *Id*. (quoting *Burdick v. Takushi*, 504 U.S. 428, 433

---

[6] Contrary to the Trump Campaign's invocation of *Bush v. Gore*, nothing in that decision suggests that Plaintiffs have stated a federal constitutional claim based on different county election procedures, much less a claim that could warrant the extraordinary federal intervention in the Commonwealth's administration of its election that Plaintiffs seek. In fact, in *Bush v. Gore*, "[t]he question before the Court [wa]s *not* whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. 98, 109 (2000) (emphases added); *see Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *43-44 (collecting cases and explaining that "[t]his is categorically different from the harm at issue in *Bush* and cases like it"); *Ron Barber for Cong. v. Bennett*, No. 14-2489, 2014 WL 6694451, at *5 (D. Ariz. Nov. 27, 2014) ("[T]he [*Bush v. Gore*] Court did not invalidate different county systems regarding implementation of election procedures.").

(1992)). Indeed, "'[i]t is well-settled that states may employ in-person voting, absentee voting, and mail-in voting and each method need not be implemented in exactly the same way." *Id.* at \*61. Thus, "while the Constitution demands equal protection, that does not mean all forms of differential treatment are forbidden." *Id.* (dismissing identical claim and explaining that "[i]f the courts were 'to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest,' it 'would tie the hands of States seeking to assure that elections are operated equitably and efficiently'" (quoting *Burdick*, 504 U.S. at 433)). These bedrock constitutional principles foreclose Plaintiffs' equal protection claim.

Next, the individual Plaintiffs' appear to complain that *other* counties—which are not parties to this case—denied them the right to vote, but that is not a viable theory of equal protection either. As Judge Ranjan explained, the Trump Campaign and individual voters cannot state an equal protection claim by complaining, as they do here, that "the state is *not* imposing a restriction on *someone else's* right to vote." *Id.* at \*44. Even though this "inverted theory of vote dilution" is meritless and lacks any constitutional basis, Plaintiffs' continue to rely on it. This Court should reject this theory.

The claims fail for the additional reason that the Campaign cannot transform purported violations of state law into constitutional claims. The Amended Complaint

does not get around that result simply by replacing references to "vote dilution" and violations of the "Election Code" with the term "illegal." *See, e.g., Donald J. Trump for President, Inc.*, 2020 WL 5997680, at \*52-53; *In re Canvassing Observation Appeal of City of Phila. Bd. of Elections*, No. 30 EAP 2020, — A.3d —, 2020 WL 6737895, at \*8-9 (Pa. Nov. 17, 2020). The Trump Campaign's equal protection claim fails because it is premised on a theory of vote dilution that has no basis in fact or law and the unsubstantiated assertion that ballots were unlawfully counted, when they were not.

In a final gambit, having resorted to Pennsylvania courts and lost, the Trump Campaign now argues that "this Court need not accept the Pennsylvania Supreme Court's interpretation of state law on an issue which impacts a presidential election." Op. Br. at 2, ECF No. 170. That claim is flatly contrary to our system of federalism under which state supreme courts are the ultimate expositors of state law. *See, e.g.*, *Florida v. Powell*, 559 U.S. 50, 56 (2010) (holding "state courts be left free and unfettered . . . when interpreting their" state laws); *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 488 (1976) (explaining that federal courts are, "of course, bound to accept the interpretation of [state] law by the highest court of the State"); *Wardius v. Oregon*, 412 U.S. 470, 477 (1973) ("It is, of course, true that the Oregon courts are the final arbiters of the State's own law."). This Court should accordingly decline the Trump Campaign's invitation to disregard the

Pennsylvania Supreme Court's interpretation of state law. *See Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005) ("Principles of federalism limit the power of federal courts to intervene in state elections[.]" (quoting *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992))); *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980) (The constitution "leaves the conduct of state elections to the states"); *see also Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018) ("Nothing in the Constitution, the Supreme Court's controlling precedent, or our case law suggests that we can micromanage a state's election process to this degree.")

For these reasons, the Trump Campaign falls far short of pleading a cognizable claim for equal protection violations. There is no constitutional basis for the Trump Campaign's demand that *each* county administer its election in an identical way. That is not what the law requires. Plaintiffs' equal protection claim should be dismissed.

### B.     Plaintiffs Concede Their Elections and Elector Clause Claims Fail

As noted above, Plaintiffs "acknowledge that—because the General Assembly is not a party here—*Bognet* forecloses their allegations that they have standing to pursue their Elections and Electors Clause claims." Pls.' Resp. to Notice of Supp. Auth. at 1, ECF No. 124. Yet they have not excised these claims from their Amended Complaint—and they have sought to add several additional claims for such violations in their Second Amended Complaint. Plaintiffs' concession that they

lack standing forecloses these claims—and their decision to double-down on them is puzzling. Although Plaintiffs appear intent on inviting this Court *for the third time* to commit reversible error by granting relief under the Elections or Electors Clauses, this Court should dismiss Plaintiffs' Elections and Electors Clauses claim with prejudice.[7]

### C. Plaintiffs Struck Their Due Process Claim, Which Is Meritless in Any Event

The Trump Campaign's Opposition attempts to resurrect the due process claims it struck from the Amended Complaint. Under the banner of *Marks v. Stinson*, 19 F.3d 873, 887 (3d Cir. 1994), the Trump Campaign claims it is entitled to seek wide-scale voter disenfranchisement based on an ill-defined and unsubstantiated due process theory. *See* Pls.' Opp. Br. at 29. But this case is not *Marks*. The plaintiff in *Marks* presented concrete and extraordinary evidence of fraud by illegal harvesting of an payment for mail-in ballots, not bare speculation. *Marks*, 19 F.3d at 877; *compare* Pls.' Opp. Br. at 29. Plaintiffs' allegations of voter fraud at oral argument do not—and cannot—bring this case within the same hemisphere as *Marks*. (Hearing Transcript pending.) In any event, even in the face of a substantial record of actual and widespread fraud—not remotely established in this case—the Third Circuit explained that disenfranchisement is not the proper remedy and that the plaintiff has

---

[7] Putting aside standing, these claims would fail on the merits, as explained in the County Boards' Motion. *See* County Boards' Mot. at 33-35, ECF No. 94.

the burden of demonstrating that the fraud was the but-for cause of the election loss. *Id.* at 887. The Trump Campaign has shown no such thing. Due process is not pleaded in the Amended Complaint and would, in any event, provide no quarter for the Trump Campaign's claims to indiscriminately throw out Pennsylvania votes.

### III. In the Alternative, This Court Should Abstain from Deciding the Trump Campaign's Claims and Allow the Pennsylvania Courts to Resolve Them

Plaintiffs have belatedly raised issues that are pending in state-court litigation. *See* Boards' Mot. at 9-13 (outlining overlapping state and federal litigation). *Pullman* abstention applies here because "the federal constitutional question [posed in this litigation] might be eliminated by securing a Pennsylvania court's determination of an unresolved question of its local law." *NAACP Phila. Branch v. Ridge*, No. 00-CV-2855, 2000 WL 1146619, at *4 (E.D. Pa. Aug. 14, 2000); *see also Chez Sez III Corp. v. Twp. of Union*, 945 F.2d 628, 631 (3d Cir. 1991); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-CV-966, 2020 WL 4920952, at *15 (W.D. Pa. Aug. 23, 2020). Plaintiffs' attempts to suggest that *Pullman* does not apply are disingenuous, at best.

At the outset, Plaintiffs' assert that *Pullman* should not apply because "no issues of state law underlie Plaintiffs' equal protection claim." Pls.' Opp. Br. at 20. This is not true. Plaintiffs' claims are predicated on alleged violations of the Pennsylvania Election Code. *See, e.g.*, Pls.' Opp. Br. at 2 ("[T]his Court need not accept the Pennsylvania Supreme Court's interpretation of state law . . . ."); Pls' Br.

in Supp. of Prelim. Inj. at 3, ECF No. 89 ("[V]iolations of the Election Code . . . render the outcome of the Pennsylvania election too uncertain to be certified."); Compl. ¶ 6 ("Democratic-heavy counties violated the mandates of the Election Code . . . advantaging voters in [those] counties . . . ."); Am. Compl. ¶ 6 ("Democratic-heavy counties illegally advantaged voters in [those] counties . . . ."). Plaintiffs' suggestion to the contrary is meritless.[8]

Plaintiffs also claim that *Pullman* should not apply because, to the extent questions of state law are implicated by this action, those issues have already been decided by a Pennsylvania Supreme Court. *See* Pls.' Opp. Br. at 20. To be sure, the Pennsylvania Supreme Court has *rejected* the Trump Campaign's ballot-observation arguments, confirming such claims are without merit. *See In re Canvassing Observation Appeal of City of Phila. Bd. of Elections*, 2020 WL 6737895. Yet, the notice-and-cure and declaration standards issues remain pending. As one federal court recently opined, "no state court has interpreted" many of the Election Code provisions now underlying Plaintiffs' federal constitutional claims. *Donald J. Trump*

---

[8] Plaintiffs have taken great strides to scrub references to the Election Code from their Amended Complaint. Nevertheless, their claims remain a frontal attack on officials' interpretations of the Election Code. *See, e.g.*, Am. Compl. ¶ 10 ("Pennsylvania has created an illegal voting system for the 2020 General Election."); *id.* ¶¶ 15-16 (identifying provisions of the Election Code permitting Plaintiffs Henry and Roberts the ability to vote in Pennsylvania); *id.* ¶ 17 (identifying Defendant Secretary Boockvar's statutory power related to election); *id.* ¶ 18 (identifying Counties' statutory authority under the Election Code).

*for President, Inc.*, 2020 WL 4920952, at \*10; *see also Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (counseling abstention "where an unconstrued state statute is susceptible of a construction by the *state judiciary*" (emphasis added and internal quotation marks omitted)). In fact, as particularly relevant here, the Commonwealth Court is currently considering whether the notice-and-cure practices of some counties—and challenged by the Trump Campaign here—are permissible under the Pennsylvania Election Code. *Hamm v. Boockvar*, No. 600 MD 2020 (Pa. Commw. Ct. 2020).

Finally, Plaintiffs posit, without reference to any authority, that Pennsylvania does not have an "important state policy interest in applying" its ballot counting rules. Pls.' Opp. Br. at 21. That could not be further from the case. Here, "a federal-court constitutional decision, premised on an erroneous interpretation of ambiguous state law . . . amid a global pandemic, would risk electoral chaos and undermine the integrity of the democratic process in the minds of voters." *Donald J. Trump for President, Inc.*, 2020 WL 4920952 at \*17. Undermining the democratic process in this way plainly would be detrimental to Pennsylvania's policy interests. *De la Fuente v. Cortes*, 207 F. Supp. 3d 441, 450 (M.D. Pa. 2016) (collecting cases).

Plaintiffs, moreover, do not substantively oppose the County Boards' argument that principles of federalism and federal law require deference to ongoing state court processes or that this Court should abstain under *Younger* to allow state

court proceedings (where the Trump Campaign or its affiliates are parties) to proceed unencumbered. Plaintiffs have waived their right to oppose dismissal on either basis.

## IV. The Trump Campaign Does Not Address or Acknowledge that the "Remedies" It Seeks Amount to an Unconstitutional Attempt to Disenfranchise Millions of Pennsylvania Voters by Altering the Rules of the Election After the Fact

As a "citizen's link to his laws and government," *Evans v. Cornman*, 398 U.S. 419, 422 (1970), the right to vote is "at the heart of our democracy," *Burson v. Freeman*, 504 U.S. 191, 198 (1992) (Blackmun, J., plurality opinion); *Donald J. Trump for President, Inc.*, No. 2020 WL 5997680, at *38 ("Of course, the right of every citizen to vote is a fundamental right."). In this case, the Trump Campaign admitted at oral argument that the relief it requests is "draconian" and would disenfranchise millions of Pennsylvania voters. (Hearing transcript pending.) Casting aside millions of lawful ballots is the *only* relief that the Trump Campaign has requested. An order granting such relief—even temporarily—would be unjust, unfair, and unconstitutional. *See* Boards Mot. at 42-45. The Trump Campaign persists in its audacious assertion that millions (or "untold thousands") of lawful votes should be set aside—without a single plausible factual allegation to back up that extraordinary request. *See* Pls.' Opp. Br. at 1. Such an unconstitutional "remedy" should not be entertained, and dismissal with prejudice is warranted.

Even if the Trump Campaign were able to articulate some basis for the relief requested (and they have not), this Court should not alter the General Assembly and

Counties' election rules while the election has yet to be certified due to the *Purcell* doctrine. The Trump Campaign suggests that *Purcell* should not bar their untimely claim because *Purcell* "has no bearing on post-election Equal Protection Clause claims." Pls.' Opp. Br. at 27 n.12. That is inaccurate. While it is true that the doctrine *generally* manifests when courts are called upon to modify election rules at the eleventh hour, the Supreme Court has extended this principle to limit the post-election conduct of federal courts to "avoid . . . judicially created confusion" even after the election. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020); *see also Mi Familia Vota v. Abbott*, 977 F.3d 461, 471 (5th Cir. 2020).

The Trump Campaign asks this Court to go even further than the classic *Purcell* case. Rather than interfere with election rules shortly before it begins— which may hinder the public's ability to vote—they instead advocate to invalidate millions of ballots cast by voters relying on the election law created by the General Assembly. This is wholly improper, particularly considering that Plaintiffs have repeatedly obstructed an early or prompt resolution of this action.[9] As the Third

---

[9] Plaintiffs filed their original Complaint demanding emergency relief on November 9, 2020. In the ten days that followed, Plaintiffs: (1) amended their Complaint without adding any new facts to moot pending motions to dismiss; (2) substituted two sets of counsel; (3) requested to delay proceeding on Defendants' Motions to Dismiss; (4) requested to file a second amended complaint renewing claims that were "inadvertently withdr[awn]" in the Amended Complaint; and (5) moved for an

Circuit recently explained, even if the Court "assume[s] for the sake of argument that aspects of the now-prevailing regime in Pennsylvania are unlawful, . . . given the timing of Plaintiffs' request for injunctive relief, the electoral calendar [is] such that following it 'one last time' [is] better" than the alternative proposed by Plaintiffs—disenfranchising almost seven million Pennsylvania voters who lawfully cast ballots in the general election. *Bognet*, 2020 WL 6686120, at \*17.

## CONCLUSION

The Court should bring this litigation to a close expeditiously by promptly dismissing this action seeking to disregard the lawful votes cast by all Pennsylvania voters, so the County Boards and Commonwealth can complete the electoral process.

---

extension to file a second motion for preliminary injunction. That is, Plaintiffs have treated this action as an emergency in name only. As a result, Plaintiffs should be foreclosed from asserting they have moved with haste to resolve the matters contained in the Amended Complaint.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: November 19, 2020

By:   */s/ Mark A. Aronchick*
Mark A. Aronchick (I.D. No. 20261)
Michele D. Hangley (I.D. No. 82779)
Robert A. Wiygul (I.D. No. 310760)
John G. Coit (I.D. No. 324409)
Christina C. Matthias (I.D. No. 326864)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 496-7050
Email: maronchick@hangley.com

Virginia Scott (I.D. No. 61647)
Allegheny County Law Department
445 Fort Pitt Commons, Suite 300
Pittsburgh, PA 15219
412-350-1120

*Counsel for Allegheny County Board of Elections, Chester County Board of Elections, Montgomery County Board of Elections, and Philadelphia County Board of Elections*

*Counsel for Allegheny County Board of Elections*

Joshua M. Stein (I.D. No. 90473)*
Montgomery County Solicitor
Montgomery County Solicitor's Office
One Montgomery Plaza, Suite 800
P.O. Box 311
Norristown, PA 19404-0311
(610) 278-3033

*Counsel for Montgomery County Board of Elections*

CITY OF PHILADELPHIA LAW DEPT.
Marcel S. Pratt, City Solicitor
(I.D. No. 307483)*
Benjamin H. Field, Divisional Deputy City Solicitor* (I.D. No. 204569)
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595
(215) 683-5444

*Counsel for Philadelphia County Board of Elections*

*Motions for Special Admission Forthcoming