## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Donald J. Trump for President, Inc., Lawrence Roberts, and David John Henry, <br><br>      Plaintiffs, <br><br>   v. <br><br> Kathy Boockvar, in her capacity as Secretary of the Commonwealth of Pennsylvania, Allegheny County Board of Elections, Centre County Board of Elections, Chester County Board of Elections, Delaware County Board of Elections, Montgomery County Board of Elections, Northampton County Board of Elections, and Philadelphia County Board of Elections, <br><br>      Defendants, <br><br>   v. <br><br> DNC Services Corporation/Democratic National Committee, <br><br>      Intervenor-Defendant. | No. 4:20-cv-02078-MWB <br> (Judge Matthew W. Brann) |

## INTERVENOR-DEFENDANT DNC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

BACKGROUND ...................................................................................................3

ARGUMENT ........................................................................................................4

   I.     Plaintiffs Lack Standing on Their Remaining Claims. ................................4

   II.    Laches Bars Plaintiffs' Equal Protection Claim. .........................................9

   III.   Plaintiffs' Equal Protection Claim Fails as a Matter of Law.....................11

   IV.   Plaintiffs Have Not Pled and Could Not Plead a Due Process Claim. .......15

   V.    The Eleventh Amendment Bars Plaintiffs' Claim. ....................................17

   VI.   If Plaintiffs' Claims Are Not Dismissed, This Court Should Abstain Under *Pullman*. ....................................................................................................18

   VII.  Plaintiffs' Remedy Is Disproportionate to Their Purported Injury and Unconstitutional. .......................................................................................20

CONCLUSION....................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Celebrezze,*
  460 U.S. 780 (1983) ........................................................................ 12

*Balsam v. Sec'y of N.J.,*
  607 F. App'x 177 (3d Cir. 2015) ..................................................... 17

*Bennett v. Yoshina,*
  140 F.3d 1218 (9th Cir. 1998) ......................................................... 16

*Blankenship v. Blackwell,*
  429 F.3d 254 (6th Cir. 2005) ........................................................... 10

*Bognet v. Secretary Commonwealth of Pennsylvania,*
  --- F.3d ----, No. 20-3214, 2020 WL 6686120 (3d Cir. Nov. 13,
  2020) ...................................................................................... passim

*Burdick v. Takushi,*
  504 U.S. 428 (1992) ........................................................................ 13

*Bush v. Gore,*
  531 U.S. 98, 109 (2000) .................................................................. 14

*Donald J. Trump for President, Inc. v. Boockvar,*
  --- F. Supp. 3d ----, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ... 11, 13, 15, 16

*Fulani v. Hogsett,*
  917 F.2d 1028 (7th Cir. 1990) ........................................................... 6

*Gamza v. Aguirre,*
  619 F.2d 449 (5th Cir. 1980) ........................................................... 21

*Green Party of Tenn. v. Hargett,*
  767 F.3d 533 (6th Cir. 2014) ............................................................. 7

*Hamm v. Boockvar,*
  600 MD 2020 (Pa. Commw. Ct. Nov. 3, 2020) ................................ 20

*Hennings v. Grafton,*
  523 F.2d 861 (7th Cir. 1975) ........................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

*Ill. State Bd. of Elections v. Socialist Workers Party*,
  440 U.S. 173 (1979)................................................................13

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ................................................15

*In Re: Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen.
  Election*,
  Nos. 89-93 EM 2020 (Pa. Nov. 18, 2020).............................19

*In re: Canvassing Observation*,
  No. 30 EAP 2020 (Pa. Nov. 17, 2020) ...................... 3, 16, 18

*In re Contest of Election of Gollomar*,
  175 A. 510 (Pa. 1934)...............................................................2

*In re Flickinger*,
  No. 1:09-BK-08739MDF, 2010 WL 4923933 (Bankr. M.D. Pa.
  Nov. 24, 2010) ........................................................................15

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................8, 9

*Marks v. Stinson*,
  19 F.3d 873 (3d Cir. 1994) ...........................................1, 5, 16

*McMullen v. Maple Shade Twp.*,
  643 F.3d 96 (3d Cir. 2011) ....................................................17

*Ne. Ohio Coal. for the Homeless v. Husted*,
  837 F.3d 612 (6th Cir. 2016) .................................................15

*Nelson v. Warner*,
  --- F.Supp.3d ---, No. 3:19-0898, 2020 WL 4582414 (S.D. W. Va.
  Aug. 10, 2020) ..........................................................................6

*Pa. ex rel. Zimmerman v. Pepsico, Inc.*,
  836 F.2d 173 (3d. Cir. 1988) .................................................12

*Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*,
  280 F.3d 278 (3d Cir. 2002) ....................................................9

# TABLE OF AUTHORITIES

**Page(s)**

*Pavek v. Donald J. Trump for President, Inc.,*
  967 F.3d 905 (8th Cir. 2020) ...............................................................6

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984)...............................................................................18

*Pfuhl v Coppersmith,*
  253 A.2d 271, 275 (Pa. 1969).............................................................22

*Republican Party of Pa. v. Cortés,*
  218 F. Supp. 3d 396 (E.D. Pa. 2016)..................................................16

*Reynolds v. Sims,*
  377 U.S. 533, 554 (1964).....................................................................21

*Rogers v. Corbett,*
  468 F.3d 188 (3d Cir. 2006) ...............................................................12

*Schulz v. Williams,*
  44 F.3d 48 (2d Cir. 1994) .....................................................................6

*Short v. Brown,*
  893 F.3d 671 (9th Cir. 2018) ..............................................................13

*Stein v. Cortés,*
  223 F. Supp. 3d 423 (E.D. Pa. 2016)..................................................21

*Tex. Democratic Party v. Benkiser,*
  459 F.3d 582 (5th Cir. 2006) ................................................................6

*Toney v. White,*
  488 F.2d 310 (5th Cir. 1973) (en banc) .............................................11

*United States v. Saylor,*
  322 U.S. 385 (1944).............................................................................21

**STATUTES**

3 U.S.C. § 7 .............................................................................................3

25 P.S. § 2642(k).....................................................................................2

25 P.S. § 3146.8(g)(2) ...........................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

25 P.S. § 3154(e) ........................................................................................... 19

25 P.S. § 3157 ................................................................................................. 19

25 P.S. § 3261 ................................................................................................. 19

25 P.S. § 3262 ................................................................................................. 19

25 P.S. § 3457 ................................................................................................. 22

42 P.S. § 3456 ............................................................................................ 1, 22

**OTHER AUTHORITIES**

Fed. R. Evid. 201 ........................................................................................... 15

## INTRODUCTION

Plaintiffs' purpose in this lawsuit is plain: they want a federal court to "set aside [Pennsylvanians'] votes and declare Trump the winner." Opp. at 4. Plaintiffs seek to overturn the will of the Commonwealth's voters based on purported deviations from the election code, but Plaintiffs' Amended Complaint does not even *allege* the "massive absentee ballot fraud" that would be required to do so actually occurred. *Marks v. Stinson*, 19 F.3d 873, 887 (3d Cir. 1994). In fact, they do not claim a single voter who was unqualified cast a ballot or that any individual voted fraudulently. The Court asked Plaintiffs how such a remedy "could possibly be justified," and the clear answer is that it cannot—such a remedy would be grossly disproportionate to Plaintiffs' alleged injury and has no support in law or fact, as is evident from Plaintiffs' failure to answer the Court's question during the hearing and their failure to do so now.

Precisely because Plaintiffs have no evidence to support their drastic requests to throw out millions of votes, or alternatively to audit 1.5 million votes, they filed this federal action to evade the Commonwealth's well-established procedures for contesting the validity of the election. 42 P.S. § 3456. This is not by accident: the proper state court avenues would require Plaintiffs to make a sufficient showing of proof to support their currently evidence-free allegations—a showing Plaintiffs cannot make. Under Pennsylvania law, an election can only be overturned if the

"proof [] show[s] the honest will and intent of the electorate [have been] thwarted," which is a far cry from what Plaintiffs allege here. *In re Contest of Election of Gollomar*, 175 A. 510, 513 (Pa. 1934).

But the Court need not reach the merits of Plaintiffs' claims, because each party before the Court lacks standing. Plaintiffs Roberts and Henry claim they were denied the right to vote, but Defendants in this case had no hand in that alleged denial, and that grievance can only be redressed by the counties where Plaintiffs attempted to vote—Fayette and Lancaster—neither of which are defendants in this case. And any vote dilution claim that remains is plainly foreclosed by the Third Circuit's ruling in *Bognet v. Secretary Commonwealth of Pennsylvania*, --- F.3d --- -, No. 20-3214, 2020 WL 6686120 (3d Cir. Nov. 13, 2020). As for the Trump Campaign, it has failed to identify any controlling authority recognizing its standing, and in any event, it has failed to allege facts demonstrating that Republican votes were cancelled, while Democratic votes were counted.

Time remains of the essence. It has been more than two weeks since election day, and Plaintiffs have yet to offer a scintilla of evidence of *any* fraudulent conduct or systemic breakdowns that would be required to undo an entire election for every office on the ballot, let alone to reverse President Trump's 83,000-plus vote deficit in Pennsylvania. Now, with only four days remaining until counties must certify their election results, 25 P.S. § 2642(k), and a short time until the electoral college

meets, 3 U.S.C. § 7, Plaintiffs ask this Court to restart the process for a third time. Because Plaintiffs' claims fail at every turn, the Court should dismiss this case and allow the Commonwealth to complete the electoral process and effectuate the will of the millions of Pennsylvanians who voted in this election.

## BACKGROUND

Plaintiffs' opposition to Defendants and Intervenors' motions to dismiss conflates allegations from various complaints and adds some that have not been pled at all. The operative pleading before this Court is Plaintiffs' Amended Complaint, Dkt. 125, filed on November 15, 2020, three days after Defendants and Intervenors moved to dismiss Plaintiffs' original Complaint. The original and amended Complaints are virtually identical in substance, the primary difference being that the Amended Complaint abandoned several causes of action under the Fourteenth Amendment Due Process Clause, the Equal Protection Clause, and the Electors and Elections Clauses (Counts I, II, and III, respectively), all of which were premised on the belief that a campaign's representatives have a right to stand close enough to inspect and review mail ballots during the canvassing process.

As plaintiffs have eliminated all counts pertaining to "proximity parameters" of observers—which the Pennsylvania Supreme Court held the General Assembly deliberately left "to the informed discretion of county boards of elections," *see In re: Canvassing Observation*, No. 30 EAP 2020, slip op. at 17 (Pa. Nov. 17, 2020),

Ex. 1 hereto, what remains in the Amended Complaint are two counts: (1) an equal protection claim based on certain counties' efforts to notify voters whose mail ballots contained non-substantive defects, so they could vote by provisional ballot in person or cast a replacement mail ballot, Am. Compl. ¶¶ 127, 156, 211, and (2) a claim under the Electors and Elections Clauses alleging that the Election Code prevents the Defendant Counties from handling or reviewing ballot envelopes before pre-canvassing and notifying voters that their mail ballots are defective and have been invalidated, *see id.* ¶¶ 125-26.

Any causes of action pertaining to observer access during the canvassing process are no longer before this Court. And it was Plaintiffs' decision alone that yielded that outcome. The Amended Complaint also does not set forth any specific allegations of systemic fraud, nor do Plaintiffs even claim Defendants engaged in any fraud or suppression of votes. And when pressed by the Court about the heightened pleading requirements of Rule 9(b), counsel for Plaintiffs confirmed that the Amended Complaint does not plead fraud. What remains are only descriptions of Defendants' efforts to enable qualified voters to cast lawful ballots.

## ARGUMENT

### I.    Plaintiffs Lack Standing on Their Remaining Claims.

Plaintiffs fail to overcome any of the standing defects that the DNC has repeatedly identified. The Third Circuit's recent decision in *Bognet* is dispositive of

both claims in the Amended Complaint.[1] The court's decision explains that just as "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," one individual voter lacks any cognizable interest in policing how others vote. 2020 WL 6686120, *16. Accordingly, a plaintiff does not suffer "a concrete harm" simply by claiming that the Commonwealth has "count[ed] ballots in violation of state election law." *Id.* at *11. For similar reasons, "when voters cast their ballots under a state's facially lawful election rule and in accordance with instructions from the state's election officials, private citizens lack Article III standing to enjoin the counting of those ballots on the grounds that . . . doing so *dilutes their votes* or constitutes *differential treatment of voters* in violation of the Equal Protection Clause." *Id.* at *18 (emphases added). These holdings foreclose the standing of both the Trump Campaign and the two voter Plaintiffs.

The Trump Campaign cannot overcome *Bognet* by asserting "competitive standing." Opp. at 11. *Bognet* itself rejected such a theory, holding that the federal candidate in that case could not "plead a cognizable injury by . . . pointing to a 'threatened' reduction in the competitiveness of his election from counting [additional] ballots." 2020 WL 6686120, at *8. And Plaintiffs are mistaken that the one other Third Circuit case they cite recognized that theory. As the Court

---

[1] Plaintiffs acknowledge that *Bognet* is dispositive of the Election and Electors Clauses claim. Opp. at 12 n.8.

recognized at the hearing, *Marks*, 19 F.3d at 873, cited at Opp. 11, did not mention Article III standing at all. And its facts—a candidate denied office through a well-documented election fraud scheme perpetrated by campaign operatives conspiring with election officials—are wholly inapposite. *Id.* at 877. Plaintiffs have alleged nothing remotely similar in the operative complaint.

*Bognet* also forecloses the Trump Campaign's standing because the Third Circuit held that a candidate is not injured "in a *particularized* way when, in fact, all candidates in Pennsylvania, including [the plaintiff's] opponent, are subject to the same rules." 2020 WL 6686120, at *8 (emphasis added). The out-of-circuit cases that Plaintiffs cite stand for similar propositions. For example, while Plaintiffs cite a series of cases recognizing competitive standing in suits alleging discriminatory treatment in the layout of or access to ballots, those cases involved direct electoral disadvantage to particular candidates and parties. *See Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 907 (8th Cir. 2020) (ballot layout); *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) (improper candidate replacement); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (ballot access); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990) (ballot access); *Nelson v. Warner*, --- F.Supp.3d ---, No. 3:19-0898, 2020 WL 4582414 (S.D. W. Va. Aug. 10,

2020) (ballot layout).[2] But Plaintiffs cannot demonstrate how a number of counties statewide allowing voters to cast provisional ballots or to resolve defects in their mail ballots hurts the Trump Campaign specifically. Plaintiffs also do not point to any allegation in the Amended Complaint that demonstrates that their "competitive standing" theory is anything but speculative. Plaintiffs do not dispute that under *Bognet* they must show that "counting more timely cast votes would lead to a *less* competitive race," "that a greater proportion of [defective] mailed ballots" would be cast for Vice President Biden, and that "such votes" were cast in "sufficient . . . number[s] to change the outcome of the election to [Trump's] detriment." 2020 WL 6686120, at *8. But Plaintiffs make no effort show any of these things, instead contenting themselves with vague accusations of an "illegal scheme" perpetrated "under the cover of darkness" to benefit Vice President Biden. Opp. at 1. That is not the sort of allegation of concrete, particularized injury Article III demands.

Plaintiffs do not attempt to show, for instance, that mail ballots in the counties that did not offer notification procedures would have skewed toward President Trump or that denial of notification procedures would have benefited Vice President Biden. To the contrary, the Opposition itself acknowledges that "the Biden campaign's strategy was mail ballots," *id.* at 3—which suggests that if all counties

---

[2] The remaining case Plaintiffs cite makes no mention of "competitive standing." *See Green Party of Tenn. v. Hargett*, 767 F.3d 533, 543-45 (6th Cir. 2014).

had adopted notification and cure procedures, then Vice President Biden would have done *better*. And indeed, Vice President Biden won a majority of the mail ballots in all but four of Pennsylvania's 67 counties—including more than twice as many mail ballots as President Trump in both Lancaster and Fayette Counties.[3] There is thus no basis for Plaintiffs to assert that President Trump's statewide performance would have improved had "Republican-leaning counties," *id.* at 14, offered the same notification procedures.

Plaintiffs fare no better in defending the standing of the two voter Plaintiffs, who attempt to recast their injury as "vote *denial*."[4] Opp. at 4 (emphasis added). Defendants did not deny anyone the right to vote. To the extent Plaintiffs suffered any vote denial, that injury is "fairly traceable" only to *other counties* that chose not to assist voters in exercising their rights. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). For similar reasons, a judgment disenfranchising voters who cast lawful ballots in *other* counties could not redress any injury suffered by the voter

---

[3] *See* Pa. Dep't of State, *2020 Presidential Election Unofficial Results*, https://www.electionreturns.pa.gov/General/CountyBreakDownResults?officeId=1 &districtId=1&ElectionID=undefined&ElectionType=undefined&IsActive=undefi ned (last visited Nov. 19, 2020).

[4] Plaintiffs' counsel conceded at oral argument that this is not a fraud case. Accordingly, Plaintiffs cannot attempt to establish standing on the theory that they are challenging "ballot-box stuffing" or "false or fraudulent votes." 2020 WL 6686120, at *14.

Plaintiffs at the hands of their county boards of elections, neither of which are named as defendants in this action. *See id.*

Nor have Plaintiffs explained how any action by the Secretary caused their votes to be rejected. On the contrary, they acknowledge that she encouraged all counties to assist mail voters whose ballots were cancelled. Am Compl. ¶¶ 87, 129. Plaintiffs allege nothing and point to nothing to suggest that the Secretary encouraged the Defendant Counties, and only those counties, to assist mail voters to benefit Vice President Biden. These defects confirm that Plaintiffs' Equal Protection Clause claim is indeed premised on how supposedly unlawful procedures in the Defendant Counties diluted Plaintiffs' votes. But *Bognet* unequivocally holds that such "a 'paradigmatic generalized grievance . . . cannot support standing.'" 2020 WL 6686120 at *12 (citation omitted).[5]

## II.   Laches Bars Plaintiffs' Equal Protection Claim.

Plaintiffs make two concessions that—in light of the severe prejudice to Pennsylvanians that Plaintiffs' requested relief would cause—bar their equal protection claim relating to alleged notification procedures under the doctrine of

---

[5] Because no voter has standing to assert these claims, the Trump Campaign necessarily also lacks derivative standing to bring an equal protection claim. *See supra* at 5; *see Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 291 (3d Cir. 2002) ("The limitations on derivative standing . . . are to be determined by applying the test for associational standing," which is "that '[the organization's] members would otherwise have standing' to bring these claims.").

laches. Those concessions make clear that Plaintiffs were aware of the practices they now challenge on or before election day, but that they waited until a week later to bring their suit—only after it was clear that President Trump had lost the election in Pennsylvania, and at a time designed to cause the maximum possible confusion in the election results.

*First*, Plaintiffs acknowledge that dismissal of a complaint on the ground of laches "is appropriate . . . when the 'applicability of the doctrine is apparent from the face of the Complaint.'" Opp. at 26 (quoting *Warner v. Sun Ship, LLC*, No. 11-7830, 2012 WL 1521866, at *2 (E.D. Pa. Apr. 30, 2012), *aff'd*, 507 F. App'x 107 (3d Cir. 2012)). *See also, e.g.*, *Blankenship v. Blackwell*, 429 F.3d 254, 256 (6th Cir. 2005) (affirming dismissal based on laches).

*Second*, according to Plaintiffs' own allegations, the "Counties took different positions on curing *before* election day." Opp. at 26-27 (emphasis added). *See also id.* at 6 (citing Am. Compl. ¶ 133 and a Philadelphia City Commissions website dated November 1, 2020); *id.* at 13 (Defendant Counties allowed voters to cast replacement ballots "before Election Day") (quoting Am. Compl. ¶ 130).

Even from the face of the Amended Complaint, therefore, it is clear that Plaintiffs could have raised their claims before, or at the latest on, election day. Plaintiffs were aware of the Counties' practices, or at least reasonably should have been so aware, given their close monitoring of those practices. Instead, Plaintiffs

"lay by and gamble[d] upon receiving a favorable decision of the electorate and then, upon losing, s[ought] to undo the ballot results in a court action," *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973) (en banc) (internal quotation marks omitted).

Plaintiffs could and should have brought their claims as soon as they became aware of the Counties' plans. Indeed, the Trump Campaign has not been slow to challenge local practices as soon as they came to light; it has brought dozens of other such lawsuits this year, including cases in Pennsylvania asserting equal protection claims. *See, e.g.*, *Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d ----, No. 2:20-cv-966, 2020 WL 5997680, at *28 (W.D. Pa. Oct. 10, 2020). But here, by contrast, the Trump Campaign appears to have concluded that delay offered it a tactical advantage—a calculation this Court should not countenance. And although Plaintiffs assert without explanation that "the delay has not prejudiced Defendants," Opp. at 28, that cannot be squared with Plaintiffs' request to disenfranchise millions of Pennsylvania voters after the fact. Plaintiffs' equal protection claim should be dismissed pursuant to the doctrine of laches.

## III. Plaintiffs' Equal Protection Claim Fails as a Matter of Law.

Plaintiffs devote only a single paragraph to defending the Amended Complaint's sole remaining claim, asserted in Count I, under the Equal Protection Clause (*see* Am. Compl. ¶¶ 150-60). Opp. at 29. Neither of the two practices mentioned in that paragraph can save their claim. The first supposed practice—the

alleged exclusion of Republican poll "observers" from the canvass—is completely divorced from the Amended Complaint. Count I does not even once mention poll "observers." Am. Compl. ¶¶ 150-60. And there is not a single allegation in the Amended Complaint about any Defendant treating "Republican/Trump observers" *differently* from observers affiliated with the Democratic Party or Vice President Biden. Opp. at 29. By itself, that is sufficient to disregard Plaintiffs' contentions about poll observers; their opposition to the motion to dismiss cannot constructively amend, or save an allegation that is not present in, their Complaint. *See Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d. Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted).

As for Defendants' alleged "notice/cure procedures" (Opp. at 29), they burdened no one's right to vote and were justified by Defendants' strong interest in protecting the franchise. They therefore easily satisfy any level of scrutiny. In any event, Plaintiffs' challenge is evaluated under the *Anderson-Burdick* framework, which governs equal-protection challenges to state election rules. *Rogers v. Corbett*, 468 F.3d 188, 193 (3d Cir. 2006). Under that framework, the level of scrutiny that applies to a restriction on voting rights depends on the nature of the alleged injury. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). Only "severe" restrictions are subject to strict scrutiny, whereas "reasonable, nondiscriminatory restrictions" are

generally justified by "the State's important regulatory interests." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citation omitted).

Plaintiffs have not alleged that Defendants restricted their right to vote at all— let alone severely. Plaintiffs allege not that any Defendant took any action with respect to their ballots, but that their *own counties* failed to inform them that they cancelled their mail ballots. Am. Compl. ¶¶ 15-16; *see Donald J. Trump for President, Inc*., 2020 WL 5997680, at *44 (rejecting identical Trump Campaign "complain[t] that the state is *not* imposing a restriction on *someone else's* right to vote"). Indeed, the only burden on voting rights in this case is the remedy Plaintiffs themselves seek, which would disenfranchise millions of voters. Because Defendants have not "burden[ed] anyone's right to vote" but, at most, "ma[de] it *easier* for some voters to cast their ballots," *Anderson-Burdick*'s lowest level of scrutiny applies. *Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018) (upholding state's expansion of automatic mailing of ballots to only some California counties); *see also Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *39 (where conduct "imposes no burden on the 'right to vote' at all, true rational basis review applies").

Defendants easily satisfy that scrutiny. Notifying voters whose mail ballots were defective so that they could cast a valid ballot protects one of the most fundamental rights—the right to vote. *See Ill. State Bd. of Elections v. Socialist*

*Workers Party*, 440 U.S. 173, 184 (1979). Defendants have a legitimate, indeed compelling, interest in ensuring that voters are not needlessly disenfranchised based on inadvertent mistakes that can be easily corrected by election day.

Plaintiffs cannot save their claim by relying on *Bush v. Gore*. "The question before the Court [in that case was] *not* whether *local* entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. 98, 109 (2000) (emphases added). Rather, the U.S. Supreme Court held that the problem with the Florida Supreme Court's order governing the state's postelection recount was that it applied an arbitrary *statewide* standard that required counties to use an abstract "intent-of-the-voter" test based on a review of "marks or holes or scratches on" ballots to determine whether a vote was legal. *Id.* at 106. Here, by contrast, Plaintiffs concede that Secretary Boockvar and her Department offered *uniform* statewide guidance encouraging all counties to notify voters of potential defects in their ballots and of the right to cast a provisional ballot. Am. Compl. ¶¶ 88, 129.[6]

---

[6] *See also* Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-In Ballot Return Envelopes* (Sept. 11, 2020), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/Examin ation%20of%20Absentee%20and%20Mail-In%20Ballot%20Return%20Envelopes.pdf (standardizing the steps each county board of elections would follow to process returned mail ballots "[t]o promote consistency across the 67 counties"); Pa. Dep't of State, *Pennsylvania Voting Guidance* (Oct. 21, 2020), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/PADOS _ProvisionalBallots_guidance_1.0.pdf (providing that a voter may vote

Even if notification practices varied county-to-county, such "[a]rguable differences in how election boards apply uniform statewide standards to the innumerable permutations of ballot irregularities … are to be expected," and do not present an equal-protection concern. *See Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) (rejecting equal-protection claim grounded in counties' widely varying approaches to accepting mail ballots without date or address fields fully completed). "Many courts … have recognized that counties may, consistent with equal protection, employ entirely different election procedures and voting systems within a single state." *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *44 (collecting cases). The mere absence of pure uniformity in election procedures across counties does not amount to a constitutional violation.

## IV.   Plaintiffs Have Not Pled and Could Not Plead a Due Process Claim.

Plaintiffs removed their due process claims from the First Amended Complaint, so their discussion of alleged due process violations by Defendants (*see* Opp. at 9-10) is irrelevant to this motion. In any event, their attempted resurrection of those claims is unavailing. Without citing any allegation in the Amended

---

provisionally if his or her absentee ballot is rejected). The Secretary's guidance is subject to judicial notice as an official government record, *see* Fed. R. Evid. 201; *In re Flickinger*, No. 1:09-BK-08739MDF, 2010 WL 4923933, at *2 (Bankr. M.D. Pa. Nov. 24, 2010), and the Secretary's September 11th guidance can also be considered because it is cited at length in the complaint and forms part of the basis for the Plaintiffs' allegations. Am. Compl. ¶ 88. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Complaint, Plaintiffs assert that Defendants purposefully excluded Republican observers from the canvass, Opp. at 9, and therefore "discriminat[ed] against Republican voters," *id.*  That is not what the Amended Complaint alleges. It does not allege that Democratic observers were provided with favored access. Nor does it allege that any county applied different rules to Republican and Democratic observers. Moreover, the Pennsylvania Supreme Court has now upheld the canvassing procedures of which Plaintiffs complain. *See* Opinion, *In re: Canvassing Observation*, No. 30 EAP 2020 (Pa. Nov. 17, 2020) (Exhibit 1). Defendants' canvass-watching procedures thus do not even amount to "garden variety election irregularities," *see Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998), let alone the kind of "fundamentally unfair" practice that could establish a due process violation.

*Marks v. Stinson*, a case involving "massive absentee ballot fraud," 19 F.3d at 888, has no application here because, as Plaintiffs' counsel conceded during the November 17, 2020 hearing, Plaintiffs have not alleged fraud in their Amended Complaint. And although ballot security is an important component of a free and fair election, "the Plaintiffs' preoccupation with the role of poll watchers to deter purported voter fraud disregards other aspects of the regulatory framework the Commonwealth designed to ensure ballot integrity and thus prevent vote dilution," *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 406 (E.D. Pa. 2016).  Indeed,

"there is no constitutional right to serve as a poll watcher." *Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d ----, 2020 WL 5997680, at \*71 (W.D. Pa. Oct. 10, 2020). Whether to allow poll watchers or canvass-observers is a matter of state discretion, not constitutional significance. Plaintiffs cannot transform their dissatisfaction with state-law into a Due Process violation.

## V.     The Eleventh Amendment Bars Plaintiffs' Claim.

Plaintiffs' opposition brief makes little attempt to explain how their requested relief comports with the Eleventh Amendment, and their expanded requests make it even more clear that they cannot. They assert that because they bring federal constitutional claims, the *Ex Parte Young* exception to sovereign immunity applies. Opp. at 31-32. That is wrong. Rather than rely on the federal labels affixed to the Amended Complaint, the Court should look to the content of those claims, which allege that Defendants failed to follow state law in administering the election, and Plaintiffs' requested relief, which asks that this Court issue an injunction directing a state official—the Secretary—to take action to remedy these perceived violations of state law. *See* Dkt. 144 at 12-14; *see also McMullen v. Maple Shade Twp.*, 643 F.3d 96, 98 (3d Cir. 2011); *Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015).

This Court lacks jurisdiction to provide that relief under the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

## VI. If Plaintiffs' Claims Are Not Dismissed, This Court Should Abstain Under *Pullman*.

The Pennsylvania Supreme Court's decision this week in *In Re: Canvassing Observation* illustrates the wisdom of abstention. There, the court clarified that while the Election Code permits a candidate's authorized representatives to remain in the room in which the absentee or mail-in ballots are being canvassed, it does not entitle those representatives to be situated close enough to canvassing board employees that they may inspect the ballot envelopes themselves. *See In Re: Canvassing Observation*, No. 30-EAP-2020, slip op. at 17; 25 P.S. § 3146.8(g)(2). Absent a right under Pennsylvania law to observe and inspect absentee and mail-in ballots, Plaintiffs' purported denial of access to verify the validity of mail ballots does not implicate any federal constitutional rights as Plaintiffs' opposition suggests. *See supra* at 16-17.[7]

To the extent Plaintiffs contend that county boards counted mail ballots with incomplete voter information—which once again is not pled in their Amended

---

[7] To be clear, Plaintiffs' First Amended Complaint does not even allege any constitutional violations based on the denial or limitations on access to the rooms where mail ballots were being canvassed; rather, the First Amended Complaint specifically removed all counts that were based on canvassing access. See Am. Compl. ¶¶ 150-70; *see also In re: Canvassing Observation*, at 9.

Complaint—each of those county board decisions is currently before state courts that will determine (or have already determined) their legality. *See, e.g.*, Order, *In Re: Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, Nos. 89-93 EM 2020 (Pa. Nov. 18, 2020) (granting application to consider whether county board must reject absentee ballots where voter signed ballots outer envelope "but did not handwrite their name, their address, and/or a date"). Putting aside the fact that Plaintiffs have not sufficiently alleged any equal protection violation with respect to the counting of these ballots, *Pullman* abstention is appropriate nonetheless because a resolution of this state law issue would substantially narrow any federal constitutional question—assuming Plaintiffs could ever raise one (they have not): if counting such ballots is lawful under Pennsylvania law, it certainly does not violate Plaintiffs' rights under the Equal Protection Clause, *see supra* at 11-15, or the Due Process Clause.

The conduct of elections in Pennsylvania and the application of the Election Code in tallying votes and certifying elections undoubtedly implicate matters of profound significance within the Commonwealth. Even if this Court had jurisdiction here, abstention would be appropriate given the significant state interests at play, the questions of state law which undergird Defendants' claims, and the clear, well-established state processes that Plaintiffs have attempted to bypass. *See* Dkt. 144 at 14-17; *see also Hamm v. Boockvar*, 600 MD 2020 (Pa. Commw. Ct. Nov. 3, 2020).

## VII.   Plaintiffs' Remedy Is Disproportionate to Their Purported Injury and Unconstitutional.

Plaintiffs continue to seek the most extreme form of relief: to disenfranchise and ignore the choices of millions of voters in Pennsylvania who cast a mail ballot during the November general election. This request is grossly disproportionate to the injury they assert, which, by Plaintiffs' admission, is limited to "vote denial," on the grounds that some voters had their mail ballots rejected without an opportunity to either cure their ballot or to cast a new ballot in its place. Am. Compl. ¶ 158 (alleging "voters like Mr. Henry, who received" no "notice of a defective mail-in ballot" had "their votes [] rejected as having been improperly cast and thus void"); Am. Compl. Prayer for Relief (demanding that the Court "prohibit[] the Defendant County Boards of Elections and Defendant Secretary Boockvar from certifying the results of the 2020 General Election in Pennsylvania on a Commonwealth-wide basis.").

Plaintiffs' requested remedy is so broad that it would prohibit certification of not only the presidential electors, but also the certification of every state elected official on the ballot—including for Attorney General, Auditor, State Treasurer, as well as all members of the General Assembly. During the hearing on Defendants' and Intervenors' motions to dismiss, Plaintiffs were unable to explain how disenfranchising 6.8 million Pennsylvanians "could possibly be justified," and their brief fares no better. Their inability to provide any support for this extreme remedy is unsurprising, because federal courts have repeatedly refused to throw out the

results of an election, even when plaintiffs have shown that genuine election administration errors have been made by election officials. *See Gamza v. Aguirre*, 619 F.2d 449, 454 (5th Cir. 1980) (explaining that improperly counted votes and maladministration of election was "not sufficient basis to set aside the election"); *Hennings v. Grafton*, 523 F.2d 861, 864-65 (7th Cir. 1975) (refusing to require election to be re-done where voting machines malfunctioned). Only in the most extreme circumstances have federal courts taken such drastic measures to prevent or delay the certification of election results, and only where the evidence establishes that there was a fundamental failure of the election process. *Stein v. Cortés*, 223 F. Supp. 3d 423, 438 (E.D. Pa. 2016) (collecting cases). Just as in *Stein*, Plaintiffs' requested relief "could well ensure that no Pennsylvania vote counts . . . [which] would be both outrageous and completely unnecessary." *Id.* at 442.[8]

Rather than temper their request, Plaintiffs have now doubled down on it, asking this Court to "declare Trump the winner." Opp. at 4. Plaintiffs offer no basis to suggest this Court can do so by judicial fiat, and there is none: the federal judiciary's role under Article III is to hear cases and controversies, not to declare the

---

[8] Plaintiffs' Opposition also fails to explain how their proposed remedies would not violate the constitutional rights of over six million Pennsylvanians. As the Supreme Court has repeatedly affirmed, the right to vote includes not only the right to cast a ballot, but also the right to have to have the ballot *counted*. *See Reynolds v. Sims*, 377 U.S. 533, 554 (1964); *United States v. Saylor*, 322 U.S. 385, 388 (1944). Indeed, it is precisely Plaintiffs' proposed remedies—not Plaintiffs' alleged injury—which raises true federal constitutional concerns.

winner of presidential contests.

Separately, Plaintiffs also now ask this Court for an order granting them the right to conduct a review of the "1.5 million mail ballots at issue," just days before the certification deadline, *id.*, despite the dearth of evidence to substantiate their confounding allegations of coordinated fraud, which again do not form the basis of any of the counts in their Amended Complaint. Their unprecedented request is simply an end run around the Commonwealth's election contest procedures—a remedy that is available to them under Pennsylvania law, *see* 25 P.S. § 3456, but requires petitioners to bring forth affidavits and point to specific evidence demonstrating why the election was illegal, *id.* § 3457. But speculation as to errors or fraud is not permitted. In *Pfuhl v Coppersmith*, for example, the petitioner sought to amend his election contest petition and "speculate[d] that a pervasive recount of all such previously unrecounted boxes would yield proportionate errors, and result in [contestant's] election." 253 A.2d 271, 275 (Pa. 1969). The Pennsylvania Supreme Court rejected the petitioner's request, explaining, "[t]he court will not grope in the dark, or follow a contestant on a fishing expedition, in the hope of being able to find enough to enable him by the investigation to make out his case." *Id.* (citation omitted).

If Plaintiffs believe they have a meritorious case, there are state law avenues to pursue them. But they cannot enlist a federal court in their quest to conduct a free-

wheeling audit of Pennsylvania's election. This fishing expedition must end.

## CONCLUSION

For the reasons stated herein, this Court should grant Intervenor DNC's motion to dismiss Plaintiffs' Amended Complaint.

Dated: November 19, 2020

Marc E. Elias*
Uzoma N. Nkwonta*
Lalitha D. Madduri*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
MElias@perkinscoie.com
UNkwonta@perkinscoie.com
LMadduri@perkinscoie.com
JGeise@perkinscoie.com

Respectfully submitted,

/s/ Uzoma N. Nkwonta

Clifford B. Levine (PA ID No. 33507)
Robert M. Linn (PA ID No. 44677)
Alex M. Lacey (PA ID No. 313538)
Kyle J. Semroc (PA ID No. 326107)
DENTONS COHEN & GRIGSBY P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Telephone: (412) 297-4998
Clifford.levine@dentons.com
Robert.linn@dentons.com
Alex.lacey@dentons.com
Kyle.semroc@dentons.com

Seth P. Waxman*
Ari Holtzblatt*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Seth.Waxman@wilmerhale.com
Ari.Holtzblatt@wilmerhale.com

*Counsel for Intervenor-Defendant DNC*

*\*Special Admission*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document, memorandum in support, and proposed order were electronically filed on November 19, 2020, via the Court's CM/ECF System, which will send notification of such filing to counsel of record for Plaintiffs.

/s/ Uzoma N. Nkwonta
Counsel for Intervenor-Defendant DNC