# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD J. TRUMP FOR PRESIDENT, INC. *et. al*,

                 Plaintiffs,

   v.

KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania; *et. al*,

                 Defendants.

No. 4:20-cv-**02078**-MWB

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ....................................................................1

II. BACKGROUND ...................................................................................8

III. LEGAL STANDARD ...........................................................................12

IV. THE COURT SHOULD ENJOIN CERTIFICATION. ...............................14

    A. PLAINTIFFS ARE LIKELY TO SUCCEED.....................................15

        **1. Defendants Violated the Equal Protection Clause to Favor Biden over Trump**........................................................18

        **2. Defendants Violated The Due Process Clause To Favor Biden over Trump In A System Which Was So Porous So As to Violate Due Process on Its Face**.................21

        **3. Defendants Violated the Electors Clause**.............................22

        **4. Defendants Should Bear the Burden of Proving the Mail Votes Were Legal, Given Their Exclusion of Trump and Republican Watchers From Observing the Canvassing and The Pennsylvania Supreme Court's Decision Declaring the Statute Which Allows Challenging Mail Ballots Invalid**............................................23

    B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF.....................................................24

    C. THE BALANCE OF HARMS FAVORS PLAINTIFFS....................25

    D. THE PUBLIC INTEREST IS FURTHERED BY ENTRY OF INJUNCTIVE RELIEF ..............................................................26

V. CONCLUSION...................................................................................27

CERTIFICATE OF SERVICE ....................................................................29

# Table of Authorities

*Barbour v. Gunn*,
   890 So.2d 843 (Miss. 2004) ............................................................................................ 25

*Bimbo Bakers USA, Inc. v. Botticella*,
   613 F.3d 102 (3d Cir. 2010) ........................................................................................... 13

*Bolden v. Potter*,
   452 So.2d 564 (Fla. 1984) .............................................................................................. 25

*Bonas v. Town of N. Smithfield*,
   265 F.3d 69 (1st Cir. 2001) ............................................................................................ 13

*Bush v. Gore*,
   531 U.S. 98 (2000) (per curiam) ...................................................... 3, 5, 12, 15, 16, 18, 23

*Bush v. Palm Beach Cty. Canvassing Bd.*,
   531 U.S. 70 (2000) ..................................................................................................... 16, 23

*Carson v. Simon*,
   2020 WL 6335967 (8th Cir. Oct. 29, 2020) .......................................................... 3, 7, 14
   cl. 2, of the United States Constitution .......................................................................... 16

*Colorado River Water Conservation Dist. v. U.S.*,
   424 U.S. 800 (1976) .......................................................................................................... 3

*Common Cause Georgia v. Kemp*,
   347 F.Supp.3d 1270 (N.D. Ga. 2018) ....................................................................... 12-13

*Council of Alternative Political Parties v. Hooks*,
   121 F.3d 876 (3d Cir. 1997) ....................................................................................... 26-27

*Darr v. Vill. of Tularosa*,
   962 P.2d 640 (Ct. App. N.M. 1998) ............................................................................... 24

*Duncan v. Poythress*,
   657 F.2d 691 (5th Cir. Sep. 1981) .................................................................................. 13

*Ex Parte Vines*,
   456 So.2d 26 (Ala. 1984) ................................................................................................ 25

*Fluker v. Wolff*,
   46 So. 3d 942 (Ala. 2010) ............................................................................................... 24

*Fres-Co Sys. U.S. v. Hawkins*,
   2016 U.S. Dist. LEXIS 199343 (E.D. Pa. Aug. 26, 2016) ............................................ 14

*Fres-Co Sys. United States v. Hawkins*,
   2016 U.S. Dist. LEXIS 199343 (E.D. Pa. Aug. 26, 2016) ............................................ 13

*Gray v. Sanders*,
   372 U.S. 368 (1963) ........................................................................................................ 20

*Griffin v. Burns*,
570 F.2d 1065 (1st Cir. 1978) ................................................ 12, 21, 22, 25

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
276 F.3d 160 (3d Cir. 2001) ........................................................... 15

*Hoblock v. Albany Cty. Bd. of Elections*,
422 F.3d 77 (2d Cir. 2005) ......................................................... 15, 22

*Holland v. Rosen*,
895 F.3d 272 (3d Cir. 2018) ............................................................ 14

*In re November 3, 2020 Gen. Election*,
2020 Pa. LEXIS 5560 (Pa. October 23, 2020) .................................. 11

*In re Revel AC, Inc.*,
802 F.3d 558 (3d Cir. 2015) ............................................................ 16

*Krieger v. Peoria*,
2014 U.S. Dist. LEXIS 117235 (D.Ariz. Aug. 22, 2014) .................. 15

*League of Women Voters of Ohio v. Brunner*,
548 F.3d 463 (6th Cir. 2008) ........................................................... 13

*Marks v. Stinson*,
19 F.3d 873 (3d Cir. 1994) .............................. 1, 2, 6, 12, 21, 22, 25

*Matter of Marafito v. McDonough*,
62 N.Y.S.3d 546 (App.Div. 3d Dep't) ............................................. 15

*McNally v. Tollander*,
302 N.W.2d 440 (Wis. 1981) ........................................................... 25

*McPherson v. Blacker*,
146 U.S. 1 (1892) ............................................................................ 16

*Miller v. Picacho Elem. Sch. Dist. No. 33*,
877 P.2d 277 (Ariz. 1994) ............................................................... 25

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*,
69 F. App'x 550 (3d Cir. 2003) ....................................................... 14

*Pa. Democratic Party v. Boockvar*,
238 A.3d 345 (Pa. 2020) .......................................................... 4, 9-10, 18

*Pierce v. Allegheny Cty. Bd. of Elections*,
324 F. Supp. 2d 684 (W.D. Pa. 2003) ......................................... 20, 27

*Pileggi v. Aichele*,
843 F. Supp. 2d 584 (E.D. Pa. 2012) ............................................... 13

*Pogue v. Grubbs*,
230 Ark. 805, 327 S.W.2d 4 (1959) ................................................. 24

iii

*Reese v. Duncan*,
    80 S.W.3d 650 (Tex.App. 2002) ............................................................... 25

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ............................................................................ 6, 21

*Singer Mgmt. Consultants, Inc. v. Milgram*,
    650 F.3d 223 (3d Cir. 2011) (en banc) ...................................................... 14

*Warf v. Bd. of Elections*,
    619 F.3d 553 (6th Cir. 2010) .................................................................. 24

*Wilkes-Barre Election Appeals*,
    1967 Pa. Dist. & Cnty. Dec. LEXIS 9 (Pa.Com.Pl. Luz. Cnty. Dec. 27, 1967) ................. 24

*Young v. Red Clay Consol. Sch. Dist.*,
    159 A.3d 713 (Del.Ch. 2017) .................................................................. 25

*Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) .............................................................................. 3

3 U.S.C. §5 ........................................................................................ 14

25 P.S. §3146.8 ............................................................................... 18,24

25 P.S. §3150.16 .................................................................................. 30

*25* Pa. Stat. Ann. §3146.8 ................................................... 15, 16, 18, 24

25 Pa. Stat. Ann. §3150.16 .......................................................... 14, 23, 30

25 Pa. Stat. Ann. §3150.17 ..................................................................... 25

## I.  PRELIMINARY STATEMENT

Plaintiffs seek a temporary restraining order and preliminary injunction to prevent Defendants from certifying the 2020 Presidential election.  While the First Amended Complaint is sufficient to sustain this relief, Plaintiffs again ask the Court to permit them to amend and base the sought relief on the proposed Second Amended Complaint.  Plaintiffs do not seek to enjoin the certification of any other Pennsylvania election.

Plaintiffs, *inter alia*, seek copies of and a process to inspect the outside envelopes that were canvassed and approved for counting to determine if the statutory requirements were met.  Plaintiffs have engaged a statistical expert to determine the number of ballots that were improperly counted based on statistically significant sampling.  This procedure of sampling and statistical analysis was approved by *Marks v. Stinson,* 19 F.3d 873 (3d Cir. 1994), which observed:

> Courts, with the aid of expert testimony, have been able to demonstrate that a particular result is worthy of the public's confidence even though not established solely by applying mathematics to the record evidence. *See e.g. Curry*, 802 F.2d at 1317-19.  What is required is evidence and an analysis that demonstrate that the district court's remedy is worthy of the confidence of the electorate.

---

[1] Exhibits are being separately filed. All emphases are added, and citations, quotation marks, footnotes, and brackets are omitted, unless otherwise stated.

*Id.*, at 889, f.n. 14.

This principle was applied by the District Court on remand in relying on statistical evidence in removing William Stinson and placing Bruce S. Marks in a Pennsylvania state Senate seat by excluding illegally cast mail-in ballots and finding Marks won the election. *See Marks v. Stinson,* 1994, U.S. District LEXIS 5273 (E.D. Pa. April 26, 1994). Instantly, if discovery is granted, prior to the hearing, Plaintiffs will examine these envelopes to determine the percentage of mail ballots that were illegally counted – of which Democratic Candidate Joseph Biden won approximately 75% and President Trump 25%, a 50% margin for Biden. Plaintiffs, through statistical expert analysis will then extrapolate this percent to the 1.5 million mail ballots. This simple exercise will determine whether Plaintiffs can prove their case – *i.e.*, that sufficient ***illegal*** ballots were counted that changed the election result.[2] If so, the Court should set aside these votes and declare Trump the winner.[3] In the interim, the certification should be stayed.

### Standard

This motion turns on the established preliminary injunction standard and the

---

[2] For example, if 10% of the 1.5 million mail ballots were improperly counted because they lacked signatures, dates, or inside security envelopes, 75% x 150,000 votes should be deducted from Biden, and 25% x 150,000 votes should be deducted from Trump, a margin of 75,000 votes for Biden which would be sufficient to overturn reported results.

[3] At a minimum, the Court should order the requested discovery. If the evidence is insufficient, Plaintiffs may withdraw their case, which would avoid the burden on this Court of deciding numerous legal issues.

federal Constitution. While deciding the injunctive relief questions may "involve the resolution of litigation challenging the constitutional authority of [state and county election officials … courts cannot avoid their responsibility merely 'because the issues have political implications.'" *Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012). Instead, "the Judiciary has a responsibility to decide cases properly before it." *Id.* at 194. Put simply, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction provided by Congress. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976).

The Constitution gives state legislatures the exclusive power to determine how states will appoint members of the electoral college. In Pennsylvania, electors are awarded to the winner of the state's popular vote. Accordingly, election officials must count every ***lawful*** ballot, while ensuring that every ***unlawful*** ballot is cast aside. *Carson v. Simon*, 2020 WL 6335967, *7 (8th Cir. Oct. 29, 2020). What distinguishes a lawful ballot from an unlawful one flows from Pennsylvania law. *Bush v. Gore,* 531 U.S. 98, 104 (2000) (*per curiam*) ("When the state legislature vests the right to vote for President in its people, the right to vote ***as the legislature has prescribed*** is fundamental."). Election officials have no discretion to depart from the legislatures' directives, and they must apply the ballot security and integrity requirements ***equally*** throughout the Commonwealth.

The Pennsylvania legislature recently amended its election procedures to

allow citizens to vote in person or by mail. After careful deliberation, the legislature retained and enumerated specific requirements for mail-in ballots, including (beyond the filled-out ballot), an inner secrecy envelope, a filled-out declaration, a signature, a date, and a complete address. Ballots that do not comply with these requirements are unlawful and must not be counted. The Pennsylvania Supreme Court so held before this election, rejecting the notion that these provisions were merely "directory" or that voters must be able to "cure" their ballots:

> To the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements . . . [developing a] procedure to alleviate that risk is one best suited for the Legislature. We express this agreement particularly in light of the open policy questions attendant to that decision, including what the precise contours of the procedure would be, how the concomitant burdens would be addressed, and how the procedure would impact the confidentiality and counting of ballots, all of which are best left to the legislative branch of Pennsylvania's government.

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020).

## Summary of Argument

*First,* in violation of Equal Protection, Defendant counties – in areas with overwhelmingly Democratic residents who were expected to vote by mail for Biden – violated state law by examining ballots before Election Day, determining that they were defective, and contacting voters weeks before Election Day, while Republican controlled counties were informed by Secretary Boockvar on October 21 that they could engage in such efforts only on the day of the election, during pre-

canvass.[4] Notably, the formal guidance the Secretary issued in no way authorized or suggested manipulation or analysis of mailed ballots prior to November 3 and in no way authorized or suggested communication with voters about the status of their mailed ballot prior to November 3.[5]

As a result, a voter with a defective ballot in the Democrat controlled Defendant counties was likely to be told in advance to cast a provisional ballot, while similarly situated voters in Republican controlled counties were not. Worse still, many of these same counties are seeking to count mail ballots that other counties have rejected, including those ballots with envelopes that fail to comply with the most basic requirements of Pennsylvania law. Indeed, this disparate treatment had – and was intended to have –a partisan effect. Where "the standards for accepting or rejecting contested ballots might vary … from county to county," they offend the Equal Protection Clause. *Bush v. Gore,* 531 U.S. at 106. These violations were not one-off decisions affecting a handful of ballots.

Tens of thousands of votes, if not more, were cast invalidly, and those invalid votes were counted contrary to Pennsylvania law. The Democratic officials who made these decisions targeted mail-in ballots and urban counties, both of which maximize votes in Biden's favor. They have done so to avoid rejecting unlawful

---

[4] *See* Jonathan M. Marks Email (Nov. 2, 2020) (Exh. 1).

[5] *See* Pennsylvania Provisional Voting Guidance (Oct. 21, 2020) (Exh. 2).

ballots would hurt their preferred candidate, Biden, stoked by reporting done after the primary.[6]  In any case, regardless of motivation, election officials have no discretion to treat voters differently or to count invalid ballots.

*Second,* if the Pennsylvania Supreme Court is correct that Pennsylvania law does not allow meaningful observation of the canvassing of mail ballots and the opportunity to object before they are opened and the ballots mixed together, discussed below, it is so porous that it violates basic due process regarding free and fair elections.  It is well settled that the "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).  This implicated due process.  *See Marks v. Stinson*, 19 F.3d 873, 888 (3d Cir. 1994) ("[R]ejection of a ballot where the voter has been effectively deprived of the ability to cast a legal vote implicates federal due process concerns.").

*Third,* various Democrat controlled county election boards implemented *ultra vires* procedures to cure defective ballots in order to favor Biden.  Even where ballots were not "cured," election boards flouted the requirements of the Election Code by counting ballots with no date, no signature, no address, or other deficiencies, again to favor Biden.   These executive actions violate the Electors Clause of the

---

[6] *See, e.g.*, Pam Fessler & Elena Moore, *More than 550,000 Primary Absentee Ballots Rejected in 2020, Far Outpacing 2016*, https://www.npr.org/2020/08/22/904693468/more-than-550-000-primary-absentee-ballots-rejected-in-2020-far-outpacing-2016 (Aug. 22, 2020) ("More than 37,000 primary ballots were also rejected in June in Pennsylvania, a state Trump won by just over 44,000 votes").

Constitution, which requires that "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors …." U.S. Const. art. II, §1, cl. 2 (emphasis added). Such behavior by "an executive branch official to negate the duly-enacted election laws of a state as they pertain to a presidential election is toxic to the concepts of the rule of law and fair elections." *Carson*, 2020 WL 6335967, at *7. Unless they can be unwound or proven immaterial, these violations of the Election Code and the Constitution render the outcome of the Pennsylvania election too uncertain to be certified.[7]

*In sum,* unless prevented from doing so, the Defendant Boards of Elections will certify to Defendant Secretary Boockvar, no later than November 23, 2020, results of an invalid and constitutionally infirm election process before this case can be heard on its merits. In turn, Secretary Boockvar will certify the Commonwealth-wide election results and Plaintiffs may be deprived not only of their constitutional rights but also of a meaningful remedy. Plaintiffs ask this Court for a stay to prevent this unjust outcome. Plaintiffs propose an expedited proceeding on the merits that will conclude before December 8, 2020, the statutory safe harbor date for appointing state electors. Under 3 U.S.C. §5, as long as Pennsylvania appoints its electors by that day, its slate "shall be conclusive, and shall govern in the counting of the electoral

---

[7] In light of *Bognet v. Secretary of the Commonwealth of Penn.*, --- F.3d ---, 2020 WL 6686120 (3d Cir. Nov. 13, 2020), Plaintiffs make this argument to preserve it for appellate review.

votes." If Plaintiffs do not prevail, Defendants will not suffer any harm. If Plaintiffs succeed, Defendants – which are all government entities – have no legitimate interest in certifying invalid election results.

## II.  BACKGROUND

### The Election Code

Pennsylvania law mandates that mail-in ballots meet detailed requirements. *See* 25 Pa. Stat. Ann. §3150.16. These include putting each ballot in an inner secrecy envelope, which shall then be placed in the second [envelope], on which is printed

> the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

*Id.*

After officials receive the mail-in ballots, the law requires them to "safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections." 25 Pa. Stat. Ann. §3146.8(a). Election officials may "pre-canvass" ballots "no earlier than seven o'clock A.M. on election day," but "[n]o person observing, attending or participating in a pre- canvass meeting may disclose the results of any portion of any pre-canvass meeting prior to the close of the polls." 25 Pa. Stat. Ann. §3146.8(g)(1.1). As a precaution, "[w]atchers shall be permitted to

be present when the envelopes containing official absentee ballots and mail-in ballots are *opened* and when such ballots are *counted* and recorded." 25 Pa. Stat. Ann. §3146.8(b) (emphasis added). Working together, these provisions ensure that mail-in ballots are not manipulated, tampered with, or even inspected until election day; that no one can *open* or *count* ballots without a poll watcher present; and that even if someone pre-canvasses a ballot on election day, no one can be told "the results" of that pre-canvass until polls close.

Secretary Boockvar has long advocated state officials should count more mail ballots than the law allows. For instance, on September 28, 2020, she issued guidance to the County Boards of Elections that mail-in and absentee ballots returned without inner secrecy envelopes should be counted.[8] That guidance directly contradicted the mandatory language in Pennsylvania's Election Code, which is why the Pennsylvania Supreme Court struck it. *See Pa. Democratic Party*, 238 A.3d 345 (Pa. 2020) ("[T]he Legislature intended for the secrecy envelope provision to be mandatory.").[9]

Despite the clear commands of the Election Code, she and the other

---

[8] *See* Guidance Concerning Civilian Absentee and Mail-in Ballot Procedures, 9/28/2020, Boockvar Dep. Ex. 11 (Exh. 3).

[9] The law could not have been clearer on this point: "If any of the [secrecy] envelopes . . . contain any text, mark or symbol which reveals the identity of the elector, the elector's political affiliation or the elector's candidate preference, the envelopes and the ballots contained therein **shall** be set aside and declared void." 25 Pa. Stat. Ann. §3146.8(g)(4)(ii) (emphasis added).

Defendants systematically disregarded key ballot integrity and security measures associated with mail-in votes. Specifically, the Philadelphia County Elections Board issued a "Cancelled Ballot Notification" providing that voters whose ballots were cancelled (including those "returned without a signature on the declaration envelope" or "determined to lack a secrecy envelope"), would receive notice *before* Election Day. First Amended Complaint ("**FAC**") ¶127 (Exh. 4).[10]This involved inspecting the ballots before Election Day, disclosing the results of that inspection before Election Day, and allowing voters to cure their defective ballot. FAC ¶¶ 127-128 (Exh. 4).

All of this was illegal and was done without allowing poll watchers access. The Defendant County Election Boards nonetheless permitted it. *Id.* ¶136. As the Complaint details, poll watchers in Allegheny, Centre, Philadelphia, and Delaware Counties were not allowed to observe as ballots were reviewed for sufficiency, opened, counted, or recorded. FAC ¶¶ 134-138 (Exh. 4). Sometimes, this was because no poll watchers were permitted at all. Other times poll watchers were permitted for only some periods, or were required to stand so far away that they could not tell which ballots were improperly counted. County boards have continued ignoring Pennsylvania law, and some have just days ago voted to count thousands of

---

[10] *See also* Web Archive, Cancelled Ballot Notification Information, Philadelphia City Commissions (Nov 1, 2020) (Exh. 11).

ballots with incomplete addresses, no signature, and other deficiencies.[11]

## Pennsylvania Supreme Court Decisions

Subsequent to the filing of the original Complaint, the Pennsylvania Supreme Court ruled in a five to two partisan decision that parties and candidates have no right to observe the canvassing of mail ballots. *In re Canvassing Observation*, No. 30 EAP 2020 (Pa. Nov. 17, 2020). This inexplicable decision denying the right of meaningful observation was on the heels of *In re November 3, 2020 Gen. Election*, 2020 Pa. LEXIS 5560 (Pa. October 23, 2020) which *sua sponte* declared that the provision of the Pennsylvania election code which provided for challenging mail ballots by observers on election day, 25 P.S. 3146.8(f), was invalid. As a result of these last minute decisions on the eve of the Presidential election, Pennsylvania no longer allows meaningful observation or challenges to mail ballots which do not comply with Pennsylvania law before they are mixed with other ballots and opened. It is hard to imagine an election scheme which is more porous and violative of Due Process than this – ballots mixed, opened, and counted without any ability to trace them without observation and challenge.

---

[11] *See* Meeting of the Commissioners of Elections (Nov. 9, 2020) (Exh. 5) (Philadelphia County voted to count many thousands with no date, street address, or printed name); Election Day Updates (Nov. 12, 2020) (Exh. 6) (Allegheny County voted to count thousands of undated ballots) (Exh. 7); In Re: Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election, ¶¶ 22–23 (Exh. 7) (Bucks County voted to count ballots with no date and others with no printed name or address, a mismatched address, or other errors).

Under *Bush v. Gore,* 531 U.S. at 98, this Court may independently interpret Pennsylvania law or not sustain this decision which altered the law in the middle of a presidential election. Alternatively, if the Court accepts this decision, Pennsylvania law is so porous in not allowing the observation and challenging of mail ballots that it violates basic due process regarding free and fair elections. *See Marks v. Stinson*, 19 F.3d at 887 (due process violation from "massive absentee ballot fraud, deception, intimidation, harassment and forgery, [and] many of the absentee votes were tainted"); *Griffin v. Burns*, 570 F.2d 1065, 1074-79 (1st Cir. 1978) (due process violation in refusal to count absentee and shut-in ballots state officials had offered to voters); *Common Cause Georgia v. Kemp*, 347 F.Supp.3d 1270, 1293-99 (N.D. Ga. 2018) (for due process violation, granting injunctive relief to "ensure that provisional ballots cast by eligible registered voters … [were] properly counted" based on "statistical evidence as well as additional sworn declarations of poll watcher and voters" and extending certification deadline two days to allow for ballot counting).[12]

## III. LEGAL STANDARD

---

[12] *See also League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008) (sustaining due process challenge where "voters were denied the right to vote because their names were missing from the rolls," "[p]oll workers improperly refused assistance to disabled voters," and "[p]rovisional ballots were not distributed to appropriate voters"); *Bonas v. Town of N. Smithfield*, 265 F.3d 69 (1st Cir. 2001) (due to failure to hold election required by town charter "disenfranchisement of the electorate" in violation of due process"); *Duncan v. Poythress*, 657 F.2d 691 (5th Cir. Sep. 1981) ( refusal to call special election required by state law due process violation).

A temporary restraining order "is a stay put, equitable remedy that has [as] its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation.'" *Fres-Co Sys. United States v. Hawkins*, 2016 U.S. Dist. LEXIS 199343, at *3, n.1 (E.D. Pa. Aug. 26, 2016) (internal quotations and citations omitted). The temporary restraining order standard mirrors the familiar test for a preliminary injunction. *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012). A movant need only demonstrate "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakers USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).

A sufficient showing on the first two factors can suffice:

As a court sitting in equity, the District Court's task was to weigh the four factors, but it was not incumbent on [movant] to prevail on all four factors, only on the overall need for an injunction. A sufficiently strong showing on either the likelihood of success or irreparable harm may justify an injunction, though a petitioner's showing on the other factors may be lacking.

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 F. App'x 550, 554 (3d Cir. 2003).

The first factor – "likelihood of success" – means "a reasonable chance, or probability, of winning" but it "does not mean more likely than not." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (*en banc*). The

second factor – "irreparable harm" – requires Plaintiffs to show "that [they are] more likely than not to suffer irreparable harm in the absence of preliminary relief." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018) (*quoting Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)). "[I]t is well-established that harm is irreparable when it cannot be adequately compensated in damages, either because of the nature of the right that is injured, or because there exists no certain pecuniary standards for the measurement of damages." *Fres-Co Sys. U.S. v. Hawkins*, 2016 U.S. Dist. LEXIS 199343, *3, n.1 (E.D. Pa. Aug. 26, 2016)). In the election context, "'[t]he counting of votes that are of questionable legality … threaten[s] irreparable harm.'" *Carson*, 2020 WL 6335967, at *7 (*quoting Bush v. Gore,* 531 U.S. at 104).

## IV.    THE COURT SHOULD ENJOIN CERTIFICATION.

Plaintiffs demonstrate all four elements for equitable relief. "When the state legislature vests the right to vote for President in its people, the right to vote ***as the legislature has prescribed*** is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter." *Bush v. Gore,* 531 U.S. at 104 (emphasis added). The evidence here shows not only that Defendants failed to administer the 2020 General Election in compliance with the manner prescribed by the legislature, but also that Defendants violated Plaintiffs' equal protection rights. Unless Defendants are enjoined from certifying the results, Plaintiffs may be left with no remedy because Pennsylvania's

electoral votes for President and Vice President may be awarded to someone else.[13]

## A. PLAINTIFFS ARE LIKELY TO SUCCEED

To make out this first factor, "the plaintiff need only prove a *prima facie* case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). The Third Circuit has held that "a sufficient degree of success for a strong showing exists if there is a 'reasonable chance, or probability, of winning.'" *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir. 2015) (quoting *Singer*, 650 F.3d 223). Plaintiffs have made that showing based on the allegations in the Verified Complaint.

In short, Defendants violated the Equal Protection Clause, Due Process Clause and Electors Clauses of the Constitution by counting votes that were unlawful under the Pennsylvania Election Code. Article II of the Constitution provides that the rules for Presidential elections be established by each state "in such Manner as the

---

[13] Arguably, this Court may have the power to decertify the electors up to the meeting of the Electoral College on December 14, 2020. *See, e.g., Matter of Marafito v. McDonough*, 62 N.Y.S.3d 546, 547 (App.Div. 3d Dep't) (affirming "enjoin[ing] the … county board of elections from certifying certain … candidates for various public offices" where state "failed to comply with the provisions of the Election Law and its own party rules …"); *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 98 (2d Cir. 2005), *aff'd in relevant part,* 422 F.3d 77 (2d Cir. 2005) ("[W]hen election officials refuse to tally absentee ballots that they have deliberately (even if mistakenly) sent to voters, such a refusal may violate the voters' constitutional rights."); *Krieger v. Peoria*, 2014 U.S. Dist. LEXIS 117235, *10-15 (D.Ariz. Aug. 22, 2014) (granting TRO and holding that Defendants shall not count certain votes and, instead, shall hold a special election where "plaintiffs have shown a likelihood of success on the merits of their constitutional claims …. [b]ecause an election based in part on incomplete ballots that omit a candidate's name [is] fundamentally unfair"). Plaintiffs are unaware of any cases addressing this Constitutional point.

Legislature thereof may direct." U.S. Const. art. II §1, cl. 2. Where, as here, the legislature has enacted a specific election code, "the clearly expressed intent of the legislature must prevail." *Bush v. Gore,* 531 U.S. at 120 (Rehnquist, C.J., concurring). If the constitutional text were not enough, a Supreme Court majority has explained that it would not defer to a state *court's* interpretation of an election code because a law "enacted by a state legislature applicable not only to elections to state offices, but also to the selection of Presidential electors" is a federal constitutional question "under Art. II, §1, cl. 2, of the United States Constitution." *Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70, 76 (2000).[14] The facts here are even stronger, since election officials disregarded the Pennsylvania Supreme Court *and* the Pennsylvania legislature.

Beginning with the enacted text, Pennsylvania law mandates that mail-in ballots meet detailed requirements. *See* 25 Pa. Stat. Ann. §3150.16. These include a secrecy envelope, which

> shall then be placed in the second [envelope], on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

---

[14] This view is not novel. *See McPherson v. Blacker*, 146 U.S. 1, 25 (1892) (explaining that "the words, 'in such manner as the legislature thereof may direct' … operat[e] as a limitation upon the state in respect of any attempt to circumscribe the legislative power").

*Id.* These are not mere exhortations. Shall means shall, the requirements are mandatory, and ballots that fail to meet them should not be counted. There is every reason to believe the number of non-compliant ballots is in the tens of thousands. More than 37,000 mail-in ballots were rejected under these rules in the primary, which had far fewer voters. State officials have not clearly explained how many ballots were rejected in the general election, but it appears to be a far lower rejection rate. And as noted *supra*, Defendants have agreed to count thousands of invalid ballots under the plain and unambiguous text of the Election Code.

There is no question that Defendants have counted, and continue to count, thousands of invalid ballots. The only question is how many. Plaintiffs' motion seeks a short period to gather evidence about the magnitude of the violations. Secretary Boockvar issued guidance that election officials could "cure" defective ballots, even though no provision of law authorizes this practice, which the Pennsylvania Supreme Court found dispositive. *See Pa. Democratic Party*, 238 A.3d at 345. For example, Philadelphia County informed mail-in or absentee voters that they had failed to include an inner secrecy envelope, and to do this, Philadelphia County had to inspect the mail- in ballots before election day—in plain violation of state law, *see* 25 P.S. §3146.8(a) ("keep the ballots in sealed or locked containers") – and then had to tell someone the results of that inspection – violating another provision, *see* 25 Pa. Stat. Ann. §3146.8(g)(1.1) (cannot "disclose the results of any portion of any pre-canvass

meeting prior to the close of the polls").[15] *See* Complaint ¶¶ 132–34 (Exh. 4). Each ballot that was "cured" by this method was triply unlawful, because advance inspection is illegal, advance-disclosure is illegal, and curing itself is illegal. All such votes were unlawful to count.[16]

Certain counties further allowed ballots to be counted that had, for example, no date, no address, or no printed name. *See* Exhs. 5–7. Plaintiffs have sought the cooperation of Defendants and will seek the assistance of this Court if necessary for obtaining straightforward discovery on how many ballots were rejected, as well as conducting simple cross-checks to determine how many compliant secrecy envelopes – which by law should be preserved[17] – exist to compare to the number of counted mail-in ballots.

### 1. Defendants Violated the Equal Protection Clause to Favor Biden over Trump

---

[15] Defendants' actions also violated 25 Pa. Stat. Ann. §3146.8(b), which allows watchers "to be present when the envelopes . . . are opened and when such ballots are counted and recorded." Weighing the ballots, holding them up to lights, or other methods to discern defects triggers the requirement to allow watchers.

[16] Of course, there is nothing improper about not counting improperly cast votes. Only legal votes should be counted. *Cf. Bush v. Gore*, 531 U.S. at 119 (Rehnquist, C.J., concurring) ("No reasonable person would call it 'an error in the vote tabulation,' FLA. STAT. §102.166(5), or a 'rejection of legal votes,' FLA. STAT. §102.168(3)(c), when electronic or electromechanical equipment performs precisely in the manner designed, and fails to count those ballots that are not marked in the manner that these voting instructions explicitly and prominently specify.").

[17] "All official mail-in ballots, files, applications for ballots and envelopes on which the executed declarations appear and all information and lists are designated and declared to be public records and shall be safely kept for a period of two years . . . ." 25 Pa. Stat. Ann. §3150.17.

While counties have leeway to conduct elections somewhat differently from each other, no county can constitutionally apply different standards to determine which ballots were lawfully cast, let alone with the intent to favor Biden over Trump. Doing so violates the Equal Protection Clause by making ballots more likely to count only in certain counties. In Philadelphia County, for example, election officials examined ballots in advance of Election Day, identifying those that might be rejected. Complaint ¶¶ 132–35 (Exh. 4). Many voters there who made small errors were told ahead of time to cast a provisional ballot on Election Day.[18] By contrast, most counties followed Secretary Boockvar's October 21 guidance and did not erect such an illegal voter "assistance" program.[19]

Differences in curing is far from the only unlawful disparity. Some counties – but not all – counted ballots with no signatures, no dates, or an incomplete address. *Compare* Complaint ¶136 ("Defendant County Boards of Elections permitted" this); *with* ¶136 ("Lancaster, York, Westmoreland and Berks Counties … did not") (Exh. 4). Some counties properly segregated ballots that were received after election day, while others improperly commingled them. Complaint ¶151 (Delaware County)

---

[18] *See, e.g*., Hetak Decl. (Exh. 15); Murray Decl (Exh. 12).

[19] *See, e.g.*, Chew Decl. (Exh. 16); Leinbach Decl. (Exh. 17).On November 2 at 8:38 pm Deputy Secretary Jonathan Marks sent a general email suggesting that such contacts occur "during the pre-canvass" (meaning on election day). Jonathan M. Marks Email (Nov. 2, 2020) (Exh. 1). In no way did this email suggest it was legal to manipulate or tamper with mail-in ballots prior to election day to determine their validity and offer voters advice on provisional voting.

(Exh. 4). Which group a voter is in depended entirely on what county he or she voted in.

As the General Election was a Commonwealth-wide election, the voting process across the Commonwealth was required to be consistent and the voters treated similarly. *Gray v. Sanders*, 372 U.S. 368, 379 (1963). Accordingly, if "different standards have been employed in different counties across the Commonwealth of Pennsylvania to determine whether an absentee ballot should be counted, that "disparate treatment implicates the equal protection clause because uniform standards will not be used statewide to discern the legality of a vote in a statewide election." *Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 699 (W.D. Pa. 2003). "Voters in [Philadelphia] County who take advantage of [D]efendant[s'] policy of" notice and cure "may be afforded greater voting strength than similarly-situated voters in [other counties]." *Id.* Government conduct designed to favor one candidate over the other – which conduct also contravenes state law – violates the Due Process and Equal Protection clauses under *Reynolds v. Sims*, 377 U.S. 533 (1964), and *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994).

Here, not only would lawfully cast votes be diluted, but the votes of residents of certain counties would be counted while votes of similarly situated residents in other counties would not. Defendant counties that offered an opportunity to cure deficient mail-in and absentee ballots, or otherwise counted unlawful ballots that

other counties rejected, denied Pennsylvanian voters the equal protection of the laws. There is no persuasive or legal basis for this disparate treatment. Plaintiffs have adequately demonstrated their likelihood of success.

> **2.** **Defendants Violated The Due Process Clause To Favor Biden over Trump In A System Which Was So Porous So As to Violate Due Process on Its Face**

"[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote." *Reynolds*, 377 U.S. at 555. Due process is be implicated "[i]f the election process itself reaches the point of patent and fundamental unfairness." *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978). *See also Marks v. Stinson*, 19 F.3d at 888 ("[R]ejection of a ballot where the voter has been effectively deprived of the ability to cast a legal vote implicates federal due process concerns.").

Numerous decisions have sustained due process challenges to elections involve documented instances of improperly cast ballots and the failure to properly count cast ballots. *See Marks*, 19 F.3d at 887 (due process violation from "massive absentee ballot fraud, deception, intimidation, harassment and forgery," and "many of the absentee votes were tainted"); *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 98 (2d Cir. 2005) ("election officials refus[al] to tally absentee ballots … may violate the voters' constitutional rights."); *Griffin*, 570 F.2d at 1074 (due process violation where state refused to count "the absentee and shut-in ballots that state

officials had offered to the voters"); *Krieger v. Peoria, City of*, 2014 U.S. Dist. LEXIS 117235, at *16 (D. Ariz. Aug. 22, 2014) ("an election based in part on incomplete ballots … likely violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment.")

Here, if the Pennsylvania Supreme Court is correct that Pennsylvania law does not allow meaningful observation of the canvassing of mail ballots and the opportunity to object before they are opened and the ballots mixed together, it is so porous that it violates basic due process regarding free and fair elections.

### 3. Defendants Violated the Electors Clause

Defendants violated the Constitution by counting votes that were unlawful under the Pennsylvania Election Code. Article II of the Constitution provides that the rules for Presidential elections be established by each state "in such Manner as the Legislature thereof may direct." U.S. Const. art. II § 1, cl. 2. Where, as here, the legislature has enacted a specific election code, "the clearly expressed intent of the legislature must prevail." *Bush v. Gore*, 531 U.S. at 120 (Rehnquist, C.J., concurring). *See also Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70, 76 (2000) (Court would not defer to a state court's interpretation of an election code because a law "enacted by a state legislature applicable not only to elections to state offices, but also to the selection of Presidential electors" is a federal constitutional question "under Art. II, § 1, cl. 2, of the United States Constitution.").

In this case, state election officials disregarded the Pennsylvania Supreme Court and the Pennsylvania General Assembly. Pennsylvania statute mandates the mail-in ballots meet detailed requirements, such as use of a secrecy envelope that shall be securely sealed and sent via mail or delivered in person to the county election board. 25 P.S. §3150.16. The number of noncompliant ballots likely numbers in the tens of thousands—more than 37,000 mail-in ballots were rejected under these rules in the primary, which had far fewer voters. Plaintiffs seek a short period of time to gather evidence about the magnitude of the violations.

> **4.      Defendants Should Bear the Burden of Proving the Mail Votes Were Legal, Given Their Exclusion of Trump and Republican Watchers From Observing the Canvassing and The Pennsylvania Supreme Court's Decision Declaring the Statute Which Allows Challenging Mail Ballots Invalid**

Defendants excluded Trump and Republican watchers from meaningfully observing the canvassing, thereby ensuring that Plaintiffs would not have immediate means of showing the legal *vis-à-vis* illegal votes. Even worse, the Pennsylvania Supreme Court held that there is no right to meaningful observation, *In Re Canvassing Observation,* and there is right to object to deficiencies on mail ballots before they are opened and counted, *In Re November 3 General Election.* On its face, this system is so porous as a matter of law to violate Due Process under *Reynolds, Griffin*, and *Marks.*   In this situation, Defendants should have the burden of proving the mail votes were legal.  *See, e.g.*, *Warf v. Bd. of Elections*, 619 F.3d 553, 561-62

(6th Cir. 2010) ("once the contestant has made a showing of irregularity, … contestee must then come forward with evidence of substantial compliance with balloting procedures"); *Wilkes-Barre Election Appeals*, 1967 Pa. Dist. & Cnty. Dec. LEXIS 9, *16 (Pa.Com.Pl. Luz. Cnty. Dec. 27, 1967) (concluding that where "challenger has presented a *prima facie* case to substantiate his challenge [to absentee ballot,] … the burden of proof shifted to the voter to establish her position.").[20]

### B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF

The irreparable nature of the harm to the Plaintiffs is apparent. If the Pennsylvania vote count – including unlawful ballots – is certified, the votes will be awarded to Democratic Candidate Biden. Plainly, there is no adequate remedy at law if this occurs. If Plaintiffs could later prove that the election was invalid, unfair, unequally administered, and included the tabulation of unlawful mail-in ballots, their victory would be worse than Pyrrhic.[21]

---

[20] *See, e.g., Pogue v. Grubbs*, 230 Ark. 805, 808, 327 S.W.2d 4, 5-6 (1959) (where contestant made a prima facie "showing that said votes were illegally cast … this shifted the burden to [contestee] to show their validity"); *Fluker v. Wolff*, 46 So. 3d 942, 955 (Ala. 2010) (if "party seeking to have a vote excluded [makes] a prima facie showing that the vote was illegally cast", "the burden then shifted … [to the opponent] to present evidence indicating that … [the] vote was legally cast."); *Darr v. Vill. of Tularosa*, 962 P.2d 640, 643 (Ct. App. N.M. 1998) (once contestant makes a prima facie showing of failure to substantially comply with "provisions of the Municipal Election Code which protect the secrecy and sanctity of the ballot," "burden shifts to the party seeking to sustain the election, who must prove that no fraud, intimidation, coercion or undue influence was exerted …, and that the secrecy and purity of the ballot was safeguarded and no intentional evasion of the substantial requirements of the law was made.").

[21] While, arguably, the Court could decertify the election after electors are appointed, this is Constitutionally uncharged ground. Numerous cases sustain decertification as a remedy. *See, e.g.,*

## C.   THE BALANCE OF HARMS FAVORS PLAINTIFFS

The balance of harms favors Plaintiffs. Plaintiffs seek a short stay, and in no events past December 8, to preserve the status quo while this case proceeds. Defendants will bear little harm so long as they certify by December 8, the federal safe-harbor date. If Defendants prevail by or before that date, the same electors will be appointed with ample time to vote in the Electoral College. If Plaintiffs prevail, it can only be because Defendants had no legitimate interest in certifying a constitutionally flawed outcome. Either way, Defendants will not suffer harm from a slight delay. By contrast, Plaintiffs could lose their opportunity for meaningful relief entirely if the vote total is certified, since it is not clear what remedies would remain after that point. "How strong a claim on the merits is enough depends on the

---

*Marks v. Stinson*, 19 F.3d at 887 (upholding district court order invalidating election tainted by "massive absentee ballot fraud, deception, intimidation, harassment and forgery"); *Griffin*, 570 F.2d at 1077 ("There is precedent for federal relief where broad-gauged unfairness permeates an election…."); *Kreiger*, 2014 U.S. Dist. LEXIS 117235, *15-16 (enjoining defendants from counting votes and ordering new election where the "fundamental unfairness [was] more than isolated…. [T]he defective ballots in this case were mailed to approximately one-half of voters."); *Young v. Red Clay Consol. Sch. Dist.*, 159 A.3d 713, 784-85 (Del.Ch. 2017) ("When the misconduct is widespread or systematic, courts are more likely to determine that the election was void."); *Ex Parte Vines*, 456 So.2d 26, 28 (Ala. 1984) (ordering new election); *Miller v. Picacho Elem. Sch. Dist. No. 33*, 877 P.2d 277, 279 (Ariz. 1994) (invalidating election where there were "substantial irregularities"); *Bolden v. Potter*, 452 So.2d 564, 567 (Fla. 1984) (invalidating election where the "fraud … was not inconsequential. It was blatant and corrupt and it permeated a substantial part of the absentee-election process."); *Barbour v. Gunn*, 890 So.2d 843, 847-48 (Miss. 2004) (ordering partial revote where the "problems [were] not 'technical'; an entire sub-precinct was not allowed to vote."); *McNally v. Tollander*, 302 N.W.2d 440, 445 (Wis. 1981) (invalidating election where the "substantial" number of voters – approximately 40% of electorate – were denied ballots); *Reese v. Duncan*, 80 S.W.3d 650 (Tex.App. 2002) (affirming declaring election void and ordering a new election in case with various voting irregularities).

balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Reilly*, 858 F.3d at 179 (*quoting Hoosier Energy Rural Elec. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). The low costs on Defendants and high potential harm to Plaintiffs make this a case with substantial "net harm an injunction can prevent."

### D. THE PUBLIC INTEREST IS FURTHERED BY ENTRY OF INJUNCTIVE RELIEF

The Third Circuit has recognized that the protection of the voting and associational rights of political parties, their candidates, and their potential supporters is an important right that meets the public interest test for injunctive relief. *See Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883-84 (3d Cir. 1997). Plaintiffs' challenge is important to all those who will vote in Pennsylvania's elections in the future. "[G]ranting the preliminary injunction is in the public interest [T]he United States Supreme Court has observed: '[t]he idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government.'" *Pierce*, 324 F. Supp. 2d at 707 (quoting *Moore v. Ogilvie*, 394 U.S. 814, 819 (1969)). The votes of those in counties with looser Election Code enforcement "are no more important than those of any other voter" and "[b]ecause of the importance that each elector's vote count to the same extent as other electors in other counties, it is in the public interest to grant a limited

26

preliminary injunction." *Id.*

## V. CONCLUSION

Extensive evidence exists that Defendants mis-administered the 2020 General Election in such a disastrous manner that they violated the Equal Protection Clause and structural guarantees of our Constitution. Defendants did so to favor Biden over Trump. Defendants seemingly went out of their way to avoid complying with the Pennsylvania legislature's election code. And Defendants blocked Plaintiffs' attempts to meaningfully observe and document their actions at almost every turn. This maladministration reached the point of patent and fundamental unfairness and evidences an intentional attempt by Defendants to jeopardize both the ability of Pennsylvanians to select their leaders and the constitutional rights of Plaintiffs. If this Court does not act to restrain Defendants from certifying the results of this mal-administered election, Plaintiffs will be without a way to remedy the severe, innumerable constitutional violations.

Respectfully submitted:

Dated: November 19, 2020

*/s/ Rudolph William Giuliani*
Rudolph William Giuliani
NY Supreme Court ID No. 1080498

*/s/Marc A. Scaringi*
Marc A. Scaringi
marc@scaringilaw.com
PA Supreme Court ID No. 88346

Brian C. Caffrey
brian@scaringilaw.com
PA Supreme Court ID No. 42667
Scaringi Law
2000 Linglestown Road, Suite 106
Harrisburg, PA 17110
717-657-7770 (o)/ 717-657-7797 (f)

*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that this 19th day of November, 2020, I filed a copy of

the foregoing

**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF RENEWED MOTION FOR
TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

which will serve all parties registered to receive same.

*/s/Marc A. Scaringi*
Marc A. Scaringi
marc@scaringilaw.com
PA Supreme Court ID No. 88346
Brian C. Caffrey
brian@scaringilaw.com
PA Supreme Court ID No. 42667
Scaringi Law
2000 Linglestown Road, Suite 106
Harrisburg, PA 17110
717-657-7770 (o)/ 717-657-7797 (f)

*Counsel for Plaintiffs*