# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD J. TRUMP FOR
PRESIDENT, INC., *et al.*,

   Plaintiffs,

  v.

KATHY BOOCKVAR, in her capacity
as Secretary of the Commonwealth of
Pennsylvania, *et al.*,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 4:20-cv-02078-MWB

Judge Matthew W. Brann

## SECRETARY OF THE COMMONWEALTH KATHY BOOCKVAR'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION .................................................................................. 1

I.  Plaintiffs Lack Standing and Therefore This Court Lacks Jurisdiction To Consider Plaintiffs' Motion ................................................ 2

II.  This Court Lacks Jurisdiction Under *Rooker-Feldman* ....................... 7

III.  Plaintiffs Have Not Satisfied Any of the Requirements for Preliminary Injunctive Relief ............................................................ 11

    A.  Plaintiffs Have No Reasonable Probability of Success ............. 11

    B.  Plaintiffs Failed To Establish Immediate and Irreparable Harm ......................................................................................... 20

    C.  The Equities and Public Interest Weigh Against Injunctive Relief ........................................................................ 22

    D.  Plaintiffs Have Not Established a Clear Right to a Preliminary Injunction ............................................................ 24

CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

*AT&T Commcs. of New Jersey, Inc. v. Verizon New Jersey, Inc.*, 270 F.3d 162 (3d Cir. 2001) ............................................................................................ 3

*Banfield v. Cortes,* 922 A.2d 36, (Pa. Cmwlth. 2007) ............................................ 22

*Benner v. Wolf,* 461 F. Supp. 3d 154, (M.D. Pa. 2020) ........................................ 11

*Bognet v. Secretary of the Commonwealth of Pa.*, --- F.3d ---, No. 20-3214, 2020 WL 6686120 (3d. Cir. Nov. 13, 2020) ........................ 2, 3, 4, 5, 6, 7, 15, 19

*Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172 (3d Cir. 1990) ........................ 25

*Brennan v. William Patterson Coll.*, 492 F. App'x 258 (3d Cir. 2012) .................. 7

*Burson v. Freeman*, 504 U.S. 191 (1992) ............................................................. 23

*Bush v. Gore,* 531 U.S. 98 (2000) ................................................................... 13, 14

*In re Canvassing Observation Appeal*, No. 30 EAP 2020, 2020 WL 6737895 (Pa. Nov. 17, 2020) .......................................................................................... 9, 19

*Clapper v. Amnesty Int'l. USA*, 568 U.S. 398 (2013) ............................................. 2

*Conklin v. Anthou*, No. 1:10-cv-2501, 2012 WL 124989 (M.D. Pa. Jan. 17, 2012) ........................................................................................................... 10

*Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351 (3d Cir. 1980) ............... 21

*Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp.3d---, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ........................................... 14, 15, 16, 18

*Donald J. Trump for President v. Bullock*, --- F. Supp. 3d ---, 2020 WL 5810556 (D. Mont. Sept. 30, 2020) ................................................. 16

*ECRI-McGraw Hill, Inc.*, 809 F.2d 223 (3d Cir. 1987) ........................................ 21

*In re Gen. Election Nov. 6, 1971*, 296 A.2d 782 (Pa. 1972) ................................. 18

*Groupe SEB USA, Inc. v. Euro-Pro Operating, LLC*, 774 F.3d 192 (3d Cir. 2014) ............................................................................ 11

*ITT Corp. v. Intelnet Int'l*, 366 F.3d 205 (3d Cir. 2004) ......................... 7

*Jackman v. Rosenbaum Co.*, 260 U.S. 22 (1922) ................................... 17

*In re Luzerne Cnty. Returns Bd.*, 290 A.2d 108 (Pa. 1972) ................... 18

*Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994) ............................... 14, 15

*Martin v. Keitel*, 205 F. App'x 925 (3d Cir. 2006) ............................ 12

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ...................................... 11

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ................ 18

*Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) .......... 16

*Niken v. Holder*, 556 U.S. 418 (2009) ............................................... 22

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer*, 290 F.3d 578 (3d Cir. 2002) ...................................................... 22

*In Re November 3, 2020 Gen. Election*, No. 149 MM 2020, 2020 WL 6252803 (Pa. Oct. 23, 2020) ........................................... 10

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020) ........... 8, 19

*Pa. Voters Alliance v. Centre Cnty.*, No. 4:20-CV-1761, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020) ........................................ 5

*Paher v. Cegavske*, No. 20-243, 2020 WL 2748301 (D. Nev. May 27, 2020)....... 17

*Perles v. Cty. Return Bd. of Northumberland Cnty.*, 415 Pa. 154 (1964) ............. 18

*In re Petitions to Open Ballot Boxes*, 188 A.2d 254 (Pa. 1963) ............. 18

*Pileggi v. Aichele*, 843 F. Supp. 2d 584 (E.D. Pa. 2012) .................... 19

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ............... 11, 12

*Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396 (E.D. Pa. 2016) ....... 20, 21

*Reynolds v. Sims*, 377 U.S. 533 (1964) ................................................................. 22

*Shambach v. Bickhart*, 845 A.2d 793 (Pa. 2004) ................................................... 17

*Shavei-Tzion v. Cadles of Grassy Meadows, Inc., LLC*, No. 3:17-0973, 2017 WL 2463171 (M.D. Pa. June 7, 2017) ................................................................ 24

*Short v. Brown*, 893 F.3d 671 (9th Cir. 2018) ...................................................... 17

*Snowden v. Hughes*, 321 U.S. 1 (1944) ................................................................. 15

*Stein v. Cortes*, 223 F. Supp. 3d 423, 438 (E.D. Pa. 2016) .................................. 21

*Tex. League of United Latin Am. Citizens v. Hughs*, --- F.3d. ----, 2020 WL 6023310 (5th Cir. Oct. 12, 2020) ................................................................... 17

*West v. Am. Tel & Tel.* Co., 311 U.S. 223 (1940) ................................................. 13

*Wexler v. Anderson*, 452 F.3d 1226 (11th Cir. 2006) ........................................... 16

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .............................. 11

**STATUTES**

25 P.S. § 2641 ....................................................................................................... 15

25 P.S. § 2641(a) ..................................................................................................... 8

25 P.S. § 2642 ....................................................................................................... 15

25 P.S. § 2642(f) ...................................................................................................... 8

25 P.S. § 3050 .......................................................................................................... 8

25 P.S. § 3146.2c ..................................................................................................... 9

25 P.S. § 3146.8 ....................................................................................................... 8

25 P.S. § 3150.16(b)(2) ...................................................................... 8

25 P.S. § 3456-3473 ............................................................................ 18

# INTRODUCTION

Qualified Pennsylvania electors voted in record numbers in the November 3, 2020 general election for the presidential, state and local races. Pennsylvania electors had the option to exercise their right to vote by mail or in-person thanks to bi-partisan legislation passed by the Pennsylvania General Assembly and signed into law by Governor Wolf. Secretary of the Commonwealth Kathy Boockvar and her team worked with the Commonwealth's 67 counties to run a free, fair and secure election in the midst of a worldwide pandemic. The administration of the election was an outstanding success. The counties will certify their results on Monday, November 23, 2020.

In this motion, one candidate for one federal race that was on the ballot – among hundreds of races across the Commonwealth—comes to this federal court and asks for an order enjoining the certification of the Presidential contest in Pennsylvania. The candidate then goes so far to ask this federal court to "simply declare Trump the winner" rather than his opponent who received more votes. Pls.' Supp. Br. (ECF No. 183) at 2. The relief Plaintiffs seek is unsupported in fact, deficient on the law and simply outrageous. It has no support in law, evidence or precedent. Plaintiffs' motion does not even try to meet the exacting standards required for injunctive relief on the law or the facts.

In Pennsylvania—and across America—the people vote, the votes are counted, the counts are certified and then the winners take office. Plaintiffs seek another route and, in furtherance of their assault on Pennsylvania law, request a temporary restraining order and preliminary injunction preventing Secretary Boockvar and select counties from certifying the results of the election and an order imposing a process for their inspection of voted ballots "to determine if the statutory requirements are met." *Id.* at 1. There is no legal or factual basis to not count valid votes cast by qualified electors and no authority to enjoin certification of the Commonwealth's election results. Plaintiffs have not alleged a plausible claim for relief and certainly have not established a right to a preliminary injunction preventing election officials from fulfilling their statutory obligations. Their motion for preliminary injunction must be denied.

## I.    Plaintiffs Lack Standing and Therefore This Court Lacks Jurisdiction To Consider Plaintiffs' Motion.

Plaintiffs have not alleged a concrete, particularized and non-speculative injury and therefore this action must be dismissed for lack of jurisdiction without even reaching Plaintiffs' request for a preliminary injunction.

To establish Article III standing, an injury must be concrete, particularized and actual or imminent, fairly traceable to the challenged action and redressable by a favorable ruling. *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 409 (2013) (citations and internal quotation marks omitted). Because standing is a fundamental

2

jurisdictional question, challenges to standing must be addressed before reaching the merits. *AT&T Commcs. of New Jersey, Inc. v. Verizon New Jersey, Inc.*, 270 F.3d 162, 168 (3d Cir. 2001).

In *Bognet v. Secretary of the Commonwealth of Pa.*, --- F.3d ---, 2020 WL 6686120 (3d. Cir. Nov. 13, 2020), the U.S. Court of Appeals for the Third Circuit held that voters and political candidates lack standing to pursue an Equal Protection claim alleging that state officials counted ballots in violation of state election law. *Bognet* is on all fours and compels the conclusion that this action cannot proceed due to lack of standing.

Plaintiffs' Equal Protection claim[1] relies on the same theories rejected in *Bognet*—that votes were "unconstitutionally diluted" by counting ballots cast in violation of the Election Code, Am. Compl. ¶¶ 97, 102, and that differences between county notice procedures amounted to "arbitrary and disparate treatment" where some votes were allegedly valued over others, *id.* ¶¶ 8, 95, 97, 152, 154. With respect to the former, *Bognet* makes clear that "[t]his conceptualization of vote

---

[1] Plaintiffs concede that, in light of *Bognet,* they do not have standing to assert a claim under the Electors or Elections Clauses, Pls.' Resp. to Notice of Suppl. Auth. (ECF No. 124) at 1, and that they included an Electors and Elections claim in their Amended Complaint (ECF No. 125) merely "to preserve it for appellate review," Pls.' Br. in Opp'n to Mot. To Dismiss (ECF No. 126) at 2 n.1. The only other claim alleged in the Amended Complaint is a claim under the Equal Protection Clause. Am. Compl. ¶¶ 150-60.

3

dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment." 2020 WL 6686120, at *11. The Third Circuit explained, "if dilution of lawfully cast ballots by the unlawful counting of invalidly cast ballots were a true equal-protection problem, then it would transform every violation of state election law . . . into a potential federal equal-protection claim . . . That is not how the Equal Protection Clause works." *Id.* (citation and internal quotation marks omitted).

Nor is such a claim sufficiently particularized to confer standing under Article III. To the contrary, *Bognet* holds that "[a] vote . . . counted illegally [] has a mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged. Such an alleged dilution is suffered equally by all voters and is not particularized for standing purposes." *Id.* at *12 (citations and internal quotation marks omitted). For either of these independent reasons, Plaintiffs lack standing to pursue their vote dilution claim.

Plaintiffs are also without standing to allege injury in the form of disparate treatment. Affording voters in one county additional voting opportunities not available to voters in another county is not an injury in fact for purposes of the Equal Protection Clause because the votes that are cast are weighed the same. Again, there is no vote dilution in these circumstances. *Id.* a *15. Furthermore, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of

4

another" and therefore the individual Plaintiffs are without standing to complain that other counties transgressed the election laws but theirs did not. *Id.* at *16 (citations omitted).

The Trump Campaign lacks standing for these and other reasons. Like the candidate in *Bognet*, the Trump Campaign cannot "plead a cognizable injury by . . . pointing to a 'threatened' reduction in the competitiveness of his election from counting [allegedly improper] ballots." *Id.* at *8. The campaign does not and cannot explain how counting *more* timely votes cast by qualified electors would lead to a *less* competitive race. This is fatal under *Bognet*. And allowing additional valid ballots to be counted would not affect the Trump Campaign "in a particularized way when, in fact, all candidates in Pennsylvania, including [Trump's] opponent, are subject to the same rules." *Id.*; *see also Pa. Voters Alliance v. Centre Cnty.*, No. 4:20-CV-01761, 2020 WL 6158309, at *5 (M.D. Pa. Oct. 21, 2020) (allegation that grants will lead to increased voter turnout that will advantage political opponents is "precisely the kind of undifferentiated, generalized grievance about the conduct of government that the Supreme Court has refused to countenance in the past"). As with the individual voter Plaintiffs, *Bognet* requires the conclusion that the Trump Campaign lacks standing.

Straightforward application of *Bognet* requires dismissal of Plaintiffs' claim. Plaintiffs offer nothing to support a different result. They point out that the

individual voter Plaintiffs' ballots were rejected, but this is not the basis for the equal protection claim in the Amended Complaint. Their claim is that defective ballots cast by Mr. Henry and Mr. Roberts were ***properly rejected***, not that they should have been counted. *See, e.g.*, Am. Compl. ¶ 158. Their theory is vote dilution, not vote denial, and as a result their claim is foreclosed by *Bognet*. The Trump Campaign argues "competitive standing," Pls.' Br. in Opp'n to Mot. To Dismiss (ECF No. 170) at 11, but does not and cannot allege a cognizable competitive injury. As in *Bognet*, counting *more* votes timely cast by qualified electors does not lead to a *less* competitive race. 2020 WL 6686120, at *8. Moreover, the procedures at issue— notifying voters that their ballots had been rejected and affording an opportunity to cast provisional ballots or otherwise cure ballot defect—were available to all counties and both major political parties communicated with voters about their voting options. Am. Compl. ¶ 129; Am. Mot. for TRO or Prelim. Inj. (ECF No. 182), Exs. 12 & 15. There was no preferential treatment and there is no cognizable equal protection injury. And, finally, the Trump Campaign does not allege that the limited number of ballots that were allegedly "cured" and subsequently counted were "sufficient in number to change the outcome of the election" to President Trump's advantage. *Bognet*, 2020 WL 6686120, at *8.

Bognet leaves no question that Plaintiffs lack standing to bring their equal protection claim. As Chief Judge Smith explained: "[W]hen voters cast their ballots

under a state's facially lawful election rule and in accordance with instructions from the state's election officials, private citizens lack Article III standing to enjoin the counting of those ballots on the grounds that the source of the rule was the wrong state organ or that doing so dilutes their votes or constitutes differential treatment of voters in violation of the Equal Protection Clause." *Id.* at *18. Plaintiffs lack standing and, as a result, their motion for preliminary injunction must be denied. *Brennan v. William Patterson Coll.*, 492 F. App'x 258, 262 (3d Cir. 2012) ("A plaintiff must have Article III standing to seek a preliminary injunction and if he does not have such standing we are without jurisdiction. . . .").

## II. This Court Lacks Jurisdiction Under *Rooker-Feldman.*

Even if Plaintiffs had standing, this Court lacks jurisdiction under *Rooker-Feldman.* The state law issues presented here have already been litigated and decided adverse to Plaintiffs in state courts and *Rooker-Feldman* deprives this Court of jurisdiction to entertain collateral attacks on those rulings.

The *Rooker-Feldman* doctrine bars federal jurisdiction if the claim was "actually litigated" in state court or if the claim is "inextricably intertwined" with the state adjudication. *ITT Corp. v. Intelnet Int'l*, 366 F.3d 205, 210 (3d Cir. 2004) (citation omitted). "If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter

jurisdiction to hear the suit." *Id.* at 211 (citations and internal quotation marks omitted).

Here, Pennsylvania courts have rejected the Trump Campaign's challenge to the practice which Plaintiffs allege violates the Equal Protection Clause—notifying voters whose ballots were defective and providing then the opportunity to vote provisionally. Am. Compl. ¶ 6. And with good reason. The Election Code ***specifically authorizes*** mail-in voters to vote by provisional ballot if their mail-in ballots are rejected. 25 P.S. § 3150.16(b)(2). That section states: "An elector who requests a mail-in ballot and who is not shown on the district register as having voted may vote by provisional ballot under [25 P.S. § 3050]." *Id.*[2]

---

[2] Contrary to Plaintiffs' argument, Pls.' Supp. Br. at 4, 8-9, neither the Election Code nor the Pennsylvania Supreme Court's decision in *Pa. Democratic Party v. Boockvar* bars county election boards from providing notice to voters when their mail in ballots are rejected. The issue in that case was whether counties are required to notify electors of "minor facial defects" and afford them an opportunity to cure defects within a week after the election. *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 372 (Pa. 2020). The Supreme Court ruled that county boards "are not *required* to implement a 'notice and opportunity to cure' procedure . . . ." *Id.* at 374 (emphasis added). The Court did not and could not foreclose counties from exercising the discretion afforded by the Election Code to conduct elections as they see fit, including by making and issuing rules, regulations and instructions for the guidance of elections officers and electors. 25 P.S. §§ 2641(a), 2642(f). Plaintiffs are also wrong in positing that identifying voters whose ballots are rejected violates a secrecy obligation in 25 P.S. § 3146.8. Pls.' Supp. Br. at 17-18. That provision prohibits observers from disclosing "the results" of the pre-canvassing—in other words, vote tallies. The identity of voters who requested mail-in ballots and the disposition of those ballots are matters of public record. *See, e.g.*, 25 P.S. § 3146.2c.

Given this express provision in the Election Code, it is not surprising that the Courts of Common Pleas of Bucks and Philadelphia Counties rejected the Trump Campaign's contention that notice to voters was not permitted. *See Order*, *In re General Election Pre-Canvas*, No. 7501 (Pa. Ct. Com. Pl. Phil. Cty. Nov. 3, 2020); *see also Order*, *Donald J. Trump for President, Inc. v. Bucks Cty. Bd. Of Elections*, No. 2020-05627 (Pa. Ct. Com. Pl. Bucks Cty. Nov. 3, 2020).[3] No appeal was taken from these Orders which are now final.

Similarly, in the Philadelphia County Court of Common Pleas, the Trump Campaign asserted a challenge to specific ballots, arguing that the ballots failed to conform to requirements in the Election Code and should not have been counted. This is the same allegation advanced in the Amended Complaint. Am. Compl. ¶ 158. The Philadelphia County Court of Common Pleas rejected the Trump Campaign's arguments and directed that the challenged ballots must be counted. On November 18, 2020, the Pennsylvania Supreme Court granted an application for extraordinary jurisdiction in the matter and ordered expedited briefing. *In re:*

---

The Bucks and Philadelphia County Courts of Common Pleas correctly ruled that there was no violation of the Election Code.

[3] The referenced Orders are attached collectively as Exhibit "B."

*Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, Nos. 89-93 EM 2020 (Nov. 18, 2020).[4]

The issues framed by the Amended Complaint—whether the Election Code permits notice to voters whose ballots were rejected and an opportunity to cast a provisional ballot and whether ballot defects were improperly overlooked—have already been litigated in state court and Plaintiffs cannot seek to relitigate those same issues here.[5] This Court lacks subject matter jurisdiction over Plaintiffs' collateral attacks under *Rooker-Feldman* and is without authority to enter a preliminary

---

[4] The referenced Orders are attached collectively as Exhibit "C."

[5] While not before the Court, it bears noting that Plaintiffs fully litigated their claim that they were denied access to ballot canvassing. *See in re Canvassing Observation Appeal*, --- A.3d ---, 2020 WL 6737895 (Pa. Nov. 17, 2020). In that case, the Supreme Court held that the Election Code does not specify minimum distance parameters for the location of representatives during canvassing and that the county election board's restrictions in that case were reasonable. *Id.* at *9. Contrary to Plaintiffs' suggestion, Pls.' Supp. Br. at 11. This determination is final and not subject to further review in this or any federal court. Recognizing the preclusive effect of that ruling, Plaintiffs instead mischaracterize the Pennsylvania Supreme Court's decision in *In re November 3, 2020 Gen. Election*, --- A.3d ---, 2020 WL 6252803 (Pa. Oct. 23, 2020). That case did not "*sua sponte* declare[]" that a statutory provision on election day challenges "was invalid." Pls.' Supp. Br. at 11. That case initiated with an application for exercise of extraordinary jurisdiction, was decided after full briefing and held that county boards of elections are not permitted under the Election Code to reject mail in ballots based on signature comparison or as the result of third-party challenges. 2020 WL 6252803, *14. In so ruling, the Court observed that, "in 2020, the legislature eliminated the time-of-canvassing challenges entirely" from the Election Code. *Id.* The General Assembly, not the Supreme Court, removed any opportunity for candidates to challenge mail-in ballots.

injection. *Conklin v. Anthou*, No. 1:10-CV-2501, 2012 WL 124989, at *2-3 (M.D. Pa. Jan. 17, 2012).

### III. Plaintiffs Have Not Satisfied Any of the Requirements for Preliminary Injunctive Relief.

Even if Plaintiffs were able to overcome these threshold jurisdictional defects, their motion must nonetheless be denied because they have not satisfied any of the requirements necessary for an injunction, and certainly not for the radical remedy they seek.

Four factors are considered in determining whether to grant a preliminary injunction[6]: (1) whether the movant has a reasonable probability of eventual success in the litigation; (2) whether the movant will be irreparably harmed if relief is not granted; (3) the possibility of harm to other interested persons from the grant or denial of the injunction; and (4) the public interest. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citation omitted). The two "most critical" factors are probability of success on the merits and irreparable harm. *Id.* at 179. To establish a reasonable probability of success, the movant must demonstrate that "it can win on

---

[6] Although they waited until ten days after initiating this action to file the instant motion for preliminary injunction, Plaintiffs style their motion as a "Motion for Temporary Restraining Order and Preliminary Injunction." The standard applicable to a motion for temporary restraining order is the same as the standard for a preliminary injunction. *Benner v. Wolf*, 461 F. Supp. 3d 154, 160 (M.D. Pa. 2020). Plaintiffs fail to establish a right to either form of relief.

the merits," which requires a showing that is "significantly better than negligible but not necessarily more likely than not." *Id.* The movant must also establish that he is "more likely than not" to suffer irreparable harm absent the requested relief. *Id.* If the first two "gateway factors" are satisfied, the district court proceeds to consider the third and fourth factors and to "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 178-79.[7]

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Plaintiffs fall far short of the required clear showing.

## A. Plaintiffs Have No Reasonable Probability of Success.

Plaintiffs concede that they are foreclosed by *Bognet* from pursuing their claim under the Electors and Elections Clauses. Am. Compl. ¶¶ 161-70. Their only

---

[7] Plaintiffs urge the Court ignore the public interest altogether, advocating that *either* a showing of likelihood of success *or* irreparable injury will suffice for preliminary injunctive relief. Pls.' Supp. Br. at 13. This is not a correct statement of the law. The Third Circuit made clear in *Reilly* that district courts may grant a preliminary injunction only "if all four factors, taken together, balance in favor of granting the requested preliminary relief." 858 F.3d at 179. Plaintiffs cannot bypass the public interest in their desperate drive to disenfranchise Pennsylvania voters.

remaining[8] claim is the equal protection claim in Count I. *Id.* ¶¶ 150-60. Plaintiffs cannot prevail on that claim for a host of reasons. Secretary Boockvar detailed the many flaws in Plaintiffs' Equal Protection claim in her motion to dismiss briefing and summarize those arguments here.

*First*, the Amended Complaint fails to allege a violation of the Equal Protection Clause. Plaintiffs' essential gripe is that state election laws were not uniformly enforced across the Commonwealth. Am. Compl. ¶ 157. This is simply not an equal protection violation. It is settled that "[t]he unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Snowden v. Hughes*, 321 U.S. 1, 8 (1944). The Third Circuit reaffirmed as much in *Bognet*, holding that "state actors counting ballots in violation of state election law [] is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment." *Bognet*, 2020 WL 6686120 at *11; *see also id.* at *6 ("[f]ederal courts are not venues for plaintiffs to assert a bare right to have the

---

8    Unencumbered by the operative Amended Complaint, Plaintiffs litter their brief with references to an alleged due process violation. *See, e.g.*, Pls.' Opp'n Br. at 6, 11, 12, 15, 20, 21, 23. No such claim appears in the Amended Complaint. Even if Plaintiffs were able to establish a due process violation—and they cannot—unpled theories cannot form the basis for preliminary injunctive relief. *See Martin v. Keitel*, 205 F. App'x 925, 929 (3d Cir. 2006) (denying request for injunctive relief "targeted at potential conduct that bears no relation to [plaintiff's] underlying claim").

Government act in accordance with law"). Plaintiffs have not alleged and cannot prove intentional discrimination by any election official and their Equal Protection claim necessarily fails as a result.[9]

Plaintiffs suggest that any variation in county election procedures constitutes an equal protection violation under *Bush v. Gore*, 531 U.S. 98 (2000), Pls.' Supp. Br. at 5, but that is not a fair reading of that case. *Bush v. Gore* is not a magical "get out of defeat free card" that justifies disenfranchising millions of Pennsylvania voters.[10] To the contrary, that decision was expressly "limited to [its] present

---

[9] In their papers, Plaintiffs accuse election officials of a broad conspiracy against Republican voters and candidates, *see, e.g.*, Pls.' Supp. Br. at 4-5, but they included no such claim in the Amended Complaint. Nor can they credibly allege discrimination. All counties received the same email notice recommending that notice be given when ballots were rejected. Am. Compl. ¶ 129. All county election boards possessed the same jurisdiction and authority under the Election Code to manage election procedures in their couintes. 25 P.S. §§ 2641, 2642. Further, the attachments to Plaintiffs' filing confirm that Republican and Democratic candidates and/or campaigns reached out to voters who cast rejected ballots to inform them of the opportunity to vote by provisional ballot on election day. *See* Hetak Decl. ¶ 6; Murray Decl. ¶¶ 4-7. Plaintiffs' unsupported accusations of discrimination—not plead in the Amended Complaint and contradicted by its other filing—do not support or in any way suggest an equal protection violation.

[10] Plaintiffs also cite *Bush v. Gore* as support for the proposition that a federal court "may independently interpret Pennsylvania law and not sustain"—in other words, may reverse—decisions of the Pennsylvania Supreme Court interpreting the Pennsylvania Election Code. Pls.' Supp. Br. at 12. This is not a correct statement of the law. Plaintiffs' citation is actually to Chief Justice Rehnquist's concurring opinion in support of the Court's decision on the merits. *See Bush v. Gore*, 531 U.S. 98, 112-22 (2000). Justice Rehnquist's concurring opinion, which was joined by Justice Scalia and Justice Thomas, does not reflect the views of a majority of the Justices and is not binding Supreme Court precedent. It merely reflects the personal

circumstances" and those circumstances are not in any way analogous to the equal protection claim the Plaintiffs are trying to bring here. In *Bush v. Gore*, the Court was concerned with a state court order compelling a manual recount of votes without a uniform standard that led to some votes being weighed differently than others. 531 U.S. at 103. Here, there is no claim that votes were weighed differently. Plaintiffs allege that counties implemented different procedures that afforded some voters more opportunities to vote, but all votes were weighed the same. As Judge Ranjan correctly concluded in *Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 5997680, at *41-46 (W.D. Pa. Oct. 10, 2020), that makes the alleged harm in this case "categorically different from the harm at issue in *Bush*." Moreover, the Supreme Court made clear that its decision in *Bush v. Gore* was based on differences in the treatment of votes, not differences in county election procedures. *Id.* at *43. The Supreme Court emphasized that it was **not** addressing "whether local entities, in the expertise, may develop different systems for implementing elections." 531 U.S. at 109.[11]

---

opinions of those justices. The Supreme Court has consistently held that "the highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ." *West v. Am. Tel & Tel. Co.*, 311 U.S. 223, 236 (1940). Accordingly, federal courts cannot second-guess or reverse Pennsylvania state court decisions on what the Election Code means.

[11]  In their papers, Plaintiffs accuse election officials of a broad conspiracy against Republican voters and candidates, *see, e.g.*, Pls.' Supp. Br. at 4-5, but they included no such claim in the Amended Complaint. Nor can they credibly allege

Plaintiffs' Equal Protection theory necessarily fails because variation in county election procedures is permissible. "[C]ounties may, consistent with equal protection, employ entirely different election procedures and voting systems within a single state." *Boockvar*, 2020 WL 5997680, at *44-45 (citing cases); *see also, e.g.*, *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 635-36 (6th Cir. 2016) (rejecting equal protection challenge even where "plaintiffs presented uncontested evidence that, in determining whether to reject a given ballot, the practices of boards of elections can vary, and sometimes considerably"); *Wexler v. Anderson*, 452 F.3d 1226, 1231-33 (11th Cir. 2006) ("Plaintiffs do not contend that equal protection requires a state to employ a single kind of voting system throughout the state. Indeed, local variety in voting systems can be justified by concerns about cost, the potential value of innovation, and so on."). As Judge Ranjan noted, "[e]qual protection does not demand the imposition of 'mechanical compartments of law all exactly alike.'" *Boockvar*, 2020 WL 5997680, at *45 (quoting *Jackman v.*

---

discrimination. All counties received the same email notice recommending that notice be given when ballots were rejected. Am. Compl. ¶ 129. All county election boards possessed the same jurisdiction and authority under the Election Code to manage election procedures in their counites. 25 P.S. §§ 2641, 2642. Further, the attachments to Plaintiffs' filing confirm that Republican and Democratic candidates and/or campaigns reached out to voters who cast rejected ballots to inform them of the opportunity to vote by provisional ballot on election day. *See* Hetak Decl. ¶ 6; Murray Decl. ¶¶ 4-7. Plaintiffs' unsupported accusations of discrimination—not plead in the Amended Complaint and contradicted by its other filing—do not support or in any way suggest an equal protection violation.

*Rosenbaum Co.*, 260 U.S. 22, 31 (1922)). The fact that some counties implemented mail-in voting in a manner that offered a cure mechanism to assist voters and others did not does not create an Equal Protection Clause violation. *See Trump v. Bullock*, --- F.3d ----, 2020 WL 5810556, at *14 (D. Mont. Sept. 30, 2020) ("[F]ew (if any) electoral systems could survive constitutional scrutiny if the use of different voting mechanisms by counties offended the Equal Protection Clause.").

*Second*, the Amended Complaint fails to allege any burden on the right to vote. Allowing voters to cast provisional ballots or cure ballot defects did not prevent anyone from voting or in any way burden anyone's right to vote. Instead, such procedures made voting easier. This is not an Equal Protection violation. See *Short v. Brown*, 893 F.3d 671 (9th Cir. 2018) (affirming denial of preliminary injunction for alleged Equal Protection violation where some California counties automatically mailed ballots to registered voters and other counties did not); *see also Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 145 (5th Cir. 2020) (finding it a "mystery" how the "expansion of voting opportunities burdens anyone's right to vote"); *Boockvar*, 2020 WL 5997680, at *41-43 (holding that counties' differential use of drop boxes did not give rise to equal protection violation because there was no burden on right to vote); *Paher v. Cegavske*, 2020 WL 2748301, at *9 (D. Nev. May 27, 2020) (rejecting equal protection challenge to plan

that "ma[d]e it easier or more convenient to vote in [one] County, but [did] not have any adverse effects on the ability of voters in other counties to vote").

*Third*, there is no doubt that the counties had a rational basis for notifying voters and allowing them to cast provisional ballots.[12] The "longstanding and overriding policy" in the Commonwealth of Pennsylvania is to "protect the elective franchise." *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004). The Pennsylvania Supreme Court has repeatedly directed that "ballots containing minor irregularities should only be stricken for compelling reasons." *Id.*; *see also In re Gen. Election Nov. 6, 1971*, 296 A.2d 782, 784 (Pa. 1972); *In re Petitions to Open Ballot Boxes*, 188 A.2d 254, 256 (Pa. 1963). The "goal must be to enfranchise and not to disenfranchise." *In re Luzerne County Returns Bd.*, 290 A.2d 108, 109 (Pa. 1972). Providing notice to voters when their ballots are rejected and an opportunity to cast a provisional ballot or otherwise cure defects is most certainly rationally related to this legitimate and important state interest. Accordingly, Plaintiffs cannot prevail under the *Anderson-Burdick* framework. Because no fundamental right was burdened and there was a rational basis for providing notice and cure options, there is no constitutional violation.

---

[12] Even after it was brought to their attention, ECF No. 176 at n.2, Plaintiffs continue to falsely accuse Secretary Boockvar of "advocat[ing that] state officials should count more mail ballots than the law allows." Pls.' Supp. Br. at 9. That Plaintiffs continue this practice of knowingly making material false representations should concern this Court.

*Fourth*, for a host of reasons, federal intervention by way of injunctive relief is inappropriate. Plaintiffs have failed to pursue available state remedies, including an election contest. 25 P.S. §§ 3456-3473. Moreover, their request for a preliminary injunction is not tailored to their Amended Complaint, but instead would unconstitutionally disenfranchise millions of voters. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) ("If a less drastic remedy . . . was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted.") (citations omitted); *see also Perles v. Cty. Return Bd. of Northumberland Cty.*, 415 Pa. 154, 159 (1964) ("The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons."); *Pa. Democratic Party*, 238 A.3d at 361 ("[I]t is well-settled that, although election laws must be strictly construed to prevent fraud, they ordinarily will be construed liberally in favor of the right to vote . . . to enfranchise and not to disenfranchise the electorate.") (citation and internal punctuation marks omitted); *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 596 (E.D. Pa. 2012) (declining to issue a temporary restraining order in an election case when doing so would mean that "Pennsylvania voters could be disenfranchised"). Courts in other states have rejected similar efforts by the Trump Campaign to enjoin the

certification process, concluding that it would be an "unprecedented exercise of judicial activism." Opinion & Order 11 in *Costantino v. City of Detroit*, No. 20-014780-AW (Mich. 3d Judicial Cir. Ct. Nov. 13, 2020) (Ex. A.)[13]

Plaintiffs have not shown a likelihood that they will prevail on the merits and, for this reason alone, they are not entitled to preliminary injunctive relief.

## B.     Plaintiffs Failed To Establish Immediate and Irreparable Harm.

Plaintiffs have also failed to show that they are likely to suffer irreparable harm in the absence of a preliminary injunction. As demonstrated above, they do not allege any recognizable legal harm, let alone irreparable harm. The individual voter Plaintiffs suffered no injury at all—they contend their votes were properly rejected. Am. Compl. ¶ 158. Their only pretense of injury—that votes in other counties were purportedly counted in violation of state law—is not a cognizable harm under the Equal Protection Clause. *Bognet*, 2020 WL 6686120, at *11. Nor can the Trump Campaign purport to claim competitive harm given that all candidates were subject to the same county procedures and because counting more timely votes from qualified electors does not result in a less competitive race. *Id.* at *8. Plaintiffs

---

[13] As Chief Justice Saylor aptly recognized in his dissenting opinion in the poll observer case, "short of demonstrated fraud, the notion that presumptively valid ballots cast by the Pennsylvania electorate would be disregarded based on isolated procedural irregularities that have been redressed—thus disenfranchising potentially thousands of voters—is misguided." *In re Canvassing Observation Appeal*, --- A.3d ---, 2020 WL 6737895, at *9 (Pa. Nov. 13, 2020) (Saylor, C.J., dissenting).

simply do not allege any recognizable legal harm and therefore cannot demonstrate irreparable harm. *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 405 (E.D. Pa. 2016) ("Without some showing of a recognizable legal harm, the Plaintiffs cannot demonstrate irreparable harm.").

Moreover, any claim of emergency is of Plaintiffs' own making. The Trump Campaign was aware of counties providing notice to voters whose ballots were rejected and an opportunity to cast a provisional ballot as early as election day, as evidenced by the proceedings initiated in Bucks and Philadelphia Counties, but they delayed until November 9 before filing this action and until November 19 before filing the operative motion for preliminary injunction. Their own delay confirms there is no risk of irreparable harm and provides ample grounds to deny emergency injunctive relief. *Stein v. Cortes*, 223 F. Supp. 3d at 437 ("Plaintiffs are not entitled to the 'emergency' relief they seek because they have inexcusably waited well past the eleventh hour to seek it."); *Rep. Party of Pa. v. Cortes*, 218 F. Supp. 3d at 410 (denying preliminary injunction based, in part, on finding that "[t]here was no need for this judicial fire drill").

In addition, Plaintiffs' theory of harm is purely speculative. They do not and cannot allege that provisional ballots or "cured" ballots were cast in sufficient number to change the outcome of the election, let alone that that those ballots favored President Trump's challenger. Instead, they admit they do not know "if the statutory

requirements were met" and "whether [they] can prove their case" and, for this reason, they are seeking broad discovery so that their "statistical expert" can develop an opinion as to whether the outcome of the election might have been different. Pls.' Supp. Br. at 1-2. Plaintiffs have the cart before the horse, and the horse is dead. They have not demonstrated that any ballot was improperly counted and they have not made the "clear showing of immediate irreparable injury" necessary for preliminary injunctive relief. *ECRI-McGraw Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (quoting *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)).

## C.  The Equities and Public Interest Weigh Against Injunctive Relief.

In balancing the relative harms, a district court must weigh "the potential injury to the plaintiff if an injunction does not issue versus the potential injury to the defendant if the injunction is issued." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer*, 290 F.3d 578, 596 (3d Cir. 2002) (citation omitted). The equities and public interest factors merge where the government is a party. *Niken v. Holder*, 556 U.S. 418, 435 (2009). These merged factors weigh overwhelmingly against preliminary relief.

As demonstrated above, Plaintiffs will suffer no harm at all in the absence of injunctive relief. They allege that the individual voter Plaintiffs' ballots were properly rejected, Am. Compl. ¶ 158, and they presented no evidence suggesting

that the outcome of the election would have been different but for counties' different utilization of notice and cure procedures. By contrast, Pennsylvanians will suffer irreparable harm to their most cherished right if the Court grants Plaintiffs' request for an order enjoining certification of the election results. The relief sought would deprive Pennsylvanians of the right to have their votes counted in violation of the United States and Pennsylvania Constitutions. *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) ("[Q]ualified voters have a constitutionally protected right . . . to have their votes counted."); *Banfield v. Cortes*, 922 A.2d 36, 48 (Pa. Cmwlth. 2007) ("Electors have a right under Article I, Section 5 of the Pennsylvania Constitution to have their votes honestly counted. . . ."). "No right is more precious in a free county than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (internal citation and quotation omitted). Denying the effect of those votes, even for a brief instant, is antithetical to the public interest.

Importantly, Plaintiffs are no longer seeking to enjoin certification of the results of any race in the Commonwealth other than the Presidential race. Pls.' Supp. Br. at 1. This late change in strategy exposes what we already know: Plaintiffs do not credibly believe that Republican voters (or any other voters) were disadvantaged as a result of different county procedures concerning notice to voters whose ballots were defective. If Plaintiffs really believed that such differences were "intended to

have . . . a partisan effect," *id.* at 5, they would be seeking to enjoin certification of all election results. They reframed their request because they know they cannot establish intentional discrimination by any elected official against any political party. In fact, the Republican candidates won the statewide races for Auditor General and State Treasurer and many other down ballot races. There is no basis to question the election results.

The equities and the public interest are conclusive and require denial of Plaintiffs' motion for a preliminary injunction.

## D. Plaintiffs Have Not Established a Clear Right to a Preliminary Injunction.

Plaintiffs have not established that they can win on the merits, that they are likely to suffer irreparable harm in the absence of an injunction or that the equities or public interest favor disregarding the will of the electorate. They have not identified a single vote that was improperly counted. Nor have they identified a viable legal theory to justify their stunning request to enjoin Secretary Boockvar from fulfilling her statutory obligations and abrogate the right of 6.8 million Pennsylvanians to select their President and Vice-President. There is no legal or factual support for Plaintiffs' outlandish attempt to subvert the will of the people and overturn the election results by delaying certification of votes lawfully cast. Plaintiffs' wholly unsubstantiated request for a preliminary injunction should be denied forthwith. *See Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d

Cir. 1990) ("The applicable Federal Rule [of Civil Procedure 65] does not make a hearing a prerequisite for ruling on a preliminary injunction."); *Shavei-Tzion v. Cadles of Grassy Meadows, Inc., LLC*, No. 3:17-0973, 2017 WL 2463171, *4 (M.D. Pa. June 7, 2017) (denying request for preliminary injunction hearing where "plaintiff's claim is highly unlikely to succeed based on substantive law . . . and there is no factual basis to support the claims and the contention of irreparable harm").

## **CONCLUSION**

For the reasons above, Plaintiffs have not established a right to preliminary injunctive relief and their motion should be denied.

Dated: November 20, 2020

Respectfully submitted,

MYERS BRIER & KELLY LLP

PENNSYLVANIA OFFICE OF ATTORNEY GENERAL

By: *Daniel T. Brier*
    Daniel T. Brier
    Donna A. Walsh
    John B. Dempsey
    425 Spruce Street, Suite 200
    Scranton, PA 18503
    (570) 342-6100 (telephone)
    (570) 342-6147 (facsimile)
    dbrier@mbklaw.com
    dwalsh@mbklaw.com
    jdempsey@mbklaw.com
*Counsel for Kathy Boockvar Secretary of the Commonwealth of Pennsylvania*

By: */s/ Keli M. Neary*
    Keli M. Neary
    Karen M. Romano
    15th Floor, Strawberry Square
    Harrisburg, PA 17120
    (717) 787-2717 (telephone)
    (717) 772-4526 (facsimile)
    kromano@attorneygeneral.gov
    kneary@attorneygeneral.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Daniel T. Brier