**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DONALD J. TRUMP FOR
PRESIDENT, INC., *et al.*,

               Plaintiffs,

v.

CITY OF PHILADELPHIA, et al.,

               Defendants.

Case No. 20-cv-02078-MWB

**RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR A TEMPORARY RESTRAINING ORDER**
**AND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................3

II.   PROCEDURAL HISTORY .....................................................................10

I.    PLAINTIFFS LACK STANDING..............................................................12

    A.    The Trump Campaign Lacks Standing .............................................13

    B.    The Individual Voters Do Not Have Standing...................................17

II.   THE TRUMP CAMPAIGN CANNOT SHOW ANY ENTITLEMENT TO THE INJUNCTIVE RELIEF REQUESTED .......................................21

    A.    The Court Should Deny the Trump Campaign's Motion Because It Is Unlikely to Succeed on the Merits .............................................23

         1.    The Trump Campaign Cannot Prevail on Its Equal Protection Claims...................................................................25

         2.    Plaintiffs Admit That They Cannot Prevail on Their Elections and Electors Clause Claims....................................................28

    B.    The Trump Campaign Cannot Prove Irreparable Harm.....................29

    C.    The Equities and Public Interest Necessitate Denying the Requested Relief ..............................................................................31

III.   SOVEREIGN IMMUNITY PRECLUDES ISSUANCE OF AN INJUNCTION AGAINST THE COUNTY DEFENDANTS .....................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berg v. Obama*,
    586 F.3d 234 (3d Cir. 2009) ............................................................................... 18

*Bognet v. Boockvar*,
    No. 20-215, 2020 WL 6323121 (W.D. Pa. Oct. 28, 2020) ........................ *passim*

*Burdick v. Takushi*,
    504 U.S. 428 (1992) ........................................................................................... 27

*Bush v. Gore*,
    531 U.S. 98 (2000) ............................................................................................ 11

*In re Canvassing Observation Appeal of City of Phila. Bd. of Elections*,
    No. 30 EAP 2020, 2020 WL 6737895 (Pa. Nov. 17, 2020) .......................... 5, 13

*Chez Sez III Corp. v. Twp. of Union*,
    945 F.2d 628 (3d Cir. 1991) ............................................................................... 16

*D.C. Ct. of Appeals v. Feldman*,
    460 U.S. 462 (1983) ............................................................................................. 9

*Donald J. Trump for President, Inc. v. Boockvar*,
    No. 20-CV-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) .................. *passim*

*Donald J. Trump for President, Inc. v. Boockvar*,
    No. 20-CV-966, 2020 WL 4920952 (W.D. Pa. Aug. 23, 2020) ............ 16, 17, 18

*Donald J. Trump for President, Inc. v. Cegavske*,
    No. 20-cv-1445, 2020 WL 5626974 (D. Nev. 2020) .......................................... 3

*Florida v. Powell*,
    559 U.S. 50 (2010) ............................................................................................ 13

*Gamza v. Aguirre*,
    619 F.2d 449 (5th Cir. 1980) ............................................................................. 14

*In re General Election-1985*,
    531 A.2d 836 (Pa. Commw. Ct. 1985) ................................................................ 4

*Hamm v. Boockvar*,
   No. 600 MD 2020 (Pa. Commw. Ct. 2020) ...................................................18

*Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*,
   426 U.S. 482 (1976) .......................................................................................13

*Lance v. Coffman*,
   549 U.S. 437 (2007) ..........................................................................................4

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................................4, 6

*Marks v. Stinson*,
   19 F. 3d 873 (3d Cir. 1994) ..............................................................................2

*Marran v. Marran*,
   376 F.3d 143 (3d Cir. 2004) ..............................................................................9

*Mi Familia Vota v. Abbott*,
   977 F.3d 461 (5th Cir. 2020) ...........................................................................20

*NAACP Phila. Branch v. Ridge*,
   No. 00-CV-2855, 2000 WL 1146619 (E.D. Pa. Aug. 14, 2000) .......................16

*Orloski v. Davis*,
   564 F. Supp. 526 (M.D. Pa. 1983) .....................................................................3

*Pa. Voters Alliance v. Centre Cnty.*,
   No. 20-cv-1761, 2020 WL 6158309 (M.D. Pa. Oct. 21, 2020) ..........................7

*Pavek v. Donald J. Trump for President, Inc.*,
   967 F.3d 905, 907 (8th Cir. 2020) .....................................................................4

*Planned Parenthood of Cent. N.J. v. Farmer*,
   220 F.3d 127 (3d Cir. 2000) .............................................................................18

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) .............................................................................................20

*R.R. Comm. of Tex. v. Pullman Co.*,
   312 U.S. 496 (1941) ....................................................................................16, 17

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
    140 S. Ct. 1205 (2020) .......................................................................20

*Ron Barber for Cong. v. Bennett*,
    No. 14-2489, 2014 WL 6694451 (D. Ariz. Nov. 27, 2014) .............................11

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923) ...........................................................................9

*Short v. Brown*,
    893 F.3d 671 (9th Cir. 2018) ...............................................................14

*Stein v. Cortes*,
    223 F. Supp. 3d 423 (E.D. Pa. 2016) ...................................................5, 9

## PRELIMINARY STATEMENT

The Court has given Plaintiffs, Donald J. Trump for President, Inc. and two individuals (together, the "Trump Campaign"), ample opportunity to show that there is any basis whatsoever for their extraordinary request for injunction of the certification of a Presidential election. The Trump Campaign has not been able to do so. In two iterations of its Complaint and two Motions for Preliminary Injunction, the Trump Campaign has made, and then backed away from, hypothetical and unsubstantiated claims of fraud. Now, the Trump Campaign admits that it has no facts to support its sweeping theories. Undeterred, however, it asks this Court to permit it to go on a fishing expedition to find support for its allegations—all while delaying election certification and potentially disenfranchising 6.7 million Pennsylvania voters. Granting an injunction for the express purpose of delaying dismissal of a complaint that is legally deficient, however, is unauthorized by law and well outside the norms of federal practice. The Court should reject the Trump Campaign's last-ditch effort to save its meritless claim.

Setting aside the facially invalid reasons for seeking an injunction, the Trump Campaign cannot meet its burden of proving that it is entitled to the issuance of a preliminary injunction. Fundamentally, neither the law nor the facts as asserted by the Trump Campaign support the relief it seeks. As an initial matter, the Trump Campaign lacks standing to bring the claims asserted and thus an injunction cannot

be issued. *See Bognet v. Sec'y of Commw. of Pa.*, — F.3d —, 2020 WL 6686120, at *1 (3d Cir. Nov. 13, 2020) ("Bognet"); *see also* County Boards' Motion to Dismiss at 17-45, ECF No. 94 (hereinafter the "Counties' Motion to Dismiss"). Moreover, Plaintiffs' entire motion rests on the faulty premise that the Counties must prove a negative, *i.e.*, that voter fraud did not occur in this election. That argument is meritless.

Even if Plaintiffs could demonstrate they have standing, which they cannot, in order to obtain a preliminary injunction, they must establish four factors to obtain relief: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm absent preliminary relief, (3) that the balance of equities favors them, and (4) that an injunction would be in the public interest.[1] *Id.* at 20. The first two factors are critical. *See Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (holding that "only if these 'gateway factors' are established does the district court consider the remaining two factors").

While none of these factors weigh in the Trump Campaign's favor, most importantly, it cannot demonstrate a likelihood of success on the merits: In its Amended Complaint, the Trump Campaign has abandoned its claims of fraud, ballot-observation, and due process violations. The Amended Complaint has

---

[1] The temporary restraining order factors are identical, *Bognet v. Boockvar*, No. 20-cv-215, 2020 WL 6323121, at *2 (W.D. Pa. Oct. 28, 2020), and this brief analyzes the two issues together.

dwindled to a fruitless and specious equal protection and Electors and Elections Clause claim based on vague assertions of differences in the standards for sufficiency of mail-in ballots. However, the election was conducted in a fair, impartial manner consistent with the Pennsylvania Election Code and therefore the Trump Campaign cannot establish that it will succeed on the merits. Moreover, the Trump Campaign cannot establish irreparable harm where its ballot-sufficiency claims remain pending in state court, where the ballots being challenged here are insufficient to affect the result of the election, and where it has additional recourse to the state election contest process—such procedures are more than adequate to address any disagreement with application of the state Election Code.

The Trump Campaign's request for the issuance of a temporary restraining order and preliminary injunction should be denied, and the process of certifying the vote should continue to ensure that the voices of Pennsylvanians are heard in this important election.

## FACTUAL OVERVIEW

### I. THE COUNTIES CONDUCTED A FAIR ELECTION IN COMPLIANCE WITH THE ELECTION CODE

As an initial matter, "the purpose and objective of the Election Code, which contains Act 77, is to obtain freedom of choice, a fair election and an honest election return[.]" *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 356 (Pa. 2020) (internal quotation marks omitted). Since its enactment in 1937, the General Assembly has

authorized a "county-based scheme to manage elections within the state, and consistent with that scheme the legislature endeavored to allow county election officials to oversee a manageable portion of the state in all aspects of the process." *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 409 (E.D. Pa. 2016); *accord Donald J. Trump for President, Inc. v. Boockvar*, — F. Supp. 3d —, 2020 WL 5997680, at *9 (W.D. Pa. 2020) (citing 25 P.S. § 2641(a)). As part of this delegated authority, "[t]he Election Code vests county boards of elections **with discretion to conduct elections and implement procedures intended to ensure the honesty, efficiency, and uniformity of Pennsylvania's elections**." *Boockvar*, 2020 WL 5997680, at *9 (citing 25 P.S. §§ 2641(a), 2642(g)) (emphasis added). It is wholly permissible—and expected—that counties will "employ entirely different elections procedures and voting systems within a single state" dependent upon the number of eligible voters, costs, innovative efforts, etc. *Donald J. Trump for President, Inc. v. Boockvar*, — F. Supp. 3d —, 2020 WL 5997680, at *44 (W.D. Pa. 2020).

    1.  Intake Process for Mail-in and Absentee Ballots

As more fully detailed in the Counties' Memorandum of Law in Support of the Motion to Dismiss and the subsequent Reply Brief, which are incorporated by reference, the arc of a mail-in ballot has a clear, predictable, and accountable trajectory. Voters applied for and were provided mail-in ballots. Bluestein Decl. ¶¶ 9-10; Szefi Decl. ¶¶ 8-9; Turner Decl. ¶¶ 9-10; and Dean Decl. ¶¶ 8-9. Mail-in and

absentee ballots that were returned to the Counties underwent an intake process, separate and independent of any pre-canvassing or canvassing activities to document receipt, verify voter information, and organize and expedite the canvassing process prior to Election Day. Bluestein Decl. ¶ 14; Szefi Decl. ¶ 13; Turner Decl. ¶ 14; and Dean Decl. ¶ 13. Any ballots that did not comply with the eligibility requirements in the Election Code were set aside and generally not included in the pre-canvassing process that began on Election Day, November 3, 2020, at 7:00 a.m. or were pre-canvassed but not included in any ballot counts. Bluestein Decl. ¶¶ 15-16; Szefi Decl. ¶¶ 14-15; Turner Decl. ¶¶ 15-16; and Dean Decl. ¶¶ 14-15.

    2.  <u>The Pre-canvass and Canvass of Mail-in and Absentee Ballots.</u>

Pre-canvassing and canvassing activities begin on Election Day. Pre-canvassing is defined by the Election Code as "the ***inspection and opening*** of all envelopes containing official absentee ballots or mail-in ballots, the ***removal*** of such ballots from the envelopes and the counting, computing and tallying of the votes reflected on the ballots." 25 P.S. §§ 2602(a.1), (q.1). This is a multi-faceted operation comprised of: (1) the inspection of the declaration envelope, (2) extraction of the secrecy envelope, (3) extraction of the ballot, and (4) counting the vote. Bluestein Decl. ¶ 15; Szefi Decl. ¶ 14; Turner Decl. ¶ 15; and Dean Decl. ¶ 14. Canvassing involves the same activities as pre-canvassing and is defined as the "gathering of

ballots *after the final pre-canvass meeting* and the counting, computing and tallying of the votes reflected on the ballots." 25 P.S. § 2602(a.1) (emphasis added).

### 3. Notification of Non-Compliant Mail-in or Absentee Ballots

On October 25, 2020, the Pennsylvania Secretary of State emailed all county boards of elections suggesting that they cancel ballots in the Commonwealth's Statewide Uniform Registry of Electors system ("SURE") that were returned without a secrecy envelope or declaration signature. *See* Pls. Mot. for Prelim. Inj., Ex. 1.[2] As some counties were preparing for these kinds of steps in advance while others did nothing, Counties ultimately responded to the Guidance in slightly different ways, all with largely the same end result. Philadelphia, for example, cancelled ballots received up to that point in SURE that were either unsigned or that had been identified through the automated sorting process (without being opened) as not containing a secrecy envelope. This rendered these ballots invalid, and automatically generated an email from the Department of State to any approved voter with an email address on file. Bluestein Decl. ¶ 17. Allegheny, Montgomery, and Chester counties notified the voter who submitted it with an explanation that it could not be counted because it did not meet the Election Code's requirements and

---

[2] Identifying a ballot as facially non-compliant did not involve opening the declaration envelope. Instead, the information on the outside of the envelope (like name, address, and signature) was plainly visible and the weight of the envelope was used to predict that the envelope had no secrecy envelope.

each county handled the ballot in a slightly different way, as addressed below. Szefi Decl. ¶ 15; Turner Decl. ¶ 16; and Dean Decl. ¶ 15. The specific actions of the Counties in response to this Guidance had the same net effect: the facially non-compliant ballots, as received, were segregated from the others until pre-canvassing and then, if not cured, were marked deficient. The Counties and the affected voters took the following actions in advance of and/or on Election Day:

| County | Maximum Number of Voters Provided Notice of Potential Deficiency | Actions Taken by County and Affected Voters |
|---|---|---|
| Philadelphia | 3,088 | The 3,088 mail-in and absentee ballot submissions set aside were cancelled in the SURE system; this caused an email to be sent to voters whose records in the SURE system included an email address. Bluestein Decl. ¶ 17. |
| Allegheny | Appx. 500 | The unopened ballot submissions were returned to the approximately 500 affected voters. Szefi Decl. ¶ 15. |
| Montgomery | 2,752 | Before Election Day, the Board generated a list of 2,752 absentee and mail-in ballot submissions with various issues—some related to postal issues and some related to potential deficiencies. If the Board had contact information for a voter whose ballot submission had a potential deficiency, the Board tried to contact that voter. Only 92 of these voters corrected potential deficiencies.

On Election Day, the Board pre-canvassed all ballot submissions—including those with potential deficiencies. The Board |

| | | kept a running list of absentee and mail-in ballot submissions that were confirmed to be deficient during the pre-canvass and canvass. Throughout Election Day, the Board alerted both political parties about the voters included on this list. By the end of the pre-canvass and canvass, 2,145 absentee and mail-in ballot submissions had been confirmed deficient. Dean Decl. ¶¶ 15-18. |
|---|---|---|
| Chester | Appx. 186 | Approximately 150 absentee and mail-in ballot submissions were potentially deficient prior to October 28, 2020 and approximately 36 additional ballot submissions were found to be potentially deficient between that date and Election Day; a list of affected voters was provided to the parties. Turner Decl. ¶ 16. |

Accordingly, even using generous estimates from the information above—*i.e.*, if every voter notified had 'cured' a ballot deficiency and that 'cure' were determined to be improper—the total number of ballots potentially at issue in this category is approximately 6,500. This is the potential universe of challenged ballots.

4. Provisional Ballots

The Election Code details the process by which a voter may cast a provisional ballot and how the boards of election should determine if that ballot may be counted. *Any* voter casting a ballot that fails to comply with the Election Code is eligible to cast a provisional ballot after satisfying certain requirements, including signing an affidavit setting forth his or her: name, date of birth, place of residence, and

affirmation that the individual has not cast another ballot in the election. *See* 25 P.S. § 3050(a.2), (a.4)(2). The completed ballot is then placed into a secrecy envelope that is put into a provisional ballot envelope, sealed, and signed by the voter. *Id*. § 3050(a.4)(3).

**All** provisional ballots are automatically set aside and not counted until the "county board of elections [] examine[d] **each** provisional ballot envelope that is received to determine if the individual voting that ballot was entitled to vote." *Id*. § 3050(a.4)(4) (emphasis added). This verification process includes confirmation that the individual has not already cast another ballot and is in fact an eligible voter. *Id*. § 3050(a.4)(2), (4). An authorized representative of each candidate and each political party is permitted in the room when this determination is being made. *Id*. These representatives are permitted to keep a list of voters who cast a provisional ballot and are entitled to challenge any decision by the county board of elections as to whether a ballot should be counted. *Id*. Any challenged ballots are set aside and "placed unopen in a secure, safe and sealed container" until a hearing can be held. *Id*. § 3050(a.4)(i). The hearing must be held within seven days of the challenge. *Id*. § 3050(a.4)(4)(ii).

5. Computation of Election Results for Certification

The Election Code requires that the computation be reported no later than 15 days after Election Day (*i.e.*, November 18, 2020). In an abundance of caution and

in light of the various challenges raised regarding mail-in and absentee ballots, provisional ballots, and canvassing, generally, the Counties have reported computations with segregated categories to account for, *inter alia*, ongoing state law challenges to some County Board decisions as well as ballots received on November 4, 5, or 6 that are the subject of the segregation order.

## II.     PROCEDURAL HISTORY

The unwieldy, scattershot history of this litigation is set forth in the Counties' Memorandum of Law in Support of its Motion to Dismiss and the Reply Brief filed in further support of the Motion, which are incorporated here by reference. *See* Counties' Mot. to Dismiss at 9-13, ECF No. 94, and Counties' Reply, ECF No. 177. Of most relevance here, the Trump Campaign filed a complaint seeking declaratory and injunctive relief against the Counties and the Commonwealth of Pennsylvania on November 9, 2020. Compl., ECF No. 1. On November 15, 2020, the Trump Campaign filed an amended complaint as of right. Am. Compl., ECF No. 125. By Order dated November 18, 2020, this Court directed the Trump Campaign to seek any requested injunctive relief by 5:00 p.m. on November 19, 2020. (ECF No. 167.) That Order provided that any opposition to the request for injunctive relief shall be filed by 5:00 p.m. on November 20, 2020 and any reply brief by 12:00 p.m. on November 21, 2020. (*Id.*)

# **ARGUMENT**

The Trump Campaign's claims that they were injured because the Counties treated "millions of mail-in voters" differently based on residence and "counted untold thousands of ballots" that failed to satisfy the requirements set forth in the Election Code, are utterly without merit and fall woefully short of meeting the high threshold required for preliminary injunctive relief. Indeed, the Trump Campaign's belated attempt to look for facts to support its unsubstantiated claims by seeking "a brief pause" to conduct discovery belies any argument that it has a likelihood of success on the merits—the cornerstone factor for the extraordinary remedy of granting preliminary injunctive relief.

As a threshold matter, neither the Trump Campaign nor the Individual Plaintiffs have standing to bring their motion for preliminary injunction before this Court. Second, neither the Trump Campaign nor the Individual Plaintiffs can meet their burden to prove, as they must, that their claims are likely to succeed on the merits, that they will suffer irreparable harm absent injunctive relief, that the balance of equities favors them, and that the injunction would be in the public interest. The essence of the Trump Campaign's audacious request is to enjoin the certification of 6.7 million votes (and thus the consummation of the exercise of the right to vote by 6.7 million voters) in a final gambit to prevent the certification of Pennsylvania's 20

electoral votes. The time for loud protest and baseless accusations of massive fraud is over. It is time to prove facts—and the Trump Campaign fails to do so.

## I. PLAINTIFFS LACK STANDING

In the operative Amended Complaint, the Trump Campaign has abandoned its fraud-based claims, including all counts related to observer access The Trump Campaign has also conceded that its Elections and Electors Clause claims were foreclosed by the Third Circuit's precedential opinion in *Bognet*. 2020 WL 6686120, at *7 ("Because Plaintiffs are not the General Assembly, nor do they bear any conceivable relationship to state lawmaking processes, they lack standing to sue over the alleged usurpation of the General Assembly's rights under the Elections and Electors Clauses."). Consequently, although Plaintiffs' Renewed Motion for a Temporary Restraining Order and Preliminary Injunction (the "Motion for Extraordinary Injunction") purports to reincorporate the fraud-based, due process, and Elections and Electors Clause claims, they are not properly before this Court. *See* Am. Compl. ¶¶ 150-70, ECF No. 95.

Notwithstanding the constant shifting of Plaintiffs' claims, Plaintiffs cannot be granted the extraordinary relief they request because both the Trump Campaign and Individual Plaintiffs have failed to establish they have standing to bring ***any*** federal constitutional claim. The Campaign and the Individual Plaintiffs have failed to and cannot establish (1) a concrete injury to their individually protected legal

interests, (2) that was caused by the Counties, and (3) would be appropriately remedied by enjoining the Commonwealth's certification of its votes. *See Bognet*, 2020 WL 6686120, at *6.

### A. The Trump Campaign Lacks Standing

The Trump Campaign—an entity legally precluded from casting a vote—asserts that it has standing on two grounds: (1) for the entity itself; and (2) for the candidate, Donald J. Trump. It is wrong.

The Trump Campaign does not (and could) not have Article III standing because it "represents only Donald J. Trump and his electoral and political goals"—not the interests of voters. *Donald J. Trump for President, Inc. v. Cegavske*, — F. Supp. 3d —, No. 20-cv-1445, 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020). "By statutory definition, a federal election candidate's 'principal campaign committee' is simply a reserve of funds set aside for that campaign." *Id.* (citing 52 U.S.C. § 30102). The Trump Campaign has no fundamental right to vote equivalent or even analogous to that of a citizen of the Commonwealth.

The Trump Campaign provides no argument in the Motion for Extraordinary Injunction to support its standing to seek the requested relief. Further, no case cited by the Trump Campaign in connection with the pending Motions to Dismiss supports its standing as an entity, as explained in the Counties' Reply (ECF No. 94, at 2-4), which is incorporated in total here by reference. In short, the Trump Campaign's

attempt to invoke the doctrines of associational and competitive standing fails as a matter of law and logic. *See id.* The Trump Campaign does not have associational standing because it is not a political association that "represent[s] . . . voters. The Trump campaign represents only Donald J. Trump and his 'electoral and political goals' of reelection." *Cegavske*, 2020 WL 5626974, at *4. Additionally, the Trump Campaign does not have competitive standing because it is not a candidate. It is merely the entity representing Donald J. Trump's political aspirations.

Moreover, and critically, the Trump Campaign simply fail to plead the basic elements of Article III standing either in connection with the present Motion or its opposition to the Motion to Dismiss. Article III standing requires a non-speculative injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Lance v. Coffman*, 549 U.S. 437, 439 (2007). The Trump Campaign flatly fails to plead each of those critical elements.

At the outset, the Trump Campaign claims no injury-in-fact. In the election context, this is an outcome determinative inquiry and the Trump Campaign has not *plausibly* put at issue enough votes to remotely change the outcome of the election— now decided by a margin of more than *81,000 ballots. See Bognet*, 2020 WL 6686120, at *8 ("[F]or Bognet to have standing to enjoin the counting of ballots . . . such votes would have to be sufficient in number to change the outcome of the election to Bognet's detriment."). At most, approximately 6,500 votes are at issue as

even allegedly constituting an "illegal vote." The Trump Campaign argues that voters who were notified that their ballot submissions were potentially deficient received an opportunity to exercise their right to vote that other voters in more "Republican-leaning counties" were not given. It is a matter of fact, not statistical configuration, however, that even if all of these ballot submissions were: (1) "cured" in one way or another as a result of the notice provided by the counties at issue; and (2) in fact cast for Candidate Joseph Biden (as they could have been cast for Candidate Trump); and (3) declared invalid, no more than 6,500 ballots would be affected. Under no semblance of reason could the Trump Campaign contend that such a nominal amount of votes warrants the disenfranchisement of 6.7 million voters.

Additionally, even if this were not the case, the Trump Campaign cannot plead an actionable injury based on hypothetical and speculative claims of fraud or "illegal" votes. *Id.* at *16-17 (Article III standing must be "based on well-pleaded facts; we do not credit bald assertions that rest on mere supposition"). The Trump Campaign has yet to plead plausible claims of fraud or illegality and it struck all previously relied upon bare assertions of fraud from its Amended Complaint. *See Stein v. Cortes*, 223 F. Supp. 3d 423, 432 (E.D. Pa. 2016) (holding allegations of potential machine hacking "simply do[es] not constitute an injury-in-fact").

Finally, Plaintiffs' Motion for Extraordinary Injunction again endeavors to revive the Campaign's failed ballot-observation claim—a theory that has been definitively resolved against the Trump Campaign by the Supreme Court of Pennsylvania.[3] This challenge (now recast as a claim of "ballot security") has no basis in Pennsylvania law—where partisan observers are not tasked with verifying the validity of votes.

The Trump Campaign also fails to establish the causation element of standing. The claims of "ballot security," the opportunity to "cure," or vote a provisional ballot are not traceable to Defendants' actions. Both the Amended Complaint and the Motion for Extraordinary Injunction rely upon the speculative acts of third parties for their "illegal" vote claims—not the Counties. "[S]peculation about the decisions of independent actors" cannot provide the basis for standing. *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-CV-966, 2020 WL 5997680, at *2-3 (W.D. Pa. Oct. 10, 2020) (internal quotation marks omitted). The Trump Campaign has not identified a causal link to sue the Counties that satisfies Article III standing.

Lastly, the Trump Campaign's alleged injury cannot be redressed. As discussed above, the Trump Campaign has failed to plausibly allege that Trump

---

[3] In any event, this claim asserts only speculative injury that depends on an illogical leap that rational and legal county differences in partisan ballot observation somehow resulted in illegal votes. *See In re Canvassing Observation Appeal of City of Phila. Bd. of Elections*, No. 30-EAP-2020, — A.3d —, 2020 WL 6737895, at *8-9 (Pa. Nov. 17, 2020).

would close his 81,000-vote deficit but for the issues he raises. *Lujan*, 504 U.S. at 571 (holding that redressability is lacking where "it is entirely conjectural whether the nonagency activity that [allegedly] affects respondents will be altered . . . by the agency activity they seek to achieve"). The Trump Campaign cannot allege that the overall Pennsylvania election results would be different if the alleged "cure disparity" was remedied, and thus cannot redress their claim.

For these reasons, the Trump Campaign does not have standing.

## B. The Individual Voters Do Not Have Standing

Likewise, Mr. Roberts and Mr. Henry lack standing. The Counties did not deprive Mr. Roberts or Mr. Henry of their right to vote. They acted in accordance with the Election Code and Guidance from the Secretary of State when determining which ballots should be cancelled due to a deficiency. It was Mr. Roberts and Mr. Henry's own failure to follow directions with respect to completing their mail-in ballots that resulted in their votes not counting. That the Counties exercised their discretion to notify residents in their districts with notification of the status of ballot submissions and information about how to proceed if they wanted their vote to count in the election—while the counties in which Mr. Roberts and Mr. Henry exercised their discretion no to do the same—is not a constitutional injury.

Mr. Henry alleges—for the first time in the Amended Complaint and in a declaration appended to the Motion for Extraordinary Injunction—that his mail-in

ballot was rejected and cancelled because it was not enclosed in a secrecy envelope.[4] Am. Compl. ¶ 15; *see also* Pls. Mot. for Prelim. Inj., Ex. 13 at ¶ 2. Mr. Roberts states in a declaration appended to the Motion for Extraordinary Injunction that, after having voted by absentee ballot for fifteen years without incident, he was unable to cast a valid vote this year. Pls. Mot. for Prelim. Inj., Ex. 14 at ¶¶ 7-10. He claims that he handed his absentee ballot to an election official and was notified after Election Day that has ballot had been cancelled. *Id.* ¶ 9.

Even taking these claims as true, which is not required at this posture, neither Mr. Henry nor Mr. Roberts alleges a concrete injury because they fail to allege that they would have cured their defective ballots had they had the opportunity to do so. *Bognet*, 2020 WL 6686120, at *6 (holding that to bring suit you "must be injured in a way that concretely impacts your own protected legal interest"). First, setting aside of course that Mr. Henry has no claim based on his assertion that his *improperly* cast ballot was not counted, such a generalized injury cannot support standing. We are left to speculate as to what actions he and Mr. Roberts—or any other voter—would have taken had they been given the opportunity to cure. These speculations and hypotheticals concerning whether a voter would have cured his mail-in ballot cannot establish the requisite injury in fact required to maintain standing. *Berg v. Obama*,

---

[4] Plaintiffs, in their original Complaint, admitted that such ballots should not be counted and even requested an emergency order prohibiting the certification of election results that included such ballots. Compl. ¶ 15.

586 F.3d 234, 239 (3d Cir. 2009). And, of note, Mr. Roberts alleges he was not notified that he was permitted to cure his ballot, despite living in Fayette County, which is not alleged to be among the Counties prohibiting cure. *See* Am. Compl. ¶¶ 16, 130.

Finally, the Individual Plaintiffs assert no impediment to casting a provisional ballot—a procedure all Pennsylvania voters could have used to record their vote while the county board of elections determined whether it could be counted. *See* 25 P.S. §§ 3050, 3146.6(b)(2), 3150.16(b)(2). The independent decision of voters to avail themselves of the provisional balloting procedure is not traceable to the Counties. The Individual Plaintiffs may not create an equal protection injury for standing purposes by including themselves in an allegedly "injured" group of citizens who did not receive notification of their deficient or cancelled ballots and an express invitation to remedy that deficiency in a manner that complied with the Election Code. There is no constitutional right or statutory entitlement to either action. If the rule were otherwise, any voter could submit a faulty ballot and then claim to have standing if, after all the votes were counted, his candidate lost. Thus their "conflating [of] all persons [who received such notice] into a preferred class receiving better treatment than [them]" will not state an equal protection claim. *See Bognet*, 2020 WL 6686120, at *15.

Neither the Trump Campaign nor the Individual Plaintiffs can demonstrate the requisite injury in fact or causation and therefore lack standing to bring their claims.

## III. THE TRUMP CAMPAIGN CANNOT SHOW ANY ENTITLEMENT TO THE INJUNCTIVE RELIEF REQUESTED

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008). To meet its burden for both a temporary restraining order and a preliminary injunction, the Trump Campaign must establish four factors: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm absent preliminary relief, (3) that the balance of equities favors them, and (4) that an injunction would be in the public interest. *Bognet v. Boockvar*, No. 20-cv-215, 2020 WL 6323121, at *2 (W.D. Pa. Oct. 28, 2020). The first two factors are critical. *See Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (holding that "only if these 'gateway factors' are established does the district court consider the remaining two factors").

As an initial point, in the same vein as its other audacious requests, the Trump Campaign asks this Court to upend this familiar, axiomatic standard by arguing ***that the Counties*** should bear the burden of proving each vote cast in the 2020 General Election was legal. Pls. Mot. for Prelim. Inj., 23-24. Stated differently, the Trump Campaign asks the Court to ***assume*** its entitlement to enjoin the certification of 6.7 million votes while the Counties amass evidence of each vote's legality to prove an injunction is not warranted. That is not the law. Plaintiffs ask this Court to ignore

their burden of showing injunctive relief is warranted. They argue, without any support, that an injunction is warranted unless the Defendants "prov[e] the Mail Votes Were Legal." This attempt to avoid their burden of proof reveals they lack a leg to stand on. Plaintiffs have not come close to meeting their burden of establishing that extraordinary relief is warranted, and the motion should be denied on that basis alone.

The Plaintiffs offer no legal support for this extreme departure from a well-known standard or in support of the Court dispensing with the presumption of regularity and assuming the Counties did not properly carry out their official duties without any "meaningful evidentiary showing." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (2004); *see also Phila. Redevelopment Authority v. Atuahene*, 229 A.3d 1002, 1011 (Pa. Super. Ct. 2020) ("The presumption of regularity is *prima facie* evidence that public officials will properly carry out their official duties, unless and until contrary evidence is presented."). In the election context, absent such a showing, a court should "presume[] the returns of [an] election board were regular, and the election officers properly and in good faith performed the duties imposed on them." *In re Ellwood City Borough's Contested Election*, 286 Pa. 257, 259 (Pa. 1926).

As to the substance of the Trump Campaign's motion, Plaintiffs cannot demonstrate a likelihood of success on the merits or irreparable harm for three

reasons. *First*, as previously discussed, they lack standing to bring the claims raised here, all of which are premised upon generalized, hypothetical violations that—if they exist—are borne equally by every eligible voter of the Commonwealth. Thus, the Trump Campaign has failed to state a legally cognizable constitutional injury. *Second*, every purported errant "ultra vires" discretionary decision exercised by the Counties is premised upon a violation of state law, which, again, cannot state a federal constitutional injury. *Finally*, inherent in the Trump Campaign's inability to identify a specific, concrete, constitutional injury, is the readily apparent failure to state any irreparable harm. As the Trump Campaign cannot state a likelihood of success on the merits warranting the extraordinary relief of a preliminary injunction, it is certainly not entitled to the exceedingly rare remedy of enjoining certification of the Commonwealth's votes and the disenfranchising of millions of voters.

The United States Court of Appeals for the Third Circuit recently dismissed a similarly specious motion for a TRO and preliminary injunction based on a "commitment to a proposition indisputable in our democratic process: that the lawfully cast vote of every citizen must count." *See Bognet*, 2020 WL 6686120, at *1. Taking up that same charge should cause this Court to reach the same result here.

### A. The Court Should Deny the Trump Campaign's Motion Because It Is Unlikely to Succeed on the Merits

The Third Circuit has made clear that establishing potential success on the merits requires a plaintiff "demonstrate that [it] can win on the merits (which

requires a showing significantly better than negligible but not necessarily more likely than not)." *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir.), *cert. denied*, 139 S. Ct. 440 (2018). "A plaintiff's failure to establish a likelihood of success on the merits 'necessarily result[s] in the denial of a preliminary injunction.'" *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 115 (3d Cir. 2018).

The Trump Campaign, whether or not properly pleaded (a point more fully addressed in the Motion to Dismiss briefing), ostensibly seeks to raise two constitutional issues: (i) an equal protection claim, and (ii) a claim for violations of the Elections and Electors Clauses of the U.S. Constitution.[5] For the reasons set forth

---

[5] Plaintiffs argue that "Defendants conduct violated due process" (Pls.' Opp. Br. to Mot. to Dismiss, at 9-10, ECF No. 170), but no due process claims are at issue. Plaintiffs voluntarily *removed* those claims when they filed their operative First Amended Complaint—supposedly as a result of some mix of "confusion" and "mistake."

  Under the Pennsylvania preclusion rules that govern here, *see Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006), res judicata applies where four factors are present: "(1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued." *Robinson v. Fye*, 192 A.3d 1225, 1231 (Pa. Commw. Ct. 2018). Where it applies, res judicata bars not only "those claims that were 'actually litigated' in the first adjudication," but also any claims that "could have been litigated . . . if they were part of the same cause of action." *Id.* Notably, "[a] judgment is deemed final for purposes of res judicata and collateral estoppel unless or until it is reversed on appeal." *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996). "Res judicata is not a mere matter of technical practice or procedure but a rule of fundamental and substantial justice." *Shah v. United States*, 540 F. App'x 91, 93 (3d Cir. 2013), *aff'g* No. 12-119, 2013 WL 1869095 (W.D. Pa. May 3, 2013) (Gibson, J.).

below and those stated in the Counties' Motion to Dismiss and Reply Brief, the Trump Campaign cannot claim a likelihood of success on the merits because it has failed to establish a constitutional injury.

1. *The Trump Campaign Cannot Prevail on Its Equal Protection Claims*

The Trump Campaign's equal protection claims are based on the Counties allegedly violating state law by examining ballots before Election Day and notifying voters who submitted ballots that did not comply with the Election Code that their

---

Moreover, even if the Court considered such a claim, it would be premised on observation procedure allegations that the Pennsylvania Supreme Court recently held *did not violate* the Election Code. As a result, the claim is also barred by the Rooker-Feldman doctrine, which prohibits collateral attacks in federal court on state court judgments. *See, e.g.*, *Stein v. Cortes*, 223 F. Supp. 3d 423, 434 (E.D. Pa. 2016) (citing *Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004); *see also D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)).

Finally, any amendment to assert a due process claims would be futile and the claim would fail as a matter of law and on the merits in any event. *See* Counties' Mot. to Dismiss, at 24-30, ECF No. 94. It is well established that there is no federal constitutional right to "poll watch." *Pa. Democratic Party v. Boockvar*, No. 133 MM 2020, — A.3d —, 2020 WL 5554644, at *30 (Pa. Sept. 17, 2020) (citing *Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 408, 415 (E.D. Pa. 2016)) ("there is no individual constitutional right to serve as a poll watcher; rather, the right to do so is conferred by statute"; nor does poll watching implicate anyone's First Amendment rights); *Trump*, 2020 WL 5997680, at *72 (same); *accord Harris v. Conradi*, 675 F.2d 1212, 1216 n.10 (11th Cir. 1982); *Baer v. Meyer*, 728 F.2d 471, 476 (10th Cir. 1984); *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 364 (S.D.N.Y. 2007); *Republican Party*, 218 F. Supp. 3d at 414 ("Because the Pennsylvania Election Code, not the United States Constitution, grants parts the ability to appoint poll watchers, the state is free to regulate their use[.]"). The Trump Campaign implicitly admits this by, for example, not raising any constitutional concerns in a state like West Virginia, where no poll watchers are permitted at all. W. Va. Code § 3-1-37.

ballots had been cancelled. *See* Pls. Mot. for Prelim. Inj., 15-17. Putting aside the hyperbole and speculation, the Trump Campaign has fallen woefully short of a stating a constitutional injury.

*First*, at worst, the Trump Campaign's claims are based on violations of state law that do not—and cannot—state a constitutional injury. *Donald J. Trump for President, Inc. v. Boockvar*, — F. Supp. —, 2020 WL 5997680, at *46 (W.D. Pa. Oct. 22, 2020) ("[I]t is well-established that even violations of state election laws by state officials . . . do not give rise to federal constitutional claims."). The Trump Campaign's claims that the Counties counted ballots that did not comply with the Election Code's requirements, *see id.* at *18, and violated the Election Code by notifying voters that the ballots they cast contained some deficiency do not state an equal protection violation. Pls. Mot. for Prelim. Inj., at 17; *see also id.* at Exs. 12, 15. Even if these claims are true.

*Second*, the Trump Campaign premises its claimed equal protection violation on the Counties' exercise of their delegated authority to implement the Election Code. *See* 25 P.S. §§ 2641(a), 2642(g)). Plaintiffs have not identified any state law, regulation, or policy that burdened the right of any Pennsylvania citizen's vote. Pennsylvania's General Assembly authorized the Counties to use their discretion in assessing the needs of their residents, available resources, and numerous other factors when implementing the specific procedures needed to administer an election.

Any differences in each county boards' process of notifying voters of deficient ballots, as an example, is a recognition of these differences and manifestation of that delegated discretion. The Trump Campaign's claims based on the cancellation notifications given to Mr. Henry, Mr. Roberts, and the four additional declarants referenced in the Motion for Extraordinary Injunction are simply different notes in the same refrain. These claims do not evidence the devaluation or discriminatory treatment of a cognizable group, sufficient to establish an equal protection violation. Importantly, "while the Constitution demands equal protection, that does not mean all forms of differential treatment are forbidden." *Donald J. Trump for President, Inc. v. Boockvar*, 2020 WL 5997680, at *38. The Trump Campaign's attempt to cast the Counties' lawful discretionary decision-making into an equal protection violation is in the vein of those protestations repeatedly rejected by circuit courts as being the type of "garden variety election irregularities" that don't state a constitutional injury. *Acosta v. Democratic City Comm.,* 288 F. Supp. 3d 597, 643 (E.D. Pa. 2018).

Finally, the Trump Campaign's claim that counting ballots with certain purported declaration deficiencies (such as a missing date or incomplete address) fail because they have not pled such allegations in the operative complaint. Similar equal protection claims were asserted by the Trump Campaign and rejected less than two months ago. *Donald J. Trump for President, Inc*, 2020 WL 5997680, at *38. As

Judge Ranjan explained, "'[c]ommon sense, as well as constitutional law, compels the conclusion' that states must be free to engage in 'substantial regulation of elections'" to ensure "'order, rather than chaos,'" in the election administration. *Id.* (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). Indeed, "'[i]t is well-settled that states may employ in-person voting, absentee voting, and mail-in voting and each method need not be implemented in exactly the same way." *Id.* at *61. Thus, "while the Constitution demands equal protection, that does not mean all forms of differential treatment are forbidden." *Id.* (dismissing identical claim). "If the courts were 'to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest,' it 'would tie the hands of States seeking to assure that elections are operated equitably and efficiently.'" *Id.* (quoting *Burdick*, 504 U.S. at 433)). Consequently, the Trump Campaign shows no chance, let alone a likely one, of success on the merits of the claim.

> 2.   *Plaintiffs Admit That They Cannot Prevail on Their Elections and Electors Clause Claims*

The Elections and Electors Clause claims, while not removed from the Amended Complaint, have no merit by the Trump Campaign's own admission. Plaintiffs "acknowledge that—because the General Assembly is not a party here— *Bognet* forecloses their allegations that they have standing to pursue their Elections and Electors Clause claims." Pls.' Resp. to Notice of Supp. Auth. at 1, ECF No. 124.

Accordingly, any relief requested under this clause is belied by Plaintiffs' own admission of its inapplicability in this matter and, accordingly, there is no likelihood of success on the merits of this claim.

### B. The Trump Campaign Cannot Prove Irreparable Harm

Unsurprisingly, given the Trump Campaign's inability to demonstrate an actual injury for standing purposes or success on the merits of its claim, it is also unable to establish that it will suffer irreparable harm absent an injunction. The Trump Campaign contends it will be irreparably harmed without an injunction because Pennsylvania's electoral votes will be awarded to Joseph Biden and any subsequent proof that could be marshalled that the "election was invalid, unequally administered, and included the tabulation of unlawful votes" would be moot. Inherent in the Trump Campaign's argument of purported irreparable harm is the concession that: (1) it cannot state an equal protection injury, and (2) it comes to Court with pure speculation and conjecture.

First, irreparable harm cannot ensue where, as here, a plaintiff has merely claimed, **but failed to show**, it suffered a constitutional injury. This alone is enough to determine that no irreparable injury will result from a denial of the requested discovery or denial of an injunction against the certification of Pennsylvania's votes. *See Boockvar*, 2020 WL 5407748, at *4 (W.D. Pa. 2020) (denying preliminary injunction alleging equal protection violations regarding absentee and mail-in

ballots, because "Plaintiffs [had] not shown that the harm they fear[ed] is 'likely,' or than an injunction is the 'only' way to prevent it[.]").

The Election Code and Secretary of State's Guidance required that all voters who did not submit their mail-in ballots in a secrecy envelope or otherwise failed to comply with the requirements in the Election Code would not have their votes counted. *See* Am. Compl. ¶¶ 15-16, 130. These are facially neutral requirements uniformly applied to all counties. Any county that complied with this guidance and additionally offered a provisional ballot to residents whose ballots had been cancelled at worst violated the Election Code, which does not state a federal constitutional violation. *Lecky v. Virginia State Bd of Elections*, 285 F. Supp. 3d 910, 919 (E.D. Va. 2018) ("[E]ven assuming the [state] officials' failure to provide provisional ballots amounted to a violation of state law, it would not rise to the level of an equal protection violation.").

Second, as additional information about the number of votes that were cancelled and subsequent provisional ballots cast will not help the Trump Campaign state an equal protection violation, no irreparable harm will be suffered by denying the requested injunctive relief. Especially where the information they seek to discover is already a matter of public record.

Third, the Trump Campaign cannot demonstrate irreparable harm where there are viable state-court remedies at the Trump Campaign's disposal. Not only does the

Trump Campaign already have ballot-sufficiency claims pending in state court, there are procedural mechanisms in the Election Code that can adequately address all of the challenges raised here. *See* Counties' Mot. to Dismiss, at 9-13, 36-37.

### C. The Equities and Public Interest Necessitate Denying the Requested Relief

Finally, although this Court can comfortably deny the Trump Campaign's motion for lack of standing and an inability to show a likelihood of success on the merits, the equities in the balance and public interest also require this result.

Contrary to the Trump Campaign's assertions, it is in fact the Commonwealth of Pennsylvania and its voting electorate—not the Trump Campaign—that will be irreparably harmed if this motion is granted. The General Assembly established laws and regulations whereby Pennsylvania citizens were assured that if they voted in-person or timely requested submitted a mail-in or absentee ballot to their respective Board of Elections, their voices would be heard and their votes counted. The General Assembly did not render one of the voting methods more legitimate than the other— all three voting methods (in-person, mail-in, and absentee) carry with them the same assurances to the citizens of Pennsylvania that their votes would be counted and their voices heard. The General Assembly "vest[ed] the right to vote for president in its people, [and] the right to vote as the legislature has prescribed is fundamental." *Bush v. Gore*, 531 U.S. 98, 104 (2000). The Trump Campaign's motion seeks this Court's assistance in disenfranchising 6.7 million Pennsylvanians and undermining the

public's faith in a successfully free, fair, and legal election. *See Org. for Black Struggle v. Ashcroft*, 978 F.3d 603 (8th Cir. 2020) ("[C]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy" and "the State's interest[] in . . . quickly certifying election results . . . further serve[s] the public's interest[.]" (internal quotation marks and citations omitted)). The relief Plaintiffs request would inflict truly irreparable and unconscionable harms upon the public with no support set forth in the pending motion. The clear public interest weighs heavily in favor of denying the grant of an injunction.

The Trump Campaign relies heavily, and misguidedly, on *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994), for the availability of the remedies it seeks. *Marks* involved specific, proven findings of organized wrongdoing in the form of "massive absentee ballot fraud." *Id*. at 887.[6] That is not even close to the record evidence here. By the Trump Campaign's own admission, there are no present allegations of fraud nor do they properly allege that any other situation within the Counties' election practices amount to the harms shown in *Marks*. By the Trump Campaign's own admission, their claims rest on the alleged differences in the Counties' dealing with

---

[6] *Marks* involved an organized and executed plan to defraud citizens into applying for absentee ballots when they did not meet the criteria, with outright lies that this represented a "new form of voting," so that they ballots could ultimately be cast fraudulently.

the mail-in votes and whether voters were notified of deficiencies observable upon receipt of the ballot submission. The remedy ordered in *Marks* was both extreme and anomalous and is not justified in cases involving routine election issues, let alone in this matter where there are no properly pled allegations of wrongdoing. *See*, *e.g.*, *Perkins v. Matthews*, 400 U.S. 379 (1971) (Black, J. dissenting) ("This Court has always heretofore been rightly hesitant in interfering with elections even for the grossest abuses."); *Perles v. Cty. Return Bd. of Northumberland Cty.*, 415 Pa. 154, 159 (1964) ("The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities, must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons."); *Appeal of Simon*, 46 A.2d 243, 246 (Pa. 1946) ("For mere irregularities in conducting an election it is not to be held void," "because the rights of voters are not to be prejudiced by the errors or wrongful acts of the officers of the election.").[7]

---

[7] *See also Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978) ("Federal court intervention into the state's conduct of elections for reasons other than racial discrimination has tended, for the most part, to be limited to striking down state laws or rules of general application which improperly restrict or constrict the franchise."); *Pa. Democratic Party*, 2020 WL 5554644, at *9 ("[I]t is well-settled that, although election laws must be strictly construed to prevent fraud, they ordinarily will be construed liberally in favor of the right to vote . . . to enfranchise and not to disenfranchise" voters.); *Lopez v. Merced Cnty., Cal.*, 473 F. Supp. 2d 1072, 1082 (E.D. Cal. 2007) (three judge panel explaining that, "like other courts faced with similar situations, [it was] reluctant to set aside the results or prevent certification of

But the Trump Campaign not only seeks decertification of the vote without any basis in fact, let alone wrongdoing, it blatantly goes further and seeks the certification of the vote in favor of Donald Trump. The Third Circuit refused to take that unprecedented step even in the face of the gross wrongdoing presented in *Marks*. Despite the gross findings of massive absentee ballot fraud and voter deception, the Third Circuit refused to affirm the certification of Marks (the losing party) as a remedy—the remedy the Trump Campaign seeks here—because there was not a showing that Marks would have won the election absent the wrongdoing; stating that the primary concern was not in punishing a candidate or party but to promote the public interest and this interest is not served by arbitrarily ignoring the absentee vote. *Marks*, 19 F.3d at 888.

Accordingly, this Court should refuse Plaintiffs' baseless and unprecedented request for a preliminary injunction.

## IV. SOVEREIGN IMMUNITY PRECLUDES ISSUANCE OF AN INJUNCTION AGAINST THE COUNTY DEFENDANTS

This Court also does not have jurisdiction to enjoin the Counties as they are arms of the state entitled to immunity under the Eleventh Amendment of the U.S.

---

an election"); *Baber v. Dunlap*, 349 F. Supp. 3d 68, 76 (D. Me. 2018) (noting that "the cure [is] worse than the alleged disease, at least insofar as the professed concern is with the right of voters to cast effective ballots in a fair election"); *Ron Barber for Cong. v. Bennett*, No. 14-CV02489, 2014 WL 6694451, at *7 (D. Ariz. Nov. 27, 2014) (explaining that the plaintiffs had "point[ed] to no cases where a court enjoined further action by state electoral officials after the election").

Constitution. *Trinsey v. Montgomery Cnty. Bd. of Elections*, No. 87-6975, 1988 WL 82877, at *1 (E.D. Pa. Aug. 4, 1988) (claims against Pennsylvania county boards of election are "barred by the Eleventh Amendment"). Courts in Pennsylvania and elsewhere have repeatedly held that as long as the claims asserted against county boards of elections challenge their administration of federal and state-wide elections, those claims are barred under the sovereign immunity doctrine. *Id.*; *Hunter v. Hamilton Cnty. Bd. of Elections*, 850 F. Supp. 2d 795, 801 (S.D. Ohio 2012); *see also Citizens for John W. Moore Party v. Bd. of Election Comm'rs of City of Chi.*, 781 F.2d 581, 584 (7th Cir. 1986) (Easterbrook, J., dissenting from decision to certify state-law question to Illinois Supreme Court). Accordingly, even if this Court were inclined to issue an injunction, it cannot be directed at the Defendant Counties.

## CONCLUSION

The Trump Campaign's audacious request for injunctive relief would result in the disenfranchisement of the 6.7 million Pennsylvanians who voted in the November 3 election. The Trump Campaign has not proffered any facts or legal arguments that would even remotely support this extraordinary relief. Accordingly, the Trump Campaign's request for the issuance of a preliminary injunction should be denied.

Dated November 20, 2020

Respectfully submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

By:   */s/ Mark A. Aronchick*
Mark A. Aronchick (I.D. No. 20261)
Michele D. Hangley (I.D. No. 82779)
Robert A. Wiygul (I.D. No. 310760)
John G. Coit (I.D. No. 324409)
Christina C. Matthias (I.D. No. 326864)
John B. Hill (I.D. No. 328340)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone: (215) 496-7050
Email: maronchick@hangley.com

Virginia Scott (I.D. No. 61647)
Allegheny County Law Department
445 Fort Pitt Commons, Suite 300
Pittsburgh, PA 15219
412-350-1120
*Counsel for Allegheny County Board
of Elections*

*Counsel for Allegheny County Board of
Elections, Chester County Board of
Elections, Montgomery County Board of
Elections, and Philadelphia County
Board of Elections*

Joshua M. Stein (I.D. No. 90473)*
Montgomery County Solicitor
Montgomery County Solicitor's
Office
One Montgomery Plaza, Suite 800
P.O. Box 311
Norristown, PA  19404-0311
(610) 278-3033
*Counsel for Montgomery County
Board of Elections*

CITY OF PHILADELPHIA LAW
DEPT.
Marcel S. Pratt, City Solicitor
(I.D. No. 307483)*
Benjamin H. Field, Divisional Deputy
City Solicitor* (I.D. No. 204569)
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595
(215) 683-5444

*Motions for Special Admission
Forthcoming

*Counsel for Philadelphia County Board
of Elections*