# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DONALD J. TRUMP FOR
PRESIDENT, INC., *et al.*,

           Plaintiffs,

    v.

KATHY BOOCKVAR, in her capacity
as Secretary of the Commonwealth of
Pennsylvania, *et al.*,

           Defendants.

NO. 20-CV-02078-MWB

## DECLARATION OF FRANK DEAN, MAIL-IN ELECTION DIRECTOR FOR MONTGOMERY COUNTY'S VOTER SERVICES OFFICE

I, Frank Dean, make this Declaration and state as follows:

1. I am of legal age and competent to provide this Declaration.

2. I am the Mail-In Election Director for Montgomery County's Voter Services Office.

3. The Montgomery County Commissioners are three elected officials in charge of elections and voter registration for Montgomery County. The Commissioners set and enforce department policies to administer voter registration and conduct elections in accordance with federal and state voter registration and election laws.

4. Pursuant to the Pennsylvania Election Code, the Commissioners constitute the Board of Elections for Montgomery County. The day to day operations of the Board, including much of the work described below that is performed in preparation for elections, is

conducted by its employees, and overseen by the Voter Services Office and the offices of the County Commissioners. References below to "the Board" include the work of the Board staff, the Voter Services Office, and the offices of the County Commissioners in preparation for the election and are not limited to matters on which the three-member Board of Elections has reached a formal determination.

5. By virtue of my work as the Voter Services Office's Mail-In Election Director, I have a thorough knowledge of Montgomery County's election procedures and administration and have firsthand knowledge of the Board's preparation for and execution of the pre-canvassing and canvassing of ballots for the general election in Montgomery County on November 3, 2020. The factual statements herein are based on my personal knowledge and on records created and maintained by the Board as part of its regularly conducted activities.

6. Last year, the state legislature enacted Act 77 of 2019, which significantly changed the requirements for voter registration and elections beginning with the 2020 primary election.

7. Act 77 required for the first time that the Board provide a no-excuse mail-in ballot to voters who are not eligible for absentee ballots. Voters could apply for these ballots up until October 27, 2020, for the 2020 General Election.

8. Voters can apply for mail-in or absentee ballots online or by a paper application. Under 25 P.S. § 3150.12b and § 3146.2b for mail-in and absentee ballots, respectively, the Board determines the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained in the voter's registration records.

9. The Board provided mail-in and absentee ballots only to voters who requested them. The Board provided mail-in and absentee ballots to these voters, along with instructions for filling out and returning the ballots using the two envelopes provided – the inner "secrecy" envelope and the outer "declaration" envelope.

10. The instructions directed voters to complete their ballots, place their ballots in the provided secrecy envelope, then place the secrecy envelope containing their ballot in the provided declaration envelope.

11. There are three general stages of the Board's handling of absentee and mail-in ballots.

12. First, ballots arrive at the Board.

13. Second, before Election Day and before absentee and mail-in ballots are pre-canvassed and canvassed (*i.e.*, reviewed and counted), the Election Code requires county board of elections staff to conduct some type of processing of each and every absentee and mail-in ballot submission and, without opening the declaration envelope, make a record that the ballot has been submitted: "The district register at each polling place shall clearly identify electors who have received and voted absentee ballots as ineligible to vote at the polling place, and district election officers shall not permit electors who voted an absentee ballot to vote at the polling place." 25 Pa. C.S. § 3146.6(b)(1); 25 P.S. § 3150.16(b)(1). The only way for the district register to include information about voters who have already submitted an absentee or mail-in ballot is for Board staff to review the submissions, without opening the declaration envelopes, before pre-canvassing and canvassing, which may start on Election Day. While processing ballot submissions in this second stage, the Board identified potential deficiencies.

14. Third and finally, on and (to the extent necessary) after Election Day, ballots are pre-canvassed and canvassed, in a process that is distinct from the above-described processing of ballot submissions. Pre-canvassing is "the inspection and opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes and the counting, computing and tallying of the votes reflected on the ballots." 25 Pa. C.S. § 2602 (q.1). Canvassing is "the gathering of ballots after the final pre-canvass meeting and the counting, computing and tallying of the votes reflected on the ballots." § 2602(a.1).

15. To the extent that the Board identified a potential deficiency in an absentee or mail-in ballot submission **before** Election Day while processing ballot submissions, if the Board had contact information for the voter, the Board attempted to contact the voter to alert them to the deficiency. On October 31, 2020, the Board provided both political parties with a list of 2,752 voters, comprising (1) voters whose ballots had been returned because of a postal issue (such as an undeliverable address) and (2) voters whose absentee and mail-in ballot submissions contained potential deficiencies.

16. In total, 92 voters, after being contacted regarding a potential deficiency with their absentee or mail-in ballot submission, came to the Montgomery County Human Services Center before Election Day to address the potential deficiency. Once those ballots were returned to the Board by voters, the ballots were scanned into the SURE system and then segregated from other ballots while securely stored in locked cabinets in the Montgomery County Human Services Center.

17. In Montgomery County, during the pre-canvass and canvass of ballots, which included a review of absentee and mail-in ballots submitted before and on Election Day, the Board

concluded that 2,145 absentee and mail-in ballot submissions were deficient (which includes the number of ballot submissions, included in the 2,752 described in Paragraph 15 above, that had been identified as containing a potential deficiency in the list released on October). None of those 2,145 ballots were counted.

18. During the day on Election Day, the Board provided both political parties with a list of the names of the voters whose ballots were cancelled during the pre-canvass. That list included some, but not all, of the voters who had submitted the 2,145 deficient absentee and mail-in ballots. To the extent the list did not address all of the deficient ballots, it was because some ballots were received during the day on Election Day and were not pre-canvassed.

19. As the Voter Services Office's Mail-In Election Director, I helped oversee the pre-canvass and canvass operations at the Montgomery County Human Services Center that began at approximately 7:00 A.M. on Tuesday November 3, 2020.

20. Under 25 P.S. 3146.8(g)(1.1), one authorized representative of each candidate in an election and one representative from each political party are permitted to remain in the room in which the absentee ballots and mail-in ballots are pre-canvassed.

21. Republican and Democratic observers were permitted to be present, and were present, throughout the entire pre-canvass and the canvass process.

22. Each stage of the pre-canvass and canvass process, from the review of the declaration envelope to the scanning of all ballots, occurred within the full, unobstructed view of the campaigns' and political parties' designated observers.

23. At no point on or after Election Day did the Trump Campaign or any other candidate or party file any legal challenge or assert any formal objection or challenge based on the

observers' access to the pre-canvassing/canvassing room or the observers' ability to observe the pre-canvass/canvass.

24. To my knowledge, there is no evidence of any voting fraud in Montgomery County during the 2020 general election.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 19, 2020

Frank Dean