## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Donald J. Trump for President, Inc., Lawrence Roberts, and David John Henry,<br><br>    Plaintiffs,<br><br>  v.<br><br>Kathy Boockvar, in her capacity as Secretary of the Commonwealth of Pennsylvania, Allegheny County Board of Elections, Centre County Board of Elections, Chester County Board of Elections, Delaware County Board of Elections, Montgomery County Board of Elections, Northampton County Board of Elections, and Philadelphia County Board of Elections,<br><br>    Defendants,<br><br>  v.<br><br>DNC Services Corporation/Democratic National Committee,<br><br>    Proposed Intervenor-Defendant. | No. 4:20-cv-02078-MWB<br>(Judge Matthew W. Brann) |

## INTERVENOR DNC'S MEMORANDUM IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................3

I.   Election Contests And Other State Law Remedies that Plaintiffs Bypassed .......................................................................................................4

II.   Courts Have Roundly Rejected The Trump Campaign's And Others' Attempts To Delay Certification And Invalidate Ballots ...................7

III.   Certification Deadlines Are Instrumental To Ensuring The Commonwealth's Representation In The Electoral College ...........................9

ARGUMENT .....................................................................................................10

I.   Plaintiffs Have Not Shown That They Are Likely to Succeed On the Merits Of Their Claims ......................................................................12

     A.   Plaintiffs Lack Standing ....................................................................12

     B.   Plaintiffs' Request for Injunctive Relief Is Barred by the Eleventh Amendment .......................................................................16

     C.   Plaintiffs' Equal Protection Claim Fails As A Matter of Law .................................................................................................19

     D.   Plaintiffs' Due Process Claim Fails ..................................................24

II.   The Equities Do Not Favor An Injunction ...................................................26

     A.   Plaintiffs Have An Adequate Remedy At Law And Will Not Be Irreparably Injured In The Absence Of An Injunction ...........................................................................................27

     B.   The Balance Of Equities Weighs Against Issuing The Injunction ...........................................................................................31

          1.   The Requested Injunction Would Likely Prevent Defendants From Timely Certifying The Results Of The Election .......................................................................31

2.    The Requested Injunction Will Cause Irreparable
      Harm To Other Parties ............................................................34

3.    The Public Interest Does Not Favor The Injunction.................35

CONCLUSION ......................................................................................................37

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acierno v. New Castle Cnty.*,
    40 F.3d 645 (3d Cir. 1994) ..................................................................29

*Adams v. Freedom Forge Corp.*,
    204 F.3d 475 (3d Cir. 2000) ..................................................................4

*Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
    669 F.3d 359 (3d Cir. 2012) ................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................23

*Balsam v. Sec'y of N.J.*,
    607 F. App'x 177 (3d Cir. 2015) ........................................................18

*Bennett v. Yoshina*,
    140 F.3d 1218 (9th Cir. 1998) .............................................................25

*Bey v. DeRose*,
    No. 4:CV-14-1612, 2014 WL 5035417 (M.D. Pa. Oct. 8, 2014)......................27

*Bognet v. Boockvar*,
    No. 20-3214, 2020 WL 6686120 (3d Cir. Nov. 13, 2020) .........................*passim*

*Burdick v. Takushi*,
    504 U.S. 428 (1992)..............................................................................19

*Costantino v. Detroit*,
    No. 20-014780-AW (Mich. Cir. Ct. Nov. 13, 2020) (Ex. **).......................8, 33

*Donald J. Trump for President, Inc. v. Benson*,
    Opinion & Order, No. 20-000225-MZ (Mich. Ct. Cl. Nov. 6, 2020)
    (Ex. **) ................................................................................................8

*Donald J. Trump for President, Inc. v. Boockvar*,
    --- F. Supp. 3d. ----, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020)........20, 22, 24

*Donald J. Trump for President, Inc. v. Bucks Cnty. Bd. of Elections*,
   No. 2020-5786, ¶¶ 27-30 (Pa. Ct. Com. Pl. Nov. 6, 2020) ...............................25

*Donald J. Trump for President, Inc. v. Montgomery Cnty. Bd. of
   Elections*,
   No. 2020-18680 (Pa. Ct. Com. Pl. Nov. 13, 2020) (upholding
   Montgomery County Board of Election's decision to count mail
   ballots without a handwritten address) (Ex. **) ......................................7, 25, 27

*Donald J. Trump for President Inc. v. Phila. Cnty. Bd. of Elections*,
   No. 2:20-CV-05533-PD, ECF No. 5 (E.D. Pa. Nov. 5, 2020) .............................8

*First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*,
   155 F. Supp. 2d 194 (M.D. Pa. 2001)....................................................................20

*Flynn v. U.S. by & through Eggers*,
   786 F.2d 586 (3d Cir. 1986) .................................................................................27

*González-Cancel v. Partido Nuevo Progresista*,
   696 F.3d 115 (1st Cir. 2012)..................................................................................28

*Hardin v. Montgomery*,
   495 S.W.3d 686 (Ky. 2016)...................................................................................35

*Hartman v. Moore*,
   547 U.S. 250 (2006)...............................................................................................23

*Hoblock v. Albany Cnty. Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005) ....................................................................................24

*In Re: Canvass of Absentee and Mail-In Ballots of November 3, 2020
   General Election*,
   No. 20-05786-35, slip. op. (Bucks Cnty. Ct. Common Pleas Nov.
   19, 2020) ................................................................................................................27

*In Re: Canvass of Absentee and Mail-In Ballots of November 3, 2020
   General Election*,
   No. 2020-18680, slip. op. (Montgomery Cnty. Ct. Common Pleas
   Nov. 13, 2020) .......................................................................................................27

*In re Contest of Election for Off. of City Treasurer from Seventh*
  *Legislative Dist. (Wilkes-Barre City) of Luzerne Cnty.*,
  400 Pa. 507 (1960) ....................................................................................6

*Krieger v. Peoria*,
  No. CV-14-01762-PHX-DGC, 2014 WL 4187500 (D. Ariz. Aug.
  22, 2014) ..............................................................................................24

*Ledoue v. Sabol*,
  No. 1:10-CV-02268, 2011 WL 2746258 (M.D. Pa. July 12, 2011)..................27

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................................13

*Martinez v. Colon*,
  54 F.3d 980 (1st Cir. 1995).....................................................................17

*McMullen v. Maple Shade Twp.*,
  643 F.3d 96 (3d Cir. 2011) .....................................................................18

*Moneyham v. Ebbert*,
  723 F. App'x 89 (3d Cir. 2018) ...........................................................21, 23

*Northeast Ohio Coalition for the Homeless v. Husted*,
  2016 WL 3166251 (S.D. Ohio June 7, 2016)...............................................22

*Northeast Ohio Coalition for the Homeless v. Husted*,
  837 F.3d 612 (6th Cir. 2016) .............................................................21, 22

*One Wisconsin Institute, Inc. v. Thomsen*,
  198 F. Supp. 3d 896 (W.D. Wis. 2016), *aff'd in part, rev'd in part*
  *on other grounds sub nom. Luft v. Evers*, 963 F.3d 665 (7th Cir.
  2020) ...................................................................................................35

*Pacific Radiation Oncology, LLC v. Queen's Medical Center*,
  810 F.3d 631 (9th Cir. 2015) ...................................................................3

*Pennhurst State School & Hospital v. Halderman*,
  465 U.S. 89 (1984)............................................................................16, 18

*Pfuhl v. Coppersmith*,
  253 A.2d 271 (Pa. 1969)......................................................................6, 29

*Republican Party of Pennsylvania v. Cortés*,
218 F. Supp. 3d 396 (E.D. Pa. 2016)..........................................................24, 34

*Reynolds v. Sims*,
377 U.S. 533 (1964).....................................................................................20, 34

*Robb v. Lock Haven University*,
No. 17-CV-00964, 2017 WL 2506434 (M.D. Pa. June 9, 2017) .......................9

*Rogers v. Corbett*,
468 F.3d 188 (3d Cir. 2006) ...........................................................................19

*Service Employees International Union, Local 1 v. Husted*,
906 F. Supp. 2d 745 (S.D. Ohio 2012) ............................................................26

*Shipley v. Chicago Bd. of Election Commissioners*,
947 F.3d 1056 (7th Cir. 2020) ........................................................................17

*Short v. Brown*,
893 F.3d 671 (9th Cir. 2018) ..........................................................................19

*Snowden v. Hughes*,
321 U.S. 1 (1944)............................................................................................17

*Stein v. Cortes*,
223 F. Supp. 3d 423 (E.D. Pa. 2016).........................................................*passim*

*Stewart v. Verano*,
No. 1:13-CV-2518, 2015 WL 1636124 (M.D. Pa. Apr. 8, 2015) .......................3

*T.W. by & through Waltman v. S. Columbia Area Sch. Dist.*,
No. 4:20-CV-01688, 2020 WL 5751219 (M.D. Pa. Sept. 25, 2020)
(Brann, J.).....................................................................................................10

*Thakker v. Doll*,
451 F. Supp. 3d 358 (M.D. Pa. 2020)...............................................................9

*Pennsylvania v. Trump*,
351 F. Supp. 3d 791 (E.D. Pa. 2019)...............................................................10

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982).......................................................................................11, 34

*Williams v. Overmyer*,
   No. 1:17-cv-251, 2020 WL 674228 (W.D. Pa. Feb. 11, 2020) ...........................3

*Winter v. NRDC*,
   555 U.S. 7 (2008) ...................................................................................10, 11, 29

*Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*,
   836 F.2d 173 (3d. Cir. 1988) ...........................................................................20

**DOCKETED CASES**

*In re: 2,349 Ballots in the 2020 General Election*,
   No. 162 C.D. 2020 (Pa. Com. Ct.) ......................................................................7

*In re: Canvass of Absentee and Mail Ballots of Nov. 3, 2020 General
   Election*, Nos. 201100875-78 (Pa. Ct. Com. Pl.) ...............................................7

*In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen.
   Election*, No. 2011-874-878 (Pa. Ct. Com. Pl.) ...............................................25

*In re: Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen.
   Election*, Nos. 89-93 EM 2020 (Pa. Nov. 18, 2020).....................................7, 28

*In Re: Canvass of Absentee and Mail-In Ballots of November 3, 2020
   General Election*, No. 20-05786-35 (Bucks Cnty. Ct. Common
   Pleas) ...............................................................................................................27

*In re: Enforcement of Election Laws and Securing Ballots Cast or
   Received After 7:00 P.M. on Nov. 3, 2020*, No. SPCV2000982-J3
   (Ga. Sup. Ct. Nov. 5, 2020) ...............................................................................8

*Kraus v. Cegavske*, No. 20-OC-00142 (Nev. Dist. Ct.)............................................8

*Stoddard v. City Election Commission*, No. 20-014604-CZ (Mich. Cir.
   Ct.).....................................................................................................................8

*Stokke v. Cegavske*, No. 2:20-CV-02046 (D. Nev. Nov. 6, 2020) ...........................8

**STATUTES**

3 U.S.C.
  § 5........................................................................................9, 32
  § 6........................................................................................10
  § 7........................................................................................9, 32

25 P.S.
  § 1329....................................................................................4
  § 1509....................................................................................4
  § 2642....................................................................................9, 32
  § 3191....................................................................................9
  § 3192....................................................................................9
  § 3456....................................................................................5, 6
  § 3469....................................................................................6

42 Pa.C.S. § 764..........................................................................5

**OTHER AUTHORITIES**

Wright & Miller, 11A *Federal Practice and Procedure* § 2948.1
  (3d ed., Apr. 2017 update) ........................................................1

Dep't of State, *2020 Presidential Election Unofficial Results*,
  https://www.electionreturns.pa.gov/General/CountyBreakDownRe
  sults?officeId=1&districtId=1&ElectionID=undefined&ElectionTy
  pe=undefined&IsActive=undefined (visited Nov. 19, 2020)............................15

Judd, A., *Trump allies draw Georgia into election conspiracy claims,*
  The Atlanta Journal-Constitution, Nov. 19, 2020, https://
  www.ajc.com/politics/election/judge-rejects-trump-supporters-
  attempt-to-reject-election-results/GMSGXDY4AZFEXOGBNOL
  GBZ45NI ..............................................................................4

Meyer, Katie, *"Naked Ballot" Rule Could Lead To Thousands Of Pa.
  Votes Getting Rejected*, NPR (Oct. 1, 2020), https://www.npr.org/
  2020/10/01/918368319/naked-ballot-rule-could-lead-to-thousands-
  of-pa-votes-getting-rejected.......................................................14

Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-In Ballot Return Envelopes* (Sept. 11, 2020), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/Examination%20of%20Absentee%20and%20MailIn%20Ballot%20Return%20Envelopes.pdf.................................................................30

# INTRODUCTION

The injunctive relief Plaintiffs seek, now three days before the county certification deadline, is extraordinary and wholly unjustified. They ask the Court to enjoin Defendants from certifying the results of the presidential election so that the Trump Campaign can engage in a "simple" audit of 1.5 million mail ballots, gather evidence to support their accusations, and petition this Court to then "declare Trump the winner." Pls.' Mem. 2. But Plaintiffs have the legal standard entirely backwards: Plaintiffs must demonstrate that they have a likelihood of success on the merits *before* obtaining such relief; a preliminary injunction is not a fact-finding tool to confirm speculative claims. Despite opportunities to amend their Complaint and preliminary injunction motion, Plaintiffs' arguments have unraveled as the Third Circuit has definitively established that they lack standing, and the purported differential procedures or violations of election laws they allege (incorrectly) do not implicate the federal constitution at all. *Bognet v. Sec'y of the Commonwealth of Pa.*, No. 20-3214, 2020 WL 6686120, at *15 (3d Cir. Nov. 13, 2020). That is "not how the Equal Protection Clause works." *Id*. Finally, it is telling that despite proclaiming to this Court that they were prepared to present hundreds of affidavits and extensive evidence of misconduct, no such evidence can be found anywhere in what is now Plaintiffs' second motion for preliminary injunction.

Having confirmed that there is little more than speculation and conjecture behind Plaintiffs' claims, the certification of election results must proceed as scheduled under Pennsylvania law; otherwise, the Commonwealth would risk upending the series of carefully choregraphed election administration procedures and deadlines designed to ensure that Pennsylvania voters can send their chosen electors to Congress in advance of the federal safe harbor deadline and the meeting of the electoral college. In other words, the injunction requested here is not merely a "slight delay," as Plaintiffs suggest, Pls.' Mem. 25, but rather the potential disenfranchisement of millions of Commonwealth voters—all because Plaintiffs *claim*, but have no evidence to show, that there are enough "illegal ballots" that would have changed the election result. *Id.* at 2, 25.

As the Trump Campaign once argued successfully before the Eastern District of Pennsylvania, an injunction that prevents the Commonwealth from timely certifying election results is improper. *See Stein v. Cortes*, 223 F. Supp. 3d 423, 442 (E.D. Pa. 2016). And while the Trump Campaign now advances the opposite view, *Stein*'s conclusion remains correct today. The federal Constitution does not permit the type of judicial oversight into the Commonwealth's election procedures that Plaintiffs seek, never mind that Pennsylvania law establishes a detailed and comprehensive election contest procedure as the exclusive remedy for challenges to election results. Plaintiffs' motion thus provides no basis for their extraordinary

-2-

demand to prevent certification of election results, nor does it justify the consequent intrusion on state sovereignty necessary to impose such relief, which does violence to the constitutional voting rights protections that Plaintiffs purport to advance.

## BACKGROUND

Plaintiffs' motion seeks injunctive relief based on allegations that "are wholly disconnected from the underlying claims" in their Amended Complaint. *Williams v. Overmyer*, No. 1:17-cv-251, 2020 WL 674228, at *2 (W.D. Pa. Feb. 11, 2020). The operative Complaint before this Court is Plaintiffs' Amended Complaint, ECF No. 125, filed on November 15, 2020, three days after Defendants and Intervenors moved to dismiss Plaintiffs' original Complaint. That pleading does not include the Fourteenth Amendment Due Process Clause claim upon which Plaintiffs now seek relief, nor does it assert the denial of access to observe ballots during canvassing as the basis for their constitutional claims. *See* Pls.' Mem. 6-7, 15, 21-23. Thus, Plaintiffs request an injunction that "is not of the same character, and deals with a matter lying wholly outside of the issues in the suit." *Stewart v. Verano*, No. 1:13-CV-2518, 2015 WL 1636124, at *2 (M.D. Pa. Apr. 8, 2015) ("In sum, a federal district court lacks jurisdiction over claims raised in a motion for injunctive relief where those matters unrelated to the underlying complaint."); *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court

does not have the authority to issue an injunction."); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000) (affirming denial of injunction, where plaintiffs' alleged harm was "insufficiently related to the complaint and [did] not deserve the benefits of protective measures that a preliminary injunction afford").

In any event, even assuming the claims set forth in Plaintiffs' motion were properly before this Court, their request for relief attempts to end-run the Commonwealth's procedures for resolving claims of election irregularities or of non-compliance with state statutes. Pennsylvania law provides robust opportunities for Plaintiffs to address the purported election irregularities they allege here, and even to contest the election results. Indeed, the Trump Campaign has already availed itself of some of these state remedies.

## I.   Election Contests And Other State Law Remedies that Plaintiffs Bypassed

Pennsylvania's Election Code provides several avenues through which aggrieved individuals may raise claims of fraud or irregularities in the electoral process, if they can muster adequate proof. The earlier in the process a litigant asserts these claims, the more robust the opportunities to address them. For example, there are multiple avenues to challenge a voter's registration, 25 P.S. §§ 1329, 1509, and Plaintiffs had the opportunity to challenge applications for absentee or mail-in

ballots on the ground that the voter is not qualified to vote until the Friday before the election. *Id.* §§ 3146.2b(c), 3150.12b(a)(2).

Once ballots have been cast, the grounds for challenging the results are also set forth in detail under Pennsylvania law. During the canvass, three voters in any election district may request a recanvass of that district's votes by submitting an affidavit affirming that "an error, although not apparent on the face of the returns, has been committed." 25 P.S. § 3154(e). Within five days of the canvass in a county being complete, voters may initiate a recount or recanvass in the Court of Common Pleas if either (1) three voters plead a particular act of fraud or error and offer prima facie evidence in support of the allegation, or (2) three voters in *each precinct* in the Commonwealth sign a verified petition alleging that, upon reliable information, they believe that fraud or error was committed in the computation of the votes cast, in the marking of the ballots, or otherwise in connection with such ballots. *Id.* § 3263(a)(1). In other words, after the canvassing is complete, voters seeking to overturn the results for a statewide office must either have widespread factual support of Commonwealth-wide error or concrete evidence of fraud.

Finally, within 20 days after the election—this year, by November 23, 2020—an individual may file an election contest in Pennsylvania's Commonwealth Court. 25 P.S. § 3456; *see also* 42 Pa.C.S. § 764(1) (noting the Commonwealth Court has exclusive original jurisdiction over these contested nominations and elections). The

petition for contest must "concisely set forth the cause of the complaint, showing wherein it is claimed that the primary or election is illegal." 25 P.S. § 3456.[1] To succeed in an election contest, the petitioner must show "the illegal acts are so irregular and the election so infected with fraud that the result cannot be ascertained." *In re Contest of Election for Off. of City Treasurer from Seventh Legislative Dist. (Wilkes-Barre City) of Luzerne Cnty.*, 400 Pa. 507, 512 (1960); *cf. Pfuhl v. Coppersmith*, 253 A.2d 271, 273 (Pa. 1969) (explaining that unless the petition "aver[s] plainly and distinctly such facts which if sustained by proof would require the court to set aside the result" of the election, the petition should be dismissed). This requirement is not unlike the federal standard, which demands a showing that an election is fundamentally unfair before the results can be undone. *Stein*, 223 F. Supp. 3d at 438 (collecting cases).

_____

[1] There are consequences in state court to filing an election contest in bad faith. If the Commonwealth Court ultimately determines that the complaint is "without probable cause," the Petitioner is liable for the full cost of the election contest. 25 P.S. § 3469.

-6-

**II.     Courts Have Roundly Rejected The Trump Campaign's And Others' Attempts To Delay Certification And Invalidate Ballots**

Rather than pursue these legal remedies, the Trump Campaign has filed a bevy of lawsuits to prevent votes from being counted, and more recently to prevent certification of election results. Relevant here, the Campaign filed suit in several county Courts of Common Pleas alleging that unlawful mail-in or absentee ballots ("mail ballots") were counted for various reasons, including missing information on mail ballot declarations. The vast majority of these courts, applying Pennsylvania law, have rejected the Trump Campaign's claims, finding that the challenged ballots were indeed validly cast and should be counted. *See In re: Canvass of Absentee and Mail Ballots of Nov. 3, 2020 Gen. Election*, Nos. 201100874-76, 78 (Pa. Ct. Com. Pl. Nov. 13, 2020) (upholding Philadelphia Board of Election's decision to count mail ballots without a handwritten name, address, or date where county is not required to verify voter's eligibility to vote) (Ex. A-D); *Donald J. Trump for President, Inc. v. Montgomery Cnty. Bd. of Elections*, No. 2020-18680 (Pa. Ct. Com. Pl. Nov. 13, 2020) (upholding Montgomery County Board of Election's decision to count mail ballots without a handwritten address) (Ex. E); *but see In re: 2,349 Ballots in the 2020 Gen. Election*, No. 162 C.D. 2020 (Pa. Commw. Ct. Nov. 19, 2020) (reversing Allegheny Court of Common Pleas' decision to count mail ballots lacking a handwritten date on the affidavit, even if that ballot was received by

Election Day) (Ex. F), *appeal and stay pending appeal granted*, No. 337 WAL 2020 (Pa. Nov. 20, 2020) (Ex. R). On November 18, the Pennsylvania Supreme Court accepted an application from Philadelphia County to exercise extraordinary jurisdiction over these cases and provide a Commonwealth-wide resolution to these issues. *See* Order Granting Application, *In re: Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, Nos. 89-93 EM 2020 (Pa. Nov. 18, 2020) (Ex. G). A definitive ruling from the Pennsylvania Supreme Court on these "counting" issues is therefore imminent.

These Pennsylvania rulings comprise only a subset of the nearly 30 state and federal court decisions around the country that have rejected the Trump Campaign's and its allies' efforts to stop the counting of votes or the certification of election results.[2]

---

[2] *Costantino v. Detroit*, No. 20-014780-AW (Mich. Cir. Ct. Nov. 13, 2020) (Michigan) (denying preliminary injunction against certification of election results in Wayne County based on claims of purported fraud) (Ex. H); *Donald J. Trump for President, Inc. v. Benson*, Opinion & Order, No. 20-000225-MZ (Mich. Ct. Cl. Nov. 6, 2020) (Michigan) (denying the Trump Campaign's emergency motion to cease all counting and processing of absentee ballots and noting plaintiffs provided no admissible evidence supporting their claims) (Ex. I); *Donald J. Trump for President Inc. v. Phila. Cnty. Bd. of Elections*, No. 2:20-CV-05533-PD, ECF No. 5 (E.D. Pa. Nov. 5, 2020) (denying the Trump Campaign's emergency motion to stop the Philadelphia County Board of Elections from counting ballots) (Ex. J); *Kraus v. Cegavske*, Order at 9, No. 20-OC-00142 (Nev. Dist. Ct. Oct. 29, 2020) (Nevada) (finding Trump Campaign's allegations that observers were not able to observe the process, or that Nevada's signature matching process was unreliable to be wholly without merit), *motion for stay denied*, No. 82018 (Nev. Nov. 3, 2020) (Ex. K);

## III.   Certification Deadlines Are Instrumental To Ensuring The Commonwealth's Representation In The Electoral College

While Plaintiffs seek a preliminary injunction to allow more time to gather evidence and conduct a "statistical expert analysis" to prove their case, Pls.' Mem. 2, *any* disruption in the certification process at this late hour threatens serious consequences. The electoral college meets on December 14 to choose the next president, 3 U.S.C. § 7, and the federal safe harbor deadline is December 8. *Id.* § 5. Pennsylvanians will be represented in this process when a slate of electors—chosen by the vote of the people on November 3—meet and cast their votes. 25 P.S. §§ 3191-92 (electors must meet at noon the day directed by Congress). But to meet these deadlines, county boards must certify their election results by three days from now, November 23—the statutorily-mandated deadline for certification. *Id.* § 2642(k). The Secretary of State must then compute the returns of the election and

---

*Stokke v. Cegavske*, No. 2:20-CV-02046, ECF No. 27 (D. Nev. Nov. 6, 2020) (Nevada) (denying plaintiffs' motion for a preliminary injunction and TRO to halt ballot counting in Clark County, Nevada) (Ex. L); *In re: Enforcement of Election Laws and Securing Ballots Cast or Received After 7:00 P.M. on Nov. 3, 2020*, No. SPCV2000982-J3 (Ga. Sup. Ct. Nov. 5, 2020) (Georgia) (denying the Trump Campaign's petition to segregate certain ballots and noting "there is no evidence the ballots referenced in the petition [were invalid]" and "there is no evidence that the Chatham County Board of Elections or the Chatham County Board of Registrars has failed to comply with the law") (Ex. M); *Stoddard v. City Election Comm'n*, Opinion & Order at 2-3, No. 20-014604-CZ (Mich. Cir. Ct. Nov. 6, 2020) (Michigan) (denying the Election Integrity Fund's motion for a preliminary injunction to prohibit Detroit from certifying its results, explaining that "[b]oth Republican and Democratic inspectors were present [for the counting of absentee ballots]") (Ex. N).

provide them to the Governor. *Id.* § 3166. The Governor must then certify the slate of electors by issuing a certificate of election. *Id.*; 3 U.S.C. § 6. In other words, the result of the election must be conclusively determined on a short timeline, or Pennsylvania's entire electorate may be disenfranchised.

## ARGUMENT

"[P]reliminary injunctions ... [are] extraordinary in nature and available only in limited circumstances." *Robb v. Lock Haven Univ.*, No. 17-CV-00964, 2017 WL 2506434, at *1 (M.D. Pa. June 9, 2017) (Brann, J.). For that reason, the "drastic remedy" of a preliminary injunction is "one that should not be granted unless the movant, by *a clear showing*,'" demonstrates its entitlement to relief. *See Thakker v. Doll*, 451 F. Supp. 3d 358, 364 (M.D. Pa. 2020) (emphasis added) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). In order to prevail, "'[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 810 (E.D. Pa. 2019) (quoting *Winter v. NRDC*, 555 U.S. 7, 20 (2008)). In particular, to secure injunctive relief, a plaintiff must establish the first prong—a likelihood of success on the merits of its claims— by "clear evidence." *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 2636 (2019); *see also Am. Express*

-10-

*Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) ("The moving party's failure to show a likelihood of success on the merits must necessarily result in the denial of a preliminary injunction.") (internal quotation marks omitted).[3]

Plaintiffs do not even pretend they can make such a showing on their sole claim that remains live; indeed, they suggest the Court focus on the irreparable harm they supposedly face. Instead, Plaintiffs implore the Court to grant them a "short period" so they can engage in a fishing expedition in the hope of turning their speculation into a plausible basis for relief. *Id.* at 17. That is not the purpose of preliminary injunctive relief, and in any normal case their motion would be easily disposed of. Of course, this is no normal case, and the effects of entertaining Plaintiffs' meritless legal theory would extend far beyond the parties.

The Court must consider these consequences before granting a preliminary injunction. While Plaintiffs claim that "[a] sufficient showing on the first two factors can suffice," Pls. Mem. 13 (one of which they disclaim responsibility to show), that is incorrect. Courts must consider the harm to other parties and the public interest

---

[3] While Plaintiffs contend Defendants should "bear the burden of proving the mail voters were legal," Pls.' Mem. 23 (capitalization altered), this Court has made clear "*the movant* will bear the ultimate burden of establishing *all four elements*," which, of course, includes the burden of establishing a likelihood of success. *T.W. by & through Waltman v. S. Columbia Area Sch. Dist.*, No. 4:20-CV-01688, 2020 WL 5751219, at *3 (M.D. Pa. Sept. 25, 2020) (Brann, J.) (emphasis added).

before issuing an injunction. *See Winter*, 555 U.S. at 32; *see also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). Here, the relief Plaintiffs now seek threatens to throw into limbo the results of the 2020 Presidential Election for the entire country.  The Court should reject Plaintiffs' extraordinary and drastic request, and grant Defendants' motions to dismiss.

## I.   Plaintiffs Have Not Shown That They Are Likely to Succeed On the Merits Of Their Claims

Plaintiffs have not, as they must, demonstrated that they are likely to succeed on the merits of their claims.

### A.   Plaintiffs Lack Standing

Plaintiffs cannot obtain any preliminary injunction because they lack standing to assert the claims they continue to press, brought under the Equal Protection, Electors, Elections Clauses. The Third Circuit's decision in *Bognet v. Secretary of the Commonwealth of Pennsylvania* is dispositive of all of those claims, foreclosing any injunction—and indeed, requiring dismissal. 2020 WL 6686120.

*Bognet* held that equal-protection injury based on a claim that "state actors count[ed] ballots in violation of state election law" is neither "concrete" nor "particularized," as Article III requires. *Id.* at *9-14.  As the Third Circuit explained, the Equal Protection Clause is "concerned with votes being *weighed differently*." *Id.*

-12-

at *11 (emphasis added). To permit standing based on non-compliance with state law "would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim." *Id.* at *11 (quoting *Donald J. Trump for President, Inc. v. Boockvar*, --- F. Supp. 3d. ----, 2020 WL 5997680, at *46 (W.D. Pa. Oct. 10, 2020)). Plaintiffs' Equal Protection Clause claim, which remains premised on a challenge to Defendants' use of "unlawful" election procedures, presents "a 'paradigmatic generalized grievance that cannot support standing'" and cannot survive the Third Circuit's decision.  *Id.* at *12 (citation omitted). *See* Pls.' Mem. 15 ("Defendants violated the Equal Protection Clause … by counting votes that were unlawful under the Pennsylvania Election Code."). To the extent Plaintiffs assert vote *denial*, that injury is "fairly traceable" only to *other counties* that chose not to assist voters in exercising their rights. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). And any claim based on vote denial would also fail the redressability prong of standing because a judgment disenfranchising hundreds of thousands of voters who cast lawful ballots in *other* counties could not redress any injury caused by Plaintiffs' own county boards of elections, neither of which are named as defendants in this action.  *See id.*

*Bognet* rejected any notion that simply being a candidate is enough to establish standing to challenge election procedures. As the Third Circuit explained, a candidate is not injured "in a *particularized* way when, in fact, all candidates in

Pennsylvania, including [the plaintiff's] opponent, are subject to the same rules." 2020 WL 6686120, at *8 (emphasis added). Under *Bognet*, Plaintiffs must show that "counting more timely cast votes would lead to a *less* competitive race," "that a greater proportion of [defective] mailed ballots" would be cast for Vice President Biden, and that "such votes" were cast in "sufficient ... number[s] to change the outcome of the election to [Trump's] detriment." *Id.*

Plaintiffs make no effort show any of these things. The closest they come is to speculate that "[t]here is every reason to believe the number of non-compliant ballots is in the tens of thousands." Pls.' Mem. 17. Plaintiffs point to the fact that 37,000 mail ballots were rejected in Pennsylvania's 2020 Primary Election. But they fail to contend with the fact that a major cause of such "non-compliance" (and the reason for Plaintiff Henry's own ballot cancellation) was voters' failure to include the required inner secrecy envelope with their mail ballot.[4] As Plaintiffs acknowledge in their Amended Complaint, after the Primary Election in June, "Pennsylvania prominently included secrecy envelope instructions in its mail-in ballot and absentee ballot mailings, and in the months and weeks leading up to the [General E]lection, repeated those instructions on its website and on its social media

---

[4] Katie Meyer, *"Naked Ballot" Rule Could Lead To Thousands Of Pa. Votes Getting Rejected*, NPR (Oct. 1, 2020), https://www.npr.org/2020/10/01/918368319/naked-ballot-rule-could-lead-to-thousands-of-pa-votes-getting-rejected.

postings," and "[l]ocal officials ... engaged in media campaigns to encourage voters to remember not to send their ballots in ... without the secrecy envelope." Am. Compl. ¶¶ 123-24; *see also id.* ¶ 124 ("The 'naked ballot' ad campaign even included several local celebrities and election officials appearing on social media topless to remind the public about the inner envelope."). It seems logical that those publicity campaigns significantly decreased the rate at which such "naked" ballots were returned during the General Election.

Plaintiffs otherwise make no attempt to show the sort of concrete, particularized injury Article III demands. They do not attempt to show, for instance, that disqualified mail ballots in the counties that did not offer notification procedures would have skewed toward President Trump or that the lack of notification and the opportunity to cure those ballots in "Republican controlled counties" (Pls. Mem. 5) would have benefited Vice President Biden. To the contrary, Vice President Biden won a majority of the mail ballots in all but four of Pennsylvania's 67 counties— including more than twice as many mail ballots as President Trump in both Lancaster and Fayette Counties.[5] Thus, even if it were true that "a voter with a defective ballot in the Democrat controlled Defendant counties was likely to be told in advance to

---

[5] *See* Dep't of State, *2020 Presidential Election Unofficial Results*, https://www.electionreturns.pa.gov/General/CountyBreakDownResults?officeId=1&districtId=1&ElectionID=undefined&ElectionType=undefined&IsActive=undefined (visited Nov. 19, 2020).

cast a provisional ballot, while similarly situated voters in Republican controlled counties were not" (Pls.' Mem 5), Plaintiffs cannot show such different treatment would have made any difference to the outcome of the election.

Finally, Plaintiffs lack standing to assert a violation of the Elections or Electors Clauses. Recognizing this, Plaintiffs have abandoned that claim. *Id.* at 7 n.7; *see* ECF No. 124 at 1 (Plaintiffs "acknowledge that—because the General Assembly is not a party here—*Bognet* forecloses their allegations that they have standing to pursue their Elections and Electors Clauses claims."). Plaintiffs are correct. Confirming what the Supreme Court has held time and time again, the Third Circuit in *Bognet* held that private individuals like Plaintiffs here—voters and a candidate for federal office—lack standing to assert claims under the Elections and Electors Clauses. *Bognet*, 2020 WL 6686120, at *6.

Plaintiffs lack standing and therefore cannot show a likelihood of success on the merits.

## B.    Plaintiffs' Request for Injunctive Relief Is Barred by the Eleventh Amendment

As detailed in the DNC's motion to dismiss and reply, Plaintiffs have attempted to dress state law claims up with a federal constitutional gloss, but they cannot evade the strictures of the Eleventh Amendment merely by applying different labels to what are essentially alleged violations of Pennsylvania's Election Code.

-16-

*See* ECF No. 144 at 12-14; ECF No. 178 at 17-18. The Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106 (1984), establishes that the Eleventh Amendment gives state officials immunity from suits in federal court based on violations of state law, including suits for prospective injunctive relief. *Id.*

Both the relief Plaintiffs request in their motion for a preliminary injunction and the nature of their claims make clear that, however stylized, they seek nothing more than a federal court injunction directing state officials to act in accordance with state law. *See, e.g.*, Pls.' Mem. at 5 (complaining that "invalid votes were counted contrary to Pennsylvania law"); *id.* at 6 (arguing that "election boards flouted the requirements of the Election Code by counting [certain] ballots"); *id.* at 9 ("Despite the clear commands of the Election Code, [the Secretary] and the other Defendants systematically disregarded key ballot integrity and security measures associated with mail-in votes."); *id.* (complaining that "[c]ounty boards have continued ignoring Pennsylvania law"). Indeed, at two points Plaintiffs make the flaw in their position explicit, stating that "Defendants violated the Equal Protection Clause, Due Process Clause and Electors Clauses of the Constitution by counting votes that were unlawful under the Pennsylvania Election Code." *Id.* at 15; *see also id.* at 22 ("Defendants

-17-

violated the Constitution by counting votes that were unlawful under the Pennsylvania Election Code.").[6]

Plaintiffs are wrong in asserting that Defendants violated state law, *see* ECF No. 105 at 38-40, but even if they were right, those violations fail to give rise to federal constitutional claims. *See Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015) (rejecting Plaintiffs' argument that "because their state law claims [were] premised on violations of the federal Constitution and [sought] prospective injunctive relief," the Eleventh Amendment did not apply and correspondingly holding claims jurisdictionally barred); *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 98 (3d Cir. 2011) (affirming district court's dismissal of case for failing to state a violation of any federal right because "[d]espite [Plaintiff's] best efforts to dress-up [his] claim in the federal garb of the Fourth Amendment, at bottom, these claims remain state law claims"). Plaintiffs have done nothing more than attempt to "dress-

---

[6] As noted in the DNC's motion to dismiss, this is plainly incorrect because "[m]ere violation of a state statute does not infringe the federal Constitution." *Snowden v. Hughes*, 321 U.S. 1, 11 (1944); *see also, e.g., Bognet*, 2020 WL 6686120, at \*11 ("Violation of state election laws by state officials or other unidentified third parties is not always amenable to a federal constitutional claim."); *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1062 (7th Cir. 2020) ("A violation of state law does not state a claim under § 1983, and, more specifically, a deliberate violation of state election laws by state election officials does not transgress against the Constitution."); *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995) ("[T]he Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations—no matter how egregious those violations may appear within the local legal framework.").

up [their state law] claim[s] in the federal garb" of the Fourteenth Amendment and the Electors Clause, but that does not make them any less state law claims. *McMullen*, 643 F.3d at 98.

By asking this Court to issue an injunction against the Secretary, a state official, Plaintiffs' requested relief squarely contradicts the Supreme Court's directive in *Pennhurst*, which makes plain that such injunctions against state officials are outside this Court's jurisdiction under the Eleventh Amendment.

### C.    Plaintiffs' Equal Protection Claim Fails As A Matter of Law

Plaintiffs' equal protection claim fails because they cannot show that Defendants burdened anyone's right to vote by notifying voters about defects with their mail ballots and giving those voters the opportunity to cast a replacement or provisional ballot.    Plaintiffs' equal protection claim must be analyzed under the *Anderson-Burdick* balancing test.  *Rogers v. Corbett*, 468 F.3d 188, 193 (3d Cir. 2006).  That test employs a "flexible standard" that recognizes that "[e]lection laws will invariably impose some burden upon individual voters," and that not all such burdens are unconstitutional.  *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992). Under *Anderson-Burdick*, "the State's important regulatory interests are generally sufficient to justify" "reasonable, nondiscriminatory restrictions" on the right to vote.  *Id.* at 434 (internal quotation marks omitted).

-19-

As Defendants explain in their motion to dismiss and reply (*see* ECF No. 105 at 27-30; ECF No. 178 at 12-14), Defendants' notification procedures did not burden anyone's right to vote; they only "ma[d]e[] it easier for some voters to cast their ballots." *Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018). To the extent Plaintiffs characterize the supposed dilution of their votes as a burden, they misunderstand the law. As Judge Ranjan explained last month in rejecting the Trump Campaign's vote-dilution theories, a "complain[t] that the state is *not* imposing a restriction on *someone else's* right to vote" is not cognizable under the Equal Protection Clause. *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *44 (emphasis in original). Any minimal burden, moreover, is readily justified by the strong interest in protecting the fundamental right to vote and "to have [one's] vote[] counted." *See Reynolds v. Sims*, 377 U.S. 533, 554 (1964). Plaintiffs are thus not likely to succeed in establishing an equal protection claim based on Defendants' notification procedures.

Plaintiffs likewise fail to show a likelihood of success based on any other election practice. Plaintiffs do not even attempt to argue that Defendants violated the Equal Protection Clause based on where canvass watchers were permitted to stand. *See* Pls.' Mem. at 18-21. One practice that Plaintiffs mention in passing—the alleged "segregat[ing]" or "commingl[ing]" of ballots—is never mentioned in the Amended Complaint. *See id.* at 19; *see also Pennsylvania ex rel. Zimmerman v.*

*Pepsico, Inc.*, 836 F.2d 173, 181 (3d. Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs.") (citation omitted); *First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 233 n.10 (M.D. Pa. 2001) ("This Court will not award a preliminary injunction on grounds not raised in the complaint."). And a similar problem precludes any argument based on supposedly inconsistent counting of "ballots [whose outer envelope contains] no signatures, no dates, or an incomplete address." *See* Pls. Mem. 19. The Amended Complaint contains only a generic, cursory allegation that "voters in Republican-leaning counties who failed to fully fill out their mail or absentee ballot envelopes had their ballots rejected," and the opposite was true for those in "Democrat-leaning counties." Am. Compl. ¶ 158. That is not enough to have put any such practice at issue in this litigation. *See Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018) (per curiam) ("The District Court was correct to deny this requested injunction because it involved allegations unrelated to the complaint.").

In any event, Plaintiffs are wrong that Defendants violated the Equal Protection Clause just because different counties might have taken different approaches to accepting mail ballots whose outer envelope was missing certain non-substantive information. The Sixth Circuit rejected precisely such an argument in *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) ("*NEOCH*"). As Judge Boggs explained in his opinion for the court, plaintiffs in

that case had presented "uncontested evidence" that the practices of different counties "var[ied], and sometimes considerably." *Id.* at 635.  A ballot with the wrong street number was accepted by nine counties but rejected by eleven; a ballot with a missing or incorrect street name was accepted by 8 counties but rejected by eight other counties; ballots with an unconfirmed address were accepted by two counties and rejected by nine others; a ballot with a commercial, rather than a residential, address was accepted by four counties while two other counties might or might not accept it; a ballot with the correct birth year, but an incorrect month or date, was accepted by seven counties and rejected by eight others; and ballots on which the voter wrote the current date rather than their birth date were accepted by four counties and rejected by nine other counties.  *See Ne. Ohio Coal. for the Homeless v. Husted*, 2016 WL 3166251, at *17 (S.D. Ohio June 7, 2016).  Yet this wide county-to-county variation presented no constitutional concerns because

> Arguable differences in how elections boards apply uniform statewide standards to the innumerable permutations of ballot irregularities, although perhaps unfortunate, are to be expected, just as judges in sentencing-guidelines cases apply uniform standards with arguably different results.  In fact, that flexibility is part and parcel of the right of "local entities, in the exercise of their expertise, [to] develop different systems for implementing elections."

*NEOCH*, 837 F.3d at 636 (quoting *Bush*, 531 U.S. at 109).  Because "[m]any courts … have recognized that counties may, consistent with equal protection, employ entirely different election procedures and voting systems within a single state,"

Plaintiffs' new theory of equal-protection harm fails. *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at *44 (collecting cases). Indeed, Pennsylvania law delegates to the county boards of elections the obligation to "examine the declaration on each envelope" and determine that the "declaration is sufficient," 25 P.S. § 3146.8(e), thus conferring significant discretion on those local entities—and confirming that there can be no constitutional violation in this statutory design.

Even apart from these dispositive legal defects, Plaintiffs cannot show a likelihood of success because none of the evidence they submitted in support of their motion, including the handful of vague declarations they attach, remotely establishes the sweeping theory of differential treatment on which they rely. Mr. Hetak states that an email sent on October 26 from one of the Secretary's systems informed him that his ballot had been cancelled. Pls.' Mot. Ex. 15 ¶ 4. That actually *contradicts* Plaintiffs' theory of differential treatment because it shows that a *statewide* system was providing notice to voters when their ballots were cancelled. Plaintiff Henry's declaration is inconclusive about whether his ballot was ever received, so it shows nothing about whether Lancaster County did or did not notify voters about defective ballots. Pls.' Mot. Ex. 13 ¶¶ 2, 3.

Plaintiffs' remaining declarations show, at most, that one county (Philadelphia) arranged for voters to be notified about defective ballots, *see* Pls. Mot. Ex. 12, while three other counties did not, *see* Pls. Mot. Exs. 14, 16, 17. That is a

-23-

far cry from establishing a statewide scheme to treat Democratic and Republican counties differently in order to tilt the election away from President Trump and toward Vice President Biden.  Plaintiffs' unsubstantiated rhetoric cannot nudge their claim across the "plausibility" threshold required by *Ashcroft v. Iqbal*, 556 U.S. 662, 681-84 (2009).  Plaintiffs must allege far more to overturn the presumption of regularity that surrounds the official acts at issue in this case.  *See id*.; *Hartman v. Moore*, 547 U.S. 250, 263-65 (2006).

### D.    Plaintiffs' Due Process Claim Fails

Plaintiffs did not raise due process claims in their First Amended Complaint, so their due process arguments cannot form the basis of a preliminary injunction. *See Moneyham*, 723 F. App'x at 92.  Their arguments are also meritless.  Plaintiffs argue that Pennsylvania law violates due process if it does not allow poll watchers "meaningful observation." Pls.' Mem. at 22. But "'there is no … constitutional right to serve as a poll watcher.'"  *Donald J. Trump for President, Inc.*, 2020 WL 5997680, at \*67; *see also Republican Party of Pa. v. Cortés*, 218 F. Supp. 3d 396, 406 (E.D. Pa. 2016).  And even if Defendants did violate the Pennsylvania observer statute (an argument now definitively rejected by the Pennsylvania Supreme Court), Plaintiffs have not connected this state-law violation to any due process right.

The cases Plaintiffs cite, *see* Pls.' Mem at 21-22, do not advance their claims here.  Unlike Plaintiffs' claims, those cases involved actual, systemic ballot

-24-

miscounting.   For example, *Marks v. Stinson* involved "massive absentee ballot fraud" in which a candidate induced hundreds of voters to submit fraudulent absentee ballot applications, with the deliberate assistance of state election officials. 19 F.3d at 888.   In *Hoblock* and *Griffin*, election officials systemically refused to tally valid absentee ballots. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 98 (2d Cir. 2005); *Griffin*, 570 F.2d at 1074.   And *Krieger* involved ballots that omitted a candidate's name. *Krieger v. Peoria*, No. CV-14-01762-PHX-DGC, 2014 WL 4187500, at *1 (D. Ariz. Aug. 22, 2014).

In their First Amended Complaint, however, Plaintiffs do not allege that any ballots were miscounted or that any fraudulent ballots were cast, and the evidence they now offer does not establish a prima facie due process violation. For example, Plaintiffs cite their notices of appeal in Bucks County and Montgomery County. Pls.' Mot., Exs. 7, 8.   But the Trump Campaign conceded in those cases and other state law actions (as they did in this case at Tuesday's hearing) that they are not alleging that fraudulent votes were counted.   In Philadelphia County, the Trump Campaign confirmed that it was "not proceeding based on allegations of fraud or misconduct." Ex. O.[7] In Montgomery County, the Campaign's counsel confirmed that she had no "knowledge" of "any fraud" or "undue or improper influence" with

---

[7] *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, No. 2011-874-878, at 13-14 (Pa. Ct. Com. Pl. Nov. 13, 2020).

respect to the "592 disputed ballots" being challenged. Ex. P.[8] Similarly, in Bucks County, the Campaign stipulated that it "do[es] not allege, *and there is no evidence of*, any fraud[,] … any misconduct[,] any impropriety[,] … [or] any undue influence […] with respect to the challenged ballots." Ex. Q; *see also id.* ("Petitioners do not allege, and there is no evidence, that any of the challenged ballots were cast by someone other than the electors whose signature is on the outer envelope.").[9]

Nor have Plaintiffs put forth any evidence of fraud in this case; their evidence relates to the counties' notification procedures. At most, Plaintiffs assert "garden variety election irregularities," not the kind of "fundamentally unfair" practices that give rise to a due process violation. *See Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998).

## II.   The Equities Do Not Favor An Injunction

Even if Plaintiffs' case on the merits were not as weak as it is, Plaintiffs have not come close to justifying the grossly disproportionate injunction they seek, nor have they demonstrated any equitable right to relief. Instead, their naked attempt to "declare Trump the winner," Pls.' Mem. at 2, threatens to "abrogate the right of

---

[8] Tr., *Donald J. Trump for President, Inc. v. Bucks Cty. Bd. of Elections*, No. 2020-18680, at 11 (Pa. Ct. Com. Pl. Nov. 10, 2020).
[9] Stipulated Facts, *Donald J. Trump for President, Inc. v. Bucks Cnty. Bd. of Elections*, No. 2020-5786, ¶¶ 27-30, 34 (Pa. Ct. Com. Pl. Nov. 19, 2020).

millions of Pennsylvanians to select their President and Vice President." *Stein*, 223 F. Supp. 3d at 442.

Disenfranchising even "a single voter is a matter for grave concern," *Serv. Emps. Int'l Union, Local 1 v. Husted*, 906 F. Supp. 2d 745, 750 (S.D. Ohio 2012), and Plaintiffs' casual embrace of the notion that millions of ballots solemnly cast by Pennsylvanians "could be from Mickey Mouse" recklessly disregards the rights of citizens of this Commonwealth to have their ballots counted.

And the harm to those voters from casting their ballots into doubt—and ultimately causing widespread disenfranchisement—vastly outweighs any potential harm to Plaintiffs. Indeed, Plaintiffs cannot demonstrate any real harm that they or anyone else will suffer absent injunctive relief. The requested injunction should be denied.

### A.    Plaintiffs Have An Adequate Remedy At Law And Will Not Be Irreparably Injured In The Absence Of An Injunction

The availability of adequate state remedies, the admitted lack of evidence offered in support of Plaintiffs' motion, and Plaintiffs' delay in bringing this litigation doom any argument that Plaintiffs will face irreparable injury absent a preliminary injunction. The "extraordinary remedy" of injunctive relief is "unavailable absent a showing of irreparable injury and no adequate remedy at law." *Flynn v. U.S. by & through Eggers*, 786 F.2d 586, 590 (3d Cir. 1986); *see also Bey*

*v. DeRose*, No. 4:CV-14-1612, 2014 WL 5035417, at *2 (M.D. Pa. Oct. 8, 2014). And, importantly here, "[s]peculative injury does not constitute a showing of irreparable harm." *Ledoue v. Sabol*, No. 1:10-CV-02268, 2011 WL 2746258, at *2 (M.D. Pa. July 12, 2011) (citing *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)).

Plaintiffs have adequate remedies at law in the form of state election contests, recounts, and recanvasses, all of which they may pursue to address claims of fraud or irregularity—if they were supported by actual evidence (which they are not). *See supra* at 4-6. The Trump Campaign has also raised some of the purported state law violations they assert here in state courts, as demonstrated by the exhibits attached to their motion for a preliminary injunction. *See* ECF No. 182-8 (*In Re: Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, No. 20-05786-35 (Bucks Cnty. Ct. Common Pleas Nov. 9, 2020)); ECF No. 182-9 (*In Re: Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, No. 2020-18680 (Montgomery Cnty. Ct. Common Pleas Nov. 5, 2020).[10] Indeed, just two days

---

[10] The Trump Campaign lost both cases referenced in those exhibits and chose not to appeal those decisions, but it provides no reason why that forum could not provide an adequate remedy at law. *See In Re: Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, No. 20-05786-35, slip. op. at 21 (Bucks Cnty. Ct. Common Pleas Nov. 19, 2020)); *In Re: Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, No. 2020-18680, slip. op. at 11 (Montgomery Cnty. Ct. Common Pleas Nov. 13, 2020).

ago the Pennsylvania Supreme Court granted an application to consider the Trump Campaign's challenge to counting mail ballots in which the voter declaration is not completely filled out, another practice Plaintiffs complain of that, once again, can be addressed by the Commonwealth's courts. *See, e.g.*, Order, *In Re: Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen. Election*, Nos. 89-93 EM 2020 (Pa. Nov. 18, 2020).

But despite the abundance of state law remedies, Plaintiffs ask this federal court to allow them to bypass those forums without any explanation for why these remedies are inadequate. And just four years ago, the Trump Campaign itself argued that Pennsylvania's election processes precluded the kind of injunction it now seeks from this Court. *See* Brief of Donald J. Trump for President, Inc. in Opposition to Plaintiffs' Motion for Preliminary Injunction, *Stein*, No. 16-CV-06287, ECF No. 38 (E.D. Pa. Dec. 8, 2016). The Trump Campaign was right four years ago and is wrong now. *Cf. González-Cancel v. Partido Nuevo Progresista*, 696 F.3d 115, 120 (1st Cir. 2012) ("Where, as here, a plaintiff is aware of, yet fails to fully use, an adequate state administrative or judicial process to address a local election dispute, a claim that the election process created fundamental unfairness to warrant federal intervention cannot survive.").

The admitted speculative nature of Plaintiffs' claims also demonstrates a lack of irreparable injury. Plaintiffs have asked this Court to upend Pennsylvania's

-29-

election process not to remedy a proven injury, but to allow them to search for ballots that—they hope—may substantiate their contentions, an acknowledgement that they lack evidence to support their spectacular allegations. *See* Pls.' Mem. at 2 (noting that Plaintiffs' request relief so that they can conduct an "exercise [that] will determine whether Plaintiffs can prove their case"). That is not an appropriate ground to delay the certification process in a presidential election. Even in a more mundane setting, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Such relief requires Plaintiffs to establish that they already have a *likelihood* of success on the merits, *id.* at 32—not a mere hope of prevailing in the future. *Cf. id.* at 22 (preliminary injunction may not be awarded based on "possibility" of irreparable harm). Plaintiffs' unsupported surmise that something may turn up is not a sufficient justification to delay or overturn the results of a presidential election. *See, e.g.*, *Pfuhl*, 253 A.2d at 275 (refusing to "follow a contestant on a fishing expedition" in the hope that the petitioner could find enough evidence to overturn the result in an election contest).

Finally, Plaintiffs' undue delay in bringing this litigation, *see* ECF No. 144 at 17-19, undermines any contention that they have suffered irreparable harm. *See Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994). They challenge election procedures that in some instances have been in place for weeks before

election day.[11] "A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." Wright & Miller, 11A *Federal Practice and Procedure*, § 2948.1 (3d ed., Apr. 2017 update).

### B.     The Balance Of Equities Weighs Against Issuing The Injunction

While Plaintiffs will suffer no real harm if the injunction is denied, granting an injunction would cause both Defendants and the DNC—and, yet more importantly and profoundly, the millions of Pennsylvanians who voted in the election—significant, irreparable harm that could not be adequately redressed at a later date.

### 1.     The Requested Injunction Would Likely Prevent Defendants From Timely Certifying The Results Of The Election

Though Plaintiffs minimize the scope of the requested preliminary injunction, labeling it only a "slight delay," their requested relief could well prevent certification of election results on a Commonwealth-wide basis until it is too late for the results to be certified in time to meet the federal safe-harbor deadline for Pennsylvania's

---

[11] *See, e.g.*, Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-In Ballot Return Envelopes* (Sept. 11, 2020), https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/Examination%20of%20Absentee%20and%20MailIn%20Ballot%20Return%20Envelopes.pdf (providing the steps each county board of elections would follow to process returned mail ballots).

electoral votes (December 8) or even the meeting of the electors to cast their votes (December 14). Pls.' Mem. at 2, 25.

The Electoral College meets on December 14, and Plaintiffs' suggestion that their injunction will not harm anyone, *id.* at 25, ignores the cascading consequences of the requested delay. Under Pennsylvania law, the last day for counties to certify their returns to the Secretary is November 23 (i.e., in three days). *See* 25 P.S. § 2642(k). The purpose of the county certification deadline is to ensure that the Secretary of State has time to process and compute those returns as required under Pennsylvania law, which are then sent to the Governor, who will ascertain the number of votes given and issue certificates of election by December 8 based on the choice of Pennsylvania's voters. *See id.* § 3166; 3 U.S.C. § 5 (establishing the federal "safe harbor" deadline of December 8, 2020); *Stein*, 223 F.Supp. 3d at 426 ("Pennsylvania has opted into the federal 'safe harbor' that allows it to determine conclusively its Presidential Electors through state procedures. The safe harbor requires Pennsylvania to make a final determination of its Electors at least six days before the Electoral College meets."). Pennsylvania's electors then must vote when the electoral college convenes on December 14. 3 U.S.C. § 7.

Any intervention into state certification procedures would be wholly unwarranted, based on essentially non-existent evidence of election irregularities, and could well cause the Commonwealth to miss these state-mandated deadlines,

which are in place precisely so that Pennsylvania can ensure that its chosen slate of electors are accepted by Congress without question.[12] It is only in the rarest of circumstances that federal courts have taken such drastic measures to prevent or delay the certification of election results, and only where the evidence establishes that there was a fundamental failure of the election process. *Stein*, 223 F. Supp. 3d at 438 (collecting cases).[13]

Plaintiffs' unsupported allegations do not even hint at the kind of systemic fraud or irregularities that could support such relief. Plaintiffs' First Amended Complaint—the operative complaint—removed their due process claim alleging fundamental unfairness in the election, and the only "evidence" for the number of allegedly unlawful ballots appears to be that 37,000 mail ballots were rejected in Pennsylvania's *primary* election. Pls.' Mem. at 17. That irrelevant statistic—which ignores all of the experience that election officials and voters gained as a result of the primary, as well as the robust public education efforts after the primary to show voters how to correctly vote by mail, *supra* at 14-15—cannot justify a

---

[12] Similarly, the DNC and Vice President Biden, would suffer severe harm if elections returns were not timely processed and Pennsylvania's 20 electoral votes were not awarded to the Vice President, despite his leading in the Commonwealth by over 81,000 votes.

[13] It is telling that Plaintiffs now say that they "do not seek to enjoin the certification of any other Pennsylvania election" (Pls. Mem. 1)—including state legislative elections in which Republicans maintained a majority in both houses of the General Assembly—only the election that the Trump Campaign lost.

Commonwealth-wide halt to certification of election results that would require circumstances akin to a "total failure to conduct the election." *See Stein*, 223 F. Supp. 3d at 438. Indeed, when litigants in Michigan asked a court to do precisely what Plaintiffs ask here—to delay a state's certification of their results under state law— the court refused to do so, concluding "[i]t would be an unprecedented exercise of judicial activism for this Court to stop the certification process of the Wayne County Board of Canvassers. The Court cannot defy a legislatively crafted process," Opinion & Order at 11, *Costantino*, No. 20-014780-AW. Similarly, just yesterday, the Northern District of Georgia flatly refused to enjoin Georgia election officials from certifying results, concluding at the end of a hearing that "[t]o halt the certification at literally the 11th hour would breed confusion and significant disenfranchisement." [14]

### 2. The Requested Injunction Will Cause Irreparable Harm To Other Parties

The requested injunction would cause irreparable harm to the DNC and, more importantly, to the millions of Pennsylvanians who cast votes in the election and who expect that their choice in the presidential election will be expeditiously

---

[14] A. Judd, *Trump allies draw Georgia into election conspiracy claims,* The Atlanta Journal-Constitution, Nov. 19, 2020, https://www.ajc.com/politics/election/judge-rejects-trump-supporters-attempt-to-reject-election-results/GMSGXDY4AZFEXOGBNOLGBZ45NI; *see Wood v. Raffensperger*, No. 1:20-cv-04651, ECF No. 52 (Minute Order denying request for temporary injunction) (Ex. **).

-34-

certified and transmitted to Congress for the counting of the electoral votes.  At a minimum, the delay Plaintiffs seek would have the effect of calling into question all the mail-in votes that were cast in the Defendant counties, including—but not limited to—those cast for the Biden-Harris ticket and other Democratic candidates; it could also have the effect of invalidating every ballot cast in Pennsylvania, if it results in Pennsylvania's inability to send its chosen slate of electors to Congress. Plaintiff has not come close to justifying those dramatically adverse consequences for Pennsylvania voters and for the DNC.

### 3.    The Public Interest Does Not Favor The Injunction

 "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger*, 456 U.S. at 312; *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 412 (E.D. Pa. 2016).  Here, the requested relief injures the public interest for two distinct reasons.

First, the requested injunction would impose inordinate discovery obligations on the same local and state officials who are charged with ensuring that Pennsylvania's tabulation of all votes in *every federal and state election* is finalized and certified.  Heaping onerous discovery on these officials will make it difficult for them to carry out their mandatory functions in the manner (i.e., in the time and pace) that the General Assembly has directed.  The public has a strong interest in ensuring

-35-

that the results in all elections from president on down to local races are accurately and promptly finalized. Plaintiffs' unprecedented requested relief will harm that interest.

Second, the requested injunction would cause irreparable harm to the DNC and, more importantly, to the millions of Pennsylvanians who cast votes in the *presidential election* and who expect that their choices will expeditiously be certified and transmitted to Congress for the counting of the electoral votes. The public consequences of this requested relief are monumental and weigh heavily against a preliminary injunction.

If Plaintiffs' request is granted, it could "well ensure that no Pennsylvania vote counts," abrogating the rights of Pennsylvania voters to select the next President and render their votes meaningless. *Stein*, 223 F. Supp. 3d at 442. This "would be both outrageous and completely unnecessary." *Id*. Indeed, it is this requested relief—rather than any alleged Election Code violation—that threatens to deprive countless Pennsylvanians, including the DNC's members, of their constitutional right to vote and to have their votes counted. *See, e.g.*, *Reynolds*, 377 U.S. at 555 n.29 ("There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have the ballot counted.") (internal quotation marks omitted).

-36-

Were this Court to enjoin certification of Pennsylvania's presidential election results, Pennsylvanians' confidence in free and fair elections would also be irreparably damaged. Pennsylvanians—during a global pandemic—turned out to vote in record numbers. A court order obstructing the will of those voters, when Vice President Biden currently leads by more than *81,000* votes in the Commonwealth, would deeply diminish voters' faith in the electoral process—a sentiment that would persist long after this election. *See Hardin v. Montgomery*, 495 S.W.3d 686, 711 (Ky. 2016) (noting "the destabilization of election results that would occur if we cast aside election results for trivial reasons or unsubstantiated accusations" would be "corrosive to the public's trust in fair elections"); *One Wis. Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 903 (W.D. Wis. 2016), *aff'd in part, rev'd in part on other grounds sub nom. Luft v. Evers*, 963 F.3d 665 (7th Cir. 2020) ("a preoccupation with mostly phantom election fraud leads to real incidents of disenfranchisement, which undermine rather than enhance confidence in elections."). The balance of equities accordingly tips decidedly against Plaintiffs; and their ultimate goal—to discard lawfully-cast ballots—disserves the Commonwealth and the interests of its citizens.

## CONCLUSION

For the reasons stated herein, the DNC requests that this Court deny Plaintiffs' motion for a temporary restraining order and preliminary injunction.

-37-

Dated: November 20, 2020

Marc E. Elias*
Uzoma Nkwonta*
Lalitha D. Madduri*
John M. Geise*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
MElias@perkinscoie.com
UNkwonta@perkinscoie.com
LMadduri@perkinscoie.com
JGeise@perkinscoie.com

Respectfully submitted,

/s/ Ari Holtzblatt

Clifford B. Levine (PA ID No. 33507)
Alex M. Lacey (PA ID No. 313538)
Kyle J. Semroc (PA ID No. 326107)
DENTONS COHEN & GRIGSBY P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Telephone: (412) 297-4998
Clifford.levine@dentons.com
Alex.lacey@dentons.com
Kyle.semroc@dentons.com

Seth P. Waxman*
Ari Holtzblatt*
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Seth.Waxman@wilmerhale.com
Ari.Holtzblatt@wilmerhale.com

*Counsel for Intervenor DNC*

*Special Appearance*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document, memorandum in support, and proposed order were electronically filed on November 20, 2020, via the Court's CM/ECF System, which will send notification of such filing to counsel of record for Plaintiffs.

/s/ Ari Holtzblatt
Counsel for Intervenor DNC