# EXHIBIT F

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: 2,349 Ballots in the       :
2020 General Election           :  No. 1162 C.D. 2020
                                   :  Submitted:  November 19, 2020
Appeal of: Nicole Ziccarelli       :

**BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge**

*OPINION NOT REPORTED*

**MEMORANDUM OPINION
BY JUDGE BROBSON**            **FILED:  November 19, 2020**

Nicole Ziccarelli, a Republican candidate for State Senator from the 45th Senatorial District in the General Election (Candidate), initiated a statutory appeal under the Pennsylvania Election Code[1] (Election Code) in the Court of Common Pleas of Allegheny County (Common Pleas Court) from a decision by the Allegheny County Board of Elections (Elections Board) to canvass and count 2,349 absentee or mail-in ballots for the November 3, 2020 General Election (General Election) notwithstanding the lack of a date of signature by the elector on the statutorily required elector declaration on the outside envelope of the ballots.  On appeal, the Common Pleas Court rejected the Campaign Committee's arguments and affirmed the Elections Board's decision in a November 18, 2020 Order.[2]

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

[2] On application by Candidate, this Court issued an Order late on November 18, 2020, enjoining the Elections Board from canvassing and counting the disputed ballots and directed that the Elections Board segregate those ballots pending further order of the Court.

The Committee filed a timely appeal from the Common Pleas Court's order with this Court, contending that the disputed ballots are invalid and cannot be counted. The parties have submitted briefs in support of their respective arguments on the merits.

Given the exigency,[3] we dispense with an extensive summary of the parties' respective positions on appeal. Generally, the Candidate alleges that the absentee and mail-in ballots that are the subject of this appeal are defective and, therefore, cannot be counted under the Election Code. The Elections Board and DNC Services Corp./Democratic National Committee (DNC)[4] generally contend that we must interpret and apply the Election Code to enfranchise, rather than disenfranchise voters. This means, according to the Elections Board and the DNC, that what they term "minor irregularities" in elector declarations can, and in this case should, be overlooked in the absence of any evidence of fraud.

Each county board of election is required to provide the mail-in ballot elector with the following: (1) two envelopes—an inner secrecy envelope in which the executed ballot is placed and an outer mailing envelope in which the secrecy envelope (containing the executed ballot) is placed for mailing (or drop off); (2) a list of candidates, if authorized; and (3) "the uniform instructions in form and substance as prescribed by the Secretary of the Commonwealth and nothing else." Sections 1304 and 1304-D(c) of the Election Code, 25 P.S. §§ 3146.4, 3150.14(c). The outer mailing envelope must include an elector declaration and the name and

---

[3] "The integrity of the election process requires immediate resolution of disputes that prevent certification." *In re 2003 Election for Jackson Twp. Supervisor*, 840 A.2d 1044, 1046 (Pa. Cmwlth. 2003) (Kelly, S.J.).

[4] Though not a named party originally, the Common Pleas Court granted the DNC intervenor status as a respondent.

2

address of the proper county board of election. Sections 1304 and 1304-D(a) of the Election Code. The form of the declaration is left up to the Secretary of the Commonwealth (Secretary). It must, however, include "a statement of the elector's qualifications, together with a statement that the elector has not already voted in the primary or election." Sections 1304 and 1304-D(b) of the Election Code. The Secretary adopted a form declaration that includes the required statutory language and space for the elector to sign, date, and fill out the elector's name and address.

In its recent decision in *In re November 3, 2020 General Election*, ___ A.3d ___ (Pa., No. 149 MM 2020, filed Oct. 23, 2020), the Pennsylvania Supreme Court reviewed the requirements in the Election Code with respect to the elector declaration on mail-in and absentee ballots. To execute a mail-in or absentee ballot, the Election Code requires the elector to "fill out, date and sign the declaration printed on [the outside] envelope." Sections 1306(a) and 1306-D(a), 25 P.S. §§ 3146.6(a), 3150.16(a). During the pre-canvass or canvass of mail-in and absentee ballots, the board of election "is required to determine if the ballot declaration is 'sufficient.'" *In re: November 3, 2020 Gen. Election*, ___ A.3d at ___, slip op. at 25 (quoting Section 1308(g)(3) of the Election Code,[5] 25 P.S. § 3146.8(g)(3)). With respect to determining the sufficiency of the declaration, the Pennsylvania Supreme Court explained the boards of election's obligation: "[I]n determining whether the declaration is 'sufficient' for a mail-in or absentee ballot at canvassing, the county board *is required* to ascertain whether the declaration on the return envelope has been filled out, *dated*, and signed. This is the extent of the board's obligation in this regard." *Id.* (emphasis added).

---

[5] Added by the Act of March 6, 1951, P.L. 3.

3

The concern that an elector might fail to "fill out" the declaration in full, let alone date and sign the declaration, in part prompted the Pennsylvania Democratic Party and Democratic elected official and candidates (Democratic Party) to initiate a suit in this Court's original jurisdiction against the Secretary and every Pennsylvania county board of election earlier this year, seeking declaratory and injunctive relief. The Pennsylvania Supreme Court, pursuant to Section 726 of the Judicial Code, 42 Pa. C.S. § 726, assumed jurisdiction over the case to address issues relating to the interpretation and implementation of Act 77 of 2019[6]—the statute that amended the Election Code to authorize mail-in voting (a/k/a no-excuse absentee voting).

Among the issues/concerns raised by the Democratic Party was that electors may submit their mail-in or absentee ballots with "minor facial defects resulting from their failure to comply with the statutory requirements for voting by mail." *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 372 (Pa. 2020). The Democratic Party asked the Pennsylvania Supreme Court to require county boards of election to give those electors notice and an opportunity to cure the defective ballots. In advancing that argument, the Democratic Party relied on the same principles the Board relies on in this case—*i.e.*, liberal construction of the Election Code requirements and the favoring of enfranchising voters, not disenfranchising them. *Id.* at 372-73. The Secretary opposed the relief requested:

> Unlike the other claims asserted herein, the Secretary opposes [p]etitioner's request for relief in this regard. She counters that there is no statutory or constitutional basis for requiring the [b]oards [of election] to contact voters when faced with a defective ballot and afford them an opportunity to cure defects. The Secretary further notes that, while [p]etitioner relies on the Free and Equal Elections Clause [of the

---

[6] Act of October 31, 2019, P.L. 552, No. 77 (Act 77).

Pennsylvania Constitution], that Clause cannot create statutory language that the General Assembly chose not to provide.

The Secretary submits that so long as a voter follows the requisite voting procedures, he or she "will have an equally effective power to select the representative of his or her choice." Emphasizing that [p]etitioner presents no explanation as to how the [b]oards [of election] would notify voters or how the voters would correct the errors, the Secretary further claims that, while it may be good policy to implement a procedure that entails notice of defective ballots and an opportunity to cure them, *logistical policy decisions like the ones implicated herein are more properly addressed by the Legislature, not the courts.*

*Pa. Democratic Party v. Boockvar*, 238 A.3d at 373 (emphasis added) (citations omitted) (quoting *League of Women Voters v. Cmwlth.*, 178 A.3d 737, 809 (Pa. 2018)). Apparently persuaded by the Secretary's arguments, the Pennsylvania Supreme Court rejected the request for a judicially mandated notice and opportunity to cure:

Upon review, we conclude that the [b]oards [of election] are not required to implement a "notice and opportunity to cure" procedure for mail-in and absentee ballots that voters have filled out incompletely or incorrectly. Put simply, as argued by the parties in opposition to the requested relief, [p]etitioner has cited no constitutional or statutory basis that would countenance imposing the procedure [p]etitioner seeks to require (*i.e.*, having the [b]oards [of election] contact those individuals whose ballots the [b]oards [of election] have reviewed and identified as including "minor" or "facial" defects—and for whom the [b]oards [of election] have contact information—and then afford those individuals the opportunity to cure defects until the [federal Uniformed and Overseas Citizens Absentee Voting Act[7]] deadline).

While the Pennsylvania Constitution mandates that elections be "free and equal," it leaves the task of effectuating that mandate to the Legislature. As noted herein, although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the "notice and opportunity to cure" procedure sought by [p]etitioner. *To the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements, we agree that the decision to provide a "notice and*

---

[7] 52 U.S.C. §§ 20301-20311.

*opportunity to cure" procedure to alleviate that risk is one best suited for the Legislature.* We express this agreement particularly in light of the open policy questions attendant to that decision, including what the precise contours of the procedure would be, how the concomitant burdens would be addressed, and how the procedure would impact the confidentiality and counting of ballots, all of which are best left to the legislative branch of Pennsylvania's government. Thus, for the reasons stated, the [p]etitioner is not entitled to the relief it seeks in Count III of its petition.

*Id.* at 374 (emphasis added) (citation omitted).

We must presume that the Elections Board was aware of the Pennsylvania Supreme Court's decision in *In re: November 3, 2020 General Election* and its earlier decision in *Pennsylvania Democratic Party* when the Elections Board began the canvass and pre-canvass process for mail-in and absentee ballots. The Elections Board chose, nonetheless, to ignore its obligations under the Election Code to determine the sufficiency of the mail-in and absentee ballots at issue, as recapitulated by the Supreme Court in *In re: November 3, 2020 General Election*, and apparently took the Pennsylvania Supreme Court's decision in *Pennsylvania Democratic Party* as both a ruling against a notice and opportunity to cure remedy for defective ballots and an invitation to, instead, simply *ignore* defects when canvassing and pre-canvassing. In so doing, the Elections Board even acted in conflict with September 28, 2020 guidance from the Secretary: "At the pre-canvass or canvass, as the case may be, the county board of election[] should . . . [s]et aside any ballots without a filled out, dated and signed declaration envelope." Pennsylvania Dep't of State, *Guidance Concerning Civilian Absentee and Mail-In Ballot Procedures*, 9/28/2020, at 8, *available at* https://www.dos.pa.gov/VotingElections/OtherServicesEvents/Documents/DOS%2 0Guidance%20Civilian%20Absentee%20and%20Mail-In%20Ballot%20Procedure

s.pdf (last visited Nov. 20, 2020).[8]  Where the Elections Board tacitly derived its authority to ignore its statutory obligation to determine the sufficiency of ballots and to violate the will of the General Assembly reflected in Act 77, approved by the Governor, and the guidance of the Secretary is a mystery.

The General Assembly's authority in this regard, however, is certain.  Under the United States Constitution, the General Assembly determines the "Times, Places and Manner of holding Elections for . . . Representatives," subject to any rules that Congress may establish.[9]  The General Election, during which the voters of Pennsylvania select their representatives to the United States House of Representatives, falls within the provision.  Even in cases involving the right to vote, the rules of statutory construction apply.  *See In re: November 3, 2020 Gen. Election*, ___ A.3d at ___, slip op. at 19-20; *Pa. Democratic Party*, 238 A.3d at 355-56.  The Pennsylvania Supreme Court has already determined that the above statutory language regarding the casting and pre-canvassing and canvassing of mail-in and absentee ballots is "plain," *In re: November 3, 2020 Gen. Election*, ___ A.3d at ___, slip op. at 24, and "unambiguous," *id.*, slip op. at 25, with respect to an elector's obligation to "fill out, date and sign" the declaration and the county board of election's obligation to determine the sufficiency of that declaration. The constitutionality of these provisions is not in question here.  It is not the judiciary's role, let alone the role of the Elections Board, to relax or ignore

---

[8] We note that the Pennsylvania Supreme Court cited to this supplemental guidance from the Secretary in its opinion in *In re: November 3, 2020 Gen. Election*, ___ A.3d at ___, slip op. at 4.

[9] U.S. Const. art. I, § 4, cl. 1 ("Elections Clause").  The full text of the Elections Clause provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."

requirements that the General Assembly, with the Governor's approval, chose to include in the Election Code.

In this regard, while we recognize the well-settled principle of statutory construction that the Election Code should be liberally construed in favor of voter enfranchisement, not disenfranchisement, like all principles of statutory construction this rule is only implicated where there is ambiguity in the Election Code. *See In re: Canvassing Observation*, ___ A.3d ___, (Pa., No. 30 EAP 2020, filed Nov. 13, 2020), slip op. at 15-16; *Pa. Democratic Party*, 238 A.3d at 356. In *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 843 A.2d 1223 (Pa. 2004), the Pennsylvania Supreme Court reversed a decision by this Court that would have allowed the Elections Board to count absentee ballots that were hand-delivered by a third person on behalf of electors *who were not disabled*. Then, and now, the Election Code expressly prohibits this practice. This Court's reason for disregarding the mandatory language of the Election Code that authorized only "in person" delivery as an alternative to mail was our view "that it was more important to protect the interest of the voters by not disenfranchising them than to adhere to the strict language of the statute under these circumstances." *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 839 A.2d 451, 460 (Pa. Cmwlth.) (en banc), *rev'd*, 843 A.2d 1223 (Pa. 2004).

In reversing this Court, the Pennsylvania Supreme Court looked to the rules of statutory construction. *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 843 A.2d at 1230. Critically for purposes of this matter, in terms of the Election Code, the Supreme Court held: "[A]ll things being equal, the law will be construed liberally in favor of the right to vote *but at the same time, we cannot ignore the clear mandates of the Election Code.*"  *Id.* at 1231 (emphasis added).

The relevant language in Section 1306(a) of the Election Code provided at the time what it provides today: "[T]he elector *shall* send [the absentee ballot] by mail, postage prepaid, except where franked, or deliver it in person to said county board of election." (Emphasis added.) The Supreme Court held that the General Assembly's use of the word "shall" had a clear "imperative or mandatory meaning." *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 843 A.2d at 1231. While the appellees argued that the word should be construed liberally (as directory and not mandatory) in favor of the right to vote, the Supreme Court disagreed:

> In Section [1306(a)], there is nothing to suggest that an absentee voter has a choice between whether he mails in his ballot or delivers his ballot in person, or has a third-party deliver it for him. To construe Section [1306(a)] as merely directory would render its limitation meaningless and, ultimately, absurd.

*Id.* at 1232.[10] Alternatively, even if the statutory language were ambiguous, the Court held that "there is an obvious and salutary purpose—grounded in hard experience—behind the limitation upon the delivery of absentee ballots." *Id.* The court explained:

> The provision at issue limits the number of third persons who unnecessarily come in contact with the ballot and thus provides some safeguard that the ballot was filled out by the actual voter, and not by a perpetrator of fraud, and that once the ballot has been marked by the actual voter in secret, no other person has the opportunity to tamper

---

[10] The dissent chooses to rely on *Appeal of James*, 105 A.2d 64 (Pa. 1954), a case that did not involve mail-in or absentee ballots, but whether actual votes cast for one candidate in particular on election day should count where the intent of the electors to vote for that particular candidate was clearly manifested, albeit imperfectly, on the actual ballot. *Appeal of James* does not stand for the proposition that courts can and should disregard the clear and unambiguous terms of the Election Code, as the Pennsylvania Supreme Court's more recent pronouncements cited above establish. This case is about whether electors followed the law in submitting their ballots. Accordingly, *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election* is much more on point than *Appeal of James*.

with it, or even to destroy it. The provision, thus, is consistent with the spirit and intent of our election law, which requires that a voter cast his ballot alone, and that it remain secret and inviolate.

*Id.* (citation omitted). The Supreme Court concluded:

> Our precedent is clear: we cannot simply ignore substantive provisions of the Election Code. . . . [S]o-called technicalities of the Election Code are necessary for the preservation of secrecy and the sanctity of the ballot and must therefore be observed—particularly where, as here, they are designed to reduce fraud.

*Id.* at 1234.

Here, we agree with, and are bound by, the Pennsylvania Supreme Court's ruling in *In re: November 3, 2020 General Election* that Sections 1306(a) (absentee ballots), 1306-D(a) (mail-in ballots), and 1308(g)(3) (pre-canvass and canvass) of the Election Code, are plain and unambiguous. The General Assembly's use of the word "shall" in these provisions has a clear imperative and mandatory meaning. *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, 843 A.2d at 1231. The elector "**shall** . . . fill out, date and sign the declaration." The board of election "**shall** examine the declaration on the envelope of each ballot" and be "satisfied that the declaration is sufficient." A sufficient declaration is one where the elector filled out, dated, and signed the declaration. *In re: November 3, 2020 Gen. Election*, ___ A.3d at ___, slip op. at 25. To remove the date requirement would constitute a judicial rewrite of the statute, which, as the Pennsylvania Supreme Court recently held, "would be improper." *In re: Canvassing Observation*, ___ A.3d at ___, slip op. at 17.[11]

---

[11] *See also In re Silcox*, 674 A.2d 224, 225 (Pa. 1996) (holding that signatures on nomination petition without date must be stricken under clear and unambiguous language of statute, reasoning that "until the legislature chooses to amend [the statutory requirement for a date], we are constrained to find that the elector shall sign the petition as well as add . . . date of signing").

As noted above, the Election Code requires the county boards of election to determine whether absentee and mail-in ballots are satisfactory. Under the law, a satisfactory ballot is one where the elector has filled out, signed, and dated the statutorily-required declaration. This was the policy choice of the General Assembly and the Governor in approving Act 77, and it is not the role of this Court or the Elections Board to second guess those policy choices. It is a myth that all ballots must be counted in the absence of proof of fraud. Ballots, under the law, may be set aside for "fraud *or error.*" *See* Section 1407(b) of the Election Code, 25 P.S. § 3157 (emphasis added). While there may not be an allegation of fraud in this matter, there was clear error *at two levels.* First, the electors erred in failing to date their declarations, as required by the Election Code.[12] Second, the Elections Board erred when it failed to execute its duty during the canvass and pre-canvass process to determine the sufficiency of the declarations and set deficient ballots aside. Accordingly, the Common Pleas Court erred as a matter of law by failing to reverse the Elections Board's determinations with respect to counting these defective mail-in and absentee ballots.

Even if we were to conclude that one of the relevant provisions of the Election Code suffered from some ambiguity that required us to resort to statutory construction to discern the General Assembly's intent, our result would be the same.

---

[12] This is not a situation involving an ambiguity or question as to what an elector must do to cast a ballot and, seeking assistance, a confused elector relies on advice of a local election official. As noted above, the Pennsylvania Supreme Court has already held that there is no ambiguity in this scheme as far as what the Election Code requires of the elector and the boards of election in determining whether a mail-in or absentee ballot is satisfactory. Moreover, there is simply no evidence that the electors who signed their declarations in this case failed to date the declaration in reliance on advice from a public official. *See In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d at 1234 n.14 (rejecting reliance argument where no evidence of reliance and where alleged advice is in clear contravention of law).

As was the case in *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election*, there is an obvious and salutary purpose behind the requirement that a voter date the declaration. The date provides a measure of security, establishing the date on which the elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot, as reflected in the body of the declaration itself.[13]

While we realize that our decision in this case means that some votes will not be counted, the decision is grounded in law. It ensures that the votes will not be counted because the votes are invalid as a matter of law. Such adherence to the law ensures equal elections throughout the Commonwealth, on terms set by the General Assembly. The danger to our democracy is not that electors who failed to follow the law in casting their ballots will have their ballots set aside due to their own error; rather, the real danger is leaving it to each county board of election to decide what laws must be followed (mandatory) and what laws are optional (directory), providing a patchwork of unwritten and arbitrary rules that will have some defective ballots counted and others discarded, depending on the county in which a voter resides. Such a patchwork system does not guarantee voters an "equal" election,[14]

---

[13] In this regard, it does not matter whether the ballots at issue in this case were, setting aside these defects, otherwise valid. Our Election Code does not contemplate a process that bogs down county boards of election or the many election day volunteers to track down voters who committed errors of law in casting their ballots in order to verify the information that the elector, through his or her own negligence, failed to provide on the elector's mail-in or absentee ballot. *See Pa. Democratic Party*, 238 A.3d at 373-34. Decisions as to whether these defective ballots must be set aside are to be made at the canvass or pre-canvass based on objective criteria established by the General Assembly and what is before the elections board—that being the ballot itself. *See id.* at 388-89 (Wecht, J., concurring).

[14] "Elections shall be free and equal." Pa. Const. art. I, § 5.

particularly where the election involves inter-county and statewide offices. We do not enfranchise voters by absolving them of their responsibility to execute their ballots in accordance with law.

Accordingly, the Common Pleas Court's order is reversed. This matter is remanded to the Common Pleas Court to issue an order sustaining the Campaign Committee's challenge to the Elections Board's determination and directing the Elections Board to exclude the challenged 2,349 ballots from the certified returns of election for the County of Allegheny under Section 1404 of the Election Code, 25 P.S. § 3154.

P. KEVIN BROBSON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: 2,349 Ballots in the :
2020 General Election : No. 1162 C.D. 2020
 :
Appeal of: Nicole Ziccarelli :
 :

## O R D E R

   AND NOW, this 19th day of November, 2020, the November 18, 2020
Order of the Court of Common Pleas of Allegheny is REVERSED, and this matter
is REMANDED to the court of common pleas for further proceedings in accordance
with the accompanying opinion.

          _____
          P. KEVIN BROBSON, Judge

Certified from the Record

NOV 1 9 2020

And Order Exit

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: 2,349 Ballots in the          :
2020 General Election                :
                                     :   No. 1162 C.D. 2020
Appeal of: Nicole Ziccarelli         :
                                     :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


DISSENTING OPINION
BY JUDGE WOJCIK          FILED:   November 19, 2020


          I respectfully dissent from the majority's decision to reverse the order

of the Court of Common Pleas of Allegheny County (trial court) in this matter.

          The Pennsylvania Supreme Court has explained:

          'The power to throw out a ballot for minor irregularities,
          like the power to throw out the entire poll of an election
          district for irregularities, must be exercised very
          sparingly and with the idea in mind that either an
          individual voter or a group of voters are not to be
          disfranchised at an election except for compelling
          reasons. * * *  'The purpose in holding elections is to
          register the actual expression of the electorate's will' and
          that 'computing judges' should endeavor 'to see what
          was the true result.'  There should be the same reluctance
          to throw out a single ballot as there is to throw out an
          entire district poll, for sometimes an election hinges on
          one vote.'

          In resolving election controversies it would not be
          amiss to consider the following criteria:

          1. Was any specific provision of the Election Code
          violated?

2. Was any fraud involved?

3. Was the will of the voter subverted?

4. Is the will of the voter in doubt?

5. Did the loser suffer an unfair disadvantage?

6. Did the winner gain an unfair disadvantage?

*Appeal of James*, 105 A.2d 64, 67 (Pa. 1954) (citation omitted).  It is undisputed that only the first of the foregoing six criteria is at issue with respect to the contested ballots herein.

Regarding the submission of a vote by absentee ballot, Section 1306(a) of the Pennsylvania Election Code[1] provides, in relevant part:

> [A]t any time after receiving an official absentee ballot, but on or before eight o'clock P.M. the day of the primary or election, the elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot."  This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector.  The elector shall then fill out, date and sign the declaration printed on such envelope.  Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

Likewise, with respect to voting by mail-in ballot, Section 1306-D(a) of the Pennsylvania Election Code[2] states:

_____

[1] Act of June 3, 1937, P.L. 1333, added by the Act of March 6, 1951, P.L. 3, as *amended*, 25 P.S. §3146.6(a).

> At any time after receiving an official mail-in ballot, but on or before eight o'clock P.M. the day of the primary or election, the mail-in elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen, and then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed "Official Election Ballot." This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

In light of the foregoing statutory requirements, the majority seeks to disenfranchise 2,349 registered voters who timely returned their absentee or mail-in ballots to the Allegheny County Board of Elections (Board), which ballots were sealed in secrecy envelopes and inserted in sealed outer envelopes containing a declaration that the voters signed, but did not date, and which ballots the Board received by 8:00 p.m. on the date of the General Election, November 3, 2020. Unlike the majority, I do not believe that *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020), compels such a massive disenfranchisement as that case addressed a voter's ability to cure a "minor" defect on a mail-in or absentee ballot declaration page that consisted of a voter failing to "fill out, date and sign the declaration." In contrast, this case involves neither a voter's ability to cure a defective declaration page nor an unsigned declaration page. Moreover, as

---

**(continued...)**

[2] Added by the Act of October 31, 2019, P.L. 552, 25 P.S. §3150.16a.

noted above, this case does not involve any claim that any of the ballots in question were in any way fraudulent.

There is no dispute that the voters who cast the questioned 2,349 ballots were qualified, registered electors. Moreover, there is no allegation that any of the 2,349 voters in question had voted more than once. Importantly, there is no allegation that the subject 2,349 ballots were not received by the Board prior to the deadline for receipt on General Election Day. The only sin that would lead these votes to be discarded is that the qualified, registered voters failed to enter a date on the declaration portion of the ballot's outer envelope. I would agree that an entirely blank declaration properly would be discarded, as this is the situation contemplated by *Boockvar*. I would suppose that a declaration that the voter did not sign likewise would be discarded, as there would be no confirmation that the ballot is genuinely that of the registered elector. Both of these results would ameliorate purported voter fraud, which is not at issue here.

What then is the protection afforded by the insertion of a date in the declaration? I would posit that it is to ensure that the ballot was timely cast, that is, before the 8:00 p.m. deadline on General Election Day. This interest is protected in this case by the Board's procedures, *i.e.*, the ballots were processed in the Statewide Uniform Registry of Electors and time stamped when received by the Board. Thus, I would hold that this process ensures that the ballots were timely cast.

The majority posits that the voter's entry of the date onto the declaration is material in that it measures a point in time to establish a voter's eligibility to cast a vote. This is simply incorrect, as the date on which a voter fills in a mail-in or absentee ballot is not the critical date, it is receipt on or before

MHW - 4

General Election Day that is determinative. If a voter fills in a mail-in or absentee ballot, including the complete declaration, and dies prior to General Election Day, the vote is not valid regardless of when it was executed.[3]

I view the requirement of a voter-inserted date on the declaration as similar to the issue of the color of ink that is used to fill in the ballot. As outlined above, Sections 1306(a) and 1306-D(a) of the Pennsylvania Election Code plainly state the voter "*shall*, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen." 25 P.S. §§3146.6(a), 3150.16(a) (emphasis added). Our Supreme Court approved the marking of absentee ballots with green or red pen to be appropriate despite the General Assembly's use of the word "shall" when describing the method of marking the ballots. *See In re Luzerne County Return Board*, 290 A.2d 108, 109 (Pa. 1972). There, our Supreme Court construed the Election Code liberally so as to not disenfranchise Pennsylvania voters over a technicality.[4] In light of the foregoing criteria, I would do so here as well, and I

_____

[3] In this regard, I strongly disagree with the majority's reliance on case law interpreting the inapposite provisions of the Pennsylvania Election Code requiring the inclusion of the date of signature on nomination petitions as that requirement implicates a distinct consideration relating to the timeliness of the circulation of the petitions. As indicated, the timeliness of the ballots cast herein is not at issue.

[4] Similarly, I would revisit the so-called "naked ballot" issue where counties have been instructed to disqualify mail-in and absentee ballots that were returned without first being sealed in the "secrecy envelope." I believe that the "secrecy envelope" is an anachronism that should have been abandoned when the Pennsylvania Election Code was recently amended. Under the prior version, absentee ballots were delivered to the corresponding polling places and opened there after the polls closed on General Election Day. Typically, there were a mere handful of absentee ballots at each poll. Without the "secrecy envelope," there was a high probability that the poll worker would know the voters whose absentee ballots were opened there, which would impair those voters' right to cast a secret ballot. As a result of the recent amendments to the Pennsylvania Election Code, mail-in and absentee ballots are retained at a centralized location **(Footnote continued on next page...)**

would not blithely disenfranchise those 2,349 voters who merely neglected to enter a date on the declaration of an otherwise properly executed and timely-submitted ballot.

Accordingly, unlike the majority, I would affirm the trial court's order in this case.

_____

MICHAEL H. WOJCIK, Judge

_____

**(continued...)**

and opened *en masse* beginning on General Election Day.  Under the current regime, in cases of "naked ballots," I would favor a voter's right to cast a vote over the right to cast a secret ballot, because I believe that it is extremely unlikely that the election official who opens the envelope would know the voter whose ballot is being processed.

MHW - 6