# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC. *et. al*,<br><br>               Plaintiffs,<br>   v.<br>KATHY BOOCKVAR, in her capacity as Secretary of the Commonwealth of Pennsylvania; *et. al*,<br><br>              Defendants. | No.  4:20-cv-**02078**-MWB |

**PLAINTIFFS' OMNIBUS REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

PLAINTIFFS' OMNIBUS REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF RENEWED MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY
INJUNCTION.............................................................................................1

I.       PRELIMINARY STATEMENT ...........................................................1

II.      THE COURT SHOULD ENJOIN CERTIFICATION PENDING A
         HEARING ............................................................................................4

         A.       PLAINTIFFS ARE LIKELY TO SUCCEED (Boockvar,
                  Intervenors, Metro Counties, Centre/Northampton) ...........5

                  1.       Defendants Violated the Equal Protection Clause to
                           Favor Biden Over Trump.............................................5

                  2.       Defendants Violated The Due Process Clause To Favor
                           Biden over Trump In A System Which Was So Porous
                           So As to Violate Due Process on Its Face .................7

                  3.       Defendants Violated the Electors Clause...................12

                  4.       Defendants' Miscellaneous Arguments Have No Merit..........13

         B.       PLAINTIFFS WILL SUFFER IRREPARABLE HARM
                  WITHOUT INJUNCTIVE RELIEF (Boockvar, Intervenors,
                  Metro Counties, DNC) ......................................................24

         C.       THE BALANCE OF HARMS FAVORS PLAINTIFFS
                  (Boockvar, Intervenors, Metro Counties, DNC)................26

         D.       THE PUBLIC INTEREST IS FURTHERED BY ENTRY OF
                  INJUNCTIVE RELIEF (Boockvar, Intervenors, Metro
                  Counties, DNC) .................................................................27

III.     CONCLUSION....................................................................................28

CERTIFICATE OF SERVICE .........................................................................30

i

# Table of Authorities

*Amesbury v. CSA, Ltd.*,
　2014 U.S. Dist. LEXIS 8606 (M.D.Pa. Jan. 23, 2014) ..................................................... 11

*Bd. of Trustees v. Garrett*,
　531 U.S. 356 (2001) .......................................................................................................... 23

*Bell v. Southwell*,
　376 F.2d 659 (5th Cir. 1967) ............................................................................................ 21

*Bimbo Bakers USA, Inc. v. Botticella*,
　613 F.3d 102 (3d Cir. 2010) ............................................................................................... 4

*Bognet v. Secretary of the Commonwealth of Penn.*,
　--- F.3d ---, 2020 WL 6686120 (3d Cir. Nov. 13, 2020) ........................................... 7, 12-13

*Bolden v. Potter*,
　452 So.2d 564 (Fla. 1984) ................................................................................................ 21

*Bush v. Gore*,
　531 U.S. 98 (2000) (per curiam) .............................................................................. 9, 26, 28

*Carson v. Simon*,
　978 F.3d 1051, *20 (8th Cir. 2020) ........................................................................ 24-25, 25

*Churma v. U.S. Steel Corp.*,
　514 F.2d 589 (3d Cir. 1975) ............................................................................................. 17

*Donald J. Trump for President*,
　2020 U.S. Dist. LEXIS 188390 ..................................................................................... 7, 22

*Donald J. Trump for President, Inc. v. Cegavske*,
　2020 U.S. Dist. LEXIS 172052 (D.Nev. Sept. 18, 2020) .................................................. 13

*Drake v. Obama*,
　664 F.3d 774 (9th Cir. 2011) ............................................................................................ 14

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
　544 U.S. 280 (2005) .......................................................................................................... 15

*Fres-Co Sys. United States v. Hawkins*,
　2016 U.S. Dist. LEXIS 199343 (E.D. Pa. Aug. 26, 2016) .................................................. 4

*Fulani v. Hogsett*,
　917 F.2d 1028 (7th Cir. 1990) .......................................................................................... 15

*Golden v. Gov't of the V.I.*,
　2005 U.S. Dist. LEXIS 45967 (D.V.I. March 1, 2005) ..................................................... 21

*Green Party of Tenn. v. Hargett*,
　767 F.3d 533 (6th Cir. 2014) ............................................................................................ 15

*Griffin v. Burns*,

570 F.2d 1065 (1st Cir. 1978) ......................................................................................... 8, 10, 16, 21

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
276 F.3d 160 (3d Cir. 2001) ..................................................................................................... 5

*In re November 3, 2020 Gen. Election*,
2020 Pa. LEXIS 5560 (Pa. Oct. 23, 2020) .......................................................................... 2, 8

*In re Revel AC, Inc.*,
802 F.3d 558 (3d Cir. 2015) ..................................................................................................... 5

*ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 210 (3d Cir. 2004) ................................... 15, 16

*Latif v. Obama*,
677 F.3d 1175 (D.C. Cir. 2012) ............................................................................................. 10

*League of Women Voters of Ohio v. Brunner*,
548 F.3d 463 (6th Cir. 2008) ................................................................................................. 18

*Marks v. Stinson*,
19 F.3d 873 (3d Cir. 1994) ..................................................... 5, 8-9, 16, 17, 20, 21, 26

*Marran v. Marran*,
376 F.3d 143 (3d Cir. 2004) ................................................................................................... 15

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ............................................................................................................... 10

*Menkowitz v. Pottstown Mem'l Med. Ctr.*,
154 F.3d 113 (3d Cir. 1998) ................................................................................................... 12

*Morrissey v. Brewer*,
408 U.S. 471 (1972) ............................................................................................................... 10

*Nelson v. Warner*,
2020 WL 4582414 (S.D.W. Va. Aug. 10, 2020) .............................................................. 14-15

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*,
69 F. App'x 550 (3d Cir. 2003) ............................................................................................... 5

*Orloski v. Davis*, 564 F. Supp. 526, 530-31 (M.D. Pa. 1983).......................................... 13, 14

*Pavek v. Donald J. Trump for President, Inc.*,
967 F.3d 905 (8th Cir. 2020) ................................................................................................. 15

*PG Publ. Co. v. Aichele*,
902 F.Supp.2d 724 (W.D. Pa. 2012) ...................................................................................... 23

*Pileggi v. Aichele*,
843 F. Supp. 2d 584 (E.D. Pa. 2012) ....................................................................................... 4

*In re 2,349 Ballots in the 2020 General Election of Nicola Ziccarelli*, No. 1162 C.D. 2020 (Pa. Commw. Ct. Nov. 19, 2020) .................................................................................................... 14, 17

iii

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ................................................................. 8, 17, 25-26, 28

Rule 8 even though complaint did not set forth claim in a separate count) ........................................ 11, 12

*Ryder v. Bartholomew*,
    2014 U.S. Dist. LEXIS 71839 (M.D. Pa. May 27, 2014) ................................... 19

*Schulz v. Williams*,
    44 F.3d 48 (2d Cir. 1994) ...................................................................... 15

*Terra Nova Ins. Co. v. 900 Bar, Inc.*,
    887 F.2d 1213 (3d Cir. 1989) .................................................................. 26

*Texas Democratic Party v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) ............................................................... 14, 15

*Trinsey v. Motgomery Cnty. Bd. of Elections*
    Metro Counties, Trinsey v. Motgomery Cnty. Bd. of Elections, 1988 U.S. Dist. LEXIS 8704 (E.D.Pa.
    Aug. 4, 1988) ......................................................................................... 23

*United States v. L.D.T. Corp.*,
    302 F. Supp. 990 (E.D. Pa. 1969) ........................................................... 19

*Warf v. Bd. of Elections*,
    619 F.3d 553 (6th Cir. 2010) ................................................................... 9

*Wilkes-Barre Election Appeals*,
    1967 Pa. Dist. & Cnty. Dec. LEXIS 9 (Pa.Com.Pl. Luz. Cnty. Dec. 27, 1967) ................................... 9

*Wilmoth v. Sec'y of N.J.*,
    731 Fed.Appx. 97 (3d Cir. 2018) ............................................................. 6

**Statutes:**

3 U.S.C. §5 ................................................................................................ 1, 27

25 P.S. §§ 3146.8 ...................................................................................... 6, 8

# PLAINTIFFS'[1] OMNIBUS REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION[2]

## I.    PRELIMINARY STATEMENT

Defendants and Intervenors[3] have filed six responses totaling over 150 pages to Plaintiffs' Renewed Motion for TRO/Preliminary Injunction (ECF 183), making overlapping and repetitive arguments.   In one succinct omnibus brief, Plaintiff replies to the core issues raised by Defendants to rebut their argument that Plaintiff is not entitled to the limited relief sought pending a hearing in order to prevent the irreparable harm of certifying the 2020 Presidential Election and setting the stage for Governor Wolfe to appoint Pennsylvania's electors before the December 8, 2020 safe-harbor date provided by 3 U.S.C. §5.   In no way does the limited relief sought

---

[1] "Plaintiff" herein refers to Plaintiff  Donald J. Trump for President, Inc." ("**Trump Campaign**") and "Plaintiffs" includes individual voter plaintiffs (Roberts, Henry).  The individual Plaintiffs clearly have the right for relief for generally the same reasons as the Trump Campaign, as discussed in the Omnibus Response in Opposition to the Motions to Dismiss (ECF 170) and herein.  They have standing as individual voters who supported Trump.

[2] All emphases are added, and citations, quotation marks, footnotes, and brackets are omitted, unless otherwise stated.

[3] This Omnibus response addresses the following responses to Plaintiffs' Motion for TRO-Preliminary Injunction: Defendant Secretary Boockvar ("**Boockvar**") (ECF 190); Intervenor Democratic National Committee ("**DNC**") (ECF 195); Defendant Delaware County Boards of Elections ("**Delco**") (ECF 189); Defendants Allegheny County Board of Elections, Chester County Board of Elections, Montgomery County Board of Elections, and Philadelphia County Board of Elections ("**Metro Counties**") (ECF 193); Defendants Centre and Northampton County Board of Elections ("**Centre/Northampton**") (ECF 196); Intervenors NAACP-PA State Conference, Black Political Empowerment Project, Common Cause Pennsylvania, League of Women Voters of Penn., Ayeni, Gajda, Higgins, Lara, Morales, Price, Stevens, and Stover ("**Intervenors**") (ECF 191). For the convenience of the Court, Plaintiff identifies which Defendant and/or Intervenor made a particular argument in the headers of its response.

by Plaintiffs jeopardize appointment of electors for the candidate who won the most legal votes.

*First*, Plaintiffs are likely to succeed on the merits in their claims that Defendants engaged in an intentional scheme to count mail ballots which did not comply with Pennsylvania law in order to favor Joseph Biden over President Donald J. Trump under *Marks v. Stinson*, and the numerous cases on which it was based, including *Reynolds*. In addition, Plaintiffs are likely to succeed on their Due Process claims for intentionally counting defective mail ballots in order to favor Biden or Trump under *Marks v. Stinson*.[4] Further, Plaintiffs are likely to succeed on their Due Process claims that Pennsylvania's mail ballot scheme, without the right to meaningfully observe or challenge deficient mail ballots during the canvassing, is so porous that it is unconstitutional under *Reynolds* and *Griffin*. Further, Defendants' miscellaneous arguments – lack of standing, abstention under *Rooker-Feldman*, laches, lack of remedy, Eleventh Amendment sovereign immunity, and lack of specificity of pleading, are unavailing.

---

[4] Plaintiffs' Due Process claims were expressly included in the original Complaint and in the proposed Second Amended Complaint. Although the Amended Complaint does not have specific Due Process count, its allegations support Due Process claims, particularly in light of the recent Pennsylvania Supreme Court decisions, *i.e.*, I*n re November 3, 2020 Gen. Election*, 2020 Pa. LEXIS 5560 (Pa. Oct. 23, 2020) (holding mail ballots may not be challenged on Election Day despite a provision to the contrary), and *In re Canvassing Observation*, No. 30 EAP 2020 (Pa. Nov. 17, 2020) (rendered on November 17, 2020, which disallowed meaningful observation of the canvassing of mail ballots). As explained below, Plaintiffs are not required to set forth the due process claim under a separate legal heading in federal court.

***Second***, Plaintiffs will suffer irreparable harm if the limited relief sought – a short stay of certification which will not interfere with the appointment of electors for the candidate who has won the most legal votes before the December 8 safe harbor.   In short, it would be unconscionable to allow Pennsylvania to certify electors for Biden and then have it turn out that Trump won the race.

***Third***, the balance of harm favors Plaintiffs.   Trump will be irreparably harmed if the results are certified and electors are appointed for Biden when he ends up winning the vote.   In contrast, Defendants, all government entities, suffer no prejudice by a brief stay while this Court decides the motions for expedited discovery and then proceeds to a hearing.   A short stay does not risk the December 8 safe-harbor date.   ***Alternatively, if the Court were not to grant relief now, the case is not moot*** because it could revoke the certification and order Boockvar to certify Trump as the winner and require the allocation of Pennsylvania's electors to Trump before December 8.   Under federal law, Pennsylvania's legislature can effect this relief.   Notably, this case has progressed much further than *Bush v. Gore* as of November 21.[5]

***Finally***, the public interest is served by a short stay which harms no-one while this Court determines whether Plaintiffs have made cognizable claims supported by

---

[5] Plaintiffs' Motion cites numerous cases where courts have revoked elections and ordered the winning candidate certified, including *Marks v. Stinson*.   *See* Plaintiffs' Renewed Motion for TRO/Preliminary Injunction (ECF 183), fn. 13, at 15.

evidence to challenge the current results of the 2020 Presidential election. The public demands that the winner of the *legal* votes – free of the shroud of Constitutional violations committed by Defendants – be awarded Pennsylvania's electoral votes.

## II.    THE COURT SHOULD ENJOIN CERTIFICATION PENDING A HEARING

A temporary restraining order "is a stay put, equitable remedy that has [as] its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation.'" *Fres-Co Sys. United States v. Hawkins*, 2016 U.S. Dist. LEXIS 199343, at *3, n.1 (E.D. Pa. Aug. 26, 2016). The temporary restraining order standard mirrors the familiar test for a preliminary injunction. *Pileggi v. Aichele*, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012). A movant need only demonstrate "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Bimbo Bakers USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).

A sufficient showing on the first two factors can suffice:

> As a court sitting in equity, the District Court's task was to weigh the four factors, but it was not incumbent on [movant] to prevail on all four factors, only on the overall need for an injunction. A sufficiently strong showing on either the likelihood of success or irreparable harm may justify an injunction, though a petitioner's showing on the other factors may be lacking.

4

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc*., 69 F. App'x 550, 554 (3d Cir.

2003).  Plaintiffs meet this standard.

### A.   PLAINTIFFS ARE LIKELY TO SUCCEED (Boockvar, Intervenors, Metro Counties, Centre/Northampton)

For the first factor, "the plaintiff need only prove a *prima facie* case, not a

certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276

F.3d 160, 173 (3d Cir. 2001).  The Third Circuit has held that "a sufficient degree of

success for a strong showing exists if there is a 'reasonable chance, or probability, of

winning.'" *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir. 2015) (*quoting*

*Singer*, 650 F.3d 223). Plaintiffs have made that showing.

### 1.   Defendants Violated the Equal Protection Clause to Favor Biden Over Trump

The Trump Campaign has alleged a straightforward scheme under *Marks v.*

*Stinson*, 19 F.3d 873 (3d Cir. 1994), *on remand*, 1994 U.S. Dist. LEXIS 5273 (E.D.

Pa. April 26, 1994), for denial of equal protection because Defendants have acted

with the intent to favor Biden over Trump in violation of Pennsylvania law to count

defective mail ballots which they knew would overwhelming favor Biden.  This ends

the issues, Defendants' voluminous briefing aside.

Put simply, contrary to the DNC, the *Anderson-Burdick* doctrine does not

apply because the Trump Campaign is not complaining about burden,[6] but about fundamental unfairness in Defendants violating Pennsylvania law to favor Biden. The Motion does not concern just disparate burdens on voting; it concerns Defendants ignoring Pennsylvania law to count defective votes to deliberately favor one candidate over the other. No one has a right to have a mail ballot to be counted which does not comport with Pennsylvania's strict signature, dating, and other requirements. *See* 25 P.S. §§ 3146.8; 3150.16.[7] To the contrary, this would deny equal protection to the voters in Republican counties where the law was followed and defective votes excluded, like those of the individual Plaintiffs. First Amended Compl. (ECF 125), ¶¶15 and 16.

Contrary to the Metro Counties, their argument fails for the same reasons as the other Defendants – the Motion asserts a deliberate scheme to violate Pennsylvania law to favor one candidate over the other under *Marks v. Stinson*. Here, the Motion asserts the Defendants did not scrutinize mail ballots for defects

---

[6] *See Wilmoth v. Sec'y of N.J.*, 731 Fed.Appx. 97, 102 (3d Cir. 2018) (*Anderson-Burdick* balancing test "requires a weighing of several factors, including: (1) the "character and magnitude of the alleged constitutional injury"; (2) "the precise interests put forward by the State as justifications for the burden imposed by its rule"; and (3) "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* (*quoting Anderson*, 460 U.S. at 789). If, after reviewing these factors, the Court determines that the challenged regulation imposes "severe restrictions" on the plaintiff's constitutional rights, then the law may be upheld only if it is "narrowly drawn to advance a state interest of compelling importance." *Id.* (*quoting Burdick*, 504 U.S. at 434). Here, the Trump Campaign is attempting to enforce the law regarding the validity requirements for mail ballots, not challenge it.

[7] Generally, defective ballots will mean those that were counted in violation of these provisions.

because they knew they would overwhelming favor Biden based on voter registration and campaign strategy.

Contrary to DNC's argument, Plaintiffs' Equal Protection Clause claim is "premised" *not* only "on a challenge to Defendants' use of unlawful election procedures" (ECF 195, at 13), but also on the Clause's "concern[] with votes being weighed differently." *Bognet*, 2020 WL 6686120, at *9-14.  Defendants' use of notice and cure violated the Clause because it was deliberately implemented in counties where Defendants knew mail ballots would favor Biden/Democrats, whereas Republican controlled counties followed the law and did not allow a cure. Of course, "without differential treatment of votes or voters, there isn't any equal-protection injury for the Court to balance." *Donald J. Trump for President*, 2020 U.S. Dist. LEXIS 188390, at *147.  Conversely, unequal treatment equals violation of the Equal Protection Clause; it is *not*, contrary to Boockvar's argument, simply a matter of "differences in each county boards' process of notifying voters of deficient ballots" (ECF 193, at 27).  Rather, the "differential treatment" means an improper scheme excluding illegal votes under *Marks v. Stinson*, which encompasses both ballots which were illegally permitted to be "cured" and defective ballots which were improperly accepted.

2.    **Defendants Violated The Due Process Clause To Favor Biden over Trump In A System Which Was So Porous So As to Violate Due Process on Its Face**

7

*First*, on November 17, 2020, the Pennsylvania Supreme Court ruled that parties and candidates have no right to meaningfully observe the canvassing of mail ballots. *In re Canvassing Observation*, No. 30 EAP 2020 (Pa. Nov. 17, 2020). This decision arrived on the heels of *In re November 3, 2020 Gen. Election*, 2020 Pa. LEXIS 5560 (Pa. Oct. 23, 2020), which *sua sponte* declared that the provision of the Pennsylvania election code providing for challenging mail ballots by observers on Election Day, 25 P.S. §3146.8(f), was invalid. As a result of these last-minute decisions on the eve of the Presidential election, Pennsylvania no longer allows meaningful observation or challenges to mail ballots that do not comply with Pennsylvania law, *see* 25 P.S. §§ 3146.8, 3150.16, before they are mixed with other ballots and opened – *i.e*., ballots in secrecy envelopes are separated from the outside envelope, mixed, opened, and counted without any observation or challenge.**8**

In and of itself, Pennsylvania's system – as dictated by its Supreme Court – is so porous and lacking in checks and balances that it constitutes a *prima facie* case that the "election process itself reaches the point of patent and fundamental unfairness" in violation of the Due Process clause. *Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978). *See Reynolds v. Sims*, 377 U.S. 533 (1964); *Marks v. Stinson*, 19 F.3d 873 (3d Cir. 1994). These eve-of-election changes to Pennsylvania law

---

**8** Plaintiff is investigating Delco's assertion that the Motion contains a factual inaccuracy concerning commingled ballots, which, at best, is minor, and does not implicate the relief sought.

governing a presidential election are also improper under *Bush v. Gore,* 531 U.S. 98, 104 (2000) (*per curiam*). If such votes are to be counted, at a minimum, the burden of proof shifts to Defendants to prove the mail ballots are valid. *See, e.g.*, *Warf v. Bd. of Elections*, 619 F.3d 553, 561-62 (6th Cir. 2010) ("once the contestant has made a showing of irregularity,  … contestee must then come forward with evidence of substantial compliance with balloting procedures"); *Wilkes-Barre Election Appeals*, 1967 Pa. Dist. & Cnty. Dec. LEXIS 9, *16 (Pa.Com.Pl. Luz. Cnty. Dec. 27, 1967) (where "challenger has presented a *prima facie* case to substantiate his challenge [to absentee ballot,] … the burden of proof shifted to the voter to establish her position.").

**Second**, the Trump Campaign, as in *Marks v. Stinson*, has been denied due process because Defendants engaged in a scheme to count defective ballots without proper review because they knew such ballots would favor Biden over Trump. Indeed, this is the reason Defendants refused to provide meaningful observation during the mail ballot canvass – to conceal their scheme and allow the ballots to go through unimpeded.

Contrary to the DNC, the Trump Campaign asserts valid Due Process claims. In fact, the DNC ignores the recent Pennsylvania Supreme Court decisions which render the Pennsylvania mail voting scheme unconstitutional as a matter of law because it contains no safeguards to prevent the opening, mixing, and counting of

mail ballots before it can be determined whether they are defective. Here, Defendants schemed together to favor Biden in a system which provided no safeguards to deter such conduct. Both the absence of safeguards as well as Defendants' intentional decision not to scrutinize defective ballots during canvassing violated Due Process.[9]

Contrary to the Metro Counties, the "presumption of regularity" does not apply once a *prima facie* case is asserted.[10] Here, there is clearly a *prima facie* case that the Pennsylvania mail ballot scheme as interpreted by its Supreme Court does not satisfy due process – no inspection, no right to object. It is hard to image a system with less safeguards. The Motion cites both federal and Pennsylvania

---

[9] It is well-established that, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). This due process requirement is especially important when dealing with such a fundamental issue in a democracy as illegal votes in a Presidential election. This election requires that this Court provide sufficient due process protection and consideration instead of simply accepting, without more, that the issues raised by Plaintiffs are constitutionally harmless. Allowing mail ballots to be mixed, opened, and counted without any right of meaningful observation or objection violates fundamental due process. *See Griffin,* 570 F.2d at 1078 ("due process is implicated where the entire election process - including as part thereof the state's administrative and judicial corrective process - fails on its face to afford fundamental fairness.").

[10] "[E]very case applying the 'presumption of regularity' has in common: actions taken or documents produced within a process that is generally reliable because it is, for example, transparent, accessible, and often familiar." *Latif v. Obama*, 677 F.3d 1175, 1207 (D.C. Cir. 2012) (Tatel, J., dissenting). With such safeguards, "courts have no reason to question the output of such processes in any given case absent specific evidence of error." This, however, is ***not*** such a case due to (1) the absence of safeguards; and (2) Defendants' intentional decision not to scrutinize defective ballots during canvassing.

caselaw supporting its burden shifting argument.

***Third***, while it is true that the Amended Complaint did not expressly include a due process count, Plaintiffs are not required to set forth claims in separate headings corresponding to the legal theories. *See Amesbury v. CSA, Ltd.*, 2014 U.S. Dist. LEXIS 8606, \*7, 11 (M.D.Pa. Jan. 23, 2014) (plaintiff adequately pled a claim under Rule 8 even though complaint did not set forth claim in a separate count) (*citing Gallick v. United States*, 542, F.Supp. 188, 189-90 (M.D. Pa. 1982) (plaintiff alleged claims even though he did not "clearly delineate[] his claims as such" because Rule 8 only required him to set forth a "short and plain statement" of his claim and "all pleadings are to be so construed as to do substantial justice.") (*citing* Fed.R.Civ.P. 8(a)(2)&8(f)). *See also Eaton v. Figaski*, 2019 U.S. Dist. LEXIS 41297, \*15 (W.D. Pa. March 14, 2019) ("While there are a multitude of general averments throughout the complaint about the individual Defendants acting in concert, [plaintiff] does not have a separate count labeled conspiracy, nor is she required to."); *Duff Supply Co. v. Crum & Forster Ins. Co.*, 1997 U.S. Dist. LEXIS 6383 (E.D. Pa. May 8, 1997) expressly rejected the argument that an underlying complaint must have "headings" with the legal theories:

> Defendants further appear to argue that if there is no mention of a claim in the "heading" of any count in the complaint, then no covered claim is asserted, even if covered claims are asserted in other parts of the complaint and incorporated by reference in the counts. Defendants' position is not supported by the law. To begin, Federal Rule of Civil Procedure 8(a)(2) merely requires a "short and plain statement of the

claim showing that the pleader is entitled to relief." Fed.R.Civ.P.
8(a)(2). ***This Rule does not require that the pleader specifically
identify each claim by placing it the heading of a count*** …. [A] district
court is asked to review all factual allegations in a complaint to
determine whether any of the allegations support a claim. Based on
these principles of pleading, ***defendants cannot seriously assert that a
pleader must identify the precise legal theories upon which he
proceeds in the "headings" of counts.*** If defendants' position was the
standard upon which insurers incur a duty to defend, then the unartful
pleader would be the darling of the insurance industry.

*Id.* at *23-24.

***In sum***, as *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 124-25

(3d Cir. 1998) held:

Just as a pleading must be construed to do substantial justice, ***a plaintiff
generally need not explicitly allege the existence of every element in
a cause of action if fair notice of the transaction is given and the
complaint sets forth the material points necessary to sustain recovery***.
This is especially so if the material deficiencies in the complaint stem
from nothing more than inartful pleading—the precise sort of pleading
as a highly developed form of art that the federal rules sought to
abandon. Simply put, the complaint will withstand a Fed.R.Civ.P.
12(b)(6) attack if the material facts as alleged, in addition to inference
drawn from those allegations, provide a basis for recovery.

Thus, based on the face of the Amended Complaint, as well as the Motion, the Trump

Campaign states due process claims.

### 3.    Defendants Violated the Electors Clause

Plaintiffs believe *Bognet v. Secretary of the Commonwealth of Penn*., --- F.3d

---, 2020 WL 6686120 (3d Cir. Nov. 13, 2020), was wrongly decided and maintain

their Electors Clause claim to preserve it for appellate review.

### 4. Defendants' Miscellaneous Arguments Have No Merit

### a. Plaintiffs Have Standing (Boockvar, Metro Counties, Centre/DNC)

As explained to the Court at the November 17, 2020 hearing, the Trump Campaign plainly has standing under *Marks v. Stinson*.

**First,** contrary to Boockvar, *Bognet* is inapposite because it was decided before the election when harm had not crystalized, and it did not concern intentional misconduct by state officials to favor one candidate – Biden – over another – Trump. The issue is not counting more votes, but counting defective votes, as occurred in *Marks v. Stinson*. Here, the Trump Campaign alleges that Defendants prevented meaningful observation in order to process tens of thousands of defective mail ballots which they knew would favor Biden to turn the election.

**Second**, as a political committee for a federal candidate, the Trump Campaign has Article III standing to bring this action. The arguments by Bookvar, Metro Counties, and DNC to the contrary lack merit.[11]  *See, e.g.*, *Orloski v. Davis*, 564 F.

---

[11] For example, the Metro Counties argue that the "Trump Campaign does not (and could) not have Article III standing" because it "represents only Donald J. Trump and his electoral and political goals" – not the interests of the voters. Metro Counties Response (ECF 193), at 13 (*citing Donald J. Trump for President, Inc. v. Cegavske*, 2020 U.S. Dist. LEXIS 172052 (D.Nev. Sept. 18, 2020). In *Cegavske*, the campaign plaintiffs argued they had "both direct and associational standing to challenge 'competitive harms' to their electoral candidates." *Id*. at *18. The Court acknowledged that "[c]ompetitive standing can exist when a state action will lead to the potential loss of an election." *Id*. (*citing Drake v. Obama*, 664 F..3d 774, 783 ( Cir. 2011) (*quoting Owen v. Mulligan*, 640 F.2d 1130, 1132-33 (9th Cir. 1981)). However, the Court stated that plaintiffs failed to show competitive standing because their candidates "face[d] no harms that are unique from their electoral opponents." *Id*. at *18-19. In contrast, the Trump Campaign asserts that Defendants'

Supp. 526, 530-31 (M.D. Pa. 1983) ("Democratic State Committee ha[s] standing to raise [constitutional] claim").  *See also Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587-588 (5th Cir. 2006) ("[A]fter the primary election, a candidate steps into the shoes of his party, and their interests are identical."); *In re General Election-1985*, 531 A.2d 836, 838 (Pa. Commw. Ct. 1987) (candidate for office in the election at issue suffers a direct and substantial harm sufficient for standing to contest the manner in which an election will be conducted).

**Third**, as in *Marks v. Stinson*, the Trump Campaign has "competitive standing" based upon disparate state action leading to the "potential loss of an election." *Drake v. Obama*, 664 F.3d 774, 783 (9th Cir. 2011) ("the 'potential loss of an election' was an injury-in-fact sufficient to give a local candidate and Republican party officials standing.").  "[O]verwhelming precedent" holds "that a candidate and his or her party can show an injury-in-fact if the defendant's actions harm the candidate's chances of winning." *Nelson v. Warner*, 2020 WL 4582414, *4 (S.D.W. Va. Aug. 10, 2020).[12]

---

conduct was designed to favor Biden because they knew counting defective mail ballots would favor him.  Cegavske thus does not stand for the proposition that a political campaign has no standing to challenge competitive harms to their candidates – clearly, they do. *See Orloski*, 564 F.Supp. at 530-31; *Benkiser*, 459, F.3d at 587-88; *In re General Election 1985*, 531 A.2d at 838..

[12] *See also Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 907 (8th Cir. 2020); *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 538 (6th Cir. 2014); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587-88 (5th Cir. 2006); *Fulani v. Hogsett*, 917 F.2d 1028, 1030 (7th Cir. 1990); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994).

### b.   This Court Does Not Lack Jurisdiction Under *Rooker-Feldman* (Boockvar)

Contrary to Secretary Boockvar's contention (ECF 190 at 7-11), this Court does not lack jurisdiction under the *Rooker-Feldman* doctrine.

**First**, *Rooker-Feldman* is not implicated because Plaintiffs do not seek to appeal any final judgment by any Pennsylvania court—instead, they assert that their federal Constitutional rights have been violated, including under the Equal Protection Clause. *ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 210 (3d Cir. 2004) ("For the *Rooker-Feldman* bar to apply, a case must be the functional equivalent of an appeal from a state court judgment, which it is deemed to be in two instances: (1) when the claim was actually litigated before the state court; or (2) when the claim is inextricably intertwined with the state adjudication.").[13] *Rooker-Feldman* does not apply because a finding that Defendants violated Plaintiffs' constitutional rights would not require a finding that the state court erred in its ruling.  *Marran v. Marran*, 376 F.3d 143, 154 (3d Cir. 2004).

**Second**, *Rooker Feldman* does not apply because Plaintiffs' federal claims in this case are not identical to the state-court claims. *ITT*, 366 F.3d at 211 n.8 ("It is well-established that unless the federal claims are identical to the state court claims,

---

[13] *See also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (holding *Rooker-Feldman* only applies were "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review of that judgment.").

determining whether the claims have been actually litigated is more difficult than determining whether the claims are inextricably intertwined with the state judgment."). The cases from the Philadelphia and Bucks County Courts of Common Pleas concerned a limited number of votes, and do not encompass the breadth of Defendants' violations of Plaintiff's constitutional rights as set forth in this case.

*Third*, when the Bucks and Philadelphia County Courts issued their rulings, the Pennsylvania Supreme Court had yet to rule that Plaintiffs had no right to meaningfully observe the tabulation of votes. The Court's subsequent ruling (on November 17) impacts Plaintiffs' constitutional claims, for if the Court is correct that Pennsylvania law does not allow meaningful observation of the canvassing of mail ballots and the opportunity to object before they are opened and the ballots mixed together, it is so porous that it violates basic due process regarding free and fair elections.[14] It is well settled that the "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). This implicated due process. *See Marks v. Stinson*, 19 F.3d at 888 ("[R]ejection of a ballot where the voter has been effectively deprived of the ability to cast a legal vote implicates federal due process concerns.").

---

[14] *See Marks v. Stinson*, 19 F.3d at 887 (due process violation from "massive absentee ballot fraud, deception, intimidation, harassment and forgery, [and] many of the absentee votes were tainted"); *Griffin v. Burns*, 570 F.2d 1065, 1074-79 (1st Cir. 1978) (due process violation in refusal to count absentee and shut-in ballots state officials had offered to voters).

16

*Fourth*, there is a case presently before the Supreme Court (*In re 2,349 Ballots in the 2020 General Election of Nicola Ziccarelli*, No. 1162 C.D. 2020 (Pa. Commw. Ct. Nov. 19, 2020)) involving whether the county boards of election were within their power to disregard the Pennsylvania General Assembly and Supreme Court in counting ballots which should have been disqualified, which impacts the present case. Since there is no final decision in that case as of yet, the *Rooker-Feldman* doctrine has no application in this case.

### c. Plaintiffs' Claims Are Not Barred By Laches (Intervenors)

Contrary to Intervenors' contention, laches does not bar Plaintiffs' claims.

*First*, Plaintiffs did not inexcusably delay bringing their complaint; instead, they brought their claims as soon as was practicable. *See Churma v. U.S. Steel Corp.*, 514 F.2d 589, 593 (3d Cir. 1975) ("Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief.") (*quoting Gardner v. Panama R. Co.*, 342 U.S. 29, 30 (1951)). Plaintiffs did not know Defendants would violate the law until canvassing began and watchers were illegally excluded and ballots illegally counted. Plaintiffs brought their claims as soon as it was practicable to do so by filing their complaint less than a week after Election Day, when their injury actually occurred.

*Second,* Plaintiffs' equal-protection injury did not arise until votes were

17

unequally *counted.* Metro Counties took different positions on curing before election day, the Secretary did not instruct counties to allow curing until the night before election day, and counties only decided (in grossly unequal fashion) which votes to count and which to discard *after* election day. Those decisions are what trigger the equal protection violations alleged here. Therefore, the doctrine of laches does not apply.

**Third**, Intervenors' argument that "[t]he Trump Campaign should always have known in what numbers and under what conditions their representatives would be allowed to observe the pre-canvass and canvass of mail ballots" has no basis in fact. Defendants' denial of the Trump Campaign's right to meaningfully observe the canvassing of mail ballots did not manifest until Election Day, at which time the Trump Campaign's Equal Protection rights were violated. Such claims are regularly litigated after the election. *See, e.g., League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 466 (6th Cir. 2008) ("[T]he use of standardless manual recounts violates the Equal Protection Clause.").

**Fourth**, assuming *arguendo* that the Trump Campaign delayed by filing post-election, the delay has not prejudiced Defendants. *See, e.g., United States v. L.D.T. Corp.*, 302 F. Supp. 990, 991 (E.D. Pa. 1969) (rejecting laches where defendant showed no prejudice from the delay other than the "mere lapse of time").

**Fifth**, the Trump Campaign has not waived the opportunity to oppose

18

dismissal of their Equal Protection and Elections and Electors Clause claims. Contrary to Intervenors, (1) Plaintiffs' Amended Complaint mooted Defendants' motions to dismiss as the Court ruled at oral argument on November 17, 2020; (2) the Court permitted Plaintiffs to file an opposition brief to all Defendants' motions to dismiss, at which time Plaintiffs responded to the laches argument; and (3) Plaintiffs substantively opposed Defendants' motion to dismiss at the hearing before the Court this week. *See Ryder v. Bartholomew*, 2014 U.S. Dist. LEXIS 71839, *4 (M.D. Pa. May 27, 2014) (third amended complaint mooted pending motion to dismiss).

*Finally*, putting aside the Trump Campaign could not know what would occur until the election results were reported, the Pennsylvania Supreme Court only ruled against meaningful observers on November 17 – after the election – and against objecting to mail ballots during canvassing on October 27, just days before the election. It is entirely speculative that this Court would have entered an injunction between October 28 and November 3, making laches inapplicable.

### d.   Plaintiffs' Remedies Are Not Unavailable (Intervenors)

*First*, *Marks v. Stinson* specifically allows excluding illegal votes. The district court in that case found "massive absentee voter fraud, deception, intimidation, harassment and forgery, and that many of the absentee votes were tainted…." *Marks v. Stinson*, 19 F.3d at 887. The district court held that "[i]n light of the massive

19

scheme of Candidate Stinson and the Stinson Campaign, and in light of the failure of the Board to fairly conduct its duties, it would be grossly inequitable to allow Stinson to remain in office…." *Id*. at 878.  The Third Circuit Court affirmed the district court's de-certification of Stinson as the winner of the state senate election, based on the exclusion of illegally cast ballots:

> The district court did conclude, with ample record support, that the wrongdoing [by the Stinson campaign] was substantial, that it could have affected the outcome of the election, and that it rendered the certified vote count an unreliable indicator of the will of the electorate. Having so concluded for the purposes of the preliminary injunction motion, we cannot say that the district court abused its discretion in restraining Stinson from exercising the powers of the office pendent lite.
>
> The integrity of the election process lies at the heart of any republic. The people, the ultimate source of governmental power, delegate to their elected representatives the authority to take measures which affect their welfare in a multitude of important ways. When a representative exercises that authority under circumstances where the electors have no assurance that he or she was the choice of the plurality of the electors, the legitimacy of the governmental actions taken is suspect. ***Accordingly, where there is substantial wrongdoing in an election, the effects of which are not capable of quantification but which render the apparent result an unreliable indicium of the will of the electorate, courts have frequently declined to allow the apparent winner to exercise the delegated power.*** *See, e.g., Bell v. Southwell*, 376 F.2d 659 (5ᵗʰ Cir. 1967).

*Id*. at 886-87.[15]

---

[15] The individual Plaintiffs are entitled to relief under this theory. *See Golden v. Gov't of the V.I.*, 2005 U.S. Dist. LEXIS 45967, *8-9 (D.V.I. March 1, 2005) ("If a candidate were to be sworn in as an elected representative who received fewer votes than another candidate, then each of the votes cast for the other candidate would be ignored," which "would violate the constitutionally

***Second***, contrary to Intervenors, cases are legion that courts may enjoin certification of elections, or decertify elections, as occurred in *Marks v. Stinson*. The Motion easily satisfies the standards of these cases by asserting an intentional scheme to favor one candidate over another. As Plaintiffs stated in their principal brief, numerous cases sustain decertification as a remedy "where broad-gauged unfairness permeates an election."[16] Intervenors' opposition brief fails to address this argument or the cased cited by Plaintiffs in support. Intervenors' argument that Plaintiffs have no remedies available to them in this case fails.

***Third,*** contrary to Boockvar and other Defendants, the Trump Campaign was not required to exhaust state court remedies before bringing federal Civil Rights and Constitutional claims, as *Marks v. Stinson* held. Nor does the Trump Campaign seek to disenfranchise anyone. If one votes by mail, one must do so legally, as *Marks v. Stinson* held. A person whose mail vote is not counted because the ballot is incorrectly completed is no different than an in-person voter who is excluded from

---

protected right to vote of those voters who had voted for the candidate who received the most votes, but was not seated.") (*citing Marks v. Stinson*, 19 F.3d at 887).

[16] *See, e.g., Marks v. Stinson*, 19 F.3d at 887 (upholding order invalidating election tainted by "massive absentee ballot fraud, deception, intimidation, harassment and forgery"); *Krieger v. Peoria, City of*, 2014 U.S. Dist. LEXIS 117235, at *15-16 (D. Ariz. Aug. 22, 2014) (enjoining defendants' vote count and ordering new election"); *Bolden v. Potter*, 452 So.2d 564, 567 (Fla. 1984) (invalidating election where the "fraud … was not inconsequential. It was blatant and corrupt and it permeated a substantial part of the absentee-election process."). *See also Griffin*, 570 F.2d at 1077 ("There is precedent for federal relief where broad-gauged unfairness permeates an election….").

voting for arriving at the polls at 8:01 pm.

> ### e. The Eleventh Amendment (Sovereign Immunity) Does Not Bar the Claims (Metro Counties, DNC)

Contrary to arguments by DNC and the Metro Counties, the Eleventh Amendment (sovereign immunity) does not bar Plaintiffs' claims.

*First*, the Eleventh Amendment "does not apply to Plaintiffs' federal-constitutional claims [in this case] under the *Ex Parte Young* doctrine." *Donald J. Trump for President*, 2020 U.S. Dist. LEXIS 188390, *225-26 (*quoting Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 627 (E.D. Pa. 2018) ("Here, the doctrine of *Ex parte Young* applies to Plaintiffs' constitutional claims for prospective injunctive and declaratory relief, and therefore the First and Fourteenth Amendment claims are not barred by the Eleventh Amendment.…") (*citing Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). All of Plaintiffs' claims in this case are based on the federal Constitution; therefore, they are not barred by the Eleventh Amendment. *Id.*

*Second*, "an officer of the Pennsylvania Department of State … may be sued in his individual and official capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law," which claims are not barred by the Eleventh Amendment. *Donald J. Trump*, 2020 U.S. Dist. LEXIS 188390, at *225-26 (*quoting Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 627 (E.D. Pa. 2018) (internal quotation marks omitted). Plaintiffs' seek prospective and injunctive relief; therefore, the Eleventh Amendment does not bar

claims against Boockvar.

*Third*, "Eleventh Amendment does not extend its immunity to units of local government," such as "cities and counties." *Bd. of Trustees v. Garrett*, 531 U.S. 356, 368-69 (2001) (citations omitted). The County Election Boards are local governmental units, which are not entitled to sovereign immunity under the Eleventh Amendment. *Id. See also PG Publ. Co. v. Aichele*, 902 F.Supp.2d 724, 746 (W.D. Pa. 2012) (holding Allegheny County was not entitled to Eleventh Amendment immunity) (*citing Garrett*, 531 U.S. at 369).[17]

*Finally*, contrary to the DNC, the Eleventh Amendment does not prevent the Court from prohibiting certification of Biden and ordering certification of Trump, if the case is proven, no different than *Marks v. Stinson*, where the Third Circuit upheld removing Stinson and installing Marks into state office under the federal Civil Rights Act and Constitution. Here, there is an even stronger federal nexus, given a presidential election.  If *Marks v. Stinson* could enjoin Philadelphia County for certifying Stinson and compel the certification of Marks, this Court may do the same for the Trump Campaign.

---

[17] The lone Pennsylvania sovereign immunity case cited by the Metro Counties, *Trinsey v. Motgomery Cnty. Bd. of Elections*, 1988 U.S. Dist. LEXIS 8704 (E.D.Pa. Aug. 4, 1988), is unavailing. The *Trinsey* plaintiff did not respond to the defendant county board of elections motion for summary judgment on the basis of Eleventh Amendment immunity. *Id.* at *1. Here, the Trump Campaign has set forth controlling caselaw that the Eleventh Amendment. *Trinsey* does not cite any controlling case supporting the proposition that county boards of elections are entitled to sovereign immunity. Subsequent case law makes clear that county elections boards are not arms of the state for sovereign immunity purposes. *Aichele*, 902 F.Supp.2d 724, 746.

**B.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT INJUNCTIVE RELIEF (Boockvar, Intervenors, Metro Counties, DNC)**

It is beyond dispute that a candidate who has won the legal votes, but is not certified as the winner, suffers irreparable harm.  And the voters who supported such candidate suffer the same harm or their vote has no meaning.

*First*, contrary to Boockvar, the Trump Campaign suffered irreparable harm because Defendants engaged in a scheme to defeat Trump by allowing defective mail votes to be counted for Biden.  Moreover, the Motion is not limited to "cured" ballots, but extends to 1.5 million mail ballots which overwhelmingly favor Biden, of which many were defective, but which were counted by Defendants without any observation or right to challenge, in violation of Equal Protection and Due Process.

*Second*, no Defendant acknowledged, let alone addressed, that in the election context, "[a]n inaccurate vote tally is a concrete and particularized injury to candidates … [and] '[t]he counting of votes that are of questionable legality … threaten[s] irreparable harm.'" *Carson v. Simon*, 978 F.3d 1051, *20 (8th Cir. 2020) (*quoting Bush v. Gore,* 531 U.S. at 1046 (granting stay) (Scalia, J., concurring)).

*Third,* the harm to the Trump Campaign arises squarely from the cure disparity and the Metro Counties' insistence upon counting illegal ballots disparately favored Democratic-leaning counties over Republican-leaning counties, causing harm to the Trump Campaign by depriving the President of lawful votes and

awarding his opponent with unlawful votes. *Carson,* 978 F.3d 1051 (reversing denial of preliminary injunction where "plan to count mail-in ballots received after the deadline established by the Minnesota Legislature will inflict irreparable harm").

**Fourth**, contrary to Boockvar, the Trump Campaign suffered irreparable harm because Defendants engaged in a scheme to defeat Trump by allowing defective mail votes to be counted for Biden. Moreover, the Motion is not limited to "cured" ballots, but extends to the 1.5 million mail ballots which overwhelmingly favor Biden, of which many were defective, but which were counted by Defendants without any observation or right to challenge, in violation of Equal Protection and Due Process. Boockvar's reliance upon *Bognet,* which held that voters suffered no harm under the Equal Protection Clause from having votes in other counties counted, is misplaced. The Trump Campaign suffered harm from the dilution of votes in violation of due process through an intentional scheme to count defective ballots. *See Reynolds,* 377 U.S. at 555 ("the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote."); *Marks v. Stinson,* 19 F.3d at 888 (voter "effectively deprived of the ability to cast a legal vote implicates federal due process concerns.").

**Fifth**, to the extent that the Motion does not set forth the exact number of defective votes, this is because Defendants denied meaningful inspection. If expedited discovery of the mail ballots is granted, the Trump Campaign will inspect

them and quantify the number through expert analysis as approved by *Marks v. Stinson*.

**Sixth**, contrary to the DNC, the existence of possible state law remedies does not undermine the Trump Campaign's irreparable harm, and this Court has "the virtually unflagging obligation" to exercise the jurisdiction given it. *Terra Nova Ins. Co. v. 900 Bar, Inc*., 887 F.2d 1213, 1222 (3d Cir. 1989). Under *Bush v. Gore*, 531 U.S. 98, as discussed in a concurring opinion citing Supreme Court precedent, this Court may independently interpret Pennsylvania law in cases concerning Presidential elections. DNC's claims of suffering harm from the injunction turns the world on its head with the perspective that not being able to benefit for an "inaccurate vote count tally" made in violation of Pennsylvania law, is a cognizable harm.

**Finally**, even if Defendants certify, this Court has the power under *Marks v. Stinson* and many other cases to order decertification of the losing candidate and certification of the winning candidate prior to the December 8 safe-harbor under Article III of the Constitution and 3 U.S.C. §5 governing controversies in appointing of electors. Further, regardless of what Defendants do, if this Court orders that Trump be certified, Pennsylvania's legislature can exercise their Article III authority to appoint electors up until December 8 in accord with the Court's findings and *Bush v. Gore*. This case is not moot past November 22.

### C.   THE BALANCE OF HARMS FAVORS PLAINTIFFS (Boockvar, Intervenors, Metro Counties, DNC)

As explained herein, the balance of harm plainly favors the Trump Campaign, which will suffer irreparable injury if the certification favors Biden and events reveal Trump won the election.  Contrary to Intervenors, this case has nothing to do with their race.  It is unfortunate that their counsel would attempt to interject this into the lawsuit, particularly given Trump received many votes from persons of color in Pennsylvania and throughout the nation; indeed, two Latino Congressional candidates defeated Democratic incumbents in heavily Latino districts in Miami in which Trump prevailed.  This case concerns whether defective votes should be counted.  There is no mulligan for voters who do not follow the law's requirements for mail voting, as strictly interpreted by Pennsylvania's courts for decades.

### D.     THE PUBLIC INTEREST IS FURTHERED BY ENTRY OF INJUNCTIVE RELIEF (Boockvar, Intervenors, Metro Counties, DNC)

There can be no greater public interest than upholding and enforcing the election laws the Constitution gives state legislatures the exclusive power to determine.  "When the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental." *Bush v. Gore*, 531 U.S. at 104 (*per curiam*). Pennsylvania law makes clear that election officials must count every lawful ballot, while ensuring that every unlawful ballot is cast aside – "the clearly expressed intent of the legislature must prevail." *Bush v. Gore*, 531 U.S. at 120 (Rehnquist, C.J., concurring).

27

Were this Court not to enjoin certification of the Pennsylvania election results, it would undermine the integrity of the system of filtering lawful from unlawful ballots. The U.S. Supreme Court made clear that "all qualified voters have a constitutionally protected right to vote, … and to have their votes counted". *Reynolds*, 377 U.S. at 554. Contrary to Defendants, the public interest is not served by avoiding judicial scrutiny of the voting process, having an unfair election and counting votes cast outside the prescriptions of Pennsylvania law.

## III. CONCLUSION

Extensive evidence exists that Defendants mis-administered the 2020 General Election in such a disastrous manner that they violated the Equal Protection Clause and structural guarantees of our Constitution. Defendants did so to favor Biden over Trump. Defendants seemingly went out of their way to avoid complying with the Pennsylvania legislature's election code. And Defendants blocked Plaintiffs' attempts to meaningfully observe and document their actions at almost every turn. This maladministration reached the point of patent and fundamental unfairness and evidences an intentional attempt by Defendants to jeopardize both the ability of Pennsylvanians to select their leaders and the constitutional rights of Plaintiffs. If this Court does not act to restrain Defendants from certifying the results of this mal-administered election, Plaintiffs will be without a way to remedy the severe, innumerable constitutional violations.

Respectfully submitted:

Dated: November 21, 2020

*/s/ Rudolph William Giuliani*
Rudolph William Giuliani
NY Supreme Court ID No. 1080498

*/s/Marc A. Scaringi*
Marc A. Scaringi
marc@scaringilaw.com
PA Supreme Court ID No. 88346
Brian C. Caffrey
brian@scaringilaw.com
PA Supreme Court ID No. 42667
Scaringi Law
2000 Linglestown Road, Suite 106
Harrisburg, PA 17110
717-657-7770 (o)/ 717-657-7797 (f)

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that this 21st day of November, 2020, I filed a copy of

the foregoing

**PLAINTIFFS' OMNIBUS REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF RENEWED MOTION
FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

which will serve all parties registered to receive same.

*/s/Marc A. Scaringi*
Marc A. Scaringi
marc@scaringilaw.com
PA Supreme Court ID No. 88346
Brian C. Caffrey
brian@scaringilaw.com
PA Supreme Court ID No. 42667
Scaringi Law
2000 Linglestown Road, Suite 106
Harrisburg, PA 17110
717-657-7770 (o)/ 717-657-7797 (f)

*Counsel for Plaintiffs*