IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., et al., | : : : | CASE NO. 4:20-CV-02078-MWB |
| Plaintiffs, | : : | The Hon. Matthew W. Brann |
| v. | : | |
| KATHY BOOCKVAR, et al., | : : | |
| Defendants. | : | |

## MOTION TO INTERVENE PURSUANT TO RULE 24(a) OF THE FED. RULES OF CIVIL PROCEDURE

AND NOW come Intervenors Mike Kelly, Kathy Barnette, Sean Parnell, Luke Negron, David Torres, Clay Breece, Dasha Pruett, Daryl Metcalfe, Cris Dush, Thomas Sankey, Kathy Rapp, Robert Kaufman, Stephanie Borowicz and PA Voters Alliances, by and through their attorneys Thomas W. King, III, and Thomas E. Breth, through Dillon McCandless King Coulter & Graham, LLP, and allege the following:

1. Intervenors are residents in various counties throughout the Commonwealth of Pennsylvania (including within the counties identified by the Boards of Elections in this suit) and all Intervenors voted in their respective counties of residence in the 2020 General Election.

2. PA Voters Alliance is a Pennsylvania unincorporated association whose members include some of the Intervenors. The PA Voter Alliance is an association with members who seek to ensure, as part of the Association's objectives, public confidence in the integrity of Pennsylvania's elections, in election results and election systems, processes, procedures and enforcement and that the public officials act in accordance with the law in exercising their obligations to the people of the Commonwealth of Pennsylvania. PA Voters Alliance asserts the rights of its members as electors within the Commonwealth of Pennsylvania.

3. Intervenors assert that Defendants' conduct violated Intervenors' First Amendment rights by illegally discriminating against the Republican Presidential Candidate, Donald Trump, and favoring the Democrat Presidential Candidate, Joe Biden.

4. Intervenors further assert that Defendants' conduct violated Intervenors' Equal Protection rights by illegally discriminating against Republican Presidential Candidate, Donald Trump, and in favor of Democrat Presidential Candidate, Joe Biden, with no rational reason or purpose.

5. Intervenors further assert that Defendants' conduct violated Intervenors' substantive due process rights to a fair and free election.

6. Intervenors further assert that they can establish a likelihood of success on the merit of their claims based upon the evidence and expert testimony that they would present, if permitted, to intervene.

7. The Supreme Court of Pennsylvania noted that the Elections Code does not provide election officials with procedures for contacting electors and allowing electors to cure defects in mail-in and absentee ballots:

> "As noted herein, although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the "notice and opportunity to cure" procedure sought by Petitioner. To the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements, we agree that the decision to provide a "notice and opportunity to cure" procedure to alleviate that risk is one best suited for the Legislature." *Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644, at *20 (Pa. Sept. 17, 2020); *see also In re: November 3, 2020 General Election*, 2020 WL 6252803, at *7 (Pa. Oct. 23, 2020)

8. The Supreme Court expressly held that "… [U]nlike in-person voters, mail-in or absentee voters are not provided an opportunity to cure perceived defects in a timely manner." *Id.* at p. 20.

9. On November 1, 2020, Frank Dean, Director of Mail-In Elections in Montgomery County, acknowledged that Montgomery County election officials regularly failed to comply with the requirement to safely keep the ballots in sealed or locked containers until pre-canvassed by the board of elections.

10. Director Dean confirmed that election officials daily evaluated and identified ballots for potential defects, such as, omitted secrecy envelopes and incomplete declarations. In addition, election officials weighed the ballot envelopes to determine whether secrecy envelopes were contained within the outer envelopes. Under-weight ballot envelopes were segregated from other ballot envelopes so that election official could permit electors to alter the envelopes.

11. The photograph below shows some of the thousands of absentee and mail-in ballots pre-canvassed by the Board of Elections in violation of the Election Code.[1] These defective ballots were not secured in any way and were easily accessible to the public.



---

[1] This "Ballots for Sale" photo was taken on 11/01/2020 by Robert Gillies during a tour of the Montgomery County mail-in ballot storage and canvass facility.

12.     In violation of electors' right to secrecy in their ballots, election officials used the information gathered through their inspection of the ballot envelopes to identify the names of electors who had cast potentially defective ballots.

13.     With this information, the election officials accessed the Statewide Uniform Registry of Electors ("SURE") System to compile lists of available confidential elector information including, each elector's name, street address, email address, telephone number, precinct, voter identification number and a description of the potential defect in the ballot envelope.

14.     In an October 31, 2020, e-mail, Director Dean emailed the latest list of confidential elector information to other election officials, Lee Soltysiak and Josh Stein, and wrote:



15.     There is no authority within the Election Code that authorizes election officials to manually alter the information contained within the SURE system for the purposes described by Director Dean.

4

16.  In order to cancel or replace an elector's absentee or mail-in ballot, election officials would be required to manually alter the information contained in the Commonwealth's Statewide Uniform Registry of Electors ("SURE").

17.  There is no authority within the Election Code that authorizes election officials to cancel and/or replace an elector's absentee or mail-in ballot as described by Defendant Dean.

18.  Further, in violation of electors' right to secrecy in their ballots, election officials used the information gathered through their inspection of the ballot envelopes to identify the names of electors who had cast potentially defective ballots.

19.  The Excel spreadsheet attached to Director Dean's October 31, 2020, e-mail notes that when mail-in or absentee ballot envelopes were found to have such defects, a limited number of electors were provided with the opportunity to alter their ballot envelopes.

20.  This picture shows page 1 or 124 pages that include thousands of defective ballot envelopes that elections officials were trying to "cure" in violation of the Election Code.

21. Intervenors also seek an Order from this Honorable Court directing Secretary Boockvar to secure and cease alterations on the records of the SURE System with respect to the 2020 Presidential Election and to prevent the wholesale elimination of the evidence contained on the SURE System as part of a plan to replace the System, at least while election contests/suits are pending. The Secretary of State has otherwise publicly announced her office's intention to proceed with plans to eliminate the SURE System.

22. Despite the clear legal prohibition against efforts to "cure" absentee and mail-in ballot envelopes, Defendant Boockvar issued guidance just hours before Election Day directing county boards of elections to provide electors who have cast defective absentee or mail-in ballots with provisional ballots and to promptly update the SURE system.

23. Deputy Secretary for Elections and Commissions of the Commonwealth issued an email which stated:

> Sent: Monday, November 2, 2020 8:38 PM
> To: Marks, Jonathan
> Subject: Important DOS Email - Clarification regarding Ballots Set Aside During Pre-canvass
>
> *** This is an external email. Please use caution when clicking on links and downloading attachments ***
>
> Dear County Election Directors,
>
> The Department of State has been asked whether county boards of elections can provide information to authorized representatives and representatives of political parties during the pre-canvass about voters whose absentee and mail-in ballots have been rejected. The Department issued provisional ballot guidance on October 21, 2020, that explains that voters whose completed absentee or mail-in ballots are rejected by the county board for reasons unrelated to voter qualifications may be issued a provisional ballot. To facilitate communication with these voters, the county boards of elections should provide information to party and candidate representatives during the pre-canvass that identifies the voters whose ballots have been rejected and should promptly update the SURE system.
>
> Kind regards,
>
> Jonathan M. Marks
> Deputy Secretary for Elections & Commissions
> Pennsylvania Department of State
> 302 North Office Building | Harrisburg, PA 17120
> ☎ 717.783.2035  📠 717.787.1734
> ✉ jmarks@pa.gov



24. In order to obtain a provisional ballot on Election Day, an elector who previously requested an absentee or mail-in ballot must sign an affidavit stating "I do solemnly swear or affirm that my name is … and that this is the only ballot that I cast in this election." *25 P.S. §3146.8; 25 P.S. §3050.*

25. If an elector has already submitted an absentee or mail-in ballot and that ballot was received by his or her county board of elections, the elector cannot truthfully affirm that the provisional ballot is the only ballot cast by them in the election. The provisional ballot is in fact a second ballot cast by them.

26. Defendants' actions appear to be coordinated with the Democratic Party that apparently considered the matter to be URGENT.



27. Intervenors assert that there were almost 100,000 provisional ballots cast in the 2020 General Election.

28. Intervenors will produce two expert witnesses whose reports are attached hereto and marked Exhibit "A" and "B". Such experts will identify significant and dispositive discrepancies/error or misconduct which would call into questions the results of the Presidential Election in Pennsylvania. If the Intervenors' Motion is granted, they will file the Pleading marked as Exhibit "C" and attached hereto. Intervenors will also produce various fact witnesses to substantiate the assertions made in the Motion to Intervene and in the pleading attached hereto.

29. In addition, Defendant Kathy Boockver, without statutory authorization or legal authority, provided select organizations that have close ties to the Democratic Party and common goals, to directly access to the Commonwealth's SURE System. Defendant Boockvar is quoted as stating:

> "Rock the Vote's web tool was connected to our system, making the process of registering through their online programs, and those of their partners, seamless for voters across Pennsylvania."
>
> -Kathy Boockvar, Pennsylvania Secretary of State

30. Finally, Intervenors assert that they would be irreparably harmed if an improperly elected President of the United States is sworn in violation of the United States Constitution.

31. In light of the massive nature of Defendants' illegal conduct, it would be an historic constitutional violation of massive proportions to allow Democrat Presidential Candidate Biden to take office based upon election results within the Commonwealth of Pennsylvania that cannot be properly and legally certified as accurate.

32. Intervenors can establish that a significant number of the votes cast by absentee and mail-in ballots were directly impacted by Defendants' illegal and inappropriate conduct.

33. Intervenors can establish that a significant number of the votes cast by provisional ballots were directly impacted by Defendants' illegal and inappropriate conduct.

34. The votes cast using voting machines on Election Day more accurately reflect the will of electorate within the Commonwealth because these votes were less susceptible to Defendants' illegal and inappropriate conduct.

WHEREFORE, showing the above, the proposed Intervenors pray this Honorable Court for an Order granting their Motion to Intervene, and as set forth herein.

Respectfully submitted,

Dated: November 21, 2020

/s/ Thomas W. King, III
Thomas W. King, III (PA I.D. No. 21580)
Email: tking@dmkcg.com
Thomas E. Breth (PA I.D. No. 66350)
Email: tbreth@dmkcg.com
*Special Counsel for the Amistad Project of the Thomas More Society*
Dillon, McCandless, King, Coulter & Graham, L.L.P.
128 West Cunningham Street
Butler, PA 16001
Telephone: (724) 283-2200
Facsimile: (724) 283-2298
*Counsel for Intervenors*

/s/ Timothy P. Griffin
Timothy P. Griffin (VA. I.D. No. 83195)*

Email: tgriffin@thomasmoresociety.org
*Special Counsel for the Amistad Project*
*of the Thomas More Society*
Thomas More Society
Amistad Project
115 Sandiges Road
Amherst, VA 24521
Telephone: (434) 660-6198

*\*Pro Hac Vice Pending*