EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., et al., | : | CASE NO. 4:20-CV-02078-MWB |
| | : | |
| Plaintiffs, | : | The Hon. Matthew W. Brann |
| v. | : | |
| KATHY BOOCKVAR, et al., | : | |
| | : | |
| Defendants. | : | |

### INTERVENORS' COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

### PARTIES

1.      Intervenors are residents in various counties throughout the Commonwealth of Pennsylvania (including within the counties identified by the Boards of Elections in this suit) and all Intervenors voted in their respective counties of residence in the 2020 General Election.

2.      PA Voters Alliance is a Pennsylvania unincorporated association whose members include some of the Intervenors. The PA Voter Alliance is an association with members who seek to ensure, as part of the Association's objectives, public confidence in the integrity of Pennsylvania's elections, in election results and election systems, processes, procedures and enforcement and that the public officials act in accordance with the law in exercising their obligations to the people of the Commonwealth of Pennsylvania.  PA Voters Alliance asserts the rights of its members as electors within the Commonwealth of Pennsylvania.

3.      Defendant, Kathy Boockvar, in her official capacity as the Secretary of the Commonwealth has the obligation and duty to assure that the Election Code of the Commonwealth, as established and amended by the General Assembly, is implemented equally throughout the Commonwealth of Pennsylvania.

4.      Defendant, Montgomery County Board of Elections, has the obligation and duty to assure that the Election Code of the Commonwealth, as established and amended by the General Assembly, is faithfully implemented within Montgomery County, Commonwealth of Pennsylvania.

5.      Defendant, Delaware County Board of Elections, has the obligation and duty to assure that the Election Code of the Commonwealth, as established and amended by the General Assembly, is faithfully implemented within Delaware County, Commonwealth of Pennsylvania.

6.      Defendant, Philadelphia County Board of Elections, has the obligation and duty to assure that the Election Code of the Commonwealth, as established and amended by the General Assembly, is faithfully implemented within Philadelphia County, Commonwealth of Pennsylvania.

7.      Defendant, Centre County Board of Elections, has the obligation and duty to assure that the Election Code of the Commonwealth, as established and amended by the General Assembly, is faithfully implemented within Centre County, Commonwealth of Pennsylvania.

8.      Defendant, Allegheny County Board of Elections, has the obligation and duty to assure that the Election Code of the Commonwealth, as established and amended by the General Assembly, is faithfully implemented within Allegheny County, Commonwealth of Pennsylvania.

9.      Defendant, Chester County Board of Elections, has the obligation and duty to assure that the Election Code of the Commonwealth, as established and amended by the General Assembly, is faithfully implemented within Chester County, Commonwealth of Pennsylvania.

10.     Defendant, Northampton County Board of Elections, has the obligation and duty to assure that the Election Code of the Commonwealth, as established and amended by the General Assembly, is faithfully implemented within Northampton County, Commonwealth of Pennsylvania.

set

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction of this matter, pursuant to 28 U.S.C. §§ 1331 and 1343, because this matter involves violations of the United States Constitution and the laws of the United States as related to Federal Elections. Further, the Court has supplemental jurisdiction over any state law and constitutional claims pursuant to 28 U.S.C. §1367.  This Court has personal jurisdiction over the named individual Defendants, who are sued in their official capacities only.

12.     This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper under 28 U.S.C. § 1391(b).

14.     Intervenors bring this action under 42 U.S.C. §§ 1983 and 1988.

**BACKGROUND**

15.     The Elections Clause of the United States Constitution provides that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in [Pennsylvania] by the Legislature thereof…" *Art. I § 4, cl. 1. U.S. Const.*

16.     The Electors Clause of the United States Constitution provides that "[e]ach state shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, …" for President of the United States*. Art. II, §1, cl. 2., U.S. Const*.

17.     Legislative power in the Commonwealth of Pennsylvania is vested solely within the General Assembly.  *Art. II, §1. PA Const.*

18.     In addition to the General Assembly's rule making powers, it retains "… all other powers necessary for the Legislature of a free State. …" *Art. II, §11. PA Const.*

19.     The General Assembly has proscribed a role for county board of elections, "[t]here shall be a county board of elections in and for each county of this Commonwealth,

which shall have jurisdiction over the conduct of primaries and elections in such county, in accordance with the provisions of [the Election Code]." *25 P.S. § 2641(a).*

20.     This jurisdiction includes the selection of polling places, appointment of poll watchers, maintaining election equipment, and making other regulations that must be consistent with law and "necessary for the guidance of voting machine custodians, elections officers and electors." *25 P.S. § 2642.*

21.     One notable limitation on these administrative powers, in addition to the required adherence to the Election Code, is Pennsylvania's Constitutional requirement that "[a]ll laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State . . . ." A*rt. VII, § 6. PA Const.*

22.     Pennsylvania's Election Code was amended by Act 77 of 2019 which for the first time, provided electors with the ability to vote via mail-in ballots without providing a necessitous reason for their absence on Election Day.  *25 P.S. §§3150.11-3150.17.*

23.     Under the amended Election Code, county boards of election are required, upon receipt of sealed official absentee and mail-in ballot envelopes, to "safely keep the ballots in sealed or locked containers until they are to be canvassed by the county board of elections." *25 P.S. §3146.8(a).*

24.     In addition to Act 77 of 2019, Pennsylvania passed Act 12 of 2020, *25 P.S. 2600, et seq.,* which made various changes to the Pennsylvania Election Code, including by amending when mail-in and absentee ballots could be reviewed and counted and by defining "pre-canvass" procedures for mail-in and absentee ballots.  Act 12 defined "pre-canvass" procedures as:

> "the inspection and opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes and the counting, computing and tallying of the votes reflected on the ballots. The term does not include the recording or publishing of the votes reflected on the ballots." *25 P.S. 2602(q.1).*

25.     A county board of elections is prohibited from pre-canvassing absentee and mail-in ballots prior to 7:00 a.m. of Election Day. *25 P.S. § 3146.8(g)(1.1.).*

26.     As such, from the time ballot envelopes are received by the county board of elections through 7:00 a.m. on Election Day, the ballots are to be safely kept in sealed or locked containers. *25 P.S. §3146.8(a).*  Stated in a different way, the county board of elections is not permitted to remove absentee and mail-in ballot envelopes from their sealed or locked containers until the ballots are pre-canvassed at 7:00 a.m. on Election Day.

27.     Absentee and mail-in ballots are required to be canvassed in accordance with subsection (g) of Section 3146.8 - Canvassing of official absentee and mail-in ballots. *25 P.S. §3146.8(g) (1)(i-ii) & (1.1).*

28.     The Election Code defines the term "pre-canvass" to mean "the inspection and opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes and the counting, computing and tallying of the votes reflected on the ballots.  The term does not include the recording or publishing of the votes reflected on the ballots." *25 P.S. § 2602(q.1).*

29.     Prior to any pre-canvassing meeting, the county board of elections is required to provide at least forty-eight hours' notice by publicly posting a notice of a pre-canvass meeting on its publicly accessible Internet website. *25 P.S. § 3146.8(g)(1.1.).*

30.     Each candidate and political party is entitled to have one designated and authorized representative in the room any time absentee and mail-in ballots are being canvassed by a board of elections. *25 P.S. §3146.8(g)(2).*

31.     The candidates' watchers or other representatives are permitted to be present any time the envelopes containing absentee and mail-in ballots are opened. *25 P.S. §3146.8*

32.     The candidates and political parties are entitled to have watchers present any time there is canvassing of returns. *25 P.S. §2650(a).*

33.     During pre-canvasing, the county board of elections is required to examine each ballot cast to determine if the declaration envelope is properly completed and to compare the information with the information contained in the Registered Absentee and Mail-in Voters File. *25 P.S. § 3146.8(g)(3).*

34.     Only then is the board of elections authorized to open the outer envelope of every unchallenged absentee or mail-in envelope in such a manner so as not to destroy the declaration executed thereon. *25 P.S. § 3146.8(g)(4)(i).*

35.     Individuals who attend pre-canvassing meetings are prohibited from disclosing any portion of the pre-canvass meeting prior to the close of the polls. *25 P.S. § 3146.8(g)(1.1.).*

36.     If challenged, the board of elections is prohibited from opening the outer envelope and the absentee or mail-in ballot envelope is marked challenged and segregated for further review.

37.     If unchallenged and in proper form, the county board of elections is only then authorized to break the seals of such envelopes; remove the ballots and count, compute and tally the votes.  *25 P.S. § 3146.8(g)(4)(iii).*

38.     The Pennsylvania Constitution guarantees that "[e]lections shall be free and equal; and, no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." *Art. I, §5 PA Const.*

39.     The Secretary of the Commonwealth and the county boards of elections have the constitutional obligation to preserve the secrecy of voting within the Commonwealth. *Art. VII, §4 PA Const.*

40.     The Secretary of the Commonwealth and the county boards of elections have the constitutional obligation to make sure that "[a]ll laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the state …", *Art. VII, §6 PA Const.*

41.     Only "[t]he Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may … be absent from the municipality of their residence … or who, on the occurrence of any election, are unable to attend at their proper polling place … may vote, and for the return and canvass of their votes in the election district in which they respectively reside." *Art. VII, §14 PA Const.*

42.     The Secretary of the Commonwealth and the county boards of elections have no authority to prescribe or implement guidance, regulations or procedures that circumvent, obfuscate or conflict with the Election Code as approved by the Legislature.

43.     The Fourteenth Amendment of the United States Constitution forbids a state from depriving anyone of life, liberty, or property without due process of law.

44.     The substantive component of the Due Process Clause guarantees that all fundamental rights comprised within the term "liberty" are protected by the Federal Constitution from invasion by the States.

45.     The right to freely and fairly vote in federal elections is a fundamental right protected by the Fourteenth Amendment of the United States Constitution.

46.     Elections in Pennsylvania are governed and regulated by the Pennsylvania Election Code. "Although the [Commonwealth] is ultimately responsible for the conduct and organization of elections, the statutory scheme [promulgated by the Election Code] delegates aspects of that responsibility to the political parties. This delegation is a legislative recognition of 'the critical role played by political parties in the process of selecting and electing candidates for state and national office.'" *Tiryak v. Jordan, 472 F. Supp. 822, 823-24 (E.D. Pa. 1979) (quoting Marchioro v. Chaney, 442 U.S. 191, 195 (1979))*. "Pennsylvania's election laws apply equally to federal and state elections." *Project Vote v. Kelly, 805 F. Supp. 2d 152, 174 (W.D. Pa. 2011) (citing Kuznik v. Westmoreland County Board of Elections, 902 A.2d 476, 49093 (Pa. 2006))*.

47.     The Pennsylvania General Assembly understood that sentiment long ago and intertwined the concept of watching with the act of voting, enshrining transparency and accountability into the process in which Pennsylvanians choose elected officials. After all, reasonable people cannot dispute that "openness of the voting process helps prevent election fraud, voter intimidation, and various other kinds of electoral evils." PG Publishing Co. v. Aichele, 705 F.3d 91, 111 (3d Cir. 2013).

48.     As long as Pennsylvania has had an Election Code, it has had watchers. In 1937, the Pennsylvania General Assembly included the concept of "watchers" in the then-newly enacted Pennsylvania Election Code, a statutory scheme addressing the administration of elections in the Commonwealth. *25 P.S. §§ 2600, et. seq.*

49.     Election Code Section 417, codified at *25 P.S. § 2687,* creates the position of watcher and entrusts to each candidate for nomination or election at any election, and each political party and each political body which has nominated candidates for such elections, the power to appoint watchers to serve in each election district in the Commonwealth. *25 P.S. § 2687(a).*

50.     "… Poll watcher[s] perform a dual function on Election Day. On the one hand, because [watchers] are designated and paid by [candidates, political parties, and/or political bodies], [their] job is to guard the interests of [their] candidates [or political parties or bodies]. On the other hand, because the exercise of [their] authority promotes a free and fair election, poll watcher[s] serve to guard the integrity of the vote. Protecting the purity of the electoral process is a state responsibility and [watchers'] statutory role in providing that protection involves [them] in a public activity, regardless of [their] private political motives." *Tiryak, 472 F. Supp. at 824.*

51.     The Supreme Court of Pennsylvania noted that the Elections Code does not provide elections officials with procedures for contacting electors and allowing electors to cure defects in mail-in and absentee ballots:

"As noted herein, although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the "notice and opportunity to cure" procedure sought by Petitioner. To the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements, we agree that the decision to provide a "notice and opportunity to cure" procedure to alleviate that risk is one best suited for the Legislature." *Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644, at \*20 (Pa. Sept. 17, 2020); *see also In re: November 3, 2020 General Election*, 2020 WL 6252803, at \*7 (Pa. Oct. 23, 2020)

52.    The Supreme Court expressly held that "… [U]nlike in-person voters, mail-in or absentee voters are not provided an opportunity to cure perceived defects in a timely manner." *Id. at p. 20.*

53.    Allowing a voter to cure a defect in a mail-in or absentee ballot after the ballot is submitted treats key provisions of the Pennsylvania Election Code as surplusage.

54.    Indeed, 1 Pa.C.S.A. § 1921(a) mandates: "Every statute shall be construed, if possible, to give effect to all of its provisions."

55.    Counties in the Commonwealth of Pennsylvania, including Defendant Counties, have only the power to act as granted by the Commonwealth, under the Dillon Rule. *Warner Cable Commc'ns Inc. v. Borough of Schuylkill Haven*, 784 F. Supp. 203, 211 (E.D. Pa. 1992) ("It is well established that Pennsylvania has adopted the *Dillon* rule, which states that a municipal corporation does not possess and cannot exercise any other than the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable." [internal citations and quotations omitted]).

56.    The Elections Clause has two functions: "Upon the States it imposes the duty ('*shall* be prescribed') to prescribe the time, place, and manner of electing Representatives and Senators; upon Congress it confers the power to alter those regulations or supplant them altogether." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 8-9 (2013).

57.     Such power to regulate federal elections, when specifically allocated to the Commonwealth by Congress, cannot be amended at will by individual election officials in wayward counties.

58.     Officials of Defendant Counties have no wiggle room to shape federal election law as they desire; the County has only the ability to take the action afforded to it by the Commonwealth's Legislature.

59.     Prior to the 2020 General Election, the Pennsylvania Supreme Court addressed the issue of whether county boards of elections are required to contact qualified electors whose mail-in or absentee ballots contain defects to provide them with an opportunity to cure those defects.  *Pa. Democratic Party v. Boockvar*, 2020 WL 5554644, *19 (Pa. September 17, 2020).

60.     The Supreme Court held as follows:

"While the Pennsylvania Constitution mandates that elections be 'free and equal,' it leaves the task of effectuating that mandate to the Legislature.  Winston, 81 A. at 522.  As noted herein, although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the 'notice and opportunity to cure' procedure sought by Petitioner.  To the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements, we agree that the decision to provide a 'notice and opportunity to cure' procedure to alleviate that risk is one best suited for the Legislature.  We express this agreement particularly in light of the open policy questions attendant to that decision, including what the precise contours of the procedure would be, how the concomitant burdens would be addressed, and how the procedure would impact the confidentiality and counting of ballots, all of which are best left to the legislative branch of Pennsylvania's government. . . ."  *Id. at pp. 19-20*

61.     This the above-referenced case, Defendant Boockvar agreed with the Supreme Court's position and argued that "there is no statutory or constitutional basis for requiring the Boards to contact voters when faced with a defective ballot and afford them an opportunity to do so."  *Id. at p. 19.*

62.     Defendant Boockvar further acknowledged that "while it may be good policy to implement a procedure that entails notice of defective ballots and an opportunity to cure them,

logistical policy decisions like the ones implicated herein are more properly addressed by the Legislature, not the courts." *Id. at p. 20.*

63.     The legislature has not provided a process for implementing a "notice and opportunity to cure" procedure and has not expressly authorized the counties to create one.

64.     The United States Supreme Court has held that "having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore, 531 U.S. 98, 104-05 (2000).*

## COUNT I
### Violation of the Constitution and Election Code
### of the Commonwealth of Pennsylvania

65.     The averments contained in Paragraphs 1 through 64 are incorporated herein by reference as if fully set forth.

66.     As early as October 21, 2020, election officials in Defendant Counties (hereinafter "election officials") regularly failed to safely keep received absentee and mail-in ballot envelopes in sealed or locked containers. See *Declarations of Jacob G. Daniels, Shawn M. Packer, Daniel Cox)*

67.     To the contrary, as early as October 21, 2020, election officials regularly reviewed, inspected, evaluated and identified absentee and mail-in ballot envelopes to determine whether the ballot envelopes contained a potential defect such as an incomplete declaration or omitted secrecy envelope.

68.     Once identified, these potentially defective ballot envelopes were segregated from other ballot envelopes and not safely kept in sealed or locked container.

69.     Plaintiffs presume that the non-defective ballot envelopes were safely kept in sealed or locked containers, but Plaintiffs are without information regarding those ballots since Plaintiffs were prohibited from observing the handling of the ballot envelopes.

70.     There is authority within the Election Code that authorizes Defendants to treat some absentee and mail-in ballot envelopes differently that other absentee and mail-in ballot envelopes.

71.     Throughout this process, Plaintiffs' authorized representative attempted to observe the election officials actions; however, Plaintiffs' authorized representatives were denied the access necessary to properly observe the handling of these ballot envelopes and subsequently, the ballots, as a direct result of Defendants' action.

72.     By letters dated October 31, 2020, and November 1, 2020, Intervenor Barnette reiterate, through her legal representative, her requests for access, pursuant to the Election Code, to properly observe the pre-canvassing, canvassing and other activities related to the handling of ballot envelopes, along with other issues. *See Affidavits.*

73.     Despite Plaintiffs' best good faith efforts, election officials denied Plaintiffs' request in violation of the Election Code.

74.     On November 1, 2020, Frank Dean, Director of Mail-In Elections in Montgomery County, acknowledged that Montgomery County election officials regularly failed to comply with the requirement to safely keep the ballots in sealed or locked containers until pre-canvassed by the board of elections.

75.     Director Dean confirmed that election officials daily evaluated and identified ballots for potential defects, such as, omitted secrecy envelopes and incomplete declarations.

76.     In further violation of its obligation to safely keep the ballots in sealed or locked container until pre-canvassed, election officials weighed the ballot envelopes to determine whether secrecy envelopes were contained within the outer envelopes.  Under-weight ballot envelopes were segregated from other ballot envelopes so that election official could permit electors to alter the envelopes.

77.     In Montgomery County, election officers only "accepted" absentee and mail-in ballot envelopes that election officials determined to be free from potential defects.

78.     According to the election officials, absentee and mail-in ballot envelopes with potential defects were not accepted so that electors could vote by way of provisional ballots.

79.     According to election officials in Montgomery County, if the absentee or mail-in ballot envelope is accepted, the elector is not able to vote by way of provisional ballot.

80.     The Election Code only addresses the county board of elections' receipt of the absentee and mail-in ballot envelopes.

81.     Once received, all absentee and mail-in ballot envelopes are accepted until rejected through the pre-canvassing and canvassing provisions of the Election Code.

82.     In violation of electors' right to secrecy in their ballots, election officials used the information gathered through their inspection of the ballot envelopes to identify the names of electors who had cast potentially defective ballots.

83.     With this information, the election officials accessed the Statewide Uniform Registry of Electors ("SURE") System to compile lists of available confidential elector information, including, each elector's name, street address, email address, telephone number, precinct, voter identification number and a description of the potential defect in the ballot envelope.

84.     In an October 31, 2020, e-mail, Director Dean emailed the latest list of confidential elector information to other election officials, Lee Soltysiak and Josh Stein, and wrote: "If the defect is an Incomplete Declaration or Missing Secrecy Envelope, the voter need only come to 1430 DeKalb Street, Norristown, PA 19401.  They will be given the opportunity to correct their declaration or we will provide them with a secrecy envelope, which they can insert and reseal inside the Ballot Return Envelope."

85.     Director Dean further wrote: "For the remainder of defects, the voter needs to go to Voter Services, One Montgomery Plaza, 425 Swede Street, Suite 602, Norristown, PA 19404 and request a Cancel/Replace."

86.     There is no authority within the Election Code that authorizes election officials to cancel and/or replace an elector's absentee or mail-in ballot as described by Defendant Dean.

87.     In order to cancel or replace an elector's absentee or mail-in ballot, election officials would be required to manually alter the information contained in the Commonwealth's Statewide Uniform Registry of Electors ("SURE").

88.     There is authority within the Election Code that authorizes election officials to manually alter the information contained within the SURE system for the purposes described by Director Dean.

89.     The Excel spreadsheet attached to Director Dean's October 31, 2020, e-mail notes that when mail-in or absentee ballot envelopes were found to have such defects, a limited number of electors were provided with the opportunity to alter their ballot envelopes.

90.     There is no legal dispute that under Pennsylvania's Election Code "… mail-in or absentee voters are not provided an opportunity to cure perceived defects in a timely manner." *In re: November 3, 2020 General Election,* No. 149 MM 2020, at *12.

91.     In addition to permitting some electors to alter their defectively cast absentee and mail-in ballot envelopes, Defendants also permitted other similar electors the alternative to vote a second time by provisional ballots.

92.     Despite the clear legal prohibition against efforts to "cure" absentee and mail-in ballot envelopes, Defendant Boockvar issued guidance just hours before Election Day directing county boards of elections to provide electors who have cast defective absentee or mail-in ballots with provisional ballots and to promptly update the SURE system.

93.     The above-referenced guidance is not the first time Defendant Boockvar has issued guidance in violation of the Election Code.  See, *Trump, et al v. Boockvar, et al, November 12, 2020 Order, 602 M.D. 2020.*

94.     It is unclear what Defendant Boockvar intended when she directed county boards of elections to promptly update the SURE system since there is no authority within the Election Code for election official to delete a properly received absentee or mail-in ballot envelope from the SURE System.

95.     There is no authority within Election Code to delete, cancel and/or replace an absentee or mail-in ballot envelope once received by a county board of elections.

96.     In order to obtain a provisional ballot on Election Day, an elector who previously requested an absentee or mail-in ballot must sign an affidavit stating "I do solemnly swear or affirm that my name is … and that this is the only ballot that I cast in this election."  *25 P.S. §3146.8; 25 P.S. §3050.*

97.     If an elector has already submitted an absentee or mail-in ballot and that ballot was received by his or her county board of elections, the elector cannot truthfully affirm that the provisional ballot is the only ballot cast by them in the election.  The provisional ballot is in fact a second ballot cast by them.

98.     Defendants' actions are in clear contravention of the Election Code and the Pennsylvania Supreme Court's decision in *In re November 3, 2020 Gen. Election*, 149 MM 2020, 2020 WL 6252803, at *6 (Pa. Oct. 23, 2020).

99.     As articulated by the Supreme Court of Pennsylvania, the Elections Code does not provide elections officials with procedures for contacting electors and allowing electors to cure defects in mail-in and absentee ballots:

> "As noted herein, although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the "notice and opportunity to cure" procedure sought by Petitioner. To the extent that a voter is at risk for

having his or her ballot rejected due to minor errors made in contravention of those requirements, we agree that the decision to provide a "notice and opportunity to cure" procedure to alleviate that risk is one best suited for the Legislature." *Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644, at *20 (Pa. Sept. 17, 2020); *see also In re: November 3, 2020 General Election*, 2020 WL 6252803, at *7 (Pa. Oct. 23, 2020)

100.     Upon information and belief, counties, other than Defendant Counties, throughout the Commonwealth have not deviated from the Election Code.

101.     As articulated Berks County has uniformly complied the Election Code by (a) refraining from pre-canvasing until 7:00 a.m. on Election Day and (b) not providing electors an opportunity to change their ballots after submitting the ballots to Berks County.

102.     Berks County and other counties throughout the Commonwealth, also provided candidates, political parties and their authorized representatives with a full and fair opportunity to observe the entire pre-canvassing and canvassing process.

103.     As a result of Defendants' actions, similiarly-situated voters are being treated differently based on the county where they are required to vote.  In other words, equivalent votes in different counties are being treated differently.

104.     In *Bush v. Gore*, 531 U.S. 98, 104-05 (2000), the Court determined that Florida's disparate method of determining a legal vote amounted to an unconstitutional abridgment of the right to vote.

105.     The Supreme Court held that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  *Id*. (citing *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment.").

106.    Allowing voters to cure a defective declaration requires counties to examine a declaration prior to 7:00 a.m. on Election Day and, thus, treats the requirement to begin pre-canvassing no earlier than 7:00 a.m. on Election Day as surplusage. *25 P.S. § 3146.8(g)(1.1).*

107.    During pre-canvassing, the Pennsylvania Election Code mandates that county boards of election "shall examine the declaration on the envelope of each ballot" to be "satisfied that the declaration is sufficient." *25 P.S. § 3146.8(g)(3).*

108.    At this juncture, in order to make sure that voters in Berks County and Montgomery County are treated equally, Defendants must set aside and declare void any ballots that have been submitted to Montgomery County and subsequently changed.

109.    Intervenor Barnette is running as the candidate in the 4th Congressional District for the Republican Party, and she will be at a significant disadvantage as the 4th Congressional District consists of both Montgomery County and Berks County.

110.    A vote that could count in Montgomery County will not count in Berks County because of the decisions made by Defendants in violation of Pennsylvania's Election Code and the Supreme Court of Pennsylvania's holding.

111.    Intervenor Barnette is running as the candidate in the 4th Congressional District for the Republican Party, and she will be at a significant disadvantage as the 4th Congressional District consists of both Montgomery County and Berks County.

112.    Defendants' conduct is unlawful and unconstitutional, and it must be enjoined and corrected before the election results are certified.

## COUNT II
### Demand for Declaratory Judgment and Relief

113.    The averments contained in Paragraphs 1 through 112 are incorporated herein by reference as if fully set forth.

114.    Defendants' The Supreme Court of the Commonwealth of Pennsylvania in the case of *Sprague v. Casey, et al, 520 Pa. 38 (1988)*, determined that an election conducted in such a manner as to violate the Constitution and laws of the Commonwealth of Pennsylvania should be set aside and declared null and void.

115.    The evidence of mis-deeds, illegalities, and constitutional violations is so pervasive in the election conducted in the Commonwealth of Pennsylvania for President of the United States that this election should be declared void and invalid, set aside, and the Legislature of the Commonwealth of Pennsylvania should determine, absent such invalid results, the election of electors necessary to cast the votes of the Commonwealth of Pennsylvania in the National Electoral College, or in the alternative, this Court should order an immediate new election.

## PRAYER FOR RELIEF

WHEREFORE, Intervenors respectfully request that this Court enter judgment in their favor and Order immediate relief as follows:

a.  An Order directing Defendants only count such ballots as were lawfully cast in the 2020 Presidential Election; and,

b.  An Order directing Defendant Kathy Boockvar, in her official capacity as Secretary of the Commonwealth, to immediately secure, segregate and safeguard all available elector and election data contained within the Commonwealth's Statewide Uniform Registry of Electors ("SURE") System and/or within her care, custody and/or control pending further Order of this Court; and, further directing the Secretary from replacing the SURE System pending further Order of this Court; and,

c.  An Order prohibiting Defendant Counties from disposing of, destroying or failing to preserve any and all available elector and election data within their care, custody and/or control pending further Order of this Court; and,

d.  Intervenors' reasonable legal fees, costs and expenses under 42 U.S.C. §§ 1983 and

1988; and,

e.  All other relief for which Intervenors are entitled or which the Court deems appropriate.

Respectfully Submitted,

Dated: November 21, 2020

/s/ Thomas W. King, III
Thomas W. King, III (PA I.D. No. 21580)
Email: tking@dmkcg.com
Thomas E. Breth (PA I.D. No. 66350)
Email: tbreth@dmkcg.com
*Special Counsel for the Amistad Project
of the Thomas More Society*
Dillon, McCandless, King, Coulter
& Graham, L.L.P.
128 West Cunningham Street
Butler, PA 16001
Telephone: (724) 283-2200
Facsimile: (724) 283-2298

*Counsel for Intervenors*

/s/ Timothy P. Griffin
Timothy P. Griffin (VA. I.D. No. 83195)*
Email: tgriffin@thomasmoresociety.org
*Special Counsel for the Amistad Project
of the Thomas More Society*
Thomas More Society
Amistad Project
115 Sandiges Road
Amherst, VA 24521
Telephone: (434) 660-6198

*\*Pro Hac Vice Pending*