**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD J. TRUMP FOR PRESIDENT, INC., et al., | : | CASE NO. 4:20-CV-02078-MWB |
| | : | |
| Plaintiffs, | : | The Hon. Matthew W. Brann |
| v. | : | |
| KATHY BOOCKVAR, et al., | : | |
| | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF MOTION TO INTERVENE**

AND NOW come Intervenors, Mike Kelly, Kathy Barnette, Sean Parnell, Luke Negron, David Torres, Clay Breece, Dasha Pruett, Daryl Metcalfe, Cris Dush, Thomas Sankey, Kathy Rapp, Robert Kaufman, Stephanie Borowicz and PA Voters Alliances, by and through their attorneys Thomas W. King, III, and Thomas E. Breth, through Dillon McCandless King Coulter & Graham to file the within Brief in Support of Motion to Intervene pursuant to Rule 24(a) of the Fed. Rules Civ. Proc., stating in support thereof as follows, to wit:

**INTRODUCTION**

"If an election is to be determined by a majority of a single vote, and that can be procured by a party through artifice or corruption, the Government may be the choice of a party for its own ends, not of the nation for the national good." *John Adams, Inaugural Address, Philadelphia March 4, 1797.*

American citizens deserve fair elections. Every legal – not illegal – vote should be counted. And no government power, be it state or federal, may deny American citizens the right to observe the process by which votes are cast, processed, and tabulated. We must protect our democracy with complete transparency.  Defendants, the very officials charged with ensuring the integrity of the

election in Pennsylvania, have so mismanaged the election process that no one can have faith that their most sacred rights under the United States and Commonwealth Constitutions are being protected.

The 2020 General Election will be remembered for the Democratic Party's systematic evisceration of the Commonwealth's Election Code. While the bedrock of American elections has been transparency, almost every critical aspect of Pennsylvania's November 3, 2020, General Election was effectively shrouded in secrecy and obfuscation.  Investigations have uncovered more than $400 million funneled through a collection of non-profit organizations directly to counties dictating to election officials how they are to manage the election. These unregulated private funds were predominantly used to: 1) pay "ballot harvesters," 2) mobilize ballot pick up units, 3) deputize and pay political activists to manage ballots; 4) pay election judges and poll workers; 5) establish drop-boxes and satellite offices; 6) pay local election officials and agents to recruit cities recognized as democratic strongholds to recruit other cities to apply for grants from non-profits; 7) consolidate counting centers in the urban core to facilitate the movement of hundreds of thousands of questionable ballots in secrecy without legally required bi-partisan observation; 8) initiate and implement a two-tier ballot "curing" plan that illegally counted ballots in democrat strongholds and spoiled similarly situated ballots in republican strongholds; and 9) pay for and help design the plan to remove the poll watchers from one political party so that the critical responsibility of determining the validity of the ballot and the validity of the count could be conducted without oversight.

These unregulated private funds exceeded the federal government's March 2020 appropriation to assist local governments in managing the general election during the pandemic. As these funds flowed through the pipeline directly to hand-picked cities, the outlines of two-tiered

treatment of the American voter began to take place.  Local governments in Democrat strongholds flush with cash to initiate public-private coordinated voter registration drives, allow private access directly to government voter registration files, access to early voting opportunities, the provision of incentives such as food, entertainment and gifts for early voters and the off-site collection of ballots.  Outside of the urban core and immediate suburbs, election officials were unable to initiate such efforts.

This "shadow-government" operation was funded through grants which dictated methods and procedures to local election officials and in which the grantors retained the right to "claw-back" all funds if election officials failed to reach privately set benchmarks.  This entanglement between the private sector and state demands transparency; yet none has been given.  The government officials involved, and the private interests involved have refused repeated demands for the release of communications outlining the rationale and plan behind spending more than $400 million provided directly to various election officials prior to the 2020 general election. These funds were used by Democratic counties to help facilitate violations of the Election Code.

Not all counties within the Commonwealth gave voters an equal opportunity to vote; thus, jeopardizing the integrity of the 2020 election.  In Montgomery, Delaware, Philadelphia, Center, and Allegheny Counties, the Boards of Elections deviated from the uniform election standards set forth in Pennsylvania's Election Code and implemented their own arbitrary and capricious standards.

In the Commonwealth of Pennsylvania, our Constitution guarantees that "[e]lections shall be free and equal; and, no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.", *Art. I, §5 PA Const.*; that "secrecy in voting be preserved.", *Art. VII, §4 PA Const.*; that "[a]ll laws regulating the holding of elections by the citizens, or for the

registration of electors, shall be uniform throughout the state …", *Art. VII, §6 PA Const.*; and, that

"[t]he Legislature shall, by general law, provide a manner in which, and the time and place at

which, qualified electors who may … be absent from the municipality of their residence … or who,

on the occurrence of any election, are unable to attend at their proper polling place … may vote,

and for the return and canvass of their votes in the election district in which they respectively

reside." *Art. VII, §14 PA Const.*

The Fourteenth Amendment of the United States Constitution forbids a state from

depriving anyone of life, liberty, or property without due process of law.  The substantive

component of the Due Process Clause guarantees that all fundamental rights comprised within the

term "liberty" are protected by the Federal Constitution from invasion by the States. The right to

freely and fairly vote in federal elections is a fundamental right protected by the Fourteenth

Amendment of the United States Constitution.

Further, the Electors Clause of the United States Constitution provides "[e]ach state shall

appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, …" for

President of the United States.  *Art. II, §1, cl. 2., U.S. Const*.  In addition, the Elections Clause

provides "[t]he Times, Places and Manner of holding Elections for Senators and Representatives,

shall be prescribed in each State by the Legislature thereof, …"  *Art. I, §2, cl. 1., U.S. Const*.

At the direction of the Secretary of the Commonwealth, Defendant Kathy Boockvar, and

with her knowledge and assent, Defendants Montgomery, Delaware, Philadelphia, Centre, and

Allegheny County Boards of Elections engaged in illegal conduct, including, but not limited to, 1)

pre-canvassing of absentee and mail-in ballot envelopes prior to Election Day; 2) identification of

defective absentee and mail-in ballot envelopes through a number of methods, including, the

weighing of ballot envelopes to determine whether the outer envelope contained the required inner

secrecy envelope; 3) compiling and releasing of spreadsheets containing confidential voter information, including, a description of the nature of each voter's defective absentee or mail-in ballot envelope; 4) facilitating voters in the altering of their absentee and mail-in ballot envelopes, including, permitting voters to open their outer envelopes, remove and place the ballots into secrecy envelopes, insert the secrecy envelope into the outer envelope and resealing the outer envelope; 5) permitting voters to cast provisional ballots in an effort to "cure" previously cast defective absentee and mail-in ballots; and, 6) refusing to permit authorized representatives to properly observe the pre-canvassing and canvassing process as required by the Election Code.

In addition thereto, the Secretary issued guidance which exceeded her authority including, but not limited to, the expansion of the date procuring effective ballots which was the subject of an action in the Commonwealth Court of Pennsylvania, *Trump, et al., v. Boockvar, et al., 600 M.D. 2020*, in which said Court found that the Secretary clearly exceeded her authority.  In addition, the Secretary authorized individuals to backdate entries in the SURE System and/or authorized Counties Board of Election to improperly delete and alter entries in the SURE System.  In Greene County, Pennsylvania, the Solicitor specifically rejected advice to backdate entries in the SURE System.

In Philadelphia, Delaware, and Centre Counties, in violation of State law, multiple ballots were deposited by single individuals into drop boxes which were unattended and provided using the not mentioned before private money aforementioned.

In Centre County, Pennsylvania, the private money was used to purchase a van operated by a Deputy who was directed to harvest ballots in Centre County, Pennsylvania.

In Philadelphia County, Delaware County, and Allegheny Counties authorized watchers or attorneys were denied access all together to ballot counting operations.

In Philadelphia County, Pennsylvania, voters were offered rewards, such as food, home goods, and clothing inside polling locations.  In addition, thereto, individuals representing the Democratic party were permitted inside the polling locations.  Further, signs misleading voters to believe that polling locations were only for the voting of democratic votes and threatening "we know where you live" were placed outside of a poll.

Votes were cast for deceased individuals in multiple locations in Pennsylvania.

In Centre County, Pennsylvania, multiple registrations were recorded in the pollbooks allowing individuals with clearly fraudulent entries to cast multiple votes.

In Allegheny County, the Defendants commenced the canvass of the ballots and during the canvass closed the entire facility to all observers whatsoever announcing that the facility was closed for the day due to "maintenance".  Lawyers and others desiring to be present in the facility were denied entrance thereto.

The Defendants permitted ballots lacking dates, addresses, and other important information to be counted.  Specifically, in Allegheny County, by a vote of 2 to 1, the Defendant Board counted more than 2,000 ballots lacking dates on the envelopes.

In Philadelphia and Delaware Counties, citizens were threatened with arrest for videotaping and observing ballots being deposited at drop boxes.  Numerous individuals deposited multiple ballots.  In Philadelphia, Pennsylvania, the Mayor of Philadelphia attempted to deposit two ballots himself.

## BACKGROUND

Intervenors are residents in various counties throughout the Commonwealth of Pennsylvania (including within the counties identified by the Boards of Elections in this suit) and all Intervenors voted in their respective counties of residence in the 2020 General Election.

PA Voters Alliance is a Pennsylvania unincorporated association whose members include some of the Intervenors. The PA Voter Alliance is an association with members who seek to ensure, as part of the Association's objectives, public confidence in the integrity of Pennsylvania's elections, in election results and election systems, processes, procedures and enforcement and that the public officials act in accordance with the law in exercising their obligations to the people of the Commonwealth of Pennsylvania.  PA Voters Alliance asserts the rights of its members as electors within the Commonwealth of Pennsylvania.

Intervenors assert that Defendants' conduct violated Intervenors' First Amendment rights by illegally discriminating against the Republican Presidential Candidate, Donald Trump, and favoring the Democrat Presidential Candidate, Joe Biden.

Intervenors further assert that Defendants' conduct violated Intervenors' Equal Protection rights by illegally discriminating against Republican Presidential Candidate, Donald Trump, and in favor of Democrat Presidential Candidate, Joe Biden, with no rational reason or purpose.

Intervenors further assert that Defendants' conduct violated Intervenors' substantive due process rights to a fair and free election.

Intervenors further assert that they can establish a likelihood of success on the merit of their claims based upon the evidence and expert testimony that they would present, if permitted, to intervene.

## ARGUMENT

The standard governing intervention of non-parties is enshrined in Rule 24 of the Federal Rules of Civil Procedure which provides in relevant part as follows:

> "(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Fed. R. Civ. P. 24(a).

The Third Circuit Court of Appeals has interpreted Rule 24 to allow a party to intervene if the party can demonstrate, "1) a sufficient interest in the litigation, 2) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and 3) that its interest is not adequately represented by the existing parties to the litigation." *Pennsylvania v. President United States of America*, 888 F.3d 52, 57 (3d Cir. 2018). As stated by the Third Circuit in *Marks v. Stinson*,

> "undeniably, the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, *Ex parte Yarbrough*, 110 U.S. 651 [4 S.Ct. 152, 28 L.Ed. 274], and to have their votes counted, *United States v. Mosley*, 238 U.S. 383 [35 S.Ct. 904, 59 L.Ed. 1355]."

*Marks v. Stinson*, 19 F.3d 873, 887 (3d Cir. 1994) *citing Reynolds v. Sims*, 377 U.S. 533, 554 (1963).

After an extensive evidentiary hearing that lasted three day, the *Marks* Court held that defendants' conduct violated "the First Amendment rights of Plaintiffs by illegally discriminating in favor of …" the Democrat Candidate over the Republican Candidate; "the equal protection rights of Plaintiffs by illegally discriminating in favor of …" the Democrat Candidate over the Republican Candidate "with no rational reason or purpose"; and, "the substantive due process right of Plaintiffs to a free and fair election." *Marks*, 19 F.3d at 887 (3d Cir. 1994).

Further, the *Marks* court concluded that the entire state suffers "irreparable injury" when an improperly elected candidate exercises the powers of his office and when "constitutional freedoms are lost." *Marks*, 19 F.3d at 887 (3d Cir. 1994).

The Supreme Court of Pennsylvania noted that the Elections Code does not provide election officials with procedures for contacting electors and allowing electors to cure defects in mail-in and absentee ballots:

> "As noted herein, although the Election Code provides the procedures for casting and counting a vote by mail, it does not provide for the "notice and opportunity to cure" procedure sought by Petitioner. To the extent that a voter is at risk for having his or her ballot rejected due to minor errors made in contravention of those requirements, we agree that the decision to provide a "notice and opportunity to cure" procedure to alleviate that risk is one best suited for the Legislature." *Pennsylvania Democratic Party v. Boockvar*, No. 133 MM 2020, 2020 WL 5554644, at *20 (Pa. Sept. 17, 2020); *see also In re: November 3, 2020 General Election*, 2020 WL 6252803, at *7 (Pa. Oct. 23, 2020)

The Supreme Court expressly held that "… [U]nlike in-person voters, mail-in or absentee voters are not provided an opportunity to cure perceived defects in a timely manner." *Id. at p. 20.*

On November 1, 2020, Frank Dean, Director of Mail-In Elections in Montgomery County, acknowledged that Montgomery County election officials regularly failed to comply with the requirement to safely keep the ballots in sealed or locked containers until pre-canvassed by the board of elections.  Director Dean confirmed that election officials daily evaluated and identified ballots for potential defects, such as, omitted secrecy envelopes and incomplete declarations.  In addition, election officials weighed the ballot envelopes to determine whether secrecy envelopes were contained within the outer envelopes.  Under-weight ballot envelopes were segregated from other ballot envelopes so that election official could permit electors to alter the envelopes.

The photograph below shows some of the thousands of absentee and mail-in ballots pre-canvassed by the Board of Elections in violation of the Election Code.[1]  These defective ballots were not secured in any way and were easily accessible to the public.



In violation of electors' right to secrecy in their ballots, election officials used the information gathered through their inspection of the ballot envelopes to identify the names of electors who had cast potentially defective ballots.  With this information, the election officials accessed the Statewide Uniform Registry of Electors ("SURE") System to compile lists of available confidential elector information including, each elector's name, street address, email address, telephone number, precinct, voter identification number and a description of the potential defect in the ballot envelope.

In an October 31, 2020, e-mail, Director Dean emailed the latest list of confidential elector information to other election officials, Lee Soltysiak and Josh Stein, and wrote:

---

[1] This "Ballots for Sale" photo was taken on 11/01/2020 by Robert Gillies during a tour of the Montgomery County mail-in ballot storage and canvass facility.



From: "Dean, Francis" <FDean@montcopa.org>
Date: October 31, 2020 at 11:11:04 AM EDT
To: "Soltysiak, Lee" <lsoltysi@montcopa.org>, "Stein, Josh" <JStein1@montcopa.org>
Subject: FW: LIST OF BALLOTS TO BE CURED

**Gentlemen,**

Please see attached latest list of ballots with defects. If the defect is an **Incomplete Declaration** or **Missing Secrecy Envelope,** the voter need only come to 1430 DeKalb Street, Norristown, PA 19401. They will be given the opportunity to correct their declaration or we will provide them with a secrecy envelope, which they can then insert and reseal inside the Ballot Return Envelope.

For the remainder of defects, the voter needs to go to Voter Services, One Montgomery Plaza, 425 Swede Street, Suite 602, Norristown, PA 19404 and request a **Cancel/Replace.**

**Very truly yours,**

Frank Dean | Director of Mail-In Elections
Voter Services
County of Montgomery
425 Swede Street, Suite 602, PO Box 311, Norristown, PA 19404
☎610.278.3770 | ✉fdean@montcopa.org
www.montcopa.org

voter contact

There is authority within the Election Code that authorizes election officials to manually alter the information contained within the SURE system for the purposes described by Director Dean. In order to cancel or replace an elector's absentee or mail-in ballot, election officials would be required to manually alter the information contained in the Commonwealth's Statewide Uniform Registry of Electors ("SURE"). There is no authority within the Election Code that authorizes election officials to cancel and/or replace an elector's absentee or mail-in ballot as described by Defendant Dean.

Further, in violation of electors' right to secrecy in their ballots, election officials used the information gathered through their inspection of the ballot envelopes to identify the names of electors who had cast potentially defective ballots. The Excel spreadsheet attached to Director Dean's October 31, 2020, e-mail notes that when mail-in or absentee ballot envelopes were found to have such defects, a limited number of electors were provided with the opportunity to alter their

ballot envelopes.   This picture shows page 1 or 124 pages that include thousands of defective

ballot envelopes that elections officials were trying to "cure" in violation of the Election Code.

| ID | Start time | Completion time | Email | Name Number | Number2 | Precinct | Last Name | First name | Address Line 1 | Address Line 2 | Issue |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 10/21/20 14:35:37 | 10/21/20 14:40:34 | anonymous | | 006318866-46 | 130203-1 | Young | Celia | 611 Green St | Norristown, PA 19401 | No secrecy envelope |
| 2 | 10/21/20 14:40:36 | 10/21/20 14:41:39 | anonymous | | 005931654-46 | 530301-1 | Yi | Suk Kyung | 2237 Dock Dr | Lansdale, PA 19446 | No secrecy envelope |
| 3 | 10/21/20 14:35:47 | 10/21/20 14:41:44 | anonymous | | 003575847-46 | 010100-1 | Crist | Gayle | 419 Haywood Road | Ambler PA 19002 | Incomplete Declaration |
| 4 | 10/21/20 14:41:43 | 10/21/20 14:43:16 | anonymous | | 102920995-46 | 401202-2 | Kohn | ralph Jr | 509 Oak Road | Merion Station, 19066 | No secrecy envelope |
| 5 | 10/21/20 14:41:54 | 10/21/20 14:43:48 | anonymous | | 015211425-46 | 300201-1 | Clark Jr. | Thomas | 573 Hoyt Rd | Huntingdon Vly, PA 19006 | Incomplete Declaration |
| 6 | 10/21/20 14:43:19 | 10/21/20 14:44:39 | anonymous | | 005940134-46 | 58GUL01-1 | Weiss | Hedy S | 1010 Boxwood Ct | King of Prussia, PA 19406 | No secrecy envelope |
| 7 | 10/21/20 14:43:55 | 10/21/20 14:45:13 | anonymous | | 015625135-46 | 410100-1 | Evans | Mildred | 753 Welsh Rd APT 403 | Huntingdon Vly, PA 19006 | Incomplete Declaration |
| 8 | 10/21/20 14:44:41 | 10/21/20 14:45:50 | anonymous | | 103935579-46 | 460003-1 | Oh | Sun C | 904 Barbaras Ct | North Wales, PA 19454 | No secrecy envelope |
| 9 | 10/21/20 14:45:21 | 10/21/20 14:46:31 | anonymous | | 005961588-46 | 100200-1 | Sorens | Audrey | 100 West Ave Apt W603 | Jenkintown, PA 19046 | Incomplete Declaration |
| 10 | 10/21/20 14:45:52 | 10/21/20 14:47:31 | anonymous | | 102728890-46 | 460008-1 | Sin | Song S | 115 Damson Ln | North Wales, PA 19454 | No secrecy envelope |
| 11 | 10/21/20 14:46:39 | 10/21/20 14:47:39 | anonymous | | 003625566-46 | 460005-1 | Yencha | Virginia | 301 Stockton Ct | North Wales, PA 19454 | Incomplete Declaration |
| 12 | 10/21/20 14:47:33 | 10/21/20 14:48:11 | anonymous | | 006373261 | 460008-1 | Hong | James | 101 Jonathan Dr | North Wales, PA 19454 | No secrecy envelope |
| 13 | 10/21/20 14:47:45 | 10/21/20 14:49:03 | anonymous | | 005822555-46 | 590301-1 | Mooney Sr. | Donald | 1120 York Rd APT 205 | Willow Grove, PA 19090 | Incomplete Declaration |
| 14 | 10/21/20 14:48:12 | 10/21/20 14:49:07 | anonymous | | 103746637-46 | 400601-1 | Ciongoli | Suzanne K | 211 Broughton Ln | Villanova, PA 19085 | No secrecy envelope |
| 15 | 10/21/20 14:49:09 | 10/21/20 14:50:06 | anonymous | | 006173491-46 | 120002-1 | Stricker | Carrie T | 203 Stepney Pl | Narberth, PA 19072 | No secrecy envelope |
| 16 | 10/21/20 14:49:10 | 10/21/20 14:50:38 | anonymous | | 006061195-46 | 540501-1 | Palme | Robert | 1650 Susquehanna Rd 219 | Dresher, PA 19025 | Incomplete Declaration |
| 17 | 10/21/20 14:50:17 | 10/21/20 14:51:28 | anonymous | | 006413561-46 | 010100-1 | Hoover | Carolyn | 110 Forest Ave Apt A | Ambler, PA 19002 | No secrecy envelope |
| 18 | 10/21/20 14:50:43 | 10/21/20 14:51:55 | anonymous | | 110209001-46 | 490303-1 | Nauman | Haseeb | 134 Plymouth Rd Uni 1108 | Plymouth MTG, PA 19462 | Resolved |
| 19 | 10/21/20 14:51:30 | 10/21/20 14:52:42 | anonymous | | 006070883-46 | 310404-1 | Szczurek | Genevieve L | 26 North Ave | Wyncote, PA 19095 | No secrecy envelope |
| 20 | 10/21/20 14:52:43 | 10/21/20 14:54:04 | anonymous | | 110837405-46 | 420002-1 | Rhoadarmer | Gary | none | none | Resolved |
| 21 | 10/21/20 14:52:06 | 10/21/20 14:54:57 | anonymous | | 005737265-46 | 08S02-1 | Becker | Joan | Moreland Towers, 36 Moreland Ave E, 802 | Hatboro, PA 19040 | Incomplete Declaration |
| 22 | 10/21/20 14:54:06 | 10/21/20 14:55:24 | anonymous | | 110454289-46 | 460003-1 | Prabhudesai | Anuya Sachin | 102 Sterling Dr | North Wales, PA 19454 | Resolved |
| 23 | 10/21/20 14:55:06 | 10/21/20 14:56:05 | anonymous | | 005797995-46 | 360301-1 | Stewart | Mary | 454 Avenue A B | Horsham, PA 19044 | Incomplete Declaration |
| 24 | 10/21/20 14:55:36 | 10/21/20 14:56:38 | anonymous | | 006205876-46 | 401003-1 | Powers | Constance | 102 Pennsylvania Ave | Bryn Mawr, PA 19010 | Resolved |
| 25 | 10/21/20 14:56:10 | 10/21/20 14:57:21 | anonymous | | 006275737-46 | 410100-1 | Wright | Walter | Gloria Dei Manor, 753 Welsh Rd 116 | Huntingdon Vly, PA 19006 | Incomplete Declaration |
| 26 | 10/21/20 14:56:40 | 10/21/20 14:57:47 | anonymous | | 016220045-46 | 300202-1 | Brill | Karen D | 1551 Huntingdon Pike APT A320 | Huntingdon Vly, PA 19006 | Incomplete Declaration |
| 27 | 10/21/20 14:57:49 | 10/21/20 14:58:27 | anonymous | | 005797771-46 | 310404-1 | Wilson | Earnestine | n/a | n/a | Incomplete Declaration |
| 28 | 10/21/20 14:57:27 | 10/21/20 14:58:42 | anonymous | | 016044690-46 | 300202-1 | Kaufman | Marie | 1551 Huntingdon Pike APT A217 | Huntingdon Vly, PA 19006 | Incomplete Declaration |
| 29 | 10/21/20 14:58:31 | 10/21/20 14:59:24 | anonymous | | 006116303-46 | 300401-1 | McGinley | Marguerite E | 229 Ray St | Jenkintown, PA 19046 | Incomplete Declaration |
| 30 | 10/21/20 14:59:28 | 10/21/20 15:00:13 | anonymous | | 107744416-46 | 460006-1 | Buckenberger | Nicole | n/a | n/a | Incomplete Declaration |
| 31 | 10/21/20 15:00:17 | 10/21/20 15:01:06 | anonymous | | 014817048-46 | 300402-1 | McShane | Brian Stephen | 933 Crefeld Ave | Elkins Park, PA 19027 | Incomplete Declaration |
| 32 | 10/21/20 14:58:49 | 10/21/20 15:01:45 | anonymous | | 021049107-46 | 400403-1 | Altman-McMahon | Michael | 260 Montgomery Ave W, APT 303 | *None | resolved |
| 33 | 10/21/20 15:01:08 | 10/21/20 15:01:48 | anonymous | | 005978435-46 | 430304-1 | Masters | Arlene N | 15222 Shannondell Dr | Audubon, PA 19403 | Incomplete Declaration |
| 34 | 10/21/20 15:01:51 | 10/21/20 15:02:34 | anonymous | | 006238072-46 | 300702-1 | Stein | Sandra E | 1250 Greenwood Ave APT 520 | Jenkintown, PA 19046 | Incomplete Declaration |
| 35 | 10/21/20 15:01:48 | 10/21/20 15:02:49 | anonymous | | 006163995-46 | 300601-1 | Keim | John | 628 Harrison Ave APT A | Glenside, PA 19038 | Incomplete Declaration |
| 36 | 10/21/20 15:02:38 | 10/21/20 15:03:17 | anonymous | | 009596705-46 | 510002-1 | Beese | Mary Ann | 702 Twining Way | Collegeville, PA 19426 | Incomplete Declaration |
| 37 | 10/21/20 15:02:55 | 10/21/20 15:03:58 | anonymous | | 015045166-46 | 590302-1 | McAndrew | Mariann | 1113 Easton Rd N. | Willow Grove, PA 19090 | Incomplete Declaration |
| 38 | 10/21/20 15:03:18 | 10/21/20 15:04:03 | anonymous | | 005726801-46 | 65W02-1 | Barnett | Ronald B | 2062 Julia Dr | Conshohocken, PA 19428 | resolved |
| 39 | 10/21/20 15:01:58 | 10/21/20 15:04:24 | anonymous | | 107222281-46 | 050300-1 | Mackowski | Matthew | 309 Washington St APT 3107 | Conshohocken, PA 19248 | USPS Issue |
| 40 | 10/21/20 15:04:05 | 10/21/20 15:04:58 | anonymous | | 005902791-46 | 65W02-1 | Gallo-Barnett | Caryl Marie | 2062 Julia Dr | Conshohocken, PA 19428 | resolved |
| 41 | 10/21/20 15:04:26 | 10/21/20 15:05:44 | anonymous | | 104093627-46 | 050300-1 | Roney | Jason | 301 Washington ST APT 1129 | Conshohocken, PA 19248 | USPS Issue |
| 42 | 10/21/20 15:04:04 | 10/21/20 15:06:19 | anonymous | | 020676726-46 | 400403-1 | Altman-McMahon | Elizabeth | *None | *None | resolved |
| 43 | 10/21/20 15:05:00 | 10/21/20 15:06:21 | anonymous | | 006383410-46 | 320002-1 | Tillman | Delores | 217 Montgomery Ave Hillcrest Village | Boyertown, PA 19512 | Incomplete Declaration |
| 44 | 10/21/20 15:06:24 | 10/21/20 15:07:07 | anonymous | | 102877706-46 | 110302-1 | Delconte | Ralph Jr | 1008 Third St W | Lansdale, PA 19446 | Incomplete Declaration |
| 45 | 10/21/20 15:05:55 | 10/21/20 15:07:25 | anonymous | | 110062625-46 | 350301-1 | Harrington | Erika Eden | 2058 Maple Ave APT G3-11 | Hatfield, PA 19440 | USPS Issue |

Page 1 of 124

Intervenors also seek an Order from this Honorable Court directing Secretary Boockvar to secure and cease alterations on the records of the SURE System with respect to the 2020 Presidential Election and to prevent the wholesale elimination of the evidence contained on the SURE System as part of a plan to replace the System, at least while election contests/suits are pending.  The Secretary of State has otherwise publicly announced her office's intention to proceed with plans to eliminate the SURE System.

Despite the clear legal prohibition against efforts to "cure" absentee and mail-in ballot envelopes, Defendant Boockvar issued guidance just hours before Election Day directing county boards of elections to provide electors who have cast defective absentee or mail-in ballots with provisional ballots and to promptly update the SURE system.

Deputy Secretary for Elections and Commissions of the Commonwealth issued an email

which stated:



Sent: Monday, November 2, 2020 8:38 PM
To: Marks, Jonathan
Subject: Important DOS Email - Clarification regarding Ballots Set Aside During Pre-canvass

*** This is an external email. Please use caution when clicking on links and downloading attachments ***

Dear County Election Directors,

The Department of State has been asked whether county boards of elections can provide information to authorized representatives and representatives of political parties during the pre-canvass about voters whose absentee and mail-in ballots have been rejected.  The Department issued provisional ballot guidance on October 21, 2020, that explains that voters whose completed absentee or mail-in ballots are rejected by the county board for reasons unrelated to voter qualifications may be issued a provisional ballot.  To facilitate communication with these voters, the county boards of elections should provide information to party and candidate representatives during the pre-canvass that identifies the voters whose ballots have been rejected and should promptly update the SURE system.

Kind regards,

Jonathan M. Marks
Deputy Secretary for Elections & Commissions
Pennsylvania Department of State
302 North Office Building | Harrisburg, PA 17120
☎ 717.783.2035 🖷 717.787.1734
✉ jmarks@pa.gov

Pennsylvania
DEPARTMENT OF STATE

In order to obtain a provisional ballot on Election Day, an elector who previously requested

an absentee or mail-in ballot must sign an affidavit stating "I do solemnly swear or affirm that my

name is … and that this is the only ballot that I cast in this election." *25 P.S. §3146.8; 25 P.S.*

*§3050.*  If an elector has already submitted an absentee or mail-in ballot and that ballot was

received by his or her county board of elections, the elector cannot truthfully affirm that the

provisional ballot is the only ballot cast by them in the election.  The provisional ballot is in fact a

second ballot cast by them.

Defendants' actions appear to be coordinated with the Democratic Party that apparently considered the matter to be URGENT.



Intervenors assert that there were almost 100,000 provisional ballots cast in the 2020 General Election. Intervenors will produce two expert witnesses whose reports are attached hereto and marked Exhibit "A" and "B".   Such experts will identify significant and dispositive discrepancies/error or misconduct which would call into questions the results of the Presidential Election in Pennsylvania.

Finally, Intervenors assert that they would be irreparably harmed if an improperly elected President of the United States is sworn in violation of the United States Constitution.  In light of

the massive nature of Defendants' illegal conduct, it would be a historic constitutional violation of massive proportions to allow Democrat Presidential Candidate Biden to take office based upon election results within the Commonwealth of Pennsylvania that cannot be properly and legally certified as accurate.

Intervenors can establish that a significant number of the votes cast by absentee and mail-in ballots were directly impacted by Defendants' illegal and inappropriate conduct. Intervenors can establish that a significant number of the votes cast by provisional ballots were directly impacted by Defendants' illegal and inappropriate conduct. The votes cast using voting machines on Election Day more accurately reflect the will of electorate within the Commonwealth because these votes were less susceptible to Defendants' illegal and inappropriate conduct.

Further, Intervenors will not delay this case as they adopt the Briefs filed previously by Plaintiffs, assert the matters set forth herein, and are fully prepared to proceed with an evidentiary hearing in this matter in support of Plaintiffs.

Respectfully submitted,

Dated: November 21, 2020

/s/ Thomas W. King, III
Thomas W. King, III (PA I.D. No. 21580)
Email: tking@dmkcg.com
Thomas E. Breth (PA I.D. No. 66350)
Email: tbreth@dmkcg.com
*Special Counsel for the Amistad Project*
*of the Thomas More Society*
Dillon, McCandless, King, Coulter
& Graham, L.L.P.
128 West Cunningham Street
Butler, PA 16001
Telephone: (724) 283-2200
Facsimile: (724) 283-2298
*Counsel for Intervenors*

/s/ Timothy P. Griffin
Timothy P. Griffin (VA. I.D. No. 83195)*
Email: tgriffin@thomasmoresociety.org
*Special Counsel for the Amistad Project*
*of the Thomas More Society*
Thomas More Society
Amistad Project
115 Sandiges Road
Amherst, VA 24521
Telephone: (434) 660-6198

*\*Pro Hac Vice Pending*